MAXWELL M. FREEMAN, #31278
LEE ROY PIERCE, JR., #119318
MICHAEL L. GUREV, #163268
THOMAS H. KEELING, #114979
FREEMAN, D'AIUTO, PIERCE,
  GUREV, KEELING & WOLF
A PROFESSIONAL LAW CORPORATION
1818 Grand Canal Boulevard, Suite 4
Stockton, California 95207
Telephone: (209) 474-1818
Facsimile: (209) 474-1245
E-mail:    lrpierce@freemanfirm.com
           mgurev@freemanfirm.com
           tkeeling@freemanfirm.com

Attorneys for Defendants A.G. Spanos
Construction, Inc.; A.G. Spanos
Development, Inc.; A.G. Spanos
Land Company, Inc.; A.G. Spanos
Management, Inc.

IN THE UNITED STATED DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| National Fair Housing Alliance, Inc., et al., | ) | CASE NO.  C07-03255-SBA |
| Plaintiffs, | ) ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| vs. | ) ) | |
| A.G. Spanos Construction, Inc., et al. | ) ) | [Fed. R. Civ. P. 12(b)(6)] |
| Defendants. | ) ) ) | Hearing Date: October 2, 2007 Time:        1:00 p.m. Dept:        Courtroom 3 |
| | ) | Complaint Filed: June 20, 2007 |

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . 1

II.   ALLEGATIONS OF THE COMPLAINT AND MATTER SUBJECT TO
      JUDICIAL NOTICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Allegations of Non-Compliance with the ADA and FHAA . . . . . . . . . . 3

      C.    Alleged "Injury" to Plaintiffs . . . . . . . . . . . . . . . . . 4

      D.    Relief Sought by Plaintiffs . . . . . . . . . . . . . . . . . . . 5

      E.    "Missing" Allegations . . . . . . . . . . . . . . . . . . . . . 6

      F.    Matter Subject to Judicial Notice . . . . . . . . . . . . . . . . 6

III.  STANDARDS GOVERNING MOTIONS UNDER RULE 12(b)(6). . . . . . . . 7

IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE
      ADA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Plaintiffs Have Not Alleged a Claim for Relief in Their Own Right
            Because Plaintiffs Are Neither Disabled Persons Nor Entities That
            Claim to Have Been Discriminated Against Because of Their
            Association with Disabled Persons. . . . . . . . . . . . . . . . 8

      B.    Plaintiffs Have Failed to State a Claim for Relief Under the ADA
            Against These Defendants Because Plaintiffs Fail to Allege That
            These Defendants Are the Current Owners of the Subject
            Apartments. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.    THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH
      STANDING TO SUE UNDER THE ADA. . . . . . . . . . . . . . . . . . 10

      A.    Plaintiffs Do Not Claim To Be Members of a Protected Class under
            the ADA, Nor Do They Purport to Sue on Behalf of Any Member of
            a Protected Class under the ADA; Therefore, They Have No
            Standing to Sue. . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    Plaintiffs Do Not Allege Facts Sufficient To Establish the "Irreducible
            Constitutional Minimum" for Standing. . . . . . . . . . . . . . 11

      C.    Plaintiffs Have Failed to Allege Facts Sufficient to Show Standing to Seek
            Injunctive Relief under Title III of the ADA. . . . . . . . . . 15

VI.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE
      FHAA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    Plaintiffs Have Not Alleged a Claim for Relief in Their Own Right
            Because Plaintiffs Are Neither Disabled Renters Nor Entities That
            Claim to Have Been Denied Rentals Because of Their Association
            With Disabled Persons. . . . . . . . . . . . . . . . . . . . . 17

B.  **Plaintiffs Have Failed To State a Claim For Relief Under the FHAA Because Plaintiffs Fail to Allege That These Defendants Are the Owners of the Subject Properties; Only Current Owners Are Liable Under the FHAA.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII.  **THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH STANDING TO SUE UNDER THE FHAA.** . . . . . . . . . . . . . . . . . . . . . . . 20

A.  **Plaintiffs Do Not Claim To Be Members of a Protected Class under the FHAA, Nor Do They Purport to Sue on Behalf of Any Member of a Protected Class under the FHAA; Therefore, They Have No Standing to Sue.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.  **Plaintiffs Do Not Allege Facts Sufficient To Establish the "Irreducible Constitutional Minimum" for Standing.** . . . . . . . . . . . . . . . . . . . . . . . 20

C.  **Plaintiffs Have Failed to Allege Facts Sufficient to Show Standing to Seek Injunctive Relief Under the FHAA.** . . . . . . . . . . . . . . . . . . . . . . . 21

VIII.  **PLAINTIFFS' ADA AND FHAA CLAIMS FOR RELIEF ARE BARRED BY THE STATUTE OF LIMITATIONS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A.  **The Continuing Violation Doctrine Does Not Apply to the Plaintiffs' Untimely Claims.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

B.  **Plaintiffs Cannot Aggregate Alleged Violations Into A Continuing Practice.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

## **TABLE OF AUTHORITIES**

2

<u>**Cases**</u>                                                                                                    **Page(s)**

3

*Access Now v. South Florida Stadium Corp.*
      161 F.Supp.2d 1357 (S. D. Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4

*Alliance for Disabled in Action, Inc. v. Renaissance Enters.*
5     372 N.J. Super 409 (N.J. Super. Ct. 2004)   . . . . . . . . . . . . . . . . . . . . . . . . . 23

6

*ASARCO, Inc. v. Kadish*
      490 U.S. 605 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

7

*Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr.*
8   *Bd. of Trustees*
      19 F.3d 241 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9

*Aulson v. Blanchard*
10    83 F.3d 1 (1st Cir. 1996)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11

*B. C. v. Plumas Unified School Dist.*
      192 F.3d 1260 (9th Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12

*Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*
13    40 F.Supp.2d 700 (D.C. Md. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

14

*Barron v. Reich*
      13 F.3d 1370 (9th Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15

*Bird v. Lewis & Clark College*
16    303 F.3d 1015 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17

*Blum v. Yaretsky*
      457 U.S. 991 (1982)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18

*City of Los Angeles v. Lyons*
19    461 U.S. 95 (1983)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

20

*Clark v. Burger King*
      255 F. Supp. 2d 334 (D.N. J., 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21

*Clark v. McDonald's Corp.*
22    213 F.R.D. 198 (D.N.J. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

23

*Clegg v. Cult Awareness Network*
      18 F.3d 752 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

24

*Fair Housing Council v. Montgomery Newspapers*
25    141 F.3d 71 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26

*Fair Housing of Marin v. Jack Combs*
      285 F.3d 899 (9th Cir. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

27

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services*
28    528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 21

*Gladstone Realtors v. Village of Bellwood*
  441 U.S. 91 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Growth Horizons, Inc. v. Delaware County*
  983 F.2d 1277 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hargraves v. Capital City Mortgage Corp.*
  140 F.Supp.2d 7 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Harris v. Del Taco*
  396 F.Supp.2d 1107 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harris v. Stonecrest Auto Center, LLC*
  472 F.Supp.2d 1208 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Havens Realty Corp. v. Coleman*
  455 U.S. 363 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 23

*Hishon v. King & Spaulding*
  467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hoepfl v. Barlow*
  906 F.Supp. 317 (E.D. Va. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Independent Housing Services of San Francisco v. Fillmore Center Associates*
  840 F.Supp. 1328 (N.D. Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lewis v. Casey*
  518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lonberg v. Sanborn Theaters, Inc.*
  259 F.3d 1029, 2001 U.S.App.LEXIS 17418 (9th Cir. 2001) . . . . . . . . . . . 10, 19

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 20

*McConnell v. FEC*
  540 U.S. 93 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Michigan Protection and Advocacy Services, Inc. v. Basin*
  799 F.Supp. 695 (D. Mich. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Molski v. Mandarin Touch Restaurant*
  385 F.Supp.2d 1042 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . 15, 22

*Moseke v. Miller & Smith, Inc.*
  202 F.Supp.2d 492 (E.D. Va. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Nat'l Adver. Co. v. City of Raleigh*
  947 F.2d 1158 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nat'l. Railroad Passenger Corp. v. Morgan*
  536 U.S. 101 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Oak Ridge Care Center v. Racine County*
    896 F.Supp. 867 (E.D . Wis. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 21

