MAXWELL M. FREEMAN, #31278
LEE ROY PIERCE, JR., #119318
MICHAEL L. GUREV, #163268
THOMAS H. KEELING, #114979
FREEMAN, D'AIUTO, PIERCE,
  GUREV, KEELING & WOLF
A PROFESSIONAL LAW CORPORATION
1818 Grand Canal Boulevard, Suite 4
Stockton, California 95207
Telephone: (209) 474-1818
Facsimile: (209) 474-1245
E-mail:     lrpierce@freemanfirm.com
            mgurev@freemanfirm.com
            tkeeling@freemanfirm.com

Attorneys for Defendants A.G. Spanos
Construction, Inc.; A.G. Spanos
Development, Inc.; A.G. Spanos
Land Company, Inc.; A.G. Spanos
Management, Inc.

IN THE UNITED STATED DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Fair Housing Alliance, Inc., et al.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>A.G. Spanos Construction, Inc., et al.<br><br>                    Defendants. | CASE NO. C07-03255-SBA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT**<br><br>[Fed. R. Civ. P. 12(e)]<br><br>Hearing Date: October 2, 2007<br>Time:         1:00 p.m.<br>Dept.:        Courtroom 3<br><br>Complaint Filed: June 20, 2007 |

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

AUTHORITY RE MOTION FOR MORE DEFINITE STATEMENT . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.  THE COMPLAINT'S ALLEGATIONS ARE "VAGUE AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE UNDER THE ADA BECAUSE PLAINTIFFS DO NOT CLAIM TO BE MEMBERS OF A PROTECTED CLASS UNDER THE ADA, NOR DO THEY PURPORT TO SUE ON BEHALF OF ANY MEMBER OF A PROTECTED CLASS UNDER THE ADA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT ARE "VAGUE AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE UNDER THE ADA BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO ESTABLISH THE "IRREDUCIBLE CONSTITUTIONAL MINIMUM" FOR STANDING UNDER ARTICLE III OF THE U.S. CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. THE COMPLAINT'S ALLEGATIONS ARE "VAGUE AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE UNDER THE FHAA BECAUSE PLAINTIFFS DO NOT CLAIM TO BE MEMBERS OF A PROTECTED CLASS UNDER THE FHAA, NOR DO THEY PURPORT TO SUE ON BEHALF OF ANY MEMBER OF A PROTECTED CLASS UNDER THE FHAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV. THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT ARE "VAGUE AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE UNDER THE FHAA BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO ESTABLISH THE "IRREDUCIBLE CONSTITUTIONAL MINIMUM" FOR STANDING UNDER ARTICLE III OF THE U.S. CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**CASES:**

*ASARCO, Inc. v. Kadish*,
490 U.S. 605, 615, (1989) .................................................... 8

*Association for Retarded Citizens v. Dallas County Mental Health &
   Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) ....... 8

*B. C. v. Plumas Unified School Dist.*
   192 F.3d 1260 (9th Cir. 1999) ............................................ 5, 11

*Bird v. Lewis & Clark College*
   303 F.3d 1015 (9th Cir. 2002) ............................................... 5

*Blum v. Yaretsky*
   457 U.S. 991 (1982) ....................................................... 6

*City of Los Angeles v. Lyons, supra,*
   461 U.S. at 111 .......................................................... 12

*Conservation Law Found. of New England v. Reilly,*
   950 F.2d 38, 43 (1st Cir. 1991) ............................................. 9

*Fair Housing Council v. Montgomery Newspapers,*
   141 F.3d 71, 80 (3d Cir. 1989) .............................................. 8

*Fair Housing of Marin v. Jack Combs*
   285 F.3d 899 (9th Cir. 2002) ................................................ 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services*
   528 U.S. 167 (2000) ................................................ 5, 6, 8, 11

*Gladstone Realtors v. Village of Bellwood*
   441 U.S. 91 (1979) ....................................................... 4, 9

*Harris v. Del Taco*
   396 F.Supp.2d 1107 (C.D. Cal. 2005) ......................................... 6

*Harris v. Stonecrest Auto Center, LLC*
   472 F.Supp.2d 1208 (S.D. Cal. 2007) ........................................ 5, 6

*Havens Realty Corp. v. Coleman*
   455 U.S. 363 (1982) ....................................................... 5

