Michael Allen
Stephen M. Dane
John P. Relman
Thomas J. Keary
Pending admission *pro hac vice*
D. Scott Chang, Bar No. 146403
RELMAN & DANE PLLC
1225 19th Street, NW, Suite 600
Washington DC 20036
Telephone: (202) 728-1888
Fax: (202) 728-0848
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (San Francisco)

| | |
|---|---|
| National Fair Housing Alliance, Inc.; Fair Housing of Marin, Inc.; Fair Housing Napa Valley, Inc.; Metro Fair Housing Services, Inc.; and Fair Housing Continuum, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> A.G. Spanos Construction, Inc.; A.G. Spanos Development, Inc.; A.G. Spanos Land Company, Inc.; A.G. Spanos Management, Inc.; The Spanos Corporation; and <br><br> Knickerbocker Properties, Inc. XXXVIII; and Highpointe Village, L.P, Individually and As Representatives of a Class of All Others Similarly Situated, <br><br> Defendants | Case No. C07-3255 (EMC) <br> JUDGE SAUNDRA B. ARMSTRONG <br><br> **FIRST AMENDED COMPLAINT** <br><br> **DEFENDANT CLASS ACTION** |

## I. PRELIMINARY STATEMENT

1.     This civil rights action is brought by the National Fair Housing Alliance and

four of its members against: A.G. Spanos Construction, Inc., one of the country's largest

builders and designers of multifamily apartment complexes, and  its related companies: A.G

Spanos Development, Inc.; A.G. Spanos Land Company, Inc.; A.G. Spanos Management, Inc.; and The Spanos Corporation, collectively referred to as the "A.G. Spanos Defendants," for violations of the accessibility requirements of the Fair Housing Act, as amended in 1988 ("FHA").  This action is also brought against  Knickerbocker Properties, Inc. XXXVIII, and Highpointe Village, L.P., both individually and as representatives of a defendant class comprised of  similarly situated, current owners of apartment complexes designed and/or built by the A.G. Spanos Defendants since the effective date of the FHA. Declaratory and injunctive relief against the members of this defendant class are necessary for the relief sought by Plaintiffs.

2.    Collectively, the A.G. Spanos Defendants comprise the fifth largest multifamily rental apartment builder/developer in the United States having built, according to the A.G. Spanos Companies' website, more than 120,000 units at nearly 400 apartment complexes since 1960.

3.    Through careful investigation and testing, Plaintiffs have identified 34 apartment complexes in California, Arizona, Nevada, Texas, Kansas, Georgia and Florida (the "Tested Properties"), totaling more than 10,000 individual apartment dwelling units, that fail to meet the accessibility requirements of the FHA.  *See* Appendix A.

4.    This complaint alleges that, with respect to the Tested Properties and since 1991, the A.G. Spanos Defendants have engaged in a continuous pattern and practice of discrimination against people with disabilities in violation of the FHA by designing and/or constructing multifamily dwellings, and the common-use and public-use areas associated with those dwellings (hereafter referred to as "covered units" or "covered apartment

complexes"), in such a manner as to deny people with disabilities full access to, and the use of, these facilities as required under the FHA.

5.     The A.G. Spanos Defendants' violations of the FHA are serial and frequent, and continue more than 16 years after the effective date of the FHA accessibility requirements..

6.     Plaintiffs have also identified another 47 apartment complexes—in California, Arizona, Nevada, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida—which the A.G. Spanos Defendants designed and/or constructed after March 1991. *See* Appendix A.   Because these share common design features with the Tested Properties, Plaintiffs have reason to believe that similar FHA accessibility violations may exist at those properties as well

7.     Each and every one of the Tested Properties was built after March 13, 1991, the effective date of the FHA accessibility requirements.  Yet the A.G. Spanos Defendants continued to design and construct dwelling units and common-use and public-use areas that fail to meet the basic requirements of the FHA, rendering tens of thousands of units inaccessible to people with disabilities.  Unless restrained by this Court, the A.G. Spanos Defendants will continue to violate the law.

8.     The A.G. Spanos Defendants' violations of the FHA design and construction requirements have serious and significant consequences for people with disabilities.  As outlined below, many complexes have features—such as  steps, thresholds, curbs, doors and passageways that are too narrow for wheelchairs, or steep slopes on sidewalks, ramps and parking areas—that would prevent people in wheelchairs and using other mobility aids from traversing to and from covered units to the public streets and amenities throughout the

complex.  Many others have bathrooms and kitchens that lack sufficient space at fixtures and appliances for use by people in wheelchairs or using other mobility aids.  Still others place environmental controls and electrical sockets beyond the reach of wheelchair users, and have constructed leasing offices, common restrooms, and recreational and entertainment facilities in such a way as to make them inaccessible to wheelchair users. These blatant violations, and many others, effectively communicate that people with disabilities are not welcome in the Tested Properties.

9.     According to the 2004 American Community Survey conducted by the U.S. Census Bureau, more than 51 million Americans (nearly one in five) have some form of disability, and one in eight has a severe disability.  Of that number, more than 2.7 million people over the age of 15 years use a wheelchair, and that number is expected to increase as the population ages and medical care allows people with disabilities to live longer and fuller lives. Another 7 million use a cane, crutches, a walker or other mobility aid.  Accessible housing is an essential means of ensuring that people with disabilities are able to fully participate in community life.

10.     A person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying "No Handicapped People Allowed."  In considering the 1988 disability amendments to the FHA, the Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public

accommodations accessible to, and adaptable by, people with disabilities.  H.R. REP. NO. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186.

11.     The A.G. Spanos Defendants' flagrant and systematic violations of the FHA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities, rendered thousands of units unavailable to people with disabilities, frustrated the mission of each of the Plaintiffs, and caused each Plaintiff to divert its scarce resources in an attempt to redress these violations.  Enforcement of the FHA against the A.G. Spanos Defendants is necessary because of the extensive and continuing nature of the civil rights violations at the numerous apartment complexes throughout the United States that have been designed and constructed by the A.G. Spanos Defendants.


## II.     JURISDICTION AND VENUE

12.     This Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and 42 U.S.C. §§ 3613(a).  Further, this Court may exercise personal jurisdiction over the A.G. Spanos Defendants and class representative defendants.

13.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) in that the A.G. Spanos Defendants are corporations that reside in this district, and a number of the events giving rise to these claims occurred in this district. Venue is also proper for the named class representatives as they either reside in the district or have a property in the district with violations giving rise to the claims in this action.

14.     Intradistrict assignment in San Francisco is proper because the unlawful conduct that gives rise to these claims occurred in the Counties of Napa and Sonoma, as well as other locations.

### III.   **PARTIES**

**A.  Plaintiffs**

15.     Plaintiff National Fair Housing Alliance, Inc. ("NFHA") is a national non-profit public service organization incorporated under the laws of the Commonwealth of Virginia, with its principal place of business at 1212 New York Avenue, N.W., Suite 525, Washington DC 20005.  NFHA is a nationwide alliance of private, non-profit fair housing organizations, including organizations in 28 states.  NFHA's mission includes advocating for the rights of people with disabilities to accessible housing.   NFHA is the only national organization dedicated solely to ending housing discrimination and promoting residential integration.  NFHA works to eliminate housing discrimination and to ensure equal opportunity for all people through leadership, education and outreach, membership services, public policy initiatives, advocacy, investigation of fair housing violations and enforcement.  One of NFHA's goals is the promotion of accessible housing; to that end, since 1992, NFHA has conducted nationwide educational campaigns to address accessibility in rental housing.

16.     Plaintiff Fair Housing of Marin ("FHOM") is a private, non-profit community organization located in San Rafael, California, organized under the laws of the State of California.  It is engaged in several different activities to further the mission of promoting equal housing opportunities for people with disabilities and other protected classes, including: fair housing counseling to victims of discrimination; outreach to the community on fair housing; training seminars and counseling for real estate professionals, architects, and seniors vulnerable to predatory loans; research regarding housing discrimination in rentals, lending, homeowners insurance, and senior care facilities; programs to children and adults that emphasize the value of diversity and open-mindedness; and advocacy for accessible and

affordable housing.

17.    Plaintiff Fair Housing Napa Valley ("FHNV") is a non-profit community organization located in Napa, California, organized under the laws of the State of California. It is engaged in many activities to further the mission of promoting accessible housing, including education and outreach to home seekers, housing industry groups, and assistance to victims of discrimination; investigation of fair housing violations; and publication of materials concerning the housing rights of people with disabilities and others.  Since 2005, Fair Housing Napa Valley has conducted more than 80 community education sessions about the FHA, the majority of which have included information about the rights of people with disabilities, including the right to accessible housing.

18.    Plaintiff Metro Fair Housing Services ("MFHS") is a non-profit community organization located in Atlanta, Georgia, organized under the laws of the State of Georgia. Its mission is to promote social justice and eliminate housing and lending inequities for all people, including those with disabilities, through leadership, education and outreach, public policy advocacy and enforcement.  During the past three years, MFHS has presented more than 30 workshops including disability rights and accessibility issues, and conducted more than 40 accessibility audits for the U.S. Department of Housing and Urban Development, the City of Atlanta and the Georgia Commission on Equal Opportunity.  In addition, MFHS conducts a number of outreach and enforcement programs to further the mission of promoting equal housing opportunities, including educating and assisting victims of discrimination, reviewing and investigating complaints, conciliation and advocacy, and publication of materials concerning the housing rights of people with disabilities and others.

