1  MAXWELL M. FREEMAN, #31278
   LEE ROY PIERCE, JR., #119318
2  MICHAEL L. GUREV, #163268
   THOMAS H. KEELING, #114979
3  FREEMAN, D'AIUTO, PIERCE,
     GUREV, KEELING & WOLF
4  A PROFESSIONAL LAW CORPORATION
   1818 Grand Canal Boulevard, Suite 4
5  Stockton, California 95207
   Telephone: (209) 474-1818
6  Facsimile:  (209) 474-1245
   E-mail:     lrpierce@freemanfirm.com
7              mgurev@freemanfirm.com
               tkeeling@freemanfirm.com
8
   Attorneys for Defendants A.G. Spanos
9  Construction, Inc.; A.G. Spanos
   Development, Inc.; A.G. Spanos
10 Land Company, Inc.; A.G. Spanos
   Management, Inc., and The Spanos Corporation
11

12              IN THE UNITED STATED DISTRICT COURT

13           FOR THE NORTHERN DISTRICT OF CALIFORNIA

14 National Fair Housing Alliance, Inc., et al.,    )   CASE NO.  C07-03255-SBA
                                                    )
15                        Plaintiffs,               )   MEMORANDUM OF POINTS AND
                                                    )   AUTHORITIES IN SUPPORT OF
16 vs.                                              )   THE SPANOS DEFENDANTS'
                                                    )   MOTION TO DISMISS PLAINTIFFS'
17 A.G. Spanos Construction, Inc., et al.           )   FIRST AMENDED COMPLAINT OR,
                                                    )   ALTERNATIVELY, FOR PARTIAL
18                        Defendants.               )   DISMISSAL OF PLAINTIFFS' FIRST
   _____           )   AMENDED COMPLAINT
19
                                                        [Fed. R. Civ. P. 12(b)(6)]
20
                                                        Hearing Date:  February 26, 2008
21                                                      Time:          1:00 p.m.
                                                        Dept:          Courtroom 3
22
                                                        Complaint Filed: June 20, 2007
23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . 1

II.  ALLEGATIONS OF THE COMPLAINT AND MATTERS SUBJECT
     TO JUDICIAL NOTICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   Allegations of Non-Compliance with the FHAA. . . . . . . . . . . . . . 4

     C.   Alleged "Injury" to Plaintiffs. . . . . . . . . . . . . . . . . . . . 5

     D.   Relief Sought by Plaintiffs. . . . . . . . . . . . . . . . . . . . . 7

     E.   "Missing" Allegations. . . . . . . . . . . . . . . . . . . . . . . . 7

     F.   Matter Subject to Judicial Notice. . . . . . . . . . . . . . . . . . 8

III. STANDARDS GOVERNING MOTIONS UNDER RULE 12(b)(6). . . . . . . . . . . 9

IV.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.   Plaintiffs' FHAA Claim for Relief Is Barred by the Statute of Limitations As to
          All But Eight of the Eighty-Five Identified Properties. . . . . . . . . . . 9

          1.   The FHAA's 2-Year Statute of Limitations Runs from the Last
               Certificate of Occupancy Issued on Each of the Subject Properties. . . . 9

          2.   Plaintiffs' Untimely Claims Cannot be Saved by the Continuing
               Violation Doctrine, the Discovery Rule or Equitable Tolling. . . . . . 10

          3.   Plaintiffs Cannot Circumvent the Statute of Limitations by Aggregating
               Alleged Violations Into A Continuing Practice. . . . . . . . . . . . 11

     B.   Plaintiffs Have Not Alleged a Cause of Action in Their Own Right Because
          They Are Not "Aggrieved Persons" Within the Meaning of the FHAA, They
          Do Not Claim to Belong to the Protected Class, Their Damages Were
          Voluntarily Incurred, and They Failed to Sue Indispensable Parties. . . . . 11

          1.   Plaintiffs Fail To State A Cause of Action Because They Are Not
               "Aggrieved Persons." . . . . . . . . . . . . . . . . . . . . . . . 12

          2.   Plaintiffs Fail To State A Cause Of Action Because They Do Not Claim
               To Belong to or Sue on Behalf of Members of the Protected Class. . . 14

          3.   Plaintiffs Have Failed to State a Claim for Damages Because, as
               Alleged, Their "Damages" Were Voluntarily Incurred. . . . . . . . . 16

          4.   Plaintiffs Have Failed to State a Claim for Injunctive Relief Because
               Plaintiffs Have Not Named the Owners, Renters, and Secured Lenders of
               the Subject Properties. . . . . . . . . . . . . . . . . . . . . . . 16

C.  Plaintiffs Have Failed to State a Claim for Relief under the FHAA Against the Spanos Defendants Because Plaintiffs Fail to Allege That the Spanos Defendants Actually Denied, or Could Actually Deny, a Rental to Anyone. . . . . . . . . 18

D.  The Complaint Fails to Allege Facts Sufficient to Establish Standing. . . . . 19

    1.  Plaintiffs Do Not Claim To Be Members of a Protected Class under the FHAA, Nor Do They Purport to Sue on Behalf of Any Member of a Protected Class; Therefore, They Have No Standing to Sue. . . . . . . 19

    2.  Plaintiffs Do Not Allege Facts Sufficient To Establish the "Irreducible Constitutional Minimum" for Standing. . . . . . . . . . . . . . . . . . . 20

    3.  Plaintiffs Have Not Alleged Facts Sufficient to Establish Standing to Seek Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    4.  Plaintiffs Have Failed to Allege Facts Sufficient to Establish Standing to Seek Injunctive Relief Under The FHAA re The Subject Properties. . 23

V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>:

3

*Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr.*
*Bd. of Trustees*

4
      19 F.3d 241 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

5

*Aulson v. Blanchard*
      83 F.3d 1 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6

*B. C. v. Plumas Unified School Dist.*

7
      192 F.3d 1260 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

8

*Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*
      40 F.Supp.2d 700 (D. Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

9

*Bangerter v. Orem City Corp.*,

10
      46 F.3d 1491 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11

*Barlow v. Evans*
      993 F.Supp. 1390 (D. Utah 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12

*Barron v. Reich*

13
      13 F.3d 1370 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14

*Bernhardt v. County of Los Angeles*
      279 F.3d 862 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15

*Blum v. Yaretsky*

16
      457 U.S. 991 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

17

*Canatella v. Stovitz*
      365 F.Supp. 2d 1064 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . 11

18

*City of Los Angeles v. Lyons*

19
      461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20

*Clark v. McDonald's Corp.*
      213 F.R.D. 198 (D.N.J. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

21

*Conservation Law Found. of New England v. Reilly,*

22
      950 F.2d 38 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

23

*Davis v. Passman*
      442 U.S. 228 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

24

*Doran v. 7-Eleven Inc.*

25
      2007 U.S. App. LEXIS 26143 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . 24

26

*Equal Rights Center v. Post Properties, Inc.*
      2007 U.S. Dist. Ct., LEXIS 53462 (D.C. 2007) . . . . . . . . . . . . . . . . 17

27

28

*Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*
    141 F.3d 71 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fair Housing of Marin v. Jack Combs*
    285 F.3d 899 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services*
    528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Garcia v. Brockway*
    503 F.3d 1092 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9-11, 15

*Giebeler v. M&B Associates*
    343 F.3d 1143 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Gladstone Realtors v. Village of Bellwood*
    441 U.S. 91 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22, 24

*Growth Horizons, Inc. v. Delaware County*
    983 F.2d 1277 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*H.J.M. v. K. Hovnanian at Mahwah VI, Inc.*
    672 A.2d 1166 (N.J. Sup. Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hansen v. Liberty Partners, LLC*
    2005 U.S. Dist. LEXIS 39187 (M.D. Tenn 2005) . . . . . . . . . . . . . . . . . . 16

*Harris v. Itzhak*
    183 F.3d 1043 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Hishon v.King & Spalding*
    467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hotel St. George Associates v. Benjia Morgenstern, et al.*
    819 F.Supp. 310 (S.D. NY 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Independent Housing Services of San Francisco v. Fillmore Center Associates*
    840 F.Supp. 1328 (N.D. Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lewis v. Casey*
    518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lonberg v. Sanborn Theatres*
    259 F.3d 1029, U.S.App.LEXIS 17418 (9th Cir. 2001) . . . . . . . . . . . . . . 18

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 24

*McConnell v. FEC*
    540 U.S. 93 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Michigan Protection and Advocacy Services, Inc. v. Basin*
    799 F.Supp. 695 (Mich. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Molski v. Mandarin Touch Restaurant*
    385 F.Supp.2d 1042 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Moseke v. Miller & Smith, Inc.*
    202 F.Supp.2d 492 (E.D. Va. 2002) . . . . . . . . . . . . . . . . . . . . . . 10, 11

*National Assn. for Mental Health, Inc. v. Califano*
    717 F.2d 1451 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Nat'l. Railroad Passenger Corp. v. Morgan*
    536 U.S. 101, 122 S.Ct. 2061 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nur v. Blake Development Corp.*
    655 F.Supp. 158 (N.D. Ind. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797, 105 S. Ct. 2965 (1985) . . . . . . . . . . . . . . . . . . . . . . . 17

