MAXWELL M. FREEMAN, #31278
LEE ROY PIERCE, JR., #119318
MICHAEL L. GUREV, #163268
THOMAS H. KEELING, #114979
FREEMAN, D'AIUTO, PIERCE,
  GUREV, KEELING & WOLF
A PROFESSIONAL LAW CORPORATION
1818 Grand Canal Boulevard, Suite 4
Stockton, California 95207
Telephone: (209) 474-1818
Facsimile: (209) 474-1245
E-mail:     lrpierce@freemanfirm.com
            mgurev@freemanfirm.com
            tkeeling@freemanfirm.com

Attorneys for Defendants A.G. Spanos
Construction, Inc.; A.G. Spanos
Development, Inc.; A.G. Spanos
Land Company, Inc.; A.G. Spanos
Management, Inc.; The Spanos Corporation

IN THE UNITED STATED DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Fair Housing Alliance, Inc., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>A.G. Spanos Construction, Inc., et al.<br><br>Defendants. | CASE NO. C07-03255-SBA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT RE FIRST AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 12(e)]<br><br>Hearing Date: February 26, 2008<br>Time:         1:00 p.m.<br>Dept.:        Courtroom 3<br><br>Complaint Filed: June 20, 2007 |

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

AUTHORITY RE MOTION FOR MORE DEFINITE STATEMENT . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    THE COMPLAINT IS UNCERTAIN RE THE NUMBER OF
          COMPLEXES SUED ON. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.   THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT ARE "VAGUE
          AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE
          FOR DAMAGES OR INJUNCTIVE RELIEF UNDER THE FHAA
          BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO
          ESTABLISH THE "IRREDUCIBLE CONSTITUTIONAL MINIMUM"
          FOR STANDING UNDER ARTICLE III OF THE U.S. CONSTITUTION. 7

        A.   <u>Plaintiffs Do Not Claim To Be Members of a Protected Class under
            the FHAA, Nor Do They Purport to Sue on Behalf of Any Member of
            a Protected Class; Therefore, They Have No Standing to Sue.</u> . . . . . 7

        B.   <u>Plaintiffs Do Not Allege Facts Sufficient To Establish the
            "Irreducible Constitutional Minimum" for Standing</u>. . . . . . . . . . . 8

        C.   <u>Plaintiffs Have Not Alleged Facts Sufficient to Establish Standing to
            Seek Damages.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        D.   <u>Plaintiffs Have Failed to Allege Facts Sufficient to Establish Standing
            to Seek Injunctive Relief Under The FHAA re The Subject
            Properties</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**CASES:**

*Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*
    19 F.3d 241 (5th Cir. 1994) .................................................. 13

*B. C. v. Plumas Unified School Dist.*
    192 F.3d 1260 (9th Cir. 1999) ................................................ 10

*Blum v. Yaretsky*
    457 U.S. 991 (1982) ........................................................... 9

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) ........................................................... 12

*Conservation Law Found. of New England v. Reilly,*
    950 F.2d 38, 43 (1st Cir. 1991) .............................................. 13

*Doran v. 7-Eleven Inc.*
    2007 U.S. App. LEXIS 26143 (9th Cir. 2007) ................................... 13

*Fair Housing of Marin v. Jack Combs*
    285 F.3d 899 (9th Cir. 2002) ................................................. 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services*
    528 U.S. 167 (2000) ........................................................ 9, 12

*Gladstone Realtors v. Village of Bellwood*
    441 U.S. 91 (1979) ............................................................ 8

*Harris v. Itzhak*
    183 F.3d 1043 (9th Cir. 1999) ................................................ 12

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) ....................................................... 9, 10

*Independent Housing Services of San Francisco v. Fillmore Center Associates*
    840 F.Supp. 1328 (N.D. Cal. 1993) ............................................ 10

*Lewis v. Casey*
    518 U.S. 343 (1996) ........................................................... 9

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) .................................................... 8, 10, 13

*Molski v. Mandarin Touch Restaurant*
    385 F.Supp.2d 1042 (C.D. Cal. 2005) .................................... 9, 12, 13

