CLAYTON B. GANTZ (State Bar No. 116765)
SHIRLEY E. JACKSON (State Bar No. 205872)
STEEFEL, LEVITT & WEISS
A Professional Corporation
One Embarcadero Center, 30th Floor
San Francisco, CA 94111-3719
Telephone: (415) 788-0900
Facsimile: (415) 788-2019
Email: cgantz@steefel.com, sjackson@steefel.com

Attorneys for Defendant Highpointe Village, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

National Fair Housing Alliance, Inc.; Fair Housing of Marin, Inc.; Fair Housing Napa Valley, Inc.; Metro Fair Housing Services, Inc.; and Fair Housing Continuum, Inc.,

Plaintiffs,

v.

A.G. Spanos Construction, Inc.; A.G. Spanos Development, Inc.; A. G. Spanos Land Company, Inc.; A.G. Spanos Management, Inc.; The Spanos Corporation and Knickerbocker Properties, Inc. XXXVIII; and Highpointe Village, L.P. Individually and As Representatives of a Class of All Others Similarly Situated,

Defendants.

Case No. C07-3255 (SBA)

**NOTICE OF MOTION AND MOTION OF DEFENDANT HIGHPOINTE VILLAGE, L.P. TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED; MEMORANDUM OF POINTS AND AUTHORITIES**

**[FED. RULE CIV. PROC. 12(b)(6)]**

Accompanying Papers: Request for Judicial Notice; [Proposed] Order

Date: February 26, 2008
Time: 1:00 p.m.
Dept: Courtroom 3 (3rd Floor)
Judge: Hon. Saundra Brown Armstrong
Complaint Filed: June 20, 2007



STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION .......... 1
MEMORANDUM OF POINTS AND AUTHORITIES .......... 2
I. INTRODUCTION .......... 2
II. STATEMENT OF FACTS .......... 3
A. The Parties .......... 3
1. The Plaintiffs .......... 3
2. The A.G. Spanos Defendants .......... 4
3. Defendant Highpointe Village, L.P .......... 4
4. Defendant Knickerbocker Properties, Inc. XXXVIII .......... 4
5. The Owner Class Defendants .......... 5
B. Allegations Of Non-Compliance With The FHA .......... 6
1. Alleged violations of the FHA by the Spanos Defendants .......... 6
2. No alleged violations of the FHA by the Owner Class Defendants .......... 7
3. Alleged "Injury" to Plaintiffs .......... 8
4. Relief Sought by Plaintiffs .......... 9
III. LEGAL ARGUMENT .......... 10
A. Legal Standards Governing Motions To Dismiss Under Rule 12(b)(6) .......... 10
B. The FAC Fails To State A Claim Against Highpointe Because The Action Is Time-Barred .......... 11
1. The two-year statute of limitations for alleged FHA violations bars Plaintiffs' claim against Highpointe as a matter of law .......... 11
2. The continuing violation doctrine does not apply to Plaintiffs' time-barred action against Highpointe .......... 12
C. Plaintiffs Fail To Allege Facts Sufficient To State A Cause Of Action Under The FHA .......... 14
1. Plaintiffs fail to state a cause of action because they do not claim to be members of or sue on behalf of the protected class .......... 15
2. Plaintiffs fail to state a cause of action because they are not "aggrieved persons" .......... 16
D. The Complaint Fails To Allege Facts Sufficient To Establish Standing To Sue Under The FHA .......... 18
1. Plaintiffs do not allege facts sufficient to establish the "irreducible constitutional minimum" for standing regarding Highpointe Village .......... 19
2. Plaintiffs have failed to allege facts sufficient to show standing to seek injunctive relief under the FHA .......... 22
IV. CONCLUSION .......... 24

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241 (5th Cir. 1994) ........ 22

*B. C. v. Plumas Unified School Dist*., 192 F.3d 1260 (9th Cir. 1999) ........ 19

*Bangerter v. Orem City Corp*., 46 F.3d 1491 (10th Cir. 1995) ........ 15

*Barlow v. Evans*, 993 F. Supp. 1390 (D. Utah 1997) ........ 15

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ........ 20

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) ........ 10

*Conservation Law Found. of New England v. Reilly*, 950 F.2d 38 (1st Cir. 1991) ........ 23

*Council v. Montgomery Newspapers*, 141 F.3d 71 (3d Cir. 1989) ........ 22

*Duran v. 7-Eleven, Inc*., U.S. App. LEXIS 26143 (9th Cir. 2007) ........ 23

*Fair Housing of Marin v. Jack Combs*, 285 F.3d 899 (9th Cir. 2002) ........ 20, 21, 22

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services*, 528 U.S. 167 (2000) ........ 22

*Garcia v. Brockway*, 503 F.3d 1092 (9th Cir. 2007) ........ 3, 11, 12, 13, 14, 15

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) ........ 19, 21, 23

*Hargraves v. Capital City Mortgage Corp*., 140 F. Supp. 2d 7 (D.D.C. 2000) ........ 13

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ........ 13, 21

*Holden v. Hagopian*, 978 F.2d 1115 (9th Cir. 1992) ........ 10

*In re Stac Elecs. Sec. Lit.*, 89 F.3d 1399 (9th Cir. 1996) ........ 10

*Independent Housing Services of San Francisco v. Fillmore Center Associates*, 840 F.Supp. 1328 (N.D. Cal. 1993) ........ 20

*Jablon v. Dean Witter & Co*., 614 F.2d 677 (9th Cir. 1980) ........ 11, 12

*Lewis v. Casey*, 518 U.S. 343 (1996) ........ 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........ 18, 20

*Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042 (C.D. 2005) ........ 23

*Moseke v. Miller & Smith, Inc*., 202 F. Supp. 2d 492 (D.C. VA 2002) ........ 11, 13, 14, 23

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158 (4th Cir. 1991) .......... 14

*National Ass'n for Mental Health, Inc. v. California*, 717 F.2d 1451 (D.C. Cir. 1983) .......... 6

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .......... 10

*Oak Ridge Care Ctr., Inc. v. Racine County*, 896 F. Supp. 867 (C.D. Wis. 1995).......... 15, 23

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).......... 6

*Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006).......... 18

*Sanghvi v. City of Claremont*, 328 F.3d 532 (9th Cir. 2003) .......... 15

*Tolbert v. State of Ohio Dep't of Transp*., 172 F.3d 934 (6th Cir. 1999) .......... 14

*Smith v. Pacific Properties and Development Corp*., 358 F3d. 1097 (9th Cir. 2004) .......... 21

*Thompson v. Mountain Peak Assocs. LLC*, 2006 U.S. Dist. LEXIS 36981, at *7 (D. Nev. June 5, 2006) .......... 11

