Michael Allen
Stephen M. Dane
John P. Relman
Thomas J. Keary
Pending admission *pro hac vice*
D. Scott Chang, #146403
Relman & Dane, PLLC
1225 19th Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Fax: (202) 728-0848
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Fair Housing Alliance, Inc.,  et al., ) | Case No. C07-3255 - SBA |
| Plaintiffs, ) | |
| ) | **MEMORANDUM OF POINTS AND** |
| v. ) | **AUTHORITIES IN SUPPORT OF** |
| ) | **PLAINTIFFS' CONSOLIDATED** |
| A.G. Spanos Construction, Inc.; et al., ) | **OPPOSITION TO THE SPANOS** |
| ) | **DEFENDANTS' MOTIONS (1) TO** |
| Defendants. ) | **DISMISS PLAINTIFFS' FIRST** |

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFFS' CONSOLIDATED
OPPOSITION TO THE SPANOS
DEFENDANTS' MOTIONS (1) TO
DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT, (2) FOR
MORE DEFINITE STATEMENT RE
FIRST AMENDED COMPLAINT, (3)
TO DISMISS FOR FAILURE TO JOIN
REQUIRED AND INDISPENSABLE
PARTIES, AND (4) TO STRIKE
VARIOUS CLAIMS FOR RELIEF
SOUGHT IN PLANTIFFS' FIRST
AMENDED COMPLAINT**

[Fed. R. Civ. P. 12(b)(6)]
Hearing Date: March 11, 2008
Time:            1:00 p.m.
Dept:            Courtroom 3

Complaint Filed:  June 20, 2007

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................... . v

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.....................................1

II.     FACTUAL BACKGROUND.................................................................7

III.    LEGAL STANDARD........................................................................8

IV.     ANALYSIS..................................................................................9

        A.    PLAINTIFFS' CLAIMS ARE TIMELY UNDER *HAVENS REALTY CORP. V.*
              *COLEMAN* BECAUSE THE A.G. SPANOS DEFENDANTS HAVE ENGAGED
              IN AN UNLAWFUL PATTERN AND PRACTICE CONTINUING INTO THE
              LIMITATIONS PERIOD.............................................................11

              1.    Defendants' Design and Construction Of All 82 Or More Apartment
                    Complexes Constitutes A Continuing Violation Under *Havens*.....................11

              2.    Defendants' Reliance on *Nat'l R.R. Passenger Corp. v. Morgan* Is Misplaced...14

              3.    There Is No Reason To Address Defendants' Remaining Arguments Which,
                    In Any Event, Are Based On A Case That The Ninth Circuit Is Rehearing *En*
                    *Banc*............................................................................15

        B.    PLAINTIFFS' ALLEGATIONS MEET THE SUPREME COURT'S
              REQUIREMENTS FOR ESTABLISHING ORGANIZATIONAL STANDING
              UNDER THE FAIR HOUSING ACT................................................16

              1.    Plaintiffs' Allegations Related to Standing.........................................19

                    a.    Plaintiffs' General Standing Allegations.....................................19

              2.    Specific Allegations Related to the Frustration of Each Plaintiff's Mission.......20

              3.    Specific Allegations Related to Plaintiffs' Diversion of Resources.................22

              4.    Defendants' Responses to Plaintiffs' Standing Allegations Are Misplaced and
                    Unpersuasive.................................................................24

                    a.    Plaintiffs' Allegations Clearly Establish That Defendants Caused
                          Plaintiffs' Injury.......................................................24

ii

        b.     Organizational Standing Under the Fair Housing Act Does Not Turn on How the Organization Became Aware of Defendants' Discrimination..................................................................25

        c.     An Organization Plaintiff Need Not Be A Person Within A Protected Class or Sue on Behalf of a Person Within A Protected Class to Have Standing Under the Fair Housing Act........................................26

        d.     The Proximity of Plaintiffs' Offices to Defendants' Inaccessible Buildings Is Not Relevant to Any Standing Injury...........................28

    5.     Defendants' "Aggrieved Person" Arguments Are Subject to the Same Analysis as Their Standing Arguments.................................................30

C.     PLAINTIFFS HAVE SOUGHT TO JOIN ALL PARTIES NECESSARY TO FULL AND FAIR ADJUDICATION OF THIS CASE................................................31

    1.     A Defendant Class Action Comprised of the Current Owners and the Class Representatives Selected by Plaintiffs Is a Permissible Means of Joining the Owners.....................................................................32

    2.     Renters and Lenders Are Not Necessary Parties Under Rule 19(a).  Nor Does Section 3613(d) of the FHA Make It Infeasible to Obtain Retrofit Relief In Their Absence Under Rule 19(b)...............................................35

D.     DEFENDANTS' MOTION TO STRIKE IS NEITHER AN AUTHORIZED NOR A PROPER WAY TO PROCURE DISMISSAL OF PART OF THE FIRST AMENDED COMPLAINT..............................................................41

    1.     The Fair Housing Act Permits Plaintiffs to Recover Damages for Defendants' Violations of the Act's Design and Construction Accessibility Requirements....43

    2.     The Fair Housing Act Permits Plaintiffs to Recover Punitive Damages for Defendants' Violations of the Act's Design and Construction Accessibility Requirements..............................................................44

    3.     The Complaint Adequately Pleads a Claim for Injunctive Relief...................45

1    E.    DEFENDANTS' MISCELLANEOUS GROUNDS IN SUPPORT OF THEIR

2         MOTIONS ARE INSUFFICIENT SUPPORT OF THE RELIEF REQUESTED..........47

3 V.    CONCLUSION...................................................................................................48

iv

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Plaintiff's Consolidated Opposition to Spanos Defendants' Motions

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Riga*, 208 F.3d 419 (3d Cir. 2000)................................................................18, 25, 27, 44

*Allen v. Wright*, 468 U.S. 737 (1984) ..........................................................................................19

*Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d. 456 (D. Md. 2000)............................37, 46

*Baltimore Neighborhoods, Inc. v. Rommell Builders, Inc.*, 40 F. Supp. 2d 700 (D.Md. 1999) ............33, 37, 40, 46

*Barnes v. Callaghan & Company*, 559 F.2d 1102 (7th Cir. 1977) ......................................................43

*Besinga v. United States*, 923 F.133, 136 (9th Cir. 1991) ...............................................................35

*Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir. 2001) ..........................................................13, 14

*Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 (C.D. Cal. 1996)...........................................4, 42, 44

*Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) ......................................................................25

*Califano v. Yamasaki*, 442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979).....................................33

*City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) ..........................18

*City of Edmonds v. Oxford House*, 514 U.S. 725, 731 (1995) ..........................................................11

*Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003)..............................................................19

*Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).............................5, 42

*Dion, LLC v. Infotek Wireless, Inc.*, 2007 WL 3231738 (N.D. Cal. Oct. 30, 2007).............................8, 42

*Eastern Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203 (E.D.N.Y. 2003)........19

*Equal Rights Center v. Equity Residential*, 483 F. Supp. 2d 482 (D. Md. 2007)............................passim

*Equal Rights Center v. Post Properties, Inc.*, 522 F. Supp.2d 1, (D.D.C. 2007) ......................................41

*Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 Fed. Appx. 469 (6th Cir. 2006) 13, 25, 26, 28

*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002)..................................................passim

*Fountila v. Carter*, 571 F.2d 487 (9th Cir. 1978) ..........................................................................44

*Friends of the Earth v. Laidlaw Envtl. Serv.*, 528 U.S. 167 (2000)..............................................17, 31

*Garcia v. Brockway*, 503 F.3d 1092 (9th Cir. 2007) ..................................................3, 10, 15, 16

*Garcia v. Brockway*, ___ F.3d ___, 2008 WL 90233 (9th Cir. Jan. 7, 2008)......................................3, 10

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91(1979) ..........................................................19, 27

v

*Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417 (11th Cir. 1984) .................................. 18

*Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277 (3d Cir. 1993) ..................... 27

*Hartog v. Jots, Inc.*, 2004 WL 2600280 (N.D.Cal. Nov. 12, 2004) .................................. 9

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .................................. passim

*Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135 (6th Cir. 1985), *cert. denied*, 475

U.S. 1019 (1986) .................................. 18

*H.I.P. v. K. Hovnanian at Mahwah VI, Inc.*, 291 N.J. Super. 144, 676 A.2d 1166 .................................. 40

*Home v. The Cincinnati Enquirer*, 943 F.2d 644 (6th Cir. 1991) .................................. 18

*Inland Mediation Board v. City of Pomona*, 158 F. Supp. 2d 1120 (C.D. Cal. 2001) .................................. 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................. 23

*Memphis Center for Independent Living v. Makowsky Construction Co.*, No. 01-2069 (July 29, 2003 W.D. Tenn.) .................................. 12, 13

*Milliken v. Bradley*, 433 U.S. 267, 279-80, 97 S. Ct. 2749, 53 L.Ed.2d 745 (1977)). *Id.* at 468 .................................. 37, 46

*Mintel Learning Technology v. Beijing Kaidi Education & Technology Development Co., Ltd.*, Slip Copy, 2007

WL 2288329, at *11 (N.D. Cal 2007) .................................. 32

*Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492 (E.D. Va. 2002) .................................. 16, 18, 29

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 n.16 (2002), MD at 11 .................................. 10, 14, 15

*National Association for Mental Health Inc. v. Califano*, 717 F.2d 1451 (D.C. Cir. 1983) .................................. 35

*National Fair Housing Alliance v. Prudential Insurance Co. of America*, 208 F.Supp.2d 46 (D.D.C. 2002)..25, 30

*Parkview Heights Corp. v. City of Black*, 467 F.2d 1208 (8th Cir. 1972) .................................. 18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct 2965 (1985) .................................. 34, 35

*Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993) .................................. 18

*Schneider v. Chertoff*, 450 F.3d 944 (9th Cir. 2006) .................................. 15

*Schneider v. Whatley*, 417 F. Supp. 750 (S.D. N.Y 1976) .................................. 36

*Shermoen v. United States*, 982 F.2d 1312 (9th Cir.1992) .................................. 32

*Silver State Fair Housing Council, Inc. v. ERGS, Inc.*, 362 F. Supp. 2d 1218 (D. Nev. 2005) .................................. 11, 13, 15, 16

*Simovits v. Chanticleer Condominium Ass'n*, 933 F.Supp. 1394 (N.D. Ill. 1996) .................................. 40

*Smith v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004) .................................. passim

vi

*Smith v. Wade*, 461 U.S. 30 (1983) ............................................................................................ 44

*Spann v. Colonial Village, Inc.*, 662 F. Supp. 541 (D.D.C. 1987) ........................................... 13

*Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990) ........................................ 13, 18

*Syverson v. IBM Corp.*, 472 F.3d 1072 (9th Cir.2007) ............................................................. 8

*Thompson v. Mountain Peak Assocs., LLC*, No. 2:05-cv-145, 2006 WL 1582126 (D. Nev. June 5, 2006) ............ 15

*Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205 (1972) .................................................... passim

*United States v. Balistrieri*, 981 F.2d 916 (7th Cir. 1992) ........................................ 14, 18, 44

*United States v. Bleakley, et al.*, Civ. No. 01-2226 JWL (D. Kan.), Consent Order entered January 6, 2003, at ¶¶

V. A and B. ............................................................................................................................... 38

*United States v. Bowen*, 172 F.3d 682 (9th Cir. 1999) ............................................................ 32

*United States v. Canal Street Apartments, et al.*, Civ. No. 01-115-S-BLW (D. Idaho), Consent Decree entered

September 12, 2002 ................................................................................................................ 38

*United States v. City of Parma*, 661 F.2d 562 (6th Cir. 1981) ......................................... 12, 13

*United States v. Deer Run Management Company, Inc., et al.*, Civ. No.04-CV-5252 (JLH) (W.D. Ark.), Consent

Decree entered Nov. 24, 2004 .............................................................................................. 37

*United States v. ERGS, Inc., et al.* CV-N-02-0615 DWH (VPC) (D. Nev.), consent order entered July 13, 2005. 37

*United States v. Makowsky Construction Company, et al.*, Civ. No. 01-2069 D/Pha  (W.D. Tenn.), Consent

Decree entered March 21, 2004 ............................................................................................ 37

*United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129 (D. Idaho 2003) ........................ 16

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001) .................................................... 25

*Whitson v. Heilig -Meyers*, 1995 U.D. Dist. LEXUS 4312 (N.D. Ala 1995) ............................ 35

*Wilkerson v. Butler*, 229 F.R.D. 166 (E.D. Cal. 2005) .................................................... 42, 43

**Statutes**

28 U.S.C. § 2462 ....................................................................................................................... 16

42 U.S.C. § 2000e-5(e)(1) ......................................................................................................... 15

42 U.S.C. § 3601(f)(1) ............................................................................................................... 47

42 U.S.C. § 3602(d) .................................................................................................................... 27

42 U.S.C. § 3602(i) ...................................................................................................................... 5

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Plaintiff's Consolidated Opposition to Spanos Defendants' Motions

42 U.S.C. § 3602(i)(1) ....................................................................................................26, 31

42 U.S.C. § 3604(f)(1) .......................................................................................................7, 47

42 U.S.C. § 3604(f)(2) ..............................................................................................................7

42 U.S.C. § 3604(f)(3)(C) .............................................................................................7, 31, 40

42 U.S.C. § 3604(f)(7) ..............................................................................................................7

42 U.S.C. § 3613(a)(1) ......................................................................................................16, 27

42 U.S.C. § 3613(a)(1)(A) .........................................................................................15, 26, 31

42 U.S.C. § 3613(c) ...........................................................................................................43, 44

42 U.S.C. § 3613(d) .........................................................................................................passim

Housing and Cmty. Dev. Act of 1992, Pub. L. No. 102-550 § 905(a)(2), 106 Stat. 3672, 3868 (1992) ...............24

MD § IV.A.3 .............................................................................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................4, 8

Fed. R. Civ. P. 12(b)(7) ........................................................................................................4, 9

Fed. R. Civ. P. 12(e) .......................................................................................................2, 4, 47

Fed. R. Civ. P. 12(f) ..........................................................................................................5, 42

Fed. R. Civ. P. 19 ..........................................................................................................4, 9, 32

Fed. R. Civ. P. 19(a) ..............................................................................................................32

Fed. R. Civ. P. 19(a)(2) ...........................................................................................................9

Fed. R. Civ. P. 19(d) ................................................................................................................4

Fed. R. Civ. P. 23 .....................................................................................................................6

Fed. R. Civ. P. 23(c) ..............................................................................................................34

Fed. R. Civ. P. 23(c)(2)(A) ....................................................................................................34

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................................34

Fed. R. Civ. P. 23(d)(1)(B) ....................................................................................................34

Fed. R. Civ. P. § 9:375 .......................................................................................................4, 42

**Treatises**

2 NEWBERG ON CLASS ACTIONS ("Newberg") § 4:47 at 341 (Alba Conte & Herbert Newberg eds., 2002)

(citing *Hansberry v Lee*, 311 U.S. 32, 61 S. Ct 115, 85 L. ED. 22, 132. 741 (1940)....................................33, 34

Robert G. Schwemm, HOUSING DISCRIMINATION: LAW AND LITIGATION (Thompson West)(2007),

§25:10, at pp. 25-52 to 25-53................................................................................................................7, 44

**Other Authorities**

H. Rep. No. 100-711 1998 ....................................................................................................................7, 8

ix

Plaintiffs National Fair Housing Alliance, Inc., Fair Housing of Marin, Inc., Fair Housing Napa Valley, Inc., Metro Fair Housing Services, Inc. and Fair Housing Continuum, Inc. submit this Memorandum of Points and Authorities in Support of their Consolidated Opposition to four separate motions and memoranda filed by A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G. Spanos Land Company, Inc., A.G. Spanos Management, Inc. and The Spanos Corporation (hereinafter, the "Spanos Defendants" or "Defendants"). These include (1) the Motion to Dismiss Plaintiff's First Amended Complaint or, Alternatively, for Partial Dismissal of Plaintiff's First Amended Complaint [Doc. 48; Memorandum, Doc. 48-3](hereinafter, "MD" or "Motion #1"); (2) the Motion for More Definite Statement [Doc. 50; Memorandum, Doc 50-2](hereinafter, "MDS" or "Motion #2"); (3) the Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to Join Necessary and/or Indispensable Parties [Doc. 49; Memorandum, Doc. 49-3](hereinafter, "MDNIP" or "Motion #3"); and (4) the Motion to Strike Various Claims for Relief [Doc. 52; Memorandum, Doc. 52-2](hereinafter, "MS" or "Motion #4").

