# EXHIBIT 2



DISTRICT OF NEVADA
ENTERED & SERVED
MAR - 8 2004
CLERK, U.S. DISTRICT COURT
DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SILVER STATE FAIR HOUSING COUNCIL, Inc.,

Plaintiff,

v.

ERGS, Inc., SIERRA SAGE APARTMENTS, LLC, and JOHN MCCAMANT,

Defendants.

CV-N-02-0615-DWH (VPC)

**ORDER**

Before the court is defendant Sierra Sage Apartments' ("SSA") motion for summary judgment (#22). Plaintiff opposed (#23) and concurrently filed: (1) a declaration in support of its opposition (#24); (2) a declaration in support of its request for denial or continuance of summary judgment (#25); and (3) a separate statement of material facts also in support of its opposition (#26). Defendant SSA has replied (#28). Plaintiff also separately filed: (1) a motion to supplement the record in support of its opposition (#38), which defendant SSA has opposed (#44); (2) a first supplemental declaration in support of its request for denial or continuance of summary judgment (#61), to which defendant responded (#66); and (3) a first supplemental separate statement of material facts in support of its opposition to SSA's motion for summary judgment (#68).

Also before the court is defendant ERGS's motion for summary judgment (#32). Plaintiff has opposed (#39) and also has filed: (1) objections to evidence (#40); (2) a separate statement of



material facts (#41); and (3) a declaration in support of its request for denial or continuance of summary judgment (#42). Defendant ERGS has replied and has responded to plaintiff's evidentiary objections (#49/#50). Plaintiff also filed a first supplemental declaration in support of its request for denial or continuance of summary judgment (#62).

## I. Factual Background

Plaintiff, Silver State Fair Housing Council, Inc., brought this action on November 21, 2002, against defendants ERGS, Inc., Sierra Sage Apartments, LLC., and John McCamant for alleged violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. On February 7, 2003, plaintiff filed its first amended complaint (#11), alleging that defendants violated the FHA "by committing discriminatory housing practices in connection with the design, construction, and/or operation of the Silver Lake and Sierra Sage Apartment Complexes." (First Am. Compl. at 10.) Plaintiff seeks relief in the form of: (1) awards of compensatory and punitive damages; (2) a declaration that defendants have violated the FHA; (3) an injunction against all unlawful practices complained of, and an affirmative injunction requiring defendants, their partners, agents, employees, assignees and all persons acting in concert or participating with them, to provide equal housing opportunities to all renters and prospective renters without regard to disability; (4) an award of costs and reasonable attorney fees; and (5) all such other relief that this court deems just. (*Id.* at 10-11.)

Plaintiff, formerly known as Truckee Meadows Fair Housing, is a nonprofit Nevada corporation. (*Id.* at 3.) Its purposes include the promotion of equal opportunity in the renting of housing and the elimination of all form of illegal housing discrimination. (*Id.*) In its efforts to this end, plaintiff: (1) investigates allegations of discrimination; (2) conducts investigations of housing facilities to determine whether equal opportunity in housing is provided; (3) takes such steps as it deems necessary to assure equal opportunity and to counteract and eliminate discriminatory housing practices; (4) provides outreach and education in the community, including housing providers and consumers, regarding fair housing; and (5) monitors and trains housing providers that have previously engaged in discriminatory practices. (*Id.*)

Defendant SSA has been the owner of the Sierra Sage apartment complex ("Sierra Sage") since April of 2001. (*Id.*) Sierra Sage is a residential apartment complex located at 6060 Silver Lake

Road, Reno Nevada. (*Id.* at 2.) The complex consists of approximately twenty-six buildings, containing a total of 116 ground floor dwelling units. (*Id.*) Defendant ERGS was the developer of Sierra Sage, and owned it during its design and construction, from approximately 1989 until 2001. (*Id.* at 3.) In 1990, ERGS, began construction of the apartment complex, which continued through 1996. (*See id.* at 5.) On November 25, 1997, the City of Reno issued the final Certificate of Occupancy for Sierra Sage. (*See* Peek Decl., SSA's Mot. for Summ. J. (#22), Ex. B.) This marked the completion of the construction of the last phase of the apartment complex, and no further construction has occurred at Sierra Sage since November 25, 1997. (*Id.*) Defendant SSA is moving for summary judgment on the grounds that the statute of limitations has run, making plaintiff's claims against it untimely.

