# EXHIBIT 4

1  Christopher Brancart (CA Bar No. 128475)
   Elizabeth Brancart (CA Bar No. 122092)
2  Brancart and Brancart
   Post Office Box 686
3  Pescadero, California 94060
   650-879-0141/650-879-1103 - fax
4
   Ian Silverberg
5  96 Winter Street
   Reno, NV 89503
6  775-322-7422/775-322-2303 - fax

7  Attorneys for Plaintiff Silver State Fair Housing Council

8  Bradley J. Schlozman
     Acting Assistant Attorney General
9  Steven H. Rosenbaum
     Chief
10 Keisha Dawn Bell
     Deputy Chief
11 Susan Buckingham Reilly (DC Bar No. 273011)
   Carl A. Anderson (DC Bar No. 492304)
12   Trial Attorneys
   Housing and Civil Enforcement Section - NWB
13 Civil Rights Division
   United States Department of Justice
14 950 Pennsylvania Ave, N.W.
   Washington, D.C. 20530
15 202-307-2230/202-514-1116 - fax

16 Daniel G. Bogden
     United States Attorney
17 Greg Addington
     Assistant U.S. Attorney
18 100 W. Liberty Street, Suite 600
   Reno, NV 89501
19 775-784-5438/775-784-5181 - fax

20 Attorneys for Plaintiff United States

U.S. DISTRICT COURT
DISTRICT OF NEVADA
FILED

JUL 1 2 2005

CLERK, U.S. DISTRICT COURT

BY_____ DEPUTY

21              UNITED STATES DISTRICT COURT
                    DISTRICT OF NEVADA
22
   SILVER STATE FAIR HOUSING COUNCIL,      )
23                                          )
              and                           )   C.A. No. CV-N-02-0615-DWH (VPC)
24                                          )        (base file)
   UNITED STATES OF AMERICA,                )
25                                          )     ~consolidated with~
                    Plaintiff,              )
26                                          )   C.A. No. CV-N-04-0237-DWH (VPC)
              v.                            )   (Formerly CV-N-04-0237-HDM (RAM))
27 ERGS, INC., et al.                       )
                                            )      **CONSENT DECREE**
28                  Defendants.             )
   _____ )

# I. INTRODUCTION

**A. Background**

1. Plaintiffs Silver State Fair Housing Council and United States of America (plaintiffs) and defendants ERGS, Inc.; Sierra Sage Apartments, LLC; John McCamant; and CFA, Inc. (defendants) agree to the terms of this Consent Decree resolving the litigation brought by the Silver State Fair Housing Council (SSFHC) in case number CV-N-02-0615-DWH (VPC) and by the United States in case number CV-N-04-0237-HDM (RAM).

2. On February 7, 2003, SSFHC filed its First Amended Complaint in case number CV-N-02-0615 alleging violations of the federal Fair Housing Act. Specifically, SSFHC alleged that defendants ERGS, Inc.; John McCamant; and Sierra Sage Apartments, LLC, have engaged in a pattern or practice of discrimination against persons with disabilities by committing discriminatory housing practices in connection with the design, construction, and/or operation of the Sierra Sage Apartments and the Silver Lake Apartments (together "the subject properties") in Reno, Nevada.[1]

3. On May 24, 2004, the United States filed its Amended Complaint in case number CV-N-04-0237 alleging violations of Sections 804(f)(1), (f)(2), and (f)(3)(C) of the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1)), (f)(2) and (f)(3)(C) and Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 (ADA). Specifically, the United States' Amended Complaint alleges that defendants ERGS, Inc. and John McCamant have violated the Fair Housing Act by having engaged in a pattern or practice of discrimination and denied rights to a group of persons because of disability raising an issue of general public importance by failing to design and construct the subject properties with the features of accessible and adaptable design set forth in 42 U.S.C. § 3604(f)(3)(C).[2] The United States further alleges that defendant CFA, Inc., has engaged in a

---

[1] SSFHC's claims against Sierra Sage Apartments, LLC were dismissed on March 5, 2004.

[2] The United States brought its claims under the Fair Housing Act alleging a pattern or practice of discrimination and a denial of rights to a group of persons pursuant to the Attorney General's authority under 42 U.S.C. § 3614(a). In addition to those claims under the Act, the
(continued...)

pattern or practice of discrimination in violation of the Fair Housing Act and similarly denied rights to a group of persons on the basis of disability through its failure to design and construct the Silver Lake Apartments with the features of accessible and adaptable design set forth in 42 U.S.C. § 3604(f)(3)(C). The United States alleges that ERGS, Inc. also violated Title III of the ADA by failing to design and construct those portions of the Silver Lake Apartments which are places of public accommodation so as to be readily accessible to and usable by individuals with disabilities as required by 42 U.S.C. §12183(a)(1) and the implementing regulations issued by the Department of Justice, 28 C.F.R. Part 36, including the Standards for Accessible Design, 28 C.F.R. Part 36, Appendix A (the Standards). Finally, the United States' Amended Complaint names Sierra Sage Apartments, LLC, in this action solely as a necessary party for relief based on its status as the current owner of the Sierra Sage Apartments.

4. On July 29, 2004, the cases brought by the SSFHC and the United States were consolidated.

5. The subject properties are apartment complexes located in Washoe County, Nevada. Sierra Sage is a two-story, walk-up apartment community containing one-, two-, and three-bedroom apartments and consisting of 28 residential buildings with a total of 114 ground-floor dwelling units. With the exception of units in certain buildings, the ground-floor units at Sierra Sage were designed and constructed for first occupancy after March 13, 1991.[3] The last

---

[2](...continued)
United States brought claims pursuant to 42 U.S.C. § 3612(o) on behalf of SSFHC following a determination of reasonable cause and the issuance of a charge of discrimination by the Department of Housing and Urban Development (HUD) on a complaint of discrimination filed with HUD by the SSFHC against ERGS, Inc.; John McCamant; and CFA, Inc. as to Silver Lake Apartments and the election of the SSFHC to have the charge resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

[3] The parties agree that buildings 1 - 3 were designed and constructed for first occupancy prior to March 13, 1991, and agree that buildings 8 - 28 were designed and constructed for first occupancy after March 13, 1991. For purposes of this Decree only, buildings 4 - 7 shall be considered as though they were designed and constructed for first occupancy before March 13, 1991. As set forth elsewhere in this Decree, defendants are obligated to undertake retrofits in 80 individual units at Sierra Sage in addition to delineated retrofits of the common areas at that

(continued...)

certificate of occupancy for Sierra Sage was issued in November 1997. Silver Lake is a two story, walk-up apartment community with single story units on each floor. Construction of the Silver Lake Apartments was completed on August 11, 2004, when the last certificate of occupancy was issued. Silver Lake contains 172 ground-floor dwelling units and common and public use facilities including a leasing office and common use building. Each ground floor unit at Silver Lake was designed and constructed for first occupancy after March 13, 1991.

**B. Defendants**

6. Defendant ERGS, Inc., a Nevada corporation with its principal place of business in Reno, Nevada, is the developer, owner, and operator of Silver Lake Apartments and is the developer and original owner of Sierra Sage Apartments.

7. Defendant John McCamant, an architect doing business in Nevada, provided architectural services for both Silver Lake and Sierra Sage.

8. Defendant CFA, Inc., a Nevada corporation with its principal place of business in Reno, Nevada, provided civil engineering services for Silver Lake Apartments.

9. Defendant Sierra Sage Apartments, LLC, a Nevada limited liability company with its registered office in Reno, Nevada, is the current owner of Sierra Sage Apartments.

**C. Relevant Requirements of the Fair Housing Act and Americans with Disabilities Act**

10. The Fair Housing Act provides that all ground-floor units, in non-elevator buildings (with four or more units) designed and constructed for first occupancy after March 13, 1991, are "covered units" and must include certain basic features of accessible and adaptable design to make such units usable by a person who is or who becomes disabled. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B). The features of accessible and adaptable design required by the Act include: (a) public and common use areas that are readily accessible to and usable by persons with disabilities; (b) doors for passage into and within all premises that are sufficiently wide to allow

_____

[3](...continued)
complex. Because of certain unique physical characteristics of the site, defendants shall be permitted to undertake retrofits in units located in buildings 1 - 7, in lieu of retrofitting units in buildings 8 - 28, in achieving the total number of retrofits in 80 units at the complex.

passage by persons using wheelchairs; (c) an accessible route into and through the dwelling; (d) light switches, electrical outlets, thermostats, and environmental controls in accessible locations; (e) reinforcements in bathroom walls to allow later installation of grab bars; and (f) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(C).

11.  The ground-floor apartments in buildings 8 through 28 at Sierra Sage and the ground-floor apartments at Silver Lake are "covered multifamily dwellings" within the meaning of the Act, 42 U.S.C. § 3604(f)(7)(B).  As such, those units and the public and common use areas at the subject properties must comply with the design and construction requirements of 42 U.S.C. § 3604(f)(3)(C) unless otherwise exempted.  In addition, the leasing office of Silver Lake is a "place of public accommodation" within the meaning of Section 301(7)(E) of the ADA, 42 U.S.C. § 12181(7)(E) and is required to be readily accessible to and usable by individuals with disabilities.  *See* 42 U.S.C. §12183(a)(1) and the implementing regulations issued by the Department of Justice, 28 C.F.R. Part 36, including the Standards for Accessible Design, 28 C.F.R. Part 36, Appendix A.

**D.  Consent of the Parties to Entry of this Decree**

12.  The parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 3612(o), 3613, 3614(a) and 12188(b)(1)(B) .  During the course of the proceedings, defendants raised various defenses to portions of the above claims and deny all material allegations in the complaint.  The parties negotiated a settlement such that the controversy will be resolved without further proceedings and without an evidentiary hearing.  Accordingly, the parties have jointly consented to the entry of this Consent Decree as indicated by the signatures appearing below.

Therefore, it is hereby ORDERED, ADJUDGED and DECREED:

## II.  GENERAL INJUNCTION

13.  Defendants ERGS, Inc.; John McCamant, and CFA, Inc., their officers, employees, agents, successors and assigns and all other persons in active concert or participation with any of them are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604(f)(1)-(3).

14.  Defendant ERGS, Inc. is hereby enjoined from discriminating on the basis of disability, as prohibited by Title III of the ADA, 42 U.S.C. § 12183(a)(1), and as set forth in the implementing regulations of the Department of Justice set forth at 28 C.F.R. Part 36, including the Standards for Accessible Design, 28 C.F.R. Part 36, Appendix A.

## III.  MODIFICATIONS/RETROFITS

### A.  Access to Subject Properties

#### 1.  Sierra Sage Apartments

15.  ERGS, Inc. and Sierra Sage Apartments, LLC shall allow such access to the common and public use areas and the individual dwelling units at the Sierra Sage Apartments to ensure that any retrofits required under this Decree to bring the complex into compliance with the accessibility provisions of the Fair Housing Act can be made in the manner and pursuant to the timetable set forth in this Decree.

#### 2.  Silver Lake Apartments

16.  ERGS, Inc. shall allow such access to the common and public use areas and the individual dwelling units at the Silver Lake Apartments to ensure that any retrofits required under this Decree to bring the complex into compliance with the accessibility provisions of the Fair Housing Act and the ADA can be made in the manner and pursuant to the timetable set forth in this Decree.

### B.  Retrofits

17.  Defendants ERGS, Inc.; John McCamant; and CFA, Inc., recognize that certain features of the ground-floor apartments and public and common use areas of the subject properties do not meet the design and construction requirements of the Fair Housing Act and, as to Silver Lake, the ADA.  To address these deficiencies, defendants ERGS, Inc.; John

McCamant; and CFA, Inc.[4] shall undertake the following corrective actions with respect to the public and common use areas and the covered ground-floor units at the subject properties.[5]

      1. **Public and Common Use Areas**

        a. Within sixty (60) days of the entry of this Decree, defendants shall provide written notice to all residents of Sierra Sage Apartments and Silver Lake Apartments that the modifications specified at Appendices A (1) and (2), respectively, will be performed to the public and common use areas at the subject properties. Such notice shall conform with Appendices C(1) and (2).

        b. Within 90 (ninety) days from the date of entry of this Decree, defendants shall commence the modifications to the public and common use areas of the subject properties as specified in Appendices A(1) and (2). These modifications shall be completed within eighteen (18) months thereafter.

      2. **Dwelling Units**

18. Appendices B(1) and (2) set forth the retrofits of the interiors of the covered units at Sierra Sage and Silver Lake Apartments that defendants must undertake at specified ground floor units at the subject properties. The defendants shall pay all expenses associated with these

---

[4] Defendant CFA, Inc.'s obligations under this Section (Section III – "Modifications/ Retrofits") are limited to retrofits to the public and common use areas of Silver Lake Apartments. Defendant CFA, Inc. shall satisfy its obligations under Section III as well as its obligation to contribute to the fund for aggrieved persons established under Section VIII, infra, by paying to ERGS, Inc., the sum of $100,000. Defendant CFA shall make such payment within the latter of thirty (30) days of the entry of this Decree or execution of a Settlement Agreement and Release by CFA, ERGS, and the Silver State Fair Housing Council. Upon making such payment, CFA shall have no further liability or responsibility to retrofit the Silver Lake Apartments to comply with the Fair Housing Act or the ADA, shall have no further liability or responsibility for Fair Housing Act or ADA compliance at the Silver Lake Apartments to any party to this litigation, and shall have no further responsibility to comply with any other provisions of the Consent Decree other than as set forth in Paragraphs 13, 25, 26, 27, 30, 31, 32, and Sections XI - XIII.

[5] The parties estimate that the total cost of the retrofits required by this Decree in Appendices A - B will be $1,675,000. This amount is an estimate by the parties, who acknowledge that the amount does not represent either a minimum or maximum amount the defendants will expend to perform all the retrofits and the actual costs may be either greater or less than that estimate.

retrofits and shall attempt, in good faith, to minimize any inconvenience to the residents of the subject properties. Defendants may not charge any additional rent, deposit or other fee for the units in which retrofits are implemented because of the contemplated or completed retrofits. All of the retrofits to be undertaken at the units specified in Appendices B(1) and (2) must be completed within four-and-one-half (4 ½ ) years after entry of this Decree, and pursuant to the following terms:

  a. **Current Tenants**. Within thirty (30) days of the entry of this Decree, defendants shall distribute to each tenant who resides in a covered ground-floor dwelling at the subject properties with a notice, informing the tenants (1) of the allegations in this lawsuit and that to settle this lawsuit the defendants have agreed to retrofit certain features of their apartments to make them more accessible; (2) the retrofits will be provided on request but will in any event take place within four-and-one-half (4 ½ ) years from the entry of the Consent Decree; (3) the retrofits will be offered at no cost to the tenant; and (4) scheduling of the retrofits will take into account the preferences and convenience of the tenant and that relocation costs, if any, will be provided in advance. This notice shall be substantially equivalent to Appendices D(1) and (2). Defendants shall certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution. If the management of the subject properties receives a request to perform the retrofits from a current tenant of a ground-floor unit in response to that notice, defendants shall: (1) inform the tenant that the retrofits will be performed within thirty (30) days of the date of the request; and (2) complete the retrofits within fifteen (15) days from the date on which the retrofit construction begins, subject to the provisions of paragraph 47.

  b. **Retrofits in Vacated Units**. For each ground-floor unit that is vacated during the term of this Decree, defendants shall complete the retrofits within thirty (30) days from the date on which the tenant who is residing in the

unit as of the date of this Consent Decree vacates such unit or before a new tenant moves into such unit, whichever date is earlier. For each ground-floor unit that is vacant as of the date of entry of this Decree, defendants shall complete the retrofits within sixty (60) days of entry of this Decree, or before a new tenant moves into such unit, whichever date is earlier.

c. **Occupied Units in which the Tenant Does Not Request A Retrofit.** For all occupied units in which the tenant does not specifically request retrofits, retrofits shall be completed within four-and-one-half (4 ½ ) years after the entry of this Decree.

d. **Minimum Number of Retrofits Per Year.** These retrofits are to be completed at an annual rate of no less than one-fifth (1/5) of the total covered units to be retrofitted at each subject property until all retrofits of the individual units are completed.[6] Within thirty (30) days of the date of entry of this Decree, defendants shall provide the United States with a proposed schedule for completion of the retrofits.

e. **Minimizing Inconvenience to Tenants.** Defendants shall endeavor to minimize inconvenience to the tenants in scheduling and performing the retrofits to ground-floor units. In the event a resident of a unit scheduled to undergo a modification incurs undue inconvenience or hardship (defined as a dislocation from the unit for more than 24 hours consecutively), the defendants will pay such resident the applicable government per diem rate for food and lodging for the local area for each day of undue inconvenience or hardship. Such payment shall be made prior to the commencement of any retrofit work on the

---

[6]Appendices B(1) and (2) list the specific 80 units at Sierra Sage Apartments and 90 units at Silver Lake Apartments that are to be retrofitted. Defendants are required to retrofit a minimum of 1/5 of the total number of units subject to be retrofitted each year at each complex. Should defendants complete retrofits in more than the required minimum number of units in any given year, such additional units may be applied towards meeting a subsequent year's requirements. For instance, if 20 retrofits are completed at Sierra Sage Apartments in the first year of the Decree – 4 more than the required 16 – defendants would only have to complete retrofits in 12 units the following year to meet the requirements of this provision.

resident's unit, so that the resident can use the money to obtain alternative living accommodations while dislocated.

C. **Neutral Inspector**

19. Defendants shall enter into a contract with a neutral inspector approved by the United States (hereinafter "Inspector") to conduct on-site inspections of the retrofits that have been performed under this Decree to determine if the retrofits have been completed in accord with the specifications in Appendices A(1) and (2) and B(1) and (2). Such inspector shall have expertise in the design and construction requirements of the Fair Housing Act and the ADA and its implementing regulations.

20. The inspection of the public and common use areas shall take place within thirty (30) days of the completion of all of the retrofits to common use areas specified in Appendices A(1) and (2). An initial inspection of the retrofits to the interiors of the units specified in Appendices B(1) and (2) shall take place no later than thirty (30) days after the completion of retrofits to the interiors of at least one unit of each unit-type to be retrofitted at Sierra Sage and Silver Lake. An additional inspection of the retrofits to the interiors of the units specified in Appendices B(1) and (2) shall be undertaken with thirty (30) days of the completion of all the retrofits to those units. Defendants shall give the United States at least three weeks notice of the inspections and shall give the United States and the SSFHC an opportunity to have its representative present for the inspection. Nothing in this paragraph precludes defendants from undertaking additional inspections to ascertain compliance with the terms of this Decree.

21. The Inspector shall set out the results of each inspection, including deficits, if any, in writing, and shall send that report by mail and by fax to counsel for the United States,[7] the SSFHC, and defendants. If the inspection indicates that the required retrofits have been made as specified in Appendices A(1) and (2) and B (1) and (2), defendants shall correct any deficiencies within a reasonable period of time as determined by the Inspector, and shall pay for another

_____

[7]For purposes of this Decree, all submissions to the United States or its counsel should be submitted to: Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, Attn: DJ# 175-46-112 , or as otherwise directed by the United States.

inspection by the same Inspector to certify that the deficiencies have been corrected. This process shall continue until the Inspector certifies that all of the necessary modifications have been made.

22. Defendants shall pay all fees and costs associated with these inspections, and such payments shall be made without regard to the Inspector's findings. Upon reasonable notice to defendants, representatives of the United States and/or the SSFHC shall be permitted to inspect the modifications made by defendants in accordance with this Consent Decree to ensure compliance.

### D. Sale or Transfer of an Ownership Interest in the Subject Properties

23. The sale or transfer of ownership, in whole or in part, of the subject properties shall not affect defendants' continuing obligations to retrofit the properties as specified in this Consent Decree. Should defendants decide to sell or transfer any ownership, in whole or in part, or any portion thereof, prior to the completion of the required retrofits as specified in Appendices A(1) and (2) and B(1) and (2), defendants shall, at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer written notice that the subject property, including specifically the defendants' obligations to complete required retrofit work and to allow inspections, along with a copy of this Consent Decree; and (b) provide to the United States and the SSFHC, by facsimile and first class mail, written notice of its intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

### IV. NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

24. During the term of this Consent Decree, defendant ERGS, Inc. shall maintain and provide to the United States the following information and statements regarding any covered, multifamily dwellings intended to be purchased, developed, built, designed, and/or engineered in whole or in part, by it or by any entities in which it or its successors in interest have a position of control as an officer, director, member, or manager, or have a ten percent (10%) or larger ownership share. Defendant ERGS, Inc. shall provide such information to the United States ninety (90) days after entry of this Decree, one year after entry of this Decree, and then annually

for the remainder of the term of this Decree:

(a) the name and address of the project;

(b) a description of the project and the individual units;

(c) the name, address and telephone number of any site engineer(s) and/or civil engineer(s) involved with the project;

(d) a statement from all site engineer(s) and/or civil engineer(s) involved with the project acknowledging and describing his/her knowledge of and training in the requirements of Section 804(f)(3)(C) of the Fair Housing Act and in the field of accessible site design and certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the Fair Housing Act and the Guidelines and, where applicable, the ADA;

(e) the name, address and telephone number of the architect(s) involved with the project; and

(f) a statement from all architects involved with the project acknowledging and describing his/her knowledge of and training in the requirements of Section 804(f)(3)(C) of the Fair Housing Act and in the field of accessible site design and certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the requirements of the Act and Guidelines and, where applicable, the ADA.

(g) If the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or complex, defendants shall obtain and maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s), as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the Fair Housing Act and the Guidelines and, where applicable, the ADA.

25.   For the term of this Decree, if defendants John McCamant or CFA, Inc. prepare any architectural or site plans, drawings, or blueprints for covered multi-family housing, they shall include on such plans drawings or blueprints a statement that they comply with the Fair Housing

Act and, where applicable, the ADA. For the term of this Decree, such defendants shall, on request, provide to the United States a list of all such multi-family housing that they have designed or are designing during the term of the Decree.

## V. EDUCATIONAL PROGRAM

26. Within sixty (60) days of the entry of this Decree, defendants shall provide to all their supervisory employees and site managers involved in the actual design or construction of multifamily dwellings covered by the Act: (1) a copy of this Consent Decree; and (2) instruction on (i) the terms of this Consent Decree, (ii) the requirements of the Fair Housing Act and the ADA with regard to non-discrimination against persons with disabilities and design and construction, and (iii) their responsibilities and obligations under each. All supervisory design or construction personnel and site managers at ERGS, Inc. shall be required to attend training as provided in paragraph 41(C) below. The training shall be conducted by a qualified person or organization unconnected to defendants, their employees, agents, or counsel. Any expenses associated with this training shall be borne by the applicable defendants. This training may be conducted as part of the first annual training session required by Section IX, paragraph 41(C), below, so long as it occurs within the sixty (60) days specified in this paragraph.[8]

27. During the term of this Consent Decree, and within sixty (60) days after each new supervisory employee or site manager involved in the actual design or construction of multifamily dwellings covered by the Act commences an employment or agency relationship with defendants, defendants will provide such employees a copy of this Consent Decree and shall secure and deliver to counsel for the United States a signed statement from each such employee or site manager that he or she has received, read, and understands this Decree. This statement shall be substantially in the form of Appendix E.

## VI. PUBLIC NOTICE OF NON-DISCRIMINATION POLICY

28. During the term of this Decree, defendant ERGS, Inc. shall post and prominently

---

[8] Prior to the settlement of this lawsuit, Defendant McCamant attended a training session conducted by Silver State Fair Housing Council. His attendance at that session is hereby deemed to satisfy the requirements of this section.

display the federal Fair Housing Poster, as described by 24 C.F.R. 110.15 and 110.25, in the leasing offices of the subject properties and in any other sales or rental offices of all dwellings owned or operated by them, if any, and in any other place in which persons may inquire about renting dwellings from them.

29.   For the duration of this Consent Decree, in all future advertising in newspapers where the advertisement is more than two square inches, on pamphlets, brochures and other promotional literature, and on its internet website regarding the subject properties or any new covered complexes that defendant ERGS, Inc., may develop or construct, defendant ERGS, Inc., shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act.   The use of the equal housing logotype, along with the symbol of universal access, placed in a conspicuous location, shall be deemed to satisfy this requirement, as represented by the following examples of the logotype and symbol:

      

## VII.  ADDITIONAL MONITORING REQUIREMENTS

30.   For the duration of this Decree, defendants shall advise counsel for the United States in writing within thirty (30) days of receipt of any new and initial formal or informal complaint against them, their employees or agents, regarding discrimination regarding housing on the basis of disability under the Act.   These defendants shall also promptly provide the United States all non-privileged information it may request concerning any such complaint.   Within thirty (30) days of the resolution of any such complaints, defendants shall advise counsel of the United States of such resolution.

31.   For the duration of this Decree, defendants are required to preserve all records related to this Decree regarding the subject properties and all future covered multifamily dwellings to be designed, constructed, owned, operated or acquired by them.   Upon reasonable notice to defendants, representatives of the United States shall be permitted to inspect and copy any of

- 14 -

defendants' non-privileged records or inspect any covered dwelling or any covered public and common use areas under defendants' control at reasonable times so as to determine compliance with the Consent Decree.

32.  Within 180 days after the entry of this Decree, defendants shall submit an initial report containing either a certification by defendants of completion of the education program specified in Section V of this Consent Decree for their employees or copies of the completed verifications contained in Appendix E.  Thereafter, during the term of this Decree, defendants shall, one year after its entry and each year thereafter, submit to the United States a report containing the signed statements of new employees and agents verifying that, in accordance with Section V, they have received and read the Decree and had an opportunity to have questions about the Decree answered.

**VIII.  DAMAGES FOR AGGRIEVED PERSONS OTHER THAN SSFHC**

33.  Within thirty (30) days of the entry of this Decree, the defendants shall deposit in an interest-bearing escrow account the total sum of one hundred and fifty thousand dollars ($150,000) for the purpose of paying damages to any aggrieved persons who may have suffered as a result of the defendants' failure to design and construct the subject properties in compliance with the FHA and (as to Silver Lake) the ADA.[9]  Any interest that accrues shall be become part of the fund and be utilized as set forth herein.

34.  Within fifteen (15) days of the entry of this Decree, the defendants shall publish the Notice to Potential Victims of Housing Discrimination ("Notice"), attached hereto as Appendix F, informing the public of this settlement and of the damages fund.  The Notice shall be no smaller than three columns by six inches and shall be published on four (4) occasions in the *Reno -Gazette Journal*.  The publication dates shall be separated from one another by at least five (5) days, and at least two (2) of the publication dates shall be a Sunday edition.  Within ten (10) days of the final publication date, the defendants shall provide copies of the newspapers containing the Notice to counsel for the United States.  Within fifteen (15) days of the entry of this Decree, the

---

[9]  Defendant CFA's contribution of its share of this fund shall be considered as having been satisfied by its payment to ERGS of  $100,000 as set forth in n. 4, supra.

defendants also shall send a copy of the Notice to the following organizations: (1) SSFHC; and (2) the Northern Nevada Center for Independent Living.

35.   Within thirty (30) days of the entry of this Decree, the defendants shall send by first-class mail, postage prepaid, a copy of the Notice to each tenant of the ground-floor apartments at the subject properties and to the last-known address of any past tenant of a covered unit. Within forty-five (45) days of entry of this Decree, the defendants shall provide to counsel for the United States proof that the Notice has been sent. The defendants shall also make available for inspection and copying any documents the United States believes may reasonably assist in the identification of aggrieved persons. Nothing in this section shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

36.   Allegedly aggrieved persons shall have 120 days from the date of the entry of this Decree to contact the United States in response to the Notice. The United States shall investigate the claims of allegedly aggrieved persons and, within 180 days from the entry of this Decree, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to the each such persons. The United States will inform defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim. Defendants shall have fourteen (14) days to review the declaration and provide to the United States any documents or information that they believe may refute the claim.

37.   After receiving defendants' comments, the United States shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by defendants. Defendants may make their own submission to the Court within ten (10) days of the United States' filing under this paragraph. When the Court issues an order approving or changing the United States's proposed distribution of funds for aggrieved persons, defendants shall, within 10 days of the Court's order, deliver to the United States checks payable to the aggrieved persons in the amounts approved by the Court. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund, including accrued interest. No aggrieved person shall be paid until he/she has executed and delivered to

counsel for the United States the release at Appendix G.

38. If, after all payments to aggrieved persons have been made, a balance remains in the fund, the Court shall order that any balance remaining be returned to defendants other than CFA.

## IX. PROVISIONS REGARDING
### PLAINTIFF SILVER STATE FAIR HOUSING COUNCIL

39. The provisions in this section of the Consent Decree shall not apply to the United States or CFA, Inc.

### A. Monetary Provisions

40. Within ten (10) days of the entry of this Decree, defendants in base case number CV-02-0615 DWH (VPC) shall make a monetary payment of $277,500 to plaintiff Silver State Fair Housing Council in the form of a check made payable to the Attorney Client Trust Account of Brancart & Brancart.  This settlement sum reflects the payment of $27,500 to Silver State Fair Housing Council (SSFHC) and the payment of $250,000 for plaintiff's attorneys' fees and litigation costs and expenses.

### B. Affirmative Relief

41. Defendant ERGS, Inc. in case number CV-N-02-0-0615-DWH (VPC)  (SSFHC defendants), their employees, agents and all others acting on its behalf shall comply with the following terms during the duration of this decree:

A.    ERGS, Inc. shall adopt a written policy regarding reasonable modifications and reasonable accommodations for Sierra Sage Apartments and Silver Lake Apartments; specifically, the policy shall be reviewed and approved by plaintiff SSFHC, and once it is reviewed and approved, shall be distributed to each current and future household that occupies a dwelling at Sierra Sage Apartments or Silver Lake Apartments during the duration of this Decree.

B.    ERGS, Inc. shall distribute an official Form HUD-903.1 pamphlet to each current and future household that occupies a dwelling at Sierra Sage Apartments or Silver Lake Apartments during the duration of this Decree.

C.    ERGS, Inc. shall require fair housing training once per year for each of the next three years, conducted by SSFHC, for all persons involved in site or rental

- 17 -

management at Sierra Sage Apartments or Silver Lake Apartments and require each attendee to execute a copy of Appendix H hereto. The duration of each annual training session shall be approximately three hours in one day at no charge to ERGS.

D.   Within thirty (30) days after the entry of the Consent Decree, ERGS, Inc. shall distribute information to each household that occupies a dwelling at Sierra Sage Apartments and Silver Lake Apartments explaining their rights under the Fair Housing Act, including the rights of persons with disabilities to reasonable accommodations and reasonable modifications. Distribution of the information in subparagraph 41 A and B above will satisfy this requirement.

E.   Vacancy notification: ERGS, Inc. shall provide a written posting to Northern Nevadans for Equal Access (NNEA), c/o Northern Nevada Center for Independent living, 999 Pyramid Way, Sparks, NV 89431, stating the general availability of apartments for rent at Sierra Sage and Silver Lake.

F.   Provide SSFHC with written certification on an annual basis that defendants have complied with each of the terms of this decree.

## X. CIVIL PENALTY

42.   Within 10 days of the date of entry of this Decree, the defendants ERGS, Inc. and John McCamant shall pay to the United States a civil penalty in the total sum of $30,000 to vindicate the public interest, pursuant to 42 U.S.C. §3614(d)(1)(C). This sum shall be paid by submitting to counsel for the United States a check made payable to the "United States America."

## XI. DURATION OF DECREE AND TERMINATION OF LEGAL ACTION

43.   This Consent Decree shall remain in effect for five (5) years after the date of its entry.

44.   By consenting to entry of this Decree, the United States and defendants agree that in

the event that defendants engage in any future violation(s) of the disability provisions of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(A)-(C), in any construction or ownership beginning after entry of the Decree, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii), except as to violation(s) by CFA, Inc. which shall be processed pursuant to 42 U.S.C. 3614(d)(1)(C)(i).

45. The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Decree, after which time the case shall be dismissed as to such parties with prejudice. Plaintiffs may move the Court to extend the duration of the Decree in the interests of justice.

46. The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by defendants to perform in a timely manner any act required by this Decree or otherwise to act in conformance with any provision thereof, plaintiffs may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

## XII. TIME FOR PERFORMANCE

47. Any time limits for performance imposed by this Consent Decree may be modified by the mutual agreement of plaintiffs and the relevant defendants.

## XIII. COSTS OF LITIGATION

48. The United States and defendants shall bear their own costs and attorney's fees associated with this litigation.

**IT IS SO ORDERED:**

This _12th_ day of _July_ _____ 2005.

_____
United States Magistrate Judge

- 19 -

Agreed to by the parties as indicated by the signatures of counsel below.

1

2   FOR PLAINTIFF SILVER STATE FAIR          FOR DEFENDANTS ERGS, INC. and
3   HOUSING CENTER:                          SIERRA SAGE, LLC:

4

5   CHRISTOPHER BRANCART                      JEREMY J. NORK
    BRANCART & BRANCART                       MATTHEW P. HIPPLER
6   Post Office Box 686                       Hale, Lane, Peek, Dennison, and Howard
    Pescadero, California 94060               5441 Kietzke Lane, 2nd Floor
7   650-879-0141/605-879-1103 - fax          Reno, NV 89511
                                             775-327-3000/775-786-6179 - fax
8   Date: 6-8-05
                                             Date: 7/12/05
9   IAN SILVERBERG
    96 Winter Street                          FOR DEFENDANT JOHN W. MCCAMANT:
10  Reno, NV 89503
    775-322-7422/775-322-2303 -fax

11                                            LOUIS S. TEST
    FOR PLAINTIFF UNITED STATES:              Hoffman, Test, Guinan & Collier
12                                            429 W. Plumb Lane
    DANIEL G. BOGDEN                          Reno, NV 89509
13  United States Attorney                    775-322-4081/775-322-3841 - fax

14  GREG ADDINGTON                            Date: 7/12/05
    Assistant United States Attorney
15  for the District of Nevada

16  Carl Anderson by Susan Reilly            FOR DEFENDANT CFA, INC.:

17  STEVEN H. ROSENBAUM
    Chief                                     R. SHAWN OLIPHANT
18  KEISHA DAWN BELL                          NATHAN J. AMAN
    Deputy Chief                              Lane, Fahrendorf, Viloria & Oliphant
19  SUSAN BUCKINGHAM REILLY                   P.O. Box 3677
    CARL A. ANDERSON                          Reno, NV 89505
20  Trial Attorneys                          775-348-9999/775-348-0540
    United States Department of Justice
21  Civil Rights Division                     Date: 7/12/05
    Housing & Civil Enforcement Section - G St.
22  950 Pennsylvania Avenue, NW
    Washington, D.C. 20530
23  202-307-2230/202-514-1116 - fax

24  Date: 7/12/05

25

26

27

28

- 20 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX A**


*Public and Common Use Area Retrofits*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX A(1)(a)**


*Sierra Sage Site Plan of Proposed Public and Common Area Retrofits*



SIERRA SAGE APARTMENTS
ALTA/ACSM URBAN CLASS SURVEY
WASHOE COUNTY - NEVADA

ERGS, INC.

## Appendix A(1)(b)

### Sierra Sage Apartments
### FHA Retrofit Units

The following units are to be retrofitted at Sierra Sage pursuant to the
list of retrofits set forth in Appendix A(1)

| Building | Type | Units | Units to be Retrofitted |
|----------|------|-------|-------------------------|
| 1 | 2-br | A & B | X |
|   |      | E & F | X |
| 2 | 2-br | A & B | X |
|   |      | E & F | X |
| 3 | 2-br | A & B | X |
|   |      | E & F |   |
| 4 | 2-br | A & B | X |
|   |      | E & F |   |
| 5 | 2-br | A & B |   |
|   |      | E & F | X |
| 6 | 2-br | A & B | X |
|   |      | E & F | X |
| 7 | 2-br | A & B | X |
|   |      | E & F | X |
| 8 | 2-br | A & B | X |
|   |      | E & F | X |
| 9 | 3-br | A & B | X |
|   |      | E & F | X |
| 10 | 2-br | A & B | X |
|    |      | E & F | X |
| 11 | 2-br | A & B | X |
|    |      | E & F |   |
| 12 | 2-br | A & B | X |
|    |      | E & F |   |
| 13 | 2-br | A & B | X |
|    |      | E & F |   |

-i-

| | | | |
|---|---|---|---|
| 14 | 2-br | A & B | X |
| | | E & F | |
| 15 | 2-br | A & B | X |
| | | E & F | |
| 16 | 1-br | A & B | |
| | | E & F | |
| 17 | 2-br | A & B | |
| | | E & F | X |
| 18 | 2-br | A & B | |
| | | E & F | X |
| 19 | 2-br | A & B | |
| | | E & F | X |
| 20 | 1-br | A & B | |
| | | E & F | |
| 21 | 2-br | A & B | X |
| | | E & F | X |
| 22 | 2-br | A & B | X |
| | | E & F | X |
| 23 | 2-br | A & B | X |
| | | E & F | X |
| 24 | 2-br | A & B | X |
| | | E & F | X |
| 25 | 2-br | A & B | X |
| | | E & F | X |
| 26 | 2-br | A & B | X |
| | | E & F | X |
| 27 | 2-br | A & B | X |
| | | E & F | |
| 28 | 1-br | A & B | X |
| | | G & H | X |

APPENDIX A(1)[10]

# ACCESSIBILITY MODIFICATIONS[11] TO PUBLIC AND COMMON USE AREAS AT SIERRA SAGE APARTMENTS

| Location | Violation | Retrofit |
|---|---|---|
| **Building Entrance Walkways** | With the exception of units 10 (A,B,E,F) and 27 (A & B), step(s) occur in the walkways leading from the parking areas to the entrances of each of the units to be retrofitted listed in Appendix A(1)(b), _infra_.<br><br>ANSI 4.3.8 – see Appendix I A-2 | Modify/rebuild the entrance walkway to each of the buildings and units to remove any step(s) leading from the parking area to the dwelling entrance landing:<br><br>[HUD Guidelines Req. 2; ANSI 4.3.8] |
| **Unit Entrances** | With the exception of units 10 (A,B,E,F) and 27 (A & B), a step occurs at the entrance to the dwelling down to the entrance landing at each of the units to be retrofitted listed in Appendix B(1)(A), _infra_.<br><br>HUD Guidelines Req. 4, (6), ANSI 4.3.8 – see Appendix I A-1 | Remove the step that occurs at the unit entrance threshold down to the entrance landing at each unit noted.<br><br>[HUD Guidelines Req. 2 (ANSI 4.3.8) and Req. 4(6)] |

---

[10] Unless otherwise noted, references in the chart to "Appendix" refer to the photographs contained in the appendix to the "Fair Housing Accessibility Compliance Report" (Dec. 8, 2003) for Sierra Sage Apartments prepared by Phill Zook.

[11] HUD regulations provide that "[a] public or common use area that complies with the appropriate requirements of ANSI A117.1-1986 or a comparable standard is accessible." See 24 C.F.R. § 100.201 (2002). HUD interprets "comparable standard" to mean a "standard that affords [persons with disabilities] access essentially equivalent to or greater than that required by ANSI A117.1." See 54 Fed. Reg. 3243 (Jan 23, 1989). Should Defendants elect to follow a standard other than ANSI for making the public and common-use areas accessible, they will inform the United States in writing of the standard. Such standard must provide access that is "essentially equivalent" to or "greater" than ANSI A117.1 (1986).

| | | |
|---|---|---|
| **Curbs** | No compliant curb ramps exist on the accessible routes leading from the entrance sidewalk down to the level of the parking lot or driveway serving the units listed in Appendix B(1)(A), *infra*.<br><br>ANSI 4.3.8 – see Appendix I A-3<br><br>Some of the curb ramps that do exist are constructed with running slopes exceeding the maximum 8.33% allowed, ANSI 4.7.2, and are located within the sidewalks creating cross slopes exceeding the maximum 2% allowed.<br><br>ANSI 4.3.7 – see Appendix I A-18, A-19<br><br>The following list summarizes the non-compliant features observed:<br><br>a. Curb ramp at building 28 is a rough lump of asphalt without even 1:12 running slopes and without side flares.<br><br>   See Appendix I A-20<br><br>b. Curb ramp at building 26 has running slope exceeding 8.33% (11.5% measured) and is located within the required accessible route creating cross slopes exceeding 2%.<br><br>c. Curb ramp at building 27 has running slopes exceeding 8.33% (13.5% measured) and is located within the required accessible route creating cross slopes exceeding 2%. Cross slopes in the access aisle of the parking space exceeds 2% maximum allowed (6.2% measured).<br><br>d. Curb ramp at building 15 has running slope exceeding 8.33% (25% measured).<br><br>e. Curb ramp at building 18 has running slope exceeding 8.33% (12.5% measured), and is located within the required accessible route creating cross slopes exceeding 2% maximum allowed. The access aisle is not aligned with the ramp.<br><br>   See Appendix I A-21<br><br>f. Curb ramp between building 20, 21 has running slopes exceeding 8.33% (11.5% measured), and is located within the required accessible route creating cross slopes exceeding 2% maximum allowed. The access aisle is not aligned with the ramp.<br><br>   See Appendix I A-21 | Provide curb ramps that comply with ANSI 4.7 to provide accessible routes from dwelling unit entrances to all common use facilities.<br><br>[HUD Guidelines Req. 1 and 2; ANSI 4.3.8 and 4.7]<br><br>Appendix A(1)(a), *infra*, hereto is a revised site plan for Sierra Sage showing the revised accessible routes throughout the complex. ERGS, Inc. reserves the right to make minor modifications to the revised site plan based on field conditions and/or engineering recommendations subject to review and ultimate approval of the neutral inspector pursuant to paragraph 19 of this Consent Decree. |

|  |  |  |
|---|---|---|
|  | g. Curb ramp at building 21 has running slopes exceeding 8.33% (11.5% measured) and is located within the required accessible route creating cross slopes exceeding 2%.<br><br>h. Curb ramp at building 28 on club house side has running slopes exceeding 8.33% (12.5% measured) and is located within the required accessible route creating cross slopes exceeding 2%.<br><br>i. Both curb ramps at the street crossing in front of building 27 have running slopes exceeding 8.33% (11.5% measured) and are located within the required accessible route creating cross slopes exceeding 2%. |  |
| **Leasing Office/Common Use Building** | The curb ramp leading to the parking area has running slopes exceeding the 8.33% maximum allowed (12.5% measured), and the open side of the ramp facing the parking does not have either a flared edge or returned edge.<br><br>Slope:    ANSI 4.7.2<br>Side:      ANSI 4.2.5 – see Appendix 1 A-4 | Modify/rebuild the curb ramp leading to the parking area so that the ramp complies with ANSI 4.7.<br><br>[HUD Guidelines Req. 1 and 2; ANSI and 4.3.8 and 4.7] |
|  | The height of the threshold at the entrance to the leasing office exceeds the ½" maximum allowed and is not beveled 1:2 or less.<br><br>ANSI 4.13.8 – see Appendix I A-5 | Modify the threshold at the entrance to the leasing office so that it does not exceed ½" and so that it is beveled 1:2 or less.<br><br>[HUD Guidelines Req. 3(1) and ANSI 4.13.8] |
|  | The height of the threshold at the entrance to the laundry room exceeds the ½" maximum allowed and is not beveled 1:2 or less.<br><br>ANSI 4.13.8 – see Appendix I A-6 | Modify the threshold at the entrance to the laundry room so that it does not exceed ½" and so that it is beveled 1:2 or less.<br><br>[HUD Guidelines Req. 3(1) and ANSI 4.13.8] |
|  | The built-in folding table in the laundry room is mounted with the top surface higher than the 34" maximum allowed (37½" measured).<br><br>ANSI 4.30.4 – see Appendix I A-7 | Reconfigure the built-in folding table in the laundry room so that it is mounted with the top surface higher than 34".<br><br>[HUD Guidelines Req. 2 and ANSI 4.30.4] |

| | | |
|---|---|---|
| | In the men's toilet room the toilet is located with its centerline exceeding the 18" required (19½" measured).<br><br>ANSI 4.16.2 – see Appendix I A-8 | Relocate the toilet so that its centerline is 18" from the adjacent wall.<br><br>[HUD Guidelines Req. 2 and ANSI 4.16.2] |
| | In the women's toilet room:<br><br>a. The toilet is located with its centerline exceeding the 18" required (21" measured).<br><br>ANSI 4.16.2 – see Appendix I A-9 | a. Relocate the toilet so that its centerline is 18" from the adjacent wall.<br><br>[HUD Guidelines Req. 2 and ANSI 4.16.2] |
| **Fitness Room/Club House** | The restroom's paper towel dispenser is mounted above the toilet without the required 30" x 48" clear floor space for either a forward or parallel approach.<br><br>ANSI 4.22.4 | In the toilets, locate the paper towel dispenser so that a 30" x 48" clear floor space for either a forward or parallel approach is provided.<br><br>[HUD Guidelines Req. 2 and ANSI 4.22.4] |
| **Playground/Picnic Area** | There is not an accessible route leading from the dwelling entrances to the recreation area.<br><br>HUD Guidelines Req. 2 – see Appendix I A-11 | Provide an accessible route that complies with the requirements of ANSI 4.3 that connects the entrances of any non-exempt dwelling to the recreation area.<br><br>[HUD Guidelines Req. 2 and ANSI 4.3]<br><br>See Appendix A(1)(a), infra, providing a revised site plan showing the revised accessible route throughout the complex. ERGS, Inc. reserves the right to make minor modifications to the revised site plan based on field conditions and/or engineering recommendations subject to review and ultimate approval of the neutral inspector pursuant to paragraph 19 of this Consent Decree. |
| | There is no accessible parking space serving the recreation area. Where parking is provided (or used to create an accessible route) at a common use facility, an accessible parking space must be provided too.<br><br>[HUD Guidelines Req. 2 , ANSI 4.6.2] | Provide an accessible parking space at the recreation area that complies with ANSI 4.6.<br><br>[HUD Guidelines Req. 2 and ANSI 4.6] |

| | | | |
|---|---|---|---|
| | | There is not a curb ramp and sidewalk leading to the recreation area.<br><br>HUD Guidelines Req.. 2, ANSI 4.3.8, 4.7 – see Appendix I A-11<br><br>There is not a picnic table on an accessible route with accessible seating. .<br><br>ANSI 4.3, 4.30 | Provide an accessible route to picnic area so that picnic table will be accessible from the sidewalk.<br><br>[HUD Guidelines Req. 2 and ANSI 4.3 and 4.30]<br><br>See Appendix A(1)(a), infra, providing a revised site plan showing the revised accessible route throughout the complex. ERGS, Inc. reserves the right to make minor modifications to the revised site plan based on field conditions and/or engineering recommendations subject to review and ultimate approval of the neutral inspector pursuant to paragraph 19 of this Consent Decree. |
| | **Mail Box Pedestals** | The first two pedestals at parking are closest to the office are located on the sloped portion of the curb ramp, without a level wheelchair approach.<br><br>ANSI 4.2, 4.3, 4.25, HUD Guidelines Req.. 2 – see Appendix I A-4 | Provide mail boxes that comply with ANSI 4.25 and that are located on an accessible route to units listed in Appendix A(1)(b), infra.<br><br>[HUD Guidelines Req. 2 and ANSI 4.2.4.3, and 4.25] |
| | | The outgoing mail box near the office building is located on a raised 6" curbed area, not on an accessible route.<br><br>ANSI 4.3.8 – see Appendix I A-12 | Relocate the outgoing mail box near the office building so that it is located on an accessible route that complies with ANSI 4.3.<br><br>[HUD Guidelines Req. 2 and ANSI 4.3] |
| | | The mail box pedestals at building 19 have a restricted parking space adjacent to the boxes that is not accessible. There is no access aisle and curb ramp.<br><br>ANSI 4.6.2 – see Appendix I A-13 | Relocate the mail box pedestal serving units 19 (E & F) so that they are on an accessible route that complies with ANSI 4.3.<br><br>[HUD Guidelines Req. 2 and ANSI 4.3] |
| 3.5.2 | **Trash Dumpsters** | The dumpster located between buildings 23, 24 is located on a 1½" raised pad, not on an accessible route, and there is not a curb ramp leading from the sidewalk down to parking area, where the dumpster enclosure is accessed. The dumpster located in front of building 26 is located on a 2" raised pad, not on an accessible route, and the adjacent parking space blocks access to the enclosure when a car is parked there. | Provide side door access to dumpsters to comply with ANSI 4.2.5 and 4.2.6, provide trash pick-up for persons with disabilities upon request, or provide otherwise accessible dumpsters placed near the existing dumpsters.<br><br>[HUD Guidelines Req. 2] |

| | | |
|---|---|---|
| | The dumpster located next to building 3 is located with a 2" abrupt step down into enclosure, not on an accessible route.<br><br>The dumpster located next to building 9 is located with a 7" abrupt step down into the enclosure, not on an accessible route.<br>The dumpster located next to building 12 is located on a 2" raised pad, not on an accessible route, and there is no curb ramp leading from the sidewalk down to the parking area where the dumpster enclosure is accessed.<br><br>ANSI 4.3.8 | |
| **Sidewalks at Parking Lots** | The sidewalks at the parking lots in front of the apartment buildings are 54" wide. When automobiles are parked and pulled up snug to the curb the width of the accessible route is reduced to less than the 36" minimum required.<br><br>ANSI 4.3.3, 4.6.2 – see Appendix I A-31 | Install wheelstops to prevent parked vehicle overhangs from reducing the clear width of the accessible circulation route provided by the sidewalks adjacent to the parking lots in front of the apartment buildings listed in Appendix A(1)(b), infra, to ensure that all such routes have not less than 36" of clear passage or widen the sidewalks to maintain the 36" clear width on walkways where parked vehicles may reduce this clear passage width.<br><br>[HUD Guidelines Req. 1 and ANSI 4.3 and 4.6.2] |
| **Dwelling Unit Entrance Doors** | The exterior of the primary entrance doors are not equipped with usable hardware.<br><br>ANSI 4.13.9 – see Appendix I A-23 | Install lever door hardware at the primary entrance doors to the units listed in Appendix A(1)(b), infra.<br><br>[HUD Guidelines Req. 2 and ANSI 4.13.9] |
| **Mini Storage Area** | There is not an accessible storage bay. The overhead roll-up doors are not operable by any means which ANSI provides specifications and are not accessible.<br><br>ANSI 4.13 – see Appendix I A-22 | Replace or add doors to two mini storage areas so that they comply with ANSI 4.13.<br><br>[HUD Guidelines Req. 2 and ANSI 4.13] |
| **Parking Areas** | The accessible parking in front of building 10 has an access aisle that does not have a curb ramp leading up to the sidewalk.<br><br>ANSI 4.7 – see Appendix I A-32 | Provide a curb ramp that complies with ANSI 4.7 for the access aisle in the parking lot in front of building 10 so that the access aisle is part of the accessible route to the building.<br><br>[HUD Guidelines Req. 1 and Req. 2 and ANSI 4.7 and 4.6.2] |

| Ramps | The ramp leading at building 10(AB) does not have railings on both sides and there are not 12" required level extensions at top and bottom of ramp. The ramp at building 27(AB) does not have railings on both sides.<br><br>ANSI 4.8.5<br><br>Temporary wood ramps at building 23A has a slope exceeding 8.33% (23A, 14.6%). Also it is not equipped with grippable handrails, which do not have 60" deep landings at top (36" measured), railings are too high (41" - 36") and do not have compliant edge protection. The ramp at building 27(AB) does not have railings on both sides.<br><br>ANSI 4.8.5 ANSI 4.8 – see Appendix I A-33 | Provide handrails on both sides of the ramp leading to buildings 10(AB) and 27 (AB) that comply with ANSI 4.8.5.<br><br>[HUD Guidelines Req. 2 and ANSI 4.8.5]<br><br>Provide that the ramp and landing for unit 23A comply with the requirements of ANSI 4.8.<br><br>[HUD Guidelines Req. 2 and ANSI 4.8] |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX A(2)(a)**

*Silver Lake Site Plan of Proposed Public
and Common Area Retrofits*



SITE PLAN
FOR
SILVER LAKE APARTMENTS



SITE PLAN
FOR
SILVER LAKE APARTMENTS



SITE PLAN
FOR
SILVER LAKE APARTMENTS

# APPENDIX A(2)(b)

## Silver Lake Apartments
### Phases I - III[12]
### FHA Retrofit Units

The following units are to be retrofitted at Silver Lake pursuant to the list of retrofits set forth in Appendix A(2).

| Building | Type | Units | Units to be Retrofitted | | Building | Type | Units | Units to be Retrofitted |
|----------|------|-------|------------------------|---|----------|------|-------|------------------------|
| 1 | 1-br | A & B | X | | 17 | 2-br | A & B | |
|   |      | E & F | X | |    |      | E & F | X |
| 2 | 1-br | A & B | X | | 18 | Maint | | |
|   |      | E & F | X | |    |      |       | |
| 3 | 2-br | A & B | X | | 19 | 2-br | A & B | X |
|   |      | E & F | X | |    |      | E & F | X |
| 4 | 2-br | A & B | X | | 20 | 2-br | A & B | X |
|   |      | E & F | X | |    |      | E & F | X |
| 5 | 1-br | A & B | X | | 21 | 2-br | A & B | X |
|   |      | E & F |   | |    |      | E & F | X |
| 6 | 1-br | A & B | X | | 22 | 2-br | A & B | X |
|   |      | E & F |   | |    |      | E & F | X |
| 7 | 1-br | A & B | X | | 23 | 2-br | A & B | X |
|   |      | E & F | X | |    |      | E & F | X |
| 8 | 1-br | A & B | X | | 24 | 2-br | A & B | X |
|   |      | E & F |   | |    |      | E & F | X |
| 9 | 1-br | A & B | X | | 25 | 2-br | A & B | X |
|   |      | E & F | X | |    |      | E & F | X |
| 10 | 2-br | A & B | X | | 26 | 2-br | A & B | X |
|    |      | E & F |   | |    |      | E & F | X |
| 11 | 2-br | A & B | X | | 27 | 2-br | A & B | X |
|    |      | E & F | X | |    |      | E & F |   |
| 12 | 2-br | A & B | X | | 28 | 2-br | A & B | X |
|    |      | E & F | X | |    |      | E & F | X |

---

[12] Phases IV - V of Silver Lake were redesigned to comply with the accessibility requirements of the Fair Housing Act after Plaintiff SSFHC initiated its lawsuit and units in those phases were constructed pursuant to those revised plans. Accordingly, defendants are not required to undertake retrofits in units in buildings 32 - 44 at Silver Lake. Of the buildings, buildings 32 - 35 are inaccessible for reasons pertaining to site impracticality.

| 13 | 1-br | A & B | X |
|----|------|-------|---|
|    |      | E & F | X |
| 14 | 2-br | A & B |   |
|    |      | E & F | X |
| 15 | 2-br | A & B |   |
|    |      | E & F | X |
| 16 | 1-br | A & B | X |
|    |      | E & F |   |

| 29 | 2-br | A & B | X |
|----|------|-------|---|
|    |      | E & F |   |
| 30 | 1-br | A & B | X |
|    |      | E & F |   |
| 31 | 1-br | A & B | X |
|    |      | E & F | X |

APPENDIX A(2)[1]

ACCESSIBILITY MODIFICATIONS[2] TO PUBLIC AND COMMON USE
AREAS AT SILVER LAKE APARTMENTS

| Location | Violation | Retrofit |
|---|---|---|
| **Building Entrance Walkways** | With the exception of units 5(A & B), 9 (E & F) and 31 (E & F), step(s) occur in the walkways leading from the parking areas to the entrances of each of the units to be retrofitted listed in Appendix A(2)(b), _infra_.<br><br>ANSI 4.3.8 – see appendix IIA-1, IIA-2. | Modify/rebuild the entrance walkway to each of the buildings and units to remove any step(s) leading from the parking area to the finish floor level of the building entrance.<br><br>[HUD Guidelines Req. 2; ANSI 4.3.8] |

---

[1]  References in the chart to "Appendix" refers to the photographs contained in the appendix to the "Fair Housing Accessibility Compliance Report" (Dec. 8, 2003) for Silver State Apartments prepared by Phill Zook.

[2]  HUD regulations provide that "[a] public or common use area that complies with the appropriate requirements of ANSI A117.1-1986 or a comparable standard is accessible." See 24 C.F.R. § 100.201 (2002).  HUD interprets "comparable standard" to mean a "standard that affords [persons with disabilities] access essentially equivalent to or greater than that required by ANSI A117.1." See 54 Fed. Reg. 3243 (Jan 23, 1989).  Should Defendants elect to follow a standard other than ANSI for making the public and common-use areas accessible, they will inform the United States in writing of the standard. Such standard must provide access that is "essentially equivalent" to or "greater" than ANSI A117.1 (1986).

—

—

| | Curb ramps | No compliant curb ramps exist on the accessible routes leading from the entrance sidewalk down to the level of the parking lot or driveway serving the units listed in Appendix A(2)(b), infra. | Provide curb ramps that comply with ANSI 4.7 to provide accessible routes from dwelling unit entrances to all common use facilities. |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | ANSI 4.3.8 – see appendix IIA-3, II A-4. | [HUD Guidelines Req. 1 and 2; ANSI 4.3.8 and 4.7] |
| 4 | | Some of the curb ramps that do exist are constructed with running slopes exceeding the maximum 8.33% allowed, ANSI 4.7.2, and are located within the sidewalks creating cross slopes exceeding the maximum 2% allowed. | Appendix A(2)(a), infra, hereto is a revised site plan for Silver Lake showing the revised accessible routes throughout the complex. ERGS, Inc. reserves the right to make minor modifications to the revised site plan based on field conditions and/or engineering recommendations subject to review and ultimate approval of the neutral inspector pursuant to paragraph 19 of this Consent Decree. |
| 5 | | | |
| 6 | | ANSI 4.3.7 – see Appendix II A-18 | |
| 7 | | The following list summarizes the non-compliant features observed: | |
| 8 | | a.  Curb ramp at side of building 13 has running slope exceeding 8.33% (12.5% measured) and is located within the required accessible route creating cross slopes exceeding 2%. | |
| 9 | | | |
| 10 | | | |
| 11 | | b.  Curb ramp at building 5 has running slope exceeding 8.33% (12.5% measured) and is located within the required accessible route creating cross slopes exceeding 2%. | |
| 12 | | | |
| 13 | | c.  Curb ramp at building 9 is located within the required accessible route creating cross slopes exceeding 2%. | |
| 14 | | d.  Curb ramp between buildings 25 and 26 has running slopes exceeding 8.33% (12.5% measured) and is located within the required accessible route creating cross slopes exceeding 2%. | |
| 15 | | | |
| 16 | | | |
| 17 | | e.  Curb ramp at building 31 has running slopes exceeding 8.33% (12.5% measured) and is located within the required accessible route creating cross slopes exceeding 2%. | |
| 18 | | | |
| 19 | | f.  Curb ramp at Leasing Office is non-compliant ( See below). | |
| 20 | Leasing Office/Common Use Building | The curb ramp at the accessible parking has running slopes exceeding the 8.33% maximum allowed (12.5% measured). | Modify/rebuild the curb ramp leading to the parking area so that the ramp complies with ANSI 4.7. |
| 21 | | ANSI 4.7.2 – see Appendix II A-5 | [HUD Guidelines Req. 1 and 2 and ANSI 4.3.8 and 4.7] |
| 22 | | | |
| 23 | | In the women's toilet room: | In the women's toilet room: |
| 24 | | a. The rim of the lavatory sink exceeds the 34" maximum allowed (35" measured). | a. Reconfigure the lavatory sink so that its rim is located no higher than 34" from the floor. |
| 25 | | b. Grab bars are mounted higher than the 36" maximum allowed above finish floor (37" measured to center) | [HUD Guidelines Req. 2 and ANSI 4.19.2] |
| 26 | | ANSI 4.17.6 – grab bars – see Appendix II A-8 | b. Reconfigure the grab bars so they are mounted no higher than 36" above the finished floor. |
| 27 | | | [HUD Guidelines Req.2 and ANSI 4.17.6] |
| 28 | | | |

|  | | |
|---|---|---|
| | In the men's toilet room:<br><br>a. Grab bars are mounted higher than the 36" maximum allowed above finish floor (37" measured to center).<br><br>ANSI 4.17.6 – see Appendix II A-8 | In the men's toilet room:<br><br>a. Reconfigure the grab bars so they are mounted no higher that 36" above the finished floor.<br><br>[HUD Guidelines Req.2 and ANSI 4.17.6] |
| | In the community room:<br><br>The TV is mounted from the ceiling with controls out of reach ranges allowed.<br><br>ANSI 4.2.5, 4.2.6 – see Appendix II A-II | Provide controls for the TV that are within the reach ranges set forth in ANSI 4.2.5 and 4.2.6. This can be accomplished by providing a remote control unit.<br><br>[HUD Guidelines Req. 2 and ANSI 4.2.5 and 4.2.6] |
| | In the laundry room:<br><br>The built-in folding table is mounted with the top surface higher than the 34" maximum allowed (39" measured).<br><br>ANSI 4.30.4 – see Appendix II A-12 | Reconfigure the built-in folding table in the laundry room so that is mounted with the top surface higher than 34".<br><br>[HUD Guidelines Req. 2 and ANSI 4.30.4] |
| **Mail Boxes** | The following mail box pedestals are located on 6" raised curbs, not on an accessible route to all the ground floor units they serve, and have the top row of mail boxes higher than the 54" maximum allowed for a side reach (58" – 59" measured to key hole).<br><br>a. Mail box at building 14<br><br>b. Mail box between buildings 12, 13<br><br>c. Mail box between buildings 11, 12<br><br>d. Mail box at building 10<br><br>e. Mail box at building 27<br><br>f. Mail box between buildings 24, 25<br><br>g. Mail box between buildings 43, 44 (on an accessible route, but top row of boxes exceeds 54" allowed for side reach).<br><br>h. Mail box at building 21<br><br>i. Mail box at building 17<br><br>Accessible Route: ANSI 4.3.8<br><br>Reach Range: ANSI 4.6.6 – see Appendix II A-14 | Provide mail boxes that comply with ANSI 4.25 and that are located on an accessible route to units listed in Appendix A(2)(b), infra.<br><br>[HUD Guidelines Req. 2 and ANSI 4.2.4.3, and 4.25] |
| **Trash Dumpsters** | Trash dumpsters are not on an accessible route. The dumpsters are located on concrete pads that are on raised curb areas, or steps occur in the route of travel.<br><br>The following list summarizes the barriers to each trash dumpster:<br><br>a. Dumpster at building 13 is on 6" raised curb.<br><br>b. Dumpster at building 7 is located on pad with 7" step down from sidewalk.<br><br>c. Dumpster at building 28 is located on pad with steps in sidewalk blocking access. | Provide side door access to dumpsters to comply with ANSI 4.2.5 and 4.2.6, provide trash pick-up for persons with disabilities upon request, or provide otherwise accessible dumpsters placed near the existing dumpsters.<br><br>[HUD Guidelines Req. 2] |

|  |  |  |
|---|---|---|
|  | d.  Dumpster at building 31 located on pad with 5" step down from sidewalk.<br><br>e.  Dumpster at building 23 is located on pad with 6" step in access sidewalk and 6" step down to pad.<br><br>f.  Dumpster at building 21 is located on pad with a 6" step up to access walk, then a 6" step down to pad.<br><br>g.  Dumpster at building 16 is located on pad with a 6" step up to access walk, then a 6" step down to pad.<br><br>ANSI 4.3.8 – see Appendix II A-15, II A-16, II A-17 |  |
| **Sidewalks at Parking Lots** | The sidewalks at the parking lots in front of the apartment buildings are 54" wide.  When automobiles are parked and pulled up snug to the curb the width of the accessible route is reduced to less than the 36" minimum required.<br><br>ANSI 4.3.3, 4.6.2 | Install wheelstops to prevent parked vehicle overhangs from reducing the clear width of the accessible route provided by the sidewalks adjacent to the parking lots in front of the apartment buildings to ensure that all such routes have not less than 36" of clear passage or widen sidewalks to provide such clear passage.<br><br>[HUD Guidelines Req. 1 and ANSI 4.3 and 4.6.2] |
| **Primary Entrance Doors to Dwelling Units** | The exterior of the primary entrance doors are not equipped with usable hardware on unit types 1BR/1BA Plan A, 1BR/1BA Plan A HC, 2BR/2BA Plan A.<br><br>ANSI 4.13.9 – see Appendix II A-19 | Install lever door hardware at the primary entrance doors to units listed in Appendix A(2)(b).<br><br>[HUD Guidelines Req. 2 and ANSI 4.13.9] |
| **Stairwells** | The stairs located in the building entrances do not have cane detection barriers at the underside where headroom clearance is less than 80" above the floor. (56" measured).<br><br>ANSI 4.4.2 – see Appendix II A-20 | Provide cane detection barriers at the underside of the stairs leading to the second stories at each of the buildings containing dwelling units or modify the stairs to remove the overhead hazard.<br><br>[HUD Guidelines Req. 2 and ANSI 4.4.2] |
| **Ramps** | a.  The ramp to building 5(AB) is not equipped with handrails on both sides (no railing on building side of ramp).<br><br>ANSI 4.8 – see Appendix II A-38, A-39<br><br>b.  The ramp to building 9(EF) is not equipped with handrails on both sides (no railing on building side of ramp).<br><br>ANSI 4.8.5 – see Appendix II A-38<br><br>c.  The ramp to building 31 is not equipped with handrails on both sides (no railing on building side of ramp).<br><br>ANSI 4.8 – see Appendix II A-38, A-39 | Provide handrails on both sides of the ramps leading to buildings 5(AB), 9 (EF), and 31 that comply with ANSI 4.8.5.<br><br>[HUD Guidelines Req. 2 and ANSI 4.8.5] |

1
2
3
4
## APPENDIX B
5
6
7
*Retrofits to Dwelling Units*
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Appendix B(1)(a)
## Sierra Sage Apartments
## FHA Retrofit Units

The following units are to be retrofitted at Sierra Sage pursuant to the list of retrofits set forth in Appendix B(1)

| Building | Type | Units | Units to be Retrofitted |
|----------|------|-------|-------------------------|
| 1 | 2-br | A & B | X |
|   |      | E & F | X |
| 2 | 2-br | A & B | X |
|   |      | E & F | X |
| 3 | 2-br | A & B | X |
|   |      | E & F |   |
| 4 | 2-br | A & B | X |
|   |      | E & F |   |
| 5 | 2-br | A & B |   |
|   |      | E & F | X |
| 6 | 2-br | A & B | X |
|   |      | E & F | X |
| 7 | 2-br | A & B | X |
|   |      | E & F | X |
| 8 | 2-br | A & B | X |
|   |      | E & F | X |
| 9 | 3-br | A & B | X |
|   |      | E & F | X |
| 10 | 2-br | A & B | X |
|    |      | E & F | X |
| 11 | 2-br | A & B | X |
|    |      | E & F |   |
| 12 | 2-br | A & B | X |
|    |      | E & F |   |
| 13 | 2-br | A & B | X |

-vi-

| | | | |
|---|---|---|---|
| | | E & F | |
| 14 | 2-br | A & B | X |
| | | E & F | |
| 15 | 2-br | A & B | X |
| | | E & F | |
| 16 | 1-br | A & B | |
| | | E & F | |
| 17 | 2-br | A & B | |
| | | E & F | X |
| 18 | 2-br | A & B | |
| | | E & F | X |
| 19 | 2-br | A & B | |
| | | E & F | X |
| 20 | 1-br | A & B | |
| | | E & F | |
| 21 | 2-br | A & B | X |
| | | E & F | X |
| 22 | 2-br | A & B | X |
| | | E & F | X |
| 23 | 2-br | A & B | X |
| | | E & F | X |
| 24 | 2-br | A & B | X |
| | | E & F | X |
| 25 | 2-br | A & B | X |
| | | E & F | X |
| 26 | 2-br | A & B | X |
| | | E & F | X |
| 27 | 2-br | A & B | X |
| | | E & F | |
| 28 | 1-br | A & B | X |
| | | G & H | X |

-vii-

### APPENDIX B(1)[3]

## ACCESSIBILITY MODIFICATIONS[4] TO DWELLING UNIT INTERIORS
## AT SIERRA SAGE APARTMENTS

| Location | Violation | Retrofit |
|---|---|---|
| 1 BR/ 1 BA - Plan C | The interior passage doors within the unit do not provide a nominal 32" clear opening.<br><br>HUD Guidelines Req 3, (2) – similar to Appendix II A-21, II A-22<br><br>Bathroom door is 28" wide, 26" opening | Install 2'-10" door to bathroom to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | Bedroom door is 30" wide, 28" opening | Install 2'-10" door to bedroom to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | The interior edge of the entrance door threshold has an abrupt ¾" change of level that is not beveled 1:2 or less.<br><br>HUD Guidelines Req 4, (4) – see Appendix I A-24 | Replace non-compliant entry door threshold with a threshold that does not exceed .75" and is beveled.<br><br>[HUD Guidelines Req. 4] |
| | Outlets are located without both receptacles within the 15" – 48" reach above finish floor range allowed (lower receptacle at 14", upper receptacle at 15½" above finish floor).<br><br>HUD Guidelines Req 5– see Appendix I A-26 | Raise the electrical outlets above the floor to 15" to the center of the bottom outlet, or provide comparable outlets in accessible locations within the same area, subject to the ultimate approval of the neutral inspector defined in paragraph 19 of the Consent Decree.<br><br>[HUD Guidelines Req. 5] |

---

[3]References in the chart to "Appendix" refers to the photographs contained in the appendix to the "Fair Housing Accessibility Compliance Report" (Dec. 8, 2003) for Sierra Sage Apartments prepared by Phill Zook.

[4]In addition to the retrofits listed below, ERGS, Inc. shall adopt a formal policy of installing grab bars in bathrooms at Sierra Sage upon request and without cost to any tenant who requests them for any unit in which reinforcements for grab bars do not exist. A notice of this policy shall be distributed to all current tenants within thirty (30) days after the date of entry of the Consent Decree, to all new tenants at or about the time they execute a lease, and to all tenants on an annual basis.

-i-

| | | |
|---|---|---|
| | The thermostat is located with operable parts higher than the 48" maximum allowed above finish floor (58" measured).<br><br>HUD Guidelines Req 5– similar to Appendix II A-25 | Lower the thermostat controls above the floor to 48" to the center of the controls.<br><br>[HUD Guidelines Req. 5] |
| | In the kitchen there is not 30" x 48" clear floor space for either forward or parallel approach centered on the refrigerator (located against adjacent side wall).<br><br>HUD Guidelines Req 7, (1), (a) – see Appendix I A-27 | Modify the kitchen to provide approximately 30" x 48" centered clear floor space to allow frontal or parallel wheelchair approach to all kitchen fixtures and appliances.<br><br>[HUD Guidelines Req. 7] |
| --- | In the kitchen there is not 40" clearance between counter tops and opposing counter tops and counter tops and appliances.<br>35" measured between opposing counter tops<br>31" measured between face of refrigerator and opposing countertops<br><br>HUD Guidelines Req 7, (1), (b) – see Appendix I A-27 | Modify the kitchen to provide approximately 40" between counter tops and opposing counter tops and appliances.<br><br>[HUD Guidelines Req. 7] |
| | In the bathroom there is not a 30" x 48" clear floor space outside the swing of the door.<br><br>HUD Guidelines Req 7, (2), (a), (i) | Reconfigure bathroom to provide either a Type A or Type B bathroom.<br><br>[HUD Guidelines Req. 7(2)(a) or (2)(b)] |
| | In the bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (15" measured from the lavatory centerline and face of adjacent wall).<br><br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-29 | Reconfigure bathroom to provide either a Type A or Type B bathroom.<br><br>[HUD Guidelines Req. 7(2)(a) or (2)(b) ] |
| | In the bathroom there is not a minimum 33" clearance required behind toilet between side wall and side of lavatory cabinet) 29½" measured).<br><br>HUD Guidelines Req 7, (2), (a), (ii) | Reconfigure bathroom to provide either a Type A or Type B bathroom.<br><br>[HUD Guidelines Req. 7(2)(a) or (2)(b)] |

-ii-

| 2 BR/ 2 BA - Plan A | The interior passage doors do not provide a nominal 32" clear opening.<br><br>HUD Guidelines Req 3, (2) – similar to Appendix II A-21, II A-22<br><br>(2) bathroom doors are 30" wide, 28" opening | Install 2'-10" door to bathrooms to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
|---|---|---|
| | (2) bedroom doors are 28" wide, 26" opening | Install 2'-10" door to bedrooms to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | The interior edge of the entrance door threshold has an abrupt ¾" change of level that is not beveled 1:2 or less.<br><br>HUD Guidelines Req 4, (4) – see Appendix I A-24 | Replace non-compliant entry door threshold with a threshold that does not exceed .75" and is beveled.<br><br>[HUD Guidelines Req. 4] |
| | Outlets are located without both receptacles within the 15" – 48" reach above finish floor range allowed (lower receptacle at 10½", upper receptacle at 12" above finish floor).<br><br>HUD Guidelines Req 5– see Appendix I A-26-25 | Raise the electrical outlets above the floor to 15" to the center of the bottom outlet, or provide comparable outlets in accessible locations within the same area, subject to the ultimate approval of the neutral inspector defined in paragraph 19 of the Consent Decree.<br><br>[HUD Guidelines Req. 5] |
| | The thermostat is located with operable parts higher than the 48" maximum allowed above finish floor (57" measured).<br><br>HUD Guidelines Req 5– see Appendix II A | Lower the thermostat controls above the floor to 48" to the center of the controls.<br><br>[HUD Guidelines Req. 5] |
| | In the hall bathroom there is not a 30" x 48" clear floor space outside the swing of the door (33" measured from highest arc of door and face of opposing bathtub)<br><br>HUD Guidelines Req 7, (2), (a), (i) – see Appendix I A-28 | Reconfigure master bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |

-iii-

| | | |
|---|---|---|
| | In the hall bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (14" measured from sink centerline to adjacent side wall).<br><br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-29 | Reconfigure master bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the hall bathroom there is not a 30" clearance between the rim of toilet and opposing wall for a forward 30" x 48" approach to bathtub (28" measured).<br><br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-30 | Reconfigure master bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| 2 BR/2 BA – Plan B | The interior passage doors do not provide a nominal 32" clear opening.<br><br>(2) bathroom doors are 30" wide, 28" opening<br><br>HUD Guidelines Req 3, (2) – similar to Appendix II A-21, A-22 | Install 2'-10" door to bathrooms to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | (2) bedroom doors are 28" wide, 26" opening | Install 2'-10" door to bedrooms to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | The interior edge of the entrance door threshold has an abrupt ¾" change of level that is not beveled 1:2 or less.<br><br>HUD Guidelines Req 4, (4) – see Appendix I A-24 | Replace non-compliant entry door threshold with a threshold that does not exceed .75" and is beveled.<br><br>[HUD Guidelines Req. 4] |
| | Outlets are located without both receptacles within the 15" – 48" reach above finish floor range allowed (lower receptacle at 10½", upper receptacle at 12" above finish floor)<br><br>HUD Guidelines Req 5– see Appendix I A-26 | Raise the electrical outlets above the floor to 15" to the center of the bottom outlet, or provide comparable outlets in accessible locations within the same area, subject to the ultimate approval of the neutral inspector defined in paragraph 19 of the Consent Decree.<br><br>[HUD Guidelines Req. 5] |

-iv-

| | | |
|---|---|---|
| | The thermostat is located with operable parts higher than the 48" maximum allowed above finish floor (57" measured).<br><br>HUD Guidelines Req 5– similar to Appendix II A-25 | Lower the thermostat controls above the floor to 48" to the center of the controls.<br><br>[HUD Guidelines Req. 5] |
| | In the hall bathroom there is not a 30" x 48" clear floor space outside the swing of the door (26½" measured from highest arc of door and face of opposing bathtub).<br><br>HUD Guidelines Req 7, (2), (a) (i) – see Appendix I A-28<br><br>In the master bathroom there is not a 30" x 48" clear floor space outside the swing of the door (33" measured between arc at door jamb and face of bathtub).<br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-28 | Reconfigure hall bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the hall bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (12" measured from lavatory centerline to adjacent side wall).<br><br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-29<br><br>In the master bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (14" measured from lavatory centerline and face of adjacent wall).<br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-29 | Reconfigure hall bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |

-v-


| | | |
|---|---|---|
| | In the hall bathroom there is not a 33" minimum clearance at the back wall of the toilet between the bathtub and opposing lavatory base cabinet.<br><br>HUD Guidelines Req 7, (2), (a), (ii)<br><br>In the master bathroom there is not a 18" clearance from the toilet centerline and adjacent bathtub (15" measured).<br><br>HUD Guidelines Req 7, (2), (a), (ii) | Reconfigure hall bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| **2 BR/2 BA - Plan B, HC** | The interior edge of the entrance door threshold has an abrupt ¾" change of level that is not beveled 1:2 or less.<br><br>HUD Guidelines Req 4, (4) – see Appendix I A-24 | Replace non-compliant entry door threshold with a threshold that does not exceed .75" and is beveled.<br><br>[HUD Guidelines Req. 4] |
| | The thermostat is located with operable parts higher than the 48" maximum allowed (56" measured).<br><br>HUD Guidelines Req 5– similar to Appendix II A-25 | Lower the thermostat controls above the floor to 48" to the center of the controls.<br><br>[HUD Guidelines Req. 5] |
| | In the second bathroom there is not a 30" x 48" clear floor space outside the swing of the door.<br><br>HUD Guidelines Req. 7, (2)(a)(1) | Reconfigure master bathroom to provide a "Type B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the second bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (14" measured from lavatory centerline and adjacent side wall).<br><br>HUD Guidelines Req. 7, (2)(a)(ii) – see Appendix I A-29 | Reconfigure master bathroom to provide a "Type B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| **2 BR/2 BA - Plan C, HC** | The door to the hall bathroom does not provide a nominal 32" clear opening (28" door, 26" opening).<br><br>HUD Guidelines Req 3, (2) – similar to Appendix II A-21, A-22 | Install 2'-10" door to bathrooms to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |

| | | | |
|---|---|---|---|
| | | The interior edge of the entrance door threshold has an abrupt ¾" change of level that is not beveled 1:2 or less.<br><br>HUD Guidelines Req 4, (4) – see Appendix I A-24 | Replace non-compliant entry door threshold with a threshold that does not exceed .75" and is beveled.<br><br>[HUD Guidelines Req. 4] |
| | | In the hall bathroom there is not a 30" x 48" clear floor space outside the swing of the door.<br><br>HUD Guidelines Req 7, (2), (a) – see Appendix I A-28 | Reconfigure hall bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | | In the hall bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (12½" measured from lavatory centerline to adjacent side wall).<br><br>HUD Guidelines Req 7, (1), (a) (ii) – see Appendix I A-29 | Reconfigure hall bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | | In the hall bathroom there is not 18" clearance from toilet centerline to face of bathtub, and there is not 33" minimum clearance behind toilet between bathtub and opposing side of lavatory (32" measured).<br><br>HUD Guidelines Re 7, (2), (a), (ii) - 24 | Reconfigure hall bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | 3 BR/2 BA Plan | The interior passage doors within the unit do not provide a nominal 32" clear opening.<br><br>HUD Guidelines Req 3, (2) – similar to Appendix II A-21, A-22<br><br>Bathroom doors are 28" wide, 26" opening | Install 2'-10" door to bathrooms to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | | Bedroom doors are 30" wide, 28" opening | Install 2'-10" door to bedrooms to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | | Walk-in closet door is 28" wide, 26" opening | Install 2'-10" door to walk-in closets to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |

-vii-

| | | |
|---|---|---|
| 1<br>2<br>3 | The interior edge of the entrance door threshold has an abrupt ¾" change of level that is not beveled 1:2 or less.<br><br>HUD Guidelines Req 4, (4) – see Appendix I A-24 | Replace non-compliant entry door threshold with a threshold that does not exceed .75" and is beveled.<br><br>[HUD Guidelines Req. 4] |
| 4<br>5<br>6<br>7<br>8 | Wall outlets are located without both receptacles within the 15" – 48" reach above finish floor range allowed (lower receptacle at 12", upper receptacle at 13½" above finish floor)<br><br>HUD Guidelines Req 5– see Appendix I A-26 | Raise the electrical outlets above the floor to 15" to the center of the bottom outlet, or provide comparable outlets in accessible locations within the same area, subject to the ultimate approval of the neutral inspector defined in paragraph 19 of the Consent Decree.<br><br>[HUD Guidelines Req. 5] |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16 | In the hall bathroom there is not a 30" x 48" clear floor space outside the swing of the door.<br><br>HUD Guidelines Req 7, (2), (a) (i) – see Appendix I A-28<br><br>In the master bathroom there is not a 30" x 48" clear floor space outside the swing of the door.<br><br>HUD Guidelines Req 7, (2), (a) (i) – see Appendix I A-28 | Reconfigure master bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
| 17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | In the hall bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (14" measured from lavatory centerline to adjacent side wall).<br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-29<br><br>In the master bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (14" measured from lavatory centerline to adjacent side wall).<br><br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-29 | Reconfigure master bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |

-viii-

| | In the hall bathroom there is not a 30" clearance between the rim of toilet and opposing wall for a forward 30" x 48" approach to bathtub (29" measured).<br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-30<br><br>In the master bathroom there is not a 30" clearance between the rim of toilet and opposing wall for a forward 30" x 48" approach to bathtub (29" measured).<br><br>HUD Guidelines Req 7, (2), (a), (ii) – see Appendix I A-30 | Reconfigure master bathroom to provide a Type "B" bathroom<br><br>[HUD Guidelines Req. 7(2)(b)] |
|---|---|---|

-ix-

# APPENDIX B(2)(a)

## Silver Lake Apartments
## Phases I - III[5]
## FHA Retrofit Units

The following units are to be retrofitted at Silver Lake pursuant to the list of retrofits
set forth in Appendix B(2).

| Building | Type | Units | Units to be Retrofitted | | Building | Type | Units | Units to be Retrofitted |
|---|---|---|---|---|---|---|---|---|
| 1 | 1-br | A & B | X | | 17 | 2-br | A & B | |
| | | E & F | X | | | | E & F | X |
| 2 | 1-br | A & B | X | | 18 | Maint | | |
| | | E & F | X | | | | | |
| 3 | 2-br | A & B | X | | 19 | 2-br | A & B | X |
| | | E & F | X | | | | E & F | X |
| 4 | 2-br | A & B | X | | 20 | 2-br | A & B | X |
| | | E & F | X | | | | E & F | X |
| 5 | 1-br | A & B | X | | 21 | 2-br | A & B | X |
| | | E & F | | | | | E & F | X |
| 6 | 1-br | A & B | X | | 22 | 2-br | A & B | X |
| | | E & F | | | | | E & F | X |
| 7 | 1-br | A & B | X | | 23 | 2-br | A & B | X |
| | | E & F | X | | | | E & F | X |
| 8 | 1-br | A & B | X | | 24 | 2-br | A & B | X |
| | | E & F | | | | | E & F | X |
| 9 | 1-br | A & B | X | | 25 | 2-br | A & B | X |
| | | E & F | X | | | | E & F | X |
| 10 | 2-br | A & B | X | | 26 | 2-br | A & B | X |
| | | E & F | | | | | E & F | X |

[5] Phases IV - V of Silver Lake were redesigned to comply with the accessibility requirements of the Fair Housing Act after Plaintiff SSFHC initiated its lawsuit and units in those phases were constructed pursuant to those revised plans. Accordingly, defendants are not required to undertake retrofits in units in buildings 32 - 44 at Silver Lake. Of the buildings, buildings 32 - 35 are inaccessible for reasons pertaining to site impracticality.

-X-

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 11 | 2-br | A & B | X | | 27 | 2-br | A & B | X |
| | | E & F | X | | | | E & F | |
| 12 | 2-br | A & B | X | | 28 | 2-br | A & B | X |
| | | E & F | X | | | | E & F | X |
| 13 | 1-br | A & B | X | | 29 | 2-br | A & B | X |
| | | E & F | X | | | | E & F | |
| 14 | 2-br | A & B | | | 30 | 1-br | A & B | X |
| | | E & F | X | | | | E & F | |
| 15 | 2-br | A & B | | | 31 | 1-br | A & B | X |
| | | E & F | X | | | | E & F | X |
| 16 | 1-br | A & B | X | | | | | |
| | | E & F | | | | | | |

-xi-

# APPENDIX B(2)[1]

# ACCESSIBILITY MODIFICATIONS[2] TO DWELLING UNIT INTERIORS AT SILVER LAKE APARTMENTS

| Location | Violation | Retrofit |
|---|---|---|
| 1 BR/1 BA - Plan A | The interior passage doors within the unit do not provide a nominal 32" clear opening.<br><br>HUD Guidelines Req 3, (2) – see Appendix II A-21, II A-22<br><br>Bathroom door is 28" wide: 25½" opening | Install 2'-10" door to bathroom to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
|  | Bedroom door is 30" wide: 27¾" opening | Install 2'-10" door to bedroom to provide 32" nominal clear width.<br>[HUD Guidelines Req. 3] |
|  | Walk-in closet door is 28" wide: 25½" opening | Install 2'-10" doors to walk-in closets to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
|  | The height of the entrance door threshold exceeds the ¾" maximum allowed (1" measured), and is not beveled 1:2 or less.<br><br>HUD Guidelines Req 4, (4) – see Appendix II A-21, II A-23<br><br>A 1" step on the exterior of the entrance threshold exceeds the ½" maximum allowed.<br><br>HUD Guidelines Req 4, (6) – see Appendix II A-24 | Reconfigure noncompliant threshold and step so that the height between the landing and the top of the threshold does not exceed 1 1/4" and the change in height is beveled.<br><br>[HUD Guidelines Req. 4] |

---

[1] References in the chart to "Appendix" refers to the photographs contained in the appendix to the "Fair Housing Accessibility Compliance Report" (Dec. 8, 2003) for Silver Lake Apartments prepared by Phill Zook.

[2] In addition to the retrofits listed below, ERGS, Inc. shall adopt a formal policy of installing grab bars in bathrooms at Silver Lake upon request and without cost to any tenant who requests them for any unit in which reinforcements for grab bars do not exist. A notice of this policy shall be distributed to all current tenants within thirty (30) days after the date of entry of the Consent Decree, to all new tenants at or about the time they execute a lease, and to all tenants on an annual basis.

-i-

| | | | |
|---|---|---|---|
| | | The thermostat is located with operable parts higher than the 48" maximum allowed above finish floor (57½" measured).<br><br>HUD Guidelines Req 5 – see Appendix II A-25 | Lower the thermostat controls so that the center of the controls is no higher than 48" above the floor.<br><br>[HUD Guidelines Req. 5] |
| | | There is not an accessible route into the bathroom. The lavatory base cabinet protrudes into the doorway reducing the width of opening to 26" wide.<br><br>HUD Guidelines Req 4, (1) – see Appendix II A-30 | Reconfigure bathroom to comply with the requirements for either a Type A or Type B bathroom [HUD Guidelines – Req. 7] , including widening entry door using 2'10" door and either moving sink and water closet; or reducing length of vanity.<br><br>[HUD Guidelines Req. 4] |
| | | In the kitchen there is not a 30" x 48" clear floor space parallel to and centered on the range (range located snug against adjacent side wall).<br><br>HUD Guidelines Req 7, (1),(a) The Design Manual, pg. 7.4 – see Appendix II A-27 | Replace range with front control range that will not require reaching across burners to operate.<br><br>[HUD Guidelines Req. 7] |
| | | In the kitchen there is not 40" minimum clearance between face of refrigerator and opposing countertop (35½" measured).<br><br>HUD Guidelines Req 7, (1), (b) – see Appendix II A -28 | Replace refrigerator with less deep unit that creates 40" minimum clearance.<br><br>[HUD Guidelines Req. 7] |
| | 1 BR/1 BA – ACCESSIBLE Plan | The interior edge of the threshold at the primary entrance door is not beveled 1:2 or less.<br><br>HUD Guidelines Req 4, (4) – see Appendix II A-23 | Replace non-compliant entry door threshold with a threshold that does not exceed .75" and is beveled.<br><br>[HUD Guidelines Req. 4] |
| | | In the kitchen there is not a 30" x 48" clear floor space parallel to and centered on the range (range located snug against adjacent side wall).<br><br>HUD Guidelines Req 7, (1),(a) The Design Manual, pg. 7.4 – see Appendix II A-27 | Replace range with front control range that will not require reaching across burners to operate.<br><br>[HUD Guidelines Req. 7] |

-ii-

| | | |
|---|---|---|
| | In the kitchen there is not 40" minimum clearance between face of refrigerator and opposing countertop (38¼" measured).<br><br>HUD Guidelines Req 7, (1), (b) – see Appendix II A-28 | Replace refrigerator with less deep unit that creates 40" minimum clearance.<br><br>[HUD Guidelines Req. 7] |
| 1 BR/1 BA – Plan B | In the kitchen there is not a 30" x 48" clear floor space parallel to and centered on the range (range located snug against adjacent side wall).<br><br>HUD Guidelines Req 7, (1),(a) The Design Manual, pg. 7.4 – see Appendix II A-27 | Replace range with front control range that will not require reaching across burners to operate.<br><br>[HUD Guidelines Req. 7] |
| 2 BR/ 2 BA – Plan A | The interior passage doors within the unit do not provide a nominal 32" clear opening.<br><br>HUD Guidelines Req 3, (2) – see Appendix II A-21, II A-22<br><br>Bathroom doors (2) are 28" wide: 26" opening | Install 2'-10" doors to bathrooms to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | Bedroom doors (2) are 30" wide: 28" opening | Install 2'-10" doors to bedrooms to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | Walk-in closet door is 28" wide: 26" opening | Install 2'-10" doors to walk-in closets to provide 32" nominal clear width.<br><br>[HUD Guidelines Req. 3] |
| | The interior edge of the threshold at the primary entrance door is not beveled 1:2 or less.<br><br>HUD Guidelines Req 4, (4) see Appendix II A-28 | Replace non-compliant entry door threshold with a threshold that does not exceed .75" and is beveled.<br><br>[HUD Guidelines Req. 4] |

-iii-

| | | |
|---|---|---|
| | The thru-the-wall AC unit is located with operating controls lower than the 15" minimum allowed above finished floor (6" – 11" measured).<br><br>HUD Guidelines Req 5 – see Appendix II A-29 | Replace the AC unit – either upon request or, if no request is made, at the end of the useful life of the current unit -- with one where the operating controls are located no lower than 15" above the floor to the center of the controls  or are located in a remote control mechanism.<br><br>[HUD Guidelines Req. 5] |
| | Wall outlets are located with both receptacles lower than the 15" minimum allowed above finish floor (13" lower receptacle, 14½" upper receptacle).<br><br>HUD Guidelines Req 5 | Raise the electrical outlets above the floor to 15" to the center of the bottom outlet, or provide comparable outlets in accessible locations within the same area, subject to the ultimate approval of the neutral inspector defined in paragraph 19 of the Consent Decree.<br><br>[HUD Guidelines Req. 5] |
| | The thermostat is located with operable parts higher than the 48" maximum allowed above finish floor (57½" measured).<br><br>HUD Guidelines Req 5 – see Appendix II A-25 | Lower the thermostat controls above the floor to 48" to the center of the controls.<br><br>[HUD Guidelines Req. 5] |
| | In the hall bathroom there is not a 30" x 48" clear floor space outside the swing of the door.<br><br>HUD Guidelines Req 7, (2), (a) (ii) see Appendix II A-31<br><br>In the master bathroom there is not a 30" x 48" clear floor space outside the swing of the door.<br><br>HUD Guidelines Req 7, (2), (a) (i) – see Appendix II A-31 | Modify hall bathroom to comply with the requirements for a type B bathroom.  With a type B bathroom in the unit, the master bathroom in the unit  need not be modified to provide additional clear floor space.<br><br>[HUD Guidelines Req. 7(2)(b)] |

-iv-

| | | |
|---|---|---|
| | In the hall bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (the adjacent toilet overlaps clear floor space approximately 7" x 9").<br><br>HUD Guidelines Req 7, (2), (a) (ii) — see Appendix II A-32<br><br>In the master bathroom there is not a 30" x 48" clear floor space parallel to and centered on both the lavatories (13" and 14" measured from adjacent sidewalls to lavatories).<br><br>HUD Guidelines Req 7, (2), (a) (ii) — see Appendix II A-35 | Modify hall bathroom to comply with the requirements for a type B bathroom. With a type B bathroom in the unit, the master bathroom in the unit need not be modified to provide additional clear floor space.<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the hall bathroom there is not a 48" x 66" clear floor space at the toilet for a forward approach (45" measured between bathtub and opposing cabinet).<br><br>HUD Guidelines Req 7, (2), (a) (ii) — see Appendix II A-33<br><br>In the master bathroom there is not a 48" x 66" clear floor space at the toilet for a forward approach (44½" measured between face of the bathtub and opposing cabinets).<br><br>HUD Guidelines Req 7, (2), (a) (ii) — see Appendix II A-33 | Modify hall bathroom to comply with the requirements for a type B bathroom.<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the hall bathroom there is not a 48" x 60" or 30" x 60" clear floor space at the bathtub for either a forward or parallel approach. The adjacent toilet overlaps the parallel approach; the opposing cabinets obstruct a forward approach.<br><br>HUD Guidelines Req 7, (2), (a) (ii) — see Appendix II A-33, II A-34<br><br>In the master bathroom there is not a 48" x 60" or 30" x 60" clear floor space at the bathtub for either a forward or parallel approach. The adjacent toilet overlaps the parallel approach; the opposing cabinets obstruct a forward approach.<br><br>The Guidelines REQ 7, (2), (a) (ii) — see Appendix II A-33, II A-34 | Modify hall bathroom to comply with the requirements for a type B bathroom. With a type B bathroom in the unit, the master bathroom in the unit need not be modified to provide additional clear floor space.<br><br>[HUD Guidelines Req. 7(2)(b)] |

-v-

| | | |
|---|---|---|
| **2 BR/2 BA - Plan B** | In the hall bathroom there is not a 30" x 48" clear floor space outside the swing of the door (41½" was measured from rim of toilet to opposing door wall, even taking into account 4"- 5" of 9" height toe space under the toilet rim).<br><br>HUD Guidelines Req 7, (2),(a) (1) | Modify hall bathroom to comply with the requirements for a type B bathroom.<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the hall bathroom there is not a 30" x 48" clear floor space parallel to and centered on the lavatory (The adjacent toilet overlaps the required clear floor space by approximately 3", even taking into account 3"– 4" of 9" high toe space under rim of toilet).<br><br>HUD Guidelines Req 7, (1), (a) (ii) – see Appendix II A-32<br><br>In the master bathroom there is not a 30" x 48" clear floor space parallel to and centered on both lavatories (14" measured from adjacent sidewalls at both lavatories).<br>HUD Guidelines Req 7, (1), (a) (ii) – see Appendix II A-35 | Modify hall bathroom to comply with the requirements for a type B bathroom. With a type B bathroom in the unit, the master bathroom in the unit need not be modified to provide additional clear floor space.<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the hall bathroom there is not a 48" x 66" clear floor space at the toilet for a forward approach (43" measured between the bathtub and opposing cabinet).<br><br>HUD Guidelines Req 7, (1), (a) (ii) – see Appendix II A-33<br><br>In the master bathroom there is not a 48" x 66" clear floor space at the toilet for a forward approach (41" measured between face of bathtub and opposing cabinets).<br><br>HUD Guidelines Req 7, (2), (a) (ii) – see Appendix II A-33 | Modify hall bathroom to comply with the requirements for a type B bathroom. With a type B bathroom in the unit, the master bathroom in the unit need not be modified to provide additional clear floor space.<br><br>[HUD Guidelines Req. 7(2)(b)] |

-vi-

| | | |
|---|---|---|
| | In the hall bathroom there is not a 48" x 60" clear floor space at the bathtub for either a forward or parallel approach. The adjacent toilet overlaps the parallel approach. The adjacent toilet overlaps the parallel approach; the opposing cabinets obstruct the forward approach.<br><br>HUD Guidelines Req 7, (1), (a) (ii) – see Appendix II A-33, II A-34 | Modify hall bathroom to comply with the requirements for a type B bathroom. With a type B bathroom in the unit, the master bathroom in the unit need not be modified to provide additional clear floor space.<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the master bathroom, there is not a 48" x 60" or 30" x 60" clear floor space at the bathtub for either a forward or parallel approach. The adjacent toilet overlaps the parallel approach; the opposing cabinet obstructs the forward approach.<br><br>HUD Guidelines Req 7, (2) (a) (ii) – see Appendix II A-33, II A-34 | |
| **3 BR/2 BA Plan** | In the hall bathroom the counter top and sink were not installed. To meet space requirements the lavatory will have to be off-set in the 36" base cabinet so the centerline of the lavatory is at least 24" from the adjacent sidewall. | Modify hall bathroom to comply with the requirements for a type B bathroom.<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the master bathroom there is not a 30" x 48" clear floor space parallel to and centered on both the lavatories (14" and 16" was measured from the adjacent sidewalls to centerline of lavatories).<br><br>HUD Guidelines Req 7, (1), (a) (ii) – see Appendix II A-35 | Modify hall bathroom to comply with the requirements for a type B bathroom. With a type B bathroom in the unit, the master bathroom in the unit need not be modified to provide additional clear floor space.<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | In the master bathroom there is not a 48" x 56" clear floor space at the toilet for a side approach (The toilet is located in compartment with bathtub with 36" between bathtub and opposing compartment wall).<br><br>HUD Guidelines Req 7, (1), (a) (ii) – see Appendix II A-37 | Modify hall bathroom to comply with the requirements for a type B bathroom. With a type B bathroom in the unit, the master bathroom in the unit need not be modified to provide additional clear floor space.<br><br>[HUD Guidelines Req. 7(2)(b)] |
| | There is not a 48" x 60" clear floor space at the bathtub for a forward approach (the bathtub is located in compartment with toilet with 36" between bathtub and opposing compartment wall).<br><br>HUD Guidelines Req 7, (1), (a) (ii) – see Appendix A-37 | |

1
2
3
4

**APPENDIX C**

5
6
7
8

*Notice to Residents of Public and Common Use Area Retrofits*

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-viii-

**APPENDIX C(1)**

**NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS**
**AT SIERRA SAGE APARTMENTS**

Sierra Sage Apartments is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that the public and common use areas at complexes such as Sierra Sage Apartments have certain features of physical accessibility for persons with disabilities.

As a result of recent events, inaccessible aspects of the public and common areas of the complex have been brought to our attention. We welcome persons with disabilities as residents and guests at Sierra Sage Apartments. We are writing this notice to let you know that beginning on _____, 2005, contractors will be coming onto the property to begin the process of modifying certain aspects of the public and common use areas. We expect the process to last approximately _____ weeks.

Generally, the contractors will modify or "retrofit" certain sidewalks, install curb cuts and ramps or modify existing ones, eliminate some of the steps along certain pathways to certain ground-floor units, and install lever hardware on the outside doors to dwelling units. They will also be making some modifications to the clubhouse/leasing office, mailboxes, dumpsters, and picnic areas to make them more accessible to persons with disabilities. We apologize for any inconveniences you may incur as a result of this work.

If you have any questions regarding these modifications, please contact us at _____.

-i-

**APPENDIX C(2)**

**NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS**
**AT SILVER LAKE APARTMENTS**

Silver Lake Apartments is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that the public and common use areas at complexes such as Silver Lake Apartments have certain features of physical accessibility for persons with disabilities.

As a result of recent events, inaccessible aspects of the public and common areas of the complex have been brought to our attention. We welcome persons with disabilities as residents and guests at Silver Lake Apartments. We are writing this notice to let you know that beginning on _____, 2005, contractors will be coming onto the property to begin the process of modifying certain aspects of the public and common use areas. We expect the process to last approximately _____ weeks.

Generally, the contractors will modify or "retrofit" certain sidewalks, install curb cuts and ramps or modify existing ones, eliminate some of the steps along certain pathways to certain ground-floor units, and install lever hardware on the outside doors to dwelling units. They will also be making some modifications to the clubhouse/leasing office, mailboxes, dumpsters, and picnic areas to make them more accessible to persons with disabilities. We apologize for any inconveniences you may incur as a result of this work.

If you have any questions regarding these modifications, please contact us at _____.

-ii-

**APPENDIX D**

*Notice to Residents Regarding Retrofitting of Ground-Floor Units*

## APPENDIX D (1)

## NOTICE OF RETROFITS TO INTERIOR GROUND-FLOOR UNITS
## AT SIERRA SAGE APARTMENTS

Sierra Sage Apartments is dedicated to the principle of equal housing opportunity.  The federal Fair Housing Act requires that ground floor apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

Due to litigation brought by the Silver State Fair Housing Center and the United States Department of Justice, accessibility barriers at the complex have been brought to our attention and we are currently in the process of correcting those barriers.  We have identified your unit as one that is covered by the Fair Housing Act's accessibility requirements.  We welcome people with disabilities as residents and guests at Sierra Sage Apartments and would like to make them as comfortable as possible.  Therefore, we have agreed to make certain modifications to all of the ground-floor units covered by the Fair Housing Act's accessibility requirements so that they will be more accessible to persons with disabilities.

Under the terms of our settlement of the litigation, we are required to complete the modifications to all the interiors of units covered by the settlement within two years from the date of the settlement (_____, 2005).  We are giving you notice that we are in the process of scheduling a retrofit to your unit.  Should the modifications require your temporary relocation, we will pay reasonable relocation and housing expenses while the modifications are being made.  Depending on the particular features of your unit, the alterations may require such modifications as:

- Lowering entry or interior door thresholds
- Widening interior doorways
- Providing more clear floor space in front of and/or adjacent to kitchen and bathroom fixtures
- Raising electrical outlets
- Replacing entry door knobs with lever hardware

A representative will be contacting you soon to review these modifications and to discuss a time frame within which these modifications will be made.

If you have any questions, please contact us at _____.

-i-

**APPENDIX D (2)**

**NOTICE OF RETROFITS TO INTERIOR GROUND-FLOOR UNITS
AT SILVER LAKE APARTMENTS**

Silver Lake Apartments Apartments is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that ground floor apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

Due to litigation brought by the Silver State Fair Housing Center and the United States Department of Justice, accessibility barriers at the complex have been brought to our attention and we are currently in the process of correcting those barriers. We have identified your unit as one that is covered by the Fair Housing Act's accessibility requirements. We welcome people with disabilities as residents and guests at Silver Lake Apartments and would like to make them as comfortable as possible. Therefore, we have agreed to make certain modifications to all of the ground-floor units covered by the Fair Housing Act's accessibility requirements so that they will be more accessible to persons with disabilities.

Under the terms of our settlement of the litigation, we are required to complete the modifications to all the interiors of units covered by the settlement within two years from the date of the settlement (_____, 2005). We are giving you notice that we are in the process of scheduling a retrofit to your unit. Should the modifications require your temporary relocation, we will pay reasonable relocation and housing expenses while the modifications are being made. Depending on the particular features of your unit, the alterations may require such modifications as:

- Lowering entry or interior door thresholds
- Widening interior doorways
- Providing more clear floor space in front of and/or adjacent to kitchen and bathroom fixtures
- Raising electrical outlets
- Replacing entry door knobs with lever hardware

A representative will be contacting you soon to review these modifications and to discuss a time frame within which these modifications will be made.

If you have any questions, please contact us at _____.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX E**

*Employee Statement*

-iii-

**APPENDIX E**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT DECREE**

On _____, I received copies of and have read the Consent Decree entered by the federal district court in <u>Silver State Fair Housing Council and United States of America</u> v. <u>ERGS, Inc.</u>, C.A.No. CV-N-02-0615-DWH (VPC) (D. Nev.) (base file).   I have had all of my questions concerning the Consent Decree, the Fair Housing Act, and the Americans with Disabilities Act answered to my satisfaction.

_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)

-i-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX F

*Notice to Potential Victims*

**APPENDIX F**

**NOTICE TO POTENTIAL VICTIMS OF HOUSING DISCRIMINATION**

On _____, 2005, the United States District Court for the District of Nevada entered a consent decree resolving litigation brought by the Silver State Fair Housing Council and the United States Department of Justice involving the **Sierra Sage Apartments**, 6060 Silver Lake Road, Reno, Nevada and the **Silver Lake Apartments**, 7350 Silver Lake Road, Reno, Nevada. The litigation alleged that both complexes, as designed and constructed, failed to include certain features of accessible design required by the Fair Housing Act in both exterior and interior common areas and in ground floor apartments.

Under this consent decree, you may be entitled to receive monetary relief if you or anyone you know:

- **WAS DISCOURAGED FROM LIVING AT SIERRA SAGE APARTMENTS OR SILVER LAKE APARTMENTS BECAUSE OF THE LACK OF ACCESSIBILITY FEATURES;**

- **HAS BEEN HURT IN ANY WAY BY THE LACK OF PHYSICAL ACCESSIBILITY FEATURES AT SIERRA SAGE APARTMENTS OR SILVER LAKE APARTMENTS; OR**

- **PAID TO HAVE YOUR APARTMENT AT SIERRA SAGE APARTMENTS OR SILVER LAKE APARTMENTS MADE MORE PHYSICALLY ACCESSIBLE.**

If you wish to make a claim for discrimination on the basis of disability, or if you have any information about persons who may have such a claim, please contact the **United States Department of Justice** at 1-800-896-7743. You may also write to:

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section – NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Attn: DJ 175-46-112

**NOTE: You must call or write no later than _____, 2005.**

-i-

1
2
3
4
**APPENDIX G**
5
6
7
8
*Release*
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX G**

**RELEASE**

**RELEASE OF ALL CLAIMS**

    In consideration of and contingent upon the payment of the sum of _____ dollars ($_____), pursuant to the Consent Decree entered in <u>Silver State Fair Housing Council and United States</u> v. <u>ERGS, Inc.</u>, United States District Court, District of Nevada, I hereby release and forever discharge the Defendants named in this action from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in this action as of the date of the entry of that Consent Decree. I fully acknowledge and agree that this release of the Defendants shall be binding on my heirs, representatives, executors, successors, administrators, and assigns. I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____

(Signature)

NAME: _____

ADDRESS: _____

_____

DATE: _____

-i-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## APPENDIX H

*Certification of Fair Housing Training*

**APPENDIX H**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act, including

its requirements concerning physical accessibility for people with disabilities.  I have had all of

my questions concerning the Fair Housing Act answered to my satisfaction.


_____

(Signature)


_____

(Print name)


_____

(Position)


_____

(Date)

-i-