Michael Allen
Stephen M. Dane
John P. Relman
Thomas J. Keary
Pending admission *pro hac vice*
D. Scott Chang, #146403
Relman & Dane, PLLC
1225 19th Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Fax: (202) 728-0848
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Fair Housing Alliance, Inc., et al., ) | Case No. C07-3255 - SBA |
| Plaintiffs, ) | |
| v. ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT HIGHPOINTE VILLAGE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| A.G. Spanos Construction, Inc.; et al., ) | |
| Defendants. ) | |

[Fed. R. Civ. P. 12(b)(6)]

Hearing Date: March 11, 2008
Time:         1:00 p.m.
Dept:         Courtroom 3

Complaint Filed:  June 20, 2007

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................iii

I.      INTRODUCTION AND SUMMARY OF ARGUMENT...........................................1

II.     FACTUAL BACKGROUND............................................................................5

III.    ARGUMENT................................................................................................7

    A.  STANDARD OF REVIEW UNDER RULE 12(b)(6)................................7

    B.  THE STATUTE OF LIMITATIONS DOES NOT BAR SUIT AGAINST HIGHPOINTE
        ...................................................................................................7

    C.  PLAINTIFFS NEED NOT SUE ON BEHALF OF PEOPLE WITH DISABILITIES, AND
        NEED NOT ALLEGE THAT THEY ARE MEMBERS OF THE PROTECTED CLASS IN
        ORDER TO BE "AGGRIEVED PERSONS" UNDER THE FAIR HOUSING ACT .........11

    D.  PLAINTIFFS HAVE ADEQUATELY PLED THEIR STANDING TO SUE UNDER THE
        FHA.............................................................................................11

National Fair Housing Alliance, et al. v. A.G. Spanos Construction, Inc., et al: Memorandum Of Points And Authorities In Support Of Plaintiffs' Opposition To Defendant Highpointe Village's Motion To Dismiss Plaintiffs' First Amended Complaint

## TABLE OF AUTHORITIES

### CASES

*Alexander v. Riga*, 208 F.3d 419 (3d Cir. 2000)...........................................................................12

**Dion, LLC v. Infotek Wireless, Inc.,** 2007 WL 3231738 (N.D.Cal. Oct. 30, 2007) ......................7

*Equal Rights Center v. Equity Residential*, 483 F. Supp. 2d 482 (D. Md. 2007)........................12

*Fair Housing of Marin v. Combs*, 285 F. 3d 899 (9th Cir. 2002)  ....................................4, 12, 13

*Garcia v. Brockway*, 503 F.3d 1092 (9th Cir. 2007) .................................................................7, 8

*Garcia v. Brockway,___* F.3d __ , 2008 WL 90233 (9th Cir. Jan. 7, 2008)..................................8

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979)......................................................12

*Guerra v. Cuomo,* 176 F.3d 547 (D.C. Cir. 1999).......................................................................10

*Hargraves v. Capital City Mortgage Corp.,* 140 F. Supp. 2d 7 (D.D.C. 2000) ...........................9

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982)........................................................*passim*

*Moseke v. Miller & Smith, Inc.,* 202 F. Supp. 2d 492 (E.D.Va. 2002) ......................................8, 9

*Nat'l Adver. Co. v. City of Raleigh,* 947 F.2d 1158 (4th Cir. 1991)..........................................9, 10

*Smith v. Pacific Prop. & Dev. Corp.,* 358 F.3d 1097 (9th Cir. 2004) ...............................4, 12, 13

*Syverson v. IBM Corp.,* 472 F.3d 1072 (9th Cir. 2007)..................................................................7

*Tolbert v. State of Ohio Dep't of Transp.,* 172 F.3d 934 (6th Cir. 1999)....................................10

*TOPIC v. Circle Realty,* 532 F.2d 1273 (9th Cir. 1976)...............................................................13

*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972) ...................................................11

*United States v. Balistrieri,* 981 F.2d 916 (7th Cir. 1992) ..........................................................12

*United States v. Taigen & Sons, Inc.,* 303 F. Supp. 2d 1129 (D. Idaho 2003) ..............................8

### STATUTES

Fair Housing Act, 42 U.S.C. § 3601 *et seq*...........................................................................*passim*

### OTHER AUTHORITIES

H.Rpt. 100-711, *reprinted at* 1988 U.S.C.C.A.N. 2173, 2179 ....................................................5, 6

Robert G. Schwemm, HOUSING DISCRIMINATION: LAW AND LITIGATION (Thompson

West)(2007) § 25:10 ......................................................................................................................5

Plaintiffs National Fair Housing Alliance, Inc., Fair Housing of Marin, Inc., Fair Housing Napa Valley, Inc., Metro Fair Housing Services, Inc. and Fair Housing Continuum, Inc. submit this Memorandum of Points and Authorities in Support of their Opposition to Defendant Highpointe Village's Motion to Dismiss Plaintiffs' First Amended Complaint.

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

The complaint herein alleges that A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G. Spanos Land Company, Inc., A.G. Spanos Management, Inc. and The Spanos Corporation

1

1  (hereinafter, the "Spanos Defendants" or "Defendants") have been engaged in a *continuing violation*

2  since the 1990s, consisting of a pattern and practice of designing and building at least 82 apartment

3  complexes[1] in ten states—an average of more than five per year—that violate the design and

4  construction provisions of the Fair Housing Act (hereinafter, "FHA" or "Act"), and are therefore made

5  unavailable to wheelchair users and other people with mobility impairments.  The development of these

6  properties was continuous and seamless, one overlapping another, and the instances of noncompliance

7  are identical or remarkably similar from one property to another.  The Spanos Defendants have

8  acknowledged that as many as 19 properties encompassed in the First Amended Complaint (hereinafter,

9  "FAC") were either built within two years of the filing of the complaint, or are still under construction.[2]

10  Therefore, there can be no question that the statute of limitations concerning the last discriminatory act

11  in the series did not even begin to run until after the filing of the complaint. This pattern and practice has

12

13

_____

14  [1] Plaintiffs acknowledge, and apologize to the Court for, their error in listing Constellation Ranch in Fort
15  Worth, Texas and Orion at Roswell in Roswell, Georgia, in mis-numbering the apartment complexes in
    the appendix to the FAC.  Removing these from the purview of the FAC, however, still leaves 82
16  properties that are unquestionably pled into this case.  Surely, this does not rise to the level of being "so
    vague and ambiguous that [Defendants] cannot reasonably prepare a response," Fed. R. Civ. P. 12(e), as
17  suggested by Defendants.  MDS 6-7.  As modified by the foregoing, the FAC alleges violations of the
    FHA's design and construction requirements at 82 *known* properties, 34 of which were visited and/or
18  tested by Plaintiffs.  The FAC also alleges that Defendants may have committed FHA design and
19  construction violations at other properties currently unknown to Plaintiffs, FAC ¶ 45, but likely to be
    identified in discovery.
20

21  [2] Five of these still appeared to be under construction at the time the original complaint was filed.
    Defendants' Request for Judicial Notice [Doc. 48-5](hereinafter, "RJN"), Exhibits 127, 128, 133, 154
22  and 166.  Defendants also concede that eight properties encompassed within the complaint were built
    within two years of the filing of the complaint.  MD 8:22-9:3; MS 8:4-12; MDIP 8:7-16.  Plaintiffs are
23  perplexed about Defendants' concession that the complex known as The Coventry at City View in Fort
24  Worth was built within two years prior to the filing of the complaint herein.  MD 9:1-2; MS 8:10-11.
    Defendants' own request for judicial notice suggests that the last certificate of occupancy was issued in
25  1996.  RJN Exhibit 158.  Finally, Defendants' filings with this Court suggest that six additional
26  properties were completed within that period.  RJN Exhibits 94 (Park Crossing in Fairfield, CA), 99
    (Ashgrove Place in Rancho Cordova, CA), 100 (Stone Canyon in Riverside, CA), 134A (Highpointe
27  Village, Phase II in Overland Park, KS), 153 (Auberry at Twin Creeks in Allen, TX) and 165 (Cheval in
    Houston, TX).
28                                          2

_____

1  continued until the filing of this lawsuit and thereafter, in that construction of noncompliant units was

2  ongoing.

3      Highpointe Village, L.P., (hereinafter, "Highpointe")  finds itself in this case because it was

4  named as one of two class representatives for current owners of FHA-noncompliant properties designed

5  and built by the Spanos Defendants.  Plaintiffs do not seek to establish FHA liability against Highpointe,

6  the other class representative (Knickerbocker Properties, Inc. XXXVIII, hereinafter, "Knickerbocker") or

7  any current owner.  Rather, because current owners may be necessary parties in order to effectuate any

8  retrofitting relief the Court may order, Plaintiffs seek to join them in a defendant class so as to have their

9  interests efficiently represented before this Court.

10     Highpointe's motion to dismiss under Fed. R. Civ. P. 12(b)(6) is premised on three arguments,

11  none of which supplies a basis for granting that motion.  First, Highpointe contends that claims against it

12  are barred by the statute of limitations.  Memorandum of Points and Authorities in Support of Defendant

13  Highpointe Properties, Inc.'s Motion to Dismiss (hereinafter, "Mem.") at 11-14.  Second, Highpointe

14  alleges that Plaintiffs are not "aggrieved persons" for purposes of the FHA, and therefore cannot state a

15  cause of action under the FHA. *Id.* at 14-18.  Finally, Highpointe claims that Plaintiffs have not

16  established their standing to bring this lawsuit. *Id.* at 18-24.

17     Each of these arguments is rehashed from the four motions filed concurrently by the Spanos

18  Defendants, and each can be disposed of on the same ground.  Plaintiffs have already briefed these issues

19  extensively in their Consolidated Opposition to the Spanos Motions, at Sections IV.A and  IV.B., filed

20  concurrently with this opposition, and incorporate their arguments herein by reference.  For the

21  convenience of the Court and other parties, however, Plaintiffs summarize their points herein.

22     First, Highpointe's statute of limitations argument fails because the Spanos-built property it owns

23  (Highpointe Village in Overland Park, Kansas) is part of the Spanos Defendants' larger pattern and

24  practice of designing and building inaccessible apartment complexes.  Plaintiffs have alleged a

25  continuing violation of the FHA's design and construction accessibility requirements, with at least 19

26  violations occurring within the two years prior to the commencement of this litigation. *See* n.2, *supra*,

27  and accompanying text.  Relying on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), Plaintiffs

28                                                            3

1    seek to bring all 82 apartment complexes, including Mountain Shadows and The Commons within the

2    purview of this litigation.  To the extent the Court accepts this view and denies the Spanos Defendants'

3    statute of limitations argument, it should necessarily apply this same "law of the case" to Highpointe's

4    motion, and deny it as well.  Furthermore, as the Spanos Defendants have filed papers with the Court

5    establishing that the final certificate of occupancy for Highpointe Village was not issued until September

6    26, 2005, Spanos Defendants' Request for Judicial Notice [Doc. 51, Exhibit 134A], there can be no

7    question that the statute of limitations had not run with respect to this property when the complaint was

8    filed in this action on June 20, 2007.[3]

9         Second, Highpointe's contention that Plaintiffs fail to state a cause of action because they are not

10   "aggrieved persons" under the FHA flies in the face of established U.S. Supreme Court and Ninth

11   Circuit precedent.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982); *Fair Housing of Marin v.*

12   *Combs*, 285 F.3d 899 (9th Cir. 2002); *Smith v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097 (9th Cir.

13   2004).  All of these cases, binding on the Court and on Highpointe, make clear that Plaintiffs can

14   establish their right to sue under the FHA without doing so on behalf of tenants with disabilities.  Indeed,

15   all three cases stand for the proposition that, at the pleading stage, Plaintiffs achieve "aggrieved person"

16   status simply by alleging they "have been injured by a discriminatory housing practice."  42 U.S.C. §

17   3602(i)  42 U.S.C. § 3602(f) defines the term "discriminatory housing practice" to mean "an act

18   unlawful under section 804" of the Fair Housing Act, 42 U.S.C. § 3604, which includes the design and

19   construction of apartment complexes in a fashion to render then inaccessible to and unusable by people

20   with disabilities.  42 U.S.C. § 3604(f).  Plaintiffs have pled harm vis-à-vis the Spanos Defendants, FAC

21   ¶¶ 72-78, and because Highpointe's presence in the case is only for purposes of effectuating any future

22   relief ordered by the Court, this element of Highpointe's motion is premature at best.

23        Finally, Highpointe contends that Plaintiffs lack standing to sue under the FHA, parroting the

24   arguments made by the Spanos Defendants in their parallel motion to dismiss [Doc. 48].  Plaintiffs have

25

26   _____
     [3] While Plaintiffs initially pled that Highpointe Village was "completed in 2003," FAC ¶ 62, it has since
     learned from the Spanos Defendants that the final certificate of occupancy was not issued until

27   September 26, 2005, well within the two-year period prior to the filing of the complaint herein.  RJN
     Exhibit 134A.

28                                                           4

1   established, pursuant to the FHA and its interpretations by the U.S. Supreme Court and the Ninth

2   Circuit, that they are "aggrieved persons" as that term is defined at 42 U.S.C. § 3602(i), and that they

3   have had their missions frustrated by the Spanos Defendants' design and construction of inaccessible

4   housing, and have been required to divert their scarce resources from other valuable work in order to

5   counteract the effects of that inaccessible housing.  Plaintiffs need not show that Highpointe or any

6   current owner caused, or in the future will cause, any harm.  Rather, Highpointe and Knickerbocker, and

7   the class of current owners Plaintiffs would have them represent, are only present in the case to ensure

8   that any remedial order the Court may enter will not be frustrated by the unwillingness of current owners

9   to permit the Spanos Defendants to enter their properties to carry out retrofitting of units and common

10  areas.

## II.     FACTUAL BACKGROUND

11

12          Collectively, the Spanos Defendants represent the fifth-largest apartment development enterprise

13  in the country.  FAC ¶2.  Since 1960, Defendants have built more than 120,000 apartments in over 400

14  complexes across the country. *Id.* Beginning in March 1991, the FHA required those who designed and

15  built such complexes to incorporate certain basic features to ensure that they were "accessible to and

16  usable by [people with disabilities]." H.Rpt. 100-711, *reprinted at* 1988 U.S.C.C.A.N. 2173, 2187.

17  Sophisticated entities like the Defendants, who have been steeped in the business of real estate and

18  development for decades, are presumed to know the mandates of the FHA. *See generally,* Robert G.

19  Schwemm, HOUSING DISCRIMINATION: LAW AND LITIGATION (Thompson West)(2007), §

20  25:10, at pp. 25-52 to 25-53.

21          This litigation commenced on June 20, 2007, and was based on careful investigations of

22  Defendants operations and visits to 34 apartment complexes that Defendants had designed and built.

23  FAC ¶ 3.  The Spanos Defendants filed a series of motions to dismiss and for other relief on August 15,

24  2007 [Docs. 15-19]; these were withdrawn on September 12, 2007.  Plaintiffs filed their First Amended

25  Complaint ("FAC") on October 12, 2007, adding The Spanos Corporation as a party and naming a

26  defendant class consisting of all current owners of FHA-noncompliant apartment complexes designed

27  and built by the Spanos Defendants.  FAC ¶¶ 30, 32.  Plaintiffs named Highpointe and Knickerbocker as

28                                                          5

1    defendant class representatives. *Id.* On December 21, 2007, the Spanos Defendants filed a request for

2    judicial notice [Doc. 51] and renewed their previous motions [Docs. 48, 49, 50 and 52]. It is to these

3    motions that this Opposition responds.

4        The FAC alleges that the Spanos Defendants have engaged in a continuing pattern and practice

5    of designing and building "covered multifamily dwellings," 42 U.S.C. §3604(f)(7), in a fashion to make

6    them inaccessible to people with disabilities, in violation of 42 U.S.C. §§ 3604(f)(1), 3604(f)(2) and

7    3604(f)(3)(C). FAC ¶¶ 83, 84. Through on-site investigations at 34 apartment complexes, Plaintiffs

8    documented violations of the design and construction requirements of the FHA. ¶¶ 42, 44, 45. These

9    violations render all or part of these complexes inaccessible to and unusable by people with mobility

10   impairments. FAC ¶¶ 46, 47. Because at least 47 other untested properties share common design

11   features with the tested properties, Plaintiffs have reason to believe that the untested properties may also

12   violate the FHA's design and construction requirements. FAC ¶ 6.

13       Based on the Spanos Defendants' own Request for Judicial Notice [Doc. 51], it is clear that they

14   have been continuously involved in the design, development and construction of covered multifamily

15   dwellings for several decades. Exhibit No. 1 to this opposition is a simple table prepared by Plaintiffs to

16   assist the Court in understanding the overlap between these developments. Inasmuch as multifamily

17   development is a complicated process requiring years of planning and execution at each site, the Court

18   can see from Exhibit No. 1 that, from at least 1995 to the present day, the Spanos defendants must have

19   been involved in overlapping development at multiple sites, and that completion of one Spanos property

20   and commencement of another must have been virtually seamless in time. And, as the pleadings make

21   clear, identical or very similar violations are noted in apartment complex across the Spanos portfolio.

22   FAC ¶¶ 45-52.

23       The Spanos Defendants' noncompliance with the FHA is not a trivial matter. Inaccessibility has

24   serious and significant consequences for people with disabilities. FAC ¶ 8. Not least among these is the

25   extent to which inaccessible housing frustrates the national objective of integrating people with

26   disabilities into "the American mainstream." H.Rep. 100-711, *reprinted at* 1988 U.S.C.C.A.N. 2173,

27   2179.

28                                           6

1  The presence of Highpointe (and Knickerbocker and the class of current owners they may
2  represent following certification of the defendant class) is required in order to effectuate any remedial
3  retrofitting order entered by the Court.

4

5                                    III.     **ARGUMENT**

6  A.     **STANDARD OF REVIEW UNDER RULE 12(b)(6)**

7         As this Court has recognized, a claim may be dismissed under Fed. R. Civ. P. 12(b)(6) only "if it
8  does not 'state a claim upon which relief can be granted.' . . . When considering a motion to dismiss
9  under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as
10  true. *Dion, LLC v. Infotek Wireless, Inc.,* 2007 WL 3231738 (N.D.Cal. Oct. 30, 2007), quoting from
11  *Syverson v. IBM Corp.,* 472 F.3d 1072, 1075 (9th Cir. 2007).

12

13  B.     **THE STATUTE OF LIMITATIONS DOES NOT BAR SUIT AGAINST HIGHPOINTE**

14         Highpointe seeks to bar litigation against it by asserting that construction on the property it owns
15  was completed in 2003, Mem. at 3:6-8, and therefore beyond the limitations period of the FHA. Mem.
16  11-14. But its argument are wrong for three reasons.  First, it appears from papers filed with this Court
17  that Highpointe Village did not get is final certificate of occupancy until September 26, 2005, which is
18  within two years prior to the filing of the complaint.  RJN Exhibit 134A.

19         Second, if the Court should determine that Highpointe Village is part of a continuing violation on
20  the part of the Spanos Defendants, then that property will be part of the litigation, notwithstanding the
21  date of their construction; as a current owner whose cooperation in any retrofitting relief the Court may
22  direct the Spanos Defendants to undertake, Highpointe presence may be required under Fed. R. Civ. P.
23  19 and, thus, not subject to the kind of statute of limitations defense that might be available to the
24  Spanos Defendants.  Highpointe's motion virtually ignores *Havens Realty Corp. v. Coleman*, 455 U.S.
25  363 (1982), the Supreme Court's controlling decision on application of the FHA's statute of limitations
26  to allegations of continuing violation.

27         Third, Highpointe's motion to dismiss relies on the now-vacated panel opinion in *Garcia v.*

28                                              7

---

*Brockway*, 503 F.3d 1092 (9th Cir. 2007), which has been accepted for *en banc* rehearing, *see Garcia v. Brockway*, ___ F.3d ___, 2008 WL 90233 (9th Cir. Jan. 7, 2008). In the interim, the Ninth Circuit has ordered that "[t]he three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit." *Id.* Unlike the Spanos Defendants, Highpointe has yet to acknowledge that *Garcia* is a nullity which cannot be cited to this Court.[4] Without *Garcia,* Highpointe's entire argument with respect to the statute of limitations relies on *Moseke v. Miller & Smith, Inc.,* 202 F. Supp. 2d 492, 494-95 (E.D.Va. 2002) and *United States v. Taigen & Sons, Inc.,* 303 F. Supp. 2d 1129 (D. Idaho 2003). For the reasons outlined below, neither case is sufficient grounds for granting Highpointe's motion.

*Moseke* cannot support the motion to dismiss because the defendants in that case who were responsible for multiple developments essentially agreed with Plaintiffs' position in the case at bar. The *Moseke* defendants "proffer[ed] that the statute of limitations expired two years after the completion of *the last condominium development* . . . ." *Moseke,* 202 F. Supp. 2d at 501 (emphasis added). The decision in *Moseke* was premised on that proffer, as the court held that the suit was barred because "[t]he last condominium development at issue in this matter was constructed more than two years before this suit commenced" *Id.* at 507. The *Taigen* court simply would have had no reason to opine on the application of the statute of limitations with respect to private litigants because that case was brought by the U.S. Department of Justice, which is subject to an entirely different statute of limitations.[5]

Proper analysis of the continuing violation in the case at bar must be grounded in *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), the Supreme Court's controlling decision on application of the FHA's statute of limitations to allegations of continuing violation.[6] Under *Havens,* Plaintiffs' claims are

---

[4]    The A.G. Spanos Defendants acknowledge that *Garcia* was accepted for *en banc* rehearing after their opening brief was filed. *See* Notification of Change in Status of Authority Cited (Docket No. 70) (Feb. 6, 2008).

[5] The limitations period in 42 U.S.C. § 3613(a)(1) is specific to private actions under the FHA, but the Magistrate Judge addressed 28 U.S.C. § 2462, which applies generally to government-initiated actions seeking civil penalties. *See id.* at 1143-44. The District Court Judge did not address either provision.

[6] Plaintiffs have briefed this issue extensively in the their Consolidated Opposition to the Spanos Defendants' Motions, at Section IV.A, filed concurrently with this Opposition. Rather than repeat that argument, Plaintiffs incorporate it herein by reference.

8

timely if filed within two years of "the last asserted occurrence of [a discriminatory housing] practice." *Id.* at 380-81. The FAC herein pleads a continuing violation, FAC ¶¶ 49, 50, 74, 84, and the Spanos Defendants have acknowledged that as many as 19 properties encompassed in the First Amended Complaint (hereinafter, "FAC") were either built within two years of the filing of the complaint, or are still under construction.[7] *See also* MD 8:22-9:3; MS 8:4-12; MDIP 8:7-16. If the Court adopts the *Havens* analysis and denies the Spanos Defendants' motions with respect to the FHA statute of limitations, it must also deny Highpointe's motion on these same grounds.

Highpointe contends that the continuing violation doctrine is "not relevant here . . . where the alleged FHA claims would have been actionable immediately upon completion." Mem. at 13:8-9, citing to *Moseke* and *Hargraves v. Capital City Mortgage Corp.,* 140 F. Supp. 2d 7, 18 (D.D.C. 2000). Highpointe misconstrues *Moseke*, in which the court held that the action was time-barred because "[t]he last FHA non-compliant condominium development at issue in this matter was constructed more than two years before this suit commenced." In this matter, it is clear that there are at least 19 Spanos-built developments—including Highpointe Village itself—that are within the two year period prior to the filing of the complaint. That is, there is no argument that the suit is simply about the continuing effects of prior discrimination; Plaintiffs herein have pointed to repeated instances of fresh discriminatory acts within the limitations period, thus distinguishing this case from those relied upon by Highpointe., viz.,

---

[7] Five of these still appeared to be under construction at the time the original complaint was filed. Defendants' Request for Judicial Notice [Doc. 48-5](hereinafter, "RJN"), Exhibits 127, 128, 133, 154 and 166. Defendants also concede that eight properties encompassed within the complaint were built within two years of the filing of the complaint. MD 8:22-9:3; MS 8:4-12; MDIP 8:7-16. Plaintiffs are perplexed about Defendants' concession that the complex known as The Coventry at City View in Fort Worth was built within two years prior to the filing of the complaint herein. MD 9:1-2; MS 8:10-11. Defendants' own request for judicial notice suggests that the last certificate of occupancy was issued in 1996. RJN Exhibit 158. Finally, Defendants' filings with this Court suggest that six additional properties were completed within that period. RJN Exhibits 94 (Park Crossing in Fairfield, CA), 99 (Ashgrove Place in Rancho Cordova, CA), 100 (Stone Canyon in Riverside, CA), 134A (Highpointe Village, Phase II in Overland Park, KS), 153 (Auberry at Twin Creeks in Allen, TX) and 165 (Cheval in Houston, TX).

1   *Nat'l Adver. Co. v. City of Raleigh,* 947 F.2d 1158 (4th Cir. 1991) and *Tolbert v. State of Ohio Dep't of*

2   *Transp.,* 172 F.3d 934 (6th Cir. 1999), cited at Mem. 13-14.

3        Reliance on *Hargraves* is similarly misplaced.  Citing to *Guerra v. Cuomo,* 176 F.3d 547, 551

4   (D.C. Cir. 1999), and holding that "[the continuing violation] theory applies where defendants commit

5   'repeated, but distinct, discriminatory acts, some inside and some outside the limitations period,'" the

6   *Hargraves* court held that the plaintiffs had sufficiently pled a continuing violation.  140 F. Supp. 2d at

7   18.  Plaintiffs have pled that the Spanos Defendants have committed repeated discriminatory acts, at as

8   many as 82 apartment complexes in 10 states.  As *Hargraves* teaches, that is sufficient to make out a

9   continuing violation.

10       Highpointe and Knickerbocker (and the class of current owners they would represent) are not

11   being sued for violation of the FHA's design and construction provisions, but simply as parties that may

12   be required to effectuate whatever relief the Court may direct the Spanos Defendants to undertake.  In

13   that light, there is no separate statute of limitations applicable to Highpointe and Highpointe.  Their

14   presence in the case is, in a sense, will depend on the Court's determination that the continuing violation

15   doctrine is applicable and that Highpointe and Highpointe properties are part of the litigation.  It does

16   not depend on the number of properties owned by Highpointe, or whether Highpointe was actively

17   involved in the design and construction of noncompliant complexes.

18       Highpointe's obligation to permit any retrofits required by the Court rests on its status as a party

19   which may be necessary to effectuate that relief, and not on its own liability.  Fed. R. Civ. P. 19.  In other

20   words, the very idea of a statute of limitations as to Highpointe is inapposite.  Plaintiffs seek relief

21   against the Spanos Defendants that would include not only an order to bring 82 apartment complexes

22   (including those owned by Highpointe) into compliance with the FHA *at no cost to the current owners,*

23   but also that the Spanos Defendants conduct those retrofits in a manner least likely to interfere with the

24   rights of current owners or tenants.  Finally, the Owner Defendants could seek an order requiring the

25   Spanos Defendants to reimburse them for any loss of revenue or out-of-pocket expenses occasioned by

26   the retrofitting.

27

28                                   10

**C.**    **PLAINTIFFS NEED NOT SUE ON BEHALF OF PEOPLE WITH DISABILITIES, AND NEED NOT ALLEGE THAT THEY ARE MEMBERS OF THE PROTECTED CLASS IN ORDER TO BE "AGGRIEVED PERSONS" UNDER THE FAIR HOUSING ACT**

Highpointe suggests that Plaintiffs are not "aggrieved persons" under the FHA, because they "do not claim to be members of or sue on behalf of the protected class [of people with disabilities]." Mem. at 15:1. From that faulty proposition, Highpointe contends that Plaintiffs cannot state a cause of action under the FHA. This contention is simply not true. To be an "aggrieved person" under the FHA, a plaintiff must "claim[] to have been injured by a discriminatory housing practice." 42 U.S.C. §§ 3602(i)(1), 3613(a)(1)(A). Indeed, courts have established the FHA standing requirement by reference to the "aggrieved person" phrase in the Act. *See, e.g., Trafficante* 409 U.S. at 205.

Highpointe alleges that "Plaintiffs do not allege to have been injured by the Spanos Defendants' making a dwelling unit Highpointe village unavailable to a particular renter (or his associate) because of a handicap of a particular person." Mem. at 18. This point, borrowed nearly wholesale from the Spanos Defendants' primary motion to dismiss, can be answered in the same fashion that Plaintiffs answered the Spanos Defendants: Standing for these organizational Plaintiffs does not rest on an injury caused by the fact that the Plaintiffs cannot live in a particular dwelling, as was the case in the precedent cited by Defendants. Instead, as organizations, Plaintiffs' standing rests on the consequence of Defendants' design and construction of inaccessible buildings, which frustrate Plaintiffs' missions and forces them to divert their scarce resources. These injuries occur even though the organizations have no interest or ability to live in the subject properties. Of course, no court considering organizational standing under the FHA has ever required the organization to establish an interest in living in the subject building as a prerequisite for standing to sue under the Act. Defendants' assertion to the contrary has no basis in law or fact.

**D.**    **PLAINTIFFS HAVE ADEQUATELY PLED THEIR STANDING TO SUE UNDER THE FHA**

Highpointe contends that Plaintiffs do not have standing under the FHA because "Plaintiffs do not claim to be disabled renters, nor do they sue on behalf of disabled renters who claim to have been denied a rental at Highpointe Village or any of the other properties sued upon." Mem. at 19. Plaintiffs

11

have already briefed these issues extensively in their Consolidated Opposition to the Spanos Motions, at Section IV.B., and incorporate their arguments herein by reference.  In short, the FHA provides that fair housing organizations can establish standing based on frustration of mission and diversion of resources to counteract instances of discrimination.  *Havens*, 455 U.S. at 363; *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004); *see also Fair Housing of Marin v. Combs,* 285 F.3d at 905 (9th Cir. 2002); *Alexander v. Riga*, 208 F.3d 419, 427 n.4 (3d Cir. 2000); *United States v. Balistrieri*, 981 F.2d 916 (7th Cir. 1992); *Equal Rights Center v. Equity Residential*, 483 F. Supp. 2d 482 (D. Md. 2007) (finding organizational standing in context of challenge to defendant's design and construction of inaccessible buildings).  Inasmuch as Plaintiffs have pled such injury caused by the Spanos Defendants, ¶¶ 72-78, they are "aggrieved persons" under 42 U.S.C. § 3602(i), and have standing to sue.

Highpointe's contention that "any claim for diversion of resources for referring, consulting or placing disabled persons necessarily requires allegations that plaintiffs counseled specific person who wished to live at each apartment complex sued upon," Mem. at 21, is simply not supported by the two cases cited by Highpointe.   Highpointe's reliance on *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 112-15 (1979) is misplaced.  The referenced portions of that opinion deal with the standing of individual plaintiffs whose standing derived from their proximity to the discriminatory racial steering. Plaintiffs in the case at bar are not individuals, but one national fair housing organization with a national service area and four regional fair housing organizations with their own defined service areas that include one or more Spanos-built noncompliant apartment complexes.  The injury that they suffer is not limited to any individual neighborhood or community, but extends to the full limits of their service areas.

At least one federal court has rejected a defendant's attempt to defeat the standing of a Washington, D.C.-based fair housing organization challenging a builder's design and construction of inaccessible buildings throughout the country.  *Equal Rights Center v. Equity Residential*, 483 F. Supp. 2d 482 (D. Md. 2007).  As the court stated, "the very fact that plaintiff undertook a nationwide investigation of defendants' violations is proof positive of plaintiff's concrete injury."  *Id.* at 487.

12

Again, the fair housing organization was not limited to a constrained geographical area around its office. Instead, as a fair housing organization, the plaintiff was "an organization with a mission that is national in scope and breadth." *Id.* Application of that same standard to Plaintiff National Fair Housing Alliance is certainly warranted on the allegations of the FAC.

Nor is Highpointe's contention supported by *TOPIC v. Circle Realty,* 532 F.2d 1273, 1275 (9th Cir. 1976). There, then-Judge (now Justice) Kennedy held that "the role played by defendants' alleged racial steering in denying the plaintiffs the benefits of living in an integrated community may be so attenuated as to negate the existence of any injury in fact." In the case at bar, the concrete injury in fact suffered by Plaintiffs is pled in sufficient detail to survive a motion to dismiss. See FAC ¶¶ 72-78.

The frustration of mission and diversion of resources caused by the Spanos Defendants' discriminatory design and construction at as many as 82 apartment complexes is sufficient to ground standing. Highpointe's contention that these were "self-inflicted," Mem. at 21: 20, is unsupported.

Finally, citation to cases under the Americans with Disabilities Act, Mem. at 22-24, is immaterial to the question of whether Plaintiffs have standing under the FHA. Binding U.S. Supreme Court and Ninth Circuit precedent provide all the guidance that is needed with respect to Plaintiff's standing to sue under the FHA. *See Havens*, 455 U.S. at 363; *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004); *Fair Housing of Marin v. Combs,* 285 F.3d at 905 (9th Cir. 2002)

///
///
///
///

///

13

IV.    **CONCLUSION**

Wherefore, for the foregoing reasons, Plaintiffs pray that the Court deny Highpointe's Motion to Dismiss [Doc. 60].

Dated: February 19, 2008

Respectfully submitted,


/s/ D. Scott Chang_____

Michael Allen
Stephen M. Dane
John P. Relman
Thomas J. Keary
Pending admission *pro hac vice*
D. Scott Chang, #146403
Relman & Dane, PLLC
1225 19th Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Fax: (202) 728-0848

*Attorneys for Plaintiffs*

14

# CERTIFICATE OF SERVICE

I hereby certify that on this the 19th day of February 2008, I filed the foregoing Memorandum of Points and Authorities In Support of Plaintiffs' Opposition to Defendant Highpointe Village L.P.'s Motion to Dismiss Plaintiffs' First Amended Complaint with the Court's ECF system, which sent electronic notice to:

Stephen Walters
Makesha Patterson
Allen Matkins Leck,, Gamble, Mallory & Natsis, LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
swalters@allenmatkins.com
mpatterson@allenmatkins.com
*Attorneys for Defendant Knickerbocker Properties*

Thomas Keeling
Lee Roy Pierce Jr.
Freeman, D'Aiuto, Pierce, Gurev, Keeling & Wolf
1818 Grand Canal Boulevard
Stockton, California
tkeeling@freemanfirm.com
*Attorney for Defendants A.G. Spanos Construction, Inc.,*
*A.G. Spanos Development, Inc., A.G. Spanos Land Company, Inc.,*
*A.G. Spanos Management, Inc., and The Spanos Corporation*

Shirley Jackson
Steefel, Levitt, & Weiss, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
sjackson@steefel.com
*Attorney for Defendant Highpointe Village, L.P.*

            ___/s/ Nicholas Cain_____
            Nicholas Cain

15