MAXWELL M. FREEMAN, #31278
LEE ROY PIERCE, JR., #119318
MICHAEL L. GUREV, #163268
THOMAS H. KEELING, #114979
FREEMAN, D'AIUTO, PIERCE,
  GUREV, KEELING & WOLF
A PROFESSIONAL LAW CORPORATION
1818 Grand Canal Boulevard, Suite 4
Stockton, California 95207
Telephone: (209) 474-1818
Facsimile: (209) 474-1245
E-mail:      lrpierce@freemanfirm.com
             mgurev@freemanfirm.com
             tkeeling@freemanfirm.com

Attorneys for Defendants A.G. Spanos
Construction, Inc.; A.G. Spanos
Development, Inc.; A.G. Spanos
Land Company, Inc.; A.G. Spanos
Management, Inc., The Spanos Corporation

## IN THE UNITED STATED DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Fair Housing Alliance, Inc., et al., | CASE NO.  C07-03255-SBA |
| Plaintiffs, | **CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE SPANOS DEFENDANTS' MOTIONS (1) TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; (2) FOR MORE DEFINITE STATEMENT RE FIRST AMENDED COMPLAINT; (3) TO DISMISS FOR FAILURE TO JOIN REQUIRED AND INDISPENSABLE PARTIES; AND (4) TO STRIKE VARIOUS CLAIMS FOR RELIEF SOUGHT IN PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| vs. | |
| A.G. Spanos Construction, Inc., et al. | |
| Defendants. | |

Hearing Date:     March 11, 2008
Time:             1:00 p.m.
Dept.:            Courtroom 3

Complaint Filed: June 20, 2007

---

CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF SPANOS DEFENDANTS' MOTIONS [CASE NO. C07-03255-SBA]

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    TO ESTABLISH STANDING, PLAINTIFFS MUST ALLEGE THAT
      DEFENDANTS' VIOLATION OF SOMEONE'S  FHAA RIGHTS CAUSED
      INJURY TO PLAINTIFFS AND THAT PLAINTIFFS' INJURY WILL
      LIKELY BE REDRESSED BY THE REQUESTED RELIEF.  THIS
      PLAINTIFFS CANNOT DO . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Plaintiffs Have No Standing Because They Have Not and Cannot Allege
            That Anyone's FHAA Rights Have Been Violated . . . . . . . . . . . . . . 3
      B.    Plaintiffs Have No Standing, Because Their Alleged Injuries Were Not
            Caused by Defendants' Violation of The FHAA . . . . . . . . . . . . . 9

            1.    Plaintiffs' Alleged Injuries Could Not Have Been Caused by a
                  Violation of the FHAA, Because No Violation of the FHAA is
                  Alleged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            2.    Plaintiffs' Alleged Damages Were Voluntarily Incurred  . . . . . 9

      C.    Plaintiffs Have No Standing Because They  Cannot Allege
            Redressability: They Have No Standing to Seek Injunctive Relief and
            They Fail to Sue Indispensable Parties . . . . . . . . . . . . . . . . . . . 11

II.   PLAINTIFFS FAIL TO ALLEGE A CAUSE OF ACTION IN THEMSELVES
      OR ANYONE ELSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      A.    Plaintiffs State No Cause of Action Because They Allege No Injury
            Caused By a Discriminatory Housing Practice . . . . . . . . . . . . . . 17

      B.    Plaintiffs State No Cause of Action Because They Manufactured Their
            Own Alleged Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      C.    Plaintiffs State No Cause of Action Because They Have Sued the Wrong
            Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.  PLAINTIFFS' CLAIMS AGAINST THE SPANOS DEFENDANTS AND
      AGAINST THE PUTATIVE CLASS DEFENDANTS ARE BARRED BY THE
      STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.   THE SPANOS DEFENDANTS' MOTION FOR MORE DEFINITE
      STATEMENT SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . 22

      A.    Plaintiffs Should be Required to Amend The FAC to Allege Accurately
            the Location and Number of Complexes Sued on . . . . . . . . . . . . 22

      B.    Plaintiffs Should Be Required to Amend the FAC to More Particularly

i

CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF SPANOS DEFENDANTS' MOTIONS [CASE No. C07-03255-SBA]

State Their Standing to Seek Injunctive Relief . . . . . . . . . . . . . . 23

V.    THE SPANOS DEFENDANTS' MOTION TO STRIKE SHOULD BE
       GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.   THE SPANOS DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO
       JOIN INDISPENSABLE PARTIES SHOULD BE GRANTED . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

Federal Cases:

*Allen v. Wright*, 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Amtrak v. Morgan*,
　536 U.S. 101, 114 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Califano v. Yamasaki*,
　442 U.S. 682 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23, 25

*Conservation Law Found. of New England v. Reilly*,
　950 F.2d 38, 43 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
　482 U.S. 437, 445 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Del. State College v. Ricks*,
　499 U.S. 250, 256-57 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Doran v. 7-Eleven Inc.*,
　506 F.3d 1191, 1197 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Equal Rights Center v. Post Properties, Inc.*,
　522 F.Supp.2d 1, 5 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 24

*Fair Housing Council v. Village of Olde St. Andrews, Inc.*
　210 F.App'x 469,  480 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fair Housing of Huntington Committee Inc. v. Town of Huntington*,
　316 F.3d 357, 362 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 7-9, 11, 22

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,
　528 U.S. 167, 184 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gladstone, Realtors v. Village of Bellwood*,
　441 U.S. 91, 103 n. 9 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

*Growth Horizons, Inc. v. Delaware County* . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18
　983 F.2d 1277, 1283 (3d Cir. 1993)

*H.J.M. v. K. Hovnanian at Mahwah VI, Inc.*,
　672 A.2d 1166, 1172 (N.J. Sup. Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hansberry v. Lee*,
　311 U.S. 32 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hargraves v. Capital City Mortgage Corp.*,
　140 F.Supp.2d 7, 18 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

iii

CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF SPANOS DEFENDANTS' MOTIONS [CASE No. C07-03255-SBA]

*Harris v. Itzhak*,
    183 F.3d 1043, 1050 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363, 383, 102 S. Ct. 1114 (1982) . . . . . . . . . . . . . . 3, 7, 8, 13, 19-22

*Independent Housing Services of San Francisco v. Fillmore Center Associates*,
    840 F.Supp. 1328, 1335 (N.D. Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . 7

*Ledbetter v. Goodyear*,
    127 S.Ct. 2162, 2168 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Levine v. Bally Total Fitness Corp.*,
    2006 U.S. Dist LEXIS 95006, * 30 (E.D. Illinois 2002) . . . . . . . . . . . . . . 20

*Molski v. Mandarin Touch Restaurant*,
    385 F.Supp.2d 1042, 1045 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . 12, 24

*Moseke v. Miller*,
    202 F.Supp.2d 492, 506-507 (E.D. Va. 2002) . . . . . . . . . . . . . . . . . 20, 21

*National Assn. for Mental Health, Inc. v. Califano*,
    717 F.2d 1451, 1455 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 14

*Nur v. Blake Development, Corp.*,
    655 F.Supp. 158, 163 (N.D.Ind. 1987) . . . . . . . . . . . . . . . . . . . . . . . 4

*Oak Ridge Care Center, Inc. v. Racine County*,
    896 F.Supp. 867, 873 (E. Dist. Wisconsin 1995) . . . . . . . . . . . . . . . . . . 4

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797, 811-12 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rodriguez v. Investco, L.L.C.*
    305 F.Supp.2d 1278, 1280-82, 1285 (M.D. Fla. 2004) . . . . . . . . . . . . . . 24

*San Pedro Hotel Co., Inc. v. City of Los Angeles*,
    159 F.3d 470, 475 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schneider v. Whaley*,
    417 F.Supp. 750, 757 (S.D. NY 1976) . . . . . . . . . . . . . . . . . . . . . . . 15

*Smith v. Pacific Properties*,
    358 F.3d 1097 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 11

*Spann v. Colonial Village*,
    899 F.2d 24 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Taylor v. FDIC*,
    132 F.3d 753, 764-765 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . 20

*United Air Lines, Inc. v. Evans*,
    431 U.S. 553, 558 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

iv

CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF SPANOS DEFENDANTS' MOTIONS [CASE No. C07-03255-SBA]

*United States v. Daas*
   198 F.3d 1167, 1174 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Kubrick,*
   444 U.S. 111, 117 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Pac. Northwest Electric,*
   2003 U.S. Dist. LEXIS 7990, *15 (D. Idaho Nov. 20, 2003) . . . . . . . . . . . . 20

*Utah Ass'n. of Counties v. Bush,*
   455 F.3d 1094, 1099-1101 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 24

*Walker v. Glenwood Intermountain Properties, Inc.,*
   98 F.3d 590, 594 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Whitson v. Heilig-Meyers Furniture, Inc.*
   1995 U.S. Dist. LEXIS 4312, *49 (N.D. Ala. 1995) . . . . . . . . . . . . . . . . . . 14

Federal Statutes:

42 U.S.C. section 3602(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

42 U.S.C. section 3604(f)(5)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

42 U.S.C. section 3613(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 3602(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

42 U.S.C. § 3604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

42 U.S.C. § 3604(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 U.S.C. § 3604(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. § 3604(f)(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. § 3613(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

42 U.S.C. § 3613(b)(1) and (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. §3604(f)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 11, 22

Federal Rules of Civil Procedure, rule 19 . . . . . . . . . . . . . . . . . . . . . . . . . 22

Other Authority:

2 Newberg on Class Actions § 4:49 at pp. 347-348 (2002) . . . . . . . . . . . . . . 11

Fourteenth Amendment to the United States Constitution . . . . . . . . . . . . . . 4, 13

Henry J. Friendly, *Benchmarks* (1967) 202 . . . . . . . . . . . . . . . . . . . . . . . 15

R. Schwemm, "Barriers to Accessible Housing: Enforcement Issues in Design and

Construction Cases under the Fair Housing Act,
    40 U. Richmond L.Rev. 753, 776 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# INTRODUCTION

At its core, the instant suit fails to allege an "actual case or controversy." Specifically, the First Amended Complaint ("FAC") does not and cannot allege that <u>anyone's</u> FHAA rights have ever been violated. The FAC does not allege that <u>plaintiffs'</u> FHAA rights have been violated, because it does not allege that plaintiffs' access to the subject properties has ever been denied or impaired. The FAC does not allege that <u>any disabled person</u> has ever had his or her FHAA rights violated, because it does not allege that <u>any disabled person</u> has ever visited or wished to visit any of the complexes sued on; therefore, the FAC fails to allege that any disabled person has ever <u>actually</u> had his or her access to any of the subject properties denied or impaired.

As to plaintiffs' own alleged harm, the FAC candidly admits that this harm <u>was not</u> caused by reports to plaintiffs that someone's FHAA rights had been violated; rather, plaintiffs' alleged harm is admitted to be voluntarily incurred and manufactured. That is, the FAC alleges that plaintiffs voluntarily directed staff to first identify who defendants are; then to locate and test defendants' buildings; then to sue defendants, seeking a nationwide injunction - - all to redress perceived inconsistencies with the regulations promulgated under 42 U.S.C. section 3604(f)(3)(c) - - and not to redress the violation of anyone's FHAA rights.

The FAC also fails to allege "redressability" because these plaintiffs cannot obtain the nationwide injunction they seek. The FAC does not and cannot allege a likelihood of <u>substantial and immediate irreparable injury</u> to any disabled person or to plaintiffs, despite the fact that many of the complexes sued on are over 15 years old. And, the FAC fails to allege that <u>anyone</u> - - including plaintiffs or any disabled person - - has ever been harmed because their access to <u>any</u> of the known or unknown complexes sued on has been denied or impaired. The FAC does not allege that the plaintiffs or any disabled person lives near any of the known or unknown complexes sued on; nor does the FAC allege that plaintiffs or any disabled person ever wished to rent an apartment at any of the complexes sued on; nor does it allege that plaintiffs or any disabled person would in the future wish even to visit any of the complexes sued on; nor does the FAC allege that plaintiffs or any disabled person ever intends to travel near any of the complexes sued on.

The nationwide injunction sought in the FAC also may not issue because plaintiffs fail to

1  sue indispensable parties. The FAC seeks a nationwide injunction requiring the Spanos defendants
2  to redesign and reconstruct the common areas and 22,000 apartments at 82 known complexes - -
3  and an unknown number of common areas and apartments at an unknown number of unknown
4  complexes. But, the Spanos defendants do not own the complexes and apartments sued on. The
5  owners, renters and secured lenders who do have <u>property rights</u> in these complexes (and the
6  renters who also have <u>privacy rights</u> in the apartments at these complexes) are not sued. The
7  FHAA and the due process clause to the Fourteenth Amendment to the United States Constitution
8  require that these owners, renters, and secured lenders receive notice and an opportunity to be
9  heard before any injunction issues which "affects" these rights.

10       Plaintiffs do not dispute that this court lacks personal jurisdiction over many if not most
11  of these owners, renters, and secured lenders. "Equity" and "good conscience" dictate, therefore,
12  that this case be dismissed. The due process rights of these absent parties overshadow any alleged
13  concern for plaintiffs' <u>voluntarily incurred and manufactured</u> harm. Moreover, dismissal will not
14  harm any disabled person. If any disabled person's access to any of the complexes sued on is
15  <u>actually</u> denied or impaired, he or she can sue in the local district court, and an FHAA requires
16  that the <u>local</u> district court appoint an attorney to represent that person and that the <u>local</u> district
17  court waive all costs, fees, and security. 42 U.S.C. § 3613(b)(1) and (2). In addition, such a
18  plaintiff could request assistance from one of the national or local fair housing organizations who
19  are plaintiffs herein. And, since such a suit would be brought in the local district court, the local
20  district court would have jurisdiction over all indispensable parties - - i.e., the owners, renters,
21  and secured lenders. In fact, renters would no longer be necessary, since under the applicable
22  standing doctrine, relief would be limited to the redesign and reconstruction of the apartment in
23  which the plaintiff disabled renter wished to live and its attendant common areas.

24       On its face, the FAC also fails to include allegations essential to state a cause of action in
25  Plaintiffs or anyone else. No cause of action is stated because the FAC fails to allege: (1) that the
26  FHAA rights of Plaintiffs (or anyone else) have been violated; or (2) causation; or (3) that the
27  Spanos defendants "own" the property sued on. Only owners are liable for alleged violations of
28  the FHAA, because only owners are in a position to deny a rental to a particular disabled person

1  who seeks to rent.

2  Finally, the FAC fails as a matter of law with respect to those complexes built more than

3  two years before suit was filed, as suit on these complexes is barred by the FHAA's statute of

4  limitations. Although plaintiffs claim that under *Havens* their claims regarding these complexes

5  are saved by the continuing violation doctrine, *Havens* actually supports the opposite conclusion.

6  In *Havens*, the court reasoned that where a violation of the FHA is open, obvious, and complete

7  at the time of the violation, then the continuing violation doctrine will not apply. The FAC alleges

8  that the alleged non-compliant design and construction was open and obvious to Plaintiffs' testers

9  and all disabled persons upon completion of construction. Thus, the continuing violations doctrine

10  will not save Plaintiffs' time-barred claims.

11  **ARGUMENT**

12  **I.   TO ESTABLISH STANDING, PLAINTIFFS MUST ALLEGE THAT
13  DEFENDANTS' VIOLATION OF SOMEONE'S FHAA RIGHTS CAUSED INJURY
TO PLAINTIFFS AND THAT PLAINTIFFS' INJURY WILL LIKELY BE
REDRESSED BY THE REQUESTED RELIEF. THIS PLAINTIFFS CANNOT DO.**

14  To show standing under Article III:   "[a] plaintiff must allege personal <u>injury</u> fairly

15  <u>traceable</u> to the defendant's <u>allegedly unlawful conduct</u> and <u>likely to be redressed</u> by the requested

16  relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984), emphasis added.

17  The above standing provisions are codified in the FHAA: "[A]ny person who . . . claims

18  to have been <u>injured</u> by a <u>discriminatory housing practice</u> . . . may commence a civil action . . .

19  <u>to obtain appropriate relief</u> with respect to such discriminatory housing practice . . . ." 42 U.S.C.

20  § 3613(a)(1)(A), emphasis added.

21  **A.   Plaintiffs Have No Standing Because They Have Not and Cannot Allege That
22  Anyone's FHAA Rights Have Been Violated.**

23  The FHAA defines a "discriminatory housing practice" to be an "act that is unlawful under

24  section 3604 . . . ." 42 U.S.C. § 3602(f). Stated differently, the standing requirement of

25  "unlawful conduct" is defined in the FHAA to be a "discriminatory housing practice."

26  Applying the FHAA's definition of "unlawful conduct" to Article III standing reveals that

27  any person, including a fair housing organization, has standing to sue under the FHAA, where it

28  can allege and prove that it "sustain[ed] an actual injury from an alleged discriminatory housing

1    practice . . . ." *San Pedro Hotel Co., Inc. v. City of Los Angeles,* 159 F.3d 470, 475 (9th Cir.

2    1998). As stated by other courts: "As long as the plaintiff suffers actual injury as a result of the

3    defendant's conduct, he is permitted to prove that the rights of another were infringed. The

4    central issue at this stage of the proceedings [at the pleading stage] is not who possesses the legal

5    rights protected by [the FHA], but whether respondents were genuinely injured by **conduct that**

6    **violates** *someone's* **[FHA] rights** . . . ." *Oak Ridge Care Center, Inc. v. Racine County,* 896

7    F.Supp. 867, 873 (E. Dist. Wisconsin 1995) [quoting *Gladstone, Realtors v. Village of Bellwood,*

8    441 U.S. 91, 103 n. 9 (1979), emphasis added]. Or, as stated elsewhere: "The inquiry focuses,

9    not upon whose § 3604 rights were violated, but rather upon whether the plaintiffs were genuinely

10   injured by conduct that violated **somebody's 3604 rights**; if they were so injured, the plaintiffs

11   have standing to bring suit under § 3612. [citations]" *Nur v. Blake Development, Corp.,* 655

12   F.Supp. 158, 163 (N.D.Ind. 1987), emphasis added.

13            Plaintiffs' Opposition states:

14            'Standing does not turn on a plaintiff's membership in a protected
              class, but instead, turns on whether a Plaintiff has suffered a
15            cognizable injury. . . . [T]he FHA permits any "aggrieved person"
              — defined as anyone who "claims to have been **injured by a**
16            **discriminatory housing practice**" — to bring an action under the
              Act. 42 U.S.C. §§ 3602(i)(1), 3613(a)(1)(A).'

17

18   Opposition, p. 26:23-26, emphasis added.

19            Plaintiffs correctly state a portion of the FHAA's standing requirement but neglect to

20   explain that the FAC fails to allege that anyone's section 3604 rights have been violated.

21   Plaintiffs' alleged injury is not "cognizable" because the alleged injury was not caused by a

22   "discriminatory housing practice" - - an unlawful act.

23            The FAC alleges that the Spanos defendants violated section 3604 by failure to design and

24   construct accessible apartments in accord with the provisions contained in section 3604(f)(3)(C)

25   and its applicable regulations. FAC, ¶ 39. But failure to design and construct apartments in

26   accord with the provisions of 3604(f)(3)(C) is not, without more, a "discriminatory housing

27   practice." Section 3602(f) defines a "discriminatory housing practice," in relevant part, as "an

28   act that is *unlawful* under section 3604 . . ." (emphasis added). Section 3604, in turn, states that

"it shall be unlawful," among other things, "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter," § 3604(f)(1), and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that buyer or renter," section 3604(f)(2). Section 3604 *separately* states that "[f]or purposes of this subsection, discrimination includes - - . . . a failure to design and construct [covered family] dwellings" in accordance with various requirements concerning accessibility to and use by disabled persons. Section 3604(f)(3)(C). Section 3604(f)(3)(C) defines what "discrimination" is, but it does not define what a "discriminatory housing practice" is.

**As defined in sections 36_02_(f) and 36_04_(f)(1) and (f)(2), a "discriminatory housing practice" - - i.e., an "unlawful act" - - is committed when a would-be buyer or renter attempts to buy or rent a FHAA-noncompliant unit. At that point — but not before — it can be said that a landlord has "discriminate[d] in the sale or rental, or [has] otherwise ma[d]e unavailable or den[ied] a dwelling to [the individual] because of a handicap . . . of that buyer or renter."** 42 U.S.C. §§ 3604(f)(1) and (f)(2). Until then, the disabled person has not been subjected to a "discriminatory housing practice."

The activities specified by sections 3604(f)(1) and (f)(2) — all of which involve taking action against a disabled person "because of" that person's particular "handicap" — are "unlawful" "discriminatory housing practices." In contrast, section 3604(f)(3)(C) is a specific example of the discrimination that in fact becomes actionable under sections 3604(f)(1) and (f)(2) — when that discrimination takes place "in the sale or rental . . . to any buyer or renter," section 3604(f)(1), or "against any person in the terms, conditions, or privileges of sale or rental . . . or in the provision of services or facilities," section 3604(f)(2). Section 3604(f)(3)(C) is a definitional provision, stating that "discrimination includes . . . the [faulty] design and construction of covered multifamily dwellings," and is not a provision that actually sets forth a cause of action.

The construction of an FHAA-noncompliant building thus constitutes no more than the

1  creation of any other discriminatory condition or policy (e.g., a landlord's policy — as yet
2  unenforced — not to rent to disabled people). It is only when that discriminatory condition or
3  policy results in an action prohibited by section 3604(f)(1) or section 3604(f)(2) that a person can
4  be said to have been injured by a "discriminatory housing practice." Beforehand, the improperly
5  designed building (and the landlord's unimplemented rental policy) are like a potentially dangerous
6  ditch into which no one has yet fallen — capable of inflicting harm and violating the law, but not
7  yet actually doing either. See *Fair Housing Council v. Village of Olde St. Andrews, Inc.* 210
8  F.App'x 469, 480 (6th Cir. 2006), ["[F]rom a purely textual standpoint a violation of the relevant
9  Fair Housing Act provision here requires more than the mere design and construction of a
10  noncompliant housing unit. Recall, the text of the Fair Housing Act itself focuses on housing
11  discrimination in the sale or rental of housing units."]. Emphasis in original, unpublished
12  disposition.

13      To have standing, plaintiffs must allege actual injury caused by a violation of someone's
14  FHAA rights. Here, the "unlawful act" is the commission of a "discriminatory housing practice."
15  A violation of section 3604 therefore requires that a landlord carry out the actions prohibited by
16  sections 3604(f)(1) and 3604(f)(2). The mere failure to design and construct in accord with the
17  provisions of section 3604(f)(3)(C) does not constitute such a practice.

18      Plaintiffs have no standing, because they do not allege that anyone's FHAA rights have
19  been violated. Plaintiffs admit that their staff - - nondisabled testers - - had unfettered access to
20  the complexes tested. FAC, ¶ 3. And the FAC fails to allege that any disabled person has ever
21  visited or attempted to visit any of the "tested," "untested" or "unknown" complexes sued on.
22  Since no disabled person is alleged to have ever visited or attempted to visit any of the complexes
23  sued on, it follows that no disabled person has ever had his or her section 3604 rights violated .
24  Before a plaintiff can sue to redress a "discriminatory housing practice" a "discriminatory housing
25  practice" must have been committed. In other words, before a plaintiff can sue to redress an
26  unlawful act, an unlawful act must have been committed. Because plaintiffs fail to allege that
27  anyone's section 3604 rights have been violated, plaintiffs cannot claim to have been injured by
28  the violation of someone's section 3604 rights.

CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF SPANOS DEFENDANTS' MOTIONS [CASE NO. C07-03255-SBA]

1    Plaintiffs retort that "[t]he Spanos Defendants may not have said no directly to any
2  individual tenant, but they have rendered thousands of units unavailable to people with
3  disabilities." Opposition, p. 46:21-22, emphasis added. But, a violation of (f)(1) or (f)(2)
4  requires, at a minimum, an allegation that, but for the inaccessible features, "the excluded person
5  [a particular disabled person with a particular disability] would otherwise go into the building [and
6  attempt to rent an apartment]." *Independent Housing Services of San Francisco v. Fillmore Center
7  Associates*, 840 F.Supp. 1328, 1335 (N.D. Cal. 1993); and see sections 3604 (f)(1) and (f)(2).
8  And, under (f)(1) or (f)(2), this is a particularized inquiry based upon a particular disability.
9  Plaintiffs do not seriously contend that the subject apartment complexes are inaccessible to the
10  "blind" or the "deaf" or the "mentally infirm" or to any disabled persons except, perhaps, some,
11  but not all, persons in wheelchairs. Thus, the "alleged inaccessibility" of the subject complexes
12  does not ". . . affect all disabled individuals." *Fillmore Center, supra*, 840 F.Supp at 1335. And,
13  a violation of (f)(1) or (f)(2) requires that the defendants say "no" to a particular disabled person,
14  with a particular disability, who wishes to rent a particular apartment. See 3604(f)(1) and (f)(2),
15  and see *Fillmore Center, supra*, 840 F.Supp. at 1335 [To state an "unlawful act" [i]t is . . .
16  sufficient to allege that . . . [but for the inaccessible features] the excluded person would otherwise
17  go into the building"]; see also *Walker v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590,
18  594 (10th Cir. 1996) [discrimination cannot be the cause of injury to a plaintiff who would not have
19  sought to obtain the benefit even in the absence of the discrimination]; *Allen v. Wright, supra*, 468
20  U.S. at 755 [Only those persons personally denied rights by the challenged unlawful
21  discrimination have standing to sue].

22    *Havens* , *Smith* and *Fair Housing of Marin* are not to the contrary. In each of these cases,
23  it was alleged that someone's section 3604 rights had been violated.

24    In *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), the Supreme Court first stated
25  the standing rule applicable to fair housing organizations: "[As] long as the plaintiff [fair housing
26  organization] suffers actual injury as a result of the defendant's conduct, he is permitted to prove
27  that the rights of another were infringed." *Id.*, 455 U.S. at 376, n.16. Applying this rule, the
28  court determined that the FHA rights of black testers (employed by the housing organization) had

1  been violated, when the defendant *Havens Realty* lied to black testers and told them apartments

2  were unavailable. These black testers' FHA "statutory right to truthful housing information ha[d]

3  been violated" by Haven Realty's lies. *Id.*, 455 U.S. at 375. In contrast, the court also held that

4  a white tester - - (also employed by the fair housing organization) - - had not had his "statutory

5  right to truthful housing information violated" because he was told by the defendant *Havens Realty*

6  that apartments were available. Thus, said the court: "he [the white tester] ha[d] not pleaded a

7  cause of action." *Id.*, 455 U.S. at 374-375.

8       Finally, the court concluded "[i]f as broadly alleged, [defendants'] [unlawful] steering

9  practices [against black testers] have perceptibly impaired [the fair housing organization's] ability

10  to provide counseling and referral services . . . [then] the organization ha[d] suffered an injury in

11  fact" (*Id.*, 455 U.S. at 379) caused by the violation of the black tester's "statutory right to truthful

12  housing information." *Id.*, 455 U.S. at 375.

13       In *Smith v. Pacific Properties*, 358 F.3d 1097 (9th Cir. 2004), the Ninth Circuit applied

14  *Havens* and observed that the complaint filed by DRAC (a fair housing organization) "pled with

15  particularity two causes of action for violations of the FHAA [rights of disabled testers]." *Id.*, 358

16  F.3d at 1105. Next, the court reasoned that given leave to amend, DRAC probably could allege

17  facts sufficient to show that its mission was frustrated, *id.*, 358 F.3d at 1104-1106, by the

18  violation of the 3604(f)(2) rights of the disabled testers employed by DRAC. *Id.*, 358 F.3d at

19  1103-1104.

20       In *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002), defendant Jack Combs

21  was alleged to have violated 42 U.S.C. section 3604 and various civil rights laws, *inter alia*, by

22  refusing to rent to black testers and black prospective renters. *Id.*, 285 F.3d at 902. Thus, the

23  complaint specifically alleged that someone's section 3604 rights had been violated. Following

24  discovery abuse by Combs, the district court entered default judgment against Combs. *Id.*, 285

25  F.3d at 902. On appeal, Combs argued that plaintiff Fair Housing of Marin lacked standing. *Id.*,

26  289 F.3d at 902. On appeal, the Ninth Circuit first expressed doubt that "litigation expenses

27  alone" could suffice to establish standing, but held that **in responding to citizen's complaints**

28  **against Combs**, Fair Housing of Marin had necessarily suffered economic losses to respond to

---

8

1  these complaints, all <u>caused</u> by a violation of the section 3604 rights of black testers and

2  prospective black renters. *Id.,* 285 F.3d at 905.

3          In *Havens, Smith* and *Fair Housing of Marin*, housing organizations were thus held to have

4  standing to sue - - flowing from injuries the organizations incurred - - <u>caused by the violations of</u>

5  <u>someone's section 3604 rights</u>.  Plaintiffs in this suit have not, and cannot, allege that anyone's

6  section 3604 rights have been violated regarding the <u>tested</u>, <u>untested</u>, or <u>unknown</u> properties sued

7  on, because they do not allege that anyone holding section 3604 rights has ever been interested in

8  accessing the apartments sued on, or has had their access <u>actually</u> impaired.

9  **B.    <u>Plaintiffs Have No Standing, Because Their Alleged Injuries Were Not Caused</u>**

10      **<u>by Defendants' Violation of The FHAA</u>**.

11             1.    <u>Plaintiffs' Alleged Injuries Could Not Have Been Caused by a Violation of</u>

12           <u>the FHAA, Because No Violation of the FHAA is Alleged.</u>

13      Plaintiffs state:

14             As the Ninth Circuit reasoned . . . '[a]ny violation of the FHAA
             would - - constitute a frustration of [plaintiffs'] mission.'

15

16  Opposition, p.27:19-21, citing *Smith*, 358 F.3d at 1105 and *Fair Housing of Marin*, 285 F.3d at

17  905.

18          However, as explained above, the FAC has not alleged a violation of the FHAA, and,

19  therefore, Plaintiffs have not alleged that their injuries were <u>caused by a violation of the FHAA</u>.

20             2.    <u>Plaintiffs' Alleged Damages Were Voluntarily Incurred</u>.

21      Plaintiffs' Opposition candidly admits that Plaintiffs' alleged damages were voluntarily

22  incurred:

23             [T]he Plaintiff organizations <u>discovered</u> the <u>inaccessible</u> <u>buildings</u>
             through the course of <u>their</u> <u>own</u> <u>advocacy and not</u> from a complaint

24           . . . .

25                                    * * * *

26             Plaintiffs spent significant time and resources to identify . . .
             Defendants' discrimination . . . .  Plaintiffs need not demonstrate

27           that they were literally "forced" to spend time and resources . . . .

28

CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF SPANOS DEFENDANTS' MOTIONS [CASE NO. C07-03255-SBA]

1  Opposition, p.24:16-17 and p. 25:1-5, emphasis added.

2      The allegations of the FAC confirm Plaintiffs' admissions that Plaintiffs voluntarily

3  "discovered the [alleged] inaccessible buildings" by voluntarily "spending time and resources to

4  identify . . . Defendants' [alleged] discrimination." See, e.g., FAC, ¶¶ 3, 20 and 29.

5      As the FAC alleges, what Plaintiffs did was have their staff search the internet to identify

6  national builders of apartment complexes (who had not yet been sued for alleged FHAA

7  violations). See FAC, ¶¶ 3, 20 and 29. Next, Plaintiffs' staff identified some properties the

8  identified national builder had built. FAC, ¶¶ 3, 20 and 29. Next, Plaintiffs sent staff - -

9  nondisabled testers - - to 34 of the identified complexes to find violations of the provisions found

10  in section 3604(f)(a)(3) as implemented by the applicable federal regulations. FAC, ¶¶ 3, 29 and

11  39.[1] Using the "safe harbor" provisions of these regulations as a "sword" (and not as the shield

12  they are intended to be) (see fn. 1, ante) - - Plaintiffs filed their complaint alleging one or more

13  violations of the provisions contained in section 3604(f)(c)(3), as implemented by various federal

14  regulations. FAC, ¶¶ 3 and 39.

15      Thus, plaintiffs candidly admit that they voluntarily manufactured this lawsuit and their

16

17  [1] Section 3604(f)(3)(C) defines "discrimination" but not "a discriminatory housing
practice" to include the "design and construct[ion]" of covered multifamily dwellings in a
18  manner that makes them inaccessible to persons with disabilities. 42 U.S.C. section
3604(f)(3)(C). Section (f)(3)(C) itself generally states what is required to make "covered
19  units" accessible, by requiring the following elements: "accessible and usable" public areas;
sufficiently wide doors; and "features of adaptive design" such as an "accessible route into and
20  through the dwelling," placement of certain controls (e.g. light switches) "in accessible
locations," reinforcements in walls for grab bars, and "usable kitchens and bathrooms such
21  that an individual in a wheelchair can maneuver about the space." 42 U.S.C. section
3604(f)(3)(C)(i)-(iii).
22
Thus, section 3604(f)(3)(C) sets out a general statement regarding access and
23  adaptability that is unlike, for example, a national building code. In implementing regulations
under section 3604(f)(3)(C), Congress did not direct or empower the Department of Housing
24  and Urban Development ("HUD") to promulgate binding regulations setting forth mandatory
accessible features. Rather, Congress empowered HUD only to issue reports and technical
25  guidance concerning accessibility. 42 U.S.C. section 3604(f)(5)(C). Lacking authority to
create mandatory design standards, HUD provided several examples of guidance documents
26  and "safe harbors" that could be utilized to ensure compliance. These non-mandatory "safe
harbors" generally exceed the minimum requirements of the FHAA and are at times
27  contradictory.

28

1   resulting injury. *Smith* and *Marin Fair Housing* confirm that such manufactured injury cannot

2   support standing. *Smith and Marin* both express doubt that such manufactured "expenses of

3   litigation" alone will support standing. *Smith,* 358 F.3d at 1105; *Fair Housing of Marin,* 285 F.3d

4   at 905. Rather, as *Fair Housing of Marin* explains, "Fair Housing of Marin responded to citizen

5   complaints against Combs, and alleged injury beyond litigation expenses." *Id.*, 285 F.3d at 905.

6       In sum, plaintiffs candidly admit that they "manufactur[ed] the[ir] [own] injury" by

7   voluntarily spending staff resources to identify the Spanos Defendants; and then to locate

8   apartments built by the Spanos Defendants; and then to "test" 34 of the complexes built by the

9   Spanos Defendants - - by measuring to see if all of the construction fit within HUD's "safe

10  harbor" but non-binding guidelines. See FAC, ¶¶ 3, 20, 29 and 39. Such voluntarily incurred

11  and manufactured injury is not injury <u>caused by</u> a violation of someone's section 3604 rights. *Fair*

12  *Housing of Marin, supra*, 285 F.3d at 903, quoting *Spann v. Colonial Village*, 899 F.2d 24, 27-29

13  (D.C. Cir. 1990) ["[A]n organization cannot, of course, manufacture the injury necessary to

14  maintain a suit  from its expenditure of resources on that very suit"].

15      **C.    <u>Plaintiffs Have No Standing Because They Cannot Allege Redressability: They</u>**
        **<u>Have No Standing to Seek Injunctive Relief and They Fail to Sue Indispensable</u>**
16      **<u>Parties.</u>**

17      Plaintiffs allege that the existence of inaccessible housing anywhere in the United States

18  injures Plaintiffs by frustrating Plaintiffs' mission of providing accessible housing to all disabled

19  persons. Opposition, p. 24:9-12, FAC, ¶ 72. But this alleged injury may not be redressed in this

20  case, inter alia,  because Plaintiffs lack standing to seek injunctive relief.

21      Standing is not dispensed "in gross." Rather, a plaintiff must demonstrate standing

22  separately for each form of relief sought (injunction, damages, civil penalties, etc.). *Friends of*

23  *the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 184 (2000). Before a

24  court will order a business to undergo the expense of altering its facilities to make them accessible

25  to a particular plaintiff, courts first require that plaintiff show that plaintiff has **standing to seek**

26  **injunctive relief**:

27          In order to establish an injury in fact sufficient to confer standing to
            pursue injunctive relief, the Plaintiff must demonstrate a "real or
28          immediate threat that the plaintiff will be wronged again - - a

---

CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF SPANOS DEFENDANTS' MOTIONS [CASE NO. C07-03255-SBA]

1    likelihood of substantial and immediate irreparable injury." [citation
2    omitted] In evaluating whether an ADA plaintiff has established a
     likelihood of future injury, courts have looked to such factors as: (1)
3    the proximity of the place of public accommodation to plaintiff's
     residence, (2) plaintiff's past patronage of defendant's business, (3)
     the definitiveness of plaintiff's plans to return, and (4) the plaintiff's
4    frequency of travel near defendant.

5    *Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042, 1045 (C.D. Cal. 2005).  Although

6    *Molski's* claims were under the ADA, this same test applies under the FHAA.  To have standing

7    to seek injunctive or declaratory relief under the FHAA, plaintiff must actually live at or intend

8    to live at the apartment complex sued on.  See, e.g., *Harris v. Itzhak*, 183 F.3d 1043, 1050 (9th

9    Cir. 1999) [Plaintiff's request for declaratory and injunctive relief rendered moot by her departure

10   from the complex].

11          The same is true for the public areas of the Subject Properties.  "Allegations that a plaintiff

12   has visited a public accommodation on a prior occasion and is currently deterred from visiting that

13   accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent."

14   *Doran v. 7-Eleven Inc.*, 506 F.3d 1191, 1197 (9th Cir. 2007) (decided under the ADA).  But even

15   then plaintiffs have standing to seek injunctive relief only for those violations related to plaintiffs

16   "specific disability." *Id.*, 506 F.3d at 1202.[2]

17          In the instant case, Plaintiffs do not allege that they ever intend to return to the subject

18   properties.  Plaintiffs do not allege that any disabled person has ever visited or intends to visit any

19   of the subject properties.

20          And, Plaintiffs in this case fail the proximity test.  Regarding "proximity," the district

21   court in *Molski v. Mandarin Touch* determined that the plaintiff's residence was over 100 miles

22   

23          [2] The scope of injunctive relief necessitated by the violation of someone's section 3604
24   rights cannot be determined without reference to a particular disabled person with a particular
     disability, who wishes to access a particular apartment. Section 3604(f)(3)(C) says it is
25   "discriminatory" - - but not a "discriminatory housing practice" - - to design and construct
     common areas that are inaccessible to disabled persons (3604(f)(3)(C)(i)); and to design and
26   construct apartments that are inaccessible to persons in wheelchairs (3604(f)(3)(C)(ii) and (iii)).
     But actual inaccessibility to a disabled person cannot be determined without reference to a
27   particular disabled plaintiff with a particular disability who needs a particular type of
28   accessibility - - e.g., the blind have different accessibility needs than the deaf, etc.

from the defendant Mandarin Touch Restaurant in Solvang, California, a fact which weighed heavily against standing to sue for injunctive relief. 385 F.Supp. at p. 1045. See also, *Gladstone Realtors v. Bellwood, supra,* 441 U.S. 91, 112, n 25 [refusing to grant standing to individual plaintiffs that did not live in the community in which the alleged discrimination occurred]; *Conservation Law Found. of New England v. Reilly,* 950 F.2d 38, 43 (1st Cir. 1991) [Denying standing to plaintiff entity seeking nationwide injunctive relief under CERCLA at approximately 1200 facilities, the court stated: "The absence of plaintiffs from the majority of regions of the country in this case demonstrates the lack of 'concrete factual context conducive to a realistic appreciation of the consequences of judicial action"]. *Havens, supra,* 45 U.S. at 377 ["It is indeed implausible to argue that [defendants'] alleged acts of discrimination could have palpable effects throughout [an] entire metropolitan area"].

    In the instant case, plaintiffs do not even pretend to have met the "proximity" test. Rather, they state: "The Proximity of Plaintiffs' Offices to Defendants' . . . Buildings Is Not Relevant to Any Standing Inquiry." Opposition, p. 25:19-20.

    That Plaintiffs' alleged injuries are not redressable is also revealed by the fact that Plaintiffs have not included in this suit parties who are indispensable to effectuate the injunctive relief requested. Although Plaintiffs' Opposition states they seek mere retrofits, the FAC alleges that plaintiffs seek a general nationwide injunction requiring the Spanos defendants to: "bring each and every . . .apartment community [sued on] into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations." FAC, p.40:11-13. Thus, as pled, the FAC seeks a nationwide injunction requiring the Spanos defendants to redesign and reconstruct all apartment complexes sued on - - tested, untested, and unknown.

    The redesign and reconstruction of apartments (as requested in the FAC) necessarily affects the property interests of owners, renters and secured lenders and the privacy interests of renters. Plaintiffs allege, correctly, that all current owners are "necessary parties in order to effectuate any judgment or order for injunctive relief requested by plaintiffs." FAC, ¶ 30. Rule 19(a)(2)(i), fundamental due process, and 42 U.S.C. section 3613(d) require that current owners, renters, and secured lenders of the properties sued upon be given notice and an opportunity to be heard. The

1    current owners are entitled to present evidence to this Court showing that properties owned by

2    them <u>actually comply</u> with the accessability requirements of the FHAA and that no disabled person

3    has ever been harmed by alleged inaccessibility of the subject properties.  Yet, Plaintiffs'

4    Opposition admits that this Court <u>does not have personal jurisdiction over these owners</u>.

5    Opposition, p. 33:9-10.[3]

6

7        [3] In an attempt to circumvent this problem, plaintiffs have alleged the existence of a defendant
8    "owner" class and have named Knickerbocker and Highpointe as class representatives. FAC, ¶¶ 32-
     37.  However, this stratagem fails.  First, the fact that the claims against both class representatives are
9    time-barred renders them "inadequate" under Rule 23.  See discussion, below. It also fails to solve the
     jurisdictional problem: in the absence of an opt-out mechanism, plaintiffs will have to establish
10   personal jurisdiction as to each current owner.  Incredibly, plaintiffs' Opposition argues that there is
     no need to afford due process to these known and unknown owners.  See Opposition, p. 33:9-24 to p.
11   34:1-2. Lack of personal jurisdiction over absent class members triggers due process concerns even in
     plaintiff class actions, in which, typically, no relief is sought against the absent class members and – in
12   any event – the absent class members can "opt out" if they chose not to participate in the lawsuit. See,
     *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985).  "Presumably, a defendant class would
13   not present the same problems [as posed in *Shutts*] because, unlike the situation with a plaintiff class,
     <u>the forum court must have personal jurisdiction over each member of a defendant class.</u>"  *Whitson v.*
14   *Heilig-Meyers Furniture, Inc.,* 1995 U.S. Dist. LEXIS 4312, *49 (N.D. Ala. 1995), emphasis added;
     see, also, *National Assn. for Mental Health, Inc. v. Califano,* 717 F.2d 1451, 1455 (D.C. Cir. 1983)
15   [affirming district court's order refusing to certify a defendant class where the named representatives
     would not "fairly and adequately protect the interests of the class" and where the district court did "not
16   have in personam jurisdiction over the class members"].
         In response to this case law, plaintiffs argue that Rule 23, and two cases interpreting Rule 23,
17   have abrogated the need to afford "due process" to defendant class members.  In reality, neither Rule
     23 nor any case so holds.  In fact, the main case relied on by Plaintiffs, *Califano v. Yamasaki,* 442
18   U.S. 682 (1979), explains that class relief is not available where Congress by statute has expressly
     limited such relief.  442 U.S. at 700.  42 U.S.C. section 3613(d) is such a limiting statute. Section
19   3613(d) mandates that an injunction which "affects" the property rights of owners, tenants, or secured
     lenders "shall not" issue without first affording notice and an opportunity to be heard to these parties.
20   *Ibid.* Similarly, in *Hansberry v. Lee,* 311 U.S. 32 (1940) (the other case relied on by Plaintiffs) the
     Supreme Court found that due process was not afforded where the putative class representative lacked
21   the motivation to vigorously assert the claims and defenses of the subject class members. 311 U.S. at
     27-29.
22       Further, any injunction issued by this court which purports to bind persons or entities over
23   which this court lacks personal jurisdiction would be unenforceable. An injunction against a defendant
     class is not enforceable by the issuing court against nonresident defendant class members outside the
24   court's jurisdiction. And, in a local enforcement proceeding, due process would dictate that the absent
     member be able to raise collaterally unique defenses, e.g., that he did not engage in the unlawful
25   practice; that the plaintiff is guilty of laches or unclean hands or is estopped to assert a claim against
     the defendant; that he has obtained a release of claims from the plaintiff; that he is not a member of the
26   class; or that the class representation was inadequate. See 2 Newberg on Class Actions § 4:49 at pp.
     347-348 (2002). And in a local enforcement proceeding, such a defendant would also inevitably assert
27   the defense that 42 U.S.C. § 3613(d) mandates that no injunction issue which affects his or her rights
     absent notice and an opportunity to be heard, and that therefore the previous injunction lacked validity.

28

---

CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF SPANOS DEFENDANTS' MOTIONS [Case No. C07-03255-SBA]

1    In addition, the tenants who hold leaseholds in the known 22,000 apartments sued on are

2    also entitled to notice and an opportunity to be heard, as are the tenants of the unknown apartments

3    sued on.  Plaintiffs say this is not so because these tenants can have their doors, bathrooms, and

4    kitchens reconstructed while the tenants are at work or on vacation. Opposition, p. 36:17-20.  But

5    people are funny - - many of the 22,000 tenants of these known apartments are probably quite

6    happy with their apartments just the way they are.  And, many of these 22,000 tenants may not

7    be pleased to welcome construction workers into their homes - - while they [the tenants] are away

8    at work or on vacation.[4]  In any event, these 22,000 tenants own leaseholds - - granting them

9    property and privacy rights to their apartments - - and due process and 42 U.S.C. section 3613(d)

10    require they be given notice and an opportunity to be heard before issuance of an injunction which

11    affects those rights.[5]

12    And an injunction requiring the redesign and reconstruction of individual units leased by

13    renters also adversely affects the property rights of secured lenders. Plaintiffs' Opposition argues

14    that the "cash flow" of the affected rentals may not be significantly impaired.  Opposition, p.

15    38:16-17. But the FAC does not so allege, and the injunction sought in the FAC seeks the redesign

16    and reconstruction of each known and unknown complex.  As alleged by the FAC, then, the

17    property rights of secured lenders will be affected.

18    Finally, in equity and "good conscience" this action should not proceed without the

19    owners, renters and secured lenders. Fed.R.Civ.P., rule 19.  These parties have property and/or

20    privacy rights which may not be impaired without due process of law - - which, at a minimum - -

21    requires notice and an opportunity to be heard.  These due process rights clearly outweigh any

22    concern regarding potential harm which may result from dismissal of this lawsuit. Plaintiffs' only

23

24    [4] Alternatively, the parties could wait until all 22,000 known apartments are vacated.
However, since some tenants live in the same apartments all of their adult lives, this Court

25    would be supervising such an injunction for 30 or more years.

26    [5] See, *H.J.M. v. K. Hovnanian at Mahwah VI, Inc.*, 672 A.2d 1166, 1172 (N.J. Sup.
Ct. 1996); *Equal Rights Center v. Post Properties, Inc.*, 522 F.Supp.2d 1, 5 (D.D.C. 2007);

27    see, also, Fed.R.Civ.P. 19(a)(2)(i); *Schneider v. Whaley*, 417 F.Supp. 750, 757 (S.D. NY
1976) (tenants had a "protected interest at stake" in the housing authority's policy-making and

28    were thus entitled to notice and an opportunity to submit evidence and argument).

1   alleged harm consists of litigation costs voluntarily incurred by Plaintiffs to identify and test the

2   subject properties and to thereafter bring this lawsuit. This monetary harm was voluntarily

3   incurred as part of Plaintiffs' scheme to manufacture a nationwide lawsuit purportedly brought to

4   benefit the disabled - - but actually brought to exact a settlement and substantial attorney fees from

5   defendants. In reality, dismissal of this lawsuit will not harm disabled persons at all. If any

6   disabled person ever actually visits any of the properties sued on and finds that a failure in design

7   or construction actually impairs his or her access, then a suit under 3604(f)(1) or (f)(2) can be

8   filed. The FHAA requires that the appropriate federal district court "appoint an attorney to

9   represent such person" and waive all "fees, costs, [and] security." 42 U.S.C. § 3613(b)(1) and

10  (2). And, such a disabled person could approach one of the plaintiff fair housing organizations

11  herein and request assistance with his or her suit.

12      However, such a future suit is not likely because an actual future denial of access is not

13  likely. Plaintiffs sue nationwide on 82 apartment complexes containing 22,000 units - - and on

14  an unknown number of unknown complexes containing an unknown number of units- - many built

15  more than 15 years ago. Yet, plaintiffs fail to allege that any disabled person has ever in any way

16  actually had his or her access impaired at any of the known or unknown complexes sued on.

17      The FAC in fact fails to allege that most types of disabled persons could have their access

18  impaired. The design and construction defects alleged in the FAC are irrelevant to the blind, the

19  deaf, the mentally infirm, etc. The alleged defects could possibly affect a mobility-impaired

20  person, depending upon the height, size and weight of that particular person and depending upon

21  the degree of that person's impairment. But, even if such a mobility impaired person's access is

22  denied or impaired in the future, he could file suit in the local district court - - and the owner,

23  tenants, and secured lenders would have minimum contacts with the local district court overseeing

24  the suit. Moreover, the relief granted would be limited by the "standing doctrine" to altering a

25  single apartment and those portions of the common areas needed to provide access to the particular

26  mobility impaired person who brought suit.

27      In contrast - - although no disabled person has ever been harmed - - Plaintiffs ask this

28  Court to issue and supervise a nationwide injunction requiring the redesign and reconstruction of

1  22,000 known apartments (and an unknown number of unknown apartments) without notice to the

2  owners, renters and secured lenders. "Equity and good conscience" require that since these

3  parties cannot be joined, this case should be dismissed.

4  II.  **PLAINTIFFS FAIL TO ALLEGE A CAUSE OF ACTION IN THEMSELVES OR ANYONE ELSE.**

5

6  A.  **Plaintiffs State No Cause of Action Because They Allege No Injury Caused By a Discriminatory Housing Practice.**

7

8  "Any person . . . who . . . claims to have been injured by a discriminatory housing

9  practice[6] . . . may commence a civil action . . . to obtain appropriate relief with respect to such

10  discriminatory housing practice . . . ." 42 U.S.C. § 3613(a)(1)(A). Plaintiffs state no cause of

11  action under the FHAA because they have not alleged facts to show they have been injured by a

12  "discriminatory housing practice."[7]

13  Plaintiffs have not alleged that they or anyone else has in fact ever had their access to any

14  of the apartments sued on denied or even impaired. Absent such an allegation, Plaintiffs fail to

15  state a cause of action.

16  B.  **Plaintiffs State No Cause of Action Because They Manufactured Their Own Alleged Injury.**

17

18  See discussion above, section I.B.2.

19  C.  **Plaintiffs State No Cause of Action Because They Have Sued the Wrong Defendants.**

20

21  ────────────────────

22  [6] 42 U.S.C. section 3602(i).

23  [7] Section 3602(f) defines "discriminatory housing practice" to mean "an act that is
unlawful under section 3604. . . ." In turn, section 3604(f)(1) makes it unlawful to design and

24  build apartments that are "unavailable" "to any renter" (A) because of a particular handicap of
that renter or (B) because of a particular handicap of a particular person who intends to reside

25  in a particular dwelling, or (C) because of a particular handicap of any person associated with
a particular renter. Section 3604(f)(2) makes it unlawful to design and build common areas

26  that are inaccessible to a renter (A) because of a particular handicap of a particular person
intending to rent; or (B) because of a particular handicap of a particular person who intends to

27  reside in a particular dwelling; or (C) because of a particular handicap of any person associated

28  with a particular renter.

1    42 U.S.C. sections 3604(f)(1) and (f)(2) make it "unlawful" to deny a rental to disabled

2  persons, or to deny a rental to those associated with disabled persons. It is landlords - not builders

3  - who are in a position to deny rentals:

> The "failure to design and construct" language of 3604(f)(3)(C) might be thought
> to limit the targets of this provision to those who 'design' or 'construct' covered
> multi-family dwellings, but this interpretation seems wrong. As one court has
> observed, 3604(f)(3)(C) "is not a description of who is liable. Rather, it is a
> description of what actions constitute discrimination."

7  R. Schwemm, "Barriers to Accessible Housing: Enforcement Issues in Design and Construction

8  Cases under the Fair Housing Act, 40 U. Richmond L.Rev. 753, 776 (2006).

9    "The conduct and decision-making that Congress sought to affect [by passage of the

10 FHAA] was that of persons in a position to frustrate . . . the housing choices of handicapped

11 individuals who seek to buy or lease housing . . . [P]rimarily . . . those who own the property of

12 choice and their representatives." *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277,

13 1283 (3d Cir. 1993). The Ninth Circuit explained this limitation on potentially liable parties in

14 an ADA case as follows:

> [A]fter the noncompliant building has already been built, injunctive relief is only
> meaningful against the person currently in control of the building. That is, the
> architect who built the building is by the time of suit by an eligible plaintiff out of
> the picture. This limitation on relief suggests that reading Title III to make
> architects, and others who do not own, lease, or operate buildings, such as builders
> and construction subcontractors, liable for "design and construct" discrimination
> would create liability in persons against whom there is no meaningful remedy
> provided by the statute.

19 *Lonberg v. Sanborn Theatres*, 259 F.3d 1029, 2001 U.S.App.LEXIS 17418, at *18 (9th Cir.

20 2001).

21 **III.    PLAINTIFFS' CLAIMS AGAINST THE SPANOS DEFENDANTS AND AGAINST
       THE PUTATIVE CLASS DEFENDANTS ARE BARRED BY THE STATUTE OF
22       LIMITATIONS.**

23    "An aggrieved person may commence a civil action . . . not later than 2 years after the

24 occurrence or the termination of <u>an alleged discriminatory housing practice</u>." 42 U.S.C. section

25 3613(a)(1)(A), emphasis added.

26    Plaintiffs' Opposition and the FAC both imply, but do not expressly state, that the mere

27 failure to design and construct in accord with the provisions of section 3604(f)(3) constitutes a

28

"discriminatory housing practice." This reading of the statute is plainly wrong. See discussion, above.[8]

Assuming, arguendo, the validity of Plaintiffs' reading of the statute, nevertheless, Plaintiffs' claims are still time-barred. Plaintiffs' Opposition concedes, sub silentio, that absent the FAC's allegations of a continuing pattern and practice of violations of the FHAA, the FAC would be time barred as to all apartments constructed more than 2 years before filing of the complaint. As to those complexes outside of the two-year period, Plaintiffs argue that *Havens* saves their claims:

> [P]laintiffs' claims are timely with respect to the complexes completed more than two years before the case was filed because they were designed and constructed pursuant to a pattern and practice, continuing into the limitations period, of erecting apartments in violation of the FHA's design and construction requirements. See *H avens*, 455 U.S. at 380-81("where a plaintiff, pursuant to the FHA, challenges not just one incident of **conduct violative of the Act**, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [2 years] of the last asserted occurrence of that practice"). That is, at least 82 complexes are properly before the Court.

Opposition, p. 14:1-7, emphasis added.[9]

Plaintiffs' reliance on *Havens* is misplaced. Although *Havens* is an FHA case where the Court upheld application of the continuing violation doctrine, the rationale of *Havens* cannot be applied in the context of section 3604(f)(3)(C). The alleged FHA violation in *Havens* was racial steering, an unlawful practice that by definition continues over time. *Havens,* 455 U.S. at 380. Racial steering as a practice cannot be determined based on one event; rather, racial steering is determined by observing several unlawful practices over time. *Id.* at 381. Hence, the Court found

---

[8] Under the rules of statutory construction, "the plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results." *United States v. Daas* 198 F.3d 1167, 1174 (9th Cir. 1999) Specific statutes control over general statutes, and both over case law. See *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987). In approaching the statute, the Spanos defendants are guided, first, by Justice Felix Frankfurter's "threefold imperative to law students" in his landmark statutory interpretation course: "**(1) Read the statute; (2) read the statute; (3) read the statute!**" Henry J. Friendly, *Benchmarks* (1967) 202, emphasis added.

[9] As stated by *Havens*, a continuing violation requires a pattern of violations of the FHAA. As explained above, the FAC alleges a pattern of creating "patent discriminatory conditions" and not a pattern of committing "discriminatory housing practices."

1   that the alleged racial steering constituted a continuing violation because (1) it continued to occur

2   within the limitations period, and (2) the nature of racial steering is such that it is "manifested in

3   a number of incidents." *Id.* In other words, the unlawful practice of racial steering can only be

4   fully determined after looking at a series of alleged unlawful acts.

5   Plaintiffs neglect to point out that the Supreme Court in *Havens* refused to apply the

6   continuing violations doctrine to "open," "obvious," and "completed" unlawful acts. That is, the

7   court explained that the continuing violation doctrine did not apply to a plaintiff tester's claims,

8   which were based on "four isolated occasions" in which she received false information as to

9   housing availability. *Havens,* 455 U.S. at 381. Her claims were in fact dismissed as being

10  untimely. 455 U.S. at 381. Thus, the continuing violation doctrine is only applicable in situations

11  "where the type of violation is one that could not reasonably have been expected to be made the

12  subject of a lawsuit when it first occurred because its character as a violation did not become clear

13  until it was repeated during the limitations period," *Hargraves v. Capital City Mortgage Corp.,*

14  140 F.Supp.2d 7, 18 (D.D.C. 2000) citing *Taylor v. FDIC,* 132 F.3d 753, 764-765 (D.D.C.

15  1997). *See also United States v. Pac. Northwest Electric,* 2003 U.S. Dist. LEXIS 7990, *15 (D.

16  Idaho Nov. 20, 2003) ["This 'failure' [to design and construct] occurs and is complete at the time

17  the particular dwellings are designed and/or constructed. There is no basis, under the plain

18  language of § 3604(f)(3) of the FHA for applying the continuing violation doctrine"].

19  Unlike racial steering, the design and construction of apartments involves open and obvious

20  discrete acts with a clear ending point—the date on which construction or design is completed.

21  *Moseke v. Miller,* 202 F.Supp.2d 492, 506-507 (E.D. Va. 2002); and see *Levine v. Bally Total

22  Fitness Corp.,* 2006 U.S. Dist LEXIS 95006, * 30 (E.D. Illinois 2002), citing *Amtrak v. Morgan,*

23  536 U.S. 101, 114 (2002).

24  Accordingly, the rationale for applying the continuing violation doctrine in *Havens*

25  has no applicability to design and construction cases. Any alleged failure to design and construct

26  is open, obvious, and easily determinable at the time of completion of construction. The FAC in

27  fact alleges that the alleged non-compliant design and construction of the subject complexes was

28  open and obvious. That is, the FAC alleges that the alleged design and construction deficiencies

1   in the subject complexes constituted nothing less than posting a sign saying: "<u>No Handicapped</u>
2   <u>People Allowed</u>."  FAC, ¶ 10.

3        Thus, as time passes without any suits, and the two-year notice period for multi-family
4   developers, architects, and builders expires, justice requires that these parties be freed from stale
5   claims.  Statute of limitations are enacted for a reason, and the Supreme Court recognizes that "a
6   discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate
7   event in history which has no present legal consequences."  *Ledbetter v. Goodyear*, 127 S.Ct.
8   2162, 2168 (2007) (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).
9   Moreover, applying the continuing violation doctrine to alleged section 3604(f)(3)(C) violations,
10  as urged by plaintiffs, renders the statute of limitations "meaningless."  *Moseke*, 202 F.Supp.2d
11  at 507, 508.

12       One of the underlying purposes of the statute of limitations, is "protect[ing] defendants
13  from the burden of defending claims arising from . . . decisions that are long past."  *Del. State*
14  *College v. Ricks*, 499 U.S. 250, 256-57 (1980).  "Statutes of limitations serve a policy of repose."
15  *Ledbetter*, 127 S.Ct. at 2170.  They "represent a pervasive legislative judgment that it is unjust
16  to fail to put the adversary on notice to defend within a specified period of time and that 'the right
17  to be free of stale claims in time comes to prevail over the right to prosecute them.'"  *Id.* (quoting
18  *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).

19       Finally, as to the putative class defendants, Plaintiffs state no cause of action against
20  them at all.  Opposition, p. 32:20-23.  And, the FAC <u>does not</u> allege that these putative
21  defendant owners engaged in a pattern and practice of owning apartments in violation of
22  section 3604.[10]  Moreover, the FAC cannot be amended to so allege.  All construction on
23  properties owned by the putative class representative defendants was completed more then two
24  years before Plaintiffs' complaint was filed.  Therefore, the two-year statute has run as to both
25
26

27       [10] As stated by *Havens*, a continuing violation requires a pattern of violations of the
28  FHAA.  As explained above, the FAC alleges a pattern of creating "patent discriminatory
    conditions" and not a pattern of committing "discriminatory housing practices."

1   putative class representative defendants and as to the Spanos Defendants.[11]

2   **IV.    THE SPANOS DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT**
3        **SHOULD BE GRANTED.**

4        Federal Rule of Civil Procedure 12(e) provides:  "If a pleading to which a responsive

5   pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to

6   frame a responsive pleading, the party may move for a more definite statement before

7   interposing a responsive pleading."  "[I]f [a] complaint does not sufficiently answer question[s]

8   of standing . . . [a] defendant may move for a more definite statement of fact."  *Fair Housing*

9   *of Huntington Committee Inc. v. Town of Huntington,* 316 F.3d 357, 362 (2d Cir. 2003) citing

10  *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 383 (1982) (Powell, J., concurring).

11       **A.    Plaintiffs Should be Required to Amend The FAC to Allege Accurately the**
12             **Location and Number of Complexes Sued on.**

13       Plaintiffs seek to amend the FAC by argument in their Opposition and not by actually

14  amending the FAC. Says their Opposition:

15              Plaintiffs have . . . acknowledged their error in listing
               Constellation Ranch in Fort Worth, Texas and Orion at Roswell
16              in Roswell, Georgia, and in mis-numbering the apartment
               complexes in the appendix to the FAC.  Removing these from the
17              purview of the FAC, however, still leaves 82 properties that are
               unquestionably pled into this case.

18

19  Opposition, p. 47:5-9.

20       But argument does not constitute an amendment of the FAC.  Are the Spanos

21  defendants required to answer the FAC and deny the FAC's claims that Constellation Ranch in

22  Texas and Orion in Georgia were improperly designed and constructed?  Who are the owners,

23  tenants and lenders regarding these complexes?  Are the owners of the complexes members of

---

25  [11] Plaintiffs mistakenly assert that as to Highpointe Village, a final certificate of
    occupancy on one complex it owns was not filed until June 20, 2005.  See Plaintiffs'
26  Opposition to Highpointe's 12(b)(6) Motion, p. 4:4-8.  But, Highpointe was not sued in this
    case until October 12, 2007, - - the date the FAC was filed - - more than two years after
27  issuance of the certificate of occupancy.  And, defendant Highpointe Village, L.P., does not
    own this complex; rather, it is owned by Highlands KS, LP, a California limited partnership,
28  an entity not made a party to this suit.  See Plaintiffs' RJN, Exhibit 49A.

1  the putative defendant class?

2  **B.    Plaintiffs Should Be Required to Amend the FAC to More Particularly State Their Standing to Seek Injunctive Relief.**

3

4  The Spanos Defendants' opening brief explained that Plaintiffs failed to sufficiently

5  allege standing to support their request for injunctive relief, because inter alia, (1) they allege

6  that their damages were "voluntarily" incurred and (2) they seek a vast national injunction

7  without alleging the likelihood of irreparable injury to themselves and without joining

8  indispensable parties.  Opening Brief re Motion for More Definite Statement, pp. 7-13.

9  If Plaintiffs can amend their complaint to allege causation, standing to sue for injunctive

10  relief, and join indispensable parties, they should be given leave to do so.

11  **V.    THE SPANOS DEFENDANTS' MOTION TO STRIKE SHOULD BE GRANTED.**

12  "A motion to strike is appropriate to address requested relief, such as punitive

13  damages, which is not recoverable as a matter of law. . . ."  *Wilkerson v. Butler,* 229 F.R.D.

14  166, 172 (E.D. Cal. 2005).  "A motion to strike may be used to strike a prayer for relief when

15  the damages sought are not recoverable as a matter of law."  *Bureerong v. Uvawas*, 922

16  F.Supp. 1450, 1479 (C.D. Cal. 1996).  A motion to strike may also be employed to strike

17  those "portions" of a complaint barred by the statute of limitations.  *Barnes v. Callaghan &*

18  *Company*, 559 F.2d 1102, 1105, n 3 (7th Cir. 1977).  Plaintiffs' opposition concedes that "a

19  motion to strike may be used to strike any part of the prayer for relief when the damages

20  sought are not recoverable as a matter of law.  [Citations.]"  Opposition, p. 43:21 to p. 44:1.

21  Defendants' motion to strike seeks to strike:

22  (1) Plaintiffs' prayer for damages as being voluntarily incurred;
(2) Plaintiffs' prayer for punitive damages - - because the FAC fails to allege that

23  anyone's FHAA rights have been violated;
(3) Plaintiffs' prayer for injunctive relief because Plaintiffs failed to join indispensable

24  parties and because under the Ninth Circuit case of *Lonberg v. Sanborn Theatres*, only
owners can be liable for injunctive relief;

25  (4) Plaintiffs' requests for relief regarding those complexes sued on that were
constructed more than two years before suit was filed, because they are barred by the

26  statute of limitations; and
(5) Plaintiffs' request for relief based on the untested and unknown properties because

27  standing is determined as of the time a complaint is filed and Plaintiffs could not
possibly have suffered injury caused by testing untested and unknown properties.

28  See Opening Motion to Strike, previously filed.

CONSOLIDATED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF SPANOS DEFENDANTS' MOTIONS [CASE NO. C07-03255-SBA]

1       Defendants have no new argument to add to their opening brief, other than those

2 additional arguments already stated <u>above</u>, except to point out that Plaintiffs' Opposition

3 admits that "punitive damages" cannot be recovered absent facts alleging "callous and reckless

4 disregard <u>of the rights established under the FHA</u> [citations]." Opposition, p. 44:9-13. As

5 explained above, the FAC does not and cannot allege that anyone's FHAA rights have been

6 violated, therefore the FAC has not and cannot allege a callous and reckless disregard for those

7 rights. And, defendants reiterate that plaintiffs cannot allege standing regarding the untested

8 and unknown complexes, because Plaintiffs cannot have been injured by testing untested and

9 unknown properties. Therefore, the FAC should be narrowed to include only the tested

10 properties, and within that category - - only the "tested" properties that were built within two

11 years of the filing of Plaintiffs' complaint. See *Utah Ass'n. of Counties v. Bush*, 455 F.3d

12 1094, 1099-1101 (10th Cir. 2006) [An injury that did not occur until after the complaint was

13 filed cannot serve as the basis for standing].

14 **VI.   THE SPANOS DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES SHOULD BE GRANTED.**

15       See discussion under Redressability, section I.C., above.

16

17                         **CONCLUSION**

18       Architects and builders nationwide have been subjected to a torrent of litigation by Fair

19 Housing Organizations alleging apartment communities have not been designed and built in

20 accord with FHAA standards. Often these defendants' association with the apartment

21 complexes sued on ended as much as fifteen years prior to the litigation. Many of these suits

22 name as plaintiffs only Fair Housing Organizations and do not even purport to allege that any

23 disabled person has ever actually been harmed. See, e.g., *Equal Rights Ctr. v. Post Props.,*

24 *Inc.* 522 F.Supp.2d 1 (D.D.C. 2007). FHAA design/build suits have become for architects

25 and builders what thousands of ADA suits have been to owners of public accommodations, an

26 unending series of lawsuits brought by Fair Housing Organizations (but not anyone actually

27 harmed) seeking cash settlements and attorneys fees. See e.g., *Rodriguez v. Investco, L.L.C.*

28 305 F.Supp.2d 1278, 1280-82, 1285 (M.D. Fla. 2004); *Molski v. Mandarin Touch Rest.*, 374

1     F.Supp.2d 860 (C.D. Cal. 2004).

2        This is such a suit. The original complaint in this case alleged a cause of action for

3 violation of the ADA and named as defendants only the Spanos defendants and not the owners

4 of the complexes sued on. See Original Complaint, ¶ 82-84. Defendants filed a motion to

5 dismiss the original complaint under Federal Rules of Civil Procedure, Rule 12(b)(6). That

6 motion explained that under the Ninth Circuit case of *Lonberg v. Sanborn Theatres*, above,

7 only owners and not architects or builders are proper defendants under the ADA. Defendants'

8 motion also explained that this Court has no personal jurisdiction over owners of the

9 complexes sued on - - who are scattered nationwide - - and that therefore Plaintiffs' single

10 nationwide action would have to be filed as a series of local actions.

11        Rather than dismiss and sue locally, Plaintiffs simply dropped their ADA claims from

12 the FAC. Now, Plaintiffs' Opposition and the FAC admit that Plaintiffs manufactured this suit

13 (1) by going onto the internet to identify a national builder that had not already been sued for

14 alleged FHAA violations; then by (2) locating some of the apartment complexes defendant

15 built; then by (3) sending staff to "test" the complexes to measure doors, kitchens, bathrooms

16 and thresholds to find noncompliance with the "safe harbor" provisions contained in the

17 regulations promulgated under 42 U.S.C. section 3604(f)(3)(C); and then by (4) seeking

18 injunctive relief nationwide, to correct one or more perceived violations of these "safe harbor"

19 provisions. Plaintiffs' Opposition also admits that no disabled person has ever complained that

20 his or her access to any of the complexes sued on has ever actually been impaired. That is, no

21 disabled person has ever been harmed.

22        Notwithstanding the fact that no one has ever actually been harmed, Plaintiffs insist that

23 this Court should grant a nationwide injunction which affects the property and privacy rights of

24 owners, renters, and secured lenders, without affording "due process" to these parties.

25 Plaintiffs make this argument because affording notice and an opportunity to be heard to these

26 parties would necessarily convert this case from a nationwide case - - promising a huge

27 settlement and attorney fees award - - to a series of local cases, with a real plaintiff seeking

28 limited relief - - i.e., the redesign and construction of a single apartment and accompanying

1  common areas.

2      This case lacks all merit.  The Spanos defendants' motions should be granted.

3

4  Dated: February 26, 2008                    FREEMAN, D'AIUTO, PIERCE, GUREV,
                                               KEELING & WOLF

5

6  By

7  LEE ROY PIERCE, JR.
   Attorneys for Defendants A.G. Spanos
   Construction, Inc.; A.G. Spanos Development,
8  Inc.; A.G. Spanos Land Company, Inc.; A.G.
   Spanos Management, Inc., The Spanos
9  Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28