MANATT, PHELPS & PHILLIPS, LLP
CLAYTON B. GANTZ (State Bar No. 116765)
SHIRLEY E. JACKSON (State Bar No. 205872)
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474
E-mail: cgantz@manatt.com
E-mail: sjackson@manatt.com

Attorneys for Defendants
HIGHPOINTE VILLAGE, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| National Fair Housing Alliance, Inc., Fair Housing of Marin, Inc.; Fair Housing Napa Valley, Inc.; Metro Fair Housing Services, Inc.; and Fair Housing Continuum, Inc.,<br><br>Plaintiffs,<br><br>vs.<br><br>A.G. Spanos Construction, Inc.; A.G. Spanos Development, Inc.; A.G. Spanos Land Company, Inc.; A.G. Spanos Management, Inc.; The Spanos Corporation; and<br><br>Knickerbocker Properties, Inc. XXXVIII;; and Highpointe Village, L.P. individually and as Representatives of a Class of All Others Similarly Situated,<br><br>Defendants. | No. C07-03255-SBA<br><br>**DEFENDANT HIGHPOINTE VILLAGE, L.P.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**<br><br>[FED. RULE CIV. PROC. 12(b)(6)]<br><br>Hearing Date: March 11, 2008<br>Time: 1:00 p.m.<br>Dept: Courtroom 3<br>Judge: Hon. Sandra Brown Armstrong<br><br>Complaint Filed: June 20, 2007<br>First Amended Complaint Filed: Oct. 12, 2007 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT (Case No. C07-03255-SBA)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL ARGUMENT ................................................................................................... 2

    A. The FHA's Two-Year Statute of Limitations Bars Plaintiffs' Claims Against Highpointe ............................................................................................ 2

        1. Highpointe Village received its final certificate of occupancy on December 8, 2003—not on September 26, 2005, as Plaintiffs now claim ................................................................................................... 3

        2. The continuing violation doctrine does not apply to Highpointe .............. 4

            a. Under the Silver State decision, Plaintiffs' claims against Highpointe should be dismissed ................................................... 5

            b. The Supreme Court's analysis in Havens does not apply to the facts presented by this case ........................................................ 7

            c. Plaintiffs' legal authority cited in the Opposition is distinguishable from the instant case, and the Court should follow the case law cited by Highpointe ........................................ 8

        3. Although Garcia v. Brockway may no longer be cited as precedent, this Court should affirm the policy behind the Garcia decision ................ 9

        4. Federal Rule of Civil Procedure 19 does not apply in this case and does not supersede the FHA's two-year statute of limitations ................ 10

    B. The FAC Fails To Allege Fact Sufficient To Establish Organizational Standing ..................................................................................................... 11

    C. Plaintiffs Do Not Refute That They Failed To Allege Facts Sufficient To Support Their Claim For Injunctive Relief ............................................... 14

III. CONCLUSION ............................................................................................................ 15

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT (Case No. C07-03255-SBA

# TABLE OF AUTHORITIES

**Page**

## CASES

Alexander v. Riga, 208 F.3d 419 n.4 (3d Cir. 2000)...................................................... 13

Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959)............................................... 14

Equal Rights Center v. Equity Residential, 483 F.Supp. 2d 482 (D.Md. 2007) .......... 13

Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.,
   250 F. Supp. 2d 706 (W.D. Ky. 2003) ...................................................................... 9

Fair Housing of Marin v. Combs, 285 F.3d 899 (9th Cir. 2002) ............................ 11, 13

Garcia v. Brockway, 503 F.3d 1092 (9th Cir. 2007) ...................................................... 9

Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91 (1979) ....................................... 14

Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982)..................................... 7, 11, 12

Inland Mediation Board v. City of Pomona, 158 F. Supp. 2d 1120 (C.D. Cal. 2001).... 8

Memphis Center for Independent Living v. Makowsky Construction Co.,
   No. 01-2069 (July 29, 2003 W.D. Tenn.) ................................................................. 8

Moseke v. Miller and Smith, 202 F. Supp. 2d 492 (E.D. Va. 2002)............... 3, 4, 6, 8, 10

Project Sentinel v. Evergreen Ridge Apartments,
   40 F. Supp. 2d 1136 (N.D.Cal. 1999) ......................................................... 12, 13, 14

Rondeau v. Mosinee Paper Corp., 422 U.S. 49 (1975) ................................................ 14

Silver State Fair Housing Council, Inc. v. ERGS, Inc.,
   362 F. Supp. 2d 1218 (Dist. Nev. 2005) ................................................ 5, 6, 7, 8, 10, 11

Silver State Fair Housing Council, Inc. v. ERGS, Inc.,
   No. CV-N-02-0615-DWH (VPC) (Dist. Nev. March 8, 2004) ................................. 5

Smith v. Disabled Rights Action Committee, 358 F.3d 1097 (9th Cir. 2004) .......... 11, 13

Spann v. Colonial Village, Inc., 899 F.2d 24 (D.C. Cir. 1990) ...................................... 8

TOPIC v. Circle Realty, 532 F.2d 1273 (9th Cir. 1976) ............................................... 14

U.S. v. Pacific Northwest Electric ("PNE"), Inc., No. CV-01-019-S-BLW,
   2003 U.S. Dist. LEXIS 7990 (D. Idaho March 19, 2003)......................................... 8

U.S. v. Taigen & Sons, Inc., 303 F. Supp. 2d 1129 (D. Idaho 2003) .......................... 3, 6

United States v. City of Parma, 661 F.2d 562 (6th Cir. 1981)............................. 2, 8, 13

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT (Case No. C07-03255-SBA

**TABLE OF AUTHORITIES**
(continued)

**Page**

Walker v. City of Lakewood, 272 F.3d 1114, 1124, n.3 (9th Cir. 2001) .................................. 12

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANT'S REPLY BRIEF IN
SUPPORT OF MTN TO DISMISS FIRST
AM COMPLAINT

Defendant Highpointe Village, L.P. ("Highpointe") respectfully submits this reply brief (the "Reply") in support of its motion under Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of all claims alleged against it in the First Amended Complaint ("FAC") filed by Plaintiffs National Fair Housing Alliance, Inc., Fair Housing of Marin, Inc., Fair Housing Napa Valley, Inc., Metro Fair Housing Services, Inc., and Fair Housing Continuum, Inc. (collectively, "Plaintiffs").

## I.   INTRODUCTION

In their Opposition to Highpointe's Motion to Dismiss (the "Motion"), Plaintiffs are wrong on the law and wrong on the facts.

First, Plaintiffs are wrong in arguing that their claims against Highpointe are not barred as a matter of law by the FHA's two-year statute of limitations. Where, as is here, the alleged discriminatory housing practice is the failure to design and construct a multifamily dwelling in accordance with the Fair Housing Act's (the "FHA") accessibility requirements, a plaintiff must bring a private civil action within two years of the completion of the design and construction phase. Because both the FAC and judicially noticeable facts demonstrate that Highpointe Village was completed in 2003—more than three years prior to the commencement of this action—Plaintiffs' action against Highpointe is clearly time-barred.

Plaintiffs' arguments in an attempt to avoid the running of the statute of limitations are of no avail. For instance, Plaintiffs are mistaken in their new-found belief that construction of Highpointe Village was not completed until 2005 because the document upon which they rely is a final certificate of occupancy for a separate multifamily dwelling owned by Highlands KS, L.P., not Highpointe. Further, the continuing violation doctrine simply does not apply to extend the statute of limitations for Plaintiffs' claims against Highpointe because Plaintiffs cannot link any of the alleged continuing violations committed by the Spanos Defendants to any "act" by the independent entity of Highpointe. Finally, Plaintiffs misconstrue Federal Rule of Civil Procedure 19 in arguing that, regardless of whether the statue of limitations has run, Highpointe should be required to remain in this suit because it is an indispensable party.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

1      Second, Plaintiffs are wrong that they have organizational standing under Article III of the Federal Constitution. To establish organizational standing, a plaintiff must allege that the purported unlawful action has not only frustrated its mission, but has also increased the resources the group must devote to programs or services independent of its lawsuit. Here, the only diversion of resources alleged in the FAC are those required to investigate and test the properties designed and constructed by the Spanos Defendants that are at issue in this lawsuit, which are wholly insufficient to establish organizational standing.

    Third, Plaintiffs do not even appear to address Highpointe's argument in the Motion that Plaintiffs have failed to allege facts sufficient to show standing to seek injunctive relief under the FHA. Plaintiffs do, however, admit that the FAC asserts no violations of the FHA against Highpointe. See Opp. at 3:5. Nonetheless, they curiously attempt obtain an injunctive against Highpointe without even alleging the threshold requirements of irreparable harm and inadequacy of legal remedies in order to obtain the drastic remedy of an injunction.

    As shown, to the extent that Plaintiffs allege claims against Highpointe, the FAC is fundamentally flawed as a matter of law and the action should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.

## II. LEGAL ARGUMENT

### A. The FHA's Two-Year Statute of Limitations Bars Plaintiffs' Claims Against Highpointe

    As demonstrated by the Motion and again below in this Reply, Plaintiffs' claims for relief under the FHA are time-barred as a matter of law against Highpointe. The plain language of the FHA's statute of limitations means exactly what it says: "An aggrieved person may commence a civil action ... not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. 3613(a)(1)(A) (emphasis added).[1] Where, as is here, the alleged discriminatory practice is the failure to design and construct a multifamily dwelling in conformance with FHA standards, the two-year statute of limitations begins to run at the

---

[1] See also United States v. Daas, 198 F.3d 1167, 1174 (9th Cir. 1999) ("The plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results.").

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT (Case No. C07-03255-SBA

completion of the "design-and-construction phase," which occurs on the date the final certificate of occupancy is issued for that development. *See, e.g., Moseke v. Miller and Smith*, 202 F. Supp. 2d 492, 507-09 (E.D. Va. 2002); *U.S. v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1144 (D. Idaho 2003). Consequently, Plaintiffs' two-year window to file their claims against Highpointe began on December 8, 2003, when the City of Overland Park issued the final certificate of occupancy for Highpointe Village, the apartment complex owned by Highpointe.[2] *See* Highpointe's Request for Judicial Notice ("RJN") [Doc. # 61], Ex. B. Because Plaintiffs did not commence this action until June 20, 2007—*more than three years later*—Plaintiffs' claims against Highpointe are barred by the FHA's statute of limitations.

In the Opposition, Plaintiffs assert four arguments as to why their claims purportedly survive the two-year statute of limitations. Addressing each of these arguments in turn below, it is clear that nothing in the Opposition can save Plaintiffs' claims against Highpointe from being time-barred, and, thus, the FAC should be dismissed.

### 1. Highpointe Village received its final certificate of occupancy on December 8, 2003—not on September 26, 2005, as Plaintiffs now claim

First, in an apparent concession that the FHA's two-year statute of limitations generally begins to run on the date the final certificate of occupancy is issued, Plaintiffs argue for the first time (and in direct contradiction of allegations in the FAC) that the final certificate of occupancy for Highpointe Village was not issued until September 26, 2005 and, therefore, that their claims are not time-barred. *See* Opp. at 4, 7. Although Plaintiffs recognize that they pled in the FAC that Highpointe Village was "completed in 2003," they claim to have since learned from the Spanos Defendants that the final certificate of occupancy was not issued until 2005. *Id.* at 4 n.3 (citing Spanos Defendants' RJN [Doc. # 55], Exh. 134A). Plaintiffs are not only mistaken in this newly-minted argument, but the very document relied upon by Plaintiffs for this alleged "fact" does not support their position.

---

[2] In the Opposition, Plaintiffs assert that Highpointe Village did not receive its final certificate of occupancy until September 26, 2005. Not only does this argument directly contradict Plaintiffs' own allegation that Highpointe Village "was completed in 2003" (FAC ¶ 62), but it is incorrect as shown in Part II.A.1 of this Reply.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

1    As the FAC correctly alleges, there are two developments constructed by the Spanos Defendants in the City of Overland Park: <u>Highpointe Village</u> and <u>Highlands</u>. *See* FAC ¶ 62. Highpointe Village is owned by Highpointe Village, L.P.,[3] and is a "multifamily complex consisting of approximately 300 units that was completed in 2003."[4] As Exhibit 134 to the Spanos Defendants' Request for Judicial Notice makes clear, the last certificate of occupancy issued for Highpointe Village was on December 8, 2003.[5]

On the other hand, Highlands is owned by Highlands KS, L.P.,[6] and is a "multifamily complex consisting of more than 180 units that was completed in 2005."[7] As Exhibit 134A to the Spanos Defendants' Request for Judicial Notice demonstrates, the last certificate of occupancy issued for Highlands was on September 26, 2005.[8]

Plainly, Plaintiffs confuse Highlands with Highpointe Village in their Opposition. What is more, the documents submitted by the Spanos Defendants do not establish that the final certificate of occupancy for <u>Highpointe Village</u> was issued on September 26, 2005. Instead, Plaintiffs were correct in the FAC, where they alleged that Highpointe Village was completed in 2003. Consequently, Plaintiffs' failure to initiate this action within the two years following December 8, 2003 is fatal to their claims against Highpointe. *See, e.g., Moseke*, 202 F. Supp. 2d at 507; *Taigen & Sons*, 303 F. Supp. 2d at 1144.

### 2. The continuing violation doctrine does not apply to Highpointe

In an attempt to circumvent the running of the two-year statute of limitations, Plaintiffs next argue that the design and construction of Highpointe Village is part a "continuing violation" of the Act on the part of the Spanos Defendants. *See* Opp. at 7-11. Regardless of the potential application of the continuing violation doctrine to Plaintiffs' claims against the Spanos

---

[3] *See* Spanos Defendants' RJN [Doc. # 51], Exh. 49 (Special Warranty Deed).

[4] FAC ¶ 62.

[5] *See* Spanos Defendants' RJN [Doc. # 55], Exh. 134 (certificate of occupancy for Highpointe Village).

[6] *See* Spanos Defendants' RJN [Doc. # 51], Exh. 49A (Special Warranty Deed).

[7] FAC ¶ 62.

[8] *See* Spanos Defendants' RJN [Doc. # 55], Exh. 134 (certificate of occupancy for Highlands).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

Defendants, however, the continuing violation doctrine simply does not apply to extend the statute of limitations for Plaintiffs' claims against Highpointe.

      a.    **Under the *Silver State* decision, Plaintiffs' claims against Highpointe should be dismissed**

The continuing violation doctrine does not apply to an owner of a multifamily dwelling, such as Highpointe, when that multifamily dwelling is completed more than two years prior to the filing of the plaintiff's action. *See Silver State Fair Housing Council, Inc. v. ERGS, Inc.*, 362 F. Supp. 2d 1218 (Dist. Nev. 2005); *Silver State Fair Housing Council, Inc. v. ERGS, Inc.*, No. CV-N-02-0615-DWH (VPC) (Dist. Nev. March 8, 2004) (Order granting defendant's motion to dismiss) (attached to Consolidated Opp. to Spanos Defendants' Motions [Doc. # 74] as Exh. 2) (the "*Silver State* Order").[9] Significantly, *Silver State* is the very case cited by Plaintiffs in support of their "continuing violation" argument and is characterized by Plaintiffs as having "facts that are strikingly similar to those presented here" (Consolidated Opp. to Spanos Defendants' Motions [Doc. # 74] at 11), but yet it compels the dismissal of Highpointe.

In *Silver State*, the plaintiff filed a "construction and design" action under the FHA against a developer, ERGS, and two owners of complexes developed by ERGS, Sierra Sage and Silver Lake. Like the Plaintiffs in this case, the plaintiff in *Silver State* alleged that the developer engaged in a pattern and practice of discriminatory conduct, and also sought to hold the owners of those two developments accountable. Importantly, the plaintiff did not file suit until almost five years after the last certificate of occupancy was issued for Sierra Sage, the first development built by ERGS. Just as in this case, the plaintiff argued that because ERGS was still constructing the nearby Silver Lake complex, the developer's violations at Silver Lake could be applied so as to constitute a "continuing violation" at the already-completed Sierra Sage.

---

[9] Highpointe acknowledges that the District Court's Order granting the defendant owner's motion to dismiss is not a published opinion. Nevertheless, in the Court's published opinion, *Silver State Fair Housing Council v. ERGS, Inc.*, 362 F. Supp. 2d 1218 (Dist. Nev. 2005), the Court incorporated its prior Order by reference and referred to it in analyzing the developer's arguments in its motion for summary judgment. *Silver State*, 362 F. Supp. 2d at 1220. Because Plaintiffs seek to rely on the District Court's published opinion in *Silver State*, Defendants respectfully request that this Court also consider the same District Court's underlying Order dismissing a defendant owner—who was in the same position as Highpointe—from that case.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

The court granted Sierra Sage's motion to dismiss. In doing so, the court rejected the plaintiff's "continuing violation" argument as against Sierra Sage, finding that the owner of an already completed complex must be treated differently than (i) a developer allegedly engaged in a pattern and practice of discriminatory conduct, and (ii) an owner of a complex still under construction.[10] As to Sierra Sage, the court concluded that the FHA's two-year statute of limitations was triggered by "the completion of the design and construction of the Sierra Sage complex," which occurred when the final certificate of occupancy was issued for that specific complex. *See Silver State* Order at 8. The Court reasoned that even "if Sierra Sage is not currently in compliance with the FHA, that is not a continuing *violation*, but rather the continuing *effect* of the violations which ended with the completion of construction." *Id.* at 7 (emphasis added). Accordingly, while the court allowed the plaintiff's suit to continue against the developer and the owner of the second complex, Sierra Sage was dismissed from the action.

Here, Highpointe is in the same position as Sierra Sage and should be similarly dismissed from this action. There is no intelligible dispute that the completion of the design and construction of Highpointe Village occurred on December 8, 2003, when the last certificate of occupancy was issued for that specific complex. Under *Silver State*, Plaintiffs cannot extend the two year statute of limitations as against Highpointe by pointing to the conduct of the Spanos Defendants or the alleged "fresh discriminatory" conditions at other complexes developed by the Spanos Defendants. Plaintiffs do not and cannot allege any facts showing that Highpointe engaged in any discriminatory "act," let alone a discriminatory act that took place after the completion of construction in 2003 and within the statute of limitations period. As in *Silver State*, even if Highpointe is not currently in compliance with the FHA, such non-compliance is not a continuing *violation*, but rather a continuing *effect* of the violations that ended in 2003. Applying *Silver State* to the facts of this case, as Plaintiffs request, it is clear that the continuing violation doctrine does not apply to Highpointe. Thus, Plaintiffs' claims against Highpointe should be dismissed as time-barred.

---

[10] In granting the defendant owner's motion to dismiss, the court followed *Moseke v. Miller and Smith*, 202 F. Supp. 2d 492 (E.D. Va. 2002), and *U.S. v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129 (D. Idaho 2003).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

### b. The Supreme Court's analysis in *Havens* does not apply to the facts presented by this case

Notwithstanding the applicability of *Silver State*, Plaintiffs request that this Court apply the reasoning from the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), to extend the statute of limitations period under the continuing violation doctrine. *Havens*, however, is readily distinguishable from the case at bar and does not compel this Court to apply the continuing violation doctrine to Highpointe.

In *Havens*, an African-American plaintiff brought suit against a realty company after he was falsely told that there was no availability in a predominantly white complex, but that he could rent an apartment in a more integrated complex. *Havens*, 455 U.S. at 381. The Supreme Court applied the continuing violation doctrine to the plaintiffs' claims because the realty company engaged in discriminatory conduct *both* outside of *and* within the limitations period. *Id.* The Court determined that because the defendant's discriminatory acts as to one of the plaintiffs occurred within the statute of limitations period, a second plaintiff who was discriminated against outside of the period could also bring an action against that defendant. *Id.*

Markedly different from the facts in *Havens*, Highpointe is not alleged to have engaged in any discriminatory act, let alone a discriminatory act within the limitations period. Instead, Plaintiffs allege only that the *Spanos Defendants* continued to engage in discriminatory conduct within the limitations period. Unlike the realty company in *Havens*, the last alleged discriminatory act with regard to Highpointe Village occurred more than two years before the filing of this action with the completion of the design and construction phase. Thus, the Supreme Court's justification for applying the continuing violation doctrine in *Havens* is missing from the Plaintiffs' allegations against Highpointe. As the court in *Silver State* noted, "the mere fact that two properties were involved in *Havens* cannot be so stretched as to stand for the proposition that where the same developer designed and constructed multiple properties those properties should later be treated as a single entity." *See Silver State* Order at 7. *Havens* is plainly distinguishable, and the court's analysis from *Silver State*—not *Havens*—should apply here.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT (Case No. C07-03255-SBA)

### c. Plaintiffs' legal authority cited in the Opposition is distinguishable from the instant case, and the Court should follow the case law cited by Highpointe

Like *Havens*, the other cases cited by Plaintiffs in support of their defense to the statute of limitations are similarly distinguishable from the instant case. For instance, in *Memphis Center for Independent Living v. Makowsky Construction Co.*, No. 01-2069 (July 29, 2003 W.D. Tenn.) ("MCIL") (attached to Consolidated Opp. to Spanos Defendants' Motions [Doc. # 74] as Exh. 3), the Court applied the continuing violation doctrine to a developer of three common developments—not to an owner of a single development built three years before the initiation of a lawsuit, such as Highpointe. In *Inland Mediation Board v. City of Pomona*, 158 F. Supp. 2d 1120 (C.D. Cal. 2001), *United States v. City of Parma*, 661 F.2d 562 (6th Cir. 1981), and *Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990), the courts did not even address FHA design and construction claims and, in any event, applied the continuing violation doctrine only to the acts of the entity engaged in the alleged pattern and practice of discriminatory conduct. In each of these cases, the defendants engaged in a discriminatory act within the limitations period, thus subjecting those defendants to liability for all of their alleged discriminatory conduct. These decisions do not begin to reach Plaintiffs' allegations against Highpointe, as the owner of a single development completed outside of the limitations period.

Contrary to Plaintiffs' distinguishable cases, in addition to *Silver State* the proper cases for the Court to rely upon are *Moseke*, 202 F. Supp. 2d 492, *Taigen & Sons*, 303 F. Supp. 2d 1129, and *U.S. v. Pacific Northwest Electric ("PNE"), Inc.*, No. CV-01-019-S-BLW, 2003 U.S. Dist. LEXIS 7990 (D. Idaho March 19, 2003). In these analogous construction and design cases brought under the FHA, the courts have held that the FHA's statute of limitations begins to run upon the completion of a defendant's last alleged discriminatory act—*i.e.*, upon completion of the design and construction of the multifamily dwelling. Because the defendants' last discriminatory act occurs when design and construction is complete, "the mere fact that the *effects* of the Defendants' allegedly discriminatory acts are continuing does not convert the Defendants' previous acts into a continuing violation." *PNE*, 2003 U.S. Dist. LEXIS 7990, at *19; *see also Moseke*, 202 F. Supp. 2d at 507 (stating that "a FHA non-compliant building . . . is more akin to a

continuing effect rather than a continuing violation."); *Taigen & Sons*, 303 F. Supp. 2d at 1141 (stating that "the alleged 'failure to design and construct' in compliance with the Fair Housing Act has a continuing effect rather than constituting a continuing violation of the act."); *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 250 F. Supp. 2d 706, 719 (W.D. Ky. 2003) (finding that "the mere existence of a non-compliant building . . . is not an act").

Under the line of cases discussed above, Highpointe did not engage in any discriminatory acts within the statute of limitations period. Rather, the last alleged act of discrimination with respect to Highpointe Village occurred on December 8, 2003, when the last certificate of occupancy for the apartment complex was issued. Any alleged discriminatory "acts" as a result of the purported violations of the accessibility requirements of the FHA at Highpointe Village are not continuing *violations*, but rather alleged continuing *effects* of the violations that ended more than two years prior to the filing of this action. Therefore, the continuing violation doctrine does not apply to Highpointe, and Plaintiffs' claims against it should be dismissed.

3. **Although *Garcia v. Brockway* may no longer be cited as precedent, this Court should affirm the policy behind the *Garcia* decision**

Highpointe acknowledges that the Ninth Circuit's decision in *Garcia v. Brockway*, 503 F.3d 1092 (9th Cir. 2007), has been accepted for *en banc* rehearing and, therefore, cannot be cited currently as precedent for the instant case. As discussed in Part II.A.2 above, however, the Court need not rely on *Garcia* to dismiss Highpointe from the action. In addition to the case law in Highpointe's favor, the Court should adopt the policy argument underlying *Garcia* in granting Highpointe's Motion to Dismiss.

If the Court were to adopt the Plaintiffs' "continuing violation" argument, a suit such as Plaintiffs' would never be time-barred. According to the Plaintiffs, so long as a building is out of compliance with the FHA, the statute of limitations can never toll against those individuals and entities affiliated with that building. Even when the action giving rise to the alleged discriminatory conduct—the process of designing and constructing the building—took place many years ago, an owner of a noncompliant building, such as Highpointe, could be subject to liability indefinitely. Courts to consider this question have rejected such an absurd result. *See*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

*Moseke*, 202 F. Supp. 2d at 508 ("If the mere existence of a FHA non-compliant building is a continuing violation under the FHA then there is no limitations period on a disability discrimination claim involving design and construction."); *Silver State*, 362 F. Supp. 2d at 1222 ("The Court agrees with the court in *Moseke*, that an 'open-ended period of liability' would 'read the statute of limitations right out of existence'").

Plaintiffs do not see a problem with such an absurd scenario, contending that "the very idea of a statute of limitations as to Highpointe is inapposite." *See* Opp. at 10:20. But it cannot be that Congress enacted the FHA intending to expose any party with any interest in the design, construction or ownership of a building to the constant, never-ending threat of litigation. If that were so, individuals and entities affiliated with construction would be required to defend the compliance of every single building designed or constructed since the FHA's date of enactment. Such a result is not only inequitable against developers, owners, architects, and others, but it renders the FHA's statute of limitations provision meaningless and superfluous. The Court should reject Plaintiffs' "continuing violation" argument and dismiss Plaintiffs' claims against Highpointe as barred by the two-year statute of limitations.

### 4. Federal Rule of Civil Procedure 19 does not apply in this case and does not supersede the FHA's two-year statute of limitations

In the Opposition, Plaintiffs concede that Highpointe is "not being sued for violation of the FHA's design and construction provisions." *See* Opp. at 10:11. To defeat Highpointe's Motion to Dismiss, Plaintiffs claim that Highpointe must remain in this action solely because Highpointe "*may* be required to effectuate whatever relief the Court *may* direct the Spanos Defendants to undertake." *Id.* (emphasis added).

To the extent that Plaintiffs are arguing that, regardless of whether the statute of limitations has run, Highpointe should be required to remain in this suit because it is an indispensable party under Federal Rule of Civil Procedure 19, Plaintiffs misconstrue the application of the Rule. *Silver State* Order at 12-13. Although Rule 19 requires joinder of persons whose absence would prevent granting complete relief among those already parties to the suit, it oes not purport to cut off defenses, such as the statute of limitations, that otherwise would

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT (Case No. C07-03255-SBA)

be available to any party. As the Court stated in *Silver State*,

> Rule 19(a) involves the joinder of a necessary party to a lawsuit. Its intended use is by a party seeking to join an action where complete relief would not otherwise be possible, or to dismiss an action where a necessary party cannot be joined.

*Id.* Like the plaintiff in *Silver State*, Plaintiff has not cited to any legal authority for the use of Rule 19 as a means of compelling a party to remain in an action solely because such a party *may* be required to effectuate certain relief that *may* be afforded to the Plaintiffs at the end of this case.

Moreover, Plaintiffs have cited to no authority for the proposition that Rule 19 supersedes the FHA's two-year statute of limitations. This is because, of course, the plain language of the FHA means what it says: a plaintiff must file its FHA action for failure to properly design and construct within *two years* of the completion of the construction phase. Because Plaintiffs failed to file this action within two years of December 8, 2003, the date on which the last certificate of occupancy was issued for Highpointe Village, Plaintiffs claims as against Highpointe must be dismissed as a matter of law.

### B. The FAC Fails To Allege Fact Sufficient To Establish Organizational Standing

In addition to Plaintiffs' claims being time-barred as to Highpointe, Plaintiffs do not have standing under Article III of the Federal Constitution. Plaintiffs' sole argument to the contrary in the Opposition is that they established organizational standing by alleging that their missions have been frustrated and they had to divert resources to investigate and test the properties. *See* Opp. at 11-13 (citing, *e.g.*, *Havens*, 455 U.S. 363). These allegations fail, however, to establish an injury-in-fact as required for Article III standing.

In *Havens*, the United States Supreme Court recognized organizational standing for claims brought under the FHA. The Ninth Circuit has interpreted *Havens*,

> to stand for the proposition that an organization may satisfy the Article III requirement of injury in fact if it can demonstrate (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question.

*Smith v. Disabled Rights Action Committee*, 358 F.3d 1097, 1105 (9th Cir. 2004) (citing *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). In regards to the "diversion of

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

resources" requirement, the Ninth Circuit has concluded that the expense of litigation alone is generally insufficient under this test to establish organizational standing. *Id.* (citing *Walker v. City of Lakewood*, 272 F.3d 1114, 1124, n.3 (9th Cir. 2001).

The Northern District Court of California further explained the necessary allegations to establish organizational standing in *Project Sentinel v. Evergreen Ridge Apartments*, 40 F. Supp. 2d 1136 (N.D. Cal. 1999). There, the plaintiff non-profit corporation sued defendant apartment complex owners for maintaining a discriminatory policy toward families with children and failing to provide handicap access to rental offices. The plaintiff alleged that defendants' discriminatory treatment of families, *inter alia*, "frustrated [its] mission requiring it to expend scarce resources to investigate and document said practices, and will require further expenditures of staff time to monitor and perform compliance and investigations." *Id.* at 1138. The district court held that these allegations failed to establish an injury-in-fact required for Article III standing. *Id.*

The Honorable Judge Vaughn R. Walker explained in his decision that, "to establish standing to sue, a plaintiff must allege that he has, as a result of defendants' actions, suffered a *distinct* and *palpable* injury." *Id.* (citing *Havens*, 455 U.S. at 372) (emphasis in original). If "an organization points to <u>a concrete and demonstrable injury to its *activities*</u>, not simply a setback to the organization's abstract social interests, the organization may successfully allege an injury in fact." *Id.* (citing *Havens*, 455 U.S. at 379) (emphasis added). "In other words, an organization establishes an Article III injury if it alleges that <u>unlawful action has increased the resources the group must devote to programs independent of its suit challenging the unlawful action</u>." *Id.* (emphasis added).

Judge Walker further explained that "*Havens* did not base its holding in favor of standing merely on the diversion of resources to litigation, but rather on <u>the alleged injury that the defendants' actions themselves inflicted upon the plaintiff's referral and counseling programs</u>." *Id.* at 1140 (citing *Havens*, 455 U.S. at 379). The district court then distinguished the case before it to hold that the plaintiff failed to establish organizational standing:

> The plaintiff in the present case, by contrast, does not allege that defendants' conduct directly obstructed the educational, counseling or mediation services; rather, the sole injuries alleged are to

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

> plaintiff's abstract goals and the cost of initiating this suit. This suit is not alleged to have been made necessary by any detrimental impact of defendants' actions on plaintiff's operations. In other words, plaintiff does not allege injury to itself independent to its decision to divert resources away from the pursuit of its abstract goals to support this suit.

*Id.*; *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (finding that plaintiff properly alleged organizational standing by alleging that its resources were diverted to investigating and *"other efforts"* to counteract the defendant's discrimination "above and beyond litigation"); *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097 (9th Cir. 2004) (plaintiff alleged that in order to monitor the violations and educate the public regarding the discrimination at issue, it had to "divert its scarce resources from other efforts to promote awareness of – and compliance with – federal and state accessibility laws and to benefit the disabled community in other ways (for example, [its] efforts to free disabled persons from nursing homes)").[11]

The FAC in the instant case suffers from the same defect as the complaint in *Project Sentinel*. Plaintiffs do not allege that any of defendants' conduct, let alone conduct of Highpointe, directly obstructed any of their services; rather, the sole injuries are to Plaintiffs' abstract goals and the cost associated with this lawsuit. Specifically, Plaintiffs allege as follows:

> 11. The A.G. Spanos Defendants' flagrant and systematic violations of the FHA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities, rendered thousands of units unavailable to persons with disabilities, <u>frustrated the mission of each of the Plaintiffs</u>, and caused each Plaintiff to divert its scarce resources in an attempt to redress these violations. ...
>
> ***
>
> 40. In the course of their advocacy on behalf of people protected by the FHA, <u>NFHA and the other Plaintiffs **became aware**</u> that a large number of new multifamily housing complexes designed and constructed by the A.G. Spanos Defendants did not include the required elements of accessible and adaptable design. By itself, and in concert with the other Plaintiffs, NFHA visited a

---

[11] To the extent that Plaintiffs' authorities outside the jurisdiction of the Ninth Circuit contradict this requirement, they should be disregarded in their entirety. *See* Opp. at 12 (citing *Alexander v. Riga*, 208 F.3d 419, 427 n.4 (3d Cir. 2000); *United States v. Balistrieri*, 981 F.2d 916 (7th Cir. 1992); *Equal Rights Center v. Equity Residential*, 483 F.Supp. 2d 482 (D.Md. 2007)).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

number of the A.G. Spanos Defendants' properties and discovered FHA violations in the design and construction of those properties.

41. As a result of the discovery of these violations, <u>NFHA and the other Plaintiffs **began investigations of the A.G. Spanos Defendants' properties, requiring Plaintiffs to divert resources, including funding and staff members' time, from other activities in order to conduct further investigation and testing of the A.G. Spanos Defendants' properties** so as to ascertain the extent of the FHA violations.</u>

42. In 2006 and 2007, NFHA and the other Plaintiffs <u>conducted site visits, investigations, surveys and tests</u> at 34 of the Subject Properties in California, Nevada, Arizona, Texas, Kansas, Florida and Georgia. ...

See FAC ¶¶ 11, 40-42.

Noticeably absent from the FAC is any alleged injury to Plaintiffs "independent to [their] decision to divert resources away from the pursuit of its abstract goals to support this suit." *Project Sentinel*, 40 F. Supp. 2d at 1140. These allegations are therefore wholly insufficient to establish organizational standing. *See id.*[12]

### C. Plaintiffs Do Not Refute That They Failed To Allege Facts Sufficient To Support Their Claim For Injunctive Relief

Finally, Plaintiffs do not even appear to address Highpointe's argument in the Motion that Plaintiffs have failed to allege facts sufficient to show standing to seek injunctive relief under the FHA, and therefore the FAC should be dismissed as to Highpointe on that basis alone. Plaintiffs do, however, admit that the FAC asserts no violations of the FHA against Highpointe. *See* Opp. at 3:5. Nonetheless, Plaintiffs curiously attempt obtain an injunctive against Highpointe without even alleging the threshold requirements for obtaining the drastic remedy of an injunction, *i.e.*, irreparable harm and inadequacy of legal remedies in order to obtain the drastic remedy of an injunction. *See, generally,* FAC; *see also, e.g., Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57-65 (1975); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-507 (1959). The absence of such allegations, in the face of Plaintiffs' admission that they allege no other claim against Highpointe other than injunctive relief, is fatal to their entire action against Highpointe because

---

[12] In light of the clear applicability of *Project Sentinel*, Plaintiffs attempt to factually distinguish *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 112-15 (1979) and *TOPIC v. Circle Realty*, 532 F.2d 1273, 1275 (9th Cir. 1976) is of no avail.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT HIGHPOINTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Case No. C07-03255-SBA)

Plaintiffs essentially admit that they failed to state any claim upon which relief may be granted.

### III. CONCLUSION

For each for the foregoing reasons, Highpointe Village, L.P. respectfully requests that the Court grant its Motion and dismiss all of Plaintiffs' claims alleged against it in the First Amended Complaint for failure to state a claim upon which relief may be granted.

Dated: February 26, 2008                    Manatt, Phelps & Phillips, LLP


By:       /s/
    Shirley E. Jackson
    Attorneys for Defendant
    HIGHPOINTE VILLAGE, L.P.

90005075.3