MAXWELL M. FREEMAN, #31278
LEE ROY PIERCE, JR., #119318
MICHAEL L. GUREV, #163268
THOMAS H. KEELING, #114979
FREEMAN, D'AIUTO, PIERCE,
  GUREV, KEELING & WOLF
A PROFESSIONAL LAW CORPORATION
1818 Grand Canal Boulevard, Suite 4
Stockton, California  95207
Telephone: (209) 474-1818
Facsimile:  (209) 474-1245
E-mail:      lrpierce@freemanfirm.com
             mgurev@freemanfirm.com
             tkeeling@freemanfirm.com

Attorneys for Defendants A.G. Spanos
Construction, Inc.; A.G. Spanos
Development, Inc.; A.G. Spanos
Land Company, Inc.; A.G. Spanos
Management, Inc., and The Spanos Corporation

IN THE UNITED STATED DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| National Fair Housing Alliance, Inc., et al., | ) | CASE NO.  C07-03255-SBA |
|---|---|---|
| Plaintiffs, | ) ) ) | **[AMENDED] [PROPOSED] ORDER GRANTING DEFENDANTS A.G. SPANOS CONSTRUCTION, INC., A.G. SPANOS DEVELOPMENT,** |
| vs. | ) ) | **INC., A.G. SPANOS LAND** |
| A.G. Spanos Construction, Inc., et al. | ) ) | **COMPANY, INC., A.G. SPANOS MANAGEMENT, INC., AND THE** |
| Defendants. | ) ) ) | **SPANOS CORPORATION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE** |

Hearing Date:   March 11, 2008
Time:                1:00 p.m.
Dept:                Courtroom 3

Complaint Filed: June 20, 2007

The motion of Defendants A.G. Spanos Construction, Inc., A.G. Spanos

Development, Inc., A.G. Spanos Land Company, Inc., A.G. Spanos Management, Inc., and

The Spanos Corporation, appearing through counsel, for an order dismissing Plaintiffs' First

Amended Complaint, came on regularly for hearing on March 11, 2008, at 1:00 p.m. in

1    Courtroom 3 in the above-entitled court, located at  1301 Clay Street, 3rd Floor, Oakland,

2    California, the Honorable Saundra Brown Armstrong presiding.  Thomas H. Keeling and Lee

3    Roy Pierce, Jr. appeared on behalf of the Spanos Defendants, and Michael Allen appeared on

4    behalf of Plaintiffs.

## BACKGROUND

### ALLEGATIONS OF THE COMPLAINT
### AND MATTERS SUBJECT TO JUDICIAL NOTICE

**A.     Parties**.

9    Plaintiffs are: (1) the National Fair Housing Alliance, a non-profit entity with its

10   principal place of business in Washington, D.C.; (2) Fair Housing of Marin, "a non-profit

11   community organization located in San Rafael, California;" (3) Fair Housing of Napa Valley,

12   "a non-profit community organization located in Napa, California;" (4) Metro Fair Housing

13   Services, "a non-profit community organization located in Atlanta, Georgia;" and (5) The Fair

14   Housing Continuum, a "non-profit organization committed to equal housing opportunity and

15   the elimination of discrimination in Florida." First Amended Complaint ("FAC") ¶¶ 1, 15-19.

16   Plaintiffs' alleged "missions" include advocating for the rights of people with

17   disabilities to accessible housing, promoting equal housing opportunities, and eliminating

18   housing and lending inequities. FAC, ¶¶ 15-18.

19   Defendants A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G.

20   Spanos Land Company, Inc., A.G. Spanos Management, Inc., and The Spanos Corporation

21   are California corporations with principal offices in Stockton.  FAC, ¶¶ 20-25.

22   Plaintiffs allege that the Spanos Defendants "no longer own most of the "known" and

23   "unknown" apartment complexes for which relief is requested."  FAC ¶ 30.  They also allege

24   the existence of a defendant class consisting of "current owners of non-compliant [apartment]

25   units."  FAC, ¶ 30.  Plaintiffs allege that all current owners are "necessary parties in order to

26   effectuate any judgment or order for injunctive relief requested by Plaintiffs."  FAC, ¶ 30.

27   Plaintiffs sue Knickerbocker Properties, Inc. XXXVIII and Highpointe Village, L.P.

28   "individually and as representatives of [the putative "known" and "unknown" current owner]

1   class." FAC, ¶ 32. Knickerbocker Properties, Inc. XXXVIII is alleged to own two apartment

2   complexes: "Mountain Shadows" and "The Commons." FAC, ¶ 33. Highpointe Village,

3   L.P. is alleged to be the owner of Highpointe Village, in Kansas. FAC, ¶ 34.

4        **B.**    **Allegations of Non-Compliance with the FHAA.**

5        Plaintiffs are five organizations located in three states. They allege that 82[1] apartment

6   complexes located in 10 states, allegedly designed and constructed by the Spanos Defendants

7   between 1991 and 2007, do not comply with requirements of the Fair Housing Amendments

8   Act ("FHAA"), 42 U.S.C. §§ 3601, et. seq. They make the same claim with respect to an

9   unknown number of unidentified properties located, presumably, throughout the United States

10   in unspecified locations. The Subject Properties allegedly contain over 22,000 apartment

11   units. Plaintiffs seek an injunction commanding defendants to rebuild the Subject Properties to

12   conform to the FHAA.

13        More specifically, Plaintiffs allege that the Spanos Defendants "have been involved in

14   the design and construction of approximately [82] multifamily complexes in California,

15   Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and

16   Florida." FAC, ¶ 27. Plaintiffs claim to have identified 34 apartment complexes in

17   California, Arizona, Nevada, Texas, Kansas, Georgia, and Florida (the "Tested Properties"),

18   totaling more than 10,000 individual apartment dwelling units, that do not meet the

19   accessibility requirements of the FHAA. FAC, ¶¶ 3, 30. No plaintiff alleges it is located in,

20   does business in, or counsels persons in Nevada, Arizona, Colorado, New Mexico, Texas,

21   Kansas, or North Carolina.

22        With respect to the Tested Properties, Plaintiffs allege that since 1991 the Spanos

23   Defendants have "engaged in a continuous pattern and practice of discrimination against people

24   with disabilities" by "designing and/or constructing" apartment complexes that deny full

25   access to and use of the facilities as required under the FHAA. FAC, ¶ 4.

26        Plaintiffs also allege on information and belief that 49 additional apartment complexes

27

28      [1] The FAC alleges there are 85 complexes sued on. However, Plaintiffs' opposition restates the number of complexes sued on as 82. Opposition, p. 1, n. 1.

1    in 10 states which the Spanos Defendants designed or constructed (the "Untested Properties")

2    also violate FHAA accessibility requirements.  FAC, ¶ 6 and Appendix A to Complaint.  The

3    Spanos Defendants are also alleged to have designed or constructed an unspecified number of

4    additional <u>unidentified</u> apartment complexes located in states not yet known to Plaintiffs.

5    FAC, ¶ 28.  The Subject Properties allegedly include over 22,000 individual apartments.

6    FAC, ¶ 80.

7         Plaintiffs claim to have "identified at least one FHAA violation and, in most cases,

8    multiple violations, at each of the Tested Properties."  Based on the alleged frequency and

9    similarity of these violations, Plaintiffs allege "a pervasive pattern and practice of designing

10   and constructing apartment communities in violation of the FHAA accessibility design

11   requirements."  FAC, ¶ 45.  Alleged FHAA violations at the Tested Properties also include

12   failure to design and construct the public and common areas so that they are readily accessible

13   to and usable by people with disabilities. FAC, ¶¶ 45-47.  As for the Untested Properties,

14   Plaintiffs allege only that they were designed and/or constructed after March, 1991.  FAC, ¶

15   6.

16        As alleged in the Complaint, no plaintiff is located in the same city or county where the

17   tested apartments sued on are located.[2]

18   **C.    Alleged "Injury" to Plaintiffs.**

19        Plaintiffs allege injury as follows:

20            72.    As a result of the A.G. Spanos Defendants' actions
             described above, Plaintiffs have been directly and substantially
21           injured in that they have been **frustrated in their missions to**
             **eradicate discrimination in housing**, and in carrying out the
22           programs and services they provide, including encouraging
             integrated living patterns, educating the public about fair housing
23           rights and requirements, educating and working with industry
             groups on fair housing compliance, providing counseling services
24           to individuals and families looking for housing or affected by
             discriminatory housing practices and eliminating discriminatory
25

26   _____

     [2]  Rohnert Park is in Sonoma County, but it is 35 miles from Napa, where Fair Housing
27   of Napa Valley is located.  See RJN, Ex. 172.  Wesley Chapel in Pasco County, Florida, is
     132 miles from Cocoa, Florida, in Brevard County.  RJN, Ex. 173.  The Spanos defendants
28   filed a lengthy Request For Judicial Notice in support of their Motion to Dismiss Plaintiffs'
     First Amended Complaint and Accompanying Motions.  Plaintiffs do not oppose this request.

housing practices.

73.     As outlined above, each Plaintiff has invested considerable time and effort in **educating its respective communities**[3] about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and construction of covered multifamily dwellings.  Each time the A.G. Spanos Defendants designed and constructed covered dwellings that did not comply with the FHA **in one of Plaintiffs' service areas, the A.G. Spanos Defendants frustrated the mission of that Plaintiff,**[4] inasmuch as it served to discourage people with disabilities from living at that dwelling,[5] **and encouraged other entities** involved in the design and construction of covered units to disregard their own responsibilities under the FHA.

74.     The A.G. Spanos Defendants' continuing discriminatory practices **have forced Plaintiffs to divert significant and scarce resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices,** and such practices have frustrated Plaintiffs' other efforts against discrimination, causing each to suffer concrete and demonstrable injuries.

75.     Each Plaintiff conducted site visits, investigations, **surveys and/or tests at the Tested Properties, resulting in the diversion of its resources in terms of staff time and salaries and travel and incidental expenses that it would not have had to expend were it not for the A.G. Spanos Defendants' violations.**  FHOM, FHNV, MFHS and FHC each diverted staff time and resources to meet with NFHA staff, receive detailed training concerning the accessibility requirements of the FHA and provide logistical support for NFHA staff.  In addition to such support:

a.  Plaintiff FHOM conducted **site visits and investigations** at Mountain Shadows and Windsor at Redwood Creek, two properties within its service area.
b.  Plaintiff FHNV conducted **a site visit and investigation** at Hawthorn Village, **a property within its service area**.
c.  Plaintiff MFHS conducted a site visit and investigation at Battery at Chamblee, a property within its service area.

---

[3]  Plaintiffs allege that they are located in Washington, D.C., California,  Georgia and Florida.  In referring to their "respective communities," plaintiffs cannot be referring to citizens of Nevada, Arizona, Colorado, New Mexico, and Kansas, where many of the apartments sued upon are located.

[4]  None of the apartments sued upon is located in any of plaintiffs' "respective communities" or in any of Plaintiffs' "service areas."  RJN, Exs. 171, 172 and 173.

[5]  Plaintiffs' Complaint fails to identify any disabled person who was so discouraged.

       d.  Plaintiff FHC conducted tests at Delano and Arlington at Northwood, two properties **within its service area**.

FAC, ¶¶ 72-75.

**D.**    **Relief Sought by Plaintiffs.**

Plaintiffs request declaratory and injunctive relief.  Among other things, the requested injunctive relief would require the Spanos Defendants to survey all the apartment complexes they constructed throughout the United States since March 13, 1991 and to bring each and every allegedly non-FHAA compliant complex into compliance.  FAC, pp. 39-40.  Plaintiffs request attorneys' fees and costs, compensatory damages, and punitive damages.  FAC, pp. 40-41.

Plaintiffs also seek an order "[e]njoining the Owner Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the A.G. Spanos Defendants."  FAC, p. 40.

**E.**    **Further Description of the Complaint.**

The Complaint does not allege that any of the Plaintiffs, any of their members, or any disabled persons ever attempted to rent an apartment at any of the Subject Properties or that any of the Plaintiffs or their members or any disabled person ever intends to do so.

Plaintiffs do not allege that any member of a protected class under the FHAA has encountered discriminatory conduct at any of the Subject Properties.  Nor do Plaintiffs claim they are suing on behalf of any member of a protected class.

Plaintiffs do not allege that they have counseled, spoken to, or otherwise expended any resources in communicating with any member of a protected class who claims to have encountered non-FHAA compliant features in any of the Subject Properties.

Plaintiffs do not allege that any of their "testers" was handicapped.  None of the alleged "testers" is named as a plaintiff or identified in the Complaint.

Plaintiffs do not allege facts purporting to show how community organizations with

1  local "service areas" in California, Florida, Georgia, or Washington D.C. were injured by

2  allegedly non-compliant apartment complexes located in New Mexico, Nevada, Arizona,

3  Colorado, Texas, Kansas, and North Carolina.

4      Plaintiffs do not allege that the putative class defendants have violated the FHAA.

5  Plaintiffs do not allege that the putative class defendants caused any injury to Plaintiffs.

6  Plaintiffs do not join as parties any of the tenants who hold leases on the alleged 22,000 units

7  Plaintiffs seek to have rebuilt. Plaintiffs do not join as parties any of the lenders who hold

8  security interests in any of the apartment complexes sued on.

9      **F.    Matter Subject to Judicial Notice.**

10     As a matter of public record subject to judicial notice, not one of the 82 Subject

11 Properties is owned by defendants A.G. Spanos Development, Inc., A.G. Land Company, Inc.

12 or A.G. Spanos Management, Inc. RJN, Exs. 1-85. Only one of the Untested

13 Properties—located in Kansas—is owned by defendant A.G. Spanos Construction, Inc. RJN,

14 Ex. 48. Only one of the Untested Properties and two of the Tested Properties are owned by

15 defendant The Spanos Corporation. RJN Exs. 14, 20 and 44. The remaining 51 Untested

16 Properties, and 30 of the Tested Properties, are owned by entities other than the Spanos

17 Defendants. RJN, Exs. 1-85.

18     All but seventeen of the 82 identified properties sued on were built (and certificates of

19 occupancy issued) more than two years before the Complaint was filed. See RJN, Exs. 127,

20 128, 166, 133, 91, 94, 100, 103, 99, 105, 125, 126, 129, 134a, 161, 166 and 153. The

21 seventeen exceptions are:  (1) The Alexander at the Perimeter, located in Atlanta, Georgia; (2)

22 The Alexander at the District, located in Atlanta, Georgia; (3) Monterra, located in Las

23 Colinas, Texas; (4) Corbin Crossing, located in Overland, Kansas; (5) Tamarron, located in

24 Phoenix, Arizona; (6) Park Crossing, located in Fairfield, California; (7) Stone Canyon,

25 located in Riverside, California; (8) Windsor at Redwood Creek, located in Rohnert Park,

26 California; (9) Ashgrove Place, located in Rancho Cordova, California; (10) Sycamore

27 Terrace, located in Sacramento, California; (11) Arlington at Northwood, located in Wesley

28 Chapel, Florida; (12) Delano at Cypress Creek, located in Wesley Chapel, Florida; (13) The

1  Battery at Chamblee, located in Chamblee, Georgia; (14) The Highlands, located in Chamblee,

2  Georgia; (15) Belterra, located in Fort Worth, Texas; (16) Cheval, located in Houston, Texas;

3  and (17) Auberry at Twin Creeks, located in Allen Texas. See RJN, Exs. 127, 128, 166, 133,

4  91, 94, 100, 103, 99, 105, 125, 126, 129, 134a, 161, 166 and 153.

5        The last certificate of occupancy for Mountain Shadows was issued on September 5,

6  2002, and for "The Commons" on July 18, 2002, more than two years before Plaintiffs filed

7  this complaint. See RJN, ¶¶ 102, 110. The last certificate of occupancy was issued on

8  Highpointe Village on December 8, 2003, more than two years before Plaintiffs filed this

9  complaint. See RJN, ¶ 134.

10                **STANDARDS GOVERNING MOTIONS UNDER RULE 12(b)(6)**

11       In ruling on a motion to dismiss, the court must accept as true the well-pled allegations

12 of the complaint, as well as all reasonable inferences derived from the facts alleged. *Hishon v.*

13 *King & Spalding*, 467 U.S. 69, 73 (1984). The court is not required to accept as true

14 conclusionary allegations, unwarranted deductions of fact, or legal conclusions cast in the form

15 of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

16 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor are courts required

17 to "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable

18 conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v.*

19 *Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

20       In determining whether a complaint fails to state a claim, the court may consider facts

21 alleged in the complaint, documents attached or incorporated into the complaint, and matters of

22 which the court may take judicial notice – without converting the motion to dismiss into a

23 motion for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

24                                    **ANALYSIS**

25       The complaint fails to allege an "actual case or controversy." Specifically, the First

26 Amended Complaint ("FAC") does not allege that anyone's FHAA rights have ever been

27 violated. The FAC does not allege that Plaintiffs' FHAA rights have been violated, because it

28 does not allege that Plaintiffs' access to the subject properties has ever been denied or

1  impaired.  The FAC does not allege that any disabled person has ever had his or her FHAA

2  rights violated, because it does not allege that any disabled person has ever visited or wished to

3  visit any of the complexes sued on; therefore, the FAC fails to allege that any disabled person

4  has ever actually had his or her access to any of the subject properties denied or impaired.

5  　　　　As to Plaintiffs' own alleged harm, the FAC alleges that Plaintiffs' harm was not

6  caused by reports to Plaintiffs that someone's FHAA rights had been violated; rather,

7  Plaintiffs' alleged harm is admitted to be voluntarily incurred.  That is, the FAC alleges that

8  Plaintiffs voluntarily directed staff to first identify who defendants are; then to locate and test

9  defendants' buildings; then to sue defendants, seeking a nationwide injunction - - all to redress

10  perceived inconsistencies with the regulations promulgated under 42 U.S.C. section

11  3604(f)(3)(c) - - and not to redress the violation of anyone's FHAA rights.

12  　　　　The FAC also fails to allege "redressability" because these Plaintiffs cannot obtain the

13  nationwide injunction they seek.  The FAC does not allege a likelihood of substantial and

14  immediate irreparable injury to any disabled person or to Plaintiffs, despite the fact that many

15  of the complexes sued on are over 15 years old.  And, the FAC fails to allege that anyone - -

16  including Plaintiffs or any disabled person - - has ever been harmed because their access to any

17  of the known or unknown complexes sued on has been denied or impaired.  The FAC does not

18  allege that the Plaintiffs or any disabled person lives near any of the known or unknown

19  complexes sued on; nor does the FAC allege that Plaintiffs or any disabled person ever wished

20  to rent an apartment at any of the complexes sued on; nor does it allege that Plaintiffs or any

21  disabled person would in the future wish even to visit any of the complexes sued on; nor does

22  the FAC allege that Plaintiffs or any disabled person ever intends to travel near any of the

23  complexes sued on.

24  　　　　The nationwide injunction sought in the FAC also may not issue because Plaintiffs fail

25  to sue indispensable parties.  The FAC seeks a nationwide injunction requiring the Spanos

26  defendants to redesign and reconstruct the common areas and 22,000 apartments at 82 known

27  complexes - - and an unknown number of common areas and apartments at an unknown

28  number of unknown complexes.  But, the Spanos defendants do not own the complexes and

1   apartments sued on. The owners, renters and secured lenders who do have property rights in

2   these complexes (and the renters who also have privacy rights in the apartments at these

3   complexes) are not sued. The FHAA and the due process clause to the Fourteenth Amendment

4   to the United States Constitution require that these owners, renters, and secured lenders

5   receive notice and an opportunity to be heard before any injunction issues which "affects"

6   these rights.

7          Plaintiffs do not dispute that this court lacks personal jurisdiction over many if not most

8   of these owners, renters, and secured lenders. "Equity" and "good conscience" dictate,

9   therefore, that this case be dismissed. The due process rights of these absent parties

10  overshadow any alleged concern for Plaintiffs' voluntarily incurred harm. Moreover, dismissal

11  will not harm any disabled person. If any disabled person's access to any of the complexes

12  sued on is actually denied or impaired, he or she can sue in the local district court, and the

13  FHAA allows the local district court to appoint an attorney to represent that person and waive

14  all costs, fees, and security. 42 U.S.C. § 3613(b)(1) and (2). In addition, such a plaintiff

15  could request assistance from one of the national or local fair housing organizations who are

16  Plaintiffs herein. And, since such a suit would be brought in the local district court, the local

17  district court would have jurisdiction over all indispensable parties - - i.e., the owners, renters,

18  and secured lenders. In fact, renters would no longer be necessary, since under the applicable

19  standing doctrine, relief would be limited to the redesign and reconstruction of the apartment in

20  which the plaintiff disabled renter wished to live and its attendant common areas.

21         On its face, the FAC also fails to include allegations essential to state a cause of action

22  in Plaintiffs or anyone else. No cause of action is stated because the FAC fails to allege: (1)

23  that the FHAA rights of Plaintiffs (or anyone else) have been violated; or (2) causation; or (3)

24  that the Spanos defendants "own" the property sued on. Only owners are liable for alleged

25  violations of the FHAA, because only owners are in a position to deny a rental to a particular

26  disabled person who seeks to rent.

27         Finally, the FAC fails as a matter of law with respect to those complexes built more

28  than two years before suit was filed, as suit on these complexes is barred by the FHAA's

1  statute of limitations.

2  **I.    TO ESTABLISH STANDING, PLAINTIFFS MUST ALLEGE THAT**
3  **DEFENDANTS' VIOLATION OF SOMEONE'S   FHAA RIGHTS CAUSED**
   **INJURY TO PLAINTIFFS AND THAT PLAINTIFFS' INJURY WILL LIKELY**
4  **BE REDRESSED BY THE REQUESTED RELIEF.  THIS PLAINTIFFS HAVE**
   **FAILED TO DO.**

5      To show standing under Article III:  "[a] plaintiff must allege personal <u>injury</u> fairly

6  <u>traceable</u> to the defendant's <u>allegedly unlawful conduct</u> and <u>likely to be redressed</u> by the

7  requested relief."  *Allen v. Wright,* 468 U.S. 737, 751 (1984), emphasis added.

8      These standing provisions are codified in the FHAA: "[A]ny person who . . . claims to

9  have been <u>injured</u> by a <u>discriminatory housing practice</u> . . . may commence a civil action . . .

10 <u>to obtain appropriate relief</u> with respect to such discriminatory housing practice . . . ."  42

11 U.S.C. § 3613(a)(1)(A), emphasis added.

12     **A.    <u>Plaintiffs Have No Standing Because They Have Not Alleged That Anyone's</u>**
           **<u>FHAA Rights Have Been Violated.</u>**
13
14     The FHAA defines a "discriminatory housing practice" to be an "act that is unlawful

   under section 3604 . . . ."  42 U.S.C. § 3602(f).  Stated differently, the standing requirement
15
   of "unlawful conduct" is defined in the FHAA to be a "discriminatory housing practice."
16
       Applying the FHAA's definition of "unlawful conduct" to Article III standing reveals
17
   that any person, including a fair housing organization, has standing to sue under the FHAA,
18
   where it can allege and prove that it "sustain[ed] an actual injury from an alleged
19
   discriminatory housing practice . . . ."  *San Pedro Hotel Co., Inc. v. City of Los Angeles,* 159
20
   F.3d 470, 475 (9th Cir.  1998).  As stated by other courts: "As long as the plaintiff suffers
21
   actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of
22
   another were infringed.  The central issue at this stage of the proceedings [at the pleading
23
   stage] is not who possesses the legal rights protected by [the FHA], but whether respondents
24
   were genuinely injured by **conduct that violates *someone's* [FHA] rights** . . . ."  *Oak Ridge*
25
   *Care Center, Inc. v. Racine County,* 896 F.Supp. 867, 873 (E. Dist. Wisconsin 1995) [quoting
26
   *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 103 n. 9 (1979), emphasis added].
27
   Or, as stated elsewhere: "The inquiry focuses, not upon whose § 3604 rights were violated,
28

---
AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]

1  but rather upon whether the Plaintiffs were genuinely injured by conduct that violated

2  **somebody's 3604 rights**; if they were so injured, the Plaintiffs have standing to bring suit

3  under § 3612. [citations]" *Nur v. Blake Development, Corp.*, 655 F.Supp. 158, 163 (N.D.Ind.

4  1987), emphasis added.

5      The FAC alleges that the Spanos defendants violated section 3604 by failure to design

6  and construct accessible apartments in accord with the provisions contained in section

7  3604(f)(3)(C) and its applicable regulations.  FAC, ¶ 39.  But  failure to design and construct

8  apartments in accord with the provisions of 3604(f)(3)(C) is not, without more, a

9  "discriminatory housing practice."  Section 3602(f) defines a "discriminatory housing

10  practice," in relevant part, as "an act that is *unlawful* under section 3604 . . ." (emphasis

11  added).  Section 3604, in turn, states that "it shall be unlawful," among other things, "[t]o

12  discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any

13  buyer or renter because of a handicap of . . . that buyer or renter," § 3604(f)(1), and "[t]o

14  discriminate against any person in the terms, conditions, or privileges of sale or rental of a

15  dwelling, or in the provision of services or facilities in connection with such dwelling, because

16  of a handicap of . . . that buyer or renter," section 3604(f)(2).  Section 3604 *separately* states

17  that "[f]or purposes of this subsection, discrimination includes - - . . . a failure to design and

18  construct [covered family] dwellings" in accordance with various requirements concerning

19  accessibility to and use by disabled persons.  Section 3604(f)(3)(C).  Section 3604(f)(3)(C)

20  defines what "discrimination" is, but it does not define what a "discriminatory housing

21  practice" is.

22      **As defined in sections 3602(f) and 3604(f)(1) and (f)(2), a "discriminatory housing**

23  **practice" - - i.e., an "unlawful act" - - is committed when a would-be buyer or renter**

24  **attempts to buy or rent a FHAA-noncompliant unit.  At that point — but not before — it**

25  **can be said that a landlord has "discriminate[d] in the sale or rental, or [has] otherwise**

26  **ma[d]e unavailable or den[ied] a dwelling to [the individual] because of a handicap . . . of**

27  **that buyer or renter."**   42 U.S.C. §§ 3604(f)(1) and (f)(2).  Until then, the disabled person

28  has not been subjected to a "discriminatory housing practice."

1    The activities specified by sections 3604(f)(1) and (f)(2) — all of which involve taking

2    action against a disabled person "because of" that person's particular "handicap" — are

3    "unlawful" "discriminatory housing practices." In contrast, section 3604(f)(3)(C) is a specific

4    example of the discrimination that in fact becomes actionable under sections 3604(f)(1) and

5    (f)(2) — when that discrimination takes place "in the sale or rental . . . to any buyer or

6    renter," section 3604(f)(1), or "against any person in the terms, conditions, or privileges of

7    sale or rental . . . or in the provision of services or facilities," section 3604(f)(2). Section

8    3604(f)(3)(C) is a definitional provision, stating that "discrimination includes . . . the [faulty]

9    design and construction of covered multifamily dwellings," and is not a provision that actually

10   sets forth a cause of action.

11    To have standing, Plaintiffs must allege actual injury caused by a violation of

12   someone's FHAA rights. Here, the "unlawful act" is the commission of a "discriminatory

13   housing practice." A violation of section 3604 therefore requires that a landlord carry out the

14   actions prohibited by sections 3604(f)(1) and 3604(f)(2). The mere failure to design and

15   construct in accord with the provisions of section 3604(f)(3)(C) does not constitute such a

16   practice.

17    Plaintiffs have no standing, because they do not allege that anyone's FHAA rights have

18   been violated. The FAC alleges that Plaintiffs' staff - - nondisabled testers - - had unfettered

19   access to the complexes tested. FAC, ¶ 3. And the FAC fails to allege that any disabled

20   person has ever visited or attempted to visit any of the "tested," "untested" or "unknown"

21   complexes sued on. Since no disabled person is alleged to have ever visited or attempted to

22   visit any of the complexes sued on, it follows that no disabled person has ever had his or her

23   section 3604 rights violated. Before a plaintiff can sue to redress a "discriminatory housing

24   practice" a "discriminatory housing practice" must have been committed.

25    Plaintiffs' opposition argues that "[t]he Spanos Defendants may not have said no

26   directly to any individual tenant, but they have rendered thousands of units unavailable to

27   people with disabilities." Opposition, p. 46:21-22, emphasis added. But, a violation of (f)(1)

28   or (f)(2) requires, at a minimum, an allegation that, but for the inaccessible features, "the

1    excluded person [a particular disabled person with a particular disability] would otherwise go

2    into the building [and attempt to rent an apartment]." *Independent Housing Services of San*

3    *Francisco v. Fillmore Center Associates*, 840 F.Supp. 1328, 1335 (N.D. Cal. 1993); and see

4    sections 3604 (f)(1) and (f)(2). Under (f)(1) or (f)(2), this is a particularized inquiry based

5    upon a particular disability. The FAC does not allege that the subject apartment complexes are

6    inaccessible to the "blind" or the "deaf" or the "mentally infirm" or to any disabled persons

7    except, perhaps, some, but not all, persons in wheelchairs. Thus, the "alleged inaccessibility"

8    of the subject complexes does not ". . . affect all disabled individuals." *Fillmore Center,*

9    *supra*, 840 F.Supp at 1335. And, a violation of (f)(1) or (f)(2) requires that the defendants say

10   "no" to a particular disabled person, with a particular disability, who wishes to rent a

11   particular apartment. See 3604(f)(1) and (f)(2), and see *Fillmore Center, supra,* 840 F.Supp.

12   at 1335 [To state an "unlawful act" [i]t is . . . sufficient to allege that . . . [but for the

13   inaccessible features] the excluded person would otherwise go into the building"]; see also

14   *Walker v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, 594 (10th Cir. 1996)

15   [discrimination cannot be the cause of injury to a plaintiff who would not have sought to obtain

16   the benefit even in the absence of the discrimination]; *Allen v. Wright, supra*, 468 U.S. at 755

17   [Only those persons personally denied rights by the challenged unlawful discrimination have

18   standing to sue].

19        *Havens* , *Smith* and *Fair Housing of Marin* are not to the contrary. In each of these

20   cases, it was alleged that someone's section 3604 rights had been violated.

21        In *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), the Supreme Court first

22   stated the standing rule applicable to fair housing organizations: "[As] long as the plaintiff [fair

23   housing organization] suffers actual injury as a result of the defendant's conduct, he is

24   permitted to prove that the rights of another were infringed." *Id.*, 455 U.S. at 376, n.16.

25   Applying this rule, the court determined that the FHA rights of black testers (employed by the

26   housing organization) had been violated, when the defendant *Havens Realty* lied to black

27   testers and told them apartments were unavailable. These black testers' FHA "statutory right

28   to truthful housing information ha[d] been violated" by Haven Realty's lies. *Id.*, 455 U.S. at

1   375.  In contrast, the court also held that a white tester - - (also employed by the fair housing

2   organization) - - had not had his "statutory right to truthful housing information violated"

3   because he was told by the defendant *Havens Realty* that apartments were available.  Thus,

4   said the court: "he [the white tester] ha[d] not pleaded a cause of action." *Id.*, 455 U.S. at

5   374-375.

6        Finally, the court concluded "[i]f as broadly alleged, [defendants'] [unlawful] steering

7   practices [against black testers] have perceptibly impaired [the fair housing organization's]

8   ability to provide counseling and referral services . . . [then] the organization ha[d] suffered an

9   injury in fact" (*Id.*, 455 U.S. at 379) caused by the violation of the black tester's "statutory

10  right to truthful housing information." *Id.*, 455 U.S. at 375.

11       In *Smith v. Pacific Properties*, 358 F.3d 1097 (9th Cir. 2004), the Ninth Circuit applied

12  *Havens* and observed that the complaint filed by DRAC (a fair housing organization) "pled

13  with particularity two causes of action for violations of the FHAA [rights of disabled testers]."

14  *Id.*, 358 F.3d at 1105.  Next, the court reasoned that <u>given leave to amend</u>, DRAC probably

15  could allege facts sufficient to show that its mission was frustrated, *id.*, 358 F.3d at 1104-

16  1106, by the violation of the 3604(f)(2) rights of the <u>disabled</u> testers employed by DRAC. *Id.*,

17  358 F.3d at 1103-1104.

18       In *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002), defendant Jack

19  Combs was alleged to have violated 42 U.S.C. section 3604 and various civil rights laws, *inter*

20  *alia*,  by refusing to rent to black testers and black prospective renters.  *Id.*, 285 F.3d at 902.

21  Thus, the complaint specifically alleged that <u>someone's</u> section 3604 rights had been violated.

22  Following discovery abuse by Combs, the district court entered default judgment against

23  Combs.  *Id.*, 285 F.3d at 902.  On appeal, Combs argued that plaintiff Fair Housing of Marin

24  lacked standing.  *Id.*, 289 F.3d at 902.  On appeal, the Ninth Circuit first expressed doubt that

25  "litigation expenses alone" could suffice to establish standing, but held that **in responding to**

26  **citizen's complaints against Combs**, Fair Housing of Marin had <u>necessarily</u> suffered

27  economic losses to respond to these complaints, all <u>caused</u> by a violation of the section 3604

28  rights of black testers and prospective black renters. *Id.*, 285 F.3d at 905.

1    In *Havens, Smith* and *Fair Housing of Marin*, housing organizations were thus held to

2 have standing to sue - - flowing from injuries the organizations incurred - - <u>caused by the</u>

3 <u>violations of someone's section 3604 rights</u>.  Plaintiffs in this suit have not alleged that

4 anyone's section 3604 rights have been violated regarding the <u>tested</u>, <u>untested</u>, or <u>unknown</u>

5 properties sued on, because they do not allege that anyone holding section 3604 rights has ever

6 been interested in accessing the apartments sued on, or has had their access <u>actually</u> impaired.

7    **B.    <u>Plaintiffs Have No Standing, Because Their Alleged Injuries Were Not</u>**
     **<u>Caused by Defendants' Violation of The FHAA</u>**

8
         1.    <u>Plaintiffs' Alleged Injuries Could Not Have Been Caused by a Violation</u>
9              <u>of the FHAA, Because No Violation of the FHAA is Alleged.</u>

10    As explained above, the FAC has not alleged a violation of the FHAA, and, therefore,

11 Plaintiffs have not alleged that their injuries were <u>caused by a violation of the FHAA</u>.

12         2.    <u>Plaintiffs' Alleged Damages Are Alleged to Have Been Voluntarily</u>
               <u>Incurred</u>.

13
14    In opposing this motion, Plaintiffs state:

15         [T]he Plaintiff organizations <u>discovered</u> the <u>inaccessible</u> <u>buildings</u>
           through the course of <u>their</u> <u>own</u> <u>advocacy and not</u> from a
16         complaint . . . .

                              * * * *
17
18         Plaintiffs spent significant time and resources to identify . . .
           Defendants' discrimination . . . .  Plaintiffs need not demonstrate
19         that they were literally "forced" to spend time and resources. . . .

20    Opposition, p.24:16-17 and p. 25:1-5, emphasis added.

21    The allegations of the FAC confirm Plaintiffs' admissions that Plaintiffs voluntarily

22 "discovered the [alleged] inaccessible buildings" by voluntarily "spending time and resources

23 to identify . . . Defendants' [alleged] discrimination."  See, e.g., FAC, ¶¶ 3, 20 and 29.

24    As the FAC alleges, Plaintiffs voluntarily had their staff search the internet to identify

25 national builders of apartment complexes (who had not yet been sued for alleged FHAA

26 violations). See FAC, ¶¶ 3, 20 and 29.  Next, Plaintiffs' staff identified some properties the

27 identified  national builder had built.  FAC, ¶¶ 3, 20 and 29.  Next, Plaintiffs sent staff - -

28 nondisabled testers - - to 34 of the identified complexes to find violations of the provisions

1  found in section 3604(f)(a)(3) as implemented by the applicable federal regulations. FAC, ¶¶

2  3, 29 and 39.[6] Using the "safe harbor" provisions of these regulations as a "sword" (and not

3  as the shield they are intended to be) (see fn. 1, ante) - - Plaintiffs filed their complaint alleging

4  <u>one</u> or more violations of the provisions contained in section 3604(f)(c)(3), as implemented by

5  various federal regulations. FAC, ¶¶ 3 and 39.

6      Thus, the FAC confirms that Plaintiffs voluntarily manufactured this lawsuit <u>and their</u>

7  <u>resulting injury</u>. *Smith* and *Marin Fair Housing* confirm that such manufactured injury cannot

8  support standing. *Smith and Marin* both express doubt that such voluntarily incurred

9  "expenses of litigation" alone will support standing. *Smith*, 358 F.3d at 1105; *Fair Housing of*

10 *Marin*, 285 F.3d at 905. Rather, as *Fair Housing of Marin* explains, "Fair Housing of Marin

11 responded to citizen complaints against Combs, and alleged injury beyond litigation expenses."

12 *Id.*, 285 F.3d at 905.

13      The decisions of this court are in accord. In *Project Sentinel v. Evergreen Ridge*

14 *Apartments*, 40 F.Supp.2d 1136 (N.D. Cal. 1999), the plaintiff non-profit corporation sued

15 _____

16    [6] Section 3604(f)(3)(C) defines "discrimination" but not "a discriminatory housing
   practice" to include the "design and construct[ion]" of covered multifamily dwellings in a

17 manner that makes them inaccessible to persons with disabilities. 42 U.S.C. section
   3604(f)(3)(C). Section (f)(3)(C) itself generally states what is required to make "covered

18 units" accessible, by requiring the following elements: "accessible and usable" public areas;
   sufficiently wide doors; and "features of adaptive design" such as an "accessible route into and

19 through the dwelling," placement of certain controls (e.g. light switches) "in accessible
   locations," reinforcements in walls for grab bars, and "usable kitchens and bathrooms such

20 that an individual in a wheelchair can maneuver about the space." 42 U.S.C. section

21 3604(f)(3)(C)(i)-(iii).
       Thus, section 3604(f)(3)(C) sets out a general statement regarding access and

22 adaptability that is unlike, for example, a national building code. In implementing regulations
   under section 3604(f)(3)(C), Congress <u>did not direct or empower</u> the Department of Housing

23 and Urban Development ("HUD") to promulgate <u>binding regulations</u> setting forth mandatory

24 accessible features. Rather, Congress empowered HUD only to issue reports and technical
   guidance concerning accessibility. 42 U.S.C. section 3604(f)(5)(C). Lacking authority to

25 create mandatory design standards, HUD provided several examples of guidance documents

26 and "**safe harbors**" that could be utilized to ensure compliance. These non-mandatory "**safe
   harbors**" generally exceed the minimum requirements of the FHAA and are at times

27 contradictory. See e.g. *Equal Rights Center v. Post Properties, Inc.*, 522 F.Supp.2d 1, 9, fn.

28 1 (D.D.C. 2007) ["[T]he guidelines explicitly state that they are not binding, but, rather, are
   "safe harbors" or advisory guidelines. 56 Fed.Reg. at 9473-9478."]

1  defendant apartment complex owners for maintaining a discriminatory policy toward families

2  with children and failing to provide handicap access to rental offices. The plaintiff alleged that

3  defendants' discriminatory treatment of families, *inter alia*, "frustrated [its] mission requiring

4  it to expend scarce resources to investigate and document said practices, and will require

5  further expenditures of staff time to monitor and perform compliance and investigations." *Id.*

6  at 1138. This court held that these allegations failed to establish an injury-in-fact required for

7  Article III standing. *Id.*

8      This court explained that, "to establish standing to sue, a plaintiff must allege that he

9  has, as a result of defendants' actions, suffered a *distinct and palpable* injury." *Id.* (citing

10 *Havens*, 455 U.S. at 379, emphasis added.) "In other words, an organization establishes an

11 Article III injury if it alleges that <u>unlawful action has increased the resources the group must

12 devote to programs independent of its suit challenging the unlawful action.</u>" *Id.*, emphasis

13 added.

14     This court further explained that "*Havens* did not base its holding in favor of standing

15 merely on the diversion of resources to litigation, but rather on the <u>alleged injury that the

16 defendants' actions themselves inflicted upon the plaintiff's referral and counseling programs.</u>"

17 *Id.* at 1140 (citing *Havens*, 455 U.S. at 379), emphasis added. This court then held that the

18 plaintiff failed to establish organizational standing:

19             The plaintiff in the present case, by contrast, does not allege that
               defendants' conduct directly obstructed the educational,
20             counseling or mediation services; rather, the sole injuries alleged
               are to plaintiff's abstract goals and the cost of initiating this suit.
21             This suit is not alleged to have been made necessary by any
               detrimental impact of defendants' actions on plaintiff's
22             operations. In other words, plaintiff does not allege injury to
               itself independent to its decision to divert resources away from
23             the pursuit of its abstract goals to support this suit.

24 *Id.*, at 1140-1141.

25     The FAC in the instant case suffers from the same defect as the complaint in *Project

26 Sentinel*. Plaintiffs do not allege that defendants' conduct directly obstructed any of their

27 services; rather the sole injuries alleged are to Plaintiffs' abstract goals and the cost associated

28 with this lawsuit.

C.    **Plaintiffs Have No Standing Because They Cannot Allege Redressability: They Have No Standing to Seek Injunctive Relief and They Fail to Sue Indispensable Parties.**

Plaintiffs allege that the existence of inaccessible housing anywhere in the United States injures Plaintiffs by frustrating Plaintiffs' mission of providing accessible housing to all disabled persons. Opposition, p. 24:9-12, FAC, ¶ 72. But this alleged injury may not be redressed in this case, inter alia, because Plaintiffs lack standing to seek injunctive relief.

Standing is not dispensed "in gross." Rather, a plaintiff must demonstrate standing separately for each form of relief sought (injunction, damages, civil penalties, etc.). *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 184 (2000). Before a court will order a business to undergo the expense of altering its facilities to make them accessible to a particular plaintiff, courts first require that plaintiff show that plaintiff has standing to seek injunctive relief:

> In order to establish an injury in fact sufficient to confer standing to pursue injunctive relief, the Plaintiff must demonstrate a "real or immediate threat that the plaintiff will be wronged again - - a likelihood of substantial and immediate irreparable injury." [citation omitted] In evaluating whether an ADA plaintiff has established a likelihood of future injury, courts have looked to such factors as: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant.

*Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042, 1045 (C.D. Cal. 2005). Although *Molski's* claims were under the ADA, this same test applies under the FHAA. To have standing to seek injunctive or declaratory relief under the FHAA, plaintiff must actually live at or intend to live at the apartment complex sued on. See, e.g., *Harris v. Itzhak*, 183 F.3d 1043, 1050 (9th Cir. 1999) [Plaintiff's request for declaratory and injunctive relief rendered moot by her departure from the complex].

The same is true for the public areas of the Subject Properties. "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven Inc.*, 506 F.3d 1191, 1197 (9th Cir. 2007) (decided under

1  the ADA). But even then Plaintiffs have standing to seek injunctive relief <u>only for</u> those

2  violations related to Plaintiffs "specific disability." *Id.*, 506 F.3d at 1202.[7]

3          In the instant case, Plaintiffs do not allege that they ever intend to return to the subject

4  properties. Plaintiffs do not allege that any disabled person has ever visited or intends to visit

5  any of the subject properties.

6          And, Plaintiffs in this case fail the proximity test. Regarding "proximity," the district

7  court in *Molski v. Mandarin Touch* determined that the plaintiff's residence was over 100 miles

8  from the defendant Mandarin Touch Restaurant in Solvang, California, a fact which weighed

9  heavily against standing to sue for injunctive relief. 385 F.Supp. at p. 1045. See also,

10  *Gladstone Realtors v. Bellwood, supra*, 441 U.S. 91, 112, n 25 [refusing to grant standing to

11  individual plaintiffs that did not live in the community in which the alleged discrimination

12  occurred]; *Conservation Law Found. of New England v. Reilly*, 950 F.2d 38, 43 (1st Cir. 1991)

13  [Denying standing to plaintiff entity seeking nationwide injunctive relief under CERCLA at

14  approximately 1200 facilities, the court stated: "The absence of plaintiffs from the majority of

15  regions of the country in this case demonstrates the lack of 'concrete factual context conducive

16  to a realistic appreciation of the consequences of judicial action"]. *Havens, supra,* 45 U.S. at

17  377 ["It is indeed implausible to argue that [defendants'] alleged acts of discrimination could

18  have palpable effects throughout [an] <u>entire</u> metropolitan area"].

19          The FAC does not allege facts to meet the plaintiffs' "proximity" test. Rather,

20  plaintiffs' opposition states: "The Proximity of Plaintiffs' Offices to Defendants' . . .

21  Buildings Is Not Relevant to Any Standing Inquiry." Opposition, p. 25:19-20.

22

23  _____

24  [7] The scope of injunctive relief necessitated by the violation of someone's section 3604 rights cannot be determined without reference to a particular disabled person with a particular

25  disability, who wishes to access a particular apartment. Section 3604(f)(3)(C) says it is "discriminatory" - - but not a "discriminatory housing practice" - - to design and construct

26  common areas that are inaccessible to disabled persons (3604(f)(3)(C)(i)); and to design and construct apartments that are inaccessible to persons in wheelchairs (3604(f)(3)(C)(ii) and (iii)).

27  But actual inaccessibility to a disabled person cannot be determined without reference to a particular disabled plaintiff with a particular disability who needs a particular type of

28  accessibility - - e.g., the blind have different accessibility needs than the deaf, etc.

AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]

1     That Plaintiffs' alleged injuries are not redressable is also revealed by the fact that

2  Plaintiffs have not included in this suit parties who are indispensable to effectuate the

3  injunctive relief requested.  Although Plaintiffs' Opposition states they seek mere retrofits, the

4  FAC alleges that plaintiffs seek a <u>general nationwide injunction</u> requiring the Spanos

5  defendants to: "bring each and every . . .apartment community [sued on] into compliance with

6  the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations."  FAC,

7  p.40:11-13.  Thus, as pled, the FAC seeks a nationwide injunction requiring the Spanos

8  defendants to <u>redesign and reconstruct</u> all apartment complexes sued on - - tested, untested,

9  and unknown.

10     The redesign and reconstruction of apartments (as requested in the FAC) necessarily

11  affects the property interests of owners, renters and secured lenders and the privacy interests of

12  renters.  Plaintiffs allege, correctly, that <u>all</u> current owners are "necessary parties in order to

13  effectuate any judgment or order for injunctive relief requested by plaintiffs."  FAC, ¶ 30.

14  Rule 19(a)(2)(i), <u>fundamental due process</u>, and 42 U.S.C. section 3613(d) require that current

15  owners, renters, and secured lenders of the properties sued upon be given notice and an

16  opportunity to be heard.  The current owners are entitled to present evidence to this Court

17  showing that properties owned by them <u>actually</u> <u>comply</u> with the accessability requirements of

18  the FHAA and that no disabled person has ever been harmed by alleged inaccessibility of the

19  subject properties.  Yet, Plaintiffs' Opposition admits that this Court does not have personal

20  jurisdiction over these owners.[8]

21  _____

22     [8] In an attempt to circumvent this problem, plaintiffs have alleged the existence of a defendant
"owner" class and have named Knickerbocker and Highpointe as class representatives.  FAC, ¶¶ 32-
23  37.  However, this attempt fails.  First, the fact that the claims against both class representatives are
time-barred renders them "inadequate" under Rule 23.  See discussion, below. It also fails to solve the
24  jurisdictional problem: in the absence of an opt-out mechanism, plaintiffs will have to establish
personal jurisdiction as to each current owner.   Still, plaintiffs' Opposition argues that there is no need
25  to afford due process to these known and unknown owners. Lack of personal jurisdiction over absent
class members triggers due process concerns even in plaintiff class actions, in which, typically, no
26  relief is sought against the absent class members and – in any event – the absent class members can
"opt out" if they chose not to participate in the lawsuit.  See, *Phillips Petroleum Co. v. Shutts,* 472
27  U.S. 797, 811-12 (1985).  "Presumably, a defendant class would not present the same problems [as
posed in *Shutts*] because, unlike the situation with a plaintiff class, <u>the forum court must have personal
28  jurisdiction over each member of a defendant class.</u>"  *Whitson v. Heilig-Meyers Furniture, Inc.,* 1995

AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]

1    In addition, the tenants who hold leaseholds in the known 22,000 apartments sued on

2   are also entitled to notice and an opportunity to be heard, as are the tenants of the unknown

3   apartments sued on.  Plaintiffs say this is not so because these tenants can have their doors,

4   bathrooms, and kitchens reconstructed while the tenants are at work or on vacation.  However,

5   many of the 22,000 tenants of these known apartments may be happy with their apartments the

6   way they are.  And, many of these 22,000 tenants may not welcome construction workers into

7   their homes - - while they [the tenants] are away at work or on vacation.[9]  In any event, these

8   22,000 tenants own leaseholds - - granting them property and privacy rights to their apartments

9   - - and due process and 42 U.S.C. section 3613(d)  require they be given notice and an

10

11

12   ─────────────────────

13   U.S. Dist. LEXIS 4312, *49 (N.D. Ala. 1995), emphasis added; see, also, *National Assn. for Mental Health, Inc. v. Califano*, 717 F.2d 1451, 1455 (D.C. Cir. 1983) [affirming district court's order refusing to certify a defendant class where the named representatives would not "fairly and adequately

14   protect the interests of the class" and where the district court did "not have in personam jurisdiction over the class members"].

15       In response to this case law, plaintiffs argue that Rule 23, and two cases interpreting Rule 23,

16   have abrogated the need to afford "due process" to defendant class members.  In reality, neither Rule 23 nor any case so holds. In fact, the main case relied on by Plaintiffs, *Califano v. Yamasaki*, 442 U.S.

17   682 (1979), explains that class relief is not available where Congress by statute has expressly limited such relief.  442 U.S. at 700. 42 U.S.C. section 3613(d) is such a limiting statute. Section 3613(d)

18   mandates that an injunction which "affects" property rights of owners, tenants, or secured lenders "shall not" issue without first affording notice and an opportunity to be heard to these parties. *Ibid.*

19   Similarly, in *Hansberry v. Lee*, 311 U.S. 32 (1940) (the other case relied on by plaintiffs) the Supreme Court found that due process was not afforded where the putative class representative lacked the

20   motivation to vigorously assert the claims and defenses of the subject class members. 311 U.S. at 27-29.  Further, any injunction issued by this court which purports to bind persons or entities over which

21   this court lacks personal jurisdiction would be unenforceable. An injunction against a defendant class is not enforceable by the issuing court against nonresident defendant class members outside the court's

22   jurisdiction. And, in a local enforcement proceeding, due process would dictate that the absent member be able to raise collaterally unique defenses: e.g., that he did not engage in the unlawful practice; that

23   the plaintiff is guilty of laches or unclean hands or is estopped to assert a claim against the defendant; that he has obtained a release of claims from the plaintiff; that he is not a member of the class; or that

24   the class representation was inadequate. See 2 Newberg on Class Actions § 4:49 at pp. 347-348

25   (2002). And in a local enforcement proceeding, such a defendant could assert the defense that 42 U.S.C. § 3613(d) mandates that no injunction issue which affects his or her rights absent notice and an

26   opportunity to be heard, and that therefore this court's injunction lacked validity.

27       [9] Alternatively, plaintiffs suggest that this court could wait until all 22,000 known

28   apartments are vacated.  However, since some tenants live in the same apartments all of their adult lives, this Court would be supervising such an injunction for 30 or more years.

AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]

1    opportunity to be heard before issuance of an injunction which <u>affects</u> those rights.[10]

2        And an injunction requiring the redesign and reconstruction of individual units leased

3    by renters <u>also</u> adversely affects the property rights of secured lenders. Plaintiffs' Opposition

4    argues that the "cash flow" of the affected rentals <u>may</u> not be significantly impaired. But the

5    FAC does not so allege, and the injunction sought in the FAC seeks the redesign and

6    reconstruction of each known and unknown complex. As alleged by the FAC, then, the

7    property rights of secured lenders will be affected.

8        Finally, in equity and "good conscience" this action should not proceed without the

9    owners, renters and secured lenders. Fed.R.Civ.P., rule 19. These parties have property

10   and/or privacy rights which may not be impaired without due process of law - - which, <u>at a</u>

11   <u>minimum</u> - - requires notice and an opportunity to be heard. These due process rights clearly

12   outweigh any concern regarding potential harm to plaintiffs which may result from dismissal of

13   this lawsuit. Plaintiffs' only alleged harm consists of litigation costs voluntarily incurred by

14   Plaintiffs to identify and test the subject properties and thereafter to bring this lawsuit. This

15   monetary harm was voluntarily incurred to manufacture a nationwide lawsuit purportedly

16   brought to benefit the disabled. In reality, dismissal of this lawsuit will not harm disabled

17   persons at all. If any disabled person ever actually visits any of the properties sued on and

18   finds that a failure in design or construction actually impairs his or her access, then a suit

19   under 3604(f)(1) or (f)(2) can be filed. The FHAA allows the appropriate federal district court

20   to "appoint an attorney to represent such person" and waive all "fees, costs, [and] security."

21   42 U.S.C. § 3613(b)(1) and (2). And, such a disabled person could approach one of the

22   plaintiff fair housing organizations herein and request assistance with his or her suit.

23       However, such a future suit is not likely because an actual future denial of access is not

24   likely. Plaintiffs sue nationwide on 82 apartment complexes containing 22,000 units - - and on

25

26   _____

     [10] See, *H.J.M. v. K. Hovnanian at Mahwah VI, Inc.*, 672 A.2d 1166, 1172 (N.J. Sup.

27   Ct. 1996); *Equal Rights Center v. Post Properties, Inc.*, 522 F.Supp.2d 1, 5 (D.D.C. 2007);
     see, also, Fed.R.Civ.P. 19(a)(2)(i); *Schneider v. Whaley*, 417 F.Supp. 750, 757 (S.D. NY

28   1976) (tenants had a "protected interest at stake" in the housing authority's policy-making and
     were thus entitled to notice and an opportunity to submit evidence and argument).

AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]

1  an unknown number of unknown complexes containing an unknown number of units- - many

2  built more than 15 years ago.  Yet, plaintiffs fail to allege that any disabled person has ever in

3  any way actually had his or her access impaired at any of the known or unknown complexes

4  sued on.

5      The FAC in fact fails to allege that most types of disabled persons could have their

6  access impaired.  The design and construction defects alleged in the FAC are irrelevant to the

7  blind, the deaf, the mentally infirm, etc.  The alleged defects could possibly affect a mobility-

8  impaired person, depending upon the height, size and weight of that particular person and

9  depending upon the degree of that person's impairment.  But, even if such a mobility impaired

10  person's access is denied or impaired in the future, he could file suit in the local district court -

11  - and the owner, tenants, and secured lenders would have minimum contacts with the local

12  district court overseeing the suit, as would the Spanos defendants.

13      In contrast - - although no disabled person has ever been harmed - - Plaintiffs ask this

14  Court to issue and supervise a nationwide injunction requiring the redesign and reconstruction

15  of 22,000 known apartments (and an unknown number of unknown apartments) without notice

16  to the owners, renters and secured lenders.  "Equity and good conscience" require that since

17  these parties cannot be joined, this case should be dismissed.

18  **II.    PLAINTIFFS FAIL TO ALLEGE A CAUSE OF ACTION IN THEMSELVES OR
         ANYONE ELSE.**

19

20      **A.    Plaintiffs State No Cause of Action Because They Allege No Injury Caused
             By a Discriminatory Housing Practice.**

21

22      "Any person . . . who . . . claims to have been injured by a discriminatory housing

23  practice[11] . . . may commence a civil action . . . to obtain appropriate relief with respect to

24  such discriminatory housing practice . . . ."  42 U.S.C. § 3613(a)(1)(A).  Plaintiffs state no

25  cause of action under the FHAA because they have not alleged facts to show they have been

26

27

28      [11] 42 U.S.C. section 3602(i).

1    injured by a "discriminatory housing practice."[12]

2          Plaintiffs have not alleged that they or anyone else has <u>in fact</u> ever had their access to

3    any of the apartments sued on denied or even impaired.  Absent such an allegation, Plaintiffs

4    fail to state a cause of action against the Spanos defendants, or against the putative class

5    representatives.

6        **B.**    **<u>Plaintiffs State No Cause of Action Because They Manufactured Their Own</u>**
    **<u>Alleged Injury.</u>**

7

8          See discussion above, section I.B.2.

9        **C.**    **<u>Plaintiffs State No Cause of Action Because They Have Sued the Wrong</u>**
    **<u>Defendants.</u>**

10

11          42 U.S.C. sections 3604(f)(1) and (f)(2) make it "unlawful" to deny a rental to disabled

12    persons, or to deny a rental to those associated with disabled persons.  It is landlords - not

13    builders - who are in a position to deny rentals:

14          The "failure to design and construct" language of 3604(f)(3)(C) might be
      thought to limit the targets of this provision to those who 'design' or 'construct'

15          covered multi-family dwellings, but this interpretation seems wrong.  As one
      court has observed, 3604(f)(3)(C) "is not a description of who is liable.  Rather,

16          it is a description of what actions constitute discrimination."

17    R. Schwemm, "Barriers to Accessible Housing: Enforcement Issues in Design and

18    Construction Cases under the Fair Housing Act, 40 U. Richmond L.Rev. 753, 776 (2006).

19          "The conduct and decision-making that Congress sought to affect [by passage of the

20    FHAA] was that of persons in a position to frustrate . . . the housing choices of handicapped

21    individuals who seek to buy or lease housing . . . [P]rimarily . . . those who own the property

22    _____

23        [12] Section 3602(f) defines "<u>discriminatory housing practice</u>" to mean "an act that is
unlawful under section 3604. . . ."  In turn, section 3604(f)(1) makes it <u>unlawful</u> to design and

24    build apartments that are "unavailable" "to any renter" (A) because of <u>a particular handicap</u> of
<u>that</u> renter or (B) because of <u>a particular handicap</u> of <u>a particular person</u> who <u>intends to reside</u>

25    in <u>a particular dwelling</u>, or (C) because of <u>a particular handicap</u> of any person associated with

26    <u>a particular renter</u>.  Section 3604(f)(2) makes it <u>unlawful</u> to design and build common areas
that are inaccessible to a renter (A) because of <u>a particular handicap</u> of <u>a particular person</u>

27    <u>intending</u> to rent; or (B) because of <u>a particular handicap</u> of <u>a particular person</u> who intends to

28    reside in <u>a particular dwelling</u>; or (C) because of <u>a particular handicap</u> of any person associated
with <u>a particular renter</u>.

AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]

1   of choice and their representatives." *Growth Horizons, Inc. v. Delaware County*, 983 F.2d

2   1277, 1283 (3d Cir. 1993).   The Ninth Circuit explained this limitation on potentially liable

3   parties in an ADA case as follows:

> [A]fter the noncompliant building has already been built, injunctive relief is only
> meaningful against the person currently in control of the building. That is, the
> architect who built the building is by the time of suit by an eligible plaintiff out
> of the picture. This limitation on relief suggests that reading Title III to make
> architects, and others who do not own, lease, or operate buildings, such as
> builders and construction subcontractors, liable for "design and construct"
> discrimination would create liability in persons against whom there is no
> meaningful remedy provided by the statute.

*Lonberg v. Sanborn Theatres,* 259 F.3d 1029, 2001 U.S.App.LEXIS 17418, at *18 (9th Cir. 2001).

**III.    PLAINTIFFS' CLAIMS AGAINST THE SPANOS DEFENDANTS AND
AGAINST THE PUTATIVE CLASS DEFENDANTS ARE BARRED BY THE
STATUTE OF LIMITATIONS.**

"An aggrieved person may commence a civil action . . . not later than 2 years after the

occurrence or the termination of <u>an alleged discriminatory housing practice</u>." 42 U.S.C.

section 3613(a)(1)(A), emphasis added.

The FAC alleges that the mere failure to design and construct in accord with the

provisions of section 3604(f)(3) constitutes a "discriminatory housing practice." This reading

of the statute is plainly wrong. See discussion, above.[13]

Assuming, <u>arguendo</u>, the validity of Plaintiffs' reading of the statute, nevertheless,

Plaintiffs' claims are still time-barred. Plaintiffs' Opposition concedes, sub silentio, that

absent the FAC's allegations of a continuing pattern and practice of violations of the FHAA,

the FAC would be time barred as to all apartments constructed more than 2 years before filing

of the complaint. As to those complexes outside of the two-year period, Plaintiffs argue that

*Havens* saves their claims:

---

[13] Under the rules of statutory construction, "the plain meaning of the statute controls,
and courts will look no further, unless its application leads to unreasonable or impracticable
results." *United States v. Daas* 198 F.3d 1167, 1174 (9th Cir. 1999) Specific statutes control
over general statutes, and both over case law. See *Crawford Fitting Co. v. J.T. Gibbons, Inc.,*
482 U.S. 437, 445 (1987).

> [P]laintiffs' claims are timely with respect to the complexes completed more than two years before the case was filed because they were designed and constructed pursuant to a pattern and practice, continuing into the limitations period, of erecting apartments in violation of the FHA's design and construction requirements. See *H avens*, 455 U.S. at 380-81("where a plaintiff, pursuant to the FHA, challenges not just one incident of **conduct violative of the Act**, <u>but an unlawful practice</u> that continues into the limitations period, the complaint is timely when it is filed within [2 years] of the last asserted occurrence of that practice"). That is, at least 82 complexes are properly before the Court.

Opposition, p. 14:1-7, emphasis added.[14]

Plaintiffs' reliance on *Havens* is misplaced. Although in *Havens* the Court upheld application of the continuing violation doctrine, the rationale of *Havens* cannot be applied in the context of section 3604(f)(3)(C). The alleged FHA violation in *Havens* was racial steering, an unlawful practice that by definition continues over time. *Havens*, 455 U.S. at 380. Racial steering <u>as a practice</u> cannot be determined based on one event; rather, racial steering is determined by observing several unlawful practices over time. *Id.* at 381. Hence, the Court found that the alleged racial steering constituted a continuing violation because (1) it continued to occur within the limitations period, and (2) the nature of racial steering is such that it is "manifested in a number of incidents." *Id.* In other words, the unlawful practice of racial steering can only be fully determined after looking at a series of alleged unlawful acts.

However, the Supreme Court in *Havens* refused to apply the continuing violations doctrine to "open," "obvious," and "completed" unlawful acts. That is, the court explained that the continuing violation doctrine did not apply to a plaintiff tester's claims, which were based on "four isolated occasions" in which she received false information as to housing availability. *Havens,* 455 U.S. at 381. Her claims were in fact dismissed as being untimely. 455 U.S. at 381. Thus, the continuing violation doctrine is only applicable in situations "where the type of violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period," *Hargraves v. Capital City*

---

[14] As stated by *Havens*, a continuing violation requires a pattern of violations of the FHAA. As explained above, the FAC alleges a pattern of creating "patent discriminatory conditions" and not a pattern of committing "discriminatory housing practices."

1   *Mortgage Corp.*, 140 F.Supp.2d 7, 18 (D.D.C. 2000) citing *Taylor v. FDIC*, 132 F.3d 753,

2   764-765 (D.D.C. 1997). *See also United States v. Pac. Northwest Electric*, 2003 U.S. Dist.

3   LEXIS 7990, *15 (D. Idaho Nov. 20, 2003) ["This 'failure' [to design and construct] occurs

4   and is complete at the time the particular dwellings are designed and/or constructed. There is

5   no basis, under the plain language of § 3604(f)(3) of the FHA for applying the continuing

6   violation doctrine"].

7          Unlike racial steering, the design and construction of apartments involves open and

8   obvious discrete acts with a clear ending point—the date on which construction or design is

9   completed. *Moseke v. Miller*, 202 F.Supp.2d 492, 506-507 (E.D. Va. 2002); and see *Levine

10  v. Bally Total Fitness Corp.*, 2006 U.S. Dist LEXIS 95006, * 30 (E.D. Illinois 2002), citing

11  *Amtrak v. Morgan*, 536 U.S. 101, 114 (2002).

12         Accordingly, the rationale for applying the continuing violation doctrine in *Havens*

13  has no applicability to design and construction cases. Any alleged failure to design and

14  construct is open, obvious, and easily determinable at the time of completion of construction.

15  The FAC in fact alleges that the alleged non-compliant design and construction of the subject

16  complexes was open and obvious. That is, the FAC alleges that the alleged design and

17  construction deficiencies in the subject complexes constituted nothing less than posting a sign

18  saying: "No Handicapped People Allowed." FAC, ¶ 10.

19         Thus, as time passes without any suits, and the two-year notice period for multi-family

20  developers, architects, and builders expires, justice requires that these parties be freed from

21  stale claims. Statute of limitations are enacted for a reason, and the Supreme Court recognizes

22  that "a discriminatory act which is not made the basis for a timely charge . . . is merely an

23  unfortunate event in history which has no present legal consequences." *Ledbetter v.

24  Goodyear*, 127 S.Ct. 2162, 2168 (2007) (quoting *United Air Lines, Inc. v. Evans,* 431 U.S.

25  553, 558 (1977)). Moreover, applying the continuing violation doctrine to alleged section

26  3604(f)(3)(C) violations, as urged by Plaintiffs, renders the statute of limitations

27  "meaningless." *Moseke,* 202 F.Supp.2d at 507, 508.

28         One of the underlying purposes of the statute of limitations, is "protect[ing] defendants

1    from the burden of defending claims arising from . . . decisions that are long past." *Del. State*

2    *College v. Ricks,* 499 U.S. 250, 256-57 (1980).  "Statutes of limitations serve a policy of

3    repose." *Ledbetter*, 127 S.Ct. at 2170.  They "represent a pervasive legislative judgment that

4    it is unjust to fail to put the adversary on notice to defend within a specified period of time and

5    that 'the right to be free of stale claims in time comes to prevail over the right to prosecute

6    them.'" *Id.* (quoting *United States v. Kubrick,* 444 U.S. 111, 117 (1979)).

7            Finally, as to the putative class defendants, Plaintiffs state no cause of action against

8    them at all.  Opposition, p. 32:20-23.  And, the FAC does not allege that these putative

9    defendant owners engaged in a pattern and practice of owning apartments in violation of

10   section 3604.[15]  Moreover, the FAC cannot be amended to so allege.  All construction on

11   properties owned by the putative class representative defendants was completed more then two

12   years before Plaintiffs' complaint was filed.  Therefore, the two-year statute has run as to both

13   putative class representative defendants and as to the Spanos Defendants.[16]

## CONCLUSION

15           The Spanos Defendants' motion to dismiss is hereby granted.  Plaintiffs have not

16   requested leave to amend, nor have they explained to this Court how they can amend their

17   First Amended Complaint to state a claim.  Lacking such a request, this dismissal is without

18   leave to amend.  The Spanos defendants' accompanying Request for Judicial Notice is

19   unopposed and is hereby granted.

20   Dated: _____, 2008

     _____
     Honorable Saundra Brown Armstrong
21   United States District Judge

22   _____

23           [15] As stated by *Havens*, a continuing violation requires a pattern of violations of the
     FHAA.  As explained above, the FAC alleges a pattern of creating "patent discriminatory
24   conditions" and not a pattern of committing "discriminatory housing practices."

25           [16] Plaintiffs assert that as to Highpointe Village, a final certificate of occupancy on one
26   complex it owns was not filed until June 20, 2005.  But, Highpointe was not sued in this case
     until October 12, 2007, - - the date the FAC was filed - - more than two years after issuance of
27   the certificate of occupancy.  And, defendant Highpointe Village, L.P., <u>does</u> not <u>own</u> <u>this</u>
     <u>complex</u>; rather, it is owned by Highlands KS, LP, a California limited partnership, an entity
28   not made a party to this suit.

AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]