MAXWELL M. FREEMAN, #31278
LEE ROY PIERCE, JR., #119318
MICHAEL L. GUREV, #163268
THOMAS H. KEELING, #114979
F<small>REEMAN</small>, D'A<small>IUTO</small>, P<small>IERCE</small>,
 G<small>UREV</small>, K<small>EELING</small> & W<small>OLF</small>
A P<small>ROFESSIONAL</small> L<small>AW</small> C<small>ORPORATION</small>
1818 Grand Canal Boulevard, Suite 4
Stockton, California  95207
Telephone: (209) 474-1818
Facsimile:  (209) 474-1245
E-mail:       lrpierce@freemanfirm.com
                   mgurev@freemanfirm.com
                   tkeeling@freemanfirm.com

Attorneys for Defendants A.G. Spanos
Construction, Inc.; A.G. Spanos
Development, Inc.; A.G. Spanos
Land Company, Inc.; A.G. Spanos
Management, Inc., The Spanos Corporation

IN THE UNITED STATED DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| National Fair Housing Alliance, Inc., et al., | ) | CASE NO.  C07-03255-SBA |
|---|---|---|
| Plaintiffs, | ) | **AMENDED [PROPOSED] ORDER GRANTING A.G. SPANOS CONSTRUCTION, INC.; A.G. SPANOS DEVELOPMENT, INC.; A.G. SPANOS LAND COMPANY, INC.; A.G. SPANOS MANAGEMENT, INC., AND THE SPANOS CORPORATION'S MOTION TO STRIKE VARIOUS CLAIMS FOR RELIEF SOUGHT IN PLAINTIFFS' FIRST AMENDED COMPLAINT** [Fed.R.Civ. P. 12(f)] |
| vs. | ) | |
| A.G. Spanos Construction, Inc., et al. | ) | |
| Defendants. | ) | |
| | ) | Hearing Date: March 11, 2008<br>Time:             1:00 p.m.<br>Dept.:            Courtroom 3 |
| | | Complaint Filed: June 20, 2007 |

The motion of Defendants A.G. Spanos Construction, Inc., A.G. Spanos

Development, Inc., A.G. Spanos Land Company, Inc., A.G. Spanos Management, Inc., and

The Spanos Corporation,  appearing through counsel, for an order striking various claims for

relief sought in Plaintiffs' first amended complaint, came on regularly for hearing on March

1  11, 2008, at 1:00 p.m., in Courtroom 3 in the above-entitled court, located at 1301 Clay
2  Street, 3rd Floor, Oakland, California, the Honorable Saundra Brown Armstrong presiding.
3  Lee Roy Pierce, Jr. and Thomas H. Keeling appeared on behalf of Defendants, and Michael
4  Allen appeared on behalf of Plaintiffs.

## BACKGROUND

Much of the relief requested in Plaintiffs' First Amended Complaint is not recoverable as a matter of law.  Specifically, Plaintiffs' request that this court award to Defendants - - "such damages as would fully compensate Plaintiffs for their [plaintiffs'] injuries incurred as a result of Defendants' discriminatory housing practices and conduct" - - is not recoverable as a matter of law.   Plaintiffs' alleged "damages" are not compensable under the FHAA because plaintiffs do not allege that anyone's FHAA rights have been violated.  Moreover, Plaintiffs' alleged damages are alleged to have been voluntarily incurred.

Similarly, Plaintiffs' request for "punitive damages against Defendants" - - is not recoverable as a matter of law because Plaintiffs do not allege that anyone has been injured by an invasion of anyone's FHAA rights.

In addition, Plaintiffs' request for an injunction "[r]equiring Defendants to . . . bring each and every apartment community [sued upon] into compliance with the requirements of [the FHAA]. . . cannot be granted, as a matter of law, because plaintiffs lack standing to sue for injunctive relief and because plaintiffs fail to sue indispensable parties.

Next, as a matter subject to judicial notice, Plaintiffs' claims for damages and injunctive relief regarding 65 of the 82 apartment complexes sued on are barred by the statute of limitations.

Finally, claims for relief in the First Amended Complaint ("FAC") based on the Untested and Unknown Properties, will be stricken, because Plaintiffs have failed to state facts sufficient to establish standing and to state a claim upon which relief may be granted, regarding the Untested or Unknown Properties.

2
AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO STRIKE VARIOUS CLAIMS
FOR RELIEF SOUGHT IN PLAINTIFFS' FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]

## LEGAL STANDARD

"A motion to strike is appropriate to address requested relief, such as punitive damages, which is not recoverable as a matter of law. . . ." (*Wilkerson v. Butler,* 229 F.R.D. 166, 172 (E.D. Cal. 2005).) "A motion to strike may be used to strike a prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479 (C.D. Cal. 1996). A motion to strike may also be employed to strike those "portions" of a complaint barred by the statute of limitations. *Barnes v. Callaghan & Company*, 559 F.2d 1102, 1105, n 3 (7th Cir. 1977).

## ANALYSIS

### I. PLAINTIFFS' REQUEST FOR DAMAGES IS HEREBY STRICKEN BECAUSE DAMAGES ARE NOT RECOVERABLE BY THESE PLAINTIFFS.

In their prayer, Plaintiffs request a judgment in their favor:

"Awarding such damages as would fully compensate Plaintiffs for their injuries incurred as a result of Defendants' discriminatory housing practices and conduct." FAC, p. 40.

Damages are not recoverable by these Plaintiffs under the FHAA. "Any person . . . who . . . claims to have been injured by a discriminatory housing practice[1] . . . may commence a civil action . . . to obtain appropriate relief with respect to such discriminatory housing practice . . . ." 42 U.S.C. § 3613(a)(1)(A). Plaintiffs state no cause of action under the FHAA because the FAC does not allege facts to show that Plaintiffs have been injured by a "discriminatory housing practice."[2]

---

[1] 42 U.S.C. section 3602(i).

[2] Section 3602(f) defines "discriminatory housing practice" to mean "an act that is unlawful under section 3604. . . ." In turn, section 3604(f)(1) makes it unlawful to design and build apartments that are "unavailable" "to any renter" (A) because of a particular handicap of that renter or (B) because of a particular handicap of a particular person who intends to reside in a particular dwelling, or (C) because of a particular handicap of any person associated with a particular renter. Section 3604(f)(2) makes it unlawful to design and build common areas that are inaccessible to a renter (A) because of a particular handicap of a particular person intending to rent; or (B) because of a particular handicap of a particular person who intends to

3
AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO STRIKE VARIOUS CLAIMS FOR RELIEF SOUGHT IN PLAINTIFFS' FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]

1   The FAC does not allege that Plaintiffs or anyone else has <u>in fact</u> ever had their access
2   to any of the apartments sued on denied or even impaired. Absent such an allegation,
3   Plaintiffs fail to state a cause of action against the Spanos defendants, or against the putative
4   class representatives.

5   Moreover, as the FAC alleges, Plaintiffs voluntarily had their staff search the internet
6   to identify national builders of apartment complexes. See FAC, ¶¶ 3, 20 and 29. Next,
7   Plaintiffs' staff identified some properties the identified national builder had built. FAC, ¶¶
8   3, 20 and 29. Next, Plaintiffs sent staff - - nondisabled testers - - to 34 of the identified
9   complexes to find violations of the provisions found in section 3604(f)(a)(3) as implemented by
10  the applicable federal regulations. FAC, ¶¶ 3, 29 and 39.³ Using the "safe harbor" provisions
11  of these regulations as a "sword" (and not as the shield they are intended to be) (see fn. 1,
12  ante) - - Plaintiffs filed their complaint alleging <u>one</u> or more violations of the provisions

---

14  reside in <u>a particular dwelling</u>; or (C) because of a <u>particular handicap</u> of any person associated
15  with <u>a particular renter</u>.

16  ³ Section 3604(f)(3)(C) defines "discrimination" but not "a discriminatory housing
    practice" to include the "design and construct[ion]" of covered multifamily dwellings in a
17  manner that makes them inaccessible to persons with disabilities. 42 U.S.C. section
    3604(f)(3)(C). Section (f)(3)(C) itself generally states what is required to make "covered
18  units" accessible, by requiring the following elements: "accessible and usable" public areas;
    sufficiently wide doors; and "features of adaptive design" such as an "accessible route into and
19  through the dwelling," placement of certain controls (e.g. light switches) "in accessible
20  locations," reinforcements in walls for grab bars, and "usable kitchens and bathrooms such
    that an individual in a wheelchair can maneuver about the space." 42 U.S.C. section
21  3604(f)(3)(C)(i)-(iii).
22      Thus, section 3604(f)(3)(C) sets out a general statement regarding access and
    adaptability that is unlike, for example, a national building code. In implementing regulations
23  under section 3604(f)(3)(C), Congress <u>did not direct or empower</u> the Department of Housing
    and Urban Development ("HUD") to promulgate <u>binding regulations</u> setting forth mandatory
24  accessible features. Rather, Congress empowered HUD only to issue reports and technical
    guidance concerning accessibility. 42 U.S.C. section 3604(f)(5)(C). Lacking authority to
25  create mandatory design standards, HUD provided several examples of guidance documents
26  and "**safe harbors**" that could be utilized to ensure compliance. These non-mandatory "**safe
    harbors**" generally exceed the minimum requirements of the FHAA and are at times
27  contradictory. See e.g. *Equal Rights Center v. Post Properties, Inc.*, 522 F.Supp.2d 1, 9, fn.
    1 (D.D.C. 2007) ["[T]he guidelines explicitly state that they are not binding, but, rather, are
28  "safe harbors" or advisory guidelines. 56 Fed.Reg. at 9473-9478."]

1  contained in section 3604(f)(c)(3), as implemented by various federal regulations. FAC, ¶¶ 3
2  and 39.
3       Thus, the FAC confirms that plaintiffs voluntarily incurred <u>their resulting injury</u>. Such
4  voluntarily incurred injury will not support a claim. See *Project Sentinel v. Evergreen Ridge*
5  *Apartments*, 40 F.Supp.2d 1136 (N.D. Cal. 1999).

6  **II.  PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES IS HEREBY STRICKEN BECAUSE PUNITIVE DAMAGES ARE NOT RECOVERABLE AS A MATTER OF LAW.**

8       In their prayer, Plaintiffs request a judgment in their favor: "Awarding such punitive
9  damages against Defendants as are proper under law." FAC, p. 40.
10       Under 42 U.S.C. section 3613(c)(1) of the FHAA, a plaintiff may recover "actual . . .
11  damages" and may also recover "punitive damages." (*Ibid*.) Punitive damages are
12  recoverable under the FHAA, where plaintiffs allege and prove that defendants' "malice" or
13  "reckless indifference" actually harmed a disabled person's federally protected rights. (*Kilroy*
14  *v. Husson College*, 959 F.Supp.22, 24 (D. Maine 1997.)
15       In the instant case, the FAC fails to allege that anyone's FHAA rights have been
16  violated. Therefore, Plaintiffs' First Amended Complaint cannot support a claim for punitive
17  damages.

18  **III.  PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF REGARDING ALL APARTMENTS PREVIOUSLY BUILT IS HEREBY STRICKEN BECAUSE PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR SUCH RELIEF.**

20       In their prayer, Plaintiffs request judgment granting an injunction requiring Defendants
21  bring each and every [existing] apartment community [previously built by defendants] into
22  compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable
23  regulations. FAC, p. 39.
24       But, plaintiffs lack standing to seek injunctive relief and they fail to sue parties whose
25  presence in this suit is indispensable to the requested injunctive relief.
26       Standing is not dispensed "in gross." Rather, a plaintiff must demonstrate standing
27  separately for each form of relief sought (injunction, damages, civil penalties, etc.). *Friends of*
28  *the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 184 (2000). Before a

court will order a business to undergo the expense of altering its facilities to make them accessible to a particular plaintiff, courts first require that plaintiff show that plaintiff has standing to seek injunctive relief:

> In order to establish an injury in fact sufficient to confer standing to pursue injunctive relief, the Plaintiff must demonstrate a "real or immediate threat that the plaintiff will be wronged again - - a likelihood of substantial and immediate irreparable injury." [citation omitted] In evaluating whether an ADA plaintiff has established a likelihood of future injury, courts have looked to such factors as: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant.

*Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042, 1045 (C.D. Cal. 2005). Although *Molski's* claims were under the ADA, this same test applies under the FHAA. To have standing to seek injunctive or declaratory relief under the FHAA, plaintiff must actually live at or intend to live at the apartment complex sued on. See, e.g., *Harris v. Itzhak*, 183 F.3d 1043, 1050 (9th Cir. 1999) [Plaintiff's request for declaratory and injunctive relief rendered moot by her departure from the complex].

The same is true for the public areas of the Subject Properties. "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven Inc.*, 506 F.3d 1191, 1197 (9th Cir. 2007) (decided under the ADA). But even then Plaintiffs have standing to seek injunctive relief <u>only for</u> those violations related to Plaintiffs "specific disability." *Id.*, 506 F.3d at 1202.[4]

---

[4] The scope of injunctive relief necessitated by the violation of someone's section 3604 rights cannot be determined without reference to a particular disabled person with a particular disability, who wishes to access a particular apartment. Section 3604(f)(3)(C) says it is "discriminatory" - - but not a "discriminatory housing practice" - - to design and construct common areas that are inaccessible to disabled persons (3604(f)(3)(C)(i)); and to design and construct apartments that are inaccessible to persons in wheelchairs (3604(f)(3)(C)(ii) and (iii)). But actual inaccessibility to a disabled person cannot be determined without reference to a particular disabled plaintiff with a particular disability who needs a particular type of accessibility - - e.g., the blind have different accessibility needs than the deaf, etc.

1    In the instant case, Plaintiffs do not allege that they ever intend to return to the subject
2 properties.  Plaintiffs do not allege that any disabled person has ever visited or intends to visit
3 any of the subject properties.

4    And, Plaintiffs in this case fail the proximity test.  Regarding "proximity," the district
5 court in *Molski v. Mandarin Touch* determined that the plaintiff's residence was over 100 miles
6 from the defendant Mandarin Touch Restaurant in Solvang, California, a fact which weighed
7 heavily against standing to sue for injunctive relief.  385 F.Supp. at p. 1045.  See also,
8 *Gladstone Realtors v. Bellwood*, *supra*, 441 U.S. 91, 112, n 25 [refusing to grant standing to
9 individual plaintiffs that did not live in the community in which the alleged discrimination
10 occurred]; *Conservation Law Found. of New England v. Reilly*, 950 F.2d 38, 43 (1st Cir. 1991)
11 [Denying standing to plaintiff entity seeking nationwide injunctive relief under CERCLA at
12 approximately 1200 facilities, the court stated: "The absence of plaintiffs from the majority of
13 regions of the country in this case demonstrates the lack of 'concrete factual context conducive
14 to a realistic appreciation of the consequences of judicial action"].  *Havens, supra,* 45 U.S. at
15 377 ["It is indeed implausible to argue that [defendants'] alleged acts of discrimination could
16 have palpable effects throughout [an] entire metropolitan area"].

17    The FAC does not allege facts to meet the plaintiffs' "proximity" test.  Rather,
18 plaintiffs' opposition states:  "The Proximity of Plaintiffs' Offices to Defendants' . . .
19 Buildings Is Not Relevant to Any Standing Inquiry."  Opposition, p. 25:19-20.

20    That Plaintiffs' alleged injuries are not redressable is also revealed by the fact that
21 Plaintiffs have not included in this suit parties who are indispensable to effectuate the
22 injunctive relief requested.  Although Plaintiffs' Opposition states they seek mere retrofits, the
23 FAC alleges that plaintiffs seek a general nationwide injunction requiring the Spanos
24 defendants to: "bring each and every . . .apartment community [sued on] into compliance with
25 the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations."  FAC,
26 p.40:11-13.  Thus, as pled, the FAC seeks a nationwide injunction requiring the Spanos
27 defendants to redesign and reconstruct all apartment complexes sued on - - tested, untested,
28 and unknown.

The redesign and reconstruction of apartments (as requested in the FAC) necessarily affects the property interests of owners, renters and secured lenders and the privacy interests of renters. Plaintiffs allege, correctly, that <u>all</u> current owners are "necessary parties in order to effectuate any judgment or order for injunctive relief requested by plaintiffs." FAC, ¶ 30. Rule 19(a)(2)(i), <u>fundamental due process</u>, and 42 U.S.C. section 3613(d) require that current owners, renters, and secured lenders of the properties sued upon be given notice and an opportunity to be heard. The current owners are entitled to present evidence to this Court showing that properties owned by them <u>actually</u> <u>comply</u> with the accessability requirements of the FHAA and that no disabled person has ever been harmed by alleged inaccessibility of the subject properties. Yet, Plaintiffs' Opposition admits that this Court does not have personal jurisdiction over these owners.[5]

---

[5] In an attempt to circumvent this problem, plaintiffs have alleged the existence of a defendant "owner" class and have named Knickerbocker and Highpointe as class representatives. FAC, ¶¶ 32-37. However, this attempt fails. First, the fact that the claims against both class representatives are time-barred renders them "inadequate" under Rule 23. See discussion, below. It also fails to solve the jurisdictional problem: in the absence of an opt-out mechanism, plaintiffs will have to establish personal jurisdiction as to each current owner.   Still, plaintiffs' Opposition argues that there is no need to afford due process to these known and unknown owners. Lack of personal jurisdiction over absent class members triggers due process concerns even in plaintiff class actions, in which, typically, no relief is sought against the absent class members and – in any event – the absent class members can "opt out" if they chose not to participate in the lawsuit. See, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985). "Presumably, a defendant class would not present the same problems [as posed in *Shutts*] because, unlike the situation with a plaintiff class, <u>the forum court must have personal jurisdiction over each member of a defendant class.</u>" *Whitson v. Heilig-Meyers Furniture, Inc.*, 1995 U.S. Dist. LEXIS 4312, *49 (N.D. Ala. 1995), emphasis added; see, also, *National Assn. for Mental Health, Inc. v. Califano*, 717 F.2d 1451, 1455 (D.C. Cir. 1983) [affirming district court's order refusing to certify a defendant class where the named representatives would not "fairly and adequately protect the interests of the class" and where the district court did "not have in personam jurisdiction over the class members"].
    <u>In response to this case law</u>, plaintiffs argue that Rule 23, and two cases interpreting Rule 23, have abrogated the need to afford "due process" to defendant class members. In reality, neither Rule 23 nor any case so holds. In fact, the main case relied on by Plaintiffs, *Califano v. Yamasaki*, 442 U.S. 682 (1979), explains that class relief is not available where Congress by statute has expressly limited such relief. 442 U.S. at 700. 42 U.S.C. section 3613(d) is such a limiting statute. Section 3613(d) mandates that an injunction which "affects" property rights of owners, tenants, or secured lenders "shall not" issue without first affording notice and an opportunity to be heard to these parties. *Ibid*. Similarly, in *Hansberry v. Lee*, 311 U.S. 32 (1940) (the other case relied on by plaintiffs) the Supreme Court found that due process was not afforded where the putative class representative lacked the motivation to vigorously assert the claims and defenses of the subject class members. 311 U.S. at 27-29. Further, any injunction issued by this court which purports to bind persons or entities over which

In addition, the tenants who hold leaseholds in the known 22,000 apartments sued on are also entitled to notice and an opportunity to be heard, as are the tenants of the unknown apartments sued on.  Plaintiffs say this is not so because these tenants can have their doors, bathrooms, and kitchens reconstructed while the tenants are at work or on vacation. However, many of the 22,000 tenants of these known apartments may be happy with their apartments the way they are.  And, many of these 22,000 tenants may not welcome construction workers into their homes - - while they [the tenants] are away at work or on vacation.[6]  In any event, these 22,000 tenants own leaseholds - - granting them property and privacy rights to their apartments - - and due process and 42 U.S.C. section 3613(d)  <u>require</u> they be given notice and an opportunity to be heard before issuance of an injunction which <u>affects</u> those rights.[7]

And an injunction requiring the redesign and reconstruction of individual units leased by renters <u>also</u> adversely affects the property rights of secured lenders. Plaintiffs' Opposition argues that the "cash flow" of the affected rentals <u>may</u> not be significantly impaired. But the FAC does not so allege, and the injunction sought in the FAC seeks the redesign and reconstruction of each known and unknown complex.  As alleged by the FAC, then, the property rights of secured lenders will be affected.

---

this court lacks personal jurisdiction would be unenforceable. An injunction against a defendant class is not enforceable by the issuing court against nonresident defendant class members outside the court's jurisdiction. And, in a local enforcement proceeding, due process would dictate that the absent member be able to raise collaterally unique defenses: e.g., that he did not engage in the unlawful practice; that the plaintiff is guilty of laches or unclean hands or is estopped to assert a claim against the defendant; that he has obtained a release of claims from the plaintiff; that he is not a member of the class; or that the class representation was inadequate. See 2 Newberg on Class Actions § 4:49 at pp. 347-348 (2002). And in a local enforcement proceeding, such a defendant could assert the defense that 42 U.S.C. § 3613(d) mandates that no injunction issue which affects his or her rights absent notice and an opportunity to be heard, and that therefore this court's injunction lacked validity.

[6] Alternatively, plaintiffs suggest that this court could wait until all 22,000 known apartments are vacated.  However, since some tenants live in the same apartments all of their adult lives, this Court would be supervising such an injunction for 30 or more years.

[7] See, *H.J.M. v. K. Hovnanian at Mahwah VI, Inc.*, 672 A.2d 1166, 1172 (N.J. Sup. Ct. 1996); *Equal Rights Center v. Post Properties, Inc.*,  522 F.Supp.2d 1, 5 (D.D.C. 2007); see, also, Fed.R.Civ.P. 19(a)(2)(i); *Schneider v. Whaley*, 417 F.Supp. 750, 757 (S.D. NY 1976) (tenants had a "protected interest at stake" in the housing authority's policy-making and were thus entitled to notice and an opportunity to submit evidence and argument).

1         Finally, in equity and "good conscience" this action should not proceed without the owners, renters and secured lenders. Fed.R.Civ.P., rule 19.  These parties have property and/or privacy rights which may not be impaired without due process of law - - which, <u>at a minimum</u> - - requires notice and an opportunity to be heard.  These due process rights clearly outweigh any concern regarding potential harm to plaintiffs which may result from dismissal of this lawsuit.  Plaintiffs' only alleged harm consists of litigation costs voluntarily incurred by Plaintiffs to identify and test the subject properties and thereafter to bring this lawsuit.  This monetary harm was voluntarily incurred to manufacture a nationwide lawsuit purportedly brought to benefit the disabled.  In reality, dismissal of this lawsuit will not harm disabled persons at all.  If any disabled person ever actually visits any of the properties sued on and finds that a failure in design or construction actually impairs his or her access, then a suit under 3604(f)(1) or (f)(2) can be filed.  The FHAA allows the appropriate federal district court to "appoint an attorney to represent such person" and waive all "fees, costs, [and] security." 42 U.S.C. § 3613(b)(1) and (2).  And, such a disabled person could approach one of the plaintiff fair housing organizations herein and request assistance with his or her suit.

However, such a future suit is not likely because an actual future denial of access is not likely.  Plaintiffs sue nationwide on 82 apartment complexes containing 22,000 units - - and on an unknown number of unknown complexes containing an unknown number of units- - many built more than 15 years ago.  Yet, plaintiffs fail to allege that any disabled person has ever in any way actually had his or her access impaired at any of the known or unknown complexes sued on.

The FAC in fact fails to allege that most types of disabled persons <u>could have</u> their access impaired.  The design and construction defects alleged in the FAC are irrelevant to the blind, the deaf, the mentally infirm, etc. The alleged defects <u>could possibly</u> affect a mobility-impaired person, depending upon the height, size and weight of that particular person and depending upon the degree of that person's impairment.  But, even if such a mobility impaired person's access is denied or impaired in the future, he could file suit in the <u>local</u> district court - - and the owner, tenants, and secured lenders would have minimum contacts with the <u>local</u>

1   district court overseeing the suit, as would the Spanos defendants.

2   In contrast - - although no disabled person has ever been harmed - - Plaintiffs ask this
3   Court to issue and supervise a nationwide injunction requiring the redesign and reconstruction
4   of 22,000 known apartments (and an unknown number of unknown apartments) without notice
5   to the owners, renters and secured lenders.  "Equity and good conscience" require that since
6   these parties cannot be joined, plaintiffs' request for injunctive relief should be stricken.

### IV.  THOSE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT THAT SEEK RELIEF BARRED BY THE STATUTE OF LIMITATIONS ARE STRICKEN.

Plaintiffs filed this action on June 20, 2007.  Hence, any property completed before June 20, 2005, falls outside of the statute of limitations.  The statute of limitations has therefore run as to all but 17 of the 82 identified Subject Properties.  See RJN, Exs. 86-170. The 17 complexes on which the statute of limitations has not run are: (1) The Alexander at the Perimeter, located in Atlanta, Georgia; (2) The Alexander at the District, located in Atlanta, Georgia; (3) Monterra, located in Las Colinas, Texas; (4) Corbin Crossing, located in Overland, Kansas; (5) Tamarron, located in Phoenix, Arizona; (6) Park Crossing, located in Fairfield, California; (7) Stone Canyon, located in Riverside, California; (8) Windsor at Redwood Creek, located in Rohnert Park, California; (9) Ashgrove Place, located in Rancho Cordova, California; (10) Sycamore Terrace, located in Sacramento, California; (11) Arlington at Northwood, located in Wesley Chapel, Florida; (12) Delano at Cypress Creek, located in Wesley Chapel, Florida; (13) The Battery at Chamblee, located in Chamblee, Georgia; (14) The Highlands, located in Chamblee, Georgia; (15) Belterra, located in Fort Worth, Texas; (16) Cheval, located in Houston, Texas; and (17) Auberry at Twin Creeks, located in Allen Texas.  See RJN, Exs. 127, 128, 166, 133, 91, 94, 100, 103, 99, 105, 125, 126, 129, 134a, 161, 166 and 153.

### V.  PLAINTIFFS' CLAIMS FOR RELIEF BASED ON THE UNTESTED AND UNKNOWN PROPERTIES ARE HEREBY STRICKEN BECAUSE PLAINTIFFS COULD NOT HAVE SUFFERED INJURY CAUSED BY TESTING UNTESTED OR UNKNOWN PROPERTIES.

Plaintiffs allege that the Spanos Defendants "have been involved in the design and

1  construction of approximately [82] multifamily complexes in California, Nevada, Arizona,
2  Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida." FAC, ¶ 27.
3  Plaintiffs claim to have identified [34] apartment complexes in California, Arizona, Nevada,
4  Texas, Kansas, Georgia, and Florida (the "Tested Properties"), totaling more than 10,000
5  individual apartment dwelling units, that do not meet the accessibility requirements of the
6  FHAA. FAC, ¶¶ 3, 30. No plaintiff alleges it is located in, does business in, or counsels
7  persons in Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, or North Carolina.

8  Plaintiffs also allege on information and belief that 49 additional apartment complexes
9  in 10 states which the Spanos Defendants designed or constructed (the "Untested Properties")
10 also violate FHAA accessibility requirements. FAC, ¶ 6 and Appendix A to Complaint. The
11 Spanos Defendants are also alleged to have designed or constructed an unspecified number of
12 additional <u>unidentified</u> apartment complexes located in states not yet known to Plaintiffs.
13 FAC, ¶ 28. The Subject Properties allegedly include over 22,000 individual apartments.
14 FAC, ¶ 80.

15 The First Amended Complaint before the Court does not allege that Plaintiffs suffered
16 injury by testing Untested and Unknown Properties. Plaintiffs allege only a *self-inflicted*
17 diversion of resources to test the tested properties and not in response to any complaint about
18 any of the Properties. See FAC at ¶¶ 72-75.

19 In the absence of any allegation that Plaintiffs were forced to divert resources because
20 of Defendants' harm to disabled persons, Plaintiffs have not "suffered <u>an injury in fact - an
21 invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual
22 or imminent, not conjectural or hypothetical</u>" and which was <u>caused</u> by Defendants' alleged
23 conduct. While this is true as to all the Subject Properties, it is most obviously true of the
24 "Untested Properties" which Plaintiffs admit they did not "test" and the Unknown Properties
25 the identities and locations of which Plaintiffs admit are "unknown" to them. FAC, ¶ 28.

26 ## **CONCLUSION**

27 Having read and considered the documents submitted in support of and in opposition to
28 the motion and the arguments of counsel, and good cause appearing therefor, the Court rules as

---

12
AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO STRIKE VARIOUS CLAIMS
FOR RELIEF SOUGHT IN PLAINTIFFS' FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]

1  follows: (1) plaintiffs' request for compensatory damages is stricken because, as a matter of
2  law, the allegations of the First Amended Complaint do not support a recovery of
3  compensatory damages by these plaintiffs; (2) plaintiffs' request for punitive damages is
4  stricken because, as a matter of law, the allegations of the First Amended Complaint do not
5  support a recovery of punitive damages by these plaintiffs; (3) plaintiffs' request for injunctive
6  relief regarding all apartments previously built is stricken because plaintiffs have failed to state
7  a claim upon which such relief can be granted; (4) those portions of plaintiffs' First Amended
8  Complaint that seek relief barred by the statute of limitations are stricken; and (5) plaintiffs'
9  claim for relief based on the "untested" and "unknown" properties is stricken because
10 plaintiffs could not have suffered injury caused by testing untested or unknown properties.  For
11 these reasons,

12  IT IS HEREBY ORDERED that the motion to strike portions of plaintiffs' First
13 Amended Complaint is granted.

15 Dated: _____, 2008

Honorable Saundra Brown Armstrong
United States District Judge