*Parr v. L & L Drive-Inn Restaurant*
    96 F.Supp.2d 1065 (D. Haw. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pickern v. Holiday Quality Foods*
    293 F.3d 1133 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Smith v. Pacific Properties and Development Corp.*
    358 F3d. 1097 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thompson v. Mountain Peak Assocs. LLC*
    2006 U.S. Dist. LEXIS 36981 (D. Nev. 2006)  . . . . . . . . . . . . . . . . . . 23, 24

*Tolbert v. State of Ohio Dep't of Transp.*
    172 F.3d 934 (6th Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Taigen & Sons, Inc.*
    303 F.Supp.2d 1129 (D. Idaho 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Wander v. Kaus*
    304 F.3d 856 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Warth v. Seldin*
    422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

*Wasserman v. Three Seasons Assoc. No. 1, Inc.*
    998 F. Supp. 1445 (S.D. Fla. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Statutes**                                                                    **Page(s)**

42 U.S.C. section 3601   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. section 3504   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

42 U.S.C. section 3613   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

42 U.S.C. section 12181   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. section 12182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 22

**Other**                                                                       **Page(s)**

Moore's Federal Practice 3D, §§101.41[4], 101.42  . . . . . . . . . . . . . . . . . 14, 15

R. Schwemm, "Barriers to Accessible Housing: Enforcement Issues in Design and
Construction Cases under the Fair Housing Act, 40 U. Richmond L.Rev. 753 (2006)  . . . . 19

1    Defendants A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G. Spanos

2  Land Company, Inc., and A.G. Spanos Management, Inc. (collectively, "Defendants")

3  respectfully submit this Memorandum of Points and Authorities in support of their motion to

4  dismiss the Complaint of Plaintiffs National Fair Housing Alliance, Inc., Fair Housing of Marin,

5  Inc., Fair Housing Napa Valley, Inc., Metro Fair Housing Services, Inc., and Fair Housing

6  Continuum, Inc. (collectively, "Plaintiffs").[1]

7  **I.     INTRODUCTION AND SUMMARY OF ARGUMENT.**

8    This is a suit brought by the wrong plaintiffs against the wrong defendants. Plaintiffs are

9  five fair housing organizations located in three states. They allege that some 84 identified

10  apartment complexes located in 10 states, allegedly designed and constructed by Defendants

11  between 1991 and 2007, do not comply with requirements of the Americans With Disabilities Act

12  ("ADA"), 42 U.S.C. §§ 12181 et seq., and the Fair Housing Amendments Act ("FHAA"), 42

13  U.S.C. §§ 3601, et. seq. They make the same claim with respect to an unknown number of

14  unidentified properties located, presumably, throughout the United States in unspecified locations.

15  The facilities sued upon ("Subject Properties") allegedly contain over 10,000 apartment units.

16  Plaintiffs seek an injunction commanding Defendants to rebuild the Subject Properties to conform

17  to the ADA and FHAA.

18    Plaintiffs are the wrong plaintiffs because 1) no plaintiff is disabled; 2) no plaintiff

19  represents or sues on behalf of any disabled person; 3) no plaintiff has ever visited or attempted

20  to rent any of the allegedly nonconforming apartments; and no plaintiff has or can plausibly allege

21  that Plaintiffs consulted or referred any handicapped person who encountered non ADA/FHAA

22  compliant features at the Subject Properties.

23    The ADA confers a claim for relief only upon the class of individuals and entities protected

24  under its provisions. An individual denied access to public facilities is a member of the class of

25

26  ───────────────

27  [1] Concurrently with the filing of this motion, Defendants are filing a Motion to Strike under F.R.C.P. 12(f), a Motion for More Definite Statement under F.R.C.P. 12(e), and a Motion to dismiss under F.R.C.P. 12(b)(7) and 19. Defendants' concurrently filed Request for

28  Judicial Notice ("RJN"), with exhibits, applies to all four motions.

1  persons protected under the ADA and may state a claim for relief.  An entity denied access to

2  public facilities—because of the entity's association with disabled persons—is a member of the

3  class of persons protected under the ADA and may state a claim for relief thereunder.

4        An individual or entity that has not been denied access to public facilities is not a member

5  of the class of persons protected under the ADA.  An organization that has not been denied access

6  to public facilities is not a member of the class of persons protected under the ADA and therefore,

7  may not state a claim for relief in its own right.

8        On the other hand, under the ADA, a Fair Housing Organization may sue on behalf of

9  third-party members of the protected class, provided: (1) the Fair Housing Organization sues on

10  behalf of third party members of the protected class and not in its own right; and, provided (2) the

11  Fair Housing Organization alleges and proves a "case or controversy" - i.e., that it has suffered

12  a genuine injury, redressable under the ADA, caused by defendants' violation of the rights of

13  third-party members of the protected class.  Similar principles apply to claims under the FHAA.

14        The Complaint fails to state a claim because Plaintiffs sue only in their own right, and do

15  not sue on behalf of any person or entity denied access to a public facility.  Plaintiffs do not claim

16  to be disabled individuals denied access to a public facility.  Plaintiffs do not claim to be entities

17  denied access to public facilities because of their association with disabled individuals.

18        Plaintiffs also have the wrong defendants.  Eighty-four (84) of the eighty-five (85) Subject

19  Properties are, as a matter of public record subject to judicial notice, not owned by any of the

20  Defendants.  Only one property, located in Kansas, is owned by one of the Defendants.  None of

21  the owners of the other 84 properties is named or identified in the Complaint.  Without the owners

22  (and, depending on the relief sought, possibly the thousands of current tenants), the Complaint

23  fails, as explained below.

24        Plaintiffs' claims are also barred by the applicable 2-year statute of limitations, based upon

25  allegations appearing on the face of the Complaint.

26        Plaintiffs ambitious nation-wide Complaint fails for these and for the other reasons set forth

27  below.

28  / / /

## II.    ALLEGATIONS OF THE COMPLAINT AND MATTER SUBJECT TO JUDICIAL NOTICE.

### A.    Parties

Plaintiffs are: (1) the National Fair Housing Alliance, a non-profit entity with its principal place of business in Washington, D.C.; (2) Fair Housing of Marin, "a non-profit community organization located in San Rafael, California;" (3) Fair Housing of Napa Valley, "a non-profit community organization located in Napa, California;" (4) Metro Fair Housing Services, "a non-profit community organization located in Atlanta, Georgia;" and (5) The Fair Housing Continuum, a "non-profit organization committed to equal housing opportunity and the elimination of discrimination in Florida." (Complaint, ¶¶ 1, 15-19)

Plaintiffs' alleged "missions" include advocating for the rights of people with disabilities to accessible housing, promoting equal housing opportunities, and eliminating housing and lending inequities.  (Complaint, ¶¶ 15-18)

Defendants A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G. Spanos Land Company, Inc., and A.G. Spanos Management, Inc. are California corporations with principal offices in Stockton.  (Complaint, ¶¶ 21-25)

### B.    Allegations of Non-Compliance with the ADA and FHAA

Plaintiffs allege that Defendants "have been involved in the design and construction of at least 84 multifamily complexes in California, Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida."  (Complaint, ¶ 26)  Plaintiffs claim to have identified 35 apartment complexes in California, Arizona, Nevada, Texas, Kansas, Georgia, and Florida (the "Tested Properties"), totaling more than 10,000 individual apartment dwelling units, that do not meet the accessibility requirements of the ADA and FHAA.  (Complaint, ¶ 3)

With respect to the Tested Properties, Plaintiffs allege that since 1991 Defendants have "engaged in a continuous pattern and practice of discrimination against people with disabilities" by "designing and/or constructing" apartment complexes that deny full access to and use of the facilities as required under the ADA and FHAA.  (Complaint, ¶ 4)

Plaintiffs also allege on information and belief that 49 additional (**untested**) apartment

1  complexes in 10 states which Defendants designed or constructed after March, 1991 (the

2  "Untested Properties") also violate ADA and FHAA accessibility requirements. (Complaint, ¶

3  6 and Appendix A to Complaint)  Defendants are also alleged to have designed, constructed,

4  and/or managed an unspecified number of additional unidentified housing complexes in locations

5  not yet known to Plaintiffs. (Complaint, ¶ 27)

6  Plaintiffs claim to have "identified at least one FHA or ADA violation and, in most cases,

7  multiple violations, at each of the Tested Properties."  Based on the alleged frequency and

8  similarity of these violations, Plaintiffs allege "a pervasive pattern and practice of designing and

9  constructing apartment communities in violation of the FHA and ADA accessibility design

10  requirements." (Complaint, ¶ 39)

11  Plaintiffs allege that Defendants violated the ADA by failing to design and construct the

12  rental and leasing offices at many of the Tested Properties such that they are readily accessible to

13  and usable by people with disabilities. (Complaint, ¶ 42, 43)

14  Alleged FHAA violations at the Tested Properties also include failure to design and

15  construct the public and common areas so that they are readily accessible to and usable by people

16  with disabilities. (Complaint, ¶ 41)[2]

17  The Complaint alleges that the Tested Properties were built at different times between 1995

18  and 2007. (Complaint ¶¶ 47-48) As for the Untested Properties, Plaintiffs allege only that they

19  were designed and/or constructed after March, 1991. (Complaint, ¶ 6)

20  **C.    Alleged "Injury" to Plaintiffs**

21  Plaintiffs allege that Defendants' noncompliance with the ADA and FHAA injured

22  Plaintiffs "in that they have been frustrated in their missions to eradicate discrimination in

23  housing, and in carrying out the programs and services they provide, including integrated living

24  patterns, educating the public about fair housing rights and requirements, educating and working

25  with industry groups on fair housing compliance, providing counseling services to individuals and

26

27  [2] Examples of alleged noncompliance with the ADA and FHAA at certain of the Tested Properties are set forth in paragraphs 40, 47, 48 and 51-67 of the Complaint.  Plaintiffs also

28  allege that the untested Subject Properties share relevant common elements of design with many of the Tested Properties. (Complaint, ¶ 44)

1  families looking for housing or affected by discriminatory housing practices and eliminating

2  discriminatory housing practices." (Complaint, ¶ 68)

3      Allegedly, "[E]ach time Defendants designed and constructed covered dwellings that did

4  not comply with the FHA and/or ADA in one of Plaintiffs' service areas, defendants frustrated

5  the mission of that Plaintiff, inasmuch as it served to discourage people with disabilities from

6  living at that dwelling, and encouraged other entities involved in the design and construction of

7  covered units to disregard their own responsibilities under the FHA and ADA." (Complaint, ¶

8  69) Defendants' practices allegedly forced Plaintiffs to "divert significant and scarce resources

9  to identify, investigate, and counteract Defendants' discriminatory practices, and such practices

10 have frustrated plaintiffs' other efforts against discrimination, causing each to suffer concrete and

11 demonstrable injuries." (Complaint, ¶¶ 70, 71)

12     According to Plaintiffs, until remedied, Defendants' noncompliance with the ADA and

13 FHA will "continue to injure Plaintiffs" by interfering with their programs, frustrating their

14 "mission" and "requiring" further commitment of resources. (Complaint, ¶ 74)

15 **D.    Relief Sought by Plaintiffs**

16     In their Prayer for Relief (Complaint, pp. 37-39), Plaintiffs request:

17 A.  A Declaration that Defendants' practices and actions violate the ADA and FHA;

18 B.  A prohibitory injunction enjoining Defendants from:

19          1.   Constructing any non-ADA/FHAA compliant apartment complexes;
            2.   Selling any non-ADA/FHAA compliant building;
20          3.   Failing or refusing to bring the 10,000 units that defendants previously
                 constructed in violation of the FHAA and ADA into compliance;
21          4.   Failing or refusing to bring the common areas at all the apartments
                 previously constructed into ADA and FHAA compliance; and
22          5.   Failing and refusing in the future to design and construct apartments in
                 compliance with provisions of the ADA and FHAA.
23
   C.  A mandatory injunction requiring Defendants to:
24
            1.   Survey all of their apartment complexes designed and constructed since
25               March 13, 1991 to assess their compliance with the ADA and FHAA;
            2.   Report to the Court regarding the extent of non-compliance;  and
26          3.   Bring apartment complex into compliance with the FHAA and ADA.

27 D.  Compensatory damages;

28 E.  Punitive damages; and

1    F.  Costs and attorneys fees.

2    (Complaint, pp.37-39)

3    **E.    "Missing" Allegations**

4    Conspicuous by their absence, the following allegations do <u>not</u> appear in the Complaint.

5    The Complaint does not allege that any of the Plaintiffs, or any of their members, or indeed any

6    disabled persons, ever attempted to rent an apartment at any of the Subject Properties or that any

7    of the Plaintiffs or their members or any disabled person ever intends to do so.

8    Plaintiffs do not allege that any of their "testers" was handicapped.  None of the alleged

9    "testers" is named as a plaintiff or identified in the Complaint.

10    Plaintiffs do not allege that any member of a protected class under the ADA or FHAA has

11    encountered discriminatory conduct at any of the Subject Properties.  Nor do Plaintiffs claim they

12    are suing on behalf of any member of a protected class.

13    Plaintiffs do not allege that they have counseled, spoken to, or otherwise expended any

14    resources in communicating with any member of a protected class who claims to have encountered

15    non-ADA/FHAA compliant features in any of the Subject Properties.

16    Plaintiffs do not allege any facts purporting to show how non-profit community

17    organizations in Marin County, Napa Valley, Florida, Atlanta, or Washington D.C. were injured

18    by allegedly non-compliant apartment complexes located in New Mexico, Nevada, Arizona,

19    Colorado, Texas, Kansas, and North Carolina.  There is, for example, no allegation that

20    noncompliant features in an untested apartment complex in Kansas in any way caused plaintiff Fair

21    Housing of Napa Valley to "divert significant and scarce resources" or otherwise frustrated its

22    "mission."  And again, neither Fair Housing of Napa Valley nor any other plaintiff alleges that

23    they have counseled, spoken to, or otherwise expended any resources in communicating with any

24    member of a protected class who claimed to have encountered non-ADA/FHAA compliant features

25    in an apartment complex located in Kansas or in any other apartment complex designed or

26    constructed by Defendants.

27    **F.    Matter Subject to Judicial Notice**

28    As a matter of public record subject to judicial notice, not one of the 85 Subject Properties

1    is owned by defendants A.G. Spanos Development, Inc., A.G. Land Company, Inc., or A.G.

2    Spanos Management, Inc. (Request for Judicial Notice ["RJN"], Exs. 1-85.) Only <u>one</u> of the

3    Untested Properties—<u>located in Kansas</u>—is owned by defendant A.G. Spanos Construction, Inc.

4    (RJN, Ex. 48.) The remaining 52 Untested Properties, and <u>all</u> of the Tested Properties, are owned

5    by entities other than Defendants.[3] (RJN, Exs. 1-85.)

6    **III.    STANDARDS GOVERNING MOTIONS UNDER RULE 12(b)(6).**

7         In ruling on a motion to dismiss, the court must accept as true the well-pled allegations of

8    the complaint, as well as all <u>reasonable</u> inferences derived from the facts alleged. *Hishon v.*

9    *King & Spaulding*, 467 U.S. 69, 73 (1984). <u>The court is not required to accept as true</u>

10   <u>conclusionary allegations, unwarranted deductions of fact, or legal conclusions cast in the form</u>

11   <u>of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged</u>.

12   *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994); *Sprewell v. Golden State*

13   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor are courts required to "swallow the plaintiff's

14   invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic

15   circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.

16   1996).

17        In determining whether a complaint fails to state a claim, the court may consider facts

18   alleged in the complaint, documents attached or incorporated into the complaint, and matters of

19   which the court may take judicial notice – without converting the motion to dismiss into a motion

20   for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

21   **IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE ADA.**

22        To state a claim under the ADA, Plaintiffs must plead and prove (1) that Defendants

23   violated the rights of a person protected by the ADA, thereby causing harm to that protected

24   person; and (2), that Plaintiffs have standing to sue to redress that harm.

25

26

27   [3] Certified copies of the recorded deeds for two of the 84 properties—located in Georgia and Texas, are not included in the Request for Judicial Notice because Defendants

28   never owned, designed or built those complexes in the first place and have been as yet unable to discover who, in fact, does own those complexes.

**A.**  **Plaintiffs Have Not Alleged a Claim for Relief in Their Own Right Because Plaintiffs Are Neither Disabled Persons Nor Entities That Claim to Have Been Discriminated Against Because of Their Association with Disabled Persons.**

Title III of the ADA provides: "No <u>individual</u> [or entity associated with a disabled individual] <u>shall be discriminated against</u> . . . <u>in the</u> full and equal <u>enjoyment of facilities</u> . . . by any person who owns, leases (or leases to), or operates a place of public accommodation." (42 U.S.C. § 12182(a), emphasis added.)[4] "The right created . . . is the right to be free from discrimination <u>in the enjoyment</u> of public accommodations and services." *Hoepfl v. Barlow*, 906 F.Supp. 317, 322-323 (E.D. Va. 1995) (emphasis added).

"[T]he enforcement provision of Title III confer[s] a cause of action upon any person [including an entity] who is being subjected to discrimination <u>on the basis of disability</u>. . . ." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 209 (N.J. 2003) emphasis added. "Not every entity that is being tangibly harmed by a Title III violation [may] sue under that provision. This is so . . . because Congress itself limited the **class of parties** on which [Title III] of the ADA bestows rights. . . ." *Id.*, 213 F.R.D. at p. 212, n. 10, emphasis added. Only those individuals or entities discriminated against on the basis of disability may sue. *Id.*, 213 F.R.D. at p. 212, n. 10. "Title III of the ADA does not . . . permit an organization <u>who has not itself been subject to discrimination</u> to sue [on its own behalf]. . . ." *Id.*, 213 F.R.D. at p. 212, n. 10; accord, *Clark v. Burger King,* 255 F. Supp. 2d 334, 344 (N. J., 2003).

As explained in *Clark v. McDonald's Corp.*:

> Both individuals and entities can suffer discrimination redressable under Title III of the ADA, as made clear by Title III's "association provision":
>
> > It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual *or entity* because of the known disability of an individual with whom the individual *or entity* is known to have a relationship or association.
>
> 42 U.S.C. § 121821(b)(1)(E) However, the enforcement provision of Title III unambiguously requires that the "person" (be it an individual or entity) **possessing the cause of action** is being subjected, or is under threat of being subjected, to

---

[4] "[D]iscrimination for purposes of section 12182(a) . . . includes . . . a failure to design and construct facilities . . . that are readily accessible to and usable <u>by individuals with disabilities</u> . . . ." (42 U.S.C. 12182(a)(1), emphasis added.)

discrimination.  Because there is no set of facts alleged in the amended complaint under which it could be said that Access Today [the organizational plaintiff] is itself suffering, or under threat of suffering, discrimination at the hands of the Defendants, Access Today lacks . . . a cause of action to . . . sue [in its own right].  Stated otherwise, if the facts alleged in the amended complaint are assumed to be true, then Access Today has suffered or is suffering "frustration of mission" injuries as a result of the Defendants' discrimination *against others*, **for which the ADA provides it no remedy.**

*Clark v. McDonald's Corp.*, 213 F.R.D. 198, 209, emphasis added.

Here, no Plaintiff alleges it has been denied access to a public facility.  Plaintiffs did not sue on behalf of third-party disabled persons who claim to have been denied access to public facilities.  Nor do Plaintiffs sue on behalf of third-party entities that claim to have been discriminated against because of association with disabled persons. In fact, Plaintiffs do not allege that they or anyone else has ever actually been denied access to the properties.

To establish a prima facie case under Title III of the ADA, a plaintiff must plead and prove "1) that [plaintiff] is disabled [or an entity associated with disabled persons]; 2) that [defendants' facilities are a] place of public accommodation; and 3) that [plaintiff] was denied full and equal [enjoyment of the facilities] because of his disability [or because of his association with disabled persons]." *Access Now v. South Florida Stadium Corp.*, 161 F.Supp.2d 1357, 1363 (S. D. Fla. 2001); *Parr v. L & L Drive-Inn Restaurant,* 96 F.Supp.2d 1065, 1085 (D. Haw. 2000).

Plaintiffs do not allege that they are disabled.  Plaintiffs do not sue on behalf of disabled persons.  Plaintiffs do not allege any disabled person has actually been denied access to Defendants' facilities.  The same is true regarding entities associated with disabled persons. Plaintiffs allege only that Defendants' defective design and construction has caused Plaintiffs to divert resources which they would otherwise have used in their other activities and that their "missions" have therefore been frustrated.  But the "ADA provides [plaintiffs] no remedy" for their claims that Plaintiffs have suffered frustration-of-mission injuries as a result of Defendants' discrimination against others. *Clark v. McDonald's Corp., supra*, 213, F.R.D. at 209.  For these reasons, Plaintiffs have not met the basic statutory prerequisites for stating a claim for relief under

1  Title III of the ADA.[5]

2     **B.    Plaintiffs Have Failed to State a Claim for Relief Under the ADA Against**
       **These Defendants Because Plaintiffs Fail to Allege That These Defendants Are**
3      **the Current Owners of the Subject Apartments.**

4         Under Title III of the ADA, liability is limited to persons who own, lease or operate a

5  "place of public accommodation." 42 U.S.C. § 12182(a); *Lonberg v. Sanborn Theaters, Inc.*, 259

6  F.3d 1029, 2001 U.S.App.LEXIS 17418 (9th Cir. 2001).  Plaintiffs fail to state a claim for relief

7  because Plaintiffs do not allege that defendants are the current owners of the Subject Properties.

8  To the contrary, <u>three of the four defendants do not own any of the 85 identified properties</u>.

9  Defendant A.G. Spanos Construction, Inc. owns only <u>one</u> of the identified properties, an Untested

10 Property located in <u>Kansas</u>.  (RJN, Ex. 48.)

11        The Ninth Circuit explained this limitation on potentially liable parties:

12        With the exception of suits brought by the Attorney General, actions under Title
          III are limited only to injunctive relief. 42 U.S.C. § 12188(a). This is significant
13        because, after the noncompliant building has already been built, injunctive relief
          is only meaningful against the person currently in control of the building. That is,
14        the architect who built the building is by the time of suit by an eligible plaintiff out
          of the picture. This limitation on relief suggests that reading Title III to make
15        architects, and others who do not own, lease, or operate buildings, such as builders
          and construction subcontractors, liable for "design and construct" discrimination
16        would create liability in persons against whom there is no meaningful remedy
          provided by the statute.
17
   *Lonberg v. Sanborn Theatres, supra,* 259 F.3d 1029, 2001 U.S.App.LEXIS 17418, at *18.
18
          The Complaint fails to state a claim for relief because Plaintiffs have not alleged that
19
   Defendants are the current owners of the subject properties.
20
   **V.    THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH**
21         **STANDING TO SUE UNDER THE ADA.**

22     **A.    Plaintiffs Do Not Claim To Be Members of a Protected Class under the ADA,**
              **Nor Do They Purport to Sue on Behalf of Any Member of a Protected Class**
23            **under the ADA; Therefore, They Have No Standing to Sue.**

24        Because Plaintiffs are not members of the class of persons protected under Title III of the

25 ADA, any standing they have to sue must be based on an allegation that a disabled person has been

26

27        [5] Plaintiffs' failure to plead the essential statutory "elements" of a Title III claim is
28 analytically separate and distinct from their failure to establish "standing" to sue, although the
   two issues are often merged in the decisional law.

1  subject to harm flowing from Defendants' alleged discrimination or that an entity has been

2  discriminated against by Defendants because that entity was associated with disabled persons.

3      The "full limits of Art. III" may, in certain circumstances not present here, allow an

4  organization that has been "genuinely injured by conduct that violates someone's [statutory]

5  rights," to sue on behalf of and "prove that the rights of another were infringed" resulting in harm

6  to that other person. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103, n. 9. (1979).

7  What *Gladstone* teaches is that to have a "case or controversy" someone who holds substantive

8  rights under the statute in question must have suffered a harm caused by defendants' violation of

9  the statute. Then, an organization that has been genuinely injured by conduct that harms that third

10  person may sue to redress that harm. *Id.*

11      But Plaintiffs do not claim to sue on behalf of a person or entity (the class of persons) that

12  holds "substantive rights" under the ADA. Rather, Plaintiffs sue solely in their own right.

13  Therefore, since Plaintiffs do not belong to the class of persons protected under the ADA, and do

14  not sue on behalf of these persons, Plaintiffs cannot have standing to sue. See *Clark v.*

15  *McDonald's Corp, supra,* 213 F.R.D. at p. 209.

16      **B.**    <u>**Plaintiffs Do Not Allege Facts Sufficient To Establish the "Irreducible**</u>

17  <u>**Constitutional Minimum" for Standing.**</u>

18      Standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490,

19  498 (1975). It is a jurisdictional requirement, and a party invoking federal jurisdiction bears the

20  burden of establishing standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).[6] Each

21  element of standing is "an indispensable part of the plaintiff's case." (*Id.*) Federal courts are

22  diligent in observing standing requirements. *B. C. v. Plumas Unified School Dist.*, 192 F.3d

23  1260, 1264 (9th Cir. 1999) (holding that federal courts are required to examine jurisdictional

24  issues, such as standing, even sua sponte if necessary). "And, particularly in view of a recognized

25  trend of abusive ADA litigation, . . . special diligence and vigilant examination of the standing

26      [6] Every plaintiff asserting a claim for relief must meet the constitutional requirements of

27  standing by showing that it is "entitled to have the court decide the merits of the dispute or of particular issues," and that there exists "a 'case or controversy' between [the plaintiff] and the

28  defendant within the meaning of Article III." *Warth v. Seldin, supra,* 422 U.S. at 498; *accord, Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

1  requirement are necessary and appropriate to ensure the litigation serves the purposes for which

2  the ADA was enacted." *Harris v. Stonecrest Auto Center, LLC*, 472 F.Supp.2d 1208, 1214 (S.D.

3  Cal. 2007) (citation omitted).

4      Plaintiffs have sued to redress alleged ADA violations. Under 42 U.S.C. §

5  12188(b)(2)(B), money damages are not available to private litigants; remedies are instead limited

6  to injunctive relief and attorney's fees and costs. 42 U.S.C. § 12188(a)(1); *Wander v. Kaus,* 304

7  F.3d 856, 858 (9th Cir. 2002). **"In the context of declaratory and injunctive relief, [the**

8  **Plaintiffs] must demonstrate that [they have] suffered or [are] threatened with a 'concrete**

9  **and particularized' legal harm . . . coupled with 'a sufficient likelihood that [they] will again**

10  **be wronged in a similar way.'"** *Bird v. Lewis & Clark College,* 303 F.3d 1015, 1019 (9th Cir.

11  2002) (citations omitted, emphasis added).

12      To meet the Article III "irreducible constitutional minimum" of standing, Plaintiffs must

13  meet a three-pronged test:

14      First [they must have] suffered an injury in fact - an invasion of a legally protected
        interest which is (a) concrete and particularized, and (b) actual or imminent, not
15      conjectural or hypothetical. Second, there must be a causal connection between the
        injury and the conduct complained of . . . . Third, it must be likely, as opposed to
16      merely speculative, that the injury will be redressed by a favorable decision.

17  *Lujan,* 504 U.S. at pp. 560-61 (citations and internal quotation marks omitted); *Friends of the*

18  *Earth, Inc. v. Laidlaw Envtl. Services,* 528 U.S. 167, 180-181 (2000).

19      These elements must be established "separately for each form of relief sought" and for

20  each claim brought by the party invoking federal jurisdiction. *Laidlaw, supra,* 528 U.S. at 185;

21  *Lewis v. Casey,* 518 U.S. 343, 358, n. 6 (1996) ("[S]tanding is not dispensed in gross."); see also

22  *Blum v. Yaretsky,* 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to

23  injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating

24  conduct of another kind, although similar, to which he has not been subject."). Accordingly,

25  Plaintiffs in this case must allege a concrete and particularized injury causally connected to

26  Defendants' alleged conduct, for each of the 84-plus alleged Subject Properties.[7]

27  _____

28      [7] "In the ADA context, a disabled individual who is currently deterred from
    patronizing a public accommodation due to a defendant's failure to comply with the ADA has

1    Plaintiffs have not alleged that they "suffered **an injury in fact - an invasion of a legally**

2    **protected interest which is (a) concrete and particularized, and (b) actual or imminent, not**

3    **conjectural or hypothetical**" which was **caused** by Defendants' alleged conduct.    Instead,

4    Plaintiffs' "injury" is alleged to be a "frustration" of their "mission" and a diversion of their

5    resources away from their alleged usual activities to investigation of the Subject Properties and

6    litigation against the Defendants.   (Complaint, ¶¶ 68-74)

7        Diversion of resources and "frustration" of "mission" cannot support standing unless they

8    were <u>caused by</u> Defendants' alleged conduct.  See, e.g., *Independent Housing Services of San*

9    *Francisco v. Fillmore Center Associates*, 840 F.Supp. 1328, 1336 (N.D. Cal. 1993); accord, *Fair*

10   *Housing of Marin v. Jack Combs*, 285 F.3d 899, 904-905 (9th Cir. 2002), cert. denied, 573 U.S.

11   1018, 123 S. Ct. 536 (2002). Plaintiff in *Independent Housing Services of San Francisco* alleged

12   that it had spent money referring, counseling, and placing disabled people who had encountered

13   accessibility barriers at the Fillmore Center. 840 F.Supp. at p. 1336.  Similarly, in *Fair Housing*

14   *of Marin* plaintiff alleged that it had spent money in responding to citizen complaints against the

15   defendant, over and above litigation expenses. 285 F.3d at p. 905.  Both stated a sufficient causal

16   relationship between the alleged injury and defendant's alleged conduct.[8]

17

18   _____

     suffered 'actual injury.'  Similarly, a plaintiff who is threatened with harm in the future

19   because of existing or imminently threatened non-compliance with the ADA suffers 'imminent

20   injury.'" *Harris v. Stonecrest Auto Center, LLC, supra*, 472 F.Supp.2d at p. 1214; *Harris v.*
     *Del Taco*, 396 F.Supp.2d 1107, 1111 (C.D. Cal. 2005).

21

22       [8] The Ninth Circuit's decision in *Smith v. Pacific Properties and Development Corp.*,
     358 F3d. 1097 (9th Cir. 2004) is not inconsistent.  Plaintiffs in that case were a disabled

23   "tester" and the "Disabled Rights Action Committee ("DRAC").  After dismissing the
     complaint for lack of standing, <u>without leave to amend</u>, the District Court (Nevada) denied

24   DRAC's motion for reconsideration.  The court did not explain its order, nor did it offer a
     reason for not granting leave to amend.  Under these circumstances, the Ninth Circuit

25   reversed, holding that the trial court had abused its discretion in refusing to grant leave to
     amend, and that the plaintiff should have been allowed an opportunity to amend.  See 358 F.3d

26   at 1105-1106.  This was consistent with the Supreme Court's ruling in *Havens, supra*, that the
     plaintiffs therein should have been allowed to amend their complaint.  455 U.S. at 377-378.  In

27   *Smith*, DRAC had "indicated that it would be capable of amending its complaint upon remand

28   to clearly come within the *Fair Housing [of Marin]* requirement on the merits of the standing
     inquiry."  358 F.3d at 1106, n. 10.

1    In contrast, the Complaint before the Court does not allege that any member of a protected

2    class encountered non-ADA compliant features at any of the Subject Properties.  Plaintiffs do not

3    allege that they received any complaints about the Subject Properties, that they counseled, referred

4    or placed anyone who had encountered such problems, or that they otherwise responded to

5    complaints about any of the Subject Properties.

6    Plaintiffs allege only a *self-inflicted* diversion of resources, not in response to any

7    complaint about the Subject Properties.  (See Complaint at ¶¶ 68-74)  "To the extent that an injury

8    is self-inflicted . . ., the causal chain is broken."  (Moore's Federal Practice 3D, §101.41[4],

9    citing *McConnell v. FEC*, 540 U.S. 93, 228, 124 S.Ct. 619 (allegations that the challenged

10   statute's contribution limits put plaintiffs and their candidates at a "competitive injury" because

11   of their economic status and unwillingness to accept large contributions did not constitute an injury

12   "fairly traceable" to the challenged provisions of the statute).

13   Nor can mere "testing" and litigation expense satisfy the standing requirement:

14       Litigation costs, even those that may be concrete and particularized, do not suffice
         to establish standing.  An organization cannot obtain standing to sue in its own
15       right as a result of self-inflicted injuries that are not fairly traceable to the
         defendant's conduct.  Thus, allegations of injury in fact based on the expenditure
16       of resources incurred in enforcement litigation fail to establish standing.
         Expanding the definition of Article III injury to include an organization's litigation-
17       related expenses would imply that any sincere plaintiff could bootstrap standing
         simply by expending its resources in response to the actions of another.

18

19   Moore's Federal Practice 3D, §101.41[4], citing *Fair Housing Council v. Montgomery*

20   *Newspapers*, 141 F.3d 71, 80 (3d Cir. 1989); see also, *Association for Retarded Citizens v. Dallas*

21   *County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir.

22   1994).

23   In the absence of any allegation that Plaintiffs were forced to divert resources because of

24   Defendants' alleged conduct, Plaintiffs have not "suffered **an injury in fact - an invasion of a**

25   **legally protected interest which is (a) concrete and particularized, and (b) actual or imminent,**

26   **not conjectural or hypothetical**" and which was **caused** by Defendants' alleged conduct.

27   Nor have Plaintiffs met the third prong of Article III standing: "redressability."  They have

28   sued for injunctive relief under the ADA without naming either the owners of the 84+ Subject

1  Properties scattered throughout the United States or the tenants currently residing in the thousands

2  of apartment units that would have to be rebuilt or retrofitted.

> Redressability cannot rest on the assumption that a nonparty to the action will act
> in a certain way on the basis of a decision in plaintiff's favor, and that such action
> would ultimately redress plaintiff's injury.  If any prospective benefit to the
> plaintiff depends on the actions of independent actors who retain broad and
> legitimate discretion over which the court has no control, the redressability element
> of standing is not met.

7  Moore's Federal Practice 3D, § 101.42[5], citing *ASARCO, Inc. v. Kadish*, 490 U.S. 605,

8  615 (1989).

### C.   Plaintiffs Have Failed to Allege Facts Sufficient to Show Standing to Seek Injunctive Relief under Title III of the ADA.

Standing is not dispensed "in gross."  Rather, a plaintiff must demonstrate standing

separately for each form of relief sought (injunction, damages, civil penalties, etc.).  *Friends of*

*the Earth, Inc. v. Laidlaw Environmental Services, Inc., supra,* 528 U.S. at p. 184.

Before a court will order a business to undergo the expense of rebuilding or retrofitting

facilities to comply with the ADA, courts first require that plaintiff show that it has **standing to**

**seek injunctive relief**:

> In order to establish an injury in fact sufficient to confer standing to pursue
> injunctive relief, the Plaintiff must demonstrate a "real or immediate threat that the
> plaintiff will be wronged again - - a likelihood of substantial and immediate
> irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 75 L. Ed. 2d
> 675, 103 S. Ct. 1660 (1983).  In evaluating whether an ADA plaintiff has
> established a likelihood of future injury, courts have looked to such factors as: (1)
> the proximity of the place of public accommodation to plaintiff's residence, (2)
> plaintiff's past patronage of defendant's business, (3) the definitiveness of
> plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant.
> . . .

22  *Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042 (C.D. Cal. 2005).

Regarding "proximity," the district court in *Molski v. Mandarin Touch* determined that the

ADA plaintiff's residence was over 100 miles from the defendant Mandarin Touch Restaurant in

Solvang, California, a fact which weighed heavily against standing to sue for injunctive relief.

385 F.Supp. at p. 1045.  In the instant case, Plaintiffs do not even pretend to have met the

"proximity" test: they allege that they are located in Marin County, Napa County, Florida,

Atlanta, and Washington D.C. and that the Subject Properties are located throughout the United

1  States, e.g., in New Mexico, Nevada, Arizona, Colorado, Texas, Kansas, and North Carolina.

2  Plaintiffs obviously fail the "proximity" test.[9] For the same reason, Plaintiffs do not allege, and

3  cannot show, "frequency of travel" near the Subject Properties or likelihood that they will return

4  to the Subject Properties.

5      Nor do Plaintiffs allege "past patronage or business" – the Complaint is devoid of any

6  allegation that any Plaintiff, any member of any Plaintiff, or any member of a protected class ever

7  encountered non-ADA compliant features at any of the Subject Properties.

8      And there is an even more basic reason why these plaintiffs cannot establish standing to

9  sue for injunctive relief. Because Plaintiffs are not themselves disabled and because Plaintiffs do

10  not sue on behalf of disabled persons, Plaintiffs can never show a "likelihood of substantial and

11  immediate irreparable injury" to themselves.  No Plaintiff (and no identified disabled person)

12  resides near most of the Subject Properties. No Plaintiff (and no identified disabled person) ever

13  attempted to rent an apartment at any of the Subject Properties.  No Plaintiff (and no identified

14  disabled person) plans to rent at any of the Subject Properties.

15      In short, Plaintiffs fail to allege any facts that demonstrate that they (or any identified

16  disabled person) will likely suffer "substantial and immediate irreparable injury."

17  **VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE FHAA.**

18

19      To state a claim under the FHAA, plaintiffs must plead and prove (1) that defendants'

20  discrimination harmed a person protected by the FHAA; and (2) that plaintiffs have standing to

21  sue to redress the harm caused to the protected person whose FHAA rights were violated. *Oak*

22  *Ridge Care Center v. Racine County*, 896 F.Supp. 867 (E.D . Wis. 1995).

23  / / /

24

___

25      [9] See also, *Gladstone, Realtors v. Bellwood*, *supra*, 441 U.S. 91, 112 & n. 25 (refusing
to grant standing to individual plaintiffs that did not live in the community in which the alleged

26  discrimination occurred); *Conservation Law Found. of New England v. Reilly*, 950 F.2d 38, 43
(1st Cir. 1991) (Denying standing to plaintiff entity seeking nationwide injunctive relief under

27  CERCLA at approximately 1200 facilities, the court stated: "The absence of plaintiffs from the

28  majority of regions of the country in this case demonstrates the lack of 'concrete factual
context conducive to a realistic appreciation of the consequences of judicial action.").

**A.** **Plaintiffs Have Not Alleged a Claim for Relief in Their Own Right Because Plaintiffs Are Neither Disabled Renters Nor Entities That Claim to Have Been Denied Rentals Because of Their Association With Disabled Persons.**

To state a claim in themselves or on behalf of others under the FHAA, plaintiffs must plead that plaintiffs belong to or sue on behalf of a "class of persons" protected by the FHAA <u>and that a person who is a member of the protected class would have rented defendants' housing but for</u> defendants' discriminatory housing practices. *Michigan Protection and Advocacy Services, Inc. v. Basin,* 799 F.Supp. 695, 706 (Mich. 1992); *Oak Ridge Care Center, Inc. v. Racine County, supra,* 896 F.Supp. at 873-874.[10] The class protected under the FHAA consists of persons denied a rental because they are disabled or because they associate with disabled persons. *Oak Ridge Care Center, Inc., supra,* 896 F.Supp. at pp. 873-874.

42 U.S.C. section 3604(f)(1) provides:

> [I]t shall be unlawful . . . (f)(1) to discriminate[11] in . . . the rental, or to otherwise make unavailable or deny . . . a dwelling to any . . . renter . . . .
> (A)    . . . because of handicap of . . . <u>that</u> renter;
> (B)    . . . because of handicap of . . . a person. . . <u>intending</u> to

_____

[10] 42 U.S.C. sections 3604(f)(1) and (f)(2) are intended "to prohibit not only discrimination against [a] primary purchaser or named lessee, but also to prohibit denials of housing opportunities to applicants because they have children, parents, friends, spouses, roommates, patients, subtenants or other associates *who have disabilities.*" (The House Judiciary Committee report on the Fair Housing Act of 1988, H.R. Rep. 100-711.)

[11] Discrimination is defined in 42 U.S.C. section 3604 (f)(3) and provides:
(3) for purposes of . . . subsection([f]), discrimination includes:
(C)    . . . failure to design and construct [rental] dwellings in such a manner that—
    (I)    the public use and common use portions of such dwellings **are readily accessible to and usable by handicapped persons**;
    (ii)    all the doors designed to allow passage into and within all premises within such dwellings are **sufficiently wide to allow passage by handicapped persons in wheelchairs**; and
    (iii)    all premises within such dwellings contain the following features of adaptive design:
        (I)    **an accessible route** into and through the dwelling;
        (II)    light switches, electrical outlets, thermostats, and other environmental controls **in accessible locations**;
        (III)    **reinforcements in bathroom** walls to allow later installation of grab bars; and
        (IV)    **usable kitchens and bathrooms** such that an individual in a wheelchair **can maneuver about the space.**

reside in that dwelling after it is . . .rented, or made available,; or

(C)    . . . because of handicap of . . . any person associated with that . . . renter . . . .

Distilled, 42 U.S.C., section 3604 (f)(1) makes it unlawful to fail to design and construct apartments in such a manner that the apartments and the common areas are accessible to and usable by handicapped persons, resulting in the premises being made "unavailable" or "denied" to a renter (A) because that renter is handicapped; or (B) because a handicapped person intends to live with that renter; or (C) because that renter's friends or associates are handicapped.

42 U.S.C., section 3604 (f)(2) provides:

It shall be unlawful—
(f)(2)    To discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . or in the provision of . . . facilities in connection with . . . rental of a dwelling . . .
(A)    . . . because of a handicap of that person; or
(B)    . . . because of the handicap of . . . a person . . . intending to reside in that dwelling after it is . . . rented, or made available; or
(C)    . . . because of the handicap of . . . any person associated with that person.

Section 3604 (f)(2), makes it unlawful to design and construct apartments in such a manner that the apartments and common areas are not accessible to and usable by a person such that rental of the dwelling is denied (A) because that person is handicapped; or (B) because of the handicap of a person intending to live with the renter; or (C) because people a renter associates with are handicapped.

Plaintiffs do not plead that they (Plaintiffs) were denied a rental because they are disabled (a member of the protected class). Plaintiffs do not claim that they were denied a rental because they associate with handicapped persons (also members of the protected class). Moreover, plaintiffs do not sue on behalf of third party disabled persons.

Plaintiffs do not claim to be members of the class of persons protected under the FHAA. Plaintiffs do not sue on behalf of such persons. Plaintiffs do not allege that any person having rights under the FHAA has actually been denied a rental by Defendants' alleged conduct.

In short, Plaintiffs fail to state a claim for relief under the FHAA in themselves or on behalf of third parties.

/ / /

**B.    Plaintiffs Have Failed To State a Claim For Relief Under the FHAA Because Plaintiffs Fail to Allege That These Defendants Are the Owners of the Subject Properties; Only Current Owners Are Liable Under the FHAA.**

As explained above, 42 U.S.C. sections 3604(f)(1) and (f)(2) make it "unlawful" to deny a rental to disabled persons, or to deny a rental to those associated with disabled persons.  It is landlords - not builders - who are in a position to deny rentals:

> The "failure to design and construct" language of 3604(f)(3)(C) might be thought to limit the targets of this provision to those who 'design' or 'construct' covered multi-family dwellings, but this interpretation seems wrong.  As one court has observed, 3604(f)(3)(C) "is not a description of who is liable.  Rather, it is a description of what actions constitute discrimination."

R. Schwemm, "Barriers to Accessible Housing: Enforcement Issues in Design and Construction Cases under the Fair Housing Act, 40 U. Richmond L.Rev. 753, 776 (2006) (and authorities cited therein).

"The conduct and decision-making that Congress sought to affect [by passage of the FHAA] was that of persons in a position to frustrate . . . the housing choices of handicapped individuals who seek to buy or lease housing . . . [P]rimarily . . . those who own the property of choice and their representatives."  *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1283 (3d Cir. 1993).  "[A]fter a noncompliant building has already been built . . . injunctive relief is only meaningful against the person <u>currently</u> in control of the building."  *Lonberg v. Sanborn Theatres, supra,* 259 F.3d 1029, 2001 U.S. App. LEXIS 17418, at * 18.  "[The] presence [of the current owner] as a party in [an FHAA] suit appears imperative in order to afford full relief."  *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40 F.Supp.2d 700, 712 (D.C. Md. 1999).[12]

---

[12] Professor Schwemm explains: "Well established tort principles, which were in place at the time of the 1988 FHAA's enactment and which continue in force today, provide for liability for residential landlords based on their property's defects, even if such a landlord had no role in causing those defects and so long as he has had sufficient time to discover and correct the defects." (40 U. Richmond L.Rev. at 797-798.)  Commercial landlords are also in a position to place "indemnity" agreement provisions into their contract to purchase an apartment building from a prior owner or prior developer.

**VII.    THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH STANDING TO SUE UNDER THE FHAA.**

**A.    Plaintiffs Do Not Claim To Be Members of a Protected Class under the FHAA, Nor Do They Purport to Sue on Behalf of Any Member of a Protected Class under the FHAA; Therefore, They Have No Standing to Sue.**

To have standing to sue, plaintiffs must be members of the class of persons protected under the FHAA, or they must sue on behalf of members of the protected class.  As explained in *Wasserman v. Three Seasons Assoc. No. 1, Inc.*, 998 F. Supp. 1445 (S.D. Fla. 1998):

> **Plaintiffs do not dispute that they are not members of a class protected under the FHA. Rather, they contend that they are entitled to standing as "aggrieved persons" under the FHA.**
>
> * * * *
>
> The Supreme Court jurisprudence applying the "aggrieved persons" provision of the FHA makes clear that an "aggrieved person" is not just any non-class member who protests what he perceives to be a discriminatory housing policy.  Rather, an "aggrieved person" is a non-class member who (1) suffers actual injury as an ancillary effect of present or imminent discrimination against a protected class member and (2) challenges the discriminatory policy on behalf of that class member.

*Id.*, 998 F.Supp. at 1446-1448.

In the instant case, Plaintiffs do not claim to be disabled renters, nor do they sue on behalf of disabled renters who claim to have been denied a rental at any of the facilities sued upon. Therefore, Plaintiffs lack standing to bring this action.

**B.    Plaintiffs Do Not Allege Facts Sufficient To Establish the "Irreducible Constitutional Minimum" for Standing.**

As noted in connection with Plaintiffs' ADA claim, standing is a "threshold question in every federal case." *Warth v. Seldin*, *supra*, 422 U.S. at p. 498.  The same is true with respect to their claim under the FHAA.  As with the ADA, to sue under the FHAA Plaintiffs must, as an "irreducible constitutional minimum", establish that:

> First [they must have] suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, *supra*, 504 U.S. at pp. 560-61 (citations and internal quotation marks omitted). These

1  elements must be established "separately for each form of relief sought" and for each claim

2  brought by the party invoking federal jurisdiction. *Laidlaw, supra,* 528 U.S. at 185.

3      As discussed in section V.B, *supra,* Plaintiffs have not alleged that they "suffered **an**

4  **injury in fact - an invasion of a legally protected interest which is (a) concrete and**

5  **particularized, and (b) actual or imminent, not conjectural or hypothetical**" which was **caused**

6  by Defendants' alleged conduct. This omission is as fatal to standing under the FHAA as it is to

7  standing under the ADA. Diversion of resources and "frustration" of "mission" cannot support

8  Article III standing unless they were <u>caused</u> <u>by</u> Defendants' alleged conduct.

9      The Complaint does not allege (1) that any member of a protected class encountered non-

10  FHAA compliant features at any of the Subject Properties; (2) that Plaintiffs received any

11  complaints about the Subject Properties; (3) that Plaintiffs counseled or referred anyone who had

12  encountered such problems; or (4) that Plaintiffs otherwise responded to any complaints about any

13  of the Subject Properties. And, as discussed in section V.B, above, Plaintiffs' self-inflicted

14  "testing" and litigation expense fail to meet the standing requirement.

15      Nor can Plaintiffs satisfy the "redressability" prong of Article III standing. They have

16  sued for injunctive relief under the FHAA without naming either the owners of the 84+ Subject

17  Properties scattered throughout the United States or the tenants residing in the thousands of

18  apartment units that would have to be rebuilt or retrofitted.

19      In short, Plaintiffs cannot establish Article III standing to sue under the FHAA for the same

20  reasons they cannot establish Article III standing to sue under the ADA.

21  **C.    Plaintiffs Have Failed to Allege Facts Sufficient to Show Standing to Seek**
        **Injunctive Relief Under the FHAA.**

22

23      The protected class under the ADA consists of disabled persons who have been denied

    access to public facilities and entities denied access to public facilities because of the entities'
24
    association with disabled persons. The class of persons protected under the FHAA are persons
25
    denied a rental because they are disabled or because they associate with disabled persons. *Oak*
26
    *Ridge Care Center, Inc. v. Racine County, supra,* 896 F.Supp. at pp. 873-874. For purposes of
27
    establishing standing to sue for injunctive relief under the FHAA, however, this is a distinction
28

---

1   without a difference. In order to establish an injury-in-fact sufficient to confer standing to pursue

2   injunctive relief, Plaintiffs must demonstrate a "real or immediate threat that the plaintiff[s] will

3   be wronged again – a likelihood of substantial and immediate irreparable injury." *City of Los*

4   *Angeles v. Lyons, supra,* 461 U.S. at 111.

5       In order to establish such a "threat" sufficient to confer standing to sue for injunctive

6   relief, a plaintiff must satisfy the same test that was set forth by the district court in *Molski v.*

7   *Mandarin Touch Restaurant*, supra, 385 F.Supp.2d at p. 1045. For the same reasons Plaintiffs

8   cannot meet that test with respect to their claim for injunctive relief under the ADA, they cannot

9   meet the test with respect to their claim for injunctive relief under the FHAA. See discussion at

10  section V.C., *supra.*

11  **VIII.   PLAINTIFFS' ADA AND FHAA CLAIMS FOR RELIEF ARE BARRED BY THE
         STATUTE OF LIMITATIONS.**

12
         Under the FHAA, like other statutes, a defendant's alleged wrongful act triggers the statute

13
14  of limitations — requiring the potential plaintiff to file its action before the statute of limitations

15  runs. The statute of limitations for any claim brought under the FHAA provides that the claim

16  must be brought within "two years after the occurrence or the termination of an alleged

17  discriminatory housing practice." 42 U.S.C. § 3613(a)(l)(A).

18      The statute of limitations for ADA claims brought in California is generally held to be two

19  years. *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1137, n. 2 (9th Cir. 2002).[13]

20      Plaintiffs filed this complaint on June 20, 2007. Hence, any property sued on where

21  construction was completed before June 20, 2005, falls outside of the statute of limitations and

22  cannot properly be subject to suit.   Thus, the statute of limitations has run as to most of the

23  Subject Properties.[14]

24
25      [13]  The ADA defines "discrimination" to "include[] . . . a failure to design and
    construct facilities . . . that are readily accessible to and, usable by, individuals with
26  disabilities. . . ." (42 U.S.C. 12182(c)(1).)

27      [14]  As to these properties, regarding the remaining properties - - where construction was
    completed within the last two years - defendants do not own any of these properties, as they
28  have already been completed and sold, only the owners, and not defendants, have liability
    under the ADA and FHAA. (See discussion, above.)

1        The statute of limitations was thoroughly analyzed in *Moseke v. Miller & Smith, Inc.*, 202

2    F.Supp.2d 492 (E.D. Va. 2002) in which the plaintiff sued developers and architects, alleging

3    noncompliance with the FHAA design and construction provisions. Rejecting plaintiff's attempts

4    to construe the statute of limitations narrowly, the court concluded that "the plain meaning of 'the

5    occurrence . . . of a discriminatory housing practice' is a discrete event or incident that

6    encompasses a discriminatory custom." *Id.*, at 503. The statute of limitations begins to run when

7    the alleged wrongful act or omission occurs or ceases occurring. *Id.*

8        Given that the alleged wrongful act in this case is the design and construction of apartment

9    complexes, the wrongful act ceases on the date the design and construction is completed. See

10    *United States v. Taigen & Sons, Inc.*, 303 F.Supp.2d 1129, 1144 (D. Idaho 2003) (for a FHA

11    case, the alleged violation occurred on "the date the design of construction was completed");

12    *Thompson v. Mountain Peak Assocs. LLC*, 2006 U.S. Dist. LEXIS 36981, at *7 (D. Nev. June

13    5, 2006) ("the last act of discrimination occurs upon the completion of the design and construction

14    of the noncompliant structure or complex"); see also, *Alliance for Disabled in Action, Inc. v.*

15    *Renaissance Enters.*, 372 N.J. Super 409, 417 (N.J. Super. Ct. 2004) (holding that for a similar

16    New Jersey law on design and construct claims, "the appropriate date to start the

17    period of limitations is the date construction was completed").[15]

18        **A.    The Continuing Violation Doctrine Does Not Apply to the Plaintiffs' Untimely**
        **Claims.**

19

20        Plaintiffs will argue that the continuing violation doctrine and continuing existence of

21    noncomplying properties keep their claims alive. However, this argument fails. See, e.g.,

22    *Moseke*, 202 F.Supp.2d at 501; *Taigen, supra*, 303 F.Supp. at 1141.

23        The continuing violation doctrine may be applied only where a plaintiff "challenges not just

24    one incident of conduct violative of the [Fair Housing] Act, but an unlawful practice that continues

25    into the limitations period." *Havens, supra*, 455 U.S. at p. 381. The doctrine, which is narrowly

26    applied, is appropriate only for "a series of related and continuing discriminatory acts" at least one

27        [15] Many courts have found that the issuance of a certificate of occupancy is the best

28    indicator of the date of completion, especially in the case of buildings which contain rental
    units. See, e.g., *Taigen*, 202 F.Supp.2d at 1144.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS (CASE NO. C07-03255-SBA)

1    of which occurred within the limitations period.[16] (*Moseke*, 202 F.Supp.2d at 504), and is limited

2    to situations "where the type of violation is one that could not reasonably have been expected to

3    be made the subject of a lawsuit when it first occurred because its character as a violation did not

4    become clear until it was repeated during the limitations period." *Hargraves v. Capital City*

5    *Mortgage Corp.*, 140 F.Supp.2d 7, 18 (D.D.C. 2000). The doctrine is not relevant here, where

6    each and every Subject Property would have been subject to ADA and FHAA claims immediately

7    upon completion.

8         Design and construction, as a violation, is a discrete act with a clear ending point—the date

9    on which construction or design is completed at each individual building.[17] The alleged existing

10   inaccessible features are, at best, continuing *effects* of the initial discriminatory act of design and

11   construction.   Hence, the continuing violation doctrine has been rejected where an *effect* is

12   continuing but the defendant's *act* is not. *Nat'l Adver. Co. v. City of Raleigh,* 947 F.2d 1158,

13   1166 (4th Cir. 1991) ("[a] continuing violation is occasioned by continual unlawful acts, not

14   continual ill effects from an original violation"); see *Tolbert v. State of Ohio Dep't of Transp.,* 172

15   F.3d 934, 940 (6th Cir. 1999) (in a complaint alleging discriminatory allocation of sound barriers

16   along the highway, the continuing lack of such barriers constituted a "continuing ill effect" and

17   was not the result of continuing unlawful acts).

18        In *Moseke,* the court held that "a FHA non-compliant building which contains inaccessible

19   features to disabled persons is more akin to a continuing effect rather than a continuing violation

20   under the FHA." *Moseke,* 202 F.Supp.2d at 507. *Thompson,* U.S. Dist. LEXIS 36981, at *8

21   ("the noncompliant buildings at issue in this case constitute continuing effects of past

22   discriminatory acts, not continuing violations of the FHA").        Plaintiffs have alleged claims

---

24    [16] A second type of continuing violation is a systemic violation, which refers to an
25    "ongoing discriminatory policy or system." *Moseke,* 202 F.Supp.2d at p. 504. However, the
      doctrine is irrelevant to this case because "inaccessible features do not constitute a
26    [discriminatory] policy." *Id.*

27    [17] If this were to the contrary, then Congress's clear mandate that the accessibility
      requirements apply only to multifamily dwellings designed and constructed after a certain date,
28    42 U.S.C. § 3504(f)(3)(C), would have no meaning.  The statute of limitations would be
      eviscerated.

1  under the ADA and FHAA based on Defendants' alleged design and construction.  As a result,

2  the statute of limitations began to run at each property at the time the design and construction was

3  completed *(i.e.,* issuance of the certificate of occupancy).

4       **B.     Plaintiffs Cannot Aggregate Alleged Violations Into A Continuing Practice.**

5       Nor can the continuing violation doctrine be applied based on an aggregation of

6  Defendants' alleged violations.  Although Plaintiffs allege "a continuous pattern and practice,"

7  this allegation cannot be used to aggregate discrete acts into a series of related acts to invoke the

8  continuing violation doctrine.  In *Nat'l. Railroad Passenger Corp. v. Morgan*, 536 U.S. 101

9  (2002), the Supreme Court held that "discrete acts that fall within the statutory time period do not

10 make timely acts that fall outside the time period."  *Id*. at 113.   Instead, "each discrete

11 discriminatory act starts a new clock for filing charges alleging that act."  In this case, the design

12 and construction of each of the Subject Properties is a discrete act.  "There is simply no indication

13 that the term 'practice' converts related discrete acts into a single unlawful practice for the

14 purposes of timely filing."  *Id.,* at 111.

15                              **CONCLUSION**

16       For the foregoing reasons, Defendants' Motion to Dismiss should be granted in its

17 entirety.

18 Dated: August 15, 2007                    FREEMAN, D'AIUTO, PIERCE, GUREV,
                                             KEELING & WOLF
19

20                                           By _____
21                                                LEE ROY PIERCE, JR.
                                             Attorneys for Defendants A.G. Spanos
22                                           Construction, Inc.; A.G. Spanos Development,
                                             Inc.; A.G. Spanos Land Company, Inc.; A.G.
                                             Spanos Management, Inc.
23

24

25

26

27

28