*Independent Housing Services of San Francisco v. Fillmore Center Associates*
   840 F.Supp. 1328 (N.D. Cal. 1993) ........................................... 6

*Lewis v. Casey*
   518 U.S. 343 (1996) ....................................................... 6

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ....................................................... 5

*McConnell v. FEC*,
    540 U.S. 93, 228, 124 S.Ct. 619 ............................................. 7

*Molski v. Mandarin Touch Restaurant*
    385 F.Supp.2d 1042 (C.D. Cal. 2005) ................................. 9, 12

*Oakridge Care Center, Inc. v. Racine County,*
    896 F.Supp. 867 ( E.D. Wisc. 1995) .................................... 12

*Smith v. Pacific Properties and Development Corp.*,
    358 F.3d. 1097 (9th Cir. 2004) ............................................. 7

*Wander v. Kaus*
    304 F.3d 856 (9th Cir. 2002) ................................................ 5

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................... 4, 5, 11

*Wasserman v. Three Seasons Assoc. No. 1, Inc.,*
    998 F. Supp. 1445 (S.D. Fla. 1998) .................................... 10

**FEDERAL STATUTES:**

42 U.S.C. § 12188(b)(2)(B) ........................................................ 5

Federal Rule of Civil Procedure 12(e) ........................................ 4

Federal Rules of Civil Procedure 12(b)(6) ................................. 8

Federal Rules of Civil Procedure 12(b)(7) ................................. 8

Federal Rules of Civil Procedure 12(f) ...................................... 5

**OTHER AUTHORITIES:**

Moore's Federal Practice 3D, §101.41[4] ................................... 6

Defendant A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G. Spanos Land Company, Inc., and A.G. Spanos Management, Inc. (collectively, "Defendants") respectfully submit this Memorandum of Points and Authorities in support of their Motion for More Definite Statement from plaintiffs National Fair Housing Alliance, Inc., Fair Housing of Marin, Inc., Fair Housing Napa Valley, Inc., Metro Fair Housing Services, Inc., and Fair Housing Continuum, Inc. (collectively, "Plaintiffs").

## INTRODUCTION

Plaintiffs are five non-profit organizations located in Marin County, Napa Valley, Atlanta, Georgia, Florida, and Washington, D.C. (Complaint, ¶¶ 1, 15-19) They allege that Defendants have been involved in the design and construction of at least 84 multifamily complexes in California, Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida. (Complaint, ¶ 26) Plaintiffs claim to have identified 35 apartment complexes in California, Arizona, Nevada, Texas, Kansas, Georgia, and Florida (the "Tested Properties") that fail to meet the accessibility requirements of the ADA and FHAA. (Complaint, ¶ 3) They also allege on information and belief that 49 additional untested apartment complexes in 10 states which Defendants designed or constructed after March, 1991 (the "Untested Properties") also violate ADA and FHAA accessibility requirements. (Complaint, ¶ 6) Defendants are also alleged to have designed, constructed, and/or managed an unknown number of as-yet-unidentified housing complexes in locations not yet known to Plaintiffs. (Complaint, ¶ 27)

Plaintiffs do not allege that they or any of their members, or indeed any disabled persons, ever attempted to rent an apartment at any of the Subject Properties or that any of the Plaintiffs or their members or any disabled person ever intends to do so.

Plaintiffs do not allege that any of their "testers" was disabled. None of the alleged "testers" is named as a plaintiff or identified in the Complaint.

Plaintiffs do not allege that any member of a protected class under the ADA or FHAA has ever encountered any discriminatory conduct at any of the Subject Properties. Nor do Plaintiffs allege that they are suing on behalf of—or at the request of—any member of a

protected class. Plaintiffs do not allege that they are suing with the knowledge or approval of any such person.

Plaintiffs do not allege that they have counseled, spoken to, or otherwise expended any resources in communicating with any member of a protected class who claims to have encountered non ADA/FHAA compliant features in any of the Subject Properties.

Plaintiffs do not allege any facts purporting to show how non-profit community organizations in Marin County, Napa Valley, Florida, Atlanta, or Washington D.C. were injured by allegedly non-compliant apartment complexes located in New Mexico, Nevada, Arizona, Colorado, Texas, Kansas, and North Carolina. There is, for example, no allegation that noncompliant features in an untested apartment complex in Kansas in any way caused plaintiff Fair Housing of Napa Valley to "divert significant and scarce resources" or otherwise frustrated its "mission." And again, neither Fair Housing of Napa Valley nor any other plaintiff alleges that they have counseled, spoken to, or otherwise expended any resources in communicating with any member of a protected class who claimed to have encountered non-ADA/FHAA compliant features in an apartment complex located in Kansas or in any other apartment complex designed or constructed by Defendants.

In light of the Complaint's omissions, vagaries and ambiguities, Defendants are entitled, at the very least, to a more definite statement.[1] What, for example, was the "concrete and particularized" injury-in-fact suffered by a Marin County non-profit community advocacy organization as a result of alleged non ADA compliant features in an apartment complex located in Overland Park, Kansas, which Plaintiffs allege is "untested"? What member of any class protected under either the ADA or the FHAA has ever encountered non ADA compliant features in an apartment complex allegedly built in Arizona sometime during the mid-1990s? If such a person exists, what was her disability? Is she the same individual

---

[1] Concurrently with the filing of this motion, Defendants are filing a Motion to Dismiss under F.R.C.P. 12(b)(6), a Motion to Strike under F.R.C.P. 12(f), and a Motion to dismiss under F.R.C.P. 12(b)(7) and 19 based on Plaintiffs' failure to name indispensable parties. While each motion is separately noticed and briefed, Defendants' concurrently filed Request for Judicial Notice, with exhibits, applies to all four motions.

1  who encountered non-compliant features in Duluth, Georgia? Or was that someone else? On
2  whose behalf, if anyone's, do Plaintiffs purport to sue? Were any of their "testers" disabled
3  individuals?
4        Plaintiffs have asked this Court for an injunction commanding Defendants to rebuild or
5  retrofit over 10,000 apartment units scattered throughout the United States. Yet, as a matter of
6  public record subject to judicial notice, three of the Defendants do not own any of the Subject
7  Properties. The fourth defendant owns only one of the Subject Properties, and that one is
8  located in Kansas. Plaintiff does not even identify the owners of the Subject Properties, much
9  less name them as defendants. Needless to say, the compliance or non-compliance of the
10 Subject Properties cannot be adjudicated – and certainly no injunction against those properties
11 could issue – without those owners (and possibly the current tenants) being before the Court.
12 Indeed, none of the Plaintiffs or Defendants would have the right to insist upon a proper
13 inspection of the Subject Properties, and the Court would have no power to compel such an
14 inspection. No allegations of the Complaint even begin to plead facts which could serve as a
15 basis for addressing such issues.

16 **AUTHORITY RE MOTION FOR MORE DEFINITE STATEMENT**

17       Federal Rule of Civil Procedure 12(e) provides: "If a pleading to which a responsive
18 pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to
19 frame a responsive pleading, the party may move for a more definite statement before
20 interposing a responsive pleading." "[I]f [a] complaint does not sufficiently answer question[s]
21 of standing . . . [a] defendant may move for a more definite statement of fact." *Fair Housing*
22 *in Huntington Committee Inc. v. Town of Huntington,* 316 F.3d 357, 362 (2d Cir. 2003)
23 citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 383, 102 S. Ct. 1114 (1982) (Powell,
24 J., concurring).
25 / / /
26 / / /
27 / / /
28 / / /

## ARGUMENT

**I. THE COMPLAINT'S ALLEGATIONS ARE "VAGUE AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE UNDER THE ADA BECAUSE PLAINTIFFS DO NOT CLAIM TO BE MEMBERS OF A PROTECTED CLASS UNDER THE ADA, NOR DO THEY PURPORT TO SUE ON BEHALF OF ANY MEMBER OF A PROTECTED CLASS UNDER THE ADA.**

The "full limits of Art. III" may, in certain circumstances not present here, allow an organization that has been "genuinely injured by conduct that violates someone's [statutory] rights," to sue on behalf of and "prove that the rights of another were infringed" resulting in harm to that other person. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103, n. 9. (1979). What *Gladstone* teaches is that to have a "case or controversy" someone who holds substantive rights under the statute in question must have suffered a harm caused by defendants' violation of the statute. Then, an organization that has been genuinely injured by conduct that harms that third person may sue to redress that harm. *Id.*

In the instant case, Plaintiffs do not claim to sue on behalf of a person or entity (the class of persons) that holds "substantive rights" under the ADA. Rather, Plaintiffs sue <u>solely</u> in their own right. Therefore, since Plaintiffs do not belong to the class of persons protected under the ADA, and do not sue on behalf of these persons, Plaintiffs cannot have standing to sue. See *Clark v. McDonald's Corp,* 213 F.R.D. 198, 209 (N.J. 2003).

If Plaintiffs intended to sue on behalf of the class of persons who hold substantive rights under the ADA, their complaint is hopelessly "vague" regarding such allegations, and must be clarified.

**II. THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT ARE "VAGUE AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE UNDER THE ADA BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO ESTABLISH THE "IRREDUCIBLE CONSTITUTIONAL MINIMUM" FOR STANDING UNDER ARTICLE III OF THE U.S. CONSTITUTION.**

Standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It is a jurisdictional requirement, and a party invoking federal jurisdiction

/ / /

/ / /

bears the burden of establishing standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).[2] Each element of standing is "an indispensable part of the plaintiff's case." (*Id.*) Federal courts are diligent in observing standing requirements. *B. C. v. Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (holding that federal courts are required to examine jurisdictional issues, such as standing, even sua sponte if necessary). "And, particularly in view of a recognized trend of abusive ADA litigation, . . . special diligence and vigilant examination of the standing requirement are necessary and appropriate to ensure the litigation serves the purposes for which the ADA was enacted." *Harris v. Stonecrest Auto Center, LLC*, 472 F.Supp.2d 1208, 1214 (S.D. Cal. 2007) (citation omitted).

Plaintiffs have sued to redress alleged ADA violations. Under 42 U.S.C. § 12188(b)(2)(B), money damages are not available to private litigants; remedies are instead limited to injunctive relief and attorney's fees and costs. 42 U.S.C. § 12188(a)(1); *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir. 2002). "**In the context of declaratory and injunctive relief, [the Plaintiffs] must demonstrate that [they have] suffered or [are] threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that [they] will again be wronged in a similar way.'**" *Bird v. Lewis & Clark College,* 303 F.3d 1015, 1019 (9th Cir. 2002) (citations omitted, emphasis added).

To meet the Article III "irreducible constitutional minimum" of standing, Plaintiffs must meet a three-pronged test:

> First [they must have] suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan,* 504 U.S. at pp. 560-61 (citations and internal quotation marks omitted); *Friends of the Earth, Inc. v. Laidlaw Envtl. Services,* 528 U.S. 167, 180-181 (2000).

---

[2] Every plaintiff asserting a claim for relief must meet the constitutional requirements of standing by showing that it is "entitled to have the court decide the merits of the dispute or of particular issues," and that there exists "a 'case or controversy' between [the plaintiff] and the defendant within the meaning of Article III." *Warth v. Seldin, supra,* 422 U.S. at 498; *accord, Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372 (1982).

These elements must be established "separately for each form of relief sought" and for each claim brought by the party invoking federal jurisdiction. *Laidlaw, supra,* 528 U.S. at 185; *Lewis v. Casey,* 518 U.S. 343, 358, n. 6 (1996) ("[S]tanding is not dispensed in gross."); see also *Blum v. Yaretsky,* 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). Accordingly, Plaintiffs in this case must allege a concrete and particularized injury causally connected to Defendants' alleged conduct, for each of the 84-plus alleged Subject Properties.[3]

Plaintiffs have not alleged that they "suffered **an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical**" which was **caused** by Defendants' alleged conduct. Instead, Plaintiffs' "injury" is alleged to be a "frustration" of their "mission" and a diversion of their resources away from their alleged usual activities to investigation of the Subject Properties and litigation against the Defendants. (Complaint, ¶¶ 68-74)

Diversion of resources and "frustration" of "mission" cannot support standing unless they were <u>caused by</u> Defendants' alleged conduct. See, e.g., *Independent Housing Services of San Francisco v. Fillmore Center Associates,* 840 F.Supp. 1328, 1336 (N.D. Cal. 1993); accord, *Fair Housing of Marin v. Jack Combs,* 285 F.3d 899, 904-905 (9th Cir. 2002), cert. denied, 573 U.S. 1018, 123 S. Ct. 536 (2002). Plaintiff in *Independent Housing Services of San Francisco* alleged that it had spent money referring, counseling, and placing disabled people who had encountered accessibility barriers at the Fillmore Center. 840 F.Supp. at p. 1336. Similarly, in *Fair Housing of Marin* plaintiff alleged that it had spent money in responding to citizen complaints against the defendant, over and above litigation expenses.

---

[3] "In the ADA context, a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'" *Harris v. Stonecrest Auto Center, LLC, supra,* 472 F.Supp.2d at p. 1214; *Harris v. Del Taco,* 396 F.Supp.2d 1107, 1111 (C.D. Cal. 2005).

285 F.3d at p. 905. Both stated a sufficient causal relationship between the alleged injury and defendant's alleged conduct.[4]

In contrast, the Complaint before the Court does not allege that any member of a protected class encountered non-ADA compliant features at any of the Subject Properties. Plaintiffs do not allege that they received any complaints about the Subject Properties, that they counseled, referred or placed anyone who had encountered such problems, or that they otherwise responded to complaints about any of the Subject Properties.

Plaintiffs allege only a *self-inflicted* diversion of resources, not in response to any complaint about the Subject Properties. (See Complaint at ¶¶ 68-74) "To the extent that an injury is self-inflicted . . ., the causal chain is broken." (Moore's Federal Practice 3D, §101.41[4], citing *McConnell v. FEC*, 540 U.S. 93, 228, 124 S.Ct. 619 (allegations that the challenged statute's contribution limits put plaintiffs and their candidates at a "competitive injury" because of their economic status and unwillingness to accept large contributions did not constitute an injury "fairly traceable" to the challenged provisions of the statute).

Nor can mere "testing" and litigation expense satisfy the standing requirement:

> Litigation costs, even those that may be concrete and particularized, do not suffice to establish standing. An organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries that are not fairly traceable to the defendant's conduct. Thus, allegations of injury in fact based on the expenditure of resources incurred in enforcement litigation fail to establish standing. Expanding the definition of Article III injury to include an organization's litigation-related expenses would imply that any sincere plaintiff could bootstrap standing simply by expending its resources in response to the actions of another.

---

[4] The Ninth Circuit's decision in *Smith v. Pacific Properties and Development Corp.*, 358 F.3d. 1097 (9th Cir. 2004) is not inconsistent. Plaintiffs in that case were a disabled "tester" and the "Disabled Rights Action Committee ("DRAC"). After dismissing the complaint for lack of standing, <u>without leave to amend</u>, the District Court (Nevada) denied DRAC's motion for reconsideration. The court did not explain its order, nor did it offer a reason for not granting leave to amend. Under these circumstances, the Ninth Circuit reversed, holding that the trial court had abused its discretion in refusing to grant leave to amend, and that the plaintiff should have been allowed an opportunity to amend. See 358 F.3d at 1105-1106. This was consistent with the Supreme Court's ruling in *Havens, supra*, that the plaintiffs therein should have been allowed to amend their complaint. 455 U.S. at 377-378. In *Smith*, DRAC had "indicated that it would be capable of amending its complaint upon remand to clearly come within the *Fair Housing [of Marin]* requirement on the merits of the standing inquiry." 358 F.3d at 1106, n. 10.

Moore's Federal Practice 3D, §101.41[4], citing *Fair Housing Council v. Montgomery Newspapers*, 141 F.3d 71, 80 (3d Cir. 1989); see also, *Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994)

In the absence of any allegation that Plaintiffs were forced to divert resources because of Defendants' alleged conduct, Plaintiffs have not "suffered **an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical**" and which was **caused** by Defendants' alleged conduct.

Nor have Plaintiffs met the third prong of Article III standing: "redressability." They have sued for injunctive relief under the ADA without naming either the owners of the 84+ Subject Properties scattered throughout the United States or the tenants currently residing in the thousands of apartment units that would have to be rebuilt or retrofitted.

> Redressability cannot rest on the assumption that a nonparty to the action will act in a certain way on the basis of a decision in plaintiff's favor, and that such action would ultimately redress plaintiff's injury. If any prospective benefit to the plaintiff depends on the actions of independent actors who retain broad and legitimate discretion over which the court has no control, the redressability element of standing is not met.

Moore's Federal Practice 3D, § 101.42[5], citing *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615, (1989).

In addition, Plaintiffs have not alleged facts sufficient to show standing to seek injunctive relief.

Standing is not dispensed "in gross." Rather, a plaintiff must demonstrate standing separately for each form of relief sought (injunction, damages, civil penalties, etc.). *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., supra,* 528 U.S. at p. 184.

Before a court will order a business to undergo the expense of rebuilding or retrofitting facilities to comply with the ADA, courts first require that plaintiff show that it has **standing to seek injunctive relief**:

> In order to establish an injury in fact sufficient to confer standing to pursue injunctive relief, the Plaintiff must demonstrate a "real or immediate threat that

the plaintiff will be wronged again - - a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983). In evaluating whether an ADA plaintiff has established a likelihood of future injury, courts have looked to such factors as: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant. . . .

*Molski v. Mandarin Touch Restaurant* 385 F.Supp.2d 1042 (C.D. Cal. 2005).

Regarding "proximity," the district court in *Molski v. Mandarin Touch* determined that the ADA plaintiff's residence was over 100 miles from the defendant Mandarin Touch Restaurant in Solvang, California, a fact which weighed heavily against standing to sue for injunctive relief. 385 F.Supp. at p. 1045. In the instant case, Plaintiffs do not even pretend to have met the "proximity" test: they allege that they are located in Marin County, Napa County, Florida, Atlanta, and Washington D.C. and that the Subject Properties are located throughout the United States, e.g., in New Mexico, Nevada, Arizona, Colorado, Texas, Kansas, and North Carolina. Plaintiffs obviously fail the "proximity" test.[5] For the same reason, Plaintiffs do not allege, and cannot show, "frequency of travel" near the Subject Properties or likelihood that they will return to the Subject Properties.

Nor do Plaintiffs allege "past patronage or business" – the Complaint is devoid of any allegation that any Plaintiff, any member of any Plaintiff, or any member of a protected class ever encountered non-ADA compliant features at any of the Subject Properties.

And there is an even more basic reason why these plaintiffs cannot establish standing to sue for injunctive relief. Because Plaintiffs are not themselves disabled and because Plaintiffs do not sue on behalf of disabled persons, Plaintiffs can never show a "likelihood of substantial and immediate irreparable injury" to themselves. No Plaintiff (and no identified disabled person) resides near most of the Subject Properties. No Plaintiff (and no identified disabled

---

[5] See also, *Gladstone, Realtors v. Bellwood, supra,* 441 U.S. 91, 112 & n. 25 (refusing to grant standing to individual plaintiffs that did not live in the community in which the alleged discrimination occurred); *Conservation Law Found. of New England v. Reilly,* 950 F.2d 38, 43 (1st Cir. 1991) (Denying standing to plaintiff entity seeking nationwide injunctive relief under CERCLA at approximately 1200 facilities, the court stated: "The absence of plaintiffs from the majority of regions of the country in this case demonstrates the lack of 'concrete factual context conducive to a realistic appreciation of the consequences of judicial action.").

person) ever attempted to rent an apartment at any of the Subject Properties. No Plaintiff (and no identified disabled person) plans to rent at any of the Subject Properties.

If Plaintiffs intended to allege facts sufficient to show Article III standing and standing to seek injunctive relief under the ADA, their complaint is hopelessly vague regarding such allegations and must be amended to clarify.

### III. THE COMPLAINT'S ALLEGATIONS ARE "VAGUE AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE UNDER THE FHAA BECAUSE PLAINTIFFS DO NOT CLAIM TO BE MEMBERS OF A PROTECTED CLASS UNDER THE FHAA, NOR DO THEY PURPORT TO SUE ON BEHALF OF ANY MEMBER OF A PROTECTED CLASS UNDER THE FHAA.

To have standing to sue under the FHAA, plaintiffs must be members of the class of persons protected under the FHAA, or they must sue on behalf of members of the protected class. As explained in *Wasserman v. Three Seasons Assoc. No. 1, Inc.*, 998 F. Supp. 1445 (S.D. Fla. 1998):

> **Plaintiffs do not dispute that they are not members of a class protected under the FHA. Rather, they contend that they are entitled to standing as "aggrieved persons" under the FHA.**
>
> * * * *
>
> The Supreme Court jurisprudence applying the "aggrieved persons" provision of the FHA makes clear that an "aggrieved person" is not just any non-class member who protests what he perceives to be a discriminatory housing policy. Rather, an "aggrieved person" is a non-class member who (1) suffers actual injury **as an ancillary effect** of present or imminent discrimination against a protected class member and (2) challenges the discriminatory policy on behalf of that class member.

*Id.*, 998 F.Supp. at 1446-1448, emphasis added.

In the instant case, Plaintiffs do not claim to be disabled renters, nor do they sue on behalf of disabled renters who claim to have been denied a rental at any of the facilities sued upon. If Plaintiffs intended to sue on behalf of the class of persons protected under the FHAA, their complaint is hopelessly "vague" regarding these allegations, and must be clarified.

### IV. THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT ARE "VAGUE AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE UNDER THE FHAA BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO ESTABLISH THE "IRREDUCIBLE CONSTITUTIONAL MINIMUM" FOR STANDING UNDER ARTICLE III OF THE U.S. CONSTITUTION.

As noted in connection with Plaintiffs' ADA claim, standing is a "threshold question in every federal case." *Warth v. Seldin, supra,* 422 U.S. at p. 498. The same is true with respect to their claim under the FHAA. As with the ADA, to sue under the FHAA Plaintiffs must, as an "irreducible constitutional minimum", establish that:

> First [they must have] suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan, supra,* 504 U.S. at pp. 560-61 (citations and internal quotation marks omitted). These elements must be established "separately for each form of relief sought" and for each claim brought by the party invoking federal jurisdiction. *Laidlaw, supra,* 528 U.S. at 185.

As discussed above, Plaintiffs have not alleged that they "suffered **an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical**" which was **caused** by Defendants' alleged conduct. This omission is as fatal to standing under the FHAA as it is to standing under the ADA. Diversion of resources and "frustration" of "mission" cannot support Article III standing unless they were <u>caused by</u> Defendants' alleged conduct.

The Complaint does not allege (1) that any member of a protected class encountered non-FHAA compliant features at any of the Subject Properties; (2) that Plaintiffs received any complaints about the Subject Properties; (3) that Plaintiffs counseled or referred anyone who had encountered such problems; or (4) that Plaintiffs otherwise responded to any complaints about any of the Subject Properties. And, as discussed above, Plaintiffs' self-inflicted "testing" and litigation expense fail to meet the standing requirement.

Nor can Plaintiffs satisfy the "redressability" prong of Article III standing. They have sued for injunctive relief under the FHAA without naming either the owners of the 84 + Subject Properties scattered throughout the United States or the tenants residing in the thousands of apartment units that would have to be rebuilt or retrofitted.

In short, Plaintiffs cannot establish Article III standing to sue under the FHAA for the same reasons they cannot establish Article III standing to sue under the ADA.

Moreover, Plaintiffs have failed to allege facts sufficient to show standing to seek injunctive relief under the FHAA.

The protected class under the ADA consists of disabled persons who have been denied access to public facilities and entities denied access to public facilities because of the entities' association with disabled persons. The class of persons protected under the FHAA are persons denied a rental because they are disabled or because they associate with disabled persons. *Oakridge Care Center, Inc. v. Racine County,* 946 F.Supp., 896, 873-874( E.D. Wisc. 1995). For purposes of establishing standing to sue for injunctive relief under the FHAA, however, this is a distinction without a difference. In order to establish an injury-in-fact sufficient to confer standing to pursue injunctive relief, Plaintiffs must demonstrate a "real or immediate threat that the plaintiff[s] will be wronged again – a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons, supra,* 461 U.S. at 111.

In order to establish such a "threat" sufficient to confer standing to sue for injunctive relief, a plaintiff must satisfy the same test that was set forth by the district court in *Molski v. Mandarin Touch Restaurant,* supra, 385 F.Supp.2d at p. 1045. For the same reasons Plaintiffs cannot meet that test with respect to their claim for injunctive relief under the ADA, they cannot meet the test with respect to their claim for injunctive relief under the FHAA. See discussion above.

If Plaintiffs intended to plead facts sufficient to show Article III standing and standing to seek injunctive relief under the FHAA, their complaint is hopelessly "vague" regarding such allegations, and must be clarified.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that their Motion for More Definite Statement should be granted in its entirety.

1
2  Dated: August 15, 2007					FREEMAN, D'AIUTO, PIERCE, GUREV,
3								KEELING & WOLF
4								By _____
5								    LEE ROY PIERCE, JR.
								Attorneys for Defendants A.G. Spanos
6								Construction, Inc.; A.G. Spanos Development,
								Inc.; A.G. Spanos Land Company, Inc.; A.G.
7								Spanos Management, Inc.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28