19.    Plaintiff The Fair Housing Continuum, Inc. ("FHC") is a private, non-profit

organization committed to equal housing opportunity and the elimination of discrimination in Florida.  The FHC has developed strategies to increase accessibility prior to construction.  Among other activities, FHC partnered with the Florida Assistant Attorney General to deliver training to permitting officials throughout the state, and worked with that office to get the accessibility requirements placed into the curriculum for the state architectural school.  As a result, in 1999 every registered architect in Florida was notified of the accessibility requirements by letter.  In addition, FHC developed a written test with a checklist to be sent to developers and builders prior to construction, and began training directed to permitting officials and statewide disability advocates.  FHC also developed a handout of "The Most Common Accessibility Violations in Florida" based on its testing data.  FHC trains fair housing enforcement groups to conduct accessibility testing or has conducted testing for them, has entered into partnerships with Centers for Independent Living throughout Central Florida to increase fair housing rights knowledge to the disability community, and travels all over the state of Florida to conduct education and outreach upon request.  Finally, FHC conducts an average of 30 education and outreach activities annually.

### B.  The  A.G. Spanos  Defendants

20.     The A.G. Spanos Defendants are corporations engaged in one or more activities related to land acquisition, development, construction, and management of multifamily apartment complexes throughout the United States.  Although incorporated separately, the A. G. Spanos Defendants hold themselves out to the world through a company website at www.agspanos.com and otherwise as divisions of the "A.G. Spanos Companies," a national builder/developer of multifamily housing.  According to *Builder* magazine, "A.G. Spanos Companies" is the fifth largest builder/developer of multifamily rental apartment

communities in the United States.

21.     Defendant A.G. Spanos Construction, Inc. has been incorporated in California since October 25, 1967.  On information and belief, it operates as the construction division of the "A.G. Spanos Companies," and is responsible for the design and/or construction of the noncompliant dwellings that are the subject of this lawsuit. Defendant A.G. Spanos Construction, Inc. is also the owner of Corbin Crossing, an apartment complex at 6801 W. 138 Terrace, Overland, Kansas 66223.

22.     Defendant A.G. Spanos Development, Inc. has been incorporated in California since January 1, 1974.  On information and belief, it operates as the land development division of the "A.G. Spanos Companies," and participated in the design and/or construction of the noncompliant dwellings that are the subject of this lawsuit.

23.     Defendant A.G. Spanos Land Company, Inc. has been incorporated in California since February 17, 1982.  On information and belief, it operates as the land acquisition division of the "A.G. Spanos Companies," and participated in the design and/or construction of the noncompliant dwellings that are the subject of this lawsuit.

24.     Defendant A.G. Spanos Management, Inc. has been incorporated in California since September 26, 1967.  On information and belief, it operates as the management division of the "A.G. Spanos Companies," and participated in the design and/or construction of the noncompliant dwellings that are the subject of this lawsuit

25.     Defendant The Spanos Corporation has been incorporated in California since December 2, 1994.  On information and belief, it has owned covered multifamily housing during its construction by Defendant A.G. Spanos Construction, Inc.  In that capacity, it participated in the design and/or construction of properties that are the subject of this lawsuit.

It is also the owner of: Ashgrove Place, an apartment complex at 3250 Laurel Drive, Rancho Cordova, California 95670; Sycamore Terrace, an apartment complex at 40 Park City Court, Sacramento, California 95831; and The Battery at Chamblee, an apartment complex at 3450 Miller Drive, Suite 100, Chamblee, Georgia 30341.

26.     Together, the A.G. Spanos Defendants constitute a multi-faceted building, construction and management enterprise, with principal offices located at 10100 Trinity Parkway, 5th Floor, Stockton, California 95219.  The A.G. Spanos Defendants build, develop, redevelop, acquire and/or manage covered multifamily dwellings located across the United States.

27.     Through ownership, control, supervision, building, development, operation and/or management, the A.G. Spanos Defendants have been involved in the design and construction of at least 81 multifamily complexes in California, Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida that are subject to the accessibility requirements of the FHA and of this lawsuit, including the 34 Tested Properties and the 47 other properties.

28.     On information and belief, the A.G. Spanos Defendants, through a number of subsidiaries and affiliated companies, own, have developed, designed and constructed, and/or manage additional multifamily housing complexes, the identity and location of which are not yet known to Plaintiffs.

29.     Plaintiffs have identified, through on-site inspection of the A.G. Spanos Defendants' publications or other public records, Spanos units and complexes that are subject to the accessibility requirements of the FHA.  For purposes of this complaint, all Spanos units and properties currently known to Plaintiffs and subject to the FHA are referred to as

1   the "Subject Properties."  Attached as Appendix A to this complaint is a list of Subject

2   Properties identified to date.

3          **C.    Defendant Class and Its Representatives**

4

5          30.     The relief sought by Plaintiffs includes an order directing the A.G. Spanos

6   Defendants to take whatever action is appropriate to bring inaccessible features into

7   compliance with the requirements of the FHA.  The A.G. Spanos Defendants, however, no

8   longer own most of the covered apartment complexes for which such relief is requested.

9   There are sixty-seven (67) such current owners of these apartment complexes, who are now

10  known to Plaintiffs.  *See* Appendix B.  There may be more such owners of additional covered

11  multifamily housing complexes developed, designed and constructed, and/or managed by the

12  A.G. Spanos Companies, the identity and location of which are not yet known to Plaintiffs.

13  These current owners of non-compliant units may be necessary parties in order to effectuate

14  any judgment or order for injunctive relief requested by Plaintiffs. The class is so numerous

15  that individual joinders of such a large number of defendants are impractical, however.

16

17         31.     There are questions of law or fact that are common to the class of current

18  owners of covered apartment complexes designed and/or built by the A.G. Spanos

19  Defendants.  Such questions include whether the built conditions identified by the Plaintiffs

20  violate the FHA, and whether this Court may enjoin the current owners from failing or

21  refusing to allow the A.G. Spanos Defendants to bring such violations into compliance with

22  the FHA.

23         32.     The defendant class is comprised of the current owners of covered apartment

24  complexes that were designed and/or built by the A.G. Spanos Defendants since the effective

25  date of the FHA, but are no longer owned by the A.G. Spanos Defendants.  Knickerbocker

26

27

28

29

Properties, Inc. XXXVIII, and Highpointe Village, L.P. have been named both individually and as representatives of that class.

33.     Defendant Knickerbocker Properties, Inc. XXXVIII is a Delaware corporation, registered to do business in California, with its address at 1251 Avenue of the Americas, New York, New York 10020.   On information and belief, Defendant Knickerbocker Properties, Inc. XXXVIII is a corporate name for the New York Teacher's Retirement Fund.  Defendant is the owner of: Mountain Shadows, an apartment complex at 160 Golf Course Drive, Rohnert Park, California 94928; and The Commons, an apartment complex at 1300 Burton Drive, Vacaville, California 95687.  These apartment complexes were designed and/or constructed by the A.G. Spanos Defendants.

34.      Defendant Highpointe Village, L.P. is a California limited partnership whose address is 207 Second Street, Sausalito, California 94965.  It is the owner of Highpointe Village, an apartment complex at 10000 81st Street, Overland Park, Kansas 66204, which was designed and/or constructed by the A.G. Spanos Defendants.

35.     The claims or defenses of these class representative defendants are typical of the claims or defenses of the class of current owner defendants.  Like the entire defendant class, each of the class representatives has purchased one or more apartment complexes from the A.G. Spanos Defendants that do not fully comply with the accessibility and adaptability requirements of the FHA.  Based on Plaintiffs' investigation to date, the violations found at the apartment complexes that are owned by the class representative defendants, see ¶¶ 55, 62, and 64, *infra*, are typical of the violations found at the other properties that have been tested by Plaintiffs.  See ¶¶ 56-61, 63 and 65-71, *infra*

36.     The representative defendants will fairly and adequately protect the interests

12

of the remaining members of the class of owner defendants.  Each has a sufficient stake in the issues of fact and law, which are common to the class members, to assure fair and adequate representation.

37.  In addition, a defendant class action is appropriate because the prosecution of multiple, separate actions involving individual owners will create the risk of inconsistent and varying adjudications as to the standards of accessibility and adaptability at apartment complexes designed and /or built by the A.G. Spanos Defendants.  Separate legal actions involving the same built condition may lead to inconsistent outcomes — the same construction held to violate the FHA in one apartment complex, but not at the other.  Such outcome would be detrimental to people with disabilities, whose interests the Plaintiffs represent, and the interests of others such as the suppliers of products used in the construction of multifamily housing including manufacturers of pre-fabricated doors and cabinetry for bathrooms and kitchens.

In the alternative, a defendant class action is appropriate because those questions of law or fact that are common to the members of the defendant class predominate over any questions affecting only individual members of the class.  While some individual issues may arise with respect to the injunctive relief sought by Plaintiffs, such as how or when retrofits will be performed to bring a particular non-compliant feature into compliance, such issues may be tried individually after the common issues have been litigated.  Proceeding with a defendant owner class is superior to the alternative of multiple actions against individual class members.  It will promote judicial efficiency and enhanced enforcement of the FHA's access provisions.

## IV.    STATUTORY AND REGULATORY FRAMEWORK

38.    The FHA mandates that every multifamily apartment building containing four (4) or more units, and built for first occupancy after March 13, 1991 ("covered multifamily dwellings"), be subject to certain design and construction requirements.  All ground floor units must comply with the following requirements, as must all units served by an elevator:

 a.   Public-use and common-use areas that are readily accessible to, and usable by, people with disabilities;

 b.   Doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs;

 c.   An accessible route into and through the dwelling;

 d.   Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

 e.   Reinforcements in bathroom walls that allow for the later installation of grab bars; and

 f.   Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

39.    Pursuant to Congressional authority, the U.S. Department of Housing and Urban Development ("HUD") promulgated final FHA design and construction regulations in January 1989, *see* 24 C.F.R. §100.205, and published the final Fair Housing Accessibility Guidelines on March 6, 1991.  *See* 56 Fed.Reg. 9472.

14

## V.    FACTUAL AND LEGAL BACKGROUND

40.    In the course of their advocacy on behalf of people protected by the FHA, NFHA and the other Plaintiffs became aware that a large number of new multifamily housing complexes designed and constructed by the A.G. Spanos Defendants did not include the required elements of accessible and adaptable design.  By itself, and in concert with the other Plaintiffs, NFHA visited a number of the A.G. Spanos Defendants' properties and discovered FHA violations in the design and construction of those properties.

41.    As a result of the discovery of these violations, NFHA and the other Plaintiffs began investigations of the A.G. Spanos Defendants' properties, requiring Plaintiffs to divert resources, including funding and staff members' time, from other activities in order to conduct further investigation and testing of the A.G. Spanos Defendants' properties so as to ascertain the extent of FHA violations.

42.    In 2006 and 2007, NFHA and the other Plaintiffs conducted site visits, investigations, surveys and tests at 34 of the Subject Properties in California, Nevada, Arizona, Texas, Kansas, Florida and Georgia.  The Tested Properties are identified on Appendix A with an asterisk.

43.    Upon information and belief, the A.G. Spanos Defendants participated in, supervised, controlled and/or approved the design and/or construction of each of the Tested Properties.

44.    All of the Tested Properties are subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHA because they are "dwellings" within the meaning of 42 U.S.C. § 3602(b), are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A), and were built for first occupancy after

15

March 13, 1991.

45.     NFHA and the other Plaintiffs have identified at least one FHA violation and, in most cases, multiple violations, at each of the Tested Properties.  The frequency and similarity of these violations demonstrates that the A.G. Spanos Defendants have engaged in a pervasive pattern and practice of designing and constructing apartment communities in violation of the FHA accessibility design requirements.  On information and belief, the A.G. Spanos Defendants have been involved in the design and construction of other noncompliant properties not identified herein.

46.     By way of example and not as an exhaustive inventory, the A.G. Spanos Defendants have violated 42 U.S.C. § 3604(b)(3)(C) by failing to design and construct covered dwelling units in the Tested Properties so that:

a.   doors in units that are sufficiently wide so as to allow passage into kitchens, bathrooms, bedrooms and other areas in the units by people using wheelchairs;

b.   an accessible route into and through the unit is provided, including access to patios, balconies and other outside areas;

c.   bathrooms have sufficient clear floor space to allow a person in a wheelchair to maneuver about the space;

d.   kitchens have sufficient clear floor space to allow a person in a wheelchair to maneuver about the space; and

e.   light switches, electrical outlets, thermostats and other environmental controls are in accessible locations.

47.     The A.G. Spanos Defendants have also violated 42 U.S.C. § 3604(f)(3)(C) by

16

failing to design and construct the public and common areas of many of the Tested Properties so that they are readily accessible to and usable by people with disabilities.  By way of example and not as an exhaustive inventory, some of the violations in the common areas of the Tested Properties include the following:

      a.  doors that require opening pressure that is too great;

      b.  lack of readily accessible routes into and through common-use and public-use areas, including a lack of readily accessible routes to meeting rooms, recreation facilities, entertainment facilities, patios, balconies, and other outside facilities;

      c.  inaccessible common-use bathrooms;

      d.  environmental controls and fire alarms placed at heights that make them inaccessible to people in wheelchairs;

      e.  lack of curb cuts, or obstructed curb cuts;

      f.  inaccessible ramp routes; and

      g.  a lack of designated accessible parking spaces.

48.     The untested Subject Properties share relevant common elements of design with many of the Tested Properties, including common bathroom and kitchen designs, and virtually identical floor plans in a number of complexes.  By way of example and not as an exhaustive inventory:

      a.  Seven Tested Properties—Mountain Shadows in Rohnert Park California; North Point in Vacaville, California; Highlands/Highpointe in Overland Park, Kansas; Crescent Cove in Lewisville, Texas; Lansbrook in Allen, Texas; Wade Crossing in Frisco, Texas; and Sheridan Park in Plano, Texas—share common design elements in the kitchens of their units, and with kitchen units of at least 18 untested

Subject Properties in California, Arizona, Nevada, New Mexico, Colorado, North Carolina, Florida and Georgia.  On information and belief, the Subject Properties in those and other states share the accessibility violations present in the seven tested properties, including lack of clear floor space at the sink, stove, refrigerator and/or dishwasher, rendering those fixtures inaccessible to, or unsafe for use by, wheelchair users.

b.   Three Tested Properties—Bristol Bay in Reno, Nevada; Constellation Ranch in Fort Worth, Texas; and Arlington at Northwood in Wesley Chapel, Florida—share common design elements in the bathrooms of their units, and with bathroom units of at least 25 untested Subject Properties in California, Arizona, Nevada, New Mexico, Colorado, North Carolina, Florida and Georgia.  On information and belief, the Subject Properties in those and other states share the accessibility violations present in the three tested properties, including lack of clear floor space at the tub, toilet and/or sink, rendering those fixtures inaccessible to, or unsafe for use by, wheelchair users.

49.     On information and belief as demonstrated by: (a) the pervasiveness and similarity of the FHA violations at the Tested Properties; and (b) the common elements of design at the Tested Properties and untested Subject Properties, the A.G. Spanos Defendants' continuing pattern and practice of design and construction have resulted in violations at each of the Subject Properties, and Plaintiffs believe there are design and construction violations at both Tested Properties and untested Subject Properties that can only be identified through a careful survey of each Subject Property.

50.     The A.G. Spanos Defendants' violations are continuing, ongoing and

18

demonstrate a pervasive pattern and practice of systematic and continuous FHA violations over several years.  The A.G. Spanos Defendants have repeatedly and continually failed to design and construct covered multifamily dwellings, including their public and common-use areas, in accordance with the requirements of 42 U.S.C. § 3604(f)(3)(C), 42 U.S.C. § 12183(a)(1), and their applicable regulations. In some instances, the A.G. Spanos Defendants utilized the same or similar floor plans in the design and construction of thousands of "covered units" at the Subject Properties.

51.     For example, the A.G. Spanos Defendants built 19 of the Tested Properties from 1995 to 2007, as follows:

| **Property Name** | **Date(s) Built)** |
|---|---|
| Alexander Gardens (Las Vegas, NV) | 1995 |
| Timberlake Apts. (Las Vegas, NV) | 1997 |
| Eagle Crest (Las Vegas, NV) | 1997 |
| Diamond Sands (Las Vegas, NV) | 1997 |
| Crescent Cove (Las Vegas, NV) | 1997 |
| Avery Point (Fort Worth, TX) | 1999 |
| The Pavilions (Stockton, CA) | 2003 |
| Mountain Shadows (Rohnert Park, CA) | 2002 |
| Hawthorn Village (Napa, CA) | 2003 |
| The Commons (Vacaville, CA) | 2003 |
| North Point (Vacaville, CA) | 2005 |
| Auberry (Allen, TX) | 2005 |
| Windsor/Redwood Creek (Rohnert Park, CA) | 2005 |
| Constellation Ranch (Fort Worth, TX) | 2006 |
| Park Crossing (Fairfield, CA) | 2006 |
| Sycamore Terrace (Sacramento, CA) | 2006 |
| Tamarron (Phoenix, AZ) | 2006 |
| Battery at Chamblee (Chamblee, GA) | 2006 |
| Summer Winds (Las Vegas, NV) | 2007 |

Each of these Tested Properties has internal thresholds at balconies, patios, and front doors or in transition from room to room, making these rooms and spaces (and appliances, fixtures and amenities connected with each) inaccessible to wheelchair users and other

people using mobility aids. On information and belief, dozens of untested Subject Properties also share this threshold feature with the 19 Tested Properties.

52.     Similarly, the A.G. Spanos Defendants built 15 of the Tested Properties from 1996 to 2006, as follows:

| **Property Name** | **Date(s) Built)** |
|---|---|
| Villa Serena (Las Vegas, NV) | 1996 |
| Crescent Cove (Las Vegas, NV) | 1997 |
| Eastland Hills (Sparks, NV) | 1998 |
| Sheridan Park (Plano, TX) | 1999 |
| Avery Point (Fort Worth, TX) | 1999 |
| Wade Crossing (Frisco, TX) | 2000 |
| Canyon Vista (Sparks, NV) | 2002 |
| Bristol Bay at Desert Highlands (Reno, NV) | 2003 |
| Mountain Shadows (Rohnert Park, CA) | 2003 |
| Auberry (Allen, TX) | 2005 |
| Highland/Highpointe Village (Overland Park, KS) | 2005 |
| Belterra (Fort Worth, TX) | 2005 |
| Windsor/Redwood Creek (Rohnert Park, CA) | 2005 |
| Park Crossing (Fairfield, CA) | 2006 |
| Delano (Wesley Chapel, FL) | 2006 |

Each of these Tested Properties had environmental controls, fire alarms, electrical switches and/or electrical outlets placed beyond the reach range of a wheelchair user, making those controls and fixtures inaccessible to, or unsafe for use by, wheelchair users or other people using mobility aids. On information and belief, dozens of untested Subject Properties also share this threshold feature with the 16 Tested Properties.

53.     Many of the Tested Properties identified above have been completed within two years of the filing of this Complaint.

54.     The following specific examples are illustrative, and not exhaustive, of the A.G. Spanos Defendants' pattern and practice of FHA violations:

**Mountain Shadows**

55.     Mountain Shadows in Rohnert Park, California, is a covered multifamily complex consisting of more than 171 units that was completed in 2002.  Some of the violations Plaintiffs observed at Mountain Shadows include, but are not limited to, the following:

a.   Interior thresholds and changes of level from one room to another are too high and act as barriers to wheelchair users, many of whom could not easily move from one room to another;

b.   Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space.  Specifically, absence of clear floor space adjacent to the tub area can make it unsafe for a person transferring from a wheelchair to the tub.  Also, the failure to provide sufficient clear floor space at the sink area can make it difficult to approach and use the sink;

c.   Kitchen clearances are insufficient to allow a person in a wheelchair to maneuver about the space.  Specifically, there is not enough room at the stove top for a person in a wheelchair to safely reach and use that appliance without the possibility of being burned;

d.   Doorways from kitchens to laundry rooms in the units are too narrow to allow passage by people in wheelchairs, essentially depriving them of use of those facilities;

e.   Environmental controls are placed at heights that are beyond the reach of a person in a wheelchair;

f.   Parking access aisles are too narrow and therefore prevent a wheelchair

21

user from parking and having sufficient room to set up and transfer to a wheelchair to enter a dwelling or the leasing office;

g.  Common-use and public-use bathroom clearance is insufficient to allow a person in a wheelchair to approach and use the toilet facilities;

h.  Excessive opening pressure on mailroom door is required, rendering it inaccessible to some people with disabilities who lack upper body strength or dexterity.

**The Battery at Chamblee**

56.    The Battery at Chamblee, in Chamblee, Georgia, is a covered multifamily complex consisting of 291 units that was still under construction as of February 2007.  Some of the violations Plaintiffs observed at The Battery at Chamblee include, but are not limited to, the following:

a.  Steps up to primary entrances of some units, making those entrances and units inaccessible to wheelchair users and people using other mobility aids;

b.  Threshold at the leasing office is too high and acts as a barrier to a person in a wheelchair;

c.  Thresholds at balconies are too high and act as a barrier to a person in a wheelchair;

d.  Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

e.  Kitchen clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

f.  Common-use and public-use bathroom clearances are insufficient to allow

a person in a wheelchair to maneuver about the space.

## Belterra

57.     Belterra, in Fort Worth, Texas, is a covered multifamily housing complex consisting of more than 200 units that was completed in 2005.  Some of the violations Plaintiffs observed at Belterra include, but are not limited to, the following:

a.   Doorways within units are too narrow for a wheelchair to pass through, making bathrooms and bedrooms entirely inaccessible to wheelchair users;

b.   Environmental controls are placed at heights that are beyond the reach of a person in a wheelchair;

c.   Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

d.    Excessive opening pressure on common and public use men's restroom render it inaccessible to some people with disabilities who lack upper body strength or dexterity.

## Constellation Ranch

58.     Constellation Ranch, in Fort Worth, Texas, is a covered multifamily housing complex consisting of 324 units that was completed in 2006.  Some of the violations Plaintiffs observed at Constellation Ranch include, but are not limited to, the following:

a.   Doorways within units are too narrow for a wheelchair to pass through, making bathrooms and bedrooms entirely inaccessible to wheelchair users;

b.   Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space, and toilets are set too low to be accessible to a wheelchair user.   Specifically, absence of clear floor space adjacent to the tub area can make it

unsafe for a person transferring from a wheelchair to the tub;

c.   Internal thresholds at balcony doors are too high and act as a barrier to a person in a wheelchair;

d.   Resident parking areas lack curb cuts, rendering parking inaccessible to wheelchair users.

**Auberry at Twin Creeks Apartments**

59.   Auberry at Twin Creeks Apartments, in Allen, Texas, is a covered multifamily housing complex consisting of 216 units that was completed in 2005.  Some of the violations Plaintiffs observed at Auberry at Twin Creeks Apartments include, but are not limited to, the following:

a.   Thresholds (exterior and interior) at front entrances to dwellings that make the entrances inaccessible to wheelchair users, particularly those who lack upper body strength or dexterity and cannot roll over these obstructions;

b.   Doorways within units that are too narrow for a wheelchair to pass through, making bathrooms and bedrooms and closets entirely inaccessible to wheelchair users;

c.   Environmental controls are placed at heights that are beyond the reach of a person in a wheelchair;

d.   Parking access aisles that are too narrow to be accessible to and usable by people in wheelchairs, preventing wheelchair users from parking and having sufficient room to set up and transfer to a wheelchair to enter a dwelling or the leasing office;

e.   Recreational facilities that are not served by accessible routes.

**Arlington at Northwood**

60.     Arlington at Northwood, in Wesley Chapel, Florida, is a covered multifamily housing complex that consists of 312 units that was completed in 2006.  Some of the violations Plaintiffs observed at Arlington at Northwood include, but are not limited to, the following:

a.   Lack of accessible routes through dwelling units.  Specifically, the passage from the living room area to the front bath is too narrow for passage in a wheelchair, making a large proportion of each unit entirely inaccessible to wheelchair users;

b.   Narrow closet doors, rendering closets inaccessible to wheelchair users;

c.   Inaccessible door to pool area, and lack of an accessible route in the exercise facilities;

d.   Environmental controls in common areas placed at heights that make them inaccessible to a person in a wheelchair;

e.   Complex owned golf carts parked across access aisles of handicapped spaces.

**Hawthorn Village**

61.     Hawthorn Village, in Napa, California, is a covered multifamily complex consisting of more than 200 units that was completed in 2003, and which has new units under construction as of the date this complaint is being filed.  Some of the violations Plaintiffs observed at Hawthorn Village include, but are not limited to, the following:

a.   Internal thresholds at balcony doors are too high and act as a barrier to a person in a wheelchair;

b.   Bathroom clearances are insufficient to allow a person in a wheelchair to

25

maneuver about the space.  Specifically, absence of clear floor space adjacent to the tub area can make this bathroom unsafe for a person transferring from a wheelchair to the tub;

c.  Toilet not properly centered between bathroom elements so that grab bars can be installed.  As a result, it can be unsafe for a person transferring from a wheelchair to the toilet;

d.  Environmental controls are placed at heights that are beyond the reach of a person in a wheelchair;

e.  Inaccessible routes through communal exercise areas;

f.   Slopes on curb cuts are too steep to be accessible to, and usable by, people in wheelchairs.  Steep slopes without railings may prevent wheelchair users from ascending the curb cuts, and may cause them to roll too fast into parking lots or streets on the descent;

g.  Insufficient accessible parking spaces and access aisles too narrow to be accessible to and usable by people in wheelchairs.  As a consequence, wheelchair users may be discouraged from leaving their units for fear of not finding an accessible space on return, or prevented from returning to their units because no space is available.  Furthermore, narrow access aisles prevent a wheelchair user from parking and having sufficient room to set up and transfer to a wheelchair to enter a dwelling or the leasing office.

**The Highlands and Highpointe Village**

62.    The Highlands, in Overland Park, Kansas, is a covered multifamily complex consisting of more than 180 units that was completed in 2005.  Highpointe Village, in

Overland Park, Kansas, is an adjacent covered multifamily complex consisting of approximately 300 units that was completed in 2003 and that appears to share common elements with The Highlands.  Some of the violations Plaintiffs observed at the Highlands and Highpointe Village include, but are not limited to, the following:

a.   Thresholds at balconies are too high and act as a barrier to a person in a wheelchair;

b.   Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

c.   Kitchen clearances are insufficient to allow a person in a wheelchair to maneuver about the space.  Specifically, there is not enough room at the stove top for a person in a wheelchair to safely reach and use that appliance without the possibility of being burned, and not enough room at the sink for a wheelchair user to be able to reach and use the sink;

d.   Environmental controls are placed at heights that are beyond the reach of a person in a wheelchair;

e.   Slopes adjacent to the primary entrance to the leasing office, clubhouse, exercise room, computer room and theater, and at least one intersection are too steep, and therefore inaccessible to wheelchair users.  Steep slopes without railings may prevent wheelchair users from ascending the curb cuts, and may cause them to roll too fast into parking lots or streets on the descent;

f.   Routes of travel between some buildings and common elements, such as the recreation areas, are inaccessible meaning that a wheelchair user could not safely use and enjoy the premises because he or she could simply not get there;

27

g.   Door to the pool area is inaccessible, and lack of an accessible route in the exercise facilities, rendering them unusable by wheelchair users;

h.   Uneven sidewalks adjacent to mail room, making it very difficult for a wheelchair user to get to them, and a security system for the mail room installed at a height that is beyond the reach of a person in a wheelchair;

i.   Common and public use restroom lacks a fully accessible toilet stall, rendering this element unusable by many wheelchair users;

j.   Parking spaces and access aisles for common-use and public-use parking are inaccessible, and some buildings are without designated handicapped parking and curb cuts at all;

k.   Environmental controls in common areas are placed at heights that make them inaccessible to a person in a wheelchair.

### Sycamore Terrace

63.   Sycamore Terrace, in Sacramento, California, is a covered multifamily complex consisting of 266 units that was still under construction as of September 2006. Some of the violations Plaintiffs observed at Sycamore Terrace include, but are not limited to, the following:

a.   Thresholds at doorways are too high and act as a barrier to a person in a wheelchair.

b.   Bathroom clearance is insufficient to allow a person in a wheelchair to maneuver about the space;

c.   The common-use door in the swimming pool area is inaccessible;

d.   Pool lift for people with disabilities is inaccessible.

28

**The Commons Apartments**

64.    The Commons Apartments, in Vacaville, California, is a covered multifamily housing complex consisting of approximately 200 units that was completed in 2003.  Some of the violations Plaintiffs observed at The Commons Apartments include, but are not limited to, the following:

    a.   Thresholds at balconies are too high and act as a barrier to a person in a wheelchair;

    b.   Sufficient centered clear floor space is not provided at the bathroom sink for a parallel approach by a person in a wheelchair nor is the cabinet under the sink removable for a forward wheelchair approach.

    c.   Sufficient clear floor space is not provided adjacent to the tub area for a wheelchair user to safely transfer from a wheelchair to the tub.

**Park Crossing**

65.    Park Crossing, in Fairfield, California, is a covered multifamily complex consisting of more than 200 units that was completed in 2006.  Some of the violations Plaintiffs observed at Park Crossing include, but are not limited to, the following:

    a.   Thresholds at balconies are too high and act as a barrier to a person in a wheelchair;

    b.   Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

    c.   Environmental controls are placed at heights that make them inaccessible to a person in a wheelchair.

**Tamarron**

66.    Tamarron in Phoenix, Arizona, is a covered multifamily complex consisting of more than 380 units that was completed in 2006.  Some of the violations Plaintiffs observed at Tamarron include, but are not limited to, the following:

a.    Thresholds at doorways are too high and act as a barrier to a person in a wheelchair;

b.    Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

c.    Closet doorways in the units are too narrow to allow passage by a person in a wheelchair.

**Canyon Vista**

67.    Canyon Vista, in Sparks, Nevada, is a covered multifamily complex consisting of more than 276 units that was completed in 2002.  Some of the violations Plaintiffs observed at Canyon Vista include, but are not limited to, the following:

a.    Slopes adjacent to the primary entrance to the leasing office, club house, and theater are too steep, and therefore inaccessible to wheelchair users;

b.    Curb cuts have steep slopes and are without landing areas, making them inaccessible to wheelchair users;

c.    One or more steps make the common-use theater area inaccessible to wheelchair users;

d.    The door to the pool area is inaccessible, and the route in the exercise facilities is inaccessible;

e.    Environmental controls and fire alarm in dwelling units are placed at

heights that make them inaccessible to a person in a wheelchair.

## Delano

68.     Delano, in Wesley Chapel, Florida, is a covered multifamily complex consisting of 288 units that was completed in 2006.  Some of the violations Plaintiffs observed at Delano include, but are not limited to, the following:

        a.   Lack of accessible routes through dwelling units;

        b.   Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

        c.   Environmental controls in dwelling units are placed at heights that make them inaccessible to a person in a wheelchair;

        d.   Slopes adjacent to some units are too steep, and therefore inaccessible to wheelchair users;

        e.   Access aisles, accessible parking spaces and curb cuts blocked by vehicles;

        f.   Environmental controls in common areas are placed at heights that make them inaccessible to a person in a wheelchair;

        g.   The door to the pool area is inaccessible, and there is a lack of an accessible route in the exercise facilities.

## Eastland Hills

69.     Eastland Hills, in Sparks, Nevada, is a covered multifamily complex consisting of 296 units that was completed in 1998.  Some of the violations Plaintiffs observed at Eastland Hills include, but are not limited to, the following:

        a.   Doors throughout dwelling units are too narrow to be accessible to a

31

wheelchair user;

      b.  Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

      c.  Kitchen clearances at sink and dishwasher are insufficient to allow a person in a wheelchair to maneuver about the space;

      d.  Environmental controls and fire alarm in dwelling units are placed at heights that make them inaccessible to a person in a wheelchair;

      e.  Most buildings lack accessible parking and curb cuts; some handicapped spaces are too narrow to be accessible for wheelchair users;

      f.  Common and public use bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space.

**Bristol Bay at Desert Highlands**

70.     Bristol Bay at Desert Highlands, in Reno, Nevada, is a covered multifamily complex consisting of 264 units that was completed in 2004.  Some of the violations Plaintiffs observed at Bristol Bay at Desert Highlands include, but are not limited to, the following:

      a.  Slopes adjacent to some units are too steep, and therefore inaccessible to wheelchair users;

      b.  Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

      c.  Kitchen clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

      d.  Environmental controls in dwelling units are placed at heights that make

them inaccessible to a person in a wheelchair;

     e.   Slopes adjacent to the primary entrance to the leasing office, club house, and theater are too steep, and therefore inaccessible to wheelchair users;

     f.   Staff of the complex park golf carts across access aisles of handicapped spaces;

     g.   The door to the pool area is inaccessible, and there is a lack of an accessible route in the exercise facilities;

     h.   Lack of accessible routes (narrow sidewalks and lack of curb cuts) in common and public use areas;

     i.   One or more steps make the common-use theater area inaccessible to wheelchair users;

     j. Resident parking access aisles are too narrow to be accessible to wheelchair users.

### Timberlake Apartments

71.    Timberlake Apartments, in Henderson, Nevada, is a covered multifamily complex consisting of 307 units that was completed in 1997.  Some of the violations Plaintiffs observed at Timberlake Apartments include, but are not limited to, the following:

     a.   Thresholds at balconies are too high and act as a barrier to a person in a wheelchair, and also make laundry facilities for each individual unit inaccessible;

     b.   Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space;

     c.   One or more steps make the common-use theater area inaccessible to wheelchair users;

d.   There is a lack of an accessible route in common-use areas, specifically from leasing office to model unit;

e.   Slopes adjacent to some units are too steep, and some lack curb cuts, making them inaccessible to wheelchair users.

## VI.    INJURY TO PLAINTIFFS

72.    As a result of the A.G. Spanos Defendants' actions described above, Plaintiffs have been directly and substantially injured in that they have been frustrated in their missions to eradicate discrimination in housing, and in carrying out the programs and services they provide, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to individuals and families looking for housing or affected by discriminatory housing practices and eliminating discriminatory housing practices.

73.    As outlined above, each Plaintiff has invested considerable time and effort in educating its respective communities about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and construction of covered multifamily dwellings.  Each time the A.G. Spanos Defendants designed and constructed covered dwellings that did not comply with the FHA in one of Plaintiffs' service areas, the A.G. Spanos Defendants frustrated the mission of that Plaintiff, inasmuch as it served to discourage people with disabilities from living at that dwelling, and encouraged other entities involved in the design and construction of covered units to disregard their own responsibilities under the FHA.

34

74.     The A.G. Spanos Defendants' continuing discriminatory practices have forced Plaintiffs to divert significant and scarce resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing each to suffer concrete and demonstrable injuries.

75.     Each Plaintiff conducted site visits, investigations, surveys and/or tests at the Tested Properties, resulting in the diversion of its resources in terms of staff time and salaries and travel and incidental expenses that it would not have had to expend were it not for the A.G. Spanos Defendants' violations.  FHOM, FHNV, MFHS and FHC each diverted staff time and resources to meet with NFHA staff, receive detailed training concerning the accessibility requirements of the FHA and provide logistical support for NFHA staff.  In addition to such support:

    a.   Plaintiff FHOM conducted site visits and investigations at Mountain Shadows and Windsor at Redwood Creek, two properties within its service area.

    b.   Plaintiff FHNV conducted a site visit and investigation at Hawthorn Village, a property within its service area.

    c.   Plaintiff MFHS conducted a site visit and investigation at Battery at Chamblee, a property within its service area.

    d.   Plaintiff FHC conducted tests at Delano and Arlington at Northwood, two properties within its service area.

76.     In doing the acts or in omitting to act as alleged in this Complaint, each employee or officer of each A.G. Spanos Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions

of each employee or officer as agent were subsequently ratified and adopted by each A.G. Spanos Defendant as principal.

77.     In carrying out the aforementioned actions, the A.G. Spanos Defendants acted intentionally and willfully, and with callous and reckless disregard of the rights of Plaintiffs and people with disabilities to accessible housing, pursuant to the FHA.  The A.G. Spanos Defendants knew or should have known of their design and construction obligations with respect to these properties.

78.     Until remedied, the A.G. Spanos Defendants' unlawful, discriminatory actions will continue to injure Plaintiffs by:

    a.   Interfering with efforts and programs intended to bring about equality of opportunity in housing;

    b.   Requiring the commitment of scarce resources, including substantial staff time and funding, to investigate and counteract the A.G. Spanos Defendants' discriminatory conduct, thus diverting those resources from the Plaintiffs' other activities and services, such as education, outreach, and counseling; and

    c.   Frustrating Plaintiffs' missions and purposes of promoting the equal availability of housing to all persons without regard to any protected category, including disability.

## VII.   LEGAL CLAIMS

(Federal Fair Housing Act, 42 U.S.C. §§3601 *et seq.*)

79.     Plaintiffs reallege the allegations of Paragraphs 1-78, and incorporate them herein.

36

80.     The Subject Properties include 81 apartment complexes, which, on information and belief, contain more than 22,000 individual dwelling units.

81.     Each of the Tested Properties is a covered multifamily dwelling subject to the FHA.  At the Tested Properties, each of the ground-floor units in all buildings, and each unit on floors in buildings serviced by an elevator, is a "covered unit" within the meaning of the FHA.  Each "covered unit" at the Tested Properties, and the public and common-use areas at the Tested Properties, is subject to the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

82.     On information and belief, the A.G. Spanos Defendants repeatedly and continually have failed to design and construct the Subject Properties so that:

        a.   Public-use and common-use areas are readily accessible to, and usable by, people with disabilities;

        b.   Doors into and within covered units are sufficiently wide to allow passage by people in wheelchairs;

        c.   Covered units contain the following features of adaptive design:

                1.      An accessible route into and through the dwelling;

                2.      Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space;

                3.      Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

                4.      Reinforcements in bathroom walls that allow for the later installation of grab bars

83.     Through the actions and inactions described above, the A.G. Spanos

Defendants have:

      a.  Discriminated in the rental of, otherwise made unavailable, or denied dwellings to individuals because of disabilities in violation of the FHA, 42 U.S.C. § 3604(f)(1);

      b.  Discriminated against individuals because of disability in the terms, conditions, or privileges of rental, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of the FHA, 42 U.S.C. 3604(f)(2);

      c.  Failed to design and construct dwellings in compliance with the requirements mandated by the FHA, 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations.

84.    The actions complained of constitute a continuing pattern and practice of repeated and continuing FHA violations in that the A.G. Spanos Defendants have engaged in a systematic and consistent pattern and practice of designing and constructing covered multifamily dwellings in violation of FHA requirements.

85.    As a result of the A.G. Spanos Defendants' wrongful conduct, NFHA and the other Plaintiffs each have been injured by a discriminatory housing practice and are, therefore, "aggrieved persons" as defined by the FHA, 42 U.S.C. § 3602(i)(1).

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court grant judgment in their favor, and against all Defendants, as follows:

A.     Declaring, pursuant to 28 U.S.C. § 2201, that the A.G. Spanos Defendants' practices and actions, as alleged herein, violate the FHA, and the applicable regulations;

B.     Enjoining the A.G. Spanos Defendants, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently, from:

     1.     constructing any covered multifamily housing and/or common areas that, in any way, fails to comply with the FHA and the applicable regulations, including the acquisition of any building or construction permits, or certificates of occupancy;

     2.     selling any building containing a covered unit until the entry of final relief herein, or until the completion of such retrofit alteration to covered units as may be ordered by the Court;

     3.     failing or refusing to bring the covered dwelling units and the public-use and common-use areas at the Tested Properties into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations

     4.     failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with the FHA and applicable regulations;

C.     Enjoining  the A.G. Spanos Defendants, their officers, directors, employees,

agents, successors, assigns, and all other persons in active concert or participation with any of them from failing or refusing to :

       1.     survey each and every apartment community containing "covered units" and appurtenant common and public use areas, for which any of them had a role in the design and construction since March 13, 1991 (the "Portfolio"), and assess the compliance of each with the accessibility requirements of the FHA;

       2.     report to the Court the extent of the noncompliance of the Portfolio with the accessibility requirements of the FHA; and

       3.     bring each and every such apartment community into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations.

     D.     Enjoining the Owner Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the A.G. Spanos Defendants.

     E.     Awarding such damages against the A. G. Spanos Defendants as would fully compensate Plaintiffs for their injuries incurred as a result of the A. G. Spanos Defendants' discriminatory housing practices and conduct;

     F.     Awarding such punitive damages against the A. G. Spanos Defendants as are proper under law;

     G.     Awarding Plaintiffs their costs and attorneys' fees incurred herein against the

A. G. Spanos Defendants; and

H.    Awarding Plaintiffs such other relief as this Court deems just and proper.


Dated this 11th day of September 2007.

Respectfully Submitted,


 S/    D. Scott Chang

Michael Allen
Stephen M. Dane
John P. Relman
Thomas J. Keary
Pending admission *pro hac vice*
D. Scott Chang, Bar No. 146403
RELMAN & DANE PLLC
1225 19th Street, NW, Suite 600
Washington DC 20036
Telephone: (202) 728-1888
Fax: (202) 728-0848
Attorneys for Plaintiffs

**APPENDIX A**

**Appendix A**

***NFHA et al. v. A. G. Spanos Construction, Inc., et al.***

**Subject Properties**

**Note: All tested properties built after January 26, 1993, and therefore subject to both Fair Housing Act Accessibility Guidelines and The Americans With Disabilities Act Accessibility Standards.  (*) Denotes tested properties.**

## ARIZONA

1.      Ocotillo Bay
1889 West Queen Creek
Chandler, AZ 85248

2.      Biscayne Bay (Phases I & II)
300 East Warner Road
Chandler, AZ 85224

3.      Arrowhead Landing
15740 North 83rd Avenue
Peoria, AZ 85382

4.      Sonoma Ridge
9246 W. Beardsley Road
Peoria, AZ 85382

5.      Tuscany Ridge
8203 West Oraibi Drive
Peoria, AZ 85382

6.      Tamarron*
4410 N. 99th Avenue
Phoenix, AZ 85037

## CALIFORNIA

7.      Sterling Heights
50 Rankin Way
Benecia, CA 94510

8.      Rolling Oaks
3700 Lyon Road
Fairfield, CA 94534

9.      Park Crossing*
2100 West Texas Street
Fairfield, CA 94533

10.      Willow Springs
250 McAdoo Drive
Folsom, CA 95630

11.      Aventine
47750 Adams Street
La Quinta, CA 92253

12.      The Enclave
30300 Antelope Road
Menifee, CA 92584

13.      Hawthorne Village*
3663 Solano Avenue
Napa, CA 94558

14.      Ashgrove Place
3250 Laurelhurst Drive
Rancho Cordova, CA 95670

15.     Stone Canyon
5100 Quail Run Road
Riverside, CA 92507

16.     View Pointe
5059 Quail Run Road
Riverside, CA 92507

17.     Mountain Shadows*
160 Golf Course Drive
Rohnert Park, CA 94928

18.     Windsor at Redwood Creek*
600 Rohnert Park Expressway
Rohnert Park, CA 94928

19.     Cobble Oaks
12155 Tributary Point Drive
Sacramento, CA 95670

20.     Sycamore Terrace*
40 Park City Court
Sacramento, CA 95831

21.     Pinewood
7051 Bowling Drive
Sacramento, CA 95823

22.     The Pavilions*
5222 Cosumnes Drive
Stockton, CA 95219

23.     Tuscany Ridge
41955 Margarita Road
Temecula, CA 92591

24.     River Oaks
1000 Allison Drive
Vacaville, CA 95687

25.     The Commons*
1300 Burton Drive
Vacaville, CA 95687

26.     North Pointe*
6801 Leisure Town Road
Vacaville, CA 95688

## COLORADO

27.     Spring Canyon
4510 Spring Canyon Heights
Colorado Springs, CO 80907

28.     Pine Bluffs
6470 Timber Bluff Point
Colorado Springs, CO 80918

## FLORIDA

29.     Asprey Place
1240 Astor Common Place
Brandon, FL 33511

30.     Lucerne at Lake
1419 Lake Lucerne Way
Brandon, FL 33511

31.     The Hamlin at Lake Brandon
508 LaDora Drive
Brandon, FL 33511

32.     Versant Place
1010 Versant Drive
Brandon, FL 33511

33.     Bayridge
3021 State Road 590
Clearwater, FL 33759

34.     Alexandria (Phase I)
Orlando, FL 32836

35.     Egret's Landing
1500 Seagull Drive
Palm Harbor, FL 34685

36.     Andover Place
Tampa, FL

37.     Addison Park
10202 Altavista Avenue
Tampa, FL 33647

38.     Portofino
8702 New Tampa Boulevard

Tampa, FL 33647

38.     Park del Mar
19411 Via Del Mar
Tampa, FL 33647

39.     Arlington at Northwood*
1930 Devonwood Drive
Wesley Chapel, FL 33543

40.     Delano at Cypress Creek*
2440 Delano Place
Wesley Chapel, FL 33543

## GEORGIA

41.     The Alexander at the District
1731 Commerce Drive, NW
Atlanta, GA 30318

42.     The Alexander at the
        Perimeter
70 Perimeter Center East
Atlanta, GA 30346

43.     The Battery at Chamblee*
3450 Miller Drive, Suite 100
Chamblee, GA 30341

44.     Idlewylde
1435 Boggs Road
Duluth, GA 30096

45.     Orion at Roswell Village
100 Hemingway Lane
Roswell, GA 30075

46.     The Oaks
909 Penn Waller Road
Savannah, GA 31410

## KANSAS

47.     Corbin Corssing
6801 W. 138th Terrace
Overland Park, KS 66223

48.     Highpointe Village*
10000 81st Street
Overland Park, KS 66204

## NORTH CAROLINA

49.     Berkeley Place
500 Solano Drive
Charlotte, NC 28262

50.     Parkside
605 Candler Lane
Charlotte, NC 28217

51.     Cheswyk (Phase I)
14360 Wynhollow Downs
Charlotte, NC 28277

3

## NEW MEXICO

52.     Eagle Ranch II
9270 Eagle Ranch Road, NW
Albuquerque, NM 87114

## NEVADA

53.     Villa Serena*
325 N. Gibson Road
Henderson, NV 8901455. Big
            Horn/Horizon Bluffs*
231 West Horizon Ridge
Henderson, NV 89012

54.     Timberlake Apartments*
80 South Gibson
Henderson, NV 89012

55.     Alexander Gardens*
3900 Dalecrest Drive
Las Vegas, NV 89129

56.     Diamond Sands*
8445 Las Vegas Boulevard South
Las Vegas, NV 89123

57.     Eagle Crest (Phases I & II)*
5850 Sky Pointe Drive
Las Vegas, NV 89130

58.     Summer Winds*

2725 West Wigwam
Las Vegas, NV 89123

59.     Canyon Club*
2665 S. Bruce Street
Las Vegas, NV 89109

60.     Summit Trails
1350 Grand Summit Drive
Reno, NV 89523

61.     Canyon Vista (Phase I)*
5200 Los Altos Parkway
Sparks, NV 89436

62.     Bristol Bay at Desert
            Highlands (Phase II)*
5300 Los Altos Parkway
Sparks, NV 89436

63.     Eastland Hills*
1855 Baring Boulevard
Sparks, NV 89434

## TEXAS

64.     Benton Pointe
205 Benton Drive
Allen, TX 75013

65.     Lansbrook at Twin Creeks*
505 Benton Drive
Allen, TX 75013

66.     Auberry at Twin Creeks*
705 Bray Central Drive

Allen, TX 75013

67.     Wyndhaven
1720 Wells Branch parkway
Austin, TX 78728

68.     Statton Park
8585 Spicewood Springs
Austin, TX 78759

4

69.    Escalon at Canyon Creek
       (Phase II)
9715 North FM-620
Austin, TX 78726

70.    Cambria at Coyote Ridge
4230 Fairway Drive
Carrolton, TX 75010

71.    The Coventry at City View*
5200 Bryant Irvin Road
Fort Worth, TX 76132

72.    Avery Pointe at City View*
5230 Bryant Irvin Road
Fort Worth, TX 76132

73.    Fairmont
3701 Fossil Creek Boulevard
Fort Worth, TX 76137

74.    Belterra*
7001 Sandshell Boulevard
Fort Worth, TX  76137

75.    Wade Crossing*
9399 Wade Bouevard
Frisco, TX 75035

76.    Amesbury Court*
4699 Fossil Vista Drive
Haltom City, TX 76137

77.    Chandler Park
1950 Eldridge Parkway
Houston, TX 77077

78.    Cheval
7105 Old Katy Road
Houston, TX 77024

79.    Monterra
Las Colinas, TX

81.    The Fairway at Southshore
3045 Marina bay Drive
League City, TX 77573

80.    Crescent Cove*
801 Hebron parkway
Lewisville, TX 75057

81.    Sheridan Park*
2001 E. Spring Creek Parkway
Plano, TX 75074

82.    Constellation Ranch*
500 W. Loop South
Fort Worth, TX 76108

**APPENDIX B**

## Appendix B

## NFHA et al. v. A.G. Spanos Construction Inc., et al.

## Current Owners of Subject Properties In Addition to Defendants A.G. Spanos Construction, Inc. and The Spanos Corporation and the  Defendant Class Representatives

1.  AGS Ventures, Inc. is a California corporation with its address at 10100 Trinity Parkway, 5th Floor, Stockton, California 95219.  It is the owner of: Hawthorne Village, an apartment complex at 3663 Solano Avenue, Napa, California 94458; Cheval, an apartment complex at 7105 Old Katy Road, Houston Texas 77024; and Monterra, an apartment complex at 301 W. Las Colinas Boulevard, Las Colinas, Texas.

2.  Alex and Faye Spanos Trust, A.G. Spanos Trustee, whose address is 10100 Trinity Parkway, 5th Floor, Stockton, California 95219 is the owner of Timberlake Apartments at 80 South Gibson, Henderson, Nevada 89012.  It is also the majority owner of the Eastland Hills, an apartment complex at 1855 Baring Boulevard, Sparks, Nevada 89434.

3.  The Alexander at the District, LLC, a California limited liability company with its address at 10100 Trinity Parkway, 5th Floor, Stockton, California 95219, is the owner of The Alexander at the District, an apartment complex at 1731 Commerce Drive, NW, Atlanta, Georgia 30318.

4.  The Alexander at the Perimeter Center, LLC, a California limited liability company, with its address at 10100 Trinity Parkway, 5th Floor, Stockton, California 95219, is

1

the owner of The Alexander at Perimeter Center, an apartment complex at 70

Perimeter Center, NW, Atlanta, Georgia 30346.

5.  Bay Arizona Apartments Limited Partnership is an Arizona limited partnership and

the owner of Ocotillo Bay, an apartment complex at 1889 West Queen Creek,

Chandler Arizona 85248.  Its address is c/o Sentinel Real Estate Corporation 1251

Avenue of the Americas, New York, New York 10020.

6.  Vista West Limited Partnership is a Nevada limited partnership and the owner of

Tuscany Ridge, an apartment complex at 8203 West Oraibi Drive, Peoria, Arizona

85382.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the

Americas, New York, New York 10020.

7.  Fox Trails Limited Partnership is a Delaware limited partnership and the owner of

Tamarron, an apartment complex at 4410 North 99th Avenue, Phoenix, Arizona

85037.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the

Americas, New York, New York 10020.

8.  Carrington Place Limited Partnership is a Connecticut limited partnership and the

owner of The Enclave, an apartment complex at 30300 Antelope Road, Menifee,

California 92584.  Its address is c/o Sentinel Aquisitions Corporation 1251 Avenue of

the Americas, New York, New York 10020.

9.  Columbia Redwood Creek LLC is a Delaware limited liability company, registered to

do business in California, with its address at 125 High Street, High Street Tower, 27th

Floor, Boston, Massachusetts 02110.  It is the owner of Windsor at Redwood Creek,

an apartment complex at 600 Rohnert Park Expressway, Rohnert Park, California

94928.

10. Glacier/River Oaks Corp. is a California corporation and the owner of River Oaks, an apartment complex at 1000 Allison Drive, Vacaville, California 95687.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

11. Asprey Brandon Apartments, Inc. is a Florida corporation and the owner of Asprey Place, an apartment complex at 1240 Astor Common Place, Brandon, Florida 33511. Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

12. Socal-Lakes, Inc. is a Florida corporation and the owner of Lucerne at Lake, an apartment complex at 1419 Lake Lucerne Way, Brandon, Florida 33511.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

13. Hamlin Apartments Florida / Limited Partnership is a Florida limited partnership and owner of The Hamlin at Lake Brandon, an apartment complex at 1508 LaDora Drive, Brandon, Florida 33511.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

14. Glacier / Versant Corp. is a Florida corporation and the owner of Versant Place, an apartment complex at 1010 Versant Drive, Brandon, Florida 33511.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

15. Egrets Apartments, Inc., a Florida corporation and the owner of Egret's Landing, an apartment complex at 1500 Seagull Drive, Palm Harbor, Florida 34685.  Its address is

c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

16. Andover Place North Limited Partnership is a Florida limited partnership and the owner of Andover Place, an apartment complex at 10202 Altavista Avenue, Tampa, Florida 33647.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

17.  Addison Park Limited Partnership is a Florida limited partnership and the owner of Addison Park, an apartment complex at 10202 Altavista Avenue, Tampa, Florida 33647.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

18. Protea Northwoods Apartments, LP is a Florida limited partnership and the owner of Arlington at Northwood, an apartment complex at 1930 Devonwood Drive, Wesley Chapel, Florida 33543.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

19. Protea North Pointe Apartments L.P. is a California limited partnership and the owner of North Pointe, an apartment complex at 6801 Leisure Town Road, Vacaville, California 95688.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

20. Delano @ Cypress Creek, LLC is a Florida limited liability company and the owner of Delano at Cypress Creek, an apartment complex at 2440 Delano Place, Wesley Chapel, Florida 33543.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

4

21. Villa Serena LP is a Nevada limited partnership and the owner of Villa Serena, an apartment complex at 325 North Gibson Road, Henderson, Nevada 89014.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

22. Canyon Vista Apartments, Inc. is a Maryland corporation and the owner of Canyon Vista, an apartment complex at 5200 Los Altos Parkway, Sparks, Nevada 89436.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

23. Glacier / Colonnade Corporation is a Texas corporation and the owner of Bristol Bay at Desert Highland, an apartment complex at 5300 Los Altos Parkway, Sparks, Nevada.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

24. Benton Pointe Apartments Inc. is a Texas corporation and the owner of Benton Pointe, an apartment complex at 205 Benton Drive, Allen, Texas 75013.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

25. Lansbrook Apartments Limited Partnership is a Texas limited partnership and the owner of Lansbrook at Twin Creeks, an apartment complex at 505 Benton Drive, Allen, Texas 75013.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.

26. Escalon Canyon Creek Apartments Limited Partnership is a Texas limited partnership and the owner of Escalon at Canyon Creek, Phase II, an apartment complex at 9715

5

North FM-620, Austin, Texas 78726.  Its address is c/o Sentinel Real Estate

Corporation 1251 Avenue of the Americas, New York, New York 10020.

27. Protea Amesbury Court, LP, is a Texas limited partnership and the owner of

Amesbury Court, an apartment complex at 4699 Fossil Vista Drive, Haltom City,

Texas 76137.  Its address is c/o Sentinel Real Estate Corporation 1251 Avenue of the

Americas, New York, New York 10020.

28. Berkeley Apartments, Inc. is a Maryland corporation and the owner of Berkley Place,

an apartment at 500 Solano Drive, Charlotte, North Carolina, 28262.  Its address is

c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New

York 10020.

29.  Knickerbocker Properties, Inc. XX is a Delaware corporation, registered to do

business in California, with its principal place of business at 1251 Avenue of the

Americas, New York, New York 10020.  It is the owner of: Arrowhead Landing, an

apartment complex at 15740 North 83rd Avenue, Peoria, Arizona 85382; Park Del

Mar, an apartment complex at 19411 Via Del Mar, Tampa, Florida 33647; Willow

Springs, an apartment complex at 240 McAdoo Drive, Folsom, California 95630;

Wyndhaven, an apartment complex at 1720 Wells Branch Parkway, Austin, Texas

78727; and Cheswyk (Phase I), an apartment complex at 14360 Wynhollow Downs,

Charlotte, North Carolina 28277.

30.  Summit Trails of Nevada LLC is a Delaware limited liability company, with its

address c/o Hamilton Zanze & Company, 37 Graham Street, Suite 200B, San

Francisco, California 94129.  It is the owner of Summit Trails Apartments at 1350

Grand Summit Drive, Reno, Nevada 89523.

31. EC Flying Ranch, LLC, a Delaware limited liability company; DA Flying Ranch, LLC, a Delaware limited liability company; WJC Flying Ranch, LLC, a Delaware limited liability company; CGC Flying Ranch, LLC, a Delaware limited liability company; RBW Flying Ranch, LLC, a Delaware limited liability company; JONZAN Flying Ranch, LLC, a Delaware limited liability company; 112 Fell Flying Ranch, LLC, a Delaware limited liability company; RAW Flying Ranch, LLC, a Delaware limited liability company; GFP Flying Ranch, LLC, a Delaware limited liability company; ERP Flying Ranch, LLC, a Delaware limited liability company; WCG Flying Ranch, LLC, a Delaware limited liability company; Metro Flying Ranch, LLC, a Delaware limited liability company; Harbor Way Flying Ranch, LLC, a Delaware limited liability company; Fling Ranch Road Apartments, LLC, a Delaware limited liability company all of whom are the owners of Spring Canyon, an apartment complex at 4510 Spring Canyon Heights, Colorado Springs, Colorado 80907.  Their addresses are c/o Hamilton Zanze & Company, 37 Graham Street, Suite 200B, San Francisco, California 94129.

32. Sequoia Glenn Partners, a California limited partnership, with its mailing address at 1777 Bothelho Drive, Suite 300, Walnut Creek, California 94596, and Stanford W. and Maria S. Jones Family Trust, Stanford W. Jones Trustee, are the owners of Sterling Heights, an apartment complex at 50 Rankin Way, Benecia, California 94510.

33.  RO Funding Company LLC is a Delaware limited liability company, registered to do business in California, with its address at 3900 Ruffin Road, Suite 100, San Diego,

7

California 92123.   It is the owner of Rolling Oaks, an apartment complex at 3700 Lyon Road, Fairfield, California 94534.

34.  The Pavilions Apartments, LP is a California limited partnership whose address is c/o Sentinel Real Estate Corporation 1251 Avenue of the Americas, New York, New York 10020.  Defendant is the owner of The Pavilions Apartments, an apartment complex at 5222 Consumnes Drive, Stockton, California 95219,

35.  Aventine Development LLC, is a Delaware limited liability company, registered to do business in California, with its address at 7131 Owensmouth Avenue, #6-D, Canoga Park, California 91303.  It is the owner of Aventine, an apartment complex at 47750 Adams Street, La Quinta, California 92253.

36.  Stone Canyon L.P. is a California limited partnership, with its address at 207 Second Street, Sausalito, California 94965.  It is the owner of Stone Canyon, an apartment complex at 5100 Quail Run Road, Riverdale, California 92507.

37.  ERP Operating Limited Partnership is an Illinois limited partnership, registered to do business in California, with its address at Two North Riverside Plaza, Chicago, Illinois 60606.  It is the owner of View Point, an apartment complex at 5059 Quail Run Road, Riverside, California 92507.

38.  Max H. Hoseitt and Eleanor Hoseitt are the owner of Pinewood, an apartment complex at 7051 Bowling Drive, Sacramento, California 95823.

39. Tuscany Ridge LLC is a Delaware limited liability company registered to do business in California, with it address at 2859 Paces Ferry Road, Suite 1450, Atlanta, Georgia 30339.  It is the owner of Tuscany Ridge, an apartment complex at 41955 Margarita Road, Temecula, California 92951.

40. Gateway Tyler, Inc., is a California corporation, whose address is 300 North Lake Avenue, Suite 620, Pasadena, California 91101.  Gateway Tyler, Inc. is the owner of Sheridan Park, an apartment complex at 2001 E. Spring Creek Parkway, Plano, Texas 75074.

41. TIAA Realty, Inc., a Delaware corporation registered to do business in California, whose address is 730 Third Avenue, New York, New York 10017, is the owner of Chandler Park, an apartment complex at 1950 Eldridge Parkway, Houston, Texas 77077.

42. California State Teachers Retirement System, City National Bank of Florida, as Trustee, with its address at City National Bank of Florida Trust Department, 25 West Flagler Street, Suite 711, Miami, Florida 33130, is the owner of the Alexandria Park at Lake Buena Vista, an apartment complex, at 10651 Demilo Place, Orlando, Florida 32836.  In addition, California State Teachers Retirement System is the owner of Avery Pointe at City View, an apartment complex at 5230 Bryant Irvin Road, Fort Worth, Texas 76132

43. Las Vegas 9-B II LLC is a limited liability company under the laws of Arizona with its mailing address at c/o Acacia Capital Corporation, 101 South Ellsworth Avenue, Suite 300, San Mateo, California 94401-3911.  It is the owner of Eagle Crest, an apartment complex at 5850 Sky Pointe Drive, Las Vegas, Nevada 89130.

44. Southern Nevada Apartments, LLC is a Nevada limited liability company.  The address of its managing member is 26146 Avenide de la Playa, La Jolla, California 92037-3214.   Southern Nevada Apartments, LLC is the owner of Canyon Club Apartments at 2665 South Bruce Street, Las Vegas, Nevada 89109.

9

45.  USA Cambria 17, LLC, a Delaware limited liability company, whose address is c/o U.S. Advisor, LLC, Five Financial Plaza, Suite 105, Napa, California 94558, is the owner of Cambria at Coyote Ridge, an apartment complex at 4230 Fairway Drive, Carrolton, Texas 750101.

46. USA Parkside 1, LLC; USA Parkside 2, LLC;  USA Parkside 3, LLC;  USA Parkside 4, LLC; USA Parkside 5, LLC; USA Parkside 6, LLC; USA Parkside 7, LLC;  USA Parkside 8, LLC; USA Parkside 9, LLC; USA Parkside 10, LLC; USA Parkside 11, LLC; USA Parkside 12, LLC; USA Parkside 13, LLC; USA Parkside 14, LLC; USA Parkside 15, LLC; USA Parkside 16, LLC; USA Parkside 17, LLC; USA Parkside 18, LLC; USA Parkside 19, LLC; USA Parkside 20, LLC; USA Parkside 21, LLC; USA Parkside 22, LLC; and USA Parkside 23, LLC  are Delaware limited liability companies whose address is Five Financial Plaza, Suite 205, Napa, California 94558. They are owners of Parkside, an apartment complex at 605 Candler Lane, Charlotte, North Carolina 28217.

47.  CFS Biscayne Bay LLC is a Delaware limited liability company with its address at 700 N. Mopac / Expressway, Suite 430, Austin, Texas 78731.  It is the owner of Biscayne Bay, an apartment complex at 300 East Warner Road, Chandler, Arizona 85224.

48. Sonoma Ridge Apartments, Inc. is a Maryland corporation with its mailing address at 836 Park Avenue, 2nd Floor, Baltimore, Maryland 21201.  It is the owner of Sonoma Ridge, an apartment complex at 9246 W. Beardsley Road, Peoria, Arizona 85382.

49.  Alliance HC II LP is a Delaware limited partnership, with its principal place of business at 433 East Las Colinas Boulevard, Suite 980, Irvine, Texas 75039-5513.  It

10

is the owner of Alexander Gardens, an apartment complex at 3900 Dalecrest Drive, Las Vegas, Nevada 89129.

50.  Diamond Sands Apartments LLC is a Nevada limited liability company, with its address at 5800 West Charleston Boulevard, Las Vegas, Nevada 89146.  It is the owner of Diamond Sands Apartments, 8445 Las Vegas Boulevard South, Las Vegas, Nevada 89123.

51. Summer Winds III LLC is a Nevada limited liability company, with its address at 630 Trade Center Drive, Las Vegas, Nevada 89119-3712.  It is the owner of Summer Winds, an apartment complex at 2725 West Wigwam, Las Vegas, Nevada 89123.

52.  Bayridge Investment Partners, LLC is a Delaware limited liability company, whose mailing address is 4301 Westbank Drive, Building B, Suite 270, Austin, Texas 78746.  It is the owner of Bayridge, an apartment complex at 3021 State Road 590, Clearwater, Florida 33759.

53. Auberry Investors Limited Partnership, a Delaware limited partnership, whose address is 666 Fifth Avenue, 27th Floor, New York, New York 10103, is the owner of Aubrey at Twin Creeks, an apartment complex at 705 Bray Central Drive, Allen, Texas 75013.

54. Fairmont Apartments Limited Partnership, a Delaware limited partnership, whose address is 666 Fifth Avenue, 27th Floor, New York, New York 10103, is the owner of Fairmont, an apartment complex at 3701 Fossil Creek Boulevard, Fort Worth, Texas 76137.

55.  Belterra Investors Limited Partnership, a Delaware limited partnership, whose address is 666 Fifth Avenue, 27th Floor, New York, New York 10103, is the owner of

Beltera, an apartment complex at 7001 Sandshell Boulevard, Fort Worth, Texas 76137.

56. Constellation Ranch Apartments LP, a Texas limited partnership whose address is 6363 Woodway Drive, Suite 250, Houston, Texas 77057, is the owner of Constellation Ranch, an apartment complex at 500 West Loop South, Fort Worth, Texas 76018.

57. Stanton Park Apartments LLC, a Washington limited liability company, whose address is 23219 SE 47th Street, Sammamish, Washington 98075, is the owner of Stanton Park, an apartment complex at 8585 Spicewood Springs, Austin, Texas 78759.

58. EQR-Fankey 2004 Limited Partnership, an Illinois limited partnership, whose address is c/o Equity Residential, Two North Riverside Plaza, Suite 400, Chicago, Illinois 60606, is the owner of the Coventry at City View, an apartment complex at 5200 Bryant Irvin Road, Fort Worth, Texas 76132.

59. Wade Crossing LLC, a Kansas limited liability company, whose address is 12721 Metcalf Avenue, Suite 200, Overland Park, Kansas 66213-2623, is the owner of Wade Crossing, an apartment complex at 9399 Wade Boulevard, Frisco, Texas 75035.

60. Pine Bluffs LLC, a Colorado limited liability company whose address is 6470 Timer Bluff Point, Colorado Springs, Colorado 80918, is the owner of Pine Bluffs, an apartment complex at 6470 Timber Bluff Point, Colorado Springs, Colorado 80918.

61. Mid-America Apartments, L.P., a Tennessee Limited Partnership with its address at 6584 Poplar Avenue, Suite 340, Memphis, Tennessee 38138 is the owner of The Oaks, an apartment complex at 909 Penn Waller Road, Savannah, Georgia 31410.

62. Frankel Family Trust, Edward B. Frankel, M.D., Trustee, with its address at 2001 La Cuesta Drive, Santa Ana, California 92705-2523 is the owner of Crescent Cove, an apartment complex located at 801 Hebron Parkway, Lewisville, Texas 75057.

63. AERC DPF Phase I LLC, a Delaware limited liability company, whose address is 5025 Swetland Court, Richmond Heights, Ohio 44143-1467, is the owner of Idlewylde, an apartment complex at 1435 Boggs Road, Duluth, Georgia 30096.

64. N/A Eagle Ranch-67 Limited Partnership, a Washington limited partnership whose address is 920 Garden Street, Suite A, Santa Barbara, CA 93101, is the owner of Eagle Ranch II, an apartment complex at 9270 Eagle Ranch Road, NW, Albuquerque, New Mexico 87114.

65. Park Crossing Investors LLC is a Delaware limited liability company, registered to do business in California, with its address at 666 5th Avenue, 27th Floor, New York, New York 10103.  It is the owner of Park Crossing, an apartment complex at 2100 West Texas Street, Fairfield, California 94533.