*San Pedro Hotel, Inc. v. City of Los Angeles*
    159 F.3d 470 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sanghvi v. City of Claremont*
    328 F.3d 532 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Schneider v. Whaley*
    417 F.Supp. 750 (S.D. NY 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. Pacific Properties and Development Corp.*
    358 F.3d. 1097 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Thompson v. Mountain Peak Assocs. LLC*
    2006 U.S. Dist. LEXIS 36981(D. Nev. June 5, 2006) . . . . . . . . . . . . . . . 10, 11

*TOPIC v. Circle Realty*
    532 F.2d 1273 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tsombanidis v. W. Haven Fire Dep't.*
    352 F.3d 565 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. California Mobile Home Park Mgmt. Co.*
    107 F.3d 1374 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Taigen & Sons, Inc.*
    303 F.Supp.2d 1129 (D. Idaho 2003) . . . . . . . . . . . . . . . . . . . . . . . 10

*Walker and Fair Housing Foundation of Long Beach v. City of Lakewood*
    272 F.3d 1114 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

v

*Warth v. Seldin*
    422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wasserman v. Three Seasons Assoc. No. 1, Inc.*
    998 F. Supp. 1445 (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wein and Access Now, Inc. v. American Huts, Inc.*
    313 F.Supp.2d 1356 (S.D. Fla. 2004) . . . . . . . . . . . . . . . . . . . . . . 23

*Whitson v. Heilig-Meyers Furniture, Inc.*
    1995 U.S. Dist. LEXIS 4312 (N.D. Ala. 1995) . . . . . . . . . . . . . . . . . 17

**Statutes:**

42 U.S.C. section 3601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. section 3604 . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 13, 18

42 U.S.C. section 3613 . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 13, 16, 23

**Other:**

Moore's Federal Practice 3D, §101.41[4] . . . . . . . . . . . . . . . . . . . . . 16, 22, 23

R. Schwemm, "Barriers to Accessible Housing: Enforcement Issues in Design and Construction Cases under the Fair Housing Act, 40 V. Richmond L.Rev. 753 . . . . . . 18, 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (CASE NO. C07-03255-SBA)

1    Defendants A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G. Spanos

2    Land Company, Inc., A.G. Spanos Management, Inc. and the Spanos Corporation (collectively,

3    "the Spanos Defendants") submit this Memorandum of Points and Authorities in support of their

4    motion to dismiss the First Amended Complaint of National Fair Housing Alliance, Inc., Fair

5    Housing of Marin, Inc., Fair Housing Napa Valley, Inc., Metro Fair Housing Services, Inc., and

6    Fair Housing Continuum, Inc. (collectively, "Plaintiffs").[1]

7    **I.    INTRODUCTION AND SUMMARY OF ARGUMENT.**

8    This is an untimely suit brought by the wrong plaintiffs against the wrong defendants.

9    Plaintiffs are five organizations located in three states. They allege that 85 apartment complexes

10    located in 10 states, allegedly designed and constructed by the Spanos Defendants between 1991

11    and 2007, do not comply with requirements of the Fair Housing Amendments Act ("FHAA"), 42

12    U.S.C. §§ 3601, et. seq.  They make the same claim with respect to an unknown number of

13    unidentified properties located, presumably, throughout the United States in unspecified locations.

14    The Subject Properties allegedly contain over 22,000 apartment units. Plaintiffs seek an injunction

15    commanding defendants to rebuild the Subject Properties to conform to the FHAA.

16    Plaintiffs are the wrong plaintiffs because (1) no plaintiff is disabled; (2) no plaintiff

17    represents or sues on behalf of any disabled person; (3) no plaintiff has ever visited or attempted

18    to rent any of the allegedly nonconforming apartments; (4) no plaintiff has or can plausibly allege

19    that Plaintiffs consulted or referred any handicapped person who encountered non-FHAA

20    compliant features at the Subject Properties; and (5) no plaintiff has alleged that it was harmed by

21    the denial of a rental.

22    The FHAA confers a cause of action only upon the class of individuals and entities

23    protected under its provisions. An individual denied rental of an apartment is a member of the

24    class of persons protected under the FHAA. An entity denied rental of an apartment—because of

25    the entity's association with disabled persons—is a member of the class of persons protected under

26

27    [1] Concurrently with the filing of this motion, Defendants are filing a Motion to Strike under F.R.C.P. 12(f), a Motion for More Definite Statement under F.R.C.P. 12(e), and a

28    Motion to dismiss under F.R.C.P. 12(b)(7) and 19. Defendants' concurrently filed Request for Judicial Notice ("RJN"), with exhibits, applies to all four motions.

1   the FHAA.

2       An individual or entity that has <u>not</u> been harmed by the denial of a rental is not a member

3   of the class of persons protected under the FHAA. An organization that has not been harmed by

4   the denial of a rental is not a member of the class of persons protected under the FHAA and,

5   therefore, may not state a claim for relief and may not state a claim for relief thereunder.

6       On the other hand, a fair housing organization may sue under the FHAA and state a claim

7   on behalf of third-party members of the protected class, provided: (1) the fair housing organization

8   sues on behalf of third party members of the protected class who have been harmed by the denial

9   of a rental; and (2) the fair housing organization alleges and proves the existence of a "case or

10  controversy" - i.e., that it has suffered an injury in fact, redressable under the FHAA, caused by

11  defendants' violation of the rights of third-party members of the protected class.

12      The complaint fails to state a claim because plaintiffs sue only in their own right, and do

13  not sue on behalf of any person or entity allegedly harmed by the denial of a rental. Plaintiffs do

14  not claim to be disabled individuals denied rental of an apartment. Plaintiffs do not claim to be

15  entities denied rental of an apartment because of their association with disabled individuals. Also,

16  plaintiffs' alleged damages were voluntarily incurred, thus negating any allegation of causation.

17      The FHAA's 2-year statute of limitation is equally fatal to plaintiffs' complaint. The Ninth

18  Circuit's recent decision in *Garcia v. Brockway*, 503 F.3d 1092 (9th Cir. 2007) reconfirmed the

19  plain meaning of the FHAA's statute of limitation: "[a]n aggrieved person must bring a private

20  civil action under the FHA for a failure to properly design and construct within two years of the

21  completion of the construction phase, which concludes on the date that the last certificate of

22  occupancy is issued." 503 F.3d at 1101. The 2-year statute of limitations bars plaintiffs' claims

23  as to 77 of the 85 apartment complexes identified in the complaint - including <u>all</u> of the apartment

24  complexes owned by the two named putative defendant class representatives (Knickerbocker

25  Properties, Inc. XXXVIII and Highpointe Village, L.P.).

26      Plaintiffs also sue the wrong defendants. Under the FHAA, it is "unlawful" to deny a

27  rental to a particular disabled person with a particular disability who wishes to rent a particular

28  apartment. Yet, the complaint admits that most of the Subject Properties are not owned by any

1  of the Spanos Defendants, who are therefore not in any position to commit the alleged "unlawful"

2  acts. The current owner – not the original builder – is the party in a position to deny the rental

3  of a particular apartment to a particular disabled person who wishes to rent. Plaintiffs concede

4  as much by their allegation that the current owners are "necessary" parties.

5      And the owners, of course, are indispensable parties for purposes of injunctive relief.

6  Attempting to circumvent the requirement that indispensable parties be brought before the Court,

7  plaintiffs seek acquiescence in the issuance of an injunction by a putative defendant class consisting

8  of alleged owners of the Subject Properties located in some ten (10) states. However, as noted,

9  plaintiffs' claims against the two putative defendant class representatives are barred by the statute

10  of limitations. Further undermining the viability of the putative defendant class, plaintiffs fail

11  even to allege that this Court has personal jurisdiction over the absent class members, who are

12  located throughout the United States.

13      Further, under 42 U.S.C. section 3613(d), Plaintiffs – who seek an order mandating a

14  retrofitting of apartment complexes located throughout the United States – are required to afford

15  due process to the tenants of each affected unit (i.e., to people who actually live in the units), as

16  well as to the lenders whose loans are secured by the affected properties. Plaintiffs have failed

17  altogether even to allege an effort to put these two critical groups of affected parties on notice.

18  **II.  ALLEGATIONS OF THE COMPLAINT AND MATTERS SUBJECT
       TO JUDICIAL NOTICE.**

19

20      **A.  Parties**.

21      Plaintiffs are: (1) the National Fair Housing Alliance, a non-profit entity with its principal

    place of business in Washington, D.C.; (2) Fair Housing of Marin, "a non-profit community

22  organization located in San Rafael, California;" (3) Fair Housing of Napa Valley, "a non-profit

23  community organization located in Napa, California;" (4) Metro Fair Housing Services, "a non-

24  profit community organization located in Atlanta, Georgia;" and (5) The Fair Housing Continuum,

25  a "non-profit organization committed to equal housing opportunity and the elimination of

26  discrimination in Florida." FAC, ¶¶ 1, 15-19.

27      Plaintiffs' alleged "missions" include advocating for the rights of people with disabilities

28

1 to accessible housing, promoting equal housing opportunities, and eliminating housing and lending

2 inequities. FAC, ¶¶ 15-18.

3      Defendants A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G. Spanos

4 Land Company, Inc., A.G. Spanos Management, Inc., and The Spanos Corporation are California

5 corporations with principal offices in Stockton. FAC, ¶¶ 20-25.

6      Plaintiffs allege that the Spanos Defendants "no longer own most of the "known" and

7 "unknown" apartment complexes for which relief is requested." FAC ¶ 30. They also allege the

8 existence of a **defendant class** consisting of "current owners of non-compliant [apartment] units."

9 FAC, ¶ 30. **Plaintiffs allege that all current owners are "necessary parties in order to**

10 **effectuate any judgment or order for injunctive relief requested by plaintiffs."** FAC, ¶ 30.

11 Plaintiffs sue Knickerbocker Properties, Inc. XXXVIII and Highpointe Village, L.P. "individually

12 and as representatives of [the putative "known" and "unknown" current owner] class." FAC, ¶

13 32. Knickerbocker Properties, Inc. XXXVIII is alleged to own two apartment complexes:

14 "Mountain Shadows" and "The Commons." FAC, ¶ 33. Highpointe Village, L.P. is alleged to

15 be the owner of Highpointe Village, in Kansas. FAC, ¶ 34.

16      **B.    Allegations of Non-Compliance with the FHAA.**

17      Plaintiffs allege that the Spanos Defendants "have been involved in the design and

18 construction of approximately 85 multifamily complexes in California, Nevada, Arizona,

19 Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida." FAC, ¶ 27.

20 Plaintiffs claim to have identified 35 apartment complexes in California, Arizona, Nevada, Texas,

21 Kansas, Georgia, and Florida (the "Tested Properties"), totaling more than 10,000 individual

22 apartment dwelling units, that do not meet the accessibility requirements of the FHAA. FAC, ¶¶

23 3, 30. No plaintiff alleges it is located in, does business in, or counsels persons in Nevada,

24 Arizona, Colorado, New Mexico, Texas, Kansas, or North Carolina.

25      With respect to the Tested Properties, Plaintiffs allege that since 1991 the Spanos

26 Defendants have "engaged in a continuous pattern and practice of discrimination against people

27 with disabilities" by "designing and/or constructing" apartment complexes that deny full access

28 to and use of the facilities as required under the FHAA. FAC, ¶ 4.

1          Plaintiffs also allege on information and belief that 49 additional apartment complexes in

2    10 states which the Spanos Defendants designed or constructed (the "Untested Properties") also

3    violate FHAA accessibility requirements.  FAC, ¶ 6 and Appendix A to Complaint.  The Spanos

4    Defendants are also alleged to have designed or constructed an unspecified number of additional

5    <u>unidentified</u> apartment complexes located in states not yet known to Plaintiffs.  FAC, ¶ 28.  The

6    Subject Properties allegedly include over 22,000 individual apartments.  FAC, ¶ 80.

7          Plaintiffs claim to have "identified at least one FHAA violation and, in most cases,

8    multiple violations, at each of the Tested Properties."  Based on the alleged frequency and

9    similarity of these violations, Plaintiffs allege "a pervasive pattern and practice of designing and

10   constructing apartment communities in violation of the FHAA accessibility design requirements."

11   FAC, ¶ 45.  Alleged FHAA violations at the Tested Properties also include failure to design and

12   construct the public and common areas so that they are readily accessible to and usable by people

13   with disabilities.  FAC, ¶¶ 45-47.  As for the Untested Properties, Plaintiffs allege only that they

14   were designed and/or constructed after March, 1991.  FAC, ¶ 6.

15         As alleged in the Complaint, no plaintiff is located in the same city or county where the

16   tested apartments sued on are located.[2]

17       **C.**    <u>**Alleged "Injury" to Plaintiffs.**</u>

18         Plaintiffs allege injury as follows:

19

20             72.    As a result of the A.G. Spanos Defendants' actions
      described above, Plaintiffs have been directly and substantially

21         injured in that they have been **frustrated in their missions to
      eradicate discrimination in housing,** and in carrying out the

22         programs and services they provide, including encouraging
      integrated living patterns, educating the public about fair housing

23         rights and requirements, educating and working with industry
      groups on fair housing compliance, providing counseling services

24         to individuals and families looking for housing or affected by
      discriminatory housing practices and eliminating discriminatory

25         housing practices.

26             73.    As outlined above, each Plaintiff has invested

---

27      [2] Rohnert Park is in Sonoma County, but it is 35 miles from Napa, where Fair Housing
of Napa Valley is located.  See RJN, Ex. 172.  Wesley Chapel in Pasco County, Florida, is

28   132 miles from Cocoa, Florida, in Brevard County.  RJN, Ex. 173.

considerable time and effort in **educating its respective communities**[3] about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and construction of covered multifamily dwellings. Each time the A.G. Spanos Defendants designed and constructed covered dwellings that did not comply with the FHA **in one of Plaintiffs' service areas, the A.G. Spanos Defendants frustrated the mission of that Plaintiff,**[4] inasmuch as it served to discourage people with disabilities from living at that dwelling,[5] **and encouraged other entities** involved in the design and construction of covered units to disregard their own responsibilities under the FHA.

74. The A.G. Spanos Defendants' continuing discriminatory practices **have forced Plaintiffs to divert significant and scarce resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices**, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing each to suffer concrete and demonstrable injuries.

75. Each Plaintiff conducted site visits, investigations, **surveys and/or tests at the Tested Properties, resulting in the diversion of its resources in terms of staff time and salaries and travel and incidental expenses that it would not have had to expend were it not for the A.G. Spanos Defendants' violations.** FHOM, FHNV, MFHS and FHC each diverted staff time and resources to meet with NFHA staff, receive detailed training concerning the accessibility requirements of the FHA and provide logistical support for NFHA staff. In addition to such support:
a. Plaintiff FHOM conducted **site visits and investigations** at Mountain Shadows and Windsor at Redwood Creek, two properties within its service area.
b. Plaintiff FHNV conducted **a site visit and investigation** at Hawthorn Village, **a property within its service area**.
c. Plaintiff MFHS conducted a site visit and investigation at Battery at Chamblee, a property within its service area.
d. Plaintiff FHC conducted tests at Delano and Arlington at Northwood, two properties **within its service area**.

FAC, ¶¶ 72-75.

---

[3] Plaintiffs allege that they are located in Washington, D.C., California, Georgia and Florida. In referring to their "respective communities," plaintiffs cannot be referring to citizens of Nevada, Arizona, Colorado, New Mexico, and Kansas, where many of the apartments sued upon are located.

[4] None of the apartments sued upon is located in any of plaintiffs' "respective communities" or in any of plaintiffs' "service areas." RJN, Exs. 171, 172 and 173.

[5] Plaintiffs' Complaint fails to identify any disabled person who was so discouraged.

1      **D.    Relief Sought by Plaintiffs.**

2      Plaintiffs request declaratory and injunctive relief.  Among other things, the requested

3  injunctive relief would require the Spanos Defendants to survey all the apartment complexes they

4  constructed throughout the United States since March 13, 1991 and to bring each and every

5  allegedly non-FHAA compliant complex into compliance.  FAC, pp. 39-40.  Plaintiffs request

6  attorneys' fees and costs, compensatory damages, and punitive damages.  FAC, pp. 40-41.

7      Plaintiffs also seek an order "[e]njoining the Owner Defendants from failing or refusing

8  to permit the retrofits ordered by the Court to be made in their respective properties, to comply

9  with such procedures for inspection and certification of the retrofits performed as may be ordered

10  by this Court, and to perform or allow such other acts as may be necessary to effectuate any

11  judgment against the A.G. Spanos Defendants."  FAC, p. 40.

12      **E.    "Missing" Allegations.**

13      Conspicuous by their absence, the following allegations do <u>not</u> appear in the Complaint.

14  The Complaint does not allege that any of the Plaintiffs, or any of their members, or indeed any

15  disabled persons, ever attempted to rent an apartment at any of the Subject Properties or that any

16  of the Plaintiffs or their members or any disabled person ever intends to do so.

17      Plaintiffs do not allege that any member of a protected class under the FHAA has

18  encountered discriminatory conduct at any of the Subject Properties.  Nor do Plaintiffs claim they

19  are suing on behalf of any member of a protected class.

20      Plaintiffs do not allege that they have counseled, spoken to, or otherwise expended any

21  resources in communicating with any member of a protected class who claims to have encountered

22  non-FHAA compliant features in any of the Subject Properties.

23      Plaintiffs do not allege that any of their "testers" was handicapped.  None of the alleged

24  "testers" is named as a plaintiff or identified in the Complaint.

25      Plaintiffs do not allege facts purporting to show how community organizations with local

26  "service areas" in California, Florida, Georgia, or Washington D.C. were injured by allegedly

27  non-compliant apartment complexes located in New Mexico, Nevada, Arizona, Colorado, Texas,

28  Kansas, and North Carolina.  There is, for example, no allegation that noncompliant features in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (CASE NO. C07-03255-SBA)

1  an untested apartment complex in Kansas in any way caused Fair Housing of Napa Valley to

2  "divert significant and scarce resources" or otherwise frustrated its "mission." Neither Fair

3  Housing of Napa Valley nor any other plaintiff alleges that they counseled, spoke to, or otherwise

4  expended any resources in communicating with any member of a protected class who claimed to

5  have encountered non-FHAA compliant features in a complex located in Kansas or in any other

6  apartment complex designed or constructed by Defendants.

7        Plaintiffs do not allege that the putative class defendants have violated the FHAA.

8  Plaintiffs do not allege that the putative class defendants caused any injury to plaintiffs. **Plaintiffs**

9  **do not join as parties any of the tenants who hold leases on the alleged 22,000 units Plaintiffs**

10  **seek to retrofit. Plaintiffs do not join as parties any of the lenders who hold security interests**

11  **in any of the apartment complexes sued on.**

12        **F.    Matter Subject to Judicial Notice.**

13        As a matter of public record subject to judicial notice, not one of the 85 Subject Properties

14  is owned by defendants A.G. Spanos Development, Inc., A.G. Land Company, Inc. or A.G.

15  Spanos Management, Inc. RJN, Exs. 1-85. Only <u>one</u> of the Untested Properties—located in

16  <u>Kansas</u>—is owned by defendant A.G. Spanos Construction, Inc. RJN, Ex. 48. Only one of the

17  Untested Properties and two of the Tested Properties are owned by defendant The Spanos

18  Corporation. RJN Exs. 14, 20 and 44. The remaining 51 Untested Properties, and 30 of the

19  Tested Properties, are owned by entities other than the Spanos Defendants.[6] RJN, Exs. 1-85.

20        All but eight of the 85 identified properties sued on were built (and certificates of

21  occupancy issued) more than two years before the Complaint was filed. See RJN, Exs. 91, 103,

22  105, 125, 126, 129, 158 and 161. The eight exceptions are: (1) Tamarron, located in Phoenix,

23  Arizona; (2) Windsor at Redwood Creek, located in Rohnert Park, California; (3) Sycamore

24  Terrace, located in Sacramento, California; (4) Arlington at Northwood, located in Wesley

25  Chapel, Florida; (5) Delano at Cypress Creek, located in Wesley Chapel, Florida; (6) The Battery

26  _____

27        [6] Certified copies of the recorded deeds for two of the 85 properties—located in
Georgia (RJN Ex. 46) and Texas (RJN Ex. 85), are not included in the Request for Judicial

28  Notice because Defendants never owned, designed or built those complexes in the first place
and have been as yet unable to discover who, in fact, does own those complexes.

1    at Chamblee, located in Chamblee, Georgia; (7) The Coventry at City View, located in Fort

2    Worth, Texas; and (8) Belterra, located in Fort Worth, Texas. RJN, Exs. 91, 103, 105, 125, 126,

3    129, 158, and 161.

4        The last certificate of occupancy for Mountain Shadows was issued on September 5, 2002,

5    and for "The Commons" on July 18, 2002, more than two years before Plaintiffs filed this

6    complaint. See RJN, ¶¶ 102, 110. The last certificate of occupancy was issued on Highpointe

7    Village on December 8, 2003, more than two years before Plaintiffs filed this complaint. See

8    RJN, ¶ 134.

9    **III.**    **STANDARDS GOVERNING MOTIONS UNDER RULE 12(b)(6).**

10        In ruling on a motion to dismiss, the court must accept as true the well-pled allegations of

11    the complaint, as well as all <u>reasonable</u> inferences derived from the facts alleged. *Hishon v.*

12    *King & Spalding*, 467 U.S. 69, 73 (1984). The court is not required to accept as true

13    conclusionary allegations, unwarranted deductions of fact, or legal conclusions cast in the form

14    of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

15    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor are courts required

16    to "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable

17    conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v.*

18    *Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

19        In determining whether a complaint fails to state a claim, the court may consider facts

20    alleged in the complaint, documents attached or incorporated into the complaint, and matters of

21    which the court may take judicial notice – without converting the motion to dismiss into a motion

22    for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

23    **IV.**    **ARGUMENT.**

24        **A.**    **Plaintiffs' FHAA Claim for Relief Is Barred by the Statute of Limitations As to All But Eight of the Eighty-Five Identified Properties.**

25

26          **1.**    **The FHAA's 2-Year Statute of Limitations Runs from the Last Certificate of Occupancy Issued on Each of the Subject Properties.**

27        The FHAA's 2-year statute of limitations means exactly what it says. *Garcia v. Brockway*,

28    503 F.3d 1092 (9th Cir. 2007). "An aggrieved person must bring a private civil action under the

1   FHA for a failure to properly design and construct within two years of the completion of the

2   construction phase, which concludes on the date that the last certificate of

3   occupancy is issued." 503 F.3d at 1101;[7] see, 42 U.S.C. § 3613(a)(l)(A).

4           Plaintiffs filed this action on June 20, 2007. Hence, any property completed before June

5   20, 2005, falls outside of the statute of limitations. The statute of limitations has therefore run as

6   to all but <u>eight</u> of the eighty-five identified Subject Properties. See RJN, Exs. 86-170. The eight

7   complexes on which the statute of limitations has <u>not</u> run are: (1) Tamarron, located in Phoenix,

8   Arizona; (2) Windsor at Redwood Creek, located in Rohnert Park, California; (3) Sycamore

9   Terrace, located in Sacramento, California; (4) Arlington at Northwood, located in Wesley

10  Chapel, Florida; (5) Delano at Cypress Creek, located in Wesley Chapel, Florida; (6) The Battery

11  at Chamblee, located in Chamblee, Georgia; (7) The Coventry at City View, located in Fort

12  Worth, Texas; and (8) Belterra, located in Fort Worth, Texas. RJN, Exs. 91, 103, 105, 125, 126,

13  129, 158, and 161.

14                2.      **Plaintiffs' Untimely Claims Cannot be Saved by the Continuing**
                          **Violation Doctrine, the Discovery Rule or Equitable Tolling.**
15

16          In *Garcia v. Brockway*, the Ninth Circuit rejected attempts to avoid the statute of

17  limitations by invoking the "continuing violation" doctrine. 503 F.3d at pp. 1097-1098.

18  Observing that a non-compliant building is "more akin to a continuing effect rather than a

19  continuing violation under the FHA," the Ninth Circuit stated:

20                        Were we to now hold the contrary, the FHA's statute of limitations
                          would provide little finality for developers, who would be required
21                        to repurchase and modify (or destroy) buildings containing
                          inaccessible features in order to avoid design-and-construction
22                        liability for every aggrieved person who solicits tenancy from
                          subsequent owners and managers. . . . This is not what Congress
23                        provided in erecting a two-year statute of limitations for FHA
                          design-and-construction claims. If Congress wanted to leave
24                        developers on the hook years after they cease having any association
                          with a building, it could have phrased the statute to say so
25

26          [7] To the same effect, see *United States v. Taigen & Sons, Inc.*, 303 F.Supp.2d 1129,
    1144 (D. Idaho 2003) (for an FHA case, the alleged violation occurred on "the date the design
27  or construction was completed"); *Thompson v. Mountain Peak Assocs. LLC*, 2006 U.S. Dist.
    LEXIS 36981, at *8 (D. Nev. June 5, 2006) ("the last act of discrimination occurs upon the
28  completion of the design and construction of the noncompliant structure or complex"); *Moseke
    v. Miller & Smith, Inc.*, 202 F.Supp.2d 492, 503 (E.D. Va. 2002).

1    explicitly.

2    503 F.3d at 1098.

3          For similar reasons, the Ninth Circuit held that the two-year statute of limitations cannot

4    be extended by either the discovery rule or the equitable tolling doctrine.  503 F.3d at 1100-1101.

5    "Both doctrines would have the same effect as the continuing violation doctrine by tolling the

6    statute of limitations indefinitely and thus stripping it of all meaning."  *Id.; accord, Moseke,*

7    *supra,* 202 F.Supp.2d at 504; *Thompson v. Mountain Peak Assocs., LLC, supra,* U.S. Dist.

8    LEXIS 36981, at *8.

9                  **3.     Plaintiffs Cannot Circumvent the Statute of Limitations by Aggregating**
                           **Alleged Violations Into A Continuing Practice.**
10
              Plaintiffs' "continuous pattern and practice" allegation cannot be used to aggregate discrete
11
      acts into a series of related acts to invoke the continuing violation doctrine.  In *Nat'l. Railroad*
12
      *Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002), the Supreme Court held that
13
      discrete acts that fall within the statutory time period do not make timely charges based on acts
14
      that fall outside the time period.  *Id.* at 113.  Instead, "[e]ach discrete discriminatory act starts a
15
      new clock for filing charges alleging that act."  *Ibid.*  In this case, the design and construction of
16
      each of the Subject Properties is a discrete act.   "There is simply no indication that the term
17
      'practice' converts related discrete acts into a single unlawful practice for the purposes of timely
18
      filing."  *Id.* at 111.
19
             **B.     Plaintiffs Have Not Alleged a Cause of Action in Their Own Right Because**
20                  **They Are Not "Aggrieved Persons" Within the Meaning of the FHAA, They**
                    **Do Not Claim to Belong to the Protected Class, Their Damages Were**
21                  **Voluntarily Incurred, and They Failed to Sue Indispensable Parties.**

22          Plaintiffs have failed to allege facts sufficient to state a cause of action in their own right

23    under the FHAA.[8]  They are not "aggrieved persons" within the meaning of the statute, nor do

24    _____

25          [8] Though often confused, the question of whether a plaintiff has alleged <u>facts sufficient
      to state a claim for relief is a separate and distinct question from whether she has alleged facts</u>
26    <u>sufficient to establish standing to sue.</u>  *Davis v. Passman*, 442 U.S. 228, 239, n.18 (1979).
      Each question requires a distinct inquiry.  See e.g., *Bernhardt v. County of Los Angeles*, 279
27    F.3d 862, 868, n.4 (9th Cir. 2002); *Canatella v. Stovitz*, 365 F.Supp. 2d 1064, 1071, 1084
      (N.D. Cal. 2005) (denying defendants' 12(b)(1) motion for lack of standing but granting
28    defendants' motion under 12(b)(6) because plaintiff had not stated a cause of action).

1  they claim to be members of the protected class.  Further, Plaintiffs' alleged "damages" were

2  voluntarily incurred, and they have failed to name indispensable parties.

**1.    Plaintiffs Fail To State A Cause of Action Because They Are Not "Aggrieved Persons."**

Under the FHAA, "**An aggrieved person may commence a civil action** . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . **to obtain appropriate relief** with respect to such discriminatory housing practice. . . ." 42 U.S.C. § 3613(a)(1)(A).

The First Amended Complaint alleges that Plaintiffs are "aggrieved persons":

> As a result of the A.G. Spanos Defendants' wrongful conduct, NFHA and the other Plaintiffs **each have been injured by a discriminatory housing practice and are, therefore, "aggrieved persons" as defined by the FHA, 42 U.S.C. § 3602(i)(l).**

FAC, ¶ 85.

42 U.S.C. section 3602(i)(l) defines an aggrieved person as "any person who . . . claims to have been injured by a <u>discriminatory housing practice</u>; . . . ."

In turn, section 3602(f) defines "<u>discriminatory housing practice</u>" to mean "an act that is unlawful under section 3604. . . ." An "aggrieved person" is therefore "any person who" "claims to have been injured by . . . an act that is unlawful under section 3604."

Section 3604, in turn, makes it unlawful to deny a <u>particular</u> rental to a <u>particular</u> handicapped person (or her associate) who intends to rent, or to have a special rental contract for a particular disabled person (or her associate) who intends to rent <u>a particular</u> apartment.  Section 3604(f)(1) states:

> [I]t shall be unlawful –
>
> (f)(1)  To discriminate[9] in . . . the rental, or to otherwise make unavailable or deny

---

[9] "Discrimination" is defined in 42 U.S.C. section 3604 (f)(3):
(3) for purposes of . . . subsection([f]), discrimination includes:
(C)  . . . failure to design and construct [rental] dwellings in such a manner that—
    (i)  the public use and common use portions of such dwellings **are readily accessible to and usable by handicapped persons;**
    (ii)  all the doors designed to allow passage into and within all premises within such dwellings are **sufficiently wide to allow passage by**

a dwelling to any . . . renter . . . .

    (A)    . . . because of <u>a</u> handicap of . . . <u>that</u> renter[10];

    (B)    . . . because of <u>a</u> handicap of . . . <u>a person</u>. . . <u>intending</u> to reside in <u>that</u> dwelling after it is . . . rented, or made available; or

    (C)    . . . because of <u>a</u> handicap of . . . any person associated with <u>that</u> . . . renter . . . .

42 U.S.C. § 3604(f)(1)

Section 3604(f)(1) thus makes it <u>unlawful</u> to discriminate in a rental, resulting in "<u>a dwelling</u>" being made "unavailable" "to any renter" (A) because of <u>a particular handicap</u> of that renter or (B) because of <u>a particular handicap</u> of <u>a particular person</u> who <u>intends to reside</u> in <u>a particular dwelling</u>, or (C) because of <u>a particular handicap</u> of any person associated with <u>a particular renter</u>. This section thus makes it unlawful to make <u>a particular dwelling</u> unavailable to a <u>particular renter</u> (or her associate) because of a <u>particular handicap</u> of a <u>particular person</u>.

Similarly, 42 U.S.C. section 3604(f)(2) provides:

It shall be unlawful—

    (f)(2)    To discriminate against any person in the . . . terms, conditions or privileges of . . . rental of <u>a dwelling</u>, . . .

    (A)    . . . because of <u>a</u> handicap of <u>that</u> person; or

    (B)    . . . because of <u>a</u> handicap of . . . <u>a person</u> . . . <u>intending</u> to reside in <u>that</u> dwelling after it is . . . rented, or made available; or

    (C)    . . . because of <u>a</u> handicap of . . . any person associated with <u>that</u> person.

---

                                       **handicapped persons in wheelchairs**; and

    (iii)    all premises within such dwellings contain the following features of adaptive design:

    (I)    **an accessible route** into and through the dwelling;

    (II)    light switches, electrical outlets, thermostats, and other environmental controls **in accessible locations**;

    (III)    **reinforcements in bathroom** walls to allow later installation of grab bars; and

    (IV)    **usable kitchens and bathrooms** such that an individual in a wheelchair **can maneuver about the space**.

---

[10] "Handicap," with respect to a person, means "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. section 3602(h)(1). *Giebeler v. M&B Associates*, 343 F.3d 1143, 1147 (9th Cir. 2003) On application by a handicapped person harmed by a refusal to rent, the court may appoint an attorney for that party or authorize the commencement or continuation of an action without the payment of fees, costs, or security, if in the opinion of the court that person is unable to bear the costs of that action. 42 U.S.C. section 3613(b).

1      In short, section 3604(f)(2) makes it <u>unlawful</u> to attach discriminatory "terms, conditions

2  or privileges" to a rental contract for <u>a dwelling</u>  (A) because of <u>a particular handicap</u> of <u>a</u>

3  <u>particular person intending</u> to rent; or (B) because of <u>a particular handicap</u> of <u>a particular person</u>

4  who intends to reside in <u>a particular dwelling</u>; or (C) because of a <u>particular handicap</u> of any

5  person associated with <u>a particular renter</u>.  At bottom, section (f)(2) makes it unlawful to have a

6  special rental agreement for <u>a particular person</u> (or her associate) with <u>a particular handicap</u> who

7  <u>intends</u> to reside in <u>a particular dwelling</u>.

8      Plaintiffs have not alleged that they are "aggrieved persons" because they have not alleged,

9  for purposes of section (f)(1), that they have been injured by defendants making <u>a particular</u>

10  <u>dwelling</u> unavailable to <u>a particular renter</u> (or her associate) because of <u>a particular handicap</u> of

11  a <u>particular person</u>.  Nor have plaintiffs alleged, for purposes of section (f)(2), that they have been

12  injured by defendants inserting special provisions into the rental contract of <u>a particular person</u>

13  with <u>a particular handicap</u> who <u>intends to reside</u> in <u>a particular dwelling</u>.

14      Notwithstanding the fact that many of the apartment complexes sued on have been occupied

15  for 15 or more years, plaintiffs do not allege that any handicapped person (or an associate of such

16  a person) has ever intended to rent or been denied a rental at any of the known or unknown

17  complexes sued on.  Because plaintiffs do not allege that any handicapped person (or associate)

18  ever intended to rent or has been denied a rental by the Spanos Defendants (or anyone else),

19  plaintiffs have not alleged that the Spanos Defendants have committed an act that is unlawful under

20  42 U.S.C. section 3604(f)(1) or (f)(2).  Because plaintiffs have not alleged an unlawful act, they

21  have not alleged that they have been "injured by an act that is unlawful under section 3604."

22      Because plaintiffs have not alleged that they have been injured by an act that is unlawful

23  under section 3604, plaintiffs cannot claim to have been injured by a discriminatory housing

24  practice.  Therefore, Plaintiffs are not "aggrieved persons" and they do not state a claim for relief

25  under 42 U.S.C. section 3613.

26          **2.      Plaintiffs Fail To State A Cause Of Action Because They Do Not Claim
                 To Belong to or Sue on Behalf of Members of the Protected Class.**

27

28      To state a claim for damages (or other relief) in themselves or on behalf of others under

1    the FHAA, Plaintiffs must plead that Plaintiffs belong to or sue on behalf of a "class of persons"

2    protected by the FHAA and that a person who is a member of the protected class would have

3    rented housing but for defendants' discriminatory housing practices.  See, e.g., *United States v.*

4    *California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) (discussing the

5    elements of a prima facie case under 42 U.S.C. § 3604(f)(3)); *Michigan Protection and Advocacy*

6    *Services, Inc. v. Babin*, 799 F.Supp. 695, 706 (Mich. 1992) (discussing the elements of a prima

7    facie case under 42 U.S.C. § 3604(f)(1)); *Sanghvi v. City of Claremont*, 328 F.3d 532, 536 (9th

8    Cir. 2003) .  The class protected under the FHAA consists of persons denied a rental because they

9    are disabled or because they associate with disabled persons. [11]

10           Plaintiffs do not allege that they (Plaintiffs) were denied a rental because they are disabled

11    (members of the protected class).  Plaintiffs do not claim that they were denied a rental because

12    they associate with handicapped persons (also members of the protected class).  Moreover,

13    Plaintiffs do not sue on behalf of third party disabled persons.  Plaintiffs do not allege that any

14    person having rights under the FHAA has actually been denied a rental by Defendants' alleged

15    conduct.  In short, Plaintiffs fail to state a claim for relief under the FHAA in themselves or on

16    behalf of third parties.

17           Plaintiffs allege only that Defendants' allegedly defective design and construction has

18    caused them to voluntarily divert resources which they would otherwise have used in their other

19    activities and that their "missions" have therefore been frustrated.  This allegation has been held

20    to be deficient in the context of the ADA:  the "ADA provides [plaintiffs] no remedy" for their

21    _____

22           [11] *See also, Barlow v. Evans*, 993 F.Supp. 1390, 1392 (D. Utah 1997) ("In order to
      establish a prima facia case, [plaintiff] must first establish that they are members of a class of

23    persons intended to be protected under the FHA.")  A person is a member of a protected class,
      for the purposes of the Act, when "they are the direct object of the statutory protection."

24    *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503 (10th Cir. 1995).  "[A] violation of the . . .
      Fair Housing Act . . . requires more than the mere design and construction of a noncompliant

25    housing unit."  *Garcia v. Brockway, supra*, 503 F.3d at 1105 (Fisher dissenting). "[An]
      improperly designed building . . . [is] much like a potentially dangerous ditch into which no

26    one has yet fallen - - capable of inflicting harm and violating the law, but not yet actually doing
      either."  *Id.*  It is only when disabled persons come "into contact with the defective buildings .

27    . . that [they become] victims of discriminatory housing practices . . . ." 503 F.3d at 1105
      (Fisher, dissenting).  A disabled plaintiff who has suffered no harm has no "cause of action."

28    503 F.3d at 1105 (Fisher, dissenting).

1   claims that plaintiffs have suffered frustration-of-mission injuries as a result of defendants'

2   discrimination <u>against others</u>.  *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 209 (D.N.J. 2003).

3   For the same reason, Plaintiffs' allegation also fails under the FHAA.[12]

4           **3.      Plaintiffs Have Failed to State a Claim for Damages Because, as
                       Alleged, Their "Damages" Were Voluntarily Incurred.**

5

6           Plaintiffs allege only a *self-inflicted* diversion of resources, not in response to any

7   complaint about the Subject Properties.  See Complaint at ¶¶ 68-74.  "To the extent that an injury

8   is self-inflicted . . . , the causal chain is broken."  Moore's Federal Practice 3D, §101.41[4].  Nor

9   can mere "testing" and litigation expense satisfy the standing requirement.  Moore's Federal

10  Practice 3D, §101.41[4], citing *Fair Housing Council of Suburban Philadelphia v. Montgomery

11  Newspapers*, 141 F.3d 71, 80 (3d Cir. 1998).

            **4.      Plaintiffs Have Failed to State a Claim for Injunctive Relief Because
12                     Plaintiffs Have Not Named the Owners, Renters, and Secured Lenders
                       of the Subject Properties.**
13

14          Plaintiffs allege, correctly, that <u>all</u> current owners are "necessary parties in order to

15  effectuate any judgment or order for injunctive relief requested by plaintiffs."  FAC, ¶ 30.

16          Rule 19(a)(2)(i), fundamental due process, and 42 U.S.C. § 3613(d) require that current

17  owners, renters, and secured lenders of the properties sued upon be given notice and an

18  opportunity to be heard.  The current owners are entitled to present evidence to this court showing

19  that properties owned by them actually comply with the accessability requirements of the FHAA

20  and that no disabled person has ever been harmed by alleged inaccessibility of the subject

21  properties.  Tenants have a property right not to be ousted  from their homes or deprived of the

22  benefit of their leaseholds without notice and opportunity to be heard.  Secured lenders, who have

23  made loans to owners and secured those loans with deeds of trust on the apartments sued on,

24  cannot have those deeds of trust impaired without notice and an opportunity to be heard.

            This due process standard is codified in 42 U.S.C. § 3613(d) as follows:
25

26  _____

27          [12]  Because of the similarities between the two acts, courts often look to and rely on
        ADA cases in applying the FHAA.  See *Tsombanidis v. W. Haven Fire Dep't.*, 352 F.3d 565,
28      573 (2d Cir. 2003); *Giebeler v. M&B Associates*, 343 F.2d 1143, 1149 (9th Cir. 2003).
        *Hansen v. Liberty Partners, LLC*, 2005 U.S. Dist. LEXIS 39187 * 22-23 (M.D. Tenn 2005).

1        Relief granted under this section **shall not affect any contract,**
2    **sale, encumbrance, or lease consummated** before the granting of
    such relief and involving a bona fide purchaser, encumbrancer, or
    tenant, **without actual notice of the filing of a . . . civil action**
3        **under this subchapter**.

4        An injunction requiring the retrofit of individual units leased by renters adversely affects

5    the property rights of renters and secured lenders.  No such injunction may issue unless the renters

6    and secured lenders are given notice and have opportunity to be heard.[13]  Plaintiffs in this case

7    have not even attempted to join the tenants and secured lenders.

8        Plaintiffs concede that the current owners are necessary parties.  FAC, ¶ 30.  Yet, they

9    named only two current owners: Knickerbocker Properties, Inc. XXXVIII and Highpointe Village,

10   L.P.  As noted, all claims against these defendants are barred by the two-year statute of

11   limitations.  No effort was made to join the other current owners, perhaps because Plaintiffs

12   recognize that this Court does not have personal jurisdiction over them.

13       In an attempt to get around that problem, Plaintiffs have alleged the existence of a

14   defendant "owner" class and have named Knickerbocker and Highpointe as class representatives.

15   FAC, ¶¶ 32-37.  However, this stratagem fails.  First, the fact that the claims against both class

16   representatives are time-barred renders them "inadequate" under Rule 23.  It also fails to solve

17   the jurisdictional problem: in the absence of an opt-out mechanism, Plaintiffs will have to establish

18   personal jurisdiction as to each current owner.[14]  Given the owners' locations through the United

19   

20       [13] See, *H.J.M. v. K. Hovnanian at Mahwah VI, Inc.*, 672 A.2d 1166, 1172 (N.J. Sup.
Ct. 1996); *Equal Rights Center v. Post Properties, Inc.*, 2007 U.S. Dist. Ct., LEXIS 53462
21   *5-6. (D.C. 2007); see, also, Fed.R.Civ.P. 19(a)(2)(i); *Schneider v. Whaley*, 417 F.Supp.
750, 757 (S.D. NY 1976) (tenants had a "protected interest at stake" in the housing authority's
22   policy-making and were thus entitled to notice and an opportunity to submit evidence and
argument).

23

24       [14] Lack of personal jurisdiction over absent class members triggers due process
concerns even in plaintiff class actions, in which, typically, no relief is sought against the
25   absent class members and – in any event – the absent class members can "opt out" if they
chose not to participate in the lawsuit.  See, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,
26   811-12, 105 S. Ct. 2965 (1985).  "Presumably, a defendant class would not present the same
problems [as posed in *Shutts*] because, unlike the situation with a plaintiff class, <u>the forum</u>
27   <u>court must have personal jurisdiction over each member of a defendant class</u>."  *Whitson v.
Heilig-Meyers Furniture, Inc.*, 1995 U.S. Dist. LEXIS 4312, *49 (N.D. Ala. 1995) (emphasis
28   added); see, also, *National Assn. for Mental Health, Inc. v. Califano*, 717 F.2d 1451, 1455
(D.C. Cir. 1983) (affirming district court's order refusing to certify a defendant class where

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (CASE NO. C07-03255-SBA)

1   States, Plaintiffs have not even alleged that this Court has personal jurisdiction over members of

2   the absent defendant class.

3       **C.    Plaintiffs Have Failed to State a Claim for Relief under the FHAA Against the**
        **Spanos Defendants Because Plaintiffs Fail to Allege That the Spanos**
4       **Defendants Actually Denied, or Could Actually Deny, a Rental to Anyone.**

5           "Plaintiffs' discrimination claim is . . . not permitted under the Fair Housing Act which

6   concerns discrimination by providers of housing, such as owners, landlords, and municipal service

7   providers against tenants and potential tenants." *Hotel St. George Associates v. Benjia*

8   *Morgenstern, et al.*, 819 F.Supp. 310, 319 (S.D. NY 1993).

9           As explained above, 42 U.S.C. sections 3604(f)(1) and (f)(2) make it "unlawful" to deny

10  a rental to a particular disabled person with a particular disability who wishes to rent a particular

11  apartment.  It is landlords - not builders - who are in a position to deny the rental of a particular

12  apartment to a particular disabled person who wishes to rent:

13              The "failure to design and construct" language of 3604(f)(3)(C)
                might be thought to limit the targets of this provision to those who
14              'design' or 'construct' covered multi-family dwellings, but this
                interpretation seems wrong.   As one court has observed,
15              3604(f)(3)(C) "is not a description of who is liable.  Rather, it is a
                description of what actions constitute discrimination."
16
17  R. Schwemm, "Barriers to Accessible Housing: Enforcement Issues in Design and Construction

    Cases under the Fair Housing Act," 40 U. Richmond L.Rev. 753, 776 (2006).
18
19          "[T]he purpose of [the FHAA] is to protect the housing choices of handicapped individuals

    who seek to buy or lease housing and of those who seek to buy or lease housing on their behalf.
20
    The conduct and decision-making that Congress sought to affect . . . was that of persons in a
21
    position to frustrate such choices – primarily . . . those who own the property of choice and their
22
    representatives." *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1283 (3d Cir.
23
    1993).  "[A]fter a noncompliant building has already been built . . . injunctive relief is only
24
    meaningful against the person <u>currently</u> in control of the building." *Lonberg v. Sanborn Theatres*,
25
    259 F.3d 1029, 2001 U.S.App.LEXIS 17418  at * 18 (9th Cir. 2001).  "[The] presence [of the
26

27  _____

28  the named representatives would not "fairly and adequately protect the interests of the class"
    and where the district court did "not have in personam jurisdiction over the class members").

1  current owner] as a party . . . appears imperative in order to afford full relief." *Baltimore*

2  *Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40 F.Supp.2d 700, 712 (D. Md. 1999).[15]

3  **D.    The Complaint Fails to Allege Facts Sufficient to Establish Standing.**

4  **1.    Plaintiffs Do Not Claim To Be Members of a Protected Class under the**
   **FHAA, Nor Do They Purport to Sue on Behalf of Any Member of a**
5  **Protected Class; Therefore, They Have No Standing to Sue.**

6  To have standing to sue, Plaintiffs must be members of the class of persons protected under

7  the FHAA, or they must sue on behalf of members of the protected class.  As explained in

8  *Wasserman v. Three Seasons Assoc. No. 1, Inc.*, 998 F. Supp. 1445 (S.D. Fla. 1998):

9  Plaintiffs do not dispute that they are not members of a class
   protected under the FHA.  Rather, they contend that they are
10 entitled to standing as "aggrieved persons" under the FHA. . . . The
   Supreme Court jurisprudence applying the "aggrieved persons"
11 provision of the FHA makes clear that an "aggrieved person" is not
   just any non-class member who protests what he perceives to be a
12 discriminatory housing policy.  Rather, an "aggrieved person" is a
   non-class member who (1) suffers actual injury as an ancillary effect
13 of present or imminent discrimination against a protected class
   member and (2) challenges the discriminatory policy on behalf of
14 that class member.

15 *Id.*, 998 F.Supp., 1446-1447.

16 Stated another way, Plaintiffs may establish standing only if Plaintiffs can "show that the

17 [defendant] interfered with the housing rights of [ individuals protected under the  FHAA] and

18 that, as a result, [plaintiffs] suffered an actual injury."  *San Pedro Hotel, Inc. v. City of Los*

19 *Angeles,* 159 F.3d 470, 475 (9th Cir. 1998); see, also, *Nur v. Blake Development Corp.*, 655

20 F.Supp. 158, 163 (N.D. Ind. 1987).

21 In this case, Plaintiffs do not claim to be disabled renters, nor do they sue on behalf of

22 disabled renters who claim to have been denied a rental at any of the facilities sued upon.

23 Therefore, Plaintiffs lack standing to bring this action.

24
___

25 [15] Professor Schwemm explains: "Well established tort principles, which were in place
   at the time of the 1988 FHAA's enactment and which continue in force today, provide for
26 liability for residential landlords based on their property's defects, even if such a landlord had
   no role in causing those defects and so long as he has had sufficient time to discover and
27 correct the defects." (40 U. Richmond L.Rev. at 797-798.)  Commercial landlords are also in
   a position to place "indemnity" agreement provisions into their contract to purchase an
28 apartment building from a prior owner or prior developer.

1    The "full limits of Art. III" may -- in certain circumstances not present here -- allow an

2  organization that has been "genuinely injured by conduct that violates someone's [statutory]

3  rights," to sue on behalf of and "prove that the rights of another were infringed" resulting in harm

4  to that other person. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103, n. 9. (1979).

5  What *Gladstone* teaches is that to have a "case or controversy" someone who holds substantive

6  rights under the statute in question must have suffered a harm caused by defendants' violation of

7  the statute. Then, an organization that has been genuinely injured by conduct that harms that third

8  person may sue to redress that harm. *Id.*

9    But Plaintiffs do not claim to sue on behalf of a person or entity (the class of persons) that

10  holds "substantive rights" under the FHAA. Rather, Plaintiffs sue <u>solely</u> in their own right.

11  Therefore, since Plaintiffs do not belong to the class of persons protected under the FHAA, and

12  do not sue on behalf of these persons, Plaintiffs do not have standing to sue.

13    **2.    Plaintiffs Do Not Allege Facts Sufficient To Establish the "Irreducible Constitutional Minimum" for Standing.**

14

15    Standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490,

16  498 (1975). It is a jurisdictional requirement, and a party invoking federal jurisdiction bears the

17  burden of establishing standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).[16]

18  Each element of standing is "an indispensable part of the plaintiff's case." *Id.* Federal courts are

19  diligent in observing standing requirements. *B. C. v. Plumas Unified School Dist.*, 192 F.3d

20  1260, 1264 (9th Cir. 1999) (holding that federal courts are required to examine jurisdictional

21  issues, such as standing, even *sua sponte* if necessary).

22    To meet the Article III "irreducible constitutional minimum" of standing, Plaintiffs must

23  meet a three-pronged test:

24    First [they must have] suffered an injury in fact - an invasion of a legally protected
    interest which is (a) concrete and particularized, and (b) actual or imminent, not
    conjectural or hypothetical. Second, there must be a causal connection between the

25

26    [16] Every plaintiff asserting a claim for relief must meet the constitutional requirements

27  of standing by showing that it is "entitled to have the court decide the merits of the dispute or of particular issues," and that there exists "a 'case or controversy' between [the plaintiff] and

28  the defendant within the meaning of Article III." *Warth v. Seldin*, *supra*, 422 U.S. at 498; *accord*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (CASE NO. C07-03255-SBA)

1

2

> injury and the conduct complained of . . . . Third, it must be likely, as opposed to
> merely speculative, that the injury will be redressed by a favorable decision.

3

*Lujan,* 504 U.S. at 560-61 (citations and internal quotation marks omitted); *Friends of the Earth,*

4

*Inc. v. Laidlaw Envtl. Services,* 528 U.S. 167, 180-181 (2000).

5

      These elements must be established "separately for each form of relief sought" and for

6

each claim brought by the party invoking federal jurisdiction. *Laidlaw, supra,* 528 U.S. at 185;

7

*Lewis v. Casey,* 518 U.S. 343, 358, n. 6 (1996) ("[S]tanding is not dispensed in gross."); see also

8

*Blum v. Yaretsky,* 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to

9

injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating

10

conduct of another kind, although similar, to which he has not been subject."). Accordingly,

11

Plaintiffs in this case must allege a concrete and particularized injury causally connected to

12

Defendants' alleged conduct, for each of the alleged Subject Properties.

13

      Plaintiffs have not alleged that they "suffered **an injury in fact - an invasion of a legally**

14

**protected interest which is (a) concrete and particularized, and (b) actual or imminent, not**

15

**conjectural or hypothetical**" which was **caused** by Defendants' alleged conduct. Instead,

16

Plaintiffs' "injury" is alleged to be a "frustration" of their "mission" and a diversion of their

17

resources away from their alleged usual activities to investigation of the Subject Properties and

18

litigation against the Defendants. FAC, ¶¶ 72-75.

19

      Diversion of resources and "frustration" of "mission" cannot support standing unless they

20

were <u>caused by</u> Defendants' alleged conduct. See, e.g., *Independent Housing Services of San*

21

*Francisco v. Fillmore Center Associates,* 840 F.Supp. 1328, 1336 (N.D. Cal. 1993); *accord, Fair*

22

*Housing of Marin v. Jack Combs,* 285 F.3d 899, 904-905 (9th Cir. 2002), *cert. denied,* 573 U.S.

23

1018 (2002). Plaintiff in *Independent Housing Services of San Francisco* alleged that it had spent

24

money referring, counseling, and placing disabled people who had encountered accessibility

25

barriers at the Fillmore Center. 840 F.Supp. at p. 1336. Similarly, in *Fair Housing of Marin*

26

plaintiff alleged that it had spent money in responding to citizen complaints against the defendant,

27

over and above litigation expenses. 285 F.3d at p. 905. Both stated a sufficient causal

28

1   relationship between the alleged injury and defendant's alleged conduct.[17]

2   Moreover, any claim of diversion of resources for referring, consulting, and placing

3   disabled persons necessarily requires allegations that plaintiffs counseled specific disabled persons

4   who wished to live at the apartment complex sued upon. *See, Gladstone, Realtors v. Bellwood,*

5   *supra,* 441 U.S. 91, 112-115; *see also TOPIC v. Circle Realty,* 532 F.2d 1273, 1275 (9th Cir.

6   1976), *cert. denied,* 429 U.S. 859 (purported plaintiffs were spread out over such a wide

7   metropolitan area that role played by alleged racial steering was so attenuated as to negate

8   existence of any injury in fact).

9   In contrast, the complaint before the Court does not allege that any member of a protected

10  class encountered non-FHAA compliant features at any of the Subject Properties. Plaintiffs do

11  not allege that they received any complaints about the Subject Properties, that they counseled,

12  referred or placed anyone who had encountered such problems, or that they otherwise responded

13  to complaints about any of the Subject Properties.

14  Plaintiffs allege only a *self-inflicted* diversion of resources, not in response to any

15  complaint about the Subject Properties. See FAC at ¶¶ 72-75. "To the extent that an injury is

16  self-inflicted . . ., the causal chain is broken." Moore's Federal Practice 3D, §101.41[4].

17  Nor can mere "testing" and litigation expense satisfy the standing requirement:

18  Litigation costs, even those that may be concrete and particularized, do not suffice
    to establish standing. An organization cannot obtain standing to sue in its own
19  right as a result of self-inflicted injuries that are not fairly traceable to the
    defendant's conduct. Thus, allegations of injury in fact based on the expenditure
20  of resources incurred in enforcement litigation fail to establish standing.

21  _____

22  [17] The Ninth Circuit's decision in *Smith v. Pacific Properties and Development Corp.*,
    358 F.3d 1097 (9th Cir. 2004) is not inconsistent. Plaintiffs in that case were a disabled
23  "tester" and the "Disabled Rights Action Committee ("DRAC"). After dismissing the
    complaint for lack of standing, <u>without leave to amend</u>, the Nevada District Court denied
24  DRAC's motion for reconsideration. The court did not explain its order, nor did it offer a
    reason for not granting leave to amend. Under these circumstances, the Ninth Circuit
25  reversed, holding that the trial court had abused its discretion in refusing to grant leave to
    amend, and that the plaintiff should have been allowed an opportunity to amend. See 358 F.3d
26  at 1105-1106. This was consistent with the Supreme Court's ruling in *Havens, supra,* that the
    plaintiffs therein should have been allowed to amend their complaint. 455 U.S. at 377-378. In
27  *Smith,* DRAC had "indicated that it would be capable of amending its complaint upon remand
    to clearly come within the *Fair Housing [of Marin]* requirement on the merits of the standing
28  inquiry." 358 F.3d at 1106, n. 10.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (CASE NO. C07-03255-SBA)

1  Expanding the definition of Article III injury to include an organization's litigation-
related expenses would imply that any sincere plaintiff could bootstrap standing
2  simply by expending its resources in response to the actions of another.

3  Moore's Federal Practice 3D, §101.41[4];  see *Association for Retarded Citizens v. Dallas County*

4  *Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994); see

5  also, *Walker and Fair Housing Foundation of Long Beach v. City of Lakewood,* 272 F.3d 1114,

6  1124, n.3 (9th Cir. 2001).

7       In the absence of any allegation that Plaintiffs were forced to divert resources because of

8  Defendants' harm to disabled persons, Plaintiffs have not "suffered **an injury in fact - an**

9  **invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual**

10  **or imminent, not conjectural or hypothetical**" and which was **caused** by Defendants' alleged

11  conduct.   While this is true as to all the Subject Properties, it is most obviously true of the

12  "Untested Properties" which Plaintiffs admit they did not "test" and the Unknown Properties the

13  identities and locations of which Plaintiffs admit are "unknown" to them.  FAC, ¶ 28.

14       Nor have Plaintiffs met the third prong of Article III standing: "redressability." They have

15  sued for injunctive relief under the FHAA without serving the owners of the Subject Properties

16  scattered throughout the United States, the tenants currently residing in the thousands of apartment

17  units that would have to be rebuilt or retrofitted, or the secured lenders on the Subject Properties.

18  See, Moore's Federal Practice 3D, § 101.42[5].

19       **3.    Plaintiffs Have Not Alleged Facts Sufficient to Establish Standing to Seek Damages.**

20
21       An organization that does not allege that it was denied housing has no standing to seek

22  damages under the FHAA. *Wein and Access Now, Inc. v. American Huts, Inc.*, 313 F.Supp.2d

23  1356, 1360-1361 (S.D. Fla. 2004).   Accordingly, even if they had standing to seek injunctive

24  relief – and they do not – the Plaintiffs have no standing to seek damages.

     **4.    Plaintiffs Have Failed to Allege Facts Sufficient to Establish Standing to Seek Injunctive Relief Under The FHAA re The Subject Properties.**
25
26       Standing is not dispensed "in gross."   Rather, a plaintiff must demonstrate standing

27  separately for each form of relief sought (injunction, damages, civil penalties, etc.). *Friends of*

28  *the Earth, Inc. v. Laidlaw Environmental Services, Inc., supra,* 528 U.S. at 184.  Before a court

1  will order a business to undergo the expense of rebuilding or retrofitting facilities to comply with

2  the FHAA, courts first require that plaintiff show that it has **standing to seek injunctive relief**:

3    > In order to establish an injury in fact sufficient to confer standing to pursue
      > injunctive relief, the Plaintiff must demonstrate a "real or immediate threat that the
4    > plaintiff will be wronged again - - a likelihood of substantial and immediate
      > irreparable injury." [citation omitted] In evaluating whether an ADA plaintiff has
5    > established a likelihood of future injury, courts have looked to such factors as: (1)
      > the proximity of the place of public accommodation to plaintiff's residence, (2)
6    > plaintiff's past patronage of defendant's business, (3) the definitiveness of
      > plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant.

7  *Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042 (C.D. Cal. 2005).  This same test

8  applies under the FHAA.  To have standing to seek injunctive or declaratory relief under the

9  FHAA, plaintiff must actually live at or intend to live at the apartment complex sued on.  (See,

10 e.g., *Harris v. Itzhak*, 183 F.3d 1043, 1050 (9th Cir. 1999) (Plaintiff's request for declaratory and

11 injunctive relief rendered moot by her departure from the complex).

12     The same is true for the public areas of the Subject Properties.  "Allegations that a plaintiff

13 has visited a public accommodation on a prior occasion and is currently deterred from visiting that

14 accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent."

15 *Doran v. 7-Eleven Inc.*, 2007 U.S. App. LEXIS 26143, * 9 (9th Cir. 2007).  In addition, plaintiffs

16 have standing to seek injunctive relief only for those violations related to plaintiffs "specific

17 disability." *Ibid.*

18     Regarding "proximity," the district court in *Molski v. Mandarin Touch* determined that the

19 plaintiff's residence was over 100 miles from the defendant Mandarin Touch Restaurant in

20 Solvang, California, a fact which weighed heavily against standing to sue for injunctive relief.

21 385 F.Supp. at p. 1045.  In the instant case, Plaintiffs do not even pretend to have met the

22 "proximity" test: they allege that they are located in California, Florida, Georgia, and Washington

23 D.C. and that the Subject Properties are located throughout the United States, e.g., in New

24 Mexico, Nevada, Arizona, Colorado, Texas, Kansas, and North Carolina.  Plaintiffs obviously

25 fail the "proximity" test.[18]  For the same reason, Plaintiffs do not allege, and cannot show,

26

27     [18] See also, *Gladstone Realtors v. Bellwood, supra*, 441 U.S. 91, 112, n25 (refusing to
   grant standing to individual plaintiffs that did not live in the community in which the alleged
28 discrimination occurred); *Conservation Law Found. of New England v. Reilly*, 950 F.2d 38, 43
   (1st Cir. 1991) (Denying standing to plaintiff entity seeking nationwide injunctive relief under

1  "frequency of travel" near the Subject Properties or likelihood that they will return to the Subject

2  Properties.

3       And there is an even more basic reason why these plaintiffs cannot establish standing to

4  sue for injunctive relief. Because Plaintiffs are not themselves disabled and because Plaintiffs do

5  not sue on behalf of disabled persons, Plaintiffs can never show a "likelihood of substantial and

6  immediate irreparable injury" to themselves. No Plaintiff (and no identified disabled person)

7  resides near any of the Subject Properties. No Plaintiff (and no identified disabled person) ever

8  attempted to rent an apartment at any of the Subject Properties. No Plaintiff (and no identified

9  disabled person) plans to rent at any of the Subject Properties. In short, Plaintiffs fail to allege

10  any facts that demonstrate that they (or any identified disabled person) will likely suffer

11  "substantial and immediate irreparable injury."

12  **V.    CONCLUSION.**

13       For the foregoing reasons, Defendants' Motion to Dismiss should be granted in its entirety.

14  Alternatively, if the Court grants this motion only with respect to the statute of limitations, the

15  complaint should be dismissed as to all the Subject Properties other than the eight (8) properties

16  listed in Section IV.A.1, *supra*. Further – and again in the alternative – even if this Court

17  concludes that Plaintiffs may proceed on some of the Tested Properties, defendants request that

18  First Amended Complaint be dismissed as to the Untested and Unknown Properties, as to which

19  Plaintiffs have clearly failed to state facts sufficient to establish standing and to state a claim upon

20  which relief may be granted.

21  Dated: December 21, 2007          FREEMAN, D'AIUTO, PIERCE, GUREV,
                                       KEELING & WOLF
22

23                                     By
24                                        THOMAS H. KEELING
                                       Attorneys for Defendants A.G. Spanos
25                                     Construction, Inc.; A.G. Spanos Development,
                                       Inc.; A.G. Spanos Land Company, Inc.; A.G.
26                                     Spanos Management, Inc., and The Spanos
                                       Corporation

27  _____

28  CERCLA at approximately 1200 facilities, the court stated: "The absence of plaintiffs from the
    majority of regions of the country in this case demonstrates the lack of 'concrete factual
    context conducive to a realistic appreciation of the consequences of judicial action.'").