*Nur v. Blake Development Corp.*
    655 F.Supp. 158 (N.D. Ind. 1987) ............................................. 8

*San Pedro Hotel, Inc. v. City of Los Angeles*
    159 F.3d 470 (9th Cir. 1998) ................................................. 8

*Smith v. Pacific Properties and Development Corp.*
    358 F.3d. 1097 (9th Cir. 2004) .................................................. 10

*TOPIC v. Circle Realty*
    532 F.2d 1273 (9th Cir. 1976) .................................................. 10

*Walker and Fair Housing Foundation of Long Beach v. City of Lakewood*
    272 F.3d 1114 (9th Cir. 2001) .................................................. 11

*Warth v. Seldin*
    422 U.S. 490 (1975) ............................................................ 8, 9

*Wasserman v. Three Seasons Assoc. No. 1, Inc.*
    998 F. Supp. 1445 (S.D. Fla. 1998) ........................................... 7, 8

*Wein and Access Now, Inc. v. American Huts, Inc.*
    313 F.Supp.2d 1356 (S.D. Fla. 2004) ............................................ 12

**FEDERAL STATUTES:**

Federal Rule of Civil Procedure 12(e) ............................................. 6

Federal Rules of Civil Procedure 12(b)(6) ........................................ 5

Federal Rules of Civil Procedure 12(b)(7) ........................................ 5

Federal Rules of Civil Procedure 12(f) ........................................... 5

Defendant A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G. Spanos Land Company, Inc., A.G. Spanos Management, Inc. and The Spanos Corporation (collectively, "Defendants") respectfully submit this Memorandum of Points and Authorities in support of their Motion for More Definite Statement from plaintiffs National Fair Housing Alliance, Inc., Fair Housing of Marin, Inc., Fair Housing Napa Valley, Inc., Metro Fair Housing Services, Inc., and Fair Housing Continuum, Inc. (collectively, "Plaintiffs").

## INTRODUCTION

Plaintiffs are: (1) the National Fair Housing Alliance, a non-profit entity with its principal place of business in Washington, D.C.; (2) Fair Housing of Marin, "a non-profit community organization located in San Rafael, California;" (3) Fair Housing of Napa Valley, "a non-profit community organization located in Napa, California;" (4) Metro Fair Housing Services, "a non-profit community organization located in Atlanta, Georgia;" and (5) The Fair Housing Continuum, a "non-profit organization committed to equal housing opportunity and the elimination of discrimination in Florida." FAC, ¶¶ 1, 15-19.

Plaintiffs' alleged "missions" include advocating for the rights of people with disabilities to accessible housing, promoting equal housing opportunities, and eliminating housing and lending inequities. FAC, ¶¶ 15-18.

Plaintiffs allege that the Spanos Defendants "no longer own most of the "known" and "unknown" apartment complexes for which relief is requested." FAC ¶ 30. They also allege the existence of a **defendant class** consisting of "current owners of non-compliant [apartment] units." FAC, ¶ 30. **Plaintiffs allege that all current owners are "necessary parties in order to effectuate any judgment or order for injunctive relief requested by plaintiffs."** FAC, ¶ 30.

Plaintiffs allege that the Spanos Defendants "have been involved in the design and construction of approximately 85 multifamily complexes in California, Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida." FAC, ¶ 27. Plaintiffs claim to have identified 35 apartment complexes in California, Arizona, Nevada, Texas, Kansas, Georgia, and Florida (the "Tested Properties"), totaling more than 10,000

individual apartment dwelling units, that do not meet the accessibility requirements of the FHAA. FAC, ¶¶ 3, 30. No plaintiff alleges it is located in, does business in, or counsels persons in Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, or North Carolina.

Plaintiffs also allege on information and belief that 49 additional apartment complexes in 10 states which the Spanos Defendants designed or constructed (the "Untested Properties") also violate FHAA accessibility requirements. FAC, ¶ 6 and Appendix A to Complaint. The Spanos Defendants are also alleged to have designed or constructed an unspecified number of additional <u>unidentified</u> apartment complexes located in states not yet known to Plaintiffs. FAC, ¶ 28. The Subject Properties allegedly include over 22,000 individual apartments. FAC, ¶ 80.

Plaintiffs claim to have "identified at least one FHAA violation and, in most cases, multiple violations, at each of the Tested Properties." Alleged FHAA violations at the Tested Properties also include failure to design and construct the public and common areas so that they are readily accessible to and usable by people with disabilities. FAC, ¶¶ 45-47. As for the Untested Properties, Plaintiffs allege only that they were designed and/or constructed after March, 1991. FAC, ¶ 6.

As alleged in the Complaint, no plaintiff is located in the same city or county where the tested apartments sued on are located.[1]

### A. Alleged "Injury" to Plaintiffs.

Plaintiffs allege injury as follows:

> 72. As a result of the A.G. Spanos Defendants' actions described above, Plaintiffs have been directly and substantially injured in that they have been **frustrated in their missions to eradicate discrimination in housing**, and in carrying out the programs and services they provide, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to individuals and families looking for housing or affected by

---

[1] Rohnert Park is in Sonoma County, but it is 35 miles from Napa, where Fair Housing of Napa Valley is located. See RJN, Ex. 172. Wesley Chapel in Pasco County, Florida, is 132 miles from Cocoa, in Brevard County. RJN, Ex. 173.

discriminatory housing practices and eliminating discriminatory housing practices.

73. As outlined above, each Plaintiff has invested considerable time and effort in **educating its respective communities**[2] about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and construction of covered multifamily dwellings. Each time the A.G. Spanos Defendants designed and constructed covered dwellings that did not comply with the FHA **in one of Plaintiffs' service areas, the A.G. Spanos Defendants frustrated the mission of that Plaintiff**,[3] inasmuch as it served to discourage people with disabilities from living at that dwelling,[4] **and encouraged other entities** involved in the design and construction of covered units to disregard their own responsibilities under the FHA.

74. The A.G. Spanos Defendants' continuing discriminatory practices **have forced Plaintiffs to divert significant and scarce resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices**, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing each to suffer concrete and demonstrable injuries.

75. Each Plaintiff conducted site visits, investigations, **surveys and/or tests at the Tested Properties, resulting in the diversion of its resources in terms of staff time and salaries and travel and incidental expenses that it would not have had to expend were it not for the A.G. Spanos Defendants' violations.** FHOM, FHNV, MFHS and FHC each diverted staff time and resources to meet with NFHA staff, receive detailed training concerning the accessibility requirements of the FHA and provide logistical support for NFHA staff. In addition to such support:
    a. Plaintiff FHOM conducted **site visits and investigations** at Mountain Shadows and Windsor at Redwood Creek, two properties within its service area.
    b. Plaintiff FHNV conducted **a site visit and investigation** at Hawthorn Village, **a property within its service area**.
    c. Plaintiff MFHS conducted a site visit and investigation at Battery at Chamblee, a property within its service area.
    d. Plaintiff FHC conducted tests at Delano and Arlington

---

[2] Plaintiffs allege that they are located in Washington, D.C., California, Georgia and Florida. In referring to their "respective communities," plaintiffs cannot be referring to citizens of Nevada, Arizona, Colorado, New Mexico, and Kansas, where many of the apartments sued upon are located.

[3] None of the apartments sued upon is located in any of plaintiffs' "respective communities" or in any of plaintiffs' "service areas." RJN, Exs. 171, 172 and 173.

[4] Plaintiffs' Complaint fails to identify any disabled person who was so discouraged.

at Northwood, two properties **within its service area**. FAC, ¶¶ 72-75.

Plaintiffs request declaratory and injunctive relief. Among other things, the requested injunctive relief would require the Spanos Defendants to survey all the apartment complexes they constructed throughout the United States since March 13, 1991 and to bring each and every allegedly non-FHAA compliant complex into compliance. FAC, pp. 39-40. Plaintiffs request attorneys' fees and costs, compensatory damages, and punitive damages. FAC, pp. 40-41.

Plaintiffs also seek an order "[e]njoining the Owner Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the A.G. Spanos Defendants." FAC, p. 40.

Conspicuous by their absence, the following allegations do <u>not</u> appear in the Complaint. The Complaint does not allege that any of the Plaintiffs, or any of their members, or indeed any disabled persons, ever attempted to rent an apartment at any of the Subject Properties or that any of the Plaintiffs or their members or any disabled person ever intends to do so.

Plaintiffs do not allege that any member of a protected class under the FHAA has encountered discriminatory conduct at any of the Subject Properties. Nor do Plaintiffs claim they are suing on behalf of any member of a protected class.

Plaintiffs do not allege that they have counseled, spoken to, or otherwise expended any resources in communicating with any member of a protected class who claims to have encountered non-FHAA compliant features in any of the Subject Properties.

Plaintiffs do not allege that any of their "testers" was handicapped. None of the alleged "testers" is named as a plaintiff or identified in the Complaint.

Plaintiffs do not allege facts purporting to show how community organizations with local "service areas" in California, Florida, Georgia, or Washington D.C. were injured by allegedly non-compliant apartment complexes located in New Mexico, Nevada, Arizona,

Colorado, Texas, Kansas, and North Carolina. There is, for example, no allegation that noncompliant features in an untested apartment complex in Kansas in any way caused Fair Housing of Napa Valley to "divert significant and scarce resources" or otherwise frustrated its "mission." Neither Fair Housing of Napa Valley nor any other plaintiff alleges that they counseled, spoke to, or otherwise expended any resources in communicating with any member of a protected class who claimed to have encountered non-FHAA compliant features in a complex located in Kansas or in any other apartment complex designed or constructed by Defendants.

Plaintiffs do not allege that the putative class defendants have violated the FHAA. Plaintiffs do not allege that the putative class defendants caused any injury to plaintiffs. **Plaintiffs do not join as parties any of the tenants who hold leases on the alleged 22,000 units Plaintiffs seek to retrofit. Plaintiffs do not join as parties any of the lenders who hold security interests in any of the apartment complexes sued on.**

In light of the Complaint's omissions, vagaries and ambiguities, Defendants are entitled, at the very least, to a more definite statement.[5] What, for example, was the "concrete and particularized" injury-in-fact suffered by a Marin County non-profit community advocacy organization as a result of alleged non compliant features in an apartment complex located in Overland Park, Kansas, which Plaintiffs allege is "untested"? What member of any class protected under the FHAA has ever encountered non compliant features in an apartment complex allegedly built in Arizona sometime during the mid-1990s? If such a person exists, what was her disability? Is she the same individual who encountered non-compliant features in Duluth, Georgia? Or was that someone else? On whose behalf, if anyone's, do Plaintiffs purport to sue? Were any of their "testers" disabled individuals?

Plaintiffs have asked this Court for an injunction commanding Defendants to rebuild or

---

[5] Concurrently with the filing of this motion, Defendants are filing a Motion to Dismiss under F.R.C.P. 12(b)(6), a Motion to Strike under F.R.C.P. 12(f), and a Motion to dismiss under F.R.C.P. 12(b)(7) and 19 based on Plaintiffs' failure to name indispensable parties. While each motion is separately noticed and briefed, Defendants' concurrently filed Request for Judicial Notice, with exhibits, applies to all four motions.

retrofit over 22,000 apartment units scattered throughout the United States. Yet, Plaintiff does not name the owners of the Subject Properties. Plaintiffs also fail to name the tenants of the apartments that will be rebuilt, or the lenders who hold security interests in these apartments. Needless to say, the compliance or non-compliance of the Subject Properties cannot be adjudicated – and certainly no injunction against those properties could issue – without the owners, tenants and lenders being before the Court. No allegations of the Complaint even begin to plead facts which could serve as a basis for addressing such issues.

### AUTHORITY RE MOTION FOR MORE DEFINITE STATEMENT

Federal Rule of Civil Procedure 12(e) provides: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." "[I]f [a] complaint does not sufficiently answer question[s] of standing . . . [a] defendant may move for a more definite statement of fact." *Fair Housing in Huntington Committee Inc. v. Town of Huntington,* 316 F.3d 357, 362 (2d Cir. 2003) citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 383, 102 S. Ct. 1114 (1982) (Powell, J., concurring).

### ARGUMENT

**I.   THE COMPLAINT IS UNCERTAIN RE THE NUMBER OF COMPLEXES SUED ON.**

Defendants cannot tell whether plaintiffs sue on 81, 82 or 85 apartment complexes. Paragraph 80 of plaintiffs' first amended complaint states:

> The Subject Properties include 81 apartment complexes, which, on information and belief, contain more than 22,000 individual dwelling units.

(FAC, p. 37, ¶ 80.)

Plaintiffs' Appendix A to the first amended complaint identifies each of the apartment complexes by number. Plaintiffs' Appendix A is unclear and has the following discrepancies:

Duplicate numbers:

    38.    Park del Mar
    38.    Portofino

(FAC, App. A, p. 3.)

Duplicate and numbers out of sequence:

  53. Villa Serna
  **55.** **Big Horn/Horizon Bluffs**
  56. Timberlake Apartments
  **55.** **Alexanders Gardens**

(FAC, App. A, p. 4.)

Duplicate and numbers out of sequence :

  **81.** **The Fairway at Southshore**
  80. Crescent Cove
  **81.** **Sheridan Park**
  82. Constellation Ranch

(FAC, App. A, p. 5.)

There appear to be a total of 85 properties named in Appendix A, but Appendix A lists number 82 as the last number in the sequence (FAC, App. A, p. 5.) And the first amended complaint states there are "81" apartment complexes (FAC, ¶ 80.)

## II. THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT ARE "VAGUE AND AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE FOR DAMAGES OR INJUNCTIVE RELIEF UNDER THE FHAA BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO ESTABLISH THE "IRREDUCIBLE CONSTITUTIONAL MINIMUM" FOR STANDING UNDER ARTICLE III OF THE U.S. CONSTITUTION.

### A. Plaintiffs Do Not Claim To Be Members of a Protected Class under the FHAA, Nor Do They Purport to Sue on Behalf of Any Member of a Protected Class; Therefore, They Have No Standing to Sue.

To have standing to sue, Plaintiffs must be members of the class of persons protected under the FHAA, or they must sue on behalf of members of the protected class. As explained in *Wasserman v. Three Seasons Assoc. No. 1, Inc.*, 998 F. Supp. 1445 (S.D. Fla. 1998):

> Plaintiffs do not dispute that they are not members of a class protected under the FHA. Rather, they contend that they are entitled to standing as "aggrieved persons" under the FHA. . . . The Supreme Court jurisprudence applying the "aggrieved persons" provision of the FHA makes clear that an "aggrieved person" is not just any non-class member who protests what he perceives to be a discriminatory housing policy. Rather, an "aggrieved person" is a non-class member who (1) suffers actual injury as an ancillary effect of present or imminent discrimination against a protected class member and (2) challenges the

discriminatory policy on behalf of that class member.
*Id.*, 998 F.Supp., 1446-1447.

Stated another way, Plaintiffs may establish standing only if Plaintiffs can "show that the [defendant] interfered with the housing rights of [ individuals protected under the FHAA] and that, as a result, [plaintiffs] suffered an actual injury." *San Pedro Hotel, Inc. v. City of Los Angeles,* 159 F.3d 470, 475 (9th Cir. 1998); see, also, *Nur v. Blake Development Corp.*, 655 F.Supp. 158, 163 (N.D. Ind. 1987).

In this case, Plaintiffs do not claim to be disabled renters, nor do they sue on behalf of disabled renters who claim to have been denied a rental at any of the facilities sued upon. Therefore, Plaintiffs lack standing to bring this action.

The "full limits of Art. III" may -- in certain circumstances not present here -- allow an organization that has been "genuinely injured by conduct that violates someone's [statutory] rights," to sue on behalf of and "prove that the rights of another were infringed" resulting in harm to that other person. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103, n. 9. (1979). What *Gladstone* teaches is that to have a "case or controversy" someone who holds substantive rights under the statute in question must have suffered a harm caused by defendants' violation of the statute. Then, an organization that has been genuinely injured by conduct that harms that third person may sue to redress that harm. *Id.*

But Plaintiffs do not claim to sue on behalf of a person or entity (the class of persons) that holds "substantive rights" under the FHAA. Rather, Plaintiffs sue <u>solely</u> in their own right. Therefore, since Plaintiffs do not belong to the class of persons protected under the FHAA, and do not sue on behalf of these persons, Plaintiffs do not have standing to sue.

B.  **Plaintiffs Do Not Allege Facts Sufficient To Establish the "Irreducible Constitutional Minimum" for Standing.**

Standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It is a jurisdictional requirement, and a party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561

(1992).[6] Each element of standing is "an indispensable part of the plaintiff's case." *Id.* Federal courts are diligent in observing standing requirements. *B. C. v. Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (holding that federal courts are required to examine jurisdictional issues, such as standing, even *sua sponte* if necessary).

To meet the Article III "irreducible constitutional minimum" of standing, Plaintiffs must meet a three-pronged test:

> First [they must have] suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan,* 504 U.S. at 560-61 (citations and internal quotation marks omitted); *Friends of the Earth, Inc. v. Laidlaw Envtl. Services*, 528 U.S. 167, 180-181 (2000).

These elements must be established "separately for each form of relief sought" and for each claim brought by the party invoking federal jurisdiction. *Laidlaw, supra*, 528 U.S. at 185; *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996) ("[S]tanding is not dispensed in gross."); see also *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). Accordingly, Plaintiffs in this case must allege a concrete and particularized injury causally connected to Defendants' alleged conduct, for each of the alleged Subject Properties.

Plaintiffs have not alleged that they "suffered **an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical**" which was **caused** by Defendants' alleged conduct. Instead, Plaintiffs' "injury" is alleged to be a "frustration" of their "mission" and a

---

[6] Every plaintiff asserting a claim for relief must meet the constitutional requirements of standing by showing that it is "entitled to have the court decide the merits of the dispute or of particular issues," and that there exists "a 'case or controversy' between [the plaintiff] and the defendant within the meaning of Article III." *Warth v. Seldin, supra*, 422 U.S. at 498; accord, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

diversion of their resources away from their alleged usual activities to investigation of the Subject Properties and litigation against the Defendants. FAC, ¶¶ 72-75.

Diversion of resources and "frustration" of "mission" cannot support standing unless they were <u>caused</u> <u>by</u> Defendants' alleged conduct. See, e.g., *Independent Housing Services of San Francisco v. Fillmore Center Associates*, 840 F.Supp. 1328, 1336 (N.D. Cal. 1993); *accord, Fair Housing of Marin v. Jack Combs*, 285 F.3d 899, 904-905 (9th Cir. 2002), *cert. denied*, 573 U.S. 1018 (2002). Plaintiff in *Independent Housing Services of San Francisco* alleged that it had spent money referring, counseling, and placing disabled people who had encountered accessibility barriers at the Fillmore Center. 840 F.Supp. at p. 1336. Similarly, in *Fair Housing of Marin* plaintiff alleged that it had spent money in responding to citizen complaints against the defendant, over and above litigation expenses. 285 F.3d at p. 905. Both stated a sufficient causal relationship between the alleged injury and defendant's alleged conduct.[7]

Moreover, any claim of diversion of resources for referring, consulting, and placing disabled persons necessarily requires allegations that plaintiffs counseled specific disabled persons who wished to live at the apartment complex sued upon. *See, Gladstone, Realtors v. Bellwood, supra*, 441 U.S. 91, 112-115; *see also TOPIC v. Circle Realty*, 532 F.2d 1273, 1275 (9th Cir. 1976), *cert. denied*, 429 U.S. 859 (purported plaintiffs were spread out over such a wide metropolitan area that role played by alleged racial steering was so attenuated as to negate existence of any injury in fact).

---

[7] The Ninth Circuit's decision in *Smith v. Pacific Properties and Development Corp.*, 358 F.3d. 1097 (9th Cir. 2004) is not inconsistent. Plaintiffs in that case were a disabled "tester" and the "Disabled Rights Action Committee ("DRAC"). After dismissing the complaint for lack of standing, <u>without leave to amend</u>, the Nevada District Court denied DRAC's motion for reconsideration. The court did not explain its order, nor did it offer a reason for not granting leave to amend. Under these circumstances, the Ninth Circuit reversed, holding that the trial court had abused its discretion in refusing to grant leave to amend, and that the plaintiff should have been allowed an opportunity to amend. See 358 F.3d at 1105-1106. This was consistent with the Supreme Court's ruling in *Havens, supra*, that the plaintiffs therein should have been allowed to amend their complaint. 455 U.S. at 377-378. In *Smith*, DRAC had "indicated that it would be capable of amending its complaint upon remand to clearly come within the *Fair Housing [of Marin]* requirement on the merits of the standing inquiry." 358 F.3d at 1106, n. 10.

In contrast, the complaint before the Court does not allege that any member of a protected class encountered non-FHAA compliant features at any of the Subject Properties. Plaintiffs do not allege that they received any complaints about the Subject Properties, that they counseled, referred or placed anyone who had encountered such problems, or that they otherwise responded to complaints about any of the Subject Properties.

Plaintiffs allege only a *self-inflicted* diversion of resources, not in response to any complaint about the Subject Properties. See FAC at ¶¶ 72-75. "To the extent that an injury is self-inflicted . . ., the causal chain is broken." Moore's Federal Practice 3D, §101.41[4].

Nor can mere "testing" and litigation expense satisfy the standing requirement:

> Litigation costs, even those that may be concrete and particularized, do not suffice to establish standing. An organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries that are not fairly traceable to the defendant's conduct. Thus, allegations of injury in fact based on the expenditure of resources incurred in enforcement litigation fail to establish standing. Expanding the definition of Article III injury to include an organization's litigation-related expenses would imply that any sincere plaintiff could bootstrap standing simply by expending its resources in response to the actions of another.

Moore's Federal Practice 3D, §101.41[4]; see *Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994); see also, *Walker and Fair Housing Foundation of Long Beach v. City of Lakewood,* 272 F.3d 1114, 1124, n.3 (9th Cir. 2001).

In the absence of any allegation that Plaintiffs were forced to divert resources because of Defendants' harm to disabled persons, Plaintiffs have not "suffered **an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical**" and which was **caused** by Defendants' alleged conduct. While this is true as to all the Subject Properties, it is most obviously true of the "Untested Properties" which Plaintiffs admit they did not "test" and the Unknown Properties the identities and locations of which Plaintiffs admit are "unknown" to them. FAC, ¶ 28.

Nor have Plaintiffs met the third prong of Article III standing: "redressability." They have sued for injunctive relief under the FHAA without serving the owners of the Subject

1  Properties scattered throughout the United States, the tenants currently residing in the
2  thousands of apartment units that would have to be rebuilt or retrofitted, or the secured lenders
3  on the Subject Properties. See, Moore's Federal Practice 3D, § 101.42[5].

    **C.**    **Plaintiffs Have Not Alleged Facts Sufficient to Establish Standing to Seek Damages.**

An organization that does not allege that it was denied housing has no standing to seek damages under the FHAA. *Wein and Access Now, Inc. v. American Huts, Inc.*, 313 F.Supp.2d 1356, 1360-1361 (S.D. Fla. 2004). Accordingly, even if they had standing to seek injunctive relief – and they do not – the Plaintiffs have no standing to seek damages.

    **D.**    **Plaintiffs Have Failed to Allege Facts Sufficient to Establish Standing to Seek Injunctive Relief Under The FHAA re The Subject Properties.**

Standing is not dispensed "in gross." Rather, a plaintiff must demonstrate standing separately for each form of relief sought (injunction, damages, civil penalties, etc.). *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., supra*, 528 U.S. at 184. Before a court will order a business to undergo the expense of rebuilding or retrofitting facilities to comply with the FHAA, courts first require that plaintiff show that it has **standing to seek injunctive relief**:

> In order to establish an injury in fact sufficient to confer standing to pursue injunctive relief, the Plaintiff must demonstrate a "real or immediate threat that the plaintiff will be wronged again - - a likelihood of substantial and immediate irreparable injury." [citation omitted] In evaluating whether an ADA plaintiff has established a likelihood of future injury, courts have looked to such factors as: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant.

*Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042 (C.D. Cal. 2005). This same test applies under the FHAA. To have standing to seek injunctive or declaratory relief under the FHAA, plaintiff must actually live at or intend to live at the apartment complex sued on. (See, e.g., *Harris v. Itzhak*, 183 F.3d 1043, 1050 (9th Cir. 1999) (Plaintiff's request for declaratory and injunctive relief rendered moot by her departure from the complex).

The same is true for the public areas of the Subject Properties. "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from

visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven Inc.*, 2007 U.S. App. LEXIS 26143, * 9 (9th Cir. 2007). In addition, plaintiffs have standing to seek injunctive relief only for those violations related to plaintiffs "specific disability." *Ibid.*

Regarding "proximity," the district court in *Molski v. Mandarin Touch* determined that the plaintiff's residence was over 100 miles from the defendant Mandarin Touch Restaurant in Solvang, California, a fact which weighed heavily against standing to sue for injunctive relief. 385 F.Supp. at p. 1045. In the instant case, Plaintiffs do not even pretend to have met the "proximity" test: they allege that they are located in California, Florida, Georgia, and Washington D.C. and that the Subject Properties are located throughout the United States, e.g., in New Mexico, Nevada, Arizona, Colorado, Texas, Kansas, and North Carolina. Plaintiffs obviously fail the "proximity" test.[8] For the same reason, Plaintiffs do not allege, and cannot show, "frequency of travel" near the Subject Properties or likelihood that they will return to the Subject Properties.

And there is an even more basic reason why these plaintiffs cannot establish standing to sue for injunctive relief. Because Plaintiffs are not themselves disabled and because Plaintiffs do not sue on behalf of disabled persons, Plaintiffs can never show a "likelihood of substantial and immediate irreparable injury" to themselves. No Plaintiff (and no identified disabled person) resides near any of the Subject Properties. No Plaintiff (and no identified disabled person) ever attempted to rent an apartment at any of the Subject Properties. No Plaintiff (and no identified disabled person) plans to rent at any of the Subject Properties. In short, Plaintiffs fail to allege any facts that demonstrate that they (or any identified disabled person) will likely suffer "substantial and immediate irreparable injury."

---

[8] See also, *Gladstone Realtors v. Bellwood, supra*, 441 U.S. 91, 112, n25 (refusing to grant standing to individual plaintiffs that did not live in the community in which the alleged discrimination occurred); *Conservation Law Found. of New England v. Reilly*, 950 F.2d 38, 43 (1st Cir. 1991) (Denying standing to plaintiff entity seeking nationwide injunctive relief under CERCLA at approximately 1200 facilities, the court stated: "The absence of plaintiffs from the majority of regions of the country in this case demonstrates the lack of 'concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'").

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that their Motion for More Definite Statement should be granted in its entirety.

Dated: December 21, 2007

FREEMAN, D'AIUTO, PIERCE, GUREV, KEELING & WOLF

By _____
LEE ROY PIERCE, JR.
Attorneys for Defendants A.G. Spanos Construction, Inc.; A.G. Spanos Development, Inc.; A.G. Spanos Land Company, Inc.; A.G. Spanos Management, Inc.; The Spanos Corporation