*TOPIC v. Circle Realty* (9th Cir. 1976) 532 F.2d 1273, cert denied, 429 U.S. 859 .......... 21

*United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374 (9th Cir. 1997).......... 11, 15

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982).......... 23

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001) .......... 22

*Warth v. Seldin*, 422 U.S. 490 (1975) .......... 18

*Wasserman v. Three Season Assoc. No. 1, Inc*., 998 F. Supp. 1445 (S.D. Fla. 1998) .......... 17

*Whitson v. Heilig-Meyers Furniture, Inc*., 1995 U.S. Dist. LEXIS 4312 (N.D. Ala. 1995).......... 6

**Statutes**

42 U.S.C. § 3604(f)(1) .......... 18

42 U.S.C. § 3604(f)(1)-(2) .......... 17

42 U.S.C. § 3504(f)(3)(C).......... 13

42 U.S.C. § 3602(f).......... 16

42 U.S.C. § 3602(i)(l) .......... 16, 18

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

42 U.S.C. § 3604 ........ 16, 17

42 U.S.C. § 3613(a)(1)(A) ........ 1, 11, 16

42. U.S.C. §§ 3601 ........ 2

**Other Authorities**

Fair Housing Amendments Act of 1988 [enacted Sept. 13, 1988] ........ 17

Moore's Federal Practice 3D, §101.41[4] ........ 22

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE THAT on **February 26, 2008**, at **1:00 p.m.**, or as soon thereafter as the matter may be heard in Courtroom 3 of the Honorable Saundra B. Armstrong, located at 1301 Clay Street, 3rd floor, Oakland, California, Defendant HIGHPOINTE VILLAGE, L.P. ("Highpointe"), will and does move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an Order dismissing this action, with prejudice, on the ground that the First Amended Complaint of Plaintiffs NATIONAL FAIR HOUSING ALLIANCE, INC., FAIR HOUSING OF MARIN, INC., FAIR HOUSING NAPA VALLEY, INC., METRO FAIR HOUSING SERVICES, INC., and FAIR HOUSING CONTINNUUM, INC. (collectively, "Plaintiffs") fails to state a claim upon which relief may be granted. Plaintiffs' claim for alleged violations of the accessibility requirements of the Fair Housing Act, as amended in 1988 (the "FHA"), on which Plaintiffs base their claim for injunctive relief against Highpointe, is barred by the two-year statute of limitations. *See, e.g.*, 42 U.S.C. § 3613(a)(1)(A). Additionally, Plaintiffs' have failed to allege facts sufficient to state a cause of action under the FHA, which is necessary to support their claim for injunctive relief. Further, Plaintiffs have failed to allege facts sufficient to show standing.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, and upon the papers, records, and pleadings already on file in this action or as may be presented at the hearing.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Highpointe Village, L.P. ("Highpointe") respectfully submits this memorandum of points and authorities in support of its motion under Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of all claims contained in the First Amended Complaint ("FAC") filed by Plaintiffs National Fair Housing Alliance, Inc., Fair Housing of Marin, Inc., Fair Housing Napa Valley, Inc., Metro Fair Housing Services, Inc., and Fair Housing Continuum, Inc. (collectively "Plaintiffs").

## I. INTRODUCTION

This far-reaching fair housing lawsuit is brought by five fair housing organizations with respect to both identified and unidentified real property located throughout the United States. Plaintiffs allege that the Spanos Defendants designed and constructed *at least* 81 apartment complexes—containing more than 22,000 dwelling units located in 10 states—which do not comply with the accessibility requirements of the Fair Housing Act, as amended in 1988 (the "FHA").[1] Out of these 81 properties, 34 "tested" apartment complexes allegedly do not comply with FHA specifications and the remaining 47 "untested" apartment complexes are "reasonably believed" to not be in compliance. What is more, Plaintiffs allege that the Spanos Defendants also built and constructed additional non-compliant apartment complexes throughout the country, the identity of which are unknown and therefore unidentified by Plaintiffs.

The majority of these known and unknown properties have been sold by the Spanos Defendants to other persons, thereby giving rise to an alleged defendant class of current property owners. This defendant class of property owners are not alleged to have violated the FHA. Rather, Plaintiffs request simply that this Court enjoin the defendant class of property owners from "failing or refusing to permit" any retrofits ordered to be made by the Spanos Defendants with respect to the subject properties.

One of the alleged representatives of the defendant class is Defendant Highpointe, which owns a single apartment complex, known as Highpointe Village, in Kansas. Plaintiffs' claim

[1] 42. U.S.C. §§ 3601, *et. seq.*

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

against Highpointe, however, is barred as a matter of law by the FHA's two-year statute of limitations. Ninth Circuit case law is clear that where, as is here, the alleged discriminatory housing practice is the failure to properly design and construct a multifamily dwelling in accordance with FHA's accessibility requirements, a plaintiff must bring his or her private civil action within two years of the completion of the construction phase. *Garcia v. Brockway*, 503 F.3d 1092, 1101 (9th Cir. 2007). Because Plaintiffs allege in the FAC that the construction of Highpointe Village was "completed in 2003" (FAC at ¶62), this admitted fact alone shows that Plaintiffs' action against Highpointe is time-barred.

In addition to this action being time-barred, Plaintiffs' claims suffer from two other fatal defects. First, Plaintiffs have not (and cannot) state a claim for relief under the FHA because they do not claim to be members of (sue on behalf of) a protected class or "aggrieved persons" under the statute. Second, Plaintiffs lack standing to bring a claim under the FHA.

The FAC therefore is fundamentally flawed as a matter of law. Accordingly, this Court should grant the instant Motion and dismiss Plaintiffs' claims against Highpointe *with prejudice*.

## II. STATEMENT OF FACTS

### A. The Parties

#### 1. The Plaintiffs

The Plaintiffs are five fair housing organizations: (1) the National Fair Housing Alliance ("NFHA"), "a national non-profit entity" with its principle place of business in Washington, D.C.; (2) Fair Housing of Marin ("FHOM"), "a private non-profit community organization" located in San Rafael, California; (3) Fair Housing Napa Valley ("FHNV"), "a non-profit community organization" located in Napa, California; (4) Metro Fair Housing Services ("MFHS"), "a non-profit community organization" located in Atlanta, Georgia; and (5) The Fair Housing Continuum, Inc. ("FHC"), "a private, non-profit organization committed to equal housing opportunity and the elimination of discrimination in Florida." *See* First Amended Complaint ("FAC") at ¶¶ 15-19, attached to Request for Judicial Notice ("RJN") as Exhibit ("Exh.") A.

Plaintiffs' alleged "missions" include advocating for the rights of people with disabilities to accessible housing, promoting equal housing opportunities, and eliminating housing and lending inequities. *Id.* at ¶¶ 15-19.

**2. The A.G. Spanos Defendants**

Defendants A. G. Spanos Construction, Inc., A. G. Spanos Development, Inc., A. G. Spanos Land Company, Inc., A.G. Spanos Management, Inc., and The Spanos Corporation ("Spanos Defendants") are California corporations with principal offices in Stockton. *Id.* at ¶¶ 20-25. The Spanos Defendants allegedly "engaged in one or more activities related to land acquisition, development, construction, and management of multifamily apartment complexes throughout the United States." *Id.* at ¶ 20.

**3. Defendant Highpointe Village, L.P.**

Defendant Highpointe Village, L.P. ("Highpointe") is alleged to be the owner of a single apartment complex consisting of approximately 300 units, known as Highpointe Village, in Overland Park, Kansas. *See id.* at ¶¶ 34, 62. This apartment complex was allegedly "designed and/or built" by the Spanos Defendants." *Id.* at ¶ 34. Construction of Highpointe Village is alleged to have been "completed in 2003." *Id.* at ¶ 62 (p. 27:2). Overland Park issued the last certificate of occupancy for Highpointe Village on December 8, 2003, *more than three years* before Plaintiffs filed this complaint. *See* Certificate of Occupancy (RJN, Exh. B).

Highpointe is named both individually and as one of two representatives of a defendant class comprised of both known and unknown "current owners of [the allegedly] non-compliant [apartment] units" (the "Owner Class Defendants"). *See, e.g.*, FAC at ¶¶ 1, 30 (RJN, Exh. A).

**4. Defendant Knickerbocker Properties, Inc. XXXVIII**

The second named representative of the Owner Class Defendants is Knickerbocker Properties, Inc. XXXVIII ("Knickerbocker"), which is alleged to own two apartment complexes also alleged to have been "designed and/or constructed by the A.G. Spanos Defendants": (1) "Mountain Shadows" in Rohnert Park, California; and (2) "The Commons" in Vacaville, California. *Id.* at ¶¶ 32-33. Like Highpointe, Knickerbocker is also sued individually. *Id.* at ¶ 32.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**5. The Owner Class Defendants**

Plaintiffs allege that the Owner Class Defendants are comprised of "the current owners of covered apartment complexes that were designed and/or built by the A.G. Spanos Defendants since the effective date of the FHA, but are no longer owned by the A.G. Spanos Defendants." *Id.* at ¶ 32. Such apartment complexes allegedly do "not fully comply with the accessibility and adaptability requirements of the FHA." *Id.* at ¶ 35.

The properties owned by the Owner Class Defendants and located in *at least* 9 different states outside California are divided into three separate categories—"Tested Properties," "Untested Properties" and "Unidentified Untested Properties." These categories are described as follows:

- Tested Properties: "Plaintiffs have identified 34 apartment complexes in California, Arizona, Nevada, Texas, Kansas, Georgia and Florida (the 'Tested Properties'), totaling more than 10,000 individual apartment dwelling units, that fail to meet the accessibility requirements of the FHA." *Id.* at ¶ 3.
- Untested Properties: "Plaintiffs have also identified another 47 apartment complexes—in California, Arizona, Nevada, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida—which the A.G. Spanos Defendants designed and/or constructed after March 1991. [Citation omitted.] Because these share common design features with the Tested Properties, Plaintiffs have reason to believe that similar FHA accessibility violations may exist at those properties as well." *Id.* at ¶ 6.
- Unidentified Untested Properties: Plaintiffs also allege that there are "additional multifamily housing complexes, the identity and location of which are not yet known to Plaintiffs." *Id.* at ¶ 28.

Significantly, the definition of the defendant class does not limit the members to only those persons with minimum contacts with California. Indeed, given the number of subject

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

properties located outside this State, it is likely that many members of the uncertified defendant class have no such contacts.[2]

Further, no Plaintiff alleges it is located in, does business in, or counsels persons in Kansas, Nevada, Arizona, Colorado, New Mexico, Texas, or North Carolina. *See, generally, id.*

Regarding class representation by Highpointe and Knickerbocker, Plaintiffs allege:

> Based on Plaintiffs' investigation to date, the violations found at the apartment complexes that are owned by the class representative defendants, [citation omitted], are typical of the violations found at the other properties that have been tested by Plaintiffs. [Citation omitted.]
>
> The representative defendants will fairly and adequately protect the interests of the remaining members of the class of owner defendants. Each has a sufficient stake in the issues of fact and law, which are common to the class members, to assure fair and adequate representations.

*Id.* at ¶¶ 35-36.

Plaintiffs further allege that the "current owners of non-compliant units may be necessary parties in order to effectuate any judgment or order for injunctive relief requested by Plaintiffs." *Id.* at ¶ 30.

## B. Allegations Of Non-Compliance With The FHA

### 1. Alleged violations of the FHA by the Spanos Defendants

Plaintiffs allege that the Spanos Defendants "have been involved in the design and construction of at least 81 multifamily complexes in California, Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida." *Id.* at ¶ 27. These multifamily

[2] Lack of personal jurisdiction over absent class members triggers due process concerns even in plaintiff class actions, in which, typically, no relief is sought against the absent class members and—in any event—the absent class members can "opt out" if they chose not to participate in the lawsuit. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12, 105 S. Ct. 2965 (1985). "Presumably, a defendant class would not present the same problems [as posed in *Shutts*] because, unlike the situation with a plaintiff class, <u>the forum court must have personal jurisdiction over each member of a defendant class</u>." *Whitson v. Heilig-Meyers Furniture, Inc.*, 1995 U.S. Dist. LEXIS 4312, *49 (N.D. Ala. 1995) (emphasis added); *see also National Ass'n for Mental Health, Inc. v. California*, 717 F.2d 1451, 1455 (D.C. Cir. 1983) (affirming district court's order refusing to certify a defendant class where the named representatives would not "fairly and adequately protect the interests of the class" and where the district court did "not have *in personam* jurisdiction over the class members.").

complexes consist of the "Tested Properties," the "Untested Properties" and the "Unidentified Untested Properties" described above. *Id.* at ¶¶ 3, 6.

Plaintiffs allegedly "became aware that a large number of new multifamily housing complexes designed and constructed by the A.G. Spanos Defendants did not include the required elements of accessible and adaptable design." *Id.* at ¶ 40. Thus, Plaintiffs "visited a number of the A.G. Spanos Defendants' properties and discovered FHA violations in the design and construction of those properties. *Id.*

With respect to the 34 Tested Properties, Plaintiffs allege that since 1991 the Spanos Defendants have "engaged in a continuous pattern and practice of discrimination against people with disabilities" by "designing and/or constructing" apartment complexes that "deny people with disabilities full access to, and use of, these facilities as required under the FHA." *Id.* at ¶ 4. Plaintiffs claim to have "identified at least one FHA violation and, in most cases, multiple violations, at each of the Tested Properties." *Id.* at ¶ 45. Based on the alleged frequency and similarity of these violations, Plaintiffs allege "a pervasive pattern and practice of designing and constructing apartment communities in violation of the FHA accessibility design requirements." *Id.* at ¶ 45.

With respect to the Untested Properties, Plaintiffs allege that they "have reason to believe" that 47 additional apartment complexes that the Spanos Defendants designed and/or constructed after March 1991 also violate the FHA's accessibility requirements. *Id.* at ¶ 6.

No completion date is alleged for the Unidentified Untested Properties.

**2. No alleged violations of the FHA by the Owner Class Defendants**

Significantly, Plaintiffs do not allege that Highpointe or any other Owner Class Defendant has violated the FHA or any other law. Plaintiffs also do not seek damages against Highpointe or any other Owner Class Defendant. *See, e.g.*, *id.* at pp. 39-41. Plaintiffs do not allege that Highpointe or any other Owner Class Defendant caused any injury to Plaintiffs. *See, generally*, *id.* Rather, Plaintiffs' sole cause of action is brought against the Spanos Defendants for alleged violations of the FHA. *Id.* at ¶¶ 79-85.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

However, without purporting to state a cause of action against Highpointe or any other Owner Class Defendant, Plaintiffs seek a court order against Highpointe and the other Owner Class Defendants requiring Highpointe and the other Owner Class Defendants to acquiesce to an injunction:

> Enjoining the Owner [Class] Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against A.G. Spanos Defendants.

*Id.* at p. 40:16-21.

**3. Alleged "Injury" to Plaintiffs**

Plaintiffs allegedly suffered harm because they diverted resources to "test" the Tested Properties. *Id.* at ¶ 41. No Plaintiff alleges it "tested" apartments or suffered harm (by diversion of resources or otherwise) regarding the Untested Properties. *See, generally, id.* No plaintiff alleges it suffered harm (by diversion of resources or otherwise) regarding the Unidentified Untested Properties. *See, generally, id.*

Verbatim, the FAC includes the following alleged injuries sustained by Plaintiffs and caused by the Spanos Defendants:

> 72. As a result of the A. G. Spanos Defendants' actions described above, Plaintiffs have been directly and substantially injured in that they have been **frustrated in their missions** to eradicate discrimination in housing, and in carrying out the programs and services they provide, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to individuals and families looking for housing or affected by discriminatory housing practices and eliminating discriminatory housing practices.
>
> 73. As outlined above, each Plaintiff has invested considerable time and effort in educating its respective communities[3] about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and

[3] Plaintiffs allege that they are located in Washington D.C., California, Georgia and Florida. In referring to their "respective communities," Plaintiffs cannot be referring to citizens of Kansas, where Highpointe Village is located.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

> construction of covered multifamily dwellings. Each time the A.G. Spanos Defendants designed and constructed covered dwellings that did not comply with the FHA in one of Plaintiffs' service areas, the A.G. Spanos Defendants **frustrated the mission** of that Plaintiff, inasmuch as it served to discourage people with disabilities from living at that dwelling,[4] and encouraged other entities involved in the design and construction of covered units to disregard their own responsibilities under the FHA.[5]
>
> 74. The A.G. Spanos Defendants' continuing discriminatory practices have **forced Plaintiffs to divert significant and scarce resources** to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices, and such practices have **frustrated Plaintiffs' other efforts** against discrimination, causing each to suffer concrete and demonstrable injuries.
>
> 75. Each Plaintiff conducted site visits, investigations, surveys and/or tests at the Tested Properties, resulting in **the diversion of its resources in terms of staff time and salaries and travel and incidental expenses that it would not have had to expend** were it not for the A.G. Spanos Defendants' violations. FHOM, FHNV, MFHS and FHC each diverted staff time and resources to meet with NFHA staff, receive detailed training concerning the accessibility requirements of the FHA and provide logistical support for NFHA staff. In addition to such support:
>
> a. Plaintiff FHOM conducted site visits and investigations at Mountain Shadows and Windsor at Redwood Creek, two properties within its service area.
>
> b. Plaintiff FHNV conducted a site visit and investigation at Hawthorn Village, a property within its service area.
>
> c. Plaintiff MFHS conducted a site visit and investigation at Battery at Chamblee, a property within its service area.
>
> d. Plaintiff FHC conducted tests at Delano and Arlington at Northwood, two properties within its service area.

*Id.* at ¶¶ 72-75 (emphasis added).

**4. Relief Sought by Plaintiffs**

In their prayer for relief, Plaintiffs request the following against the Spanos Defendants: a declaration that the Spanos Defendants' practices and actions violate the FHA; injunctive relief; compensatory damages; punitive damages; costs; and attorney's fees. *Id.* at pp. 39-41. The

[4] The FAC fails to identify any disabled person who was so discouraged.

[5] The FAC fails to identify any "entity" that was so "encouraged."

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

injunctive relief sought against the Spanos Defendants includes, *inter alia*, a court order requiring the Spanos Defendants to: (1) "Survey all of their apartment complexes designed and constructed since March 13, 1991 to assess their compliance with the FHA"; (2) "Report to the Court regarding the extent of non-compliance"; and (3) "Bring apartment complexes into compliance with the FHA." *Id.* at p. 39.

The only relief Plaintiffs seek against Highpointe and the other Owner Class Defendants is to acquiesce in an injunction:

> Enjoining the Owner [Class] Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the A.G. Spanos Defendants.

*Id.* at p. 40.

## III. LEGAL ARGUMENT

### A. Legal Standards Governing Motions To Dismiss Under Rule 12(b)(6)

When a plaintiff fails to state a claim upon which relief may be granted, the Court has the power to dismiss the claim under Federal Rule of Civil Procedure 12(b)(6). A plaintiff has failed to state a claim when either (1) there is no cognizable legal theory upon which relief may be granted, or (2) there is an absence of sufficient facts alleged to support a cognizable legal theory. *See, e.g., Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In ruling on a motion to dismiss, the Court "[does] not 'have to accept every allegation in the complaint as true in considering its sufficiency.'" *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). Rather, the court should "examine whether conclusory allegations follow from the description of the facts as alleged by the plaintiff." *Id*. "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994). A plaintiff cannot rely on conclusory allegations of law and unwarranted inferences of fact to defeat a motion to dismiss. *See, e.g., In re Stac Elecs. Sec. Lit.*, 89 F.3d 1399, 1403 (9th Cir. 1996).

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

In the FAC, Plaintiffs have failed to allege facts sufficient to support any claim for relief plead against Highpointe. Because these pleading defects are not capable of being cured by amendment, the FAC should be dismissed with prejudice as to Highpointe.

**B. The FAC Fails To State A Claim Against Highpointe Because The Action Is Time-Barred**

**1. The two-year statute of limitations for alleged FHA violations bars Plaintiffs' claim against Highpointe as a matter of law**

On the most fundamental level, the FAC fails to state a claim against Highpointe because the action is barred by the two-year statute of limitations for private civil actions under the FHA.

A motion to dismiss for failure to state a claim may be based on the running of the statute of limitations. *See, e.g., Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). The statute of limitations for a private civil action brought under the FHA is "no later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A) (emphasis added). When the alleged discriminatory housing practice is the "failure to design and construct" a multifamily dwelling according to FHA standards, as is alleged here, the statute of limitations begins to run at the conclusion of the design-and-construction phase. *Garcia v. Brockway*, 503 F.3d 1092, 1096 (9th Cir. 2007).

The Ninth Circuit recently confirmed that the FHA's two-year statute of limitations means exactly what its plain language states:

> [A]n aggrieved person must bring a private civil action under the FHA for a failure to properly design and construct within two years of the completion of the construction phase, which concludes on the date that the last certificate of occupancy is issued.

*Garcia*, 503 F.3d at 1101 (emphasis added) (dismissing claims that multifamily dwellings were not designed and constructed in accordance with FHA standards because the lawsuit was not brought within two years of the completion of the construction phase).[6]

[6] *See also United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1144 (D. Idaho 2003) (the alleged violation of the FHA occurred on "the date the design of construction was completed"); *Thompson v. Mountain Peak Assocs. LLC*, 2006 U.S. Dist. LEXIS 36981, at *7 (D. Nev. June 5, 2006) ("the last act of discrimination occurs upon the completion of the design and construction of the noncompliant structure or complex"); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp.2d 492, 503 (E.D. Va. 2002).

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

Here, Plaintiffs' request for injunctive relief against Highpointe is predicated on the alleged discriminatory practice of failing to design and construct Highpointe's apartment complex according to FHA standards. *See, e.g.*, FAC at ¶¶ 8, 40, 44, 46-48, 62 (RJN, Exh. A). Plaintiffs expressly allege in the FAC that construction of Highpointe's apartment complex was "<u>completed in 2003</u>." *Id.* at ¶ 62 (p. 27:2) (emphasis added). Thus, by Plaintiffs' own admission, any claim under the FHA with respect to Highpointe's property accrued no later than 2003 when the construction phase was completed. *See id.* Indeed, the City of Overland Park issued Highpointe's final certificate of occupancy on December 8, 2003. *See* Certificate of Occupancy (RJN, Exh. B); *see also*, *Garcia*, 503 F.3d at 1096 ("The statute of limitations is thus triggered at the conclusion of design-and-construction phase, which occurs on the date the last certificate of occupancy is issued."). Thus, any action alleging a violation of the FHA with respect to Highpointe falls outside the statute of limitations period unless it was brought prior to 2005.

Plaintiffs waited, however, until June 20, 2007—three and a half years after the completion of construction—to file the instant action. *See* RJN at ¶ 3. Plaintiffs then waited almost another four months, until October 12, 2007 to name Highpointe as a defendant in the action. *See id.* at ¶ 1. Accordingly, Plaintiffs' action—at least as to Highpointe—is barred by the two-year statute of limitations and should be dismissed. *See, Garcia*, 503 F.3d at 1101; *Jablon*, 614 F.2d at 682.

**2. The continuing violation doctrine does not apply to Plaintiffs' time-barred action against Highpointe**

What is more, Plaintiffs cannot escape the inevitable result of dismissal by arguing that their action is somehow saved by the continuing violation doctrine. Plaintiffs allege in the FAC that the violations of the FHA are "continuing" and "ongoing" in a transparent attempt to extend the limitations period to cover their lawsuit. FAC at ¶ 50 (RJN, Exh. A). These allegations, however, are to no avail.

The continuing violation doctrine may be applied only where a plaintiff "challenges not just one incident of conduct violative of the [Fair Housing] Act, but an unlawful practice that continues into the limitations period." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

(1982). The doctrine, which is narrowly applied, is appropriate only for "a series of related and continuing discriminatory acts" at least one of which occurred within the limitations period,[7] and is limited to situations "where the type of violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Moseke* v. *Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 504 (D.C. VA 2002); *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 18 (D.D.C. 2000).

The doctrine is not relevant here, however, where the alleged FHA claims would have been actionable immediately upon completion. Design and construction, as a violation, is a discrete act with a clear ending point—the date on which construction or design is completed.[8] *See, e.g.*, *Garcia*, 503 F.3d at 1098 ("Here, the practice is 'a failure to design and construct,' which is not an indefinitely continuing practice, but a <u>discrete instance</u> of discrimination that terminates at the conclusion of the design-and-construction phase.") (emphasis added). The alleged existing inaccessible features are, at best, continuing effects of the initial discriminatory act of design and construction. *See id.* at 1098 ("Although the ill effects of a failure to properly design and construct may continue to be felt decades after construction is complete, failing to design and construct is a <u>single instance</u> of unlawful conduct.") (emphasis added). If the rule were otherwise, "the FHA's statute of limitations would provide little finality for developers, who would be required to repurchase and modify (or destroy) buildings containing inaccessible features in order to avoid design-and-construction liability for every aggrieved person who solicits tenancy from subsequent owners and manager." *Garcia*, 503 F.3d at 1098.

Hence, the continuing violation doctrine has been rejected where an effect is continuing but the defendant's act is not. *See, e.g.*, *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166

---

[7] A second type of continuing violation is a systemic violation, which refers to an "ongoing discriminatory policy or system." *Moseke*, 202 F. Supp.2 at 504. However, the doctrine is irrelevant to this case because "inaccessible features do not constitute a [discriminatory] policy." *Id.*

[8] If this were to the contrary, then Congress's clear mandate that the accessibility requirements apply only to multifamily dwellings designed and constructed after a certain date, 42 U.S.C. § 3504(f)(3)(C), would have no meaning. The statute of limitations would be eviscerated.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

(4th Cir. 1991) ("[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation"); *see Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)(in a complaint alleging discriminatory allocation of sound barriers along the highway, the continuing lack of such barriers constituted a "continuing ill effect" and was not the result of continuing unlawful acts). For example, in *Moseke*, the court held that "a FHA non-compliant building which contains inaccessible features to disabled persons is more akin to a continuing effect rather than a continuing violation under the FHA." *Moseke*, 202 F.Supp.2d at 507; *Thompson*, U.S. Dist. LEXIS 36981, at *8 ("the noncompliant buildings at issue in this case constitute continuing effects of past discriminatory acts, not continuing violations of the FHA").

The injunctive relief sought against Highpointe is premised on the discrete act of alleged design and construction violations of FHA standards with regard to its apartment complex in Kansas. Although the ill effects of any alleged failure to properly design and construct the complex may continue to be felt, failing to design and construct is a single instance (if any) of unlawful conduct. *See, e.g.*, *Garcia*, 503 F.3d at 1098. As a result, the statute of limitations began to run at Highpointe Village when the design and construction was completed in 2003, and lapsed two years thereafter in 2005—almost two years before Plaintiffs named Highpointe as a defendant in this action. *See* FAC at ¶ 62 (p. 27:2) (RJN, Exh. A); Certificate of Occupancy (RJN, Exh. B). This action as to Highpointe is therefore time-barred and should be dismissed.

**C. Plaintiffs Fail To Allege Facts Sufficient To State A Cause Of Action Under The FHA**

In addition to this action against Highpointe being barred by the two-year statute of limitations, Plaintiffs fail to state a claim upon which relief can be granted under the FHA. Although Plaintiffs do not allege that Highpointe violated the FHA, their prayer for injunctive relief against Highpointe is predicated on the Spanos Defendants' alleged failure to have designed and constructed Highpointe's apartment complex in compliance with FHA specifications. FAC at p. 40, ¶ D; *see also id.* at ¶¶ 79-85. Consequently, to the extent that Plaintiffs fail to state a claim under the FHA against the Spanos Defendants, their request for injunctive relief against Highpointe similarly fails. No such claim has been stated under the FHA, as demonstrated below.

### 1. Plaintiffs fail to state a cause of action because they do not claim to be members of or sue on behalf of the protected class

To state a claim for relief on their own behalf or on behalf of others under the FHA, Plaintiffs must plead (1) that they belong to or sue on behalf of a "class of persons" protected by the FHA and (2) that a person who is a member of the protected class would have rented defendants' housing but for defendants' discriminatory housing practices. *See, e.g., United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997); *Sanghvi v. City of Claremont*, 328 F.3d 532, 536 (9th Cir. 2003). The class protected under the FHA consists of persons denied a rental because they are disabled or because they associated with disabled persons. *Oak Ridge Care Center, Inc. v. Racine County*, 896 F. Supp. 867, 873-874 (C.D. Wis. 1995); *San Pedro Hotel, Inc. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998).[9]

Plaintiffs do not allege that they were denied a rental because they are disabled (a member of the protected class). Plaintiffs do not claim that they were denied a rental because they associate with handicapped persons (also members of the protected class). Moreover, Plaintiffs do not sue on behalf of third party disabled persons. Plaintiffs do not allege that any person having rights under the FHA has actually been denied a rental by the Spanos Defendants' alleged conduct.

In short, Plaintiffs fail to state a claim for relief under the FHA on behalf of themselves or third parties who are members of the protected class.

---

[9] *See also, Barlow v. Evans*, 993 F. Supp. 1390, 1392 (D. Utah 1997)("In order to establish a prima facia case, [plaintiff] must first establish that they are members of a class of persons intended to be protected under the FHA.") A person is a member of a protected class for the purposes of the Act, when "they are the direct object of the statutory protection." *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503 (10th Cir. 1995). "[A] violation of the Fair Housing Act … requires more than the mere design and construction of a noncompliant housing unit." *Garcia*, 503 F.3d at 1105 (Fisher dissenting). "[An] improperly designed building … [is] much like a potentially dangerous ditch into which no one has yet fallen - - capable of inflicting harm and violating the law, but not yet actually doing either." *Id.* It is only when disabled persons come "into contact with the defective buildings…that [they become] victims of discriminatory housing practices …" *Id.* (Fisher dissenting). A disabled plaintiff who has suffered no harm has no "cause of action." *Id.* (Fisher, dissenting).

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

**2. Plaintiffs fail to state a cause of action because they are not "aggrieved persons"**

In an attempt to nevertheless state a claim under the FHA as non-protected class members, Plaintiffs allege in conclusory fashion that they are "aggrieved persons" under the statute because they "have been injured by a discriminatory housing practice." FAC at ¶ 85 (RJN, Exh. A). This allegation fails to state a claim as a matter of law.

The statutory language is clear that an "aggrieved person" may state a claim under the FHA:

> An **aggrieved person** may commence a civil action … not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice … to obtain appropriate relief with respect to such discriminatory housing practice ….

42 U.S.C. § 3613(a)(1)(A) (emphasis added).

An "aggrieved person" includes "any person who claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i)(l). In the context of the present case, a "discriminatory housing practice" is defined as "an act that is unlawful" under 42 U.S.C. § 3604. 42 U.S.C. § 3602(f). Section 3604 states:

> [I]t shall be unlawful …
>
> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of--
>
> (A) that buyer or renter,
>
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
> (C) any person associated with that buyer or renter.
>
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

(C) any person associated with that person.

42 U.S.C. § 3604(f)(1)-(2).[10]

As one court explained the meaning of an "aggrieved person":

> The Supreme Court jurisprudence applying the "aggrieved persons" provision of the FHA makes clear than an "aggrieved person" is not just any non-class member who protests what he perceives to be a discriminatory housing policy. Rather, an "aggrieved person" is a non-class member who (1) suffers actual injury as an ancillary effect of present or imminent discrimination against a protected class member and (2) challenges the discriminatory policy on behalf of that class member.

*Wasserman v. Three Season Assoc. No. 1, Inc.*, 998 F. Supp. 1445, 1446-48 (S.D. Fla. 1998) (emphasis added).

Here, the FAC alleges that Plaintiffs are "aggrieved persons" as follows:

> As a result of the A.G. Spanos Defendants' wrongful conduct, NFHA and the other Plaintiffs each have been injured by a discriminatory housing practice and are, therefore, "aggrieved

---

[10] Section 3604(f)(3) of Title 42 of the United States Code defines "discrimination" as follows:

> (f)(3) For purposes of this subsection, discrimination includes--
>
> (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted[;]
>
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or
>
> (C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after the date of enactment of the Fair Housing Amendments Act of 1988 [enacted Sept. 13, 1988], a failure to design and construct those dwellings in such a manner that--
>
> (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
>
> (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
>
> (iii) all premises within such dwellings contain the following features of adaptive design:
>
> (I) an accessible route into and through the dwelling;
>
> (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
>
> (III) reinforcements in bathroom walls to allow later installation of grab bars; and
>
> (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

persons" as defined by the FHA, 42 U.S.C. § 3602(i)(l)

FAC at ¶ 85 (RJN, Exh. A).

Plaintiffs have not alleged that they are "aggrieved persons" because there is no allegation of any "unlawful act" under Section 3604. For instance, Plaintiffs do not allege to have been injured by the Spanos Defendants' making a dwelling unit at Highpointe Village unavailable to a particular renter (or his associate) because of a handicap of a particular person. *See* 42 U.S.C. 3604(f)(1). Nor do Plaintiffs allege that they have been injured by discrimination in the terms, conditions or privileges in any rental unit at Highpointe Village. *See id.* § 3604(f)(2). Plaintiffs have not alleged an unlawful act, nor have they alleged that they have been "injured by an act that is unlawful" under Section 3604. Because Plaintiffs have not alleged that they have been injured by an act that is unlawful under Section 3604, Plaintiffs cannot claim to have been injured by a discriminatory housing practice. Therefore, Plaintiffs are not "aggrieved persons" and they do not state a claim for relief under Section 3613 of the FHA.

**D. <u>The Complaint Fails To Allege Facts Sufficient To Establish Standing To Sue Under The FHA.</u>**

The facts that this action is time-barred and the Plaintiffs have failed to state a claim against Highpointe are not the only flaws of this lawsuit—Plaintiffs also lack standing under the FHA.

"To survive a Rule 12(b)(6) motion to dismiss, [Plaintiffs] must allege facts in [their] Amended Complaint that, if proven, would confer standing upon [them]." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006). Standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It is a jurisdictional requirement, and a party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).[11] Each element of standing is "an

[11] Every plaintiff asserting a claim for relief must meet the constitutional requirements of standing by showing that it is "entitled to have the court decide the merits of the dispute or of particular issues," and that there exists "a 'case or controversy' between [the plaintiff] and the defendant within the meaning of Article III." *Warth*, 422 U.S. at 498; *accord*, *Havens Realty Corp.*, 455 U.S. at 372.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

indispensable part of the plaintiff's case." *Id.* Federal courts are diligent in observing standing requirements. *B. C. v. Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (holding that federal courts are required to examine jurisdictional issues, such as standing, even *sua sponte* if necessary).

Under the FHA, a plaintiff may establish standing only if he can "show [] that the [defendant] interfered with the housing rights of [a protected person] … and that, as a result, the [plaintiff] suffered an actual injury." *San Pedro Hotel*, 159 F. 3d at 475 (emphasis added).

Here, Plaintiffs do not claim to be disabled renters, nor do they sue on behalf of disabled renters who claim to have been denied a rental at Highpointe Village or any of the other properties sued upon. Therefore, Plaintiffs lack standing to bring this action.

The "full limits of Art. III" may, in certain circumstances not present here, allow an organization that has been "genuinely injured by conduct that violates someone's [statutory] rights," to sue on behalf of and "prove that the rights of another were infringed" resulting in harm to that other person. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103, n. 9 (1979). To have a "case or controversy," however, someone who holds substantive rights under the statute in question must have suffered a harm caused by the defendant's violation of the statute. Then, an organization that has been genuinely injured by conduct that harms that third person may sue to redress that harm. *Id.*

But Plaintiffs do not claim to sue on behalf of a person or entity (the class of persons) that holds "substantive rights" under the FHA. Rather, Plaintiffs sue solely in their own right. Therefore, since Plaintiffs do not allege that they belong to the class of persons protected under the FHA, and do not sue on behalf of these persons, Plaintiffs do not have standing to sue as further demonstrated below.

**1. Plaintiffs do not allege facts sufficient to establish the "irreducible constitutional minimum" for standing regarding Highpointe Village**

To satisfy the Article III "irreducible constitutional minimum" of standing, Plaintiffs must meet a three-pronged test:

> First [they must have] suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (citations and internal quotation marks omitted) (emphasis added); *Friends of the Earth*, 528 U.S. at 180-181.

These elements must be established "separately for each form of relief sought" and for each claim brought by the party invoking federal jurisdiction. *Laidlaw*, 528 U.S. at 185; *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996) ("[S]tanding is not dispensed in gross."); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). Accordingly, Plaintiffs in this case must allege a concrete and particularized injury causally connected to any alleged nonconformance at Highpointe Village.

Plaintiffs have not alleged that they "suffered **an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical**" which was **caused** by the Spanos Defendants' alleged conduct. *Lujan*, 504 U.S. at 560-61 (emphasis added). Instead, Plaintiffs' "injury" is alleged to be a "frustration" of their "mission" and a diversion of their resources away from their alleged usual activities to investigation of the Subject Properties and litigation against the Defendants. FAC at ¶¶ 68-74 (RJN, Exh. A).

Diversion of resources and "frustration" of "mission" cannot support standing unless they were **caused** by Defendants' alleged conduct. *See, e.g.*, *Independent Housing Services of San Francisco v. Fillmore Center Associates*, 840 F.Supp. 1328, 1336 (N.D. Cal. 1993); *accord*, *Fair Housing of Marin v. Jack Combs*, 285 F.3d 899, 904-905 (9th Cir. 2002), cert. denied, 573 U.S. 1018, 123 S. Ct. 536 (2002). The plaintiff in *Independent Housing Services of San Francisco* alleged that it had spent money referring, counseling, and placing disabled people who had encountered accessibility barriers at the Fillmore Center. 840 F.Supp. at 1336. Similarly, in *Fair*

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

*Housing of Marin*, the plaintiff alleged that it had spent money in responding to citizen complaints against the defendant, over and above litigation expenses. 285 F.3d at 905. Both stated a sufficient causal relationship between the alleged injury and defendant's alleged conduct.[12]

Moreover, any claim of diversion of resources for referring, consulting, and placing disabled persons necessarily requires allegations that plaintiffs counseled specific disabled persons who wished to live at each apartment complex sued upon. *See Gladstone*, 441 U.S. 91, 112-115; *see also TOPIC v. Circle Realty*, 532 F.2d 1273, 1275 (9th Cir. 1976), cert denied, 429 U.S. 859 [purported plaintiffs were spread out over such a wide metropolitan area that role played by racial steering was so attenuated as to negate existence of any injury in fact].

In contrast, Plaintiffs allege only that they "became aware" that apartment complexes designed and constructed" by the Spanos Defendants did not comply with FHA accessibility standards. Significantly absent from the FAC before the Court is any allegation that Plaintiffs received any complaints from members of a protected class about Highpointe Village or any of the other subject properties. Plaintiffs also did not allege that they provided assistance to a member of a protected class, such as counseling, referring or placing anyone who had encountered accessibility problems at Highpointe Village or any of the other subject properties. Plaintiffs have also not alleged that any of the purported "testers" of Highpointe Village or the other subject properties were members of a protected class.

Plaintiffs allege only a **self-inflicted** diversion of resources, not in response to any complaint about Highpointe Village or any of the other properties. *See* FAC at ¶¶ 68-74 (RJN,

---

[12] The Ninth Circuit's decision in *Smith v. Pacific Properties and Development Corp.*, 358 F3d. 1097 (9th Cir. 2004) is not inconsistent. The plaintiffs in that case were a disabled "tester" and the "Disabled Rights Action Committee" ("DRAC"). After dismissing the complaint for lack of standing, without leave to amend, the district court in Nevada denied DRAC's motion for reconsideration. The court did not explain its order, nor did it offer a reason for not granting leave to amend. Under these circumstances, the Ninth Circuit reversed, holding that the trial court had abused its discretion in refusing to grant leave to amend, and that the plaintiff should have been allowed an opportunity to amend. *See id.* at 1105-1106. This was consistent with the Supreme Court's ruling in *Havens, supra*, in which the plaintiffs should have been allowed to amend their complaint. 455 U.S. at 377-378. In *Smith*, DRAC had "indicated that it would be capable of amending its complaint upon remand to clearly come within the *Fair Housing* [*of Marin*] requirement on the merits of the standing inquiry." 358 F.3d at 1106, n. 10.

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

Exh. A). "To the extent that an injury is self-inflicted, . . . the causal chain is broken." Moore's Federal Practice 3D, §101.41[4]. Nor can litigation expense satisfy the standing requirement:

> Litigation costs, even those that may be concrete and particularized, do not suffice to establish standing. An organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries that are not fairly traceable to the defendant's conduct. Thus, allegations of injury in fact based on the expenditure of resources incurred in enforcement litigation fail to establish standing. Expanding the definition of Article III injury to include an organization's litigation-related expenses would imply that any sincere plaintiff could bootstrap standing simply by expending its resources in response to the actions of another.

Moore's Federal Practice 3D, §101.41[4]; *see Fair Housing Council v. Montgomery Newspapers*, 141 F.3d 71, 80 (3d Cir. 1989); *see also, Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994); *see also Walker v. City of Lakewood* 272 F.3d, 1114, 1124, n3 (9th Cir. 2001) ("[A] plaintiff cannot establish standing simply by filing its own lawsuit . . . [and] the time and money . . . expended in prosecuting the suit . . . will not [be] consider[ed].").

In the absence of any allegation that Plaintiffs were forced to divert resources because of Defendants' harm to disabled persons, Plaintiffs have not "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," which was caused by Defendants' alleged conduct

**2. Plaintiffs have failed to allege facts sufficient to show standing to seek injunctive relief under the FHA**

Plaintiffs seek injunctive relief against Highpointe based on the Spanos Defendants' alleged violations of the design and construct provisions of the FHA. However, standing is not dispensed "in gross." Rather, a plaintiff must demonstrate standing separately for each form of relief sought, including an injunction. *Friends of the Earth, Inc. v. Laidlaw Envtl. Services*, 528 U.S. 167, 184 (2000).

Before a court will order a business, such as Highpointe Village, to undergo the expense of rebuilding or retrofitting facilities to comply with the FHA, courts first require that the plaintiff show that he has standing to seek injunctive relief:

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

> In order to establish an injury in fact sufficient to confer standing to pursue injunctive relief, the Plaintiff must demonstrate a "real or immediate threat that the plaintiff will be wronged again - - a likelihood of substantial and immediate irreparable injury." [Citation omitted.] In evaluating whether an ADA plaintiff has established a likelihood of future injury, courts have looked to such factors as: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant.

*Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042, 1045 (C.D. 2005). The test applicable to have standing to seek injunctive or declaratory relief under the ADA is the same as under the FHA. *See, Oak Ridge Care Center*, 896 F. Supp. at 872 (suits under the ADA and FHA subject to same associational standing requirements).

"Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Duran v. 7-Eleven, Inc.*, U.S. App. LEXIS 26143 at *9 (9th Cir. 2007). In addition, plaintiffs have standing to seek injunctive relief only for those violations related to plaintiffs "specific disability." *Id.* at *27-*28.

Regarding "proximity," the district court in *Molski* determined that the ADA plaintiff's residence was over 100 miles from the defendant Mandarin Touch Restaurant in Solvang, California, a fact which weighed heavily against standing to sue for injunctive relief. *Molski*, 385 F.Supp. at 1045. In the instant case, Plaintiffs do not even pretend to have met the "proximity" test: they allege that they are located in California, Florida, Georgia, and Washington D.C. and that Highpointe, L.P.'s property is located in Kansas. Plaintiffs obviously fail the "proximity" test.[13] For the same reason, Plaintiffs do not allege, and cannot show "frequency of travel" near the Subject Properties or likelihood that they will return to the Subject Properties.

---

[13] *See also*, *Gladstone*, 441 U.S. at 112, n.25 (refusing to grant standing to individual plaintiffs that did not live in the community in which the alleged discrimination occurred); *Conservation Law Found. of New England v. Reilly*, 950 F.2d 38, 43 (1st Cir. 1991) (Denying standing to plaintiff entity seeking nationwide injunctive relief under CERCLA at approximately 1200 facilities, the court stated: "The absence of plaintiffs from the majority of regions of the country in this case demonstrates the lack of 'concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)).

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111-3719
Telephone: (415) 788-0900 · Facsimile: (415) 788-2019

And there is an even more basic reason why these Plaintiffs cannot establish standing to sue for injunctive relief. Because Plaintiffs are not themselves disabled and because Plaintiffs do not sue on behalf of disabled persons, Plaintiffs can never show a "likelihood of substantial and immediate irreparable injury" to themselves. No Plaintiff (and no identified disabled person) resides near Highpointe Village. No Plaintiff (and no identified disabled person) ever attempted to rent an apartment at Highpointe Village. No Plaintiff (and no identified disabled person) plans to rent at Highpointe Village.

In short, Plaintiffs fail to allege any facts that demonstrate that they (or any identified disabled person) will likely suffer "substantial and immediate irreparable injury."

## IV. CONCLUSION

For the foregoing reasons, Highpointe Village, L.P. respectfully requests that the First Amended Complaint be dismissed with prejudice for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

Dated: December 21, 2007

STEEFEL, LEVITT & WEISS
A Professional Corporation

By: /s/
Shirley E Jackson
Attorneys for Defendant HIGHPOINTE VILLAGE , L.P.