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

This litigation seeks remedies against one of the country's largest apartment developers for construction of tens of thousands of apartment units and their common areas that are not accessible to or usable by people with disabilities. The primary remedy—an order requiring the Spanos Defendants to make retrofits to the complexes that do not comply with the design and construction requirements of the Fair Housing Act (hereinafter, "FHA" or "Act")—is readily achievable. The Spanos Defendants are in the business of design, construction and development, so have the capacity to make the repairs the Court may require. Even though Defendants have sold many of the noncompliant properties, Plaintiffs have proposed a straightforward means of joining current owners for purposes of effectuating any retrofits required of those Defendants. Plaintiffs' First Amended Complaint (hereinafter, "FAC") proposes certification of a class of current owners of noncompliant Spanos-designed and Spanos-built properties, and through that device the Court can ensure sufficient access to the subject properties, both for purposes of surveying each property and for effectuating the necessary repairs and retrofits.

1

The complaint herein alleges that the Spanos Defendants have been engaged in a *continuing violation* since the 1990s, consisting of a pattern and practice of designing and building at least 82 apartment complexes[1] in ten states—an average of more than five per year—that violate the design and construction provisions of the FHA and are therefore made unavailable to wheelchair users and other people with mobility impairments. The development of these properties was continuous and seamless, one overlapping another, and the instances of noncompliance are identical or remarkably similar from one property to another. Notwithstanding their sale of many of the properties to third parties, the lawsuit alleges that the Spanos Defendants remain liable for their noncompliant design and construction of at least 82 properties.

The Spanos Defendants have acknowledged that as many as 19 properties encompassed in the FAC were either built within two years of the filing of the complaint, or are still under construction.[2] Therefore, there can be no question that the statute of limitations concerning the last discriminatory act in the series did not even begin to run until after the filing of the complaint. This pattern and practice has

---

[1] Plaintiffs acknowledge their error in listing Constellation Ranch in Fort Worth, Texas and Orion at Roswell in Roswell, Georgia, in misnumbering the apartment complexes in the appendix to the FAC. Removing these from the purview of the FAC, however, still leaves 82 properties that are unquestionably pled into this case. Surely, this does not rise to the level of being "so vague and ambiguous that [Defendants] cannot reasonably prepare a response," Fed. R. Civ. P. 12(e), as suggested by Defendants. MDS 6-7. As modified by the foregoing, the FAC alleges violations of the FHA's design and construction requirements at 82 *known* properties, 34 of which were visited and/or tested by Plaintiffs. The FAC also alleges that Defendants may have committed FHA design and construction violations at other properties currently unknown to Plaintiffs, FAC ¶ 45, but likely to be identified in discovery.

[2] Five of these still appeared to be under construction at the time the original complaint was filed. Defendants' Request for Judicial Notice [Doc. 48-5] (hereinafter, "RJN"), Exhibits 127, 128, 133, 154 and 166. Defendants also concede that eight properties encompassed within the complaint were built within two years of the filing of the complaint. MD 8:22-9:3; MS 8:4-12; MDIP 8:7-16. Plaintiffs are perplexed about Defendants' concession that the complex known as The Coventry at City View in Fort Worth was built within two years prior to the filing of the complaint herein. MD 9:1-2; MS 8:10-11. Defendants' own request for judicial notice suggests that the last certificate of occupancy was issued in 1996. RJN Exhibit 158. Finally, Defendants' filings with this Court suggest that six additional properties were completed within that period. RJN Exhibits 94 (Park Crossing in Fairfield, CA), 99 (Ashgrove Place in Rancho Cordova, CA), 100 (Stone Canyon in Riverside, CA), 134A (Highpointe Village, Phase II in Overland Park, KS), 153 (Auberry at Twin Creeks in Allen, TX) and 165 (Cheval in Houston, TX).

2

1    continued until the filing of this lawsuit and thereafter, in that construction of noncompliant units was

2    ongoing.

3    Defendants virtually ignore controlling U.S. Supreme Court and Ninth Circuit precedent under the FHA, and

4    premise significant parts of several motions on a now-withdrawn Ninth Circuit panel opinion. Most notably, in

5    their principal brief (on Motion #1), Defendants do not even mention *Havens Realty Corp. v. Coleman*, 455

6    U.S. 363 (1982), which is controlling on two crucial issues in this case:  the continuing violation theory that

7    supports Plaintiffs' claims with respect to all 82 named properties, and standing to sue under the FHA.  In

8    Motions #2 and #3, Defendants relegate *Havens* to footnotes without substantive consideration.  This Court

9    should not be misdirected by Defendants' ploy; *Havens* provides the rules of decision in this matter.  Their

10   attempt to bury in string citations or footnotes the controlling cases of *Fair Housing of Marin v. Combs*, 285

11   F.3d 899 (9th Cir. 2002) and *Smith v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004) leads

12   Defendants to the wrong conclusion with respect to what Plaintiffs must demonstrate to support their standing

13   to sue under the FHA.

14        Finally, as the Spanos Defendants were forced to acknowledge recently,[3] the panel decision in

15   *Garcia v. Brockway,* 503 F.3d 1092 (9th Cir. 2007) has, pending *en banc* review, been withdrawn, and

16   "shall not be cited as precedent by or to any court of the Ninth Circuit."  *Garcia v. Brockway*, ___ F.3d

17   ___, 2008 WL 90233 (9th Cir. Jan. 7, 2008).  That action leaves Defendants' statute of limitations

18   argument virtually insupportable.

19        Defendants have adopted a litigation strategy that mirrors their design and construction practices:

20   their four motions contain similar and repeated arguments that overlap one another and contain the same

21   fundamental flaws.  In this Consolidated Opposition, Plaintiffs first distill the arguments presented in the

22   motions and thereafter to rebut them.

23        As best Plaintiffs can discern, the Spanos motions assert the following grounds for dismissal or

24   other relief:

25        1)  Plaintiffs' claims are time-barred as to all but eight properties. (MD 9-11; MS 7-8; MDIP

26            8:7-16)

---

[3] Defendants' Notice of Change in Status of Authority Cited [Doc. 70] at 1-2.

2) Plaintiffs lack standing to sue, in part because they are not "aggrieved persons" as defined in the FHA. (MD 11-18, 19-25; MDS 7-13; MS 8-11)

3) Plaintiffs have failed to state a claim because the complaint does not allege that the Spanos Defendants denied, or could deny, a rental to anyone. (MD 18-19; MS 6-7)

4) Plaintiffs have failed to properly join as "necessary and/or indispensable parties" all of the current owners, renters and lenders of the apartment complexes named in the complaint. (MDIP 5-9; MS 4-6)[4]

While the legal standards applicable to the various motions may differ slightly (as articulated immediately below and in Section IV.A through IV.C), the outcome is the same: none of the grounds supporting the motions is sufficient and each must be denied. At this very early stage in the litigation, prior to discovery and any Answer being filed, the Court's attention must be focused on the allegations of the First Amended Complaint (hereinafter, "FAC") itself. For purposes of Motion #1, brought under Fed. R. Civ. P. 12(b)(6), those allegations must be assumed to be true. In order to prevail on Motion #2, the Spanos Defendants must show that the FAC is "so vague or ambiguous that [they] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

Motion #3 is brought under Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19. The latter rule now contains an "exception for class actions," Fed. R. Civ. P. 19(d), thereby indicating that the concerns commonly implicated with respect to required and/or indispensable parties are mitigated where a plaintiff or defendant class action is present. Through the FAC, Plaintiffs seek to join current owners of the 82 properties so that they may be brought before the Court *not* for purposes of establishing their liability, but to ensure that they can be ordered to permit any retrofitting the Court may direct the Spanos Defendants to undertake.

Despite the fact that such motions "are generally disfavored," *Bureerong v. Uvawas,* 922 F. Supp. 1450, 1479 (C.D. Cal. 1996)(quoting from Schwarzer, et al., *Federal Civil Procedure* § 9:375

---

[4] On these and other grounds, the Spanos Defendants also move to strike various claims for damages and injunctive relief. To the extent the motion to strike is based on one of the four substantive claims outlined above, it will be discussed there. Miscellaneous grounds will be discussed in section IV.E, *infra.*

4

(citing *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D.Cal.1991)), the Spanos Defendants have also filed a motion to strike certain of the FAC's claims pursuant to Fed. R. Civ. P. 12(f). Because of "the limited importance of pleadings in federal practice," *id.*, courts should grant a motion to strike elements of a complaint only when the moving party can demonstrate that they are "redundant, immaterial, impertinent or scandalous...." Fed. R. Civ. P. 12(f).

Plaintiffs now turn to a summary of their argument with respect to the four substantive grounds for the motions. First, the Spanos Defendants are simply wrong to assert that any portion of this litigation is barred by the statute of limitations. MD 9-11; MS 7-8; MDIP 8:7-16. When seen in the proper context—that of a continuing violation by the Spanos Defendants over a period of several years, manifesting itself in a pattern and practice of designing and building inaccessible housing units and common areas in at least 82 apartment complexes—it is clear that no part of this action is time-barred. Under *Havens*, 455 U.S. 363, Plaintiffs' claims are timely if filed within two years of "the last asserted occurrence of that practice." *Id.* at 380-81. As outlined more fully in Section IV.A., below, the FAC pleads a continuing violation. FAC ¶¶49, 50, 74, 84, and Defendants concede that at least 19 complexes were constructed within the limitations period. *See* n.2, *supra;* MD 8:22-9:3; MS 8:4-12; MDIP 8:7-16. Under Rule 12(b) (6), these allegations and concessions must be assumed to be true. Therefore, those portions of Motions #1, #2 and #3 that rely upon the defense of the statute of limitations must be denied.

Second, the Spanos Defendants contend that Plaintiffs lack standing to sue under the FHA or to seek certain relief authorized by the FHA. MD 11-18, 19-25; MDS 7-13; MS 8-11. But as demonstrated in Section IV.B., below, Plaintiffs are clearly "aggrieved persons" within the meaning of 42 U.S.C. § 3602(i), and have sufficiently pled facts to establish their standing to sue under the FHA. Defendants' cramped and illogical view of standing—that Plaintiffs are required to show that the Spanos Defendants denied rental housing to <u>particular</u> individuals with disabilities and to show that Plaintiffs either belong to, or are suing on behalf of members of, an FHA protected class (MD 12-16, 18-25; MDS 7-13; MS 8-11)—has been rejected repeatedly by the U.S. Supreme Court and the Ninth Circuit. Both Courts have held that private fair housing organizations can establish standing in their own right by showing diversion of their resources to counteract discrimination and by frustration of their missions to advance

5

fair housing choice. *See, e.g., Havens*, 455 U.S. at XXX; *Fair Hous. of Marin*, 285 F.3d 899; *Pacific Properties,* 358 F.3d 1097.

The Spanos Defendants next argue that the FAC should be dismissed pursuant to Rule 12(b)(7) for failure to join as parties under Rule 19 all current owners of the apartment complexes in issue (there are at least 82 such complexes), all current tenants of those complexes (there are estimated to be 22,000 apartments in these complexes) and all lenders whose loans are secured by these complexes. Should this Court grant injunctive relief to require the Spanos Defendants to bring noncompliant properties into FHA-accessible condition, Plaintiffs agree that current owners of any such properties may be required for purposes of effectuating that relief. At that point it will be important to ensure that the Spanos Defendants are permitted to come onto the properties to make the necessary retrofits.

Because Plaintiffs do not seek to hold current owners liable for noncompliance with the FHA's design and construction accessibility requirements, Plaintiffs seek to add current owners to this litigation for purposes of effectuating relief only. Pursuant to Fed. R. Civ. P. 23, Plaintiffs have named two putative defendant class representatives—Knickerbocker Properties, Inc. XXXVIII (hereinafter, "Knickerbocker") and Highpointe Village, L.P. (hereinafter, "Highpointe"). The proper time to gauge their "adequacy" under Rule 23 is on the forthcoming motion for class certification, not at this preliminary stage of the litigation, when the Rule 23 issues have not been briefed. As explained further in Section IV.C., below, the Court should decline Defendants' invitation to engage in this inquiry until a certification motion has been filed and the issue is fully briefed.

In addition, the Spanos Defendants have failed to show that (1) the joinder of owners is infeasible through a putative class of owner defendants and the named class representatives as set forth in its FAC or (2) that joinder of tenants and lenders is required. For these reasons as well, their Rule 12(b)(7) motion should be denied.

Finally, the Spanos Defendants employ a motion to strike in an attempt to eliminate claims for damages and injunctive relief, and to obtain a ruling that the statute of limitations bars the Court's consideration of certain properties. Beyond being the wrong procedural mechanism, the motion to strike must fail because the FAC adequately pleads that Plaintiffs are "aggrieved persons" under the FHA, that Defendants have caused the harm complained of, and the elements necessary to support damages and

6

1   injunctive relief.  Furthermore, Plaintiffs have also adequately pled a continuing violation encompassing

2   all 82 properties.  At this stage of the litigation, that is all that is required.

3

4                              II.    **FACTUAL BACKGROUND**

5          Collectively, the Spanos Defendants represent the fifth-largest apartment development enterprise

6   in the country.  FAC ¶ 2.  Since 1960, Defendants have built more than 120,000 apartments in over 400

7   complexes across the country. *Id.*  Beginning in March 1991, the FHA required those who designed and

8   built such complexes to incorporate certain basic features to ensure that they were "accessible to and

9   usable by [people with disabilities]."  H.Rpt. 100-711, *reprinted at* 1988 U.S.C.C.A.N. 2173, 2187.

10  Sophisticated entities like the Defendants, who have been steeped in the business of real estate and

11  development for decades, are presumed to know the mandates of the FHA.  *See generally,* Robert G.

12  Schwemm, HOUSING DISCRIMINATION: LAW AND LITIGATION (Thompson West)(2007), §

13  25:10, at pp. 25-52 to 25-53.

14         This litigation commenced on June 20, 2007, and was based on careful investigations of

15  Defendants operations and visits to 34 apartment complexes that Defendants had designed and built.

16  FAC ¶ 3.  The Spanos Defendants filed a series of motions to dismiss and for other relief on August 15,

17  2007 [Docs. 15-19]; these were withdrawn on September 12, 2007.   Plaintiffs filed their First Amended

18  Complaint ("FAC") on October 12, 2007, adding The Spanos Corporation as a party and naming a

19  defendant class consisting of all current owners of FHA-noncompliant apartment complexes designed

20  and built by the Spanos Defendants.  FAC ¶¶3 0, 32.  Plaintiffs named Knickerbocker and Highpointe as

21  defendant class representatives.  *Id.*  On December 21, 2007, the Spanos Defendants filed a request for

22  judicial notice [Doc. 51] and renewed their previous motions [Docs. 48, 49, 50 and 52].  It is to these

23  motions that this Consolidated Opposition responds.

24         The FAC alleges that the Spanos Defendants have engaged in a continuing pattern and practice

25  of designing and building "covered multifamily dwellings," 42 U.S.C. § 3604(f)(7), in a fashion to make

26  them inaccessible to people with disabilities, in violation of 42 U.S.C. §§ 3604(f)(1), 3604(f)(2) and

27  3604(f)(3)(C).  FAC ¶¶ 83, 84.  Through on-site investigations at 34 apartment complexes, Plaintiffs

28  documented violations of the design and construction requirements of the FHA.  ¶¶ 42, 44, 45.  These

                                              7

violations render all or part of these complexes inaccessible to and unusable by people with mobility impairments.  FAC ¶¶ 46, 47.  Because at least 47 other untested properties share common design features with the tested properties, Plaintiffs have reason to believe that the untested properties may also violate the FHA's design and construction requirements.  FAC ¶ 6.

Based on the Spanos Defendants' own Request for Judicial Notice [Doc. 51], it is clear that they have been continuously involved in the design, development and construction of covered multifamily dwellings for several decades.  Exhibit No. 1 to this consolidated opposition is a simple table prepared by Plaintiffs to assist the Court in understanding the overlap between these developments.  Inasmuch as multifamily development is a complicated process requiring years of planning and execution at each site, the Court can see from Exhibit No. 1 that, from at least 1995 to the present day, the Spanos Defendants must have been involved in overlapping development at multiple sites, and that completion of one Spanos property and commencement of another must have been virtually seamless in time.  And, as the pleadings make clear, identical or very similar violations are noted in apartment complex across the Spanos portfolio.  FAC ¶¶ 45-52.

The Defendants' noncompliance with the FHA is not a trivial matter.  Inaccessibility has serious and significant consequences for people with disabilities.  FAC ¶ 8.  Not least among these is the extent to which inaccessible housing frustrates the national objective of integrating people with disabilities into "the American mainstream."  H.Rep. 100-711, *reprinted at* 1988 U.S.C.C.A.N. 2173, 2179.

### III.    LEGAL STANDARD

As this Court has recognized, a claim may be dismissed under Fed. R. Civ. P. 12(b)(6) only "if it does not 'state a claim upon which relief can be granted.' …When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true.  *Dion, LLC v. Infotek Wireless, Inc.,* 2007 WL 3231738 (N.D.Cal. Oct. 30, 2007), quoting from *Syverson v. IBM Corp.,* 472 F.3d 1072, 1075 (9th Cir.2007).

Furthermore, "Federal rule of Civil Procedure 12(e) states that '[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a

8

responsive pleading.' Under Rule 12(f), '[u]pon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' *Id.*

A motion brought under Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19 is subjected to a two-stage inquiry. The first question is whether a party is "required," that is, whether the party "should be joined ... [because] 'disposition of the action in the person's absence may ... as a practical matter impair or impede [her] ability to protect that interest.'" *Hartog v. Jots, Inc.,* 2004 WL 2600280 (N.D.Cal. Nov. 12, 2004), at *4, quoting from Fed. R. Civ. P. 19(a)(2). If the answer to the first question is yes, the party should be joined, if feasible. If joinder is not feasible, then the court must examine four factors to determine whether the required party is also "indispensable," that is, whether the litigation can continue, in good conscience, without participation of that party. *Id.*[5]

As explained in Section IV., below, the Spanos Defendants have not carried their burdens under these standards with respect to any of the four motions now pending before the Court.

## IV.    ANALYSIS

The A.G. Spanos Defendants have maintained a pattern and practice of designing and constructing apartment buildings in violation of the FHA's accessibility requirements. *See, e.g.,* FAC ¶¶ 4-6, 49-50, 82-84. Defendants have implemented this pattern and practice on at least 82 occasions from approximately 1991 through the present. *Id.* at ¶¶ 3-6. They have done so by designing and constructing at least 82 apartment complexes that do not comply with the FHA's requirements. *Id.* At least 19 of these complexes have not yet been completed or were completed in the two years before this suit was filed, *i.e.,* since June 20, 2005. *See* n.2, *supra.* Defendants' pattern and practice constitutes a continuing

---

[5] The factors to be considered in this determination are: (1) to what extent a judgment rendered in the absence of such a party might be prejudicial to him or her or to those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the party's absence will be adequate; and (4), whether Plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

9

violation of the FHA and Plaintiffs' claims were timely because they were filed within two years of the last occurrence of that practice. *Havens,* 455 U.S. at 380-81.

Rather than acknowledging that *Havens* is controlling on the continuing violation issue, Defendants spend just one paragraph explaining why the Court should rely on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 n.16 (2002), MD at 11. That reliance would be misplaced because the Supreme Court in *Morgan* expressly said it "ha[d] no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here." *Id.* at 115, n.9. Furthermore, *Morgan* considered the statute of limitations under Title VII of the Civil Rights Act which, by its terms, is more restrictive than the limitations provision under the FHA. Finally, *Morgan* involved only a single plaintiff alleging a series of discrete acts of discrimination outside the statute of limitations. Here, Plaintiffs plead and can demonstrate, a continuous course of conduct over more than a decade, with instances of discrimination that are identical or very similar in as many as 82 apartment complexes. *Havens*, which analyzed the FHA and specifically addressed a repetitive practice, controls here. *Morgan* does not.

Defendants devote the rest of their statute of limitations objection to three arguments that are entirely academic. These arguments concern how the FHA's statute of limitations applies when only one apartment complex is at issue, whether the discovery rule applies to the statute of limitations, and whether the limitations period may be equitably tolled. There is no need for the Court to consider these arguments because Plaintiffs' FHA claims are timely under *Havens*. Moreover, each of these arguments rests on *Garcia*, 503 F.3d 1092, which has been accepted for *en banc* rehearing, *see Garcia*, ___ F.3d ___, 2008 WL 90233. In the interim, the Ninth Circuit has ordered that "[t]he three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit."[6] *Id.*

---

[6]    The A.G. Spanos Defendants acknowledge that *Garcia* was accepted for *en banc* rehearing after their opening brief was filed. *See* Notification of Change in Status of Authority Cited (Docket No. 70) (Feb. 6, 2008).

A.    **PLAINTIFFS' CLAIMS ARE TIMELY UNDER *HAVENS REALTY CORP. V. COLEMAN* BECAUSE THE A.G. SPANOS DEFENDANTS HAVE ENGAGED IN AN UNLAWFUL PATTERN AND PRACTICE CONTINUING INTO THE LIMITATIONS PERIOD**

1.    **Defendants' Design and Construction Of All 82 Or More Apartment Complexes Constitutes A Continuing Violation Under *Havens***

The analysis of a continuing violation under the FHA is controlled by *Havens*. The *Havens* plaintiffs alleged that a realty company, which owned and operated two apartment complexes, maintained a continuing practice of steering African-American apartment seekers away from those complexes by giving them false information about the availability of units. *Havens*, 455 U.S. at 366. The Supreme Court found that acts of steering that occurred outside the limitations period were actionable because plaintiffs challenged "a continuing violation manifested in a number of incidents — including at least one . . . that is asserted to have occurred within the [limitations] period." *Id.* at 381. *Havens* is the Supreme Court's sole opinion examining the operation of the FHA's statute of limitations provision.

The *Havens* Court emphasized that applying the provision broadly was important to effectuating the important national policy embodied in the FHA. The Court explained that a "wooden application" of the limitations provision that viewed each act of steering in isolation would "undermine[] the broad remedial intent of Congress embodied in the Act." *Id.* at 380 (citations omitted). Indeed, the Court has long recognized that the Act must be given "a generous construction" because it embodies a "policy of the United States that Congress considered to be of the highest priority." *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972) (citation omitted); *see also City of Edmonds v. Oxford House*, 514 U.S. 725, 731 (1995) (reaffirming *Trafficante*'s recognition of the Act's "broad and inclusive compass" and its entitlement to a "generous construction").

In *Silver State Fair Housing Council, Inc. v. ERGS, Inc.*, 362 F. Supp. 2d 1218 (D. Nev. 2005) ("*ERGS*"), *Havens* was applied to facts that are strikingly similar to those presented here. In *ERGS*, a developer built one housing complex between 1990 and 1996, and was in process of building another when a lawsuit was filed in 2002 alleging FHA design and construction violations at both. *See id.* at 1219 (incorporating by reference factual background from Order dated Mar. 8, 2005, at 2-3 (copy attached as Exhibit No. 2)). The court noted that "the completion of the [first] development and the

11

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Plaintiff's Consolidated Opposition to Spanos Defendants' Motions

beginning of the [second] development were seamless in time.  In addition, these were the only

properties developed by defendant during the relevant time frame.  Plaintiff alleges that each complex

had the same or similar alleged FHA violations." *Id.* at 1220-21.  Relying on *Havens*, the court held that

"the design and construction of multiple FHA-violating housing developments continuing into the

limitations period can indeed constitute [] a 'practice'" "that can ensnare discriminatory occurrences that

took place outside of the two-year statute of limitations." *Id.* at 1221-22.  The developer's summary

judgment motion on statute of limitations grounds was, accordingly, denied "because a triable issue of

fact exists as to the allegations that the [] claims were part of a practice of FHA violations that continued

into the limitations period." *Id.* at 1222.  The court quoted *Havens* in specifically referencing the

"'broad remedial intent of [C]ongress.'" *Id* at 1221.

On facts similar to those in the case at bar, the continuing violation doctrine was also held

applicable in *Memphis Center for Independent Living v. Makowsky Construction Co.*, No. 01-2069 (July

29, 2003 W.D. Tenn.) ("*MCIL*") (copy attached as Exhibit No. 3).  In *MCIL*, the defendant was a general

contractor that built three apartment complexes that allegedly violated the FHA's design and

construction requirements. *Id.* at 2.  Two were completed more than two years before the suit was filed,

but the third was completed only 16 months earlier. *Id.*  Beginning with a discussion of *Havens*, the

court held the suit timely as to all three complexes and denied the contractor's summary judgment

motion. *Id.* at 4-6.

Courts have also routinely applied *Havens* and the continuing violation doctrine in many other

kinds of FHA cases.  In *Inland Mediation Board v. City of Pomona*, 158 F. Supp. 2d 1120 (C.D. Cal.

2001), for example, the court applied the doctrine to various acts of the head of a group of landlords and

a city allegedly aimed at reducing the number of African-American tenants in a neighborhood.  In *United

States v. City of Parma*, 661 F.2d 562 (6th Cir. 1981), the Sixth Circuit applied the doctrine to a

municipal government's acts and omissions, even though they were quite different and distinct from

each other, because they were part of a single practice of excluding African Americans from residing in

the city and maintaining its segregated "character."[7]  The D.C. Circuit held the doctrine applicable to an

---

[7] The acts constituting the continuing violation in *City of Parma* were:  (1) the rejection of a fair housing
resolution; (2) the consistent refusal to sign a cooperative agreement with a housing authority; (3) the

12

advertising agency that ran ads depicting white models exclusively, even though the ads were for different housing developments. *See Spann v. Colonial Village, Inc.*, 899 F.2d 24, 34-35 (D.C. Cir. 1990) (R. B. Ginsburg, J.); *Spann v. Colonial Village, Inc.*, 662 F. Supp. 541, 543 (D.D.C. 1987) (lower court opinion describing agency's actions).[8]

Under *Havens* and its progeny, Plaintiffs' FHA claims are plainly addressed to a single pattern and practice that constitutes a continuing violation, and Plaintiffs have pled sufficient facts to make out claims under the FHA. Defendants have designed and constructed, or are currently in the process of designing and constructing, at least 82 apartment complexes in violation of the FHA's accessibility requirements. Defendants have been engaged in this process continuously, or nearly continuously, since 1991 when the FHA's design and construction requirements became effective. *See, e.g.,* FAC ¶¶ 3-7. The violations are found at every apartment complex that Plaintiffs are aware of that was built by the A.G. Spanos Defendants during this period. *See, e.g., id.* ¶¶ 3-7, 49-50. The FHA violations are the same or exceedingly similar at each of the subject properties. *See id.* ¶¶ 4, 6, 8, 45-52, 54-71. Furthermore, the Spanos Defendants concede that at least 19 of the apartment complexes alleged to have design and construction violations were built within the two-year statute of limitations period.[9] Applying *Havens, ERGS* and *MCIL*, this is more than enough to support application of the continuing violation doctrine to all 82 (or more) of Defendants' discriminatory acts.

---

adamant and long-standing opposition to any form of public or low-income housing; (4) the denial of a building permit for a low-income housing development (5) the passage of a 35-foot height restriction ordinance; (6) the passage of an ordinance requiring voter approval for low-income housing; and (7) the refusal to submit an adequate housing assistance plan with its Community Block Development Grant application. *City of Parma*, 661 F.2d at 565-68, 570.

[8]      *See also Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 Fed. Appx. 469, 481 (6th Cir. 2006), *cert. denied sub nom WKB Associates, Inc. v. Fair Housing Council, Inc.*, 128 S.Ct. 880, 76 USLW 3189, 76 USLW 3335, 76 USLW 3347 (U.S. Jan 07, 2008) (NO. 07-421) ("where the plaintiff can show that the owner of several housing developments engaged in a continuous policy or practice with regard to the noncompliant design and construction of each of the developments, the continuing violation doctrine may toll the running of the limitations period until the last unit of all the implicated developments is sold").

[9] See n. 2, *supra.*

Accordingly, Plaintiffs' claims are timely with respect to the complexes completed more than two years before the case was filed because they were designed and constructed pursuant to a pattern and practice, continuing into the limitations period, of erecting apartments in violation of the FHA's design and construction requirements. *See Havens*, 455 U.S. at 380-81 ("where a plaintiff, pursuant to the FHA, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [2 years] of the last asserted occurrence of that practice"). That is, at least 82 complexes are properly before the Court.

### 2. **Defendants' Reliance On *Nat'l R.R. Passenger Corp. v. Morgan* Is Misplaced**

Ignoring *Havens* entirely, Defendants rely exclusively on *Morgan* to assert that their unlawful design and construction of apartments within the limitations period is irrelevant to the timeliness of claims regarding their similarly unlawful design and construction of older apartments. *See* MD § IV.A.3. But *Morgan*, an employment case involving a single plaintiff suing for race discrimination, merely held that Title VII and its applicable statute of limitations required the Supreme Court to consider the plaintiff's allegations as constituting a series of discrete and unrelated acts, most of which occurred beyond the limitations period and were, therefore, no longer actionable. The Court merely held that a Title VII plaintiff may not string together a series of such discrete acts to revive time-barred claims. *Morgan* is inapposite to the case at bar for two fundamental reasons.

First, the Supreme Court expressly stated in *Morgan* that it was <u>not</u> addressing "the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here." 536 U.S. 101 at 115 n.9. Yet that is precisely the type of claim raised in this case. Plaintiffs allege a pattern or practice by the Spanos Defendants of committing the same or similar violations of the FHA design and construction requirements, year after year, at dozens of apartment buildings.[10]

---

[10]    On a related note, the existence of an unlawful pattern or practice under the FHA is a question of fact, *see, e.g.*, *United States v. Balistrieri*, 981 F.2d 916, 930 (7th Cir. 1993), and therefore inappropriate for resolution on a motion to dismiss. *Cf. Block v. City of Los Angeles*, 253 F.3d 410, 422 (9th Cir. 2001) (denying summary judgment on Fair Labor Standards Act claim because a "reasonable factfinder" could find no "pattern or practice of violations").

14

Second, *Morgan* was an employment discrimination case and turned on the specific limitations language in Title VII's administrative charge filing provision, which is markedly different from the FHA's statute of limitations. *Compare* 42 U.S.C. § 2000e-5(e)(1) (Title VII) *with* 42 U.S.C. § 3613(a)(1) (FHA); *see Morgan*, 536 U.S. at 109 (parsing Title VII provision and identifying its "critical" words). Whereas Title VII considers only when an unlawful employment practice "occurred," the FHA looks to the "occurrence *or the termination*" of a discriminatory housing practice. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 3613(a)(1)(A). It is a basic rule of statutory construction that each word should be given effect. *See, e.g.*, *Schneider v. Chertoff*, 450 F.3d 944, 954 (9th Cir. 2006). Defendants, however, effectively ask the Court to ignore the additional words included by Congress in the FHA's limitations provision by ignoring the well-pled fact that Defendants' unlawful practice did not terminate before the limitations period. Implicitly recognizing the difference between Title VII and the FHA, the Court in *Morgan* did not even mention *Havens*; it certainly did not displace *Havens* in any respect, as a reading of Defendants' brief would suggest. Even Defendants themselves inadvertently demonstrate that the statutes of limitations under the FHA and Title VII are markedly different. *Morgan* affirmed that equitable tolling applies to the limitations period under Title VII, *see* 536 U.S. at 113, yet Defendants assert that equitable tolling does not apply under the FHA, *see* MD at 11.

Accordingly, *Havens* controls here, not *Morgan*.

**3.    There Is No Reason To Address Defendants' Remaining Arguments Which, In Any Event, Are Based On A Case That The Ninth Circuit Is Rehearing *En Banc***

Inasmuch as *Garcia* is no longer a valid precedent, Plaintiff's FHA claims against the movants will be timely regardless of the application of *Havens* and *ERGS*.[11] Neither does the Court need to consider three additional arguments raised by the Spanos Defendants: (1) that the statute of limitations expires two years after a certificate of occupancy is issued for the last unit in a development; (2) that this rule is not altered by the discovery rule; and (3) that this rule is not subject to equitable tolling.

---

[11]    The third, equitable tolling, would not seem to be relevant here, unless the *en banc* court's explanation of equitable tolling differs from the panel's explanation.

15

1    Plaintiffs do not rely on any of these arguments to establish the timeliness of their claims. Each

2    was considered by the Ninth Circuit panel in *Garcia,* but *Garcia* did not consider the application of the

3    continuing violation doctrine to serial violations at multiple developments. Here, unlike *Garcia*, more

4    than 80 developments are involved and Defendants concede that the certificates of occupancy for eight

5    were issued within the limitations period or have yet to be issued. Even if Defendants were correct as to

6    all three issues, then, it would not make any difference because Plaintiffs' claims involve multiple

7    complexes and are timely based on *Havens* and *ERGS*, as discussed above.

8    The other three cases Defendants cite in support of these arguments are as unhelpful to their

9    motion as *Garcia*. Like *Garcia, Thompson v. Mountain Peak Assocs., LLC*, No. 2:05-cv-145, 2006 WL

10   1582126 (D. Nev. June 5, 2006), and *United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129 (D.

11   Idaho 2003), each involved only one housing development. Moreover, in *Taigen & Sons*, the Magistrate

12   Judge simply did not consider the FHA's statute of limitations, because that case was brought not by a

13   private litigant, but by the U.S. Department of Justice.[12]   Finally, in *Moseke v. Miller & Smith, Inc.*, 202

14   F. Supp. 2d 492, 501 (E.D. Va. 2002), the Defendants responsible for multiple developments agreed

15   with Plaintiffs' position here. They "proffer[ed] that the statute of limitations expired two years after the

16   completion of *the last condominium development* . . . ." *Id.* at 501 (emphasis added); *see id.* at 507

17   (statute of limitations bars claims because "[t]he last condominium development at issue in this matter

18   was constructed more than two years before this suit commenced").

19   Plaintiffs' claims are therefore timely with respect to all the apartment complexes designed and

20   constructed by the A.G. Spanos Defendants addressed in the First Amended Complaint.

21   **B.    PLAINTIFFS' ALLEGATIONS MEET THE SUPREME COURT'S REQUIREMENTS
22         FOR ESTABLISHING ORGANIZATIONAL STANDING UNDER THE FAIR HOUSING
           ACT**
23
     Defendants argue that allegations of the FAC fail to establish that Plaintiffs have standing to
24

25

26
     _____
27   [12] The limitations period in 42 U.S.C. § 3613(a)(1) is specific to private actions under the FHA, but the
     Magistrate Judge addressed 28 U.S.C. § 2462, which applies generally to government-initiated actions
28   seeking civil penalties. *See id.* at 1143-44. The District Court Judge did not address either provision.

16

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Plaintiff's Consolidated Opposition to Spanos Defendants' Motions

pursue their claims under the FHA.[13]  There is simply no basis for this assertion.  Plaintiffs' allegations precisely track the form of allegations that have been consistently and repeatedly held as sufficient to establish the standing of a fair housing organization under the FHA.

In enacting the FHA, Congress intended to define standing as broadly as permitted by Article III of the Constitution.  *Trafficante*, 409 U.S. at 211.  As a result, the sole requirement for standing "is Article III minima of injury in fact—that the plaintiff allege that as a result of the defendant's actions he suffered a 'distinct and palpable injury.'"  *Havens* 455 U.S. at 372.  To establish standing under Article III of the Constitution, a plaintiff must show:

> it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth v. Laidlaw Envtl. Serv.*, 528 U.S. 167, 180-81  (2000).

In *Havens*, the Supreme Court held that a private fair housing organization could establish standing under these Article III requirements.  *Havens*, 455 U.S. at 363.  As mentioned in Section IV.A.1., above, the plaintiffs in *Havens* alleged that a realty company maintained a continuing practice of "steering" African-American apartment seekers away from its two apartment complexes by giving them false information about the availability of units.  *Id.* at 366.  The organizational plaintiff in the case—Housing Opportunities Made Equal of Richmond ("HOME")—stated in its complaint that it had "been frustrated by defendant's racial steering practices in its efforts to assist equal access to housing through counseling and other referral services . . . [and] had to devote significant resources to identify and counteract the defendants' racially discriminatory steering practices."  *Id.* at 379 (citation and

---

[13] Defendants' challenges to Plaintiffs' standing appears repeatedly in Defendants' motions.  *See* Memo. In Support of Spanos Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 48-3] at 19-23; Memo. In Support of Spanos Defendants' Motion for More Definite Statement [Doc. 50-2] at 7-14; Memo. In Support of Spanos Defendants' Motion to Strike Various Claims for Relief [Doc. No. 52-2] at 2-4, 8-11; Memo. In Support of Defendant Highpointe Village's Motion to Dismiss [Doc. No. 60] at 14-22.  Defendants' arguments related to standing in these various motions largely repeat themselves.  Plaintiffs' will respond to all Defendants' arguments in each of their motions in this one consolidated response.

quotation marks omitted).  The Supreme Court, in denying the *Havens* defendants' motion to dismiss the organization for a lack of standing concluded that:

> [i]f, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income home-seekers, there can be no question that the organization has suffered injury in fact.  Such concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests.

*Id.* (citation omitted).

The Ninth Circuit, and all other Circuits addressing the issue, have interpreted *Havens* as establishing that "an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question.  *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004); *see also Fair Hous. of Marin*, 285 F.3d at 905; *Alexander v. Riga*, 208 F.3d 419, 427 n.4 (3d Cir. 2000); *Ragin v. Harry Macklowe  Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992); *United States v. Balistrieri*, 981 F.2d 916 (7th Cir. 1992); *Home v. The Cincinnati Enquirer*, 943 F.2d 644, 646 (6th Cir. 1991); *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27-31 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 980 (1990); *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 138-39 (6th Cir. 1985), *cert. denied*, 475 U.S. 1019 (1986); *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1420-21 (11th Cir. 1984); *Parkview Heights Corp. v. City of Black*, 467 F.2d 1208, 1212-14 (8th Cir. 1972); *Equal Rights Center v. Equity Residential*, 483 F. Supp. 2d 482 (D. Md. 2007) (finding organizational standing in context of challenge to defendant's design and construction of inaccessible buildings); *Moseke v. Smith*, 202 F.Supp. 2d 492 (E.D.Va. 2002) (same); *Eastern Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203 (E.D.N.Y. 2003) (same).[14]  Plaintiffs have made such allegations here.

---

[14] Defendants rely on a single district court case construing a different statute to support its allegation that Plaintiffs' "diversion of resources" and "frustration of mission" are insufficient to establish standing under the FHA.  MD at 15: 17-16:3.  But that case, *Clark v. McDonald's Corp.*, 213 F.R.D. 198

18

1    **1.    <u>Plaintiffs' Allegations Related to Standing.</u>**

2        In the context of a motion to dismiss, the question of whether standing exists "can be answered

3    chiefly by comparing the allegations of the particular complaint to those made in prior standing cases."

4    *Allen v. Wright*, 468 U.S. 737, 751-52 (1984).  Plaintiffs' allegations mirror those made by the

5    organizational plaintiffs in *Havens* and *Pacific Properties*, who were each found to have standing in the

6    context of a motion to dismiss.

7        **a.    <u>Plaintiffs' General Standing Allegations</u>**

8        Plaintiffs have generally alleged that Defendants' conduct has frustrated their missions and

9    forced them to divert resources to identify and counteract Defendants' conduct:

10

11           Plaintiffs have been directly and substantially injured in that they have
             been frustrated in their missions to eradicate discrimination in housing,

12           and in carrying out the programs and services they provide, including
             encouraging integrated living patterns, educating the public about fair

13           housing rights and requirements, educating and working with industry
             groups on fair housing compliance, providing counseling services to

14           individuals and families looking for housing or affected by discriminatory
             housing practices and eliminating discriminatory housing practices. FAC

15           at ¶ 72.

16

17           The A.G. Spanos Defendants' continuing discriminatory practices have
             forced Plaintiffs to divert significant and scarce resources to identify,

18           investigate, and counteract the A.G. Spanos Defendants' discriminatory
             practices, and such practices have frustrated Plaintiffs' other efforts

19           against discrimination, causing each to suffer concrete and demonstrable
             injuries. FAC at ¶ 75.

20

21

22

23    (D.N.J. 2003) construed the Americans with Disabilities Act (hereinafter, "ADA") and not the FHA.  As
      the *Clark* opinion makes clear, the ADA provides no remedy to an organization for discrimination

24    "against others."  *Id.* at 209.  On the other hand, courts have long held that "aggrieved persons" under
      the FHA may seek a remedy if the were injured by discriminatory acts that were aimed at others. *See,*

25    *e.g., Gladstone Realtors v. Vill. Of Bellwood,* 441 U.S. 91, 103-04 n.9 (1979)(holding that "any person

26    harmed by discrimination, *whether or not the target of discrimination,* can sue and recover for his or her
      own injury").  Defendants ignore other Supreme Court and Ninth Circuit precedent directly on point,

27    which holds, consistent with every other Circuit in the country that an organization that alleges a
      "diversion of resources" and "frustration of mission" as a result of Defendants' conduct establishes

28    standing.

19

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Plaintiff's Consolidated Opposition to Spanos Defendants' Motions

Plaintiffs have also alleged that the frustration of their missions and the diversion of their resources will continue absent remediation of Defendants' conduct.

> Until remedied, the A.G. Spanos Defendants' unlawful, discriminatory actions will continue to injure Plaintiffs by:
>
> a.   Interfering with efforts and programs intended to bring about equality of opportunity in housing;
>
> b.   Requiring the commitment of scarce resources, including substantial staff time and funding, to investigate and counteract the A.G. Spanos Defendants' discriminatory conduct, thus diverting those resources from the Plaintiffs' other activities and services, such as education, outreach, and counseling; and
>
> c.   Frustrating Plaintiffs' missions and purposes of promoting the equal availability of housing to all persons without regard to any protected category, including disability.

FAC at ¶ 78.

These general allegations alone are sufficient to establish standing under the FHA. *See Havens*, 455 U.S. at 379; *Pacific Properties*, 358 F.3d at 1105; *Equal Rights Center v. Equity Residential*, 483 F. Supp. 2d 482 (D. Md. 2007). Plaintiffs, however, provide more detailed, specific allegations describing the frustration of their missions and diversion of their resources.

**2.    Specific Allegations Related to Each the Frustration of Each Plaintiff's Mission.**

As alleged in the Complaint, Plaintiffs in this matter share common missions of ensuring equal housing opportunity for all, including that housing is accessible to people with disabilities. *See* FAC ¶¶ 15-19. Plaintiff NFHA's "mission includes advocating for the rights of people with disabilities to accessible housing….One of NFHA's goals is the promotion of accessible housing…." FAC at ¶ 15 Plaintiff FHOM maintains a "mission of promoting equal housing opportunities, including…advocacy for accessible and affordable housing." FAC at ¶ 16. FHNV has a "mission promoting accessible housing, including education and outreach to home seekers and housing industry groups and assistance to victims of discrimination, investigation of fair housing violations and publication of materials concerning the housing rights of people with disabilities and others." FAC at ¶ 17. MFHS' "mission is

20

to promote social justice and eliminate housing and lending inequities for all people, including those with disabilities, through leadership, education and outreach, public policy advocacy and enforcement." FAC at ¶ 18.  FHC is "committed to equal housing opportunity and the elimination of discrimination in Florida [including] strategies to increase accessibility prior to construction…[and] increase fair housing rights knowledge to the disability community. FAC at ¶ 19

Plaintiffs' missions, therefore, are frustrated "[e] ach time the [Defendants] designed and constructed covered dwellings that did not comply with the FHA in one of Plaintiffs' service areas." FAC at ¶ 73.  This is because the construction of an inaccessible building "discourage[s] people with disabilities from living at that dwelling, and encourage[s] other entities involved in the design and construction of covered units to disregard their own responsibilities under the FHA," FAC at ¶ 73, in direct contravention of Plaintiffs' missions.

Plaintiffs' allegations regarding their missions and how they were frustrated by Defendants' pattern and practice of constructing inaccessible buildings parallel the allegations that have been found sufficient to establish standing by the Ninth Circuit.  In *Pacific Properties*, the plaintiff alleged that it was "organized with the principal purpose of helping to eliminate discrimination against individuals with disabilities by ensuring compliance with laws intended to provide access to housing, public buildings, transportation, goods and services.... Part and parcel to this effort is ensuring an adequate stock of accessible housing for those who are freed to leave the nursing homes." *Pacific Properties*, 358 F.3d at 1105.  As the Ninth Circuit reasoned, with such a mission, "[a]ny violation of the FHAA would therefore constitute a "frustration of [DRAC's] mission." *Id.* at 1105 citing *Fair Hous. of Marin*, 285 F.3d at 905.

These detailed allegations readily meet the requirement to allege that Defendants' conduct frustrated Plaintiffs' missions. *See Havens*, 455 U.S. at 379 (finding organizational standing where plaintiff's allegations related to defendant's frustration of their mission solely stated that "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services."); *Pacific Properties*, 358 F.3d at 1105; *Equal Rights Center*, 483 F. Supp. 2d 482, 487 (D. Md. 2007)

21

3.    **Specific Allegations Related to Plaintiffs' Diversion of Resources.**

The Ninth Circuit has also addressed the standard for an organization pleading diversion of resources in the context of a fair housing organization's challenge to the failure to construct an accessible multi-family building. In *Pacific Properties*, the plaintiff, DRAC, pleaded in its complaint that "in order to monitor the violations and educate the public regarding the discrimination at issue, DRAC has had (and, until the discrimination is corrected, will continue) to divert its scarce resources from other efforts to promote awareness of-and compliance with-federal and state accessibility laws and to benefit the disabled community in other ways (for example, DRAC's efforts to free disabled persons from nursing homes.) [.]" *Pacific Properties*, 358 F.3d at 1105. In reversing the District Court, which had dismissed the complaint, the Ninth Circuit stated "[b]earing in mind that DRAC's claim was dismissed without leave to amend, we believe these allegations are enough to constitute a showing of a "diversion of resources" and to survive a 12(b)(6) motion." *Id.* at 1105-6.[15]

Plaintiffs' allegations regarding their diversion of resources here are far more detailed and describe more substantial efforts and costs than that alleged in *Pacific Properties*. As detailed in the Complaint, "[e]ach Plaintiff conducted site visits, investigations, surveys or tests at the Tested Properties, resulting in the diversion of its resources in terms of staff time and salaries and travel and incidental expenses that it would not have had to expend were it not for the A.G. Spanos Defendants' violations." FAC at ¶ 75. In combination, the five Plaintiffs conducted site visits and investigations at 34 of Defendants' properties. FAC at ¶ 42 ("In 2006 and 2007, NFHA and the other Plaintiffs conducted site visits, investigations, surveys and tests at 34 of the Subject Properties in California, Nevada, Arizona, Texas, Kansas, Florida and Georgia."). These site visits and investigations required

---

[15] Defendants attempt to distinguish *Pacific Properties* on the grounds that the Ninth Circuit was considering the appeal of a grant of a motion to dismiss without leave to amend. The procedural posture, however, was not determinative. The Ninth Circuit was clear in its statement that DRAC's allegations, without the need for amendment, were sufficient to establish that the organization had diverted its resources and had standing. *Pacific Properties* at 1106. As simply stated by the Ninth Circuit in its conclusion, "DRAC has also made a sufficient showing to support its claim of organizational standing." *Id.* at 1107; *see also Id.* at 1106 (concluding that in addition to reversing the district court in regard to its finding that the organizational plaintiff has not shown it had standing, "[w]e *also* believe that the district court abused its discretion in denying DRAC leave to amend its complaint with regard to organizational standing prior to dismissal." (emphasis added.)

22

"Plaintiffs to divert resources, including funding and staff members' time, from other activities in order to conduct further investigation and testing of the A. G. Spanos Defendants' properties so as to ascertain the extent of FHA violations." FAC at ¶ 41.  Significantly, Plaintiffs' efforts revealed at least one FHA violation and, in most cases, multiple violations, at each of the properties Plaintiffs' and their staff investigated.  FAC at ¶ 45.

Plaintiffs' allegations related to their diversion of resources are not just far more detailed and specific than the allegations made by the fair housing organizations in *Pacific Properties,* but are more detailed than those alleged in *Havens* as well.  *See Havens*, 455 U.S. at 379 (finding standing where plaintiff's allegation related to diversion of resources stated only that "Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [*sic* ] racially discriminatory steering practices."); *Pacific Properties*, 358 F.3d at 1105-6; *Equal Rights Center*, 483 F. Supp. 2d at 487.

Finally, notwithstanding the foregoing, Defendants still argue that Plaintiffs' allegations are too general.  This contention is directly refuted by *Havens*, which held that more rudimentary allegations of injury than those made by Plaintiffs here were sufficient to establish standing at the pleading stage. *Havens*, 455 U.S. at 378-79.  The Supreme Court required no more specificity.  *See id.*  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation and internal quotation marks omitted).  Defendants' call at the pleading stage for a more detailed auditing of Plaintiffs' injuries, supported by evidence, is premature.  Plaintiffs need only *plead* injury now, not *prove* it.  There will be plenty of time at the summary judgment phase and thereafter to test the strength of Plaintiffs' proof of the matter alleged.

Plaintiffs have adequately pleaded injury to establish that they have organizational standing under *Havens* and its progeny.  Defendants' arguments to the contrary are unavailing.

**4.**     **Defendants' Responses to Plaintiffs' Standing Allegations Are Misplaced and Unpersuasive.**

     **a.**     **Plaintiffs' Allegations Clearly Establish that Defendants Caused Plaintiffs' Injury.**

Defendants argue that Plaintiffs' allegations of diversion of resources and frustration of mission cannot support standing because they were not caused by Defendants' discrimination.  MD at 21. Defendants, however, offer no case support for this argument.

As described in the allegations detailed above, Defendants' actions frustrated Plaintiffs' missions and Defendants' actions required Plaintiffs to divert their resources to identify and counteract Defendants' discrimination. Defendants' construction of at least 82 inaccessible multi-family apartment buildings, in contravention of the fair housing laws, limits the housing opportunities available to people with disabilities.  This directly frustrates Plaintiffs' missions, which include ensuring that people with disabilities have equal access to safe, affordable, and accessible housing.  In *Pacific Properties* there was no allegation that the plaintiff received any complaint about the noncompliant buildings; rather, it discovered the violations through its own audit of properties in its service area.  *Pacific Properties* 358 F.2d at 1099.

The fact that the Plaintiff organizations discovered the inaccessible buildings through the course of their advocacy and not from a complaint does not make their injuries "voluntary."  Defendants' suggestion that Plaintiffs' injuries are "self-inflicted" and therefore that Plaintiffs should not have standing to challenged Defendants' discrimination is contrary to core principles of the FHA and the forty-years precedent interpreting it.  *See, e.g.*, *Havens*, 455 U.S. at 380 (describing the "the broad remedial intent of Congress embodied in the Act.").  Congress explicitly recognized and supported the invaluable enforcement role of fair housing organizations in achieving compliance with the FHA. Housing and Cmty. Dev. Act of 1992, Pub. L. No. 102-550 § 905(a)(2), 106 Stat. 3672, 3868 (1992). The Supreme Court has also recognized that suits by "private attorneys general" like the Plaintiffs here, are the "main generating force" in vindicating the goals and policy of the FHA.  *See Trafficante*, 409 U.S. at 209, 211.

Plaintiffs spent significant time and resources to identify and counteract Defendants'
discrimination.  Plaintiffs need not demonstrate that they were literally "forced" to spend time and
resources responding to Defendants' discriminatory design and construction, but simply that, absent
Defendants' policy and practice of designing and constructing inaccessible multi-family apartment
buildings, Plaintiffs would not have had to spend that time and those resources.  *See, e.g., Pacific
Properties* 358 F.3d at 1105-6; *Fair Hous. of Marin,* 285 F.3d at 902-05; *Walker v. City of Lakewood*,
272 F.3d 1114, 1123-25 (9th Cir. 2001); *Riga,* 208 F.3d at 427 n.4; *National Fair Housing Alliance v.
Prudential Insurance Co. of America,* 208 F. Supp. 2d 46, 48, 52-54 (D.D.C. 2002). Plaintiffs'
allegations establish causation.

b.    **Organizational Standing Under the Fair Housing Act Does Not Turn on How
the Organization Became Aware of Defendants' Discrimination.**

Defendants suggest that an organizational plaintiff's diversion of resources and frustration of
mission cannot support standing unless the organization shows that it received some complaint from the
public about the alleged discrimination.  MD at 22.  As Defendants would have it, absent a complaint
from the public, any injury to Plaintiffs related to Defendants' discrimination was not caused by
Defendants, but was instead self-inflicted.   Defendants' argument has been explicitly rejected by the
courts.

As the Sixth Circuit described in *Fair Housing Council, Inc. v. Village of Old St. Andrews*,
"regardless of whether an organization learns of potential discrimination through independent
complaints or through its own observations, any action it takes in combating that discrimination is fairly
traceable to the defendant's discriminatory acts." 210 Fed. Appx. 469, 2006 WL 3724128 at *9 (6th Cir.
December 15, 2006) (finding that organization had standing to challenge the design and the construction
of inaccessible building where it discovered the violations through its own observations), citing *Cabrera
v. Jakabovitz,* 24 F.3d 372 (2d Cir. 1994) (finding that a housing organization had standing when the
organization, acting on its own initiative rather than in response to a specific complaint, sent testers to
investigate racial steering at certain New York City rental properties).

Similarly, in *Pacific Properties*, the Ninth Circuit found that the plaintiff organization had
standing to challenge the defendant's failure to construct an accessible building even though the

25

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Plaintiff's Consolidated Opposition to Spanos Defendants' Motions

organization became aware of the violations through a tester program organized and implemented by the organization.  There was no allegation that the plaintiff in *Pacific Properties* received any complaint about the noncompliant buildings; rather, it discovered the violations through its own audit of properties in its service area.  *Pacific Properties* 358 F.2d at 1099.

Like the *Pacific Properties* and *Village of St. Andrews* plaintiff organizations, the Plaintiffs here became aware of Defendants' non-compliant buildings "[i]n the course of their advocacy on behalf of people protected by the FHA…."  FAC at ¶ 40.  As the Ninth Circuit and the Sixth Circuit have made clear, this is no obstacle to organizational standing.

Plaintiffs are not seeking compensation for injuries they inflicted upon themselves; instead they seek to foster the FHA's goal "to end the unnecessary exclusion of persons with handicaps from the American mainstream."  H.R. Rep. No. 100-711, at 18 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2179.  Whether an organization becomes aware of the unnecessary exclusion of people with disabilities from its staff observing steps up to units of a newly constructed apartment building, *see Village of St. Andrews*, 210 Fed. Appx. 469, 2006 WL 3724128, from its staff auditing all the multi-family dwellings in their service area, *see Pacific Properties*, 358 F.3d at 1099, or from a complaint, the injury to their missions and their resources is caused by the same act:  the defendant's discrimination.

### c.   An Organizational Plaintiff Need Not Be A Person Within A Protected Class or Sue on Behalf of a Person Within A Protected Class to Have Standing Under the Fair Housing Act.

Defendants' arguments that the organizational Plaintiffs cannot have standing or be an aggrieved person under the FHA unless they are members of a protected class is contrary to the plain language of the statute and has been rejected by the Supreme Court and every Circuit considering organizational standing under the FHA.

Standing does not turn on a plaintiff's membership in a protected class, but instead, turns on whether a Plaintiff has suffered a cognizable injury.  As described above, the FHA permits any "aggrieved person" — defined as anyone who "claims to have been injured by a discriminatory housing practice" — to bring an action under the Act. 42 U.S.C. §§ 3602(i)(1), 3613(a)(1)(A).  The FHA defines "person" to include "corporations," "associations," and "unincorporated organizations."  42 U.S.C. § 3602(d).  The FHA thus provides for enforcement actions by organizations such as the Plaintiff

26

1    organizations, which are all non-profit corporations. *See Riga*, 208 F.3d at 427, *cert. denied*, 531 U.S.

2    1069 (2001) (finding that a fair housing organization was an "aggrieved person" under the Act).

3    The "aggrieved person" definition under the FHA confers standing as broadly as is permitted by

4    Article III of the Constitution and does not require the plaintiff to be within a protected class. *See, e.g.*,

5    *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103-04 n.9 (1979).  As a result, "any person

6    harmed by discrimination, *whether or not the target of the discrimination,* can sue to recover for his or

7    her own injury." *See Trafficante*, 409 U.S at 208.  "The Supreme Court has made clear what seems

8    evident from this language—that "an aggrieved person" does not necessarily have to be the person

9    discriminated against." *Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1282 n.6 (3d

10   Cir. 1993) (citations omitted).

11   Therefore, discriminatory conduct directed at racial minorities that indirectly injures whites can

12   violate the FHA. *See, e.g.*, *Gladstone,* 441 U.S. at 103 n.9.  Similarly, discriminatory conduct directed at

13   any protected class that indirectly injures a fair housing organization also violates the FHA. *See, e.g.*,

14   *Havens*, 455 U.S. at 379-80; *Pacific Properties*, 358 F.3d at 1105-6.  The numerous courts that have

15   upheld the standing of fair housing organizations under the FHA have never required that the

16   organization show that it is a member of a protected class. *Gladstone,* 441 U.S. at 103.

17   Defendants next argue that absent membership in a protected class, a plaintiff may only have

18   standing if it sues on behalf of members of a protected class.  Again, Defendants ignore the relevant

19   precedent.  As described by the Third Circuit, "[t]he section [of the FHA] that confers a right to

20   commence an action in federal court and 'to obtain appropriate relief,' § 3613(a)(1), does not restrict the

21   right to bring an action to persons 'associated with' a handicapped person, but rather allows anyone

22   sustaining an actual injury from an alleged discriminatory housing practice to commence a suit."

23   *Growth Horizons*, 983 F.2d at 1282 n.7.

24   Typically, an organization seeking to sue on behalf of members of a protected class, seeks

25   "associational" or "representational" standing."[16]  *See Pacific Properties*, 358 F.3d at 1104 (concluding

26

27   [16] An organization can establish associational standing when (1) its members would otherwise have
     standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose,

28   and (3) neither the claim asserted nor the relief requested requires the participation of individual
     members in the lawsuit. *Friends of the Earth,* 528 U.S. at 180-181.

27

that, in addition to organizational standing, the organizational plaintiff had representational standing based on injuries suffered by tester employed by organization to audit the accessibility of defendant's buildings).  Plaintiffs do not seek representational standing here; accordingly the question of whether they have brought suit on behalf of individuals who would have standing to sue in their own right is irrelevant.

Defendants finally appear to make a related argument that, absent a showing that some person with a disability was injured by Defendants' conduct, Plaintiffs cannot have standing to challenge the discrimination.  There is no basis for suggesting that a organization's frustration of mission and diversion of resources is only a cognizable injury if it can be shown that some person in a protected class was also injured by the challenged conduct.  In *Village of Old St. Andrews*, the Sixth Circuit did not require that there be an allegation that some person with a disability was injured by defendant's construction of an inaccessible building. 210 Fed. Appx. 469, 2006 WL 3724128.  Instead, it was sufficient for the organizational plaintiff to allege that its staff observed non-compliant steps, which frustrated their mission, and took actions to investigate and counteract the observed discrimination.  *Id.* There was no suggestion in *Village of Old St. Andrews* or in *Pacific Properties* that the organization would first have to prove that an individual was injured by the challenged discrimination.  Instead, the courts only required that the organizational Plaintiff prove that the defendant engaged in discriminatory conduct in violation of the FHA and that such conduct injured the plaintiff.

> ### d.    The Proximity of Plaintiffs' Offices to Defendants' Inaccessible Buildings Is Not Relevant to Any Standing Inquiry.

Defendants argue that Plaintiffs lack standing to pursue injunctive relief because some of the inaccessible buildings that Plaintiffs seek to require Defendants to remediate are far from Plaintiffs' offices.  There is no legal basis for Defendants' version of a "proximity" test in this context.  Again, the determinative question is injury, and in the context of injunctive relief, a substantial likelihood of future injury, including continuing frustration of Plaintiffs' mission and diversion of their resources for purposes other than this litigation.  FAC ¶ 78. Plaintiffs' missions encompass ensuring equal housing opportunity in their service areas.  FAC ¶¶ 15-19.  When the fair housing laws are violated in the Plaintiffs' service areas, their missions are harmed and any diversion of resources to identify and

28

counteract those violations is a concrete injury, thereby establishing standing.  The organizations are permitted to define their own service areas, and are certainly not limited to a circle extending only one hundred miles from their offices.  As described in *Pacific Properties*, the Disability Rights Action Committee ("DRAC"), a Utah non-profit corporation, had standing to challenge defendant's construction of multi-family dwellings in Clark County, Nevada.  *Pacific Properties*, 358 F.3d at 1097. This was because DRAC's mission was to "the rights of disabled persons in Utah and Nevada" and the construction of inaccessible buildings in that service area frustrated the organization's mission.  *Id.* at 1099, 1105.

A Maryland District Court reached an even broader conclusion when rejecting a defendant's attempt to defeat the standing of a Washington, D.C.-based fair housing organization challenging a builder's design and construction of inaccessible buildings throughout the country.  *Equal Rights Center* 483 F. Supp. 2d 482.  As the court stated, "the very fact that plaintiff undertook a nationwide investigation of defendants' violations is proof positive of plaintiff's concrete injury."  *Id.* at 487. Again, the fair housing organization was not limited to a constrained geographical area around its office. Instead, as a fair housing organization, the plaintiff was "an organization with a mission that is national in scope and breadth."  *Id.*; *see also, Moseke* 202 F. Supp. 2d 492 (upholding standing of Washington, D.C.-based fair housing organization's standing to challenge defendant's construction of inaccessible building in Virginia.)

As described in the complaint, Plaintiff NFHA is an organization with a national mission, "NFHA is a nationwide alliance of private, non-profit fair housing organizations."  FAC at ¶ 15.  As a result, all of the non-complaint properties at issue in this case were in NFHA's service area.  Further, as described in the Complaint, Defendants designed and constructed noncompliant buildings in each of the rest of the organizations' service areas.  FAC at ¶ 75.  As *Pacific Properties* makes clear, regardless of where the Plaintiffs' offices are located, Defendants' actions in violating the FHA in Plaintiffs' service areas frustrated their missions and forced them to divert their resources.  *Pacific Properties*, 358 F.3d at 1105-6; *see also, National Fair Housing Alliance*, 208 F. Supp. 2d at 49 (D.D.C. 2002) (finding standing for fair housing organizations, who "work to promote fair housing in their respective geographic areas

29

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Plaintiff's Consolidated Opposition to Spanos Defendants' Motions

across the United States," where defendants' discriminatory conduct occurred in those organization's service areas).

Defendants' citation to cases requiring individual plaintiffs to live or intend to live in the housing that is the subject of their fair housing challenge is misplaced here. Standing for these organizational Plaintiffs does not rest on an injury caused by the fact that the Plaintiffs cannot live in a particular dwelling, as was the case in the precedent cited by Defendants. Instead, as organizations, Plaintiffs' standing rests on the consequence of Defendants' design and construction of inaccessible buildings, which frustrate Plaintiffs' missions and forces them to divert their scarce resources. These injuries occur even though the organizations have no interest or ability to live in the subject properties. Of course, no court considering organizational standing under the FHA has ever required the organization to establish an interest in living in the subject building as a prerequisite for standing to sue under the Act. Defendants' assertion to the contrary has no basis in law or fact.

### 5.   **Defendants' "Aggrieved Person" Arguments Are Subject to the Same Analysis as Their Standing Arguments.**

Defendants repeat their standing arguments in support of their contention that Plaintiffs are not "aggrieved persons" under the FHA.[17] Defendants argue that whether Plaintiffs have standing and whether they are aggrieved persons under the FHA are distinct questions. Defendants are incorrect. Here, the allegations Plaintiffs make to establish standing necessarily establish that Plaintiffs are aggrieved persons under the FHA.

Defendants note the general proposition that the question of whether a plaintiff has stated a claim for relief is a separate question from whether the plaintiff has established standing. While this may be true in a general sense, here the questions are not distinct. As described above, to establish standing, an organizational Plaintiff must show: (1) injury in fact that is, (2) fairly traceable to the challenged conduct, and (3) that the injury will be redressed by a favorable decision. *Friends of the Earth*, 528 U.S. at 180-81. To be an "aggrieved person" under the FHA, a plaintiff must "claim[] to have been injured

---

[17] Defendants' "aggrieved persons" arguments appears in similar form repeatedly in Defendants' motions. *See* MD at 11-16; MS at 2-4, 8-11; Memo. In Support of Defendant Highpointe Village's Motion to Dismiss [Doc. No. 60] at 16-18.

30

by a discriminatory housing practice." 42 U.S.C. §§ 3602(i)(1), 3613(a)(1)(A).  Indeed, courts have established the FHA standing requirement by reference to the "aggrieved person" phrase in the Act. *See, e.g., Trafficante* 409 U.S. at 205.

Defendants' arguments in support of their proposition that Plaintiffs are not aggrieved persons are all based on the assertion that Plaintiffs have not suffered a cognizable injury. *See, e.g.,* MD at 11-16 (asserting that Plaintiffs are not "aggrieved persons" because they do not belong to a protected class and voluntarily incurred their damages).  Plaintiffs' standing arguments clearly establish that Plaintiffs' have adequately alleged injury in fact and that the injury was caused by Defendants' discriminatory construction of inaccessible buildings – a discriminatory housing practice under the Act. *See* 42 U.S.C. § 3604(f)(3)(C).

Accordingly, the injuries alleged in the FAC that establish that Plaintiffs have standing also establish that Plaintiffs are aggrieved persons under the FHA.  Defendants' recycled standing arguments are, therefore, equally unpersuasive in the context of arguing that Plaintiffs are not aggrieved persons.

## C.    PLAINTIFFS HAVE SOUGHT TO JOIN ALL PARTIES REQUIRED FOR FULL AND FAIR ADJUDICATION OF THIS CASE

The Spanos Defendants suggest that Plaintiffs must join the current owners of all 82 properties that are the subject of this litigation, as well as all current tenants and the secured lenders on each of the properties.  MDIP 5-9.  Plaintiffs agree that it is desirable to add current owners, and have proposed to do so as part of a defendant class action.  But, for the reasons outlined below, neither current tenants nor lenders need be joined, because the Court can fashion relief in this case so as to avoid any infringement of the rights of those parties.

Federal courts have routinely held that "[a] Rule 12(b) (7) motion will be granted only if the court determines that joinder of the party is not possible, and that the party is, in fact, 'indispensable.'" *Mintel Learning Technology v. Beijing Kaidi Education & Technology Development Co., Ltd.,* Slip Copy, 2007 WL 2288329, at *11 (N.D. Cal 2007) (citing *Shermoen v. United States,* 982 F.2d 1312, 1317 (9th Cir.1992)).  The procedure for considering whether to dismiss an action for failure to join a purportedly "indispensable" party, as established by Rule 19, was summarized by the court in *United States v. Bowen,* 172 F.3d 682 (9th Cir. 1999):

31

> First, the court must determine whether the absent party is "necessary." …If the absent party is "necessary," the court must determine whether joinder is "feasible." Finally, if joinder is not, the court must decide whether the absent party is "indispensable," *i.e.* whether in "equity and good conscience" the action can precede without the party.

*Id.* at 688 (citing Fed. R. Civ. P. 19).   A motion to dismiss for failure to join an indispensable party requires that the moving party bear the burden of proof. *Mintel Learning, supra* at 13.   The Spanos Defendants have failed to carry that burden.

### 1.   A Defendant Class Action Comprised of the Current Owners and the Class Representatives Selected by Plaintiffs Is a Permissible Means of Joining the Owners

Defendants seek to construct a Catch-22 with respect to the current owners.  Plaintiffs must, they assert, add current owners as "necessary" parties under Fed. R. Civ. P. 19(a), but allegedly cannot do so because this Court cannot achieve personal jurisdiction over current owners, and because the defendant class representatives named by Plaintiffs own properties that were constructed more than two years prior to the filing of the complaint herein.  Defendants are wrong with respect to both arguments.

In addition to the Spanos Defendants, who are responsible for the development, design and construction of these nonconforming dwelling units, the FAC pleads a class of current owner defendants, and Plaintiffs will move to certify that class after the Court disposes of the pending motions.  Plaintiffs and the Spanos Defendants agree that current owners are parties who should be joined if their joinder is feasible.[18]  Plaintiffs seek to join them as parties for injunctive relief only, *i.e.* that they allow the retrofits ordered by the Court to be made at their properties as well as inspection of that work to insure that it has been done in accord with the Court's order.[19]  *See Baltimore Neighborhoods, Inc. v. Rommell Builders, Inc.*, 40 F. Supp. 2d 700, 711-12 (D.Md.1999) (Court upheld joinder of an association of condominium owners who were joined by plaintiffs only to effectuate retrofit relief of the common areas of the complex.).  The Spanos Defendants argue, however, that the means chosen for bringing the

---

[18]  MDIP at 6.

[19]  FAC ¶40.D.   The Spanos Defendants would also join them for purposes of liability as well.

32

current owners into the case—a defendant class action—is not possible because: (1) all claims against the named, putative class representatives, Knickerbocker and Highpointe, are barred by the two year statute of limitations; and (2) Plaintiffs must allege that the court has personal jurisdiction over all members of the defendant class to maintain a class action, unless class members voluntarily agree to participate by not opting out of the class.  According to the Spanos Defendants, Plaintiffs cannot allege the personal jurisdiction of this court over the owners because they are located throughout the country and, therefore, as the owners are required parties but cannot be joined, the case should be dismissed under Rule 19(b).

Defendants also erroneously claim that Plaintiffs must allege that "this Court has personal jurisdiction over the absent class members."[20]  To the contrary, it is long established that:

> [A] class action may bind absent members of a plaintiff or defendant class with respect to the common issues, consistent with due process principles, if the class is adequately represented.  Personal jurisdiction is not required over all class members in order to reach a binding decision on the common issues involved when the class has been adequately represented.

2 NEWBERG ON CLASS ACTIONS ("Newberg") § 4:47 at 341 (Alba Conte & Herbert Newberg eds., 2002) (citing *Hansberry v Lee*, 311 U.S. 32, 61 S. Ct 115, 85 L. ED. 22, 132. 741 (1940)). *See also Califano v. Yamasaki*, 442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979) (upholding a plaintiff class certification of a national class of recipients of federal benefits, including members outside of California, under a federal law that did not provide for nationwide service). Nowhere in Rule 23(a) and (b) is there a requirement that a court have personal jurisdiction over all class members to maintain a class action, as Defendants assert.  Indeed, "[i]f personal jurisdiction over every member of a defendant class were required, the maintenance of defendant class actions would be virtually impossible." 2 Newberg § 4:52.

Later in their brief the Spanos Defendants argue that in the absence of personal jurisdiction over class members, notice and the opportunity to opt out must be provided.[21]  Again, Defendants are simply

---

[20] MDIP at 1-2.

[21] MDIP at 8-9

33

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Plaintiff's Consolidated Opposition to Spanos Defendants' Motions

wrong.   Rule 23 does not mandate opt out notice in all class actions; only where the class action is certified under Rule 23(b)(3) does Rule 23(c)(2) require notice with an opt out provision.[22]  On these preliminary motions, the Court need not resolve the question whether this is a (b)(1), (b)(2) or (b)(3) class action or what notice should be provided class members in a motion to dismiss.  This determination is  made at class certification. *See* Fed. R. Civ. P. 23 (c) ("Certification Order; Notice to Class Members; Judgment; Issue Classes; Subclasses").  Plaintiffs have shown that joinder of owners is possible, and, therefore, rejection of Defendants' motion to dismiss is warranted.[23]

---

[22] *See* Fed. R. Civ. P. 23 (c) (2)(B).  The Court <u>may</u> order notice in Rule 23(b)(1) and (b)(2) class actions but the notice and the form of that notice is discretionary with the court.  *See* Fed. R. Civ. P. 23 (c)(2)(A) ("the court may direct appropriate notice to the class") and Fed. R. Civ. P. 23(d)(1)(B) ("…the court may issue orders that…(B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members . . . .").

[23] Much of Defendants' argument is based on *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S. Ct 2965 (1985) where the Court upheld the constitutionality of a Kansas state class action provision as applied to absent plaintiff class members who were citizens of other states, in a class lawsuit wholly or predominantly for money judgment.  The Court held that where a proposed settlement seeks to bind plaintiffs who are not subject to personal jurisdiction of the forum court, due process required notice and the opportunity to exclude them from the lawsuit. *Id.* at 811-12.  The Court was careful, however, to distinguish its holding from the facts presented here saying:

> Our holding today is limited to those class actions … for money damages.
> We intimate no view concerning other types of class actions, such as those
> seeking equitable relief.  Nor, does our discussion of personal jurisdiction
> address class actions where jurisdiction is asserted against a *defendant*
> class  (emphasis in the original).

*Id.* at 813, fn. 3. Unlike *Phillips Petroleum*, Plaintiffs here do not seek money damages from the defendant class, but only injunctive relief—that they permit the retrofits to be made to their properties to bring them into compliance with the requirements of federal law, which applies to all properties, with four or more apartments, built for first occupancy after March 1991.  And, unlike *Phillips Petroleum*, this is a defendants' class action.  Defendants' citation to *Whitson v. Heilig -Meyers*, 1995 U.S. Dist. LEXUS 4312 (N.D. Ala 1995) and *National Association for Mental Health Inc. v. Califano*, 717 F.2d 1451, 1455 (D.C. Cir. 1983) do not support their assertion.  The passage from *Whitson* relied upon by Defendants is mere dicta, given that the case simply did not involve a defendant class action.  *Califano* is entirely distinguishable, as in that case the appeals court held that, unlike in the case at bar, the purported defendant class representatives did not have a sufficient financial or other stake in the litigation to meet the adequacy test.  That diversity case was also dismissed because of an insufficiency of the matter in controversy, a far cry from the significant liability faced by the Spanos Defendants herein.  The *Phillips*

34

Defendants' attempt to classify the current owner defendant class representatives (Knickerbocker and Highpointe) as "'inadequate' under Rule 23," MDIP 8:15-16, is just as unavailing as its attempt to eliminate certain older properties from the continuing violation alleged in the FAC. As outlined in Section IV.A., above, properties owned by Knickerbocker (Mountain Shadows in Rohnert Park, California and The Commons in Vacaville, California) and Highpointe (Highpointe Village in Overland Park, Kansas) are part of the pattern and practice of designing and building noncompliant apartment complexes; to the extent the Court rejects the Defendants' statute of limitations argument and keeps these properties in the case, both Knickerbocker and Highpointe are "adequate" defendant class representatives because they have a stake in the outcome—the retrofitting of FHA-noncompliant features in a fashion least disruptive of their ongoing rental operations.

Furthermore, though the Spanos Defendants claim that neither putative defendant class representative has a property within the two-year statute of limitations period, MDIP 8:15-16, they simultaneously ask the Court to take judicial notice of the fact that Highpointe owns a property that was not completed until September 26, 2005, RJN Exhibit 134A, clearly within two years prior to the filing of the complaint herein. In other words, Highpointe is an "adequate" class representative even without reference to the continuing violation doctrine.

Finally, the appropriate time for challenging the adequacy of the proposed defendant class is not while the Court is considering these preliminary motions, but on Plaintiff's motion for class certification, which will come before the Court shortly after it disposes of the pending motions.

**2.    Renters and Lenders Are Not Required Parties Under Rule 19(a). Nor Does Section 3613(d) of the FHA Make It Infeasible to Obtain Retrofit Relief In Their Absence Under Rule 19 (b)**

Defendants would have the Court believe that all 22,000 tenants must be joined in this litigation, and that the secured lenders for each property must also become party defendants. This assertion is based on the faulty premise that any retrofitting order the Court may impose on the Spanos Defendants

---

*Petroleum* holding is further distinguishable because it involved a state class action rather than a class action in Federal Court pursuant to Rule 23. *See Besinga v. United States,* 923 F.133, 136, fn 6 (9th Cir. 1991).

1  will necessarily infringe on current tenancies, and therefore lenders' security will be impaired.  MDIP 7.

2  The premise is faulty because, as previous federal courts have held, the remedy Plaintiffs seek can be

3  accomplished without inconveniencing current tenants or interrupting cash flow to the subject properties.

4          As countless federal courts have ordered, both in private FHA design and construction litigation

5  and in similar cases brought by the U.S. Department of Justice, retrofitting of noncompliant apartment

6  complexes is often the most appropriate remedy in a case such as this.  The precise contours of the

7  retrofitting that might be necessary in this case are yet to be determined, but could certainly include

8  widening of doors to permit sufficient room for wheelchair users to enter, reinstalling fixtures in

9  kitchens and bathrooms to make them accessible to and usable by people with disabilities, and

10  repositioning light switches and environmental controls so they are within the reach range of wheelchair

11  users.  FAC ¶ 46.  Additional retrofits may include redesigning parking lots to provide accessible

12  parking spaces and curb cuts for wheelchair users, reducing the opening pressure on doors to common

13  areas and building accessibility ramps to ensure that people with disabilities can use common features

14  like meeting rooms, recreational and entertainment facilities on the same basis as people without

15  disabilities.  FAC ¶ 47.

16          Any inconvenience to tenants can be minimized by carefully controlling when the retrofit work is

17  done, such as between tenancies, thereby disrupting no one.  Alternatively, when current tenants wish to

18  have their apartments immediately retrofitted, the work could be scheduled to take into account their

19  preferences and at their convenience, *e.g.* that the work be performed when they are at work or away on

20  vacation.  Many of the retrofits within the apartments themselves, such as replacing thresholds at doors

21  to allow wheelchair passage, or lowering the placement of environmental controls so that they are within

22  the reach range of a wheelchair user can be done with minimal inconvenience to the occupants. [24]

23

24

---

[24]   The Spanos Defendants provide no support to the contrary.  They cite *Schneider v. Whatley*, 417 F.
25   Supp. 750 (S.D. N.Y 1976).  In *Schneider*, the threatened property interest arose from the government's
   closing a day care program.  The parents of children in that program brought a class action arguing that
26   they had acquired an expectation that they would be able to send their children to the program, and that
   this expectation reached the level of a property interest, which should have been protected by due
27   process.  The court agreed, and it held the parents were entitled to notice and the opportunity to
   participate in the closure decision.  *Id.* at 754-56.  Defendants have made no showing here that tenants

28

36

1    Moreover, many of the needed modifications are to the common areas, which will not require that

2    apartment units be vacant in order to conduct the work.

3        Many federal courts that have dealt with similar FHA design and construction accessibility cases

4    have routinely fashioned remedial retrofitting orders to minimize or eliminate any infringement on

5    tenants by providing that structural work be done between tenancies, or at the convenience of sitting

6    tenants.  For instance, in *Rommel,* the court rejected arguments that retrofitting of common areas would

7    inconvenience condominium orders, and held that retrofitting is permissible as long as the least

8    restrictive remedies are employed whenever possible.  *Id.* at 712.  As Judge Black later noted in

9    *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F.Supp.2d. 456 (D. Md. 2000): "[w]hen fashioning a

10   remedy for a civil rights violation, courts will be guided by general principles of equity."  (Citing

11   *Millliken v. Bradley*, 433 U.S. 267, 279-80, 97 S. Ct. 2749, 53 L.Ed.2d 745 (1977)).  *Id.* at 468.   The

12   Department of Justice routinely prays for, and federal courts grant, such phased remedial orders to

13   minimize inconvenience to current tenants.[25]

14       With respect to secured lenders, Defendants have made no showing that lenders' interests would

15   be impaired by bringing properties into FHA compliance.  In fact, it is more likely that lenders' security

16   would be enhanced, as retrofits would be accomplished at the expense of the Spanos Defendants, and not

---

interest in continuing to occupy these apartments for the duration of their lease will be jeopardized by
the retrofit relief Plaintiffs seek.

[25] *See, e.g., United States v. ERGS, Inc., et al.* CV-N-02-0615 DWH (VPC) (D. Nev., consent order
entered July 13, 2005 (attached as Exhibit No. 4)).  That order requires accessibility improvements to the
apartment units to be done over four years with much of the work performed between tenancies, while
the units are vacant.  There are also detailed provisions to minimize the inconvenience to tenants.  *Id.* at
¶ II.  Notably, the Court there also kept the current owner of the complex in the case as a necessary party
to the retrofitting relief.  *See also United States v. Deer Run Management Company, Inc., et al.,* Civ.
No.04-CV-5252 (JLH) (W.D. Ark.), Consent Decree entered Nov. 24, 2004, at ¶¶ III.A. 11-20;   *United
States v. Makowsky Construction Company, et al.*, Civ. No. 01-2069 D/Pha  (W.D. Tenn.), Consent
Decree entered March 21, 2004, at ¶¶  24-27 and 39; *United States v. Bleakley, et al.*, Civ. No. 01-2226
JWL (D. Kan.), Consent Order entered January 6, 2003, at ¶¶ V. A and B.; *United States v. Canal Street
Apartments, et al.,* Civ. No. 01-115-S-BLW (D. Idaho), Consent Decree entered September 12, 2002 at
¶¶ II 1 and 2.  These consent decrees may be found at:
http://www.usdoj.gov/crt/housing/fairhousing/caseslist.htm#disability

1 at the expense of current owners whose properties are collateral for the loans. Taken to its logical

2 extreme, Defendants' insinuation that lenders should be joined would also mean that lenders would have

3 to be joined in any case brought under the FHA, inasmuch as a damages or injunctive remedy against an

4 owner might have the effect of diminishing cash flow or requiring owners to pay damages. Clearly,

5 federal courts should not require such an absurd result.

6        Despite Defendants' claim to the contrary, MD 16:23, lenders to the 82 current owners need not

7 be added as parties because there is no evidence that the Court's remedial retrofitting will "impair" any

8 security interest. Plaintiffs seek an order from the Court that would provide for cost-free improvements

9 to the subject properties, bringing them into line with the accessibility requirements of the FHA. This

10 will actually enhance the security of the loans, inasmuch as FHA compliance will foreclose future

11 litigation against the current owners, including litigation by the U.S. Department of Justice, which faces

12 no statute of limitations with respect to injunctive relief in design and construction cases, to bring the

13 properties into compliance. Surely, neither the Spanos Defendants nor current owners would be heard to

14 complain that other remedial measures to bring a property into compliance with local building, safety or

15 fire codes would impair the security of lenders. Insofar as Plaintiffs request, and the Court is likely to

16 enter, a remedial order that provides for retrofits between tenancies, there should be no disruption in

17 rental income cash flows (or, at the very least, none that could not be reimbursed by the Spanos

18 Defendants as part of any remedial order), and therefore no impairment of security. Finally, the illogic

19 of requiring that lenders be joined as parties can be seen when the Court considers the slippery slope

20 Defendants would seek. Conceivably any lawsuit brought against a current owner, for negligence or

21 discrimination or any other reason, could affect rental income cash flow. Surely, courts have routinely

22 proceeded with such claims between the real parties in interest without joining secured lenders.

23        Defendants also cite to 42 U.S.C. § 3613(d) as support for their argument that relief cannot be

24 accorded among the existing parties without the joinder of tenants and lenders.[26] Section 3613(d)

25 provides:

26 _____

27 [26] Defendants also make this claim with respect to the owners. Plaintiffs agree that current owners should be joined if feasible, although Plaintiffs do not agree that § 3613(d) requires their joinder for the reasons stated above.

28

> (d) Effects on certain sales encumbrances and rentals:
> Relief granted under this section shall not affect any contract, sale,
> encumbrance, or lease consummated before the granting of such relief and
> involving a bona fide purchaser, encumbrancer, or tenant, without actual
> notice of the filing of a complaint with the Secretary or civil action under
> this subchapter.

*Id.* Defendants argue that § 3613(d) would bar this court from ordering the retrofit relief sought by

Plaintiffs where such relief would affect leases or encumbrances entered into without knowledge of this

case being filed. Defendants submit that the only way to provide such notice is to require Plaintiffs to

join all current tenants and lenders as parties to this lawsuit. MDIP 5-7.

This analysis is wrong for two reasons. First, § 3613(d) only prohibits relief that would result in

voiding a sale or lease to a bona fide purchaser, which is not the case where a court orders retrofitting.[27]

The broad reading that Spanos urges upon this Court, which would bar any retrofits to remedy violations

of 42 U.S.C. § 3604(f)(3)(C) where bona fides don't have notice, was soundly rejected in *Rommel*.

There the defendant association of condominium owners similarly invoked § 3613(d ) arguing that it

---

[27] Section 3613(d) was a part of the FHA of 1968 and it was enacted to prevent the courts from evicting
tenants (usually white tenants) from apartments where the lease for the apartment was signed after a
prospective lessee (usually an African-American) had been denied the apartment because of his/her race.
This is evident from the legislative history of the FHA amendments proposed in 1980 to revise the
procedures for enforcing the FHA. Among the changes was to Section 814(d) of the FHA, enforcement
by the HUD Secretary, to impose the same limitation in the remedies that administrative law judges
could render as existed in the 1968 act with respect to the limitation on the remedy courts could impose
in an enforcement by a private person. The report read:

> As in court proceedings …the order of the administrative law judge may
> not interfere with the contractual rights of innocent, third parties—buyers
> or tenants or lien holders who execute contracts relative to the subject
> property prior to receiving notice of the charge filed under this title. …
> Consequently, where a bona fide purchaser, encumbrancer or tenant is
> present, *the remedial order normally may not require that possession of*
> *the subject property be transferred to the aggrieved person; other forms of*
> *relief to make the victim whole should be considered.*

96th Congress 2nd Session House of Representatives, Report No 96-865, Fair Housing
Amendments Act of 1980 at 21 (emphasis supplied) (attached as Exhibit No. 5).

39

prevented the court from ordering the retrofit of common areas of their complex because the relief would impinge upon their property rights. The *Rommel* court rejected this and said: "Section 3613(d) should be read narrowly allowing courts to order retrofitting relief to common areas while being mindful that the least intrusive remedies must be employed when possible." *Id.* at 712. In so holding, the *Rommel* court noted an analogous case, *Simovits v. Chanticleer Condominium Ass'n*, 933 F.Supp. 1394 (N.D. Ill. 1996), where the court ordered a condominium association to amend its bylaws to revoke an illegal age restrictive covenant prohibiting children from living in the building and to notify real estate firms in the area of this revocation. Although the injunctive relief affected the rights of the bona fide purchasers who bought their condominiums because they preferred a building without children, the *Simovits* court nevertheless granted this relief. *Id.* at 1408.[28]

Second, even accepting Spanos' broad interpretation of § 3613(d), it does not follow that tenants, lenders and owners must be made parties so that they are put on notice of the lawsuit. In *Equal Rights Center v. Post Properties, Inc.*, 522 F.Supp.2d 1, (D.D.C. 2007), the court rejected a similar claim by plaintiffs who sought a preliminary injunction preventing the sale of an alleged non-compliant property arguing that an injunction was necessary to prevent future purchasers, who did not have notice of the lawsuit, from refusing to comply with any future order of the court to retrofit the units on grounds of 3613(d). The Court said this was "wholly theoretical conjecture" and "unsupportable" because the

---

[28] Defendants primarily rely upon *dicta* in *H.I.P. v. K. Hovnanian at Mahwah VI, Inc.*, 291 N.J. Super. 144, 676 A.2d 1166 (N.J. Super.L, 1996), to support their claim that § 3613(d) would bar the retrofits of properties of bona fide purchasers who were without knowledge of the litigation. *H.I.P. v. K. Hovnanian* was an action to recover attorney fees and costs by a non-profit, following the settlement of a lawsuit the nonprofit brought against the developer of a 78 unit condominium complex and the town permitting official for FHA and ADA violations. At the time of the filing of the lawsuit, only 12 units of these condominiums had not been constructed and/or sold. In settlement, the developer agreed to modify these 12 units. Neither the individual owners of the constructed units or the owners' association were made a party to the lawsuit. 291 N.J. Super. at 155-56. The developer resisted fees and costs by arguing that the relief obtained was so insignificant as to deny the nonprofit the status of a "prevailing party." The court held otherwise. It said that, although the sold units were beyond the courts authority to remedy, citing § 3613(d), plaintiff had received a substantial portion of the remedy it intended; and this was sufficient to warrant finding that plaintiff was a prevailing party. *Id.* at 155-56. The court's reference to § 3613(d) is merely in passing. It is but a side explanation of the court's main concern, which was whether the retrofitting of twelve units was enough to make the nonprofit a prevailing party. This can hardly be considered a considered a reasoned decision whether § 3613(d) prohibits any remedy, which affects the property interest of bona fide purchasers.

40

1    "matter was public."  The court went on to say, " … most potential purchasers of Post properties will

2    have actual or at least constructive knowledge of this, and will be hard pressed to qualify for *bona fide*

3    purchaser status pursuant to § 3613(d)."  *Id.* at 4.

4          In short, the Spanos Defendants offer no support for their speculation that tenants will be "ousted

5    from their homes or deprived of the benefit of their leaseholds," MDIP 7, and that such massive

6    disruption will devalue the deeds of trust, which secure their loans to the current owners.  Clearly, then,

7    they are not required parties under Rule 19.  In the remedial phase of this litigation, the Court will have

8    the opportunity to determine whether the retrofits proposed are equitable; and, in so doing, the court may

9    take into account the interests of those who are not parties to the lawsuit.  *Id.* at 468-70. Hence, the relief

10   requested by Plaintiffs need not jeopardize the property interest of entities who are not now present in

11   this lawsuit, as to trigger due process concerns.

12

13   **D.      DEFENDANTS' MOTION TO STRIKE IS NEITHER AN AUTHORIZED NOR A
         PROPER WAY TO PROCURE DISMISSAL OF PART OF THE FIRST AMENDED
14       COMPLAINT**

15         Defendants recycle a number of substantive arguments from their other motions to peck away at

16   the FAC, asking that five of Plaintiffs claims be stricken from the FAC.[29]  Plaintiffs note that the Spanos

17   Defendants are using the wrong procedural means to challenge the sufficiency of the FAC.   This Court

18   has previously held that "Rule 12(f) 'is neither an authorized nor a proper way to procure the dismissal

19   of all or part of a complaint.'"  *Dion, LLC v. Infotek Wireless, Inc.,* 2007 WL 3231738 (N.D.Cal. Oct. 30,

20   2007), at *6 (internal citations omitted).

21         Plaintiffs would also remind Defendants that motions to strike "are generally 'disfavored'

22   because they are 'often used as delaying tactics," *id.,* and "because of the limited importance of

23   _____

24   [29] The Spanos Defendants seek to strike: (1) Plaintiffs' claim for damages (MS 2-4); (2) Plaintiffs' claim
     for punitive damages (MS 4); (3) Plaintiffs' claim for injunctive relief (MS 4-7); (4) Certain claims
25   alleged to be barred by the statute of limitations (MS 7-8); and (5) Plaintiffs' claims with respect to
     properties not yet tested or subject to discovery (MS 8-11).  For the reasons outlined below, these claims
26   are not properly the subject of a motion to strike; rather, they should be brought before the Court on a
     motion to dismiss.  Indeed, the very arguments offered in support of (1), (3), (4) and (5), above, are
27   borrowed from (and largely redundant of) Defendants' primary motion to dismiss filed concurrently with
     the motion to strike.  MD 11-23.

28

pleadings in federal practice." *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1479 (C.D. Cal. 1996)(quoting from Schwarzer, et al., *Federal Civil Procedure* § 9:375 (citing *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal. 1991)).

Furthermore, to prevail on any part of their motion to strike, the Spanos Defendants must establish that the complaint contains a "redundant, immaterial, impertinent, or scandalous matter...." Fed. R. Civ. P. 12(f).[30]     None of the five claims challenged by Defendants can be said to be "redundant" under a *Wilkerson* analysis.  The portions of the complaint challenged by Defendants merely outline the breadth of the FHA violations—at least 82 noncompliant apartment complexes comprising more than 22,000 units—and seek remedies that are explicitly provided by the FHA.  *See* 42 U.S.C. §3613(c).  As these matters have an "important relationship to the claim for relief," *Wilkerson,* 229 F.R.D. at 170, they cannot be described as "immaterial."  Each of the five claims is "relevant to the

---

[30] While Defendants pluck out a quotation from *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D.Cal. 2005), they fail altogether to mention that the reasoning of that case is substantially *contra* to the very substance of their motion to strike.  The *Wilkerson* court provided a thoughtful definition and analysis of each of the four terms referenced in Rule 12(f):

> A "redundant" matter consists of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied. An "immaterial" matter has no essential or important relationship to the claim for relief or defenses pleaded. A statement of unnecessary particulars in connection with and descriptive of a material matter may be stricken as "immaterial."  Superfluous historical allegations are properly subject to a motion to strike.

> An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties. An "impertinent" matter consists of statements that do not pertain and are unnecessary to the issues in question. A "scandalous" matter improperly casts a derogatory light on someone, usually a party. Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice.

*Id.* at 170 (internal citations omitted).  A close reading of that case in conjunction with the complaint herein suggests that none of the grounds for Defendants' motion to strike can support the relief they request of this Court.

issues involved in the action and ...could...be put in issue or given in evidence between the parties," *id.,* thereby removing them from the category of "impertinent" matters subject to a motion to strike. Finally, Defendants make no claim that any portion of the complaint is "scandalous."[31]

Because Defendants are unable to make a threshold showing that the relief they seek is even available under Rule 12(f), their motion to strike should be denied peremptorily. But in the event the Court should give the motion some credence, Plaintiffs respond as follows to each element of the motion.

### 1.  The Fair Housing Act Permits Plaintiffs to Recover Damages for Defendants' Violations of the Act's Design and Construction Accessibility Requirements

While not using the language or analysis familiar in a challenge to a party's standing, it is clear that Defendants' first target for their motion to dismiss is premised on standing. The memorandum asserts that Plaintiffs may not recover damages absent an allegation in the First Amended Complaint that "Plaintiffs belong to or sue on behalf of a 'class of persons' protected by the [FHA] and that a person who is a member of the protected class would have rented housing but for defendants' discriminatory housing practices." MS 2:20-23.

For reasons outlined in Section IV.B., above, Defendants are simply wrong in this assertion.[32] The FAC adequately pleads that Plaintiffs have had their respective missions frustrated by the Defendants' pattern and practice of building noncompliant housing, and have had to divert scarce resources from other efforts to promote awareness of—and compliance with—federal accessibility laws. FAC ¶¶ 72-75. While a motion to strike "may be used to strike any part of the prayer for relief when the

---

[31] Defendants' reliance on *Barnes v. Callaghan & Company,* 559 F.2d 1102 (7th Cir. 1977) is perplexing. This out-of-Circuit case involved appellate review of a jury verdict in a case involving slander and sex discrimination. The footnoted passage in *Barnes,* on which Defendants rely, is pure dictum, in that it is only a passing reference to the fact that the statute of limitations defense in that case had been raised in a motion to strike, but not determining that that procedural vehicle was appropriate. In any case, this passing reference in *Barnes* played no part in the holding in that case.

[32] Defendants cite, out of context, to cases involving people with disabilities or those who sought to provide housing for them. While not misstating the elements of a *prima facie* case in the context of an individual or housing provider, Defendant does make the mistake of concluding that Plaintiffs cannot otherwise state a claim for damages.

43

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Plaintiff's Consolidated Opposition to Spanos Defendants' Motions

damages sought are not recoverable as a matter of law," *Bureerong,* 922 F.Supp. at 1479, the language of the FHA makes it clear that Plaintiffs are entitled to recover actual damages pursuant, 42 U.S.C. §3613(c), and the FAC adequately pleads facts on which Defendants' liability can be grounded.

### 2. The Fair Housing Act Permits Plaintiffs to Recover Punitive Damages for Defendants' Violations of the Act's Design and Construction Accessibility Requirements

The Spanos Defendants, without reference to any Ninth Circuit case, contend that punitive damages are not available because "Plaintiffs herein do not claim to be disabled persons harmed by invasion of their federally protected rights." MS 4:12-13. Again, Defendants are just wrong. Punitive damages are available whenever it can been established that a defendant has engaged in a course of conduct involving callous and reckless disregard of the rights established under the FHA. *Smith v. Wade,* 461 U.S. 30 103.S.CT.1625 (1983); *Riga,* 208 F.3d 419; *United States v. Balistrieri,* 981 F.2d 916, 924 (7th Cir. 1992). On these preliminary motions, Plaintiffs have sufficiently pled that they are "aggrieved persons" under the FHA, FAC ¶ 85, that they have been harmed in concrete ways, FAC ¶¶ 73-75, and that the Spanos Defendants "acted with callous and reckless disregard for the rights of Plaintiffs and people with disabilities to accessible housing." FAC ¶ 77.

Courts routinely grant punitive damages under such circumstances. *Fountila v. Carter,* 571 F.2d 487, 491 (9th Cir. 1978).[33] As recently as 2002, the Ninth Circuit affirmed a punitive damages award[34] of $74,000 to a private fair housing enforcement organization in a race discrimination case under the FHA. *See Fair Hous. of Marin,* 285 F.3d at 902.

---

[33] *See also* Robert G. Schwemm, HOUSING DISCRIMINATION: LAW AND LITIGATION (Thompson West)(2007), § 25:10, at pp. 25-52 to 25-53 ("The defendant in the typical § 3613 case has had no prior contact with the plaintiff nor does he bear the plaintiff any personal animosity. Still, anyone who decides to discriminate … in the present day, even if that decision is made for economic or other nonpersonal reasons, would presumably know that his conduct violates the plaintiff's rights. This presumption would apply with particular force to those in the real estate business.")

[34] The district court awarded the plaintiff compensatory damages of $24,377 and punitive damages of $74,400, and adopted the magistrate judge's recommendation, made after a full hearing, of attorney's fees and costs in the amount of $508,606.78. The Ninth Circuit affirmed this entire award.

44

### 3.     The Complaint Adequately Pleads a Claim for Injunctive Relief

In their motion to strike, Defendants contend that Plaintiffs are not entitled to injunctive relief requiring Defendants to retrofit all noncompliant complexes because Plaintiffs have not (1) named the owners, renters and secured lenders of the 82 properties, and therefore have not stated a claim for injunctive relief, and (2) alleged that the Spanos Defendants actually denied, or could deny, a rental to anyone.  The first of these claims repeats the arguments (virtually verbatim) from another motion, MDIP 6-8, which Plaintiffs have already addressed in Section IV.C., above.  The second is based on a cramped and incomplete understanding of liability under the FHA.

It is entirely appropriate that the Court should order the Spanos Defendants to correct their violations of the FHA; after all, they are the ones that chose to design and construct as many as 82 apartment complexes in a fashion that makes them inaccessible to, and unusable by, people with disabilities.  FAC ¶¶ 46-71.  Plaintiffs seek complete relief from the Spanos Defendants, including the retrofitting necessary at each apartment complex and the payment of such sums to current owners as are necessary to hold them harmless against any costs associated with those retrofits. Prayer for Relief ¶¶ B-D.

Successfully retrofitting the noncompliant complexes will require the cooperation of current owners, whom Plaintiffs propose to add in the form of a defendant class.  FAC ¶¶ 30-37.  Although class certification has not been briefed and is not currently before the Court, Plaintiffs represent that such a vehicle will permit the Court to direct current owners to cooperate in the assessment and retrofitting of each property, thereby making manageable and achievable the retrofitting relief Plaintiffs seek.

Defendants confuse the question of whether the Court has authority under the FHA to enjoin Defendants to correct their noncompliant design and construction of 82 properties with the question of whether other parties might be required or indispensable in this litigation.  That other parties may need notice or must cooperate with any retrofitting injunction entered by the Court does not diminish the Court's ability to declare that the Spanos Defendants have violated the FHA design and construction provisions, and to provide an effective remedy for those violations.

As outlined above, current owners of the subject properties are adequately represented in this

lawsuit through the two defendant class representatives.[35]    Should the Spanos Defendants wish to challenge the adequacy of their representation or advocacy, Plaintiffs submit that the appropriate time to do that will be during the litigation on the defendant class certification motion, and not on a motion to strike or to dismiss.

As further outlined above, Defendant misread 42 U.S.C. §3613(d).  Rather than impairing the Court's ability to order full relief in this matter, § 3613(d) provides the framework through which an orderly retrofitting can be done.  *See, e.g., Rommel*, 40 F.Supp.2d at 711-12 (rejecting the argument made by Defendants in the case at bar in the context of condominium owners, who claimed their rights would be infringed by the retrofitting of the common areas of the condominium; court held that retrofitting is permissible as long as the least restrictive remedies are employed when possible).  *See also Baltimore Neighborhoods*, 92 F. Supp. 2d. at 468 ("[w]hen fashioning a remedy for a civil rights violation, courts will be guided by general principles of equity."  (Citing *Millliken v. Bradley*, 433 U.S. 267, 279-80, 97 S. Ct. 2749, 53 L.Ed.2d 745 (1977)).

For reasons outlined in Section IV.B., above, the Court should reject the Defendants' invitation to narrow FHA liability to circumstances in which they deny rental units to individual tenants.  Since 1991, Defendants have been obligated to design and build apartment complexes in compliance with the accessibility provisions of the FHA.  The fact that at least 34, and as many as 82, of the complexes for which Defendants are responsible have one or more features that render them inaccessible amounts, in and of itself, either to a denial of rental units to people with mobility impairments, or otherwise makes those units unavailable to people with mobility impairments within the meaning of 42 U.S.C. § 3604(f)(1).  The Spanos Defendants may not have said "no" directly to any individual tenant, but they have rendered thousands of units unavailable to people with disabilities.  That Congress specifically defined the failure to design and construct accessible housing as a form of discrimination for purposes of § 3601(f)(1) reinforces the fact that it did not intend to insulate the Spanos Defendants from liability for buildings after they had been sold to the current owners.

---

[35] Spanos Defendants suggest that Plaintiffs' claims against Knickerbocker and Highpointe are barred because all of the properties owned by these defendant class representatives were fully constructed more than two years prior to the filing of the initial complaint in this matter.  MS 5:22-23.

46

E. **DEFENDANTS' MISCELLANEOUS GROUNDS IN SUPPORT OF THEIR MOTIONS ARE INSUFFICIENT SUPPORT FOR THE RELIEF REQUESTED**

The Spanos Defendants allege that the FAC is "uncertain [about] the number of complexes sued on," MDS 6:18-19, and seek a more definite statement pursuant to Fed. R. Civ. P. 12(e). Plaintiffs have, at n. 1, *supra*, acknowledged their error in listing Constellation Ranch in Fort Worth, Texas and Orion at Roswell in Roswell, Georgia, and in mis-numbering the apartment complexes in the appendix to the FAC. Removing these from the purview of the FAC, however, still leaves 82 properties that are unquestionably pled into this case. Surely, this does not rise to the level of being "so vague and ambiguous that [Defendants] cannot reasonably prepare a response," Fed. R. Civ. P. 12(e), as suggested by Defendants. MDS 6-7. As modified by the foregoing, the FAC alleges violations of the FHA's design and construction requirements at 82 *known* properties, 34 of which were visited and/or tested by Plaintiffs. The FAC also alleges that Defendants may have committed FHA design and construction violations at other properties currently unknown to Plaintiffs, FAC ¶ 45, but likely to be identified in discovery. Plaintiffs submit that the foregoing amounts to all the relief to which Defendants are entitled on this point.

Defendants also recast their standing challenge as a matter subject to Rule 12(e). MDS 7-13. Rather than repeat their arguments on this issue here, Plaintiffs direct the Court to Section IV.B, *supra*, which contains an articulation of the grounds for their standing under the FHA.

## V. CONCLUSION

Wherefore, for the foregoing reasons, Plaintiffs pray that the Court deny (1) the Motion to Dismiss Plaintiff's First Amended Complaint or, Alternatively, for Partial Dismissal of Plaintiff's First Amended Complaint [Doc. 48; Memorandum, Doc. 48-3](hereinafter, "MD" or "Motion #1"); (2) the Motion for More Definite Statement [Doc. 50; Memorandum; Doc 50-2](hereinafter, "MDS" or "Motion #2"); (3) the Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to Join Necessary and/or Indispensable Parties [Doc. 49; Memorandum, Doc. 49-3](hereinafter, "MDNIP" or "Motion #3"); and

1    (4) the Motion to Strike Various Claims for Relief [Doc. 52; Memorandum, Doc. 52-2](hereinafter,

2    "MS" or "Motion #4").

3

4    Dated: February 19, 2008

5                                               Respectfully submitted,

6

7                                               __/s/ D. Scott Chang_____

8                                               Michael Allen
                                                Stephen M. Dane
9                                               John P. Relman
                                                Thomas J. Keary
10                                              Pending admission *pro hac vice*
                                                D. Scott Chang, #146403
11                                              Relman & Dane, PLLC
                                                1225 19th Street, NW, Suite 600
12                                              Washington, DC 20036
                                                Telephone: (202) 728-1888
13                                              Fax: (202) 728-0848

14                                              *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 19th day of February 2008, I filed the foregoing Memorandum of Points and Authorities In Support of Plaintiffs' Consolidated Opposition to the Spanos Defendants' Motions (1) to Dismiss Plaintiffs' First Amended Complaint, (2) For More Definite Statement re First Amended Complaint, (3) To Dismiss For Failure to Join Required and Indispensable Parties, and (4) To Strike Various Claims for Relief Sought in Plaintiffs First Amended Complaint with the Court's ECF system, which sent electronic notice to:

Stephen Walters
Makesha Patterson
Allen Matkins Leck,, Gamble, Mallory & Natsis, LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
swalters@allenmatkins.com
mpatterson@allenmatkins.com
*Attorneys for Defendant Knickerbocker Properties*

Thomas Keeling
Lee Roy Pierce Jr.
Freeman, D'Aiuto, Pierce, Gurev, Keeling & Wolf
1818 Grand Canal Boulevard
Stockton, California
tkeeling@freemanfirm.com
*Attorney for Defendants A.G. Spanos Construction, Inc.,*
*A.G. Spanos Development, Inc., A.G. Spanos Land Company, Inc.,*
*A.G. Spanos Management, Inc., and The Spanos Corporation*

Shirley Jackson
Steefel, Levitt, & Weiss, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
sjackson@steefel.com
*Attorney for Defendant Highpointe Village, L.P.*

_____/s/ Nicholas Cain_____
Nicholas Cain

49