Defendant ERGS is the owner and developer of the Silver Lake Apartments ("Silver Lake"), a residential housing complex located at 7350 Silver Lake Road, Reno, Nevada. (First Am. Compl. (#11) at 2-3.) Silver Lake is currently still under construction, but upon its completion, will consist of 344 dwelling units. (*See* Peek Decl., ERGS's Mot. for Summ. J. (#32), Ex. B.) Construction of Silver Lake was divided into five phases. (*Id.*) Phases I-III, comprising 240 units, have already been completed. (*Id.*) Phase IV, which consists of 40 units, is still being constructed, while phase V, consisting of an additional 64 units, is anticipated to be completed by the Fall of 2005. (*Id.*) According to defendant ERGS, there are currently ten handicap accessible units at Silver Lake. (ERGS's Mot. for Summ. J. (#32) at 3.) It claims that of the 48 ground floor units still to be constructed, 36 will be handicap accessible, bringing the total to no less than 46 handicap accessible units upon the completion of the project. (*Id.*) According to defendant, this would bring Silver Lake into compliance with the FHA. (*Id.*) ERGS moves for summary judgment on the grounds that the matter is not yet ripe for adjudication because whether it is in compliance with the FHA cannot be determined until after Silver Lake has been fully constructed. (*See generally id.*)

The matter is now before the court for decision. Such additional facts as are necessary to a ruling on these motions are set forth, as needed, in the discussion below.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Insurance Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

**B. Defendant SSA and the Statute of Limitations**

Defendant SSA has moved for summary judgment on grounds that the statute of limitations has run and that plaintiff's claims against it are therefore untimely. (*See generally* SSA's Mot. for Summ. J. (#22).) The parties agree that plaintiff's claims are governed by 42 U.S.C. § 3613(a)(1)(A) of the Fair Housing Act ("FHA"), which provides that a plaintiff must file suit within two years after "the occurrence or the termination of an alleged discriminatory housing practice." (Pl.'s Opp'n (#23) at 5.) Defendant argues that the two-year statute of limitations began to run upon the completion of the Sierra Sage apartments in November of 1997. (SSA's Mot. for Summ. J. (#22) at 2.) Because plaintiff did not bring this action until November 21, 2002, SSA requests dismissal of all claims against it with prejudice as untimely. (*Id.*) Plaintiff provides four alternative grounds supporting its contention that this action is in fact timely: (1) the continuing violation doctrine; (2) the discovery rule; (3) equitable tolling; and (4) the fact that defendant has an ongoing duty to comply with the FHA. (Pl.'s Opp'n (#23) at 5-7.) For the reasons set forth below, this court finds that the statute of limitations has run on plaintiff's claims against SSA.

**1. Applicability of the Continuing Violation Doctrine**

"Under the continuing violation doctrine, a plaintiff's complaint will not be time-barred if the defendant's related wrongful acts continue into the statute of limitations time frame. As a consequence, the statute of limitations only begins to run . . . upon the last act in a series of related wrongful acts." *Moeseke v. Miller and Smith*, 202 F. Supp. 2d 492, 500 n.10 (E.D.Va. 2002) (internal citation omitted). The Ninth Circuit, however, has not yet addressed whether this doctrine is applicable in design and construction cases brought pursuant to the FHA. The courts that have addressed this issue have come to differing conclusions. While those cases holding the continuing violation doctrine inapplicable in the FHA design and construction context are instructive, *see e.g., Moseke v. Miller and Smith*, 202 F. Supp. 2d 492 (E.D.Va. 2002); *U.S. v. Taigen & Sons, Inc.*, No. CV01-337-N-EJL, 2003 WL 23272449 (D. Idaho Sept. 29, 2003), this court reaches a slightly different conclusion, albeit with the same result as applied in this case.

As stated above, a plaintiff must bring suit within two years after the "the occurrence or termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). In *Moseke v.*

*Miller and Smith*, 202 F. Supp. 2d 492 (E.D.Va. 2002), a case very similar to the one at bar, the court determined that the plain language of the statute "indicates that an act, whether one in a series of many, or a single discrete occurrence, is necessary within the limitations period or the claim falls outside of the statute of limitations." *Id.* at 503. This court agrees, but finds the statutory language to be wholly consistent with the application of the continuing violation doctrine to FHA claims. The legislative history, referring to the similar language in § 3610(a)(1)(A)(I), strengthens this conclusion in that it reveals that the word "termination" was intended to "reaffirm the concept of continuing violations, under which the statute of limitations is measured from the last occurrence of the unlawful practice." H.R.Rep. No. 711, 100th Cong., 2d Sess. 22 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2194. Furthermore, the Supreme Court has recognized the applicability of the continuing violations doctrine to actions brought pursuant to the FHA. In *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982), the Court stated that "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely filed." *Id.* at 380-81.

However, under both the plain language of the §3613(a)(1)(A) and the continuing violation doctrine, an "act" within the limitations period is required in order to make timely claims taking place outside the period. *See Moseke*, 202 F. Supp. 2d at 503. Accordingly, the court must first determine what discriminatory "act" is actually at issue here. *See Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 250 F. Supp. 2d 706, 718 (W.D. Ky. 2003). Regardless of plaintiff's attempt to cast his claim in the light of a pattern and practice of design and construction failures, so as to fall under *Havens*, the "acts" of discrimination at issue are the failure to design and construct covered housing in compliance with the FHA. *See* 42 U.S.C. § 3604(f)(3)(C). (*See also generally* First Am. Compl. (#11).) Because there must be an act within the limitations period, the court next must decide when the last "act" of discrimination occurred. *See Fair Housing Council*, 250 F. Supp. 2d at 718-719. It must first be noted that the Ninth Circuit, among others, has held that only continuing unlawful acts, and not merely continuing ill effects from an original violation, constitute a continuing violation. *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981). Furthermore,

several courts analyzing FHA design and construction failure cases have come to the conclusion that the mere existence of a non-compliant building is not an act, but rather is a continuing effect. *See e.g., Fair Housing Council*, 250 F. Supp. 2d at 719 ("The mere existence of a non-compliant building . . . is not an act."; *Moseke,* 202 F. Supp. 2d at 507 ("a FHA non-compliant building . . . is more akin to a continuing effect rather than a continuing violation under the FHA."); *U.S. v. Taigen & Sons, Inc.*, No. CV01-337-N-EJL, 2003 WL 23272449 (D. Idaho Sept. 29, 2003) ("[T]he Court is of the view *Moseke* is persuasive as the alleged 'failure to design and construct' in compliance with the Fair Housing Act has a continuing *effect* rather than constituting a continuing *violation* of the Act.). This court finds those cases to be persuasive. Accordingly, the last discriminatory act took place on the date design and construction was completed. If Sierra Sage is not currently in compliance with the FHA, that is not a continuing violation, but rather the continuing effect of the violations which ended with the completion of construction.

This does not end the inquiry, however, because plaintiff here contends that the Sierra Sage complex, which was completed in November of 1997, and the Silver Lake complex, which is still under construction, should be treated as a single entity for purposes of applying the continuing violation doctrine, because "*people*, not *properties*, commit discriminating housing practices." (Pl.'s Opp'n (#23) at 9.) Although plaintiff cites *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 & n. 4 (1982), in support, *Havens* cannot be interpreted as standing for this proposition. In *Havens*, the Supreme Court applied the continuing violation doctrine where plaintiffs challenged an unlawful housing practice—racial steering—that continued into the limitations period. *Id.* at 381. The defendant realty company owned two adjoining apartment complexes, one of which, according to the complaint, was predominantly white, while the other was integrated. *Id.* at 368 n.4. Plaintiff, an African-American man, brought a racial discrimination suit against the realty company and one of its employees after falsely being told that there was no availability in the predominantly white complex, but that he could rent an apartment in the integrated complex. *Id.* at 368 & n.4. However, the mere fact that two properties were involved in *Havens* cannot be so stretched as to stand for the proposition that where the same builder designed and constructed multiple properties those properties should later be treated as one single entity.

Because this court was presented with no legal authority for treating the two properties as part of a single entity, it declines to so do. Accordingly, only those acts of discrimination in design and construction of Sierra Sage are relevant to whether plaintiff's claim against SSA is timely. Under *Moseke* and *Taigen*, the completion of the design and construction of the Sierra Sage complex triggers the statute of limitations. *Moseke*, 202 F. Supp. 2d at 507; *Taigen*, 2003 WL 23272449 at * 13 (design and construction found complete as of date final certificate of occupancy issued). Here, defendant SSA has submitted the final Certificate of Occupancy, which was issued by the City of Reno on November 25, 1997, as evidence of the date on which design and construction was completed. Plaintiff has alleged no acts of design or construction at the SSA complex taking place after this date and within the two-year limitations period. Unlike *Moseke* and *Taigen*, this court concludes that the continuing violation doctrine is applicable in the FHA design and construction context so long as some ongoing act of design and construction is performed within the limitations period. *See Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 250 F. Supp. 2d 706, 719 & n.11 (W.D. Ky. 2003) (Stating that, "it is not that the continuing violation doctrine does not apply at all in design and construction cases as Defendants argue, or that the statute of limitations never begins to run so long as the offending buildings remain non-complaint as Plaintiffs argue."). However, because plaintiff here failed to allege any act of design and construction taking place within two years of when this action was filed, the continuing violation doctrine cannot operate to make plaintiff's claims against SSA timely.

**2. Applicability of the Discovery Rule**

The discovery rule permits a plaintiff to raise a claim outside the statutory time frame upon his discovery of defendant's wrongful act. *Moseke v. Miller and Smith*, 202 F. Supp. 2d 492, 500 n.10 (E.D.Va. 2002) (citing *U.S. v. Kubrick*, 444 U.S. 111, 113 (1979). The *Moseke* court determined that application of the discovery rule would be wholly inconsistent with the language of § 3613(a)(1)(A), which "unambiguously states that the 'occurrence' of the discriminatory act will trigger the statute of limitations." 202 F. Supp 2d at 509. The District of Idaho, in another recent case, interpreted a different section of the FHA containing "occurrence" language as not permitting incorporation of the discovery rule. *U.S. v. Hallmark Homes, Inc.*, No. CV01-432-N-EJL, 2003 WL

23219807 at * 2 (D. Idaho Sept. 29, 2003) (citing to *Moseke* for support).

Plaintiff argues that the discovery rule should apply, despite the plain language of § 3613(a)(1)(A) because: (1) federal courts routinely apply it to statutes using "occurrence" language; (2) it is consistent with the Ninth Circuit's general rule that the limitations period begins to run when the plaintiff knows or should reasonably know of the injury; and (3) not applying it would eviscerate the FHA's new construction requirements. (Pl.'s Opp'n (#23) at 12-17.) This court, however, finds none of these arguments to be persuasive and declines to apply the discovery rule to plaintiff's claim against defendant SSA.

Although plaintiff cites to several cases applying the discovery rule to other statutes which use "occurrence" language, not one of these authorities is from the Ninth Circuit. Moreover, while plaintiff does cite to the Ninth Circuit for the proposition that the general federal rule is that the limitations period begins to run when plaintiff knows or reasonably should know of the injury (*id.* at 15 (citing *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1266 (9th Cir. 1998))), the Supreme Court has called this proposition into doubt. In *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001), a case interpreting the Fair Credit Reporting Act's statute of limitations, the Court observed that lower federal courts "generally apply a discovery accrual rule when a statute is silent on the issue," but declined to adopt that position. It further stated that "[t]he Ninth Circuit erred in holding that a generally applied discovery rule [controlled]" in that case, because the text and structure of the applicable limitations statute "evince[d] Congress' intent to preclude judicial implication of a discovery rule." *Id.* at 27-28. In finding the discovery rule inapplicable, the Court relied on the fact that "Congress implicitly excluded a general discovery rule by explicitly including a more limited one." *Id.* at 28. While there is no explicit exception included in the statute at hand, *TRW* is still instructive. This court declines to apply the discovery rule because it would be inconsistent with the plain language of § 3613(a)(1)(A), which provides that the statute of limitations is triggered by the later of either the occurrence of a discriminatory act or the termination of a discriminatory practice. *See Moseke v. Miller and Smith*, 202 F. Supp. 2d 492, 509 (E.D.Va. 2002); *U.S. v. Hallmark Homes, Inc.*, No. CV01-432-N-EJL, 2003 WL 23219807 at * 2 (D. Idaho Sept. 29, 2003).

Plaintiff's contention that not applying the discovery rule would eviscerate the FHA's new construction requirements, because it would prevent most individuals from obtaining any relief whatsoever, is simply unfounded. In general, a plaintiff would have two years from the time a building is constructed to bring a claim under the design and construction statutory provision, 42 U.S.C. § 3604(f)(3)(C). However, if after this time period has expired, a plaintiff, for example, seeks a reasonable accommodation, which is refused, that would give rise to a reasonable accommodation claim under 42 U.S.C. § 3604(f)(3)(B). Not applying the discovery rule may preclude an untimely design and construction claim, but it does not preclude claims under other provisions of the FHA, or for that matter, subsequent design and construction failures taking place more than two years after the initial design and construction was completed.

This court finds that application of the discovery rule would be inconsistent with the language of § 3613(a)(1)(A). Moreover, plaintiff's arguments for the application of the rule in spite of this inconsistency are unpersuasive. Accordingly, the court declines to apply the discovery rule to make timely plaintiff's otherwise untimely claims against defendant SSA.

**3. Equitable Tolling**

Equitable tolling applies to excuse a claimant's failure to comply with time limitations where he had neither actual nor constructive notice of the filing period. *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997). It focuses on whether there was excusable delay by the plaintiff. *See Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *See Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). Application of the doctrine of equitable tolling is within the court's discretion where the plaintiff has acted with all due diligence. However, equitable doctrines "are to be applied sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Moreover, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts

out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984).

Without deciding whether plaintiff acted with all due diligence in this case, the court notes that because plaintiff claims to monitor the issuance of building permits and to contact parties who receive such permits regarding FHA requirements (*see* Pl.'s Opp'n (#23) at 3), it is at least possible that plaintiff could have learned both of the completion of the Sierra Sage complex and of its alleged design and construction failures within the statutory period. That having been said, it is because the doctrine of equitable tolling is to be applied sparingly, and because procedural requirements established by Congress are not to be disregarded lightly, that this court declines to apply the doctrine. Accordingly, plaintiff's untimely claim against SSA will not be made timely on this basis either.

**4. Existence of an Ongoing Duty[1]**

Plaintiff's final contention is based on the proposition that the FHA imposes an ongoing and affirmative duty to make covered units accessible. (Pl.'s Opp'n (#23) at 19.) In support, plaintiff relies on a Ninth Circuit case, which, analyzing the Americans with Disabilities Act ("ADA"), determined that the lack of accessibility at issue remains actionable "[a]s long as the discriminatory conditions continue." *Pickering v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002). However, plaintiff's contention to the contrary notwithstanding, the language at issue in the ADA is distinctly different from the language at issue in the FHA. Under 42 U.S.C. § 12182(a)(iv) of the ADA, discrimination includes "a failure to remove architectural barriers." This certainly involves an ongoing duty because so long as the barrier exists, there is a duty to remove it. Section 3604(f)(3)(C) of the FHA, on the other hand, defines discrimination, as "a failure to design and construct [covered] dwellings in such a manner" as to make them accessible. The act of designing and constructing is finite. This language imposes no ongoing duty. In fact, it underscores the proposition that once covered dwellings have been non-compliantly designed and constructed, the

---

[1]While the court believes this argument to be related to the argument made under the continuing violation doctrine section, because plaintiff has presented them separately they will be addressed separately. However, the conclusions set forth in the continuing violation section of this order, *supra* Sec. II.B.1., are herewith incorporated by reference and should be kept in mind.

violation has taken place and the plaintiff has a remedy. *See U.S. v. Taigen & Sons, Inc.*, No. CV01-337-N-EJL, 2003 WL 23272449 at n.6 (D. Idaho Sept. 29, 2003) (distinguishing *Pickering* on the same grounds in finding that the continuing violation doctrine does not apply to FHA design and construction cases).

In further support of its ongoing duty argument, plaintiff relies on the Department of Housing and Urban Development's ("HUD") interpretation of the FHA in its Design Manual.[2] The relevant provision states that "[w]ith respect to the design and construction requirements, complaints could be filed at any time that the building continues to be in noncompliance, because the discriminatory housing practice—failure to design and construct the building in compliance—does not terminate." (Pl.'s Opp'n (#23) at 21; *see also* Evan's Decl., Ex. 15 at 22 (#24).) While HUD's reasonable interpretations of the FHA ordinarily are entitled to deference, *id.* at 287-288, "it is not required that the Court give deference to HUD's guidance in its Design Manual to the same extent that it would an express regulation." *Taigen*, 2003 WL 23272449 at *11 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984) (recognizing that "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute")). Because the court is not required to give deference to language in HUD's guidance manual, and because doing so would contravene the plain meaning of the statutory text, it finds that § 3604(f)(3)(C) does not impose upon defendant an affirmative and ongoing duty. The act of failing to design and construct in compliance with the FHA in this case was a violation that ended when the construction was completed, and, not as plaintiff contends, a repeated and ongoing violation. Accordingly, this also cannot be a basis for making timely plaintiff's untimely claim against defendant SSA.

**5. Fed. R. Civ. P. 19(a)**

To the extent plaintiff is arguing that, regardless of whether the statute of limitations has run on its claims against defendant SSA, SSA should be required to remain in the suit because it is an indispensable party under Fed. R. Civ. P. 19(a), plaintiff misconstrues the intended application of the

---

[2]HUD is the federal agency primarily charged with the implementation and administration of the FHA. *Meyer v. Holley*, 537 U.S. 280, 287 (2003).

rule. Rule 19(a) involves the joinder of a necessary party to a lawsuit. Its intended use is by a party seeking to join an action where complete relief would not otherwise be possible, or to dismiss an action where a necessary party cannot be joined. Plaintiff cites to no authority for the use of Rule 19(a) as means of compelling a party to remain in an action where the party's motion for summary judgment has been granted.

Because all of plaintiff's grounds for extending or tolling the statute of limitations have been rejected by this court, summary judgment in favor of defendant SSA is granted. Plaintiff's motion to supplement the record in support of its opposition (#38) is denied as moot. Moreover, plaintiff's motion under Fed. R. Civ. P. 56(f) for denial or continuance of summary judgment until further discovery can be completed (#25) also is denied as moot, as is plaintiff's first supplemental declaration in support thereof (#61). The discovery already concluded establishes that plaintiff's claims against SSA are untimely and there is nothing that could be achieved through further discovery to cure this defect.

**C. Defendant ERGS and the Ripeness Doctrine**

"Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III" of the Constitution. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "[R]ipeness is peculiarly a question of timing." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974). "[I]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). "In addition, 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration' must inform any analysis of ripeness." *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 581 (1985) (quoting *id.*, at 149).

Plaintiff here has sufficiently alleged a genuine issue of material fact as to the current existence of FHA violations at the Silver Lake apartment complex. Defendant's contention that the matter is not ripe for adjudication because HUD's site analysis test cannot be applied until the entire complex has been completed, misconstrues both the test itself and its applicability.

The FHA defines discrimination as including a failure to design and construct multifamily

dwellings in such a manner that—

> (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
> (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
> (iii) all premises within such dwellings contain the following features of adaptive design:
> (I) an accessible route into and through the dwelling;
> (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
> (III) reinforcements in bathroom walls to allow later installation of grab bars; and
> (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C). Under HUD regulations implementing the FHA, a developer can exempt an otherwise covered dwelling unit from the above accessibility requirements if making the dwelling unit accessible would be "impractical . . . because of terrain or unusual characteristics of the site." 24 C.F.R. § 100.205(a). The burden of establishing the applicability of this exception, commonly referred to as "site impracticability," "is on the person or persons who designed or constructed the housing facility." *Id.* HUD's guidelines set forth two tests by which a developer can establish site impracticability, *see* 56 Fed. Reg. 9499-9515 (1999), either of which may be used when, as in this case, the property in question involves more than one building. *Id.* at Fed. Reg. 9503.

Defendant has elected to rely on the "site analysis test," which provides that impracticability can be established by the following steps:

> (A) The percentage of the total buildable area of the undisturbed site with a natural grade less than 10% slope shall be calculated. The analysis of the existing slope (before grading) shall be done on a topographic survey with two foot (2') contour intervals with slope determination made between each successive interval. The accuracy of the slope analysis shall be certified by a professional licensed engineer, landscape architect, architect or surveyor.
> (B) To determine the practicality of providing accessibility to planned multifamily dwellings based on the topography of the existing natural terrain, the minimum percentage of ground floor units to be made accessible should equal the percentage of the total buildable area (not including floodplains, wetlands, or other restricted use areas) of the undisturbed site that has an existing natural grade of less than 10% slope.
> (C) In addition to the percentage established in paragraph (B), all ground floor units in a building, or ground floor units served by a particular entrance, shall be made accessible if the entrance to the units is on an accessible route, defined as a walkway with a slope between the planned entrance and a pedestrian or vehicular arrival point that is no greater than 8.33%

*Id.* at Fed. Reg. 9504. Defendant's argument is based entirely on the proposition that in order to determine the number of non-exempt units under this test, the entire complex must first be completed. This contention, however, either ignores or misunderstands the language of section (C) above. Section (C) can clearly be established, at least partially, without the complex having been completed, because it calls for a determination"[i]n addition to"—in other words, separate and on top of—the calculations made under sections (A) and (B). It already can be determined whether the ground floor units currently in existence have entrances, or are in buildings with entrances, on accessible routes. Those that do are not exempted by site impracticability and must meet the FHA accessability requirements. According to plaintiff's expert, at least 22 of the ground floor units already built qualify as non-exempt under (C). (Pl.'s Opp'n (#39) at Ex. 3.) Because defendant ERGS has conceded that of the ground floor units currently in existence, only ten are handicap accessible (Def.'s Opp'n (#32) at 3), there is at least a genuine issue of material fact as to whether there has been an FHA design and construction violation.

Moreover, 42 U.S.C. § 3613(c)(1) provides that "if the court finds that a discriminatory housing practice has occurred or is about to occur, the court . . . may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." Accordingly, defendant ERGS's argument that the action should be dismissed without prejudice because federal law does not favor "engaging in piecemeal litigation" (Def.'s Reply (#49) at 6), is inapposite. This court has the power, under the statute, to enjoin "the defendant from engaging in such practice or ordering such affirmative action as may be appropriate." 42 U.S.C. § 3613(c)(1). If plaintiff establishes that defendant has violated the FHA or is about to violate the FHA, this court can grant complete relief.

///

///

///

///

///

Case 3:02-cv-00615-LRH-VPC Document 72-2630472 Filed 03/05/2004 Page 16 of 16

Defendant ERGS's motion for summary judgment (#32) is therefore denied. As such, plaintiff's: (1) objections to evidence (#40); (2) declaration in support of its request for denial or continuance of summary judgment (#42); and (3) first supplemental declaration in support of its request for denial or continuance of summary judgment (#62), need not be considered.

## III. Conclusion

Accordingly, **IT IS ORDERED** that defendant SSA's motion (#22) be **GRANTED.** Plaintiff's motions relating to defendant SSA's summary judgment motion (#s 25, 38, and 61) are all DENIED as moot.

**IT IS FURTHER ORDERED** that defendant ERGS's motion (#32) be **DENIED.** Plaintiff's motions relating to defendant ERGS's summary judgment motion (#s 40, 42, and 62) also are all DENIED as moot.

DATED: This 5TH day of March, 2004.

UNITED STATES DISTRICT JUDGE