1   MAXWELL M. FREEMAN, #31278
    LEE ROY PIERCE, JR., #119318
2   MICHAEL L. GUREV, #163268
    THOMAS H. KEELING, #114979
3   FREEMAN, D'AIUTO, PIERCE,
      GUREV, KEELING & WOLF
4   A PROFESSIONAL LAW CORPORATION
    1818 Grand Canal Boulevard, Suite 4
5   Stockton, California  95207
    Telephone: (209) 474-1818
6   Facsimile:  (209) 474-1245
    E-mail:       lrpierce@freemanfirm.com
7                 mgurev@freemanfirm.com
                  tkeeling@freemanfirm.com
8
    Attorneys for Defendants A.G. Spanos
9   Construction, Inc.; A.G. Spanos
    Development, Inc.; A.G. Spanos
10  Land Company, Inc.; A.G. Spanos
    Management, Inc., The Spanos Corporation

11              IN THE UNITED STATED DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

| | | |
|---|---|---|
| National Fair Housing Alliance, Inc., et al., | ) | CASE NO.  C07-03255-SBA |
| | ) | |
| Plaintiffs, | ) | **AMENDED [PROPOSED] ORDER** |
| | ) | **GRANTING  DEFENDANTS A.G.** |
| vs. | ) | **SPANOS CONSTRUCTION, INC.;** |
| | ) | **A.G. SPANOS DEVELOPMENT,** |
| A.G. Spanos Construction, Inc., et al. | ) | **INC.; A.G. SPANOS LAND** |
| | ) | **COMPANY, INC.; A.G. SPANOS** |
| Defendants. | ) | **MANAGEMENT, INC., AND THE** |
| _____ | ) | **SPANOS CORPORATION'S MOTION** |
| | | **FOR MORE DEFINITE STATEMENT** |
| | | **RE FIRST AMENDED COMPLAINT** |

[Fed. R. Civ. P. 12(e)]

Hearing Date: March 11, 2008
Time:            1:00 p.m.
Dept.:           Courtroom 3

Complaint Filed: June 20, 2007

24      The motion of Defendants A.G. Spanos Construction, Inc., A.G. Spanos Development,

25  Inc., A.G. Spanos Land Company, Inc., A.G. Spanos Management, Inc., and The Spanos

26  Corporation, appearing through counsel, for an order for more definite statement re the First

27  Amended Complaint under Federal Rules of Civil Procedure, rule 12(e), came on regularly for

28  hearing on March 11, 2008, at 1:00 p.m., in Courtroom 3 in the above-entitled court, located

1   at 1301 Clay Street, 3rd Floor, Oakland, California, the Honorable Saundra Brown Armstrong

2   presiding.  Lee Roy Pierce, Jr. and Thomas H. Keeling appeared on behalf of Defendants, and

3   Michael Allen appeared on behalf of Plaintiffs.

4   **BACKGROUND**

5   **ALLEGATIONS OF THE COMPLAINT**

6   **AND MATTERS SUBJECT TO JUDICIAL NOTICE**

7   **A.    Parties**.

8

9       Plaintiffs are: (1) the National Fair Housing Alliance, a non-profit entity with its

10  principal place of business in Washington, D.C.; (2) Fair Housing of Marin, "a non-profit

11  community organization located in San Rafael, California;" (3) Fair Housing of Napa Valley,

12  "a non-profit community organization located in Napa, California;" (4) Metro Fair Housing

13  Services, "a non-profit community organization located in Atlanta, Georgia;" and (5) The Fair

14  Housing Continuum, a "non-profit organization committed to equal housing opportunity and

15  the elimination of discrimination in Florida."  First Amended Complaint ("FAC") ¶¶ 1, 15-19.

16      Plaintiffs' alleged "missions" include advocating for the rights of people with

17  disabilities to accessible housing, promoting equal housing opportunities, and eliminating

18  housing and lending inequities. FAC, ¶¶ 15-18.

19      Defendants A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G.

20  Spanos Land Company, Inc., A.G. Spanos Management, Inc., and The Spanos Corporation

21  are California corporations with principal offices in Stockton.  FAC, ¶¶ 20-25.

22      Plaintiffs allege that the Spanos Defendants "no longer own most of the "known" and

23  "unknown" apartment complexes for which relief is requested."  FAC ¶ 30.  They also allege

24  the existence of a <u>defendant class</u> consisting of "current owners of non-compliant [apartment]

25  units."  FAC, ¶ 30.  Plaintiffs allege that all current owners are "necessary parties in order to

26  effectuate any judgment or order for injunctive relief requested by Plaintiffs."  FAC, ¶ 30.

27  Plaintiffs sue Knickerbocker Properties, Inc. XXXVIII and Highpointe Village, L.P.

28  "individually and as representatives of [the putative "known" and "unknown" current owner]

1   class." FAC, ¶ 32. Knickerbocker Properties, Inc. XXXVIII is alleged to own two apartment

2   complexes: "Mountain Shadows" and "The Commons." FAC, ¶ 33. Highpointe Village,

3   L.P. is alleged to be the owner of Highpointe Village, in Kansas. FAC, ¶ 34.

4              **B.    Allegations of Non-Compliance with the FHAA.**

5          Plaintiffs are five organizations located in three states. They allege that 82[1] apartment

6   complexes located in 10 states, allegedly designed and constructed by the Spanos Defendants

7   between 1991 and 2007, do not comply with requirements of the Fair Housing Amendments

8   Act ("FHAA"), 42 U.S.C. §§ 3601, et. seq. They make the same claim with respect to an

9   unknown number of unidentified properties located, presumably, throughout the United States

10  in unspecified locations. The Subject Properties allegedly contain over 22,000 apartment

11  units. Plaintiffs seek an injunction commanding defendants to rebuild the Subject Properties to

12  conform to the FHAA.

13         More specifically, Plaintiffs allege that the Spanos Defendants "have been involved in

14  the design and construction of approximately [82] multifamily complexes in California,

15  Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and

16  Florida." FAC, ¶ 27. Plaintiffs claim to have identified 34 apartment complexes in

17  California, Arizona, Nevada, Texas, Kansas, Georgia, and Florida (the "Tested Properties"),

18  totaling more than 10,000 individual apartment dwelling units, that do not meet the

19  accessibility requirements of the FHAA. FAC, ¶¶ 3, 30. No plaintiff alleges it is located in,

20  does business in, or counsels persons in Nevada, Arizona, Colorado, New Mexico, Texas,

21  Kansas, or North Carolina.

22         With respect to the Tested Properties, Plaintiffs allege that since 1991 the Spanos

23  Defendants have "engaged in a continuous pattern and practice of discrimination against people

24  with disabilities" by "designing and/or constructing" apartment complexes that deny full

25  access to and use of the facilities as required under the FHAA. FAC, ¶ 4.

26         Plaintiffs also allege on information and belief that 49 additional apartment complexes

27  _____

28      [1]  The FAC alleges there are 85 complexes sued on. However, Plaintiffs' opposition
    restates the number of complexes sued on as 82. Opposition, p. 1, n. 1.

1    in 10 states which the Spanos Defendants designed or constructed (the "Untested Properties")

2    also violate FHAA accessibility requirements.  FAC, ¶ 6 and Appendix A to Complaint.  The

3    Spanos Defendants are also alleged to have designed or constructed an unspecified number of

4    additional <u>unidentified</u> apartment complexes located in states not yet known to Plaintiffs.

5    FAC, ¶ 28.  The Subject Properties allegedly include over 22,000 individual apartments.

6    FAC, ¶ 80.

7         Plaintiffs claim to have "identified at least one FHAA violation and, in most cases,

8    multiple violations, at each of the Tested Properties."  Based on the alleged frequency and

9    similarity of these violations, Plaintiffs allege "a pervasive pattern and practice of designing

10   and constructing apartment communities in violation of the FHAA accessibility design

11   requirements."  FAC, ¶ 45.  Alleged FHAA violations at the Tested Properties also include

12   failure to design and construct the public and common areas so that they are readily accessible

13   to and usable by people with disabilities. FAC, ¶¶ 45-47.  As for the Untested Properties,

14   Plaintiffs allege only that they were designed and/or constructed after March, 1991.  FAC, ¶

15   6.

16        As alleged in the Complaint, no plaintiff is located in the same city or county where the

17   tested apartments sued on are located.[2]

18        **C.    <u>Alleged "Injury" to Plaintiffs.</u>**

19        Plaintiffs allege injury as follows:

20             72.    As a result of the A.G. Spanos Defendants' actions
               described above, Plaintiffs have been directly and substantially
21             injured in that they have been **frustrated in their missions to
               eradicate discrimination in housing**, and in carrying out the
22             programs and services they provide, including encouraging
               integrated living patterns, educating the public about fair housing
23             rights and requirements, educating and working with industry
               groups on fair housing compliance, providing counseling services
24             to individuals and families looking for housing or affected by
               discriminatory housing practices and eliminating discriminatory

25

26        [2]  Rohnert Park is in Sonoma County, but it is 35 miles from Napa, where Fair Housing
     of Napa Valley is located.  See RJN, Ex. 172.  Wesley Chapel in Pasco County, Florida, is
27   132 miles from Cocoa, Florida, in Brevard County.  RJN, Ex. 173. The Spanos defendants
     filed a lengthy Request For Judicial Notice in support of their Motion to Dismiss Plaintiffs'
28   First Amended Complaint and Accompanying Motions.  Plaintiffs do not oppose this request.

housing practices.

73.    As outlined above, each Plaintiff has invested considerable time and effort in **educating its respective communities**[3] about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and construction of covered multifamily dwellings.  Each time the A.G. Spanos Defendants designed and constructed covered dwellings that did not comply with the FHA **in one of Plaintiffs' service areas, the A.G. Spanos Defendants frustrated the mission of that Plaintiff,**[4] inasmuch as it served to discourage people with disabilities from living at that dwelling,[5] **and encouraged other entities** involved in the design and construction of covered units to disregard their own responsibilities under the FHA.

74.    The A.G. Spanos Defendants' continuing discriminatory practices **have forced Plaintiffs to divert significant and scarce resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices**, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing each to suffer concrete and demonstrable injuries.

75.    Each Plaintiff conducted site visits, investigations, **surveys and/or tests at the Tested Properties, resulting in the diversion of its resources in terms of staff time and salaries and travel and incidental expenses that it would not have had to expend were it not for the A.G. Spanos Defendants' violations.**  FHOM, FHNV, MFHS and FHC each diverted staff time and resources to meet with NFHA staff, receive detailed training concerning the accessibility requirements of the FHA and provide logistical support for NFHA staff.  In addition to such support:

a.  Plaintiff FHOM conducted **site visits and investigations** at Mountain Shadows and Windsor at Redwood Creek, two properties within its service area.
b.  Plaintiff FHNV conducted **a site visit and investigation** at Hawthorn Village, **a property within its service area**.
c.  Plaintiff MFHS conducted a site visit and investigation at Battery at Chamblee, a property within its service area.

---

[3]  Plaintiffs allege that they are located in Washington, D.C., California,  Georgia and Florida.  In referring to their "respective communities," plaintiffs cannot be referring to citizens of Nevada, Arizona, Colorado, New Mexico, and Kansas, where many of the apartments sued upon are located.

[4]  None of the apartments sued upon is located in any of plaintiffs' "respective communities" or in any of Plaintiffs' "service areas."  RJN, Exs. 171, 172 and 173.

[5]  Plaintiffs' Complaint fails to identify any disabled person who was so discouraged.

d.  Plaintiff FHC conducted tests at Delano and Arlington at Northwood, two properties **within its service area**.

FAC, ¶¶ 72-75.

**D.     Relief Sought by Plaintiffs.**

Plaintiffs request declaratory and injunctive relief.  Among other things, the requested injunctive relief would require the Spanos Defendants to survey all the apartment complexes they constructed throughout the United States since March 13, 1991 and to bring each and every allegedly non-FHAA compliant complex into compliance.  FAC, pp. 39-40.  Plaintiffs request attorneys' fees and costs, compensatory damages, and punitive damages.  FAC, pp. 40-41.

Plaintiffs also seek an order "[e]njoining the Owner Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the A.G. Spanos Defendants."  FAC, p. 40.

**E.     Further Description of the Complaint.**

The Complaint does not allege that any of the Plaintiffs, any of their members, or any disabled persons ever attempted to rent an apartment at any of the Subject Properties or that any of the Plaintiffs or their members or any disabled person ever intends to do so.

Plaintiffs do not allege that any member of a protected class under the FHAA has encountered discriminatory conduct at any of the Subject Properties.  Nor do Plaintiffs claim they are suing on behalf of any member of a protected class.

Plaintiffs do not allege that they have counseled, spoken to, or otherwise expended any resources in communicating with any member of a protected class who claims to have encountered non-FHAA compliant features in any of the Subject Properties.

Plaintiffs do not allege that any of their "testers" was handicapped.  None of the alleged "testers" is named as a plaintiff or identified in the Complaint.

Plaintiffs do not allege facts purporting to show how community organizations with

1    local "service areas" in California, Florida, Georgia, or Washington D.C. were injured by

2    allegedly non-compliant apartment complexes located in New Mexico, Nevada, Arizona,

3    Colorado, Texas, Kansas, and North Carolina.

4        Plaintiffs do not allege that the putative class defendants have violated the FHAA.

5    Plaintiffs do not allege that the putative class defendants caused any injury to Plaintiffs.

6    Plaintiffs do not join as parties any of the tenants who hold leases on the alleged 22,000 units

7    Plaintiffs seek to have rebuilt. Plaintiffs do not join as parties any of the lenders who hold

8    security interests in any of the apartment complexes sued on.

9        **F.**    <u>**Matter Subject to Judicial Notice.**</u>

10        As a matter of public record subject to judicial notice, not one of the 82 Subject

11    Properties is owned by defendants A.G. Spanos Development, Inc., A.G. Land Company, Inc.

12    or A.G. Spanos Management, Inc.  RJN, Exs. 1-85.  Only one of the Untested

13    Properties—<u>located in Kansas</u>—is owned by defendant A.G. Spanos Construction, Inc. RJN,

14    Ex. 48.  Only one of the Untested Properties and two of the Tested Properties are owned by

15    defendant The Spanos Corporation.  RJN Exs. 14, 20 and 44.  The remaining 51 Untested

16    Properties, and 30 of the Tested Properties, are owned by entities other than the Spanos

17    Defendants.  RJN, Exs. 1-85.

18        All but seventeen of the 82 identified properties sued on were built (and certificates of

19    occupancy issued) more than two years before the Complaint was filed.  See RJN, Exs. 127,

20    128, 166, 133, 91, 94, 100, 103, 99, 105, 125, 126, 129, 134a, 161, 166 and 153.  The

21    seventeen exceptions are:  (1) The Alexander at the Perimeter, located in Atlanta, Georgia; (2)

22    The Alexander at the District, located in Atlanta, Georgia; (3) Monterra, located in Las

23    Colinas, Texas; (4) Corbin Crossing, located in Overland, Kansas; (5) Tamarron, located in

24    Phoenix, Arizona; (6) Park Crossing, located in Fairfield, California; (7) Stone Canyon,

25    located in Riverside, California; (8) Windsor at Redwood Creek, located in Rohnert Park,

26    California; (9) Ashgrove Place, located in Rancho Cordova, California; (10) Sycamore

27    Terrace, located in Sacramento, California; (11) Arlington at Northwood, located in Wesley

28    Chapel, Florida; (12) Delano at Cypress Creek, located in Wesley Chapel, Florida; (13) The

1  Battery at Chamblee, located in Chamblee, Georgia; (14) The Highlands, located in Chamblee,

2  Georgia; (15) Belterra, located in Fort Worth, Texas; (16) Cheval, located in Houston, Texas;

3  and (17) Auberry at Twin Creeks, located in Allen Texas.  See RJN, Exs. 127, 128, 166, 133,

4  91, 94, 100, 103, 99, 105, 125, 126, 129, 134a, 161, 166 and 153.

5        The last certificate of occupancy for Mountain Shadows was issued on September 5,

6  2002, and for "The Commons" on July 18, 2002, more than two years before Plaintiffs filed

7  this complaint.  See RJN, ¶¶ 102, 110.  The last certificate of occupancy was issued on

8  Highpointe Village on December 8, 2003, more than two years before Plaintiffs filed this

9  complaint.  See RJN, ¶ 134.

10                            **LEGAL STANDARD**

11        Federal Rule of Civil Procedure 12(e) provides:  "If a pleading to which a responsive

12  pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to

13  frame a responsive pleading, the party may move for a more definite statement before

14  interposing a responsive pleading."  "[I]f [a] complaint does not sufficiently answer question[s]

15  of standing . . . [a] defendant may move for a more definite statement of fact."  *Fair Housing*

16  *in Huntington Committee Inc. v. Town of Huntington,* 316 F.3d 357, 362 (2d Cir. 2003) citing

17  *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 383, 102 S. Ct. 1114 (1982) (Powell, J.,

18  concurring).

19                               **ANALYSIS**

20  **I.     THE COMPLAINT IS UNCERTAIN RE THE NUMBER OF COMPLEXES**
        **SUED ON.**

21

22        The FAC is uncertain in alleging whether plaintiffs sue on 81, 82 or 85 apartment
    complexes.

23
    Paragraph 80 of plaintiffs' first amended complaint states:

24
              The Subject Properties include 81 apartment complexes, which,
25            on information and belief, contain more than 22,000 individual
              dwelling units.

26
    (FAC, p. 37, ¶ 80.)

27
        Plaintiffs' Appendix A to the first amended complaint identifies each of the apartment
28

---

complexes by number.  Plaintiffs' Appendix A is unclear and has the following discrepancies:

Duplicate numbers:

38.    Park del Mar
38.    Portofino

(FAC, App. A, p. 3.)

Duplicate and numbers out of sequence:

53.    Villa Serna
**55.    Big Horn/Horizon Bluffs**
56.    Timberlake Apartments
**55.    Alexanders Gardens**

(FAC, App. A, p. 4.)

Duplicate and numbers out of sequence :

**81.    The Fairway at Southshore**
80.    Crescent Cove
**81.    Sheridan Park**
82.    Constellation Ranch

(FAC, App. A, p. 5.)

There appear to be a total of 85 properties named in Appendix A, but Appendix A lists number 82 as the last number in the sequence (FAC, App. A, p. 5.) And the first amended complaint states there are "81" apartment complexes (FAC, ¶ 80.)

Plaintiffs seek to amend the FAC <u>by argument in their Opposition</u> <u>and not</u> by <u>actually</u> amending the FAC. Says their Opposition:

> Plaintiffs have . . . acknowledged their error in listing Constellation Ranch in Fort Worth, Texas and Orion at Roswell in Roswell, Georgia, and in mis-numbering the apartment complexes in the appendix to the FAC.  Removing these from the purview of the FAC, however, still leaves 82 properties that are unquestionably pled into this case.

Opposition, p. 47:5-9.

But <u>argument</u> does not constitute <u>an</u> <u>amendment</u> of the FAC.  Are the Spanos defendants required to answer the FAC and deny the FAC's claims that Constellation Ranch in Texas and Orion in Georgia were improperly designed and constructed?  Who are the owners,

1    tenants and lenders regarding these complexes?  Are the owners of the complexes members of

2    the putative defendant class?

3    **II.    THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT ARE "VAGUE AND**
         **AMBIGUOUS" REGARDING PLAINTIFFS' STANDING TO SUE FOR**
4        **DAMAGES OR INJUNCTIVE RELIEF UNDER THE FHAA BECAUSE**
         **PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO ESTABLISH THE**
5        **"IRREDUCIBLE CONSTITUTIONAL MINIMUM" FOR STANDING UNDER**
         **ARTICLE III OF THE U.S. CONSTITUTION.**

6

7        To show standing under Article III:  "[a] plaintiff must allege personal <u>injury</u> fairly

8    <u>traceable</u> to the defendant's <u>allegedly unlawful conduct</u> and <u>likely to be redressed</u> by the

9    requested relief."  *Allen v. Wright,* 468 U.S. 737, 751 (1984), emphasis added.

10       These standing provisions are codified in the FHAA: "[A]ny person who . . . claims to

11   have been <u>injured</u> by a <u>discriminatory housing practice</u> . . . may commence a civil action . . .

12   <u>to obtain appropriate relief</u> with respect to such discriminatory housing practice . . . ."  42

13   U.S.C. § 3613(a)(1)(A), emphasis added.

14       **A.    <u>Plaintiffs Have No Standing Because They Have Not Alleged That Anyone's</u>**
              **<u>FHAA Rights Have Been Violated.</u>**
15

16       The FHAA defines a "discriminatory housing practice" to be an "act that is unlawful

17   under section 3604 . . . ."  42 U.S.C. § 3602(f).  Stated differently, the standing requirement

     of "unlawful conduct" is defined in the FHAA to be a "discriminatory housing practice."
18

19       Applying the FHAA's definition of "unlawful conduct" to Article III standing reveals

20   that any person, including a fair housing organization, has standing to sue under the FHAA,

21   where it can allege and prove that it "sustain[ed] an actual injury from an alleged

22   discriminatory housing practice . . . ."  *San Pedro Hotel Co., Inc. v. City of Los Angeles,* 159

23   F.3d 470, 475 (9th Cir. 1998).  As stated by other courts: "As long as the plaintiff suffers

24   actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of

25   another were infringed.  The central issue at this stage of the proceedings [at the pleading

26   stage] is not who possesses the legal rights protected by [the FHA], but whether respondents

27   were genuinely injured by **conduct that violates *someone's* [FHA] rights** . . . ."  *Oak Ridge*

28   *Care Center, Inc. v. Racine County,* 896 F.Supp. 867, 873 (E. Dist. Wisconsin 1995) [quoting

1   *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 103 n. 9 (1979), emphasis added].

2   Or, as stated elsewhere: "The inquiry focuses, not upon whose § 3604 rights were violated,

3   but rather upon whether the Plaintiffs were genuinely injured by conduct that violated

4   **somebody's 3604 rights**; if they were so injured, the Plaintiffs have standing to bring suit

5   under § 3612. [citations]" *Nur v. Blake Development, Corp.*, 655 F.Supp. 158, 163 (N.D.Ind.

6   1987), emphasis added.

7        The FAC alleges that the Spanos defendants violated section 3604 by failure to design

8   and construct accessible apartments in accord with the provisions contained in section

9   3604(f)(3)(C) and its applicable regulations. FAC, ¶ 39. But failure to design and construct

10  apartments in accord with the provisions of 3604(f)(3)(C) is not, without more, a

11  "discriminatory housing practice." Section 3602(f) defines a "discriminatory housing

12  practice," in relevant part, as "an act that is *unlawful* under section 3604 . . ." (emphasis

13  added). Section 3604, in turn, states that "it shall be unlawful," among other things, "[t]o

14  discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any

15  buyer or renter because of a handicap of . . . that buyer or renter," § 3604(f)(1), and "[t]o

16  discriminate against any person in the terms, conditions, or privileges of sale or rental of a

17  dwelling, or in the provision of services or facilities in connection with such dwelling, because

18  of a handicap of . . . that buyer or renter," section 3604(f)(2). Section 3604 *separately* states

19  that "[f]or purposes of this subsection, discrimination includes - - . . . a failure to design and

20  construct [covered family] dwellings" in accordance with various requirements concerning

21  accessibility to and use by disabled persons. Section 3604(f)(3)(C). Section 3604(f)(3)(C)

22  defines what "discrimination" is, but it does not define what a "discriminatory housing

23  practice" is.

24       **As defined in sections 3602(f) and 3604(f)(1) and (f)(2), a "discriminatory housing**

25  **practice" - - i.e., an "unlawful act" - - is committed when a would-be buyer or renter**

26  **attempts to buy or rent a FHAA-noncompliant unit. At that point — but not before — it**

27  **can be said that a landlord has "discriminate[d] in the sale or rental, or [has] otherwise**

28  **ma[d]e unavailable or den[ied] a dwelling to [the individual] because of a handicap . . . of**

1    **that buyer or renter**."    42 U.S.C. §§ 3604(f)(1) and (f)(2).  Until then, the disabled person

2    has not been subjected to a "discriminatory housing practice."

3       The activities specified by sections 3604(f)(1) and (f)(2) — all of which involve taking

4    action against a disabled person "because of" that person's particular "handicap" — are

5    "unlawful" "discriminatory housing practices."  In contrast, section 3604(f)(3)(C) is a specific

6    example of the discrimination that in fact becomes actionable under sections 3604(f)(1) and

7    (f)(2) — when that discrimination takes place "in the sale or rental . . . to any buyer or

8    renter," section 3604(f)(1), or "against any person in the terms, conditions, or privileges of

9    sale or rental . . . or in the provision of services or facilities," section 3604(f)(2).  Section

10   3604(f)(3)(C) is a definitional provision, stating that "discrimination includes . . . the [faulty]

11   design and construction of covered multifamily dwellings," and is not a provision that actually

12   sets forth a cause of action.

13      To have standing, Plaintiffs must allege actual injury caused by a violation of

14   someone's FHAA rights.  Here, the "unlawful act" is the commission of a "discriminatory

15   housing practice."  A violation of section 3604 therefore requires that a landlord carry out the

16   actions prohibited by sections 3604(f)(1) and 3604(f)(2).  The mere failure to design and

17   construct in accord with the provisions of section 3604(f)(3)(C) does not constitute such a

18   practice.

19      Plaintiffs have no standing, because they do not allege that anyone's FHAA rights have

20   been violated.  The FAC alleges that Plaintiffs' staff - - nondisabled testers - - had unfettered

21   access to the complexes tested.  FAC, ¶ 3.  And the FAC fails to allege that any disabled

22   person has ever visited or attempted to visit any of the "tested," "untested" or "unknown"

23   complexes sued on.  Since no disabled person is alleged to have ever visited or attempted to

24   visit any of the complexes sued on, it follows that no disabled person has ever had his or her

25   section 3604 rights violated.  Before a plaintiff can sue to redress a "discriminatory housing

26   practice" a "discriminatory housing practice" must have been committed.

27      Plaintiffs' opposition argues that "[t]he Spanos Defendants may not have said no

28   directly to any individual tenant, but they have rendered thousands of units unavailable to

1   people with disabilities." Opposition, p. 46:21-22, emphasis added. But, a violation of (f)(1)

2   or (f)(2) requires, at a minimum, an allegation that, but for the inaccessible features, "the

3   excluded person [a particular disabled person with a particular disability] would otherwise go

4   into the building [and attempt to rent an apartment]." *Independent Housing Services of San*

5   *Francisco v. Fillmore Center Associates*, 840 F.Supp. 1328, 1335 (N.D. Cal. 1993); and see

6   sections 3604 (f)(1) and (f)(2). Under (f)(1) or (f)(2), this is a particularized inquiry based

7   upon a particular disability. The FAC does not allege that the subject apartment complexes are

8   inaccessible to the "blind" or the "deaf" or the "mentally infirm" or to any disabled persons

9   except, <u>perhaps</u>, some, <u>but</u> <u>not</u> <u>all</u>, persons in wheelchairs. Thus, the "alleged inaccessibility"

10  of the subject complexes does not ". . . affect all disabled individuals." *Fillmore Center,*

11  *supra*, 840 F.Supp at 1335. And, a violation of (f)(1) or (f)(2) requires that the defendants say

12  "no" to a particular disabled person, with a particular disability, who wishes to rent a

13  particular apartment. See 3604(f)(1) and (f)(2), <u>and see</u> *Fillmore Center, supra,* 840 F.Supp.

14  at 1335 [To state an "unlawful act" [i]t is . . . sufficient to allege that . . . [but for the

15  inaccessible features] the excluded person would otherwise go into the building"]; see also

16  *Walker v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, 594 (10th Cir. 1996)

17  [discrimination cannot be the cause of injury to a plaintiff who would not have sought to obtain

18  the benefit even in the absence of the discrimination]; *Allen v. Wright, supra,* 468 U.S. at 755

19  [Only those persons personally denied rights by the challenged unlawful discrimination have

20  standing to sue].

21      <u>*Havens*</u> , <u>*Smith*</u> and <u>*Fair Housing of Marin*</u> are not to the contrary. In each of these

22  cases, it was alleged that someone's section 3604 rights had been violated.

23      In *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), the Supreme Court first

24  stated the standing rule applicable to fair housing organizations: "[As] long as the plaintiff [fair

25  housing organization] suffers actual injury as a result of the defendant's conduct, he is

26  permitted to prove that the rights of another were infringed." *Id.*, 455 U.S. at 376, n.16.

27  Applying this rule, the court determined that the FHA rights of black testers (employed by the

28  housing organization) had been violated, when the defendant *Havens Realty* lied to black

1  testers and told them apartments were unavailable.  These black testers' FHA "statutory right

2  to truthful housing information ha[d] been violated" by Haven Realty's lies.  *Id.*, 455 U.S. at

3  375.  In contrast, the court also held that a white tester - - (also employed by the fair housing

4  organization) - - had not had his "statutory right to truthful housing information violated"

5  because he was told by the defendant *Havens Realty* that apartments were available.  Thus,

6  said the court: "he [the white tester] ha[d] not pleaded a cause of action."  *Id.*, 455 U.S. at

7  374-375.

8      Finally, the court concluded "[i]f as broadly alleged, [defendants'] [unlawful] steering

9  practices [against black testers] have perceptibly impaired [the fair housing organization's]

10 ability to provide counseling and referral services . . . [then] the organization ha[d] suffered an

11 injury in fact"  (*Id.*, 455 U.S. at 379) caused by the violation of the black tester's "statutory

12 right to truthful housing information."  *Id.*, 455 U.S. at 375.

13     In *Smith v. Pacific Properties*, 358 F.3d 1097 (9th Cir. 2004), the Ninth Circuit applied

14 *Havens* and observed that the complaint filed by DRAC (a fair housing organization) "pled

15 with particularity two causes of action for violations of the FHAA [rights of disabled testers]."

16 *Id.*, 358 F.3d at 1105.  Next, the court reasoned that given leave to amend, DRAC probably

17 could allege facts sufficient to show that its mission was frustrated, *id.*, 358 F.3d at 1104-

18 1106, by the violation of the 3604(f)(2) rights of the disabled testers employed by DRAC.  *Id.*,

19 358 F.3d at 1103-1104.

20     In *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002), defendant Jack

21 Combs was alleged to have violated 42 U.S.C. section 3604 and various civil rights laws, *inter*

22 *alia*, by refusing to rent to black testers and black prospective renters.  *Id.*, 285 F.3d at 902.

23 Thus, the complaint specifically alleged that someone's section 3604 rights had been violated.

24 Following discovery abuse by Combs, the district court entered default judgment against

25 Combs.  *Id.*, 285 F.3d at 902.  On appeal, Combs argued that plaintiff Fair Housing of Marin

26 lacked standing.  *Id.*, 289 F.3d at 902.  On appeal, the Ninth Circuit first expressed doubt that

27 "litigation expenses alone" could suffice to establish standing, but held that **in responding to**

28 **citizen's complaints against Combs**, Fair Housing of Marin had necessarily suffered

economic losses to respond to these complaints, all <u>caused</u> by a violation of the section 3604

rights of black testers and prospective black renters. *Id.,* 285 F.3d at 905.

In *Havens, Smith* and *Fair Housing of Marin*, housing organizations were thus held to

have standing to sue - - flowing from injuries the organizations incurred - - <u>caused by the</u>

<u>violations of someone's section 3604 rights</u>.  Plaintiffs in this suit have not alleged that

anyone's section 3604 rights have been violated regarding the <u>tested</u>, <u>untested</u>, or <u>unknown</u>

properties sued on, because they do not allege that anyone holding section 3604 rights has ever

been interested in accessing the apartments sued on, or has had their access <u>actually</u> impaired.

**B.**      **Plaintiffs Have No Standing, Because Their Alleged Injuries Were Not**
            **Caused by Defendants' Violation of The FHAA**

        1.      <u>Plaintiffs' Alleged Injuries Could Not Have Been Caused by a Violation</u>
                     <u>of the FHAA, Because No Violation of the FHAA is Alleged.</u>

As explained above, the FAC has not alleged a violation of the FHAA, and, therefore,

Plaintiffs have not alleged that their injuries were <u>caused by a violation of the FHAA</u>.

        2.      <u>Plaintiffs' Alleged Damages Are Alleged to Have Been Voluntarily</u>
                     <u>Incurred</u>.

In opposing this motion, Plaintiffs state:

> [T]he Plaintiff organizations <u>discovered</u> the <u>inaccessible</u> buildings
> through the course of <u>their</u> <u>own</u> <u>advocacy and not</u> from a
> complaint . . . .

> \* \* \* \*

> Plaintiffs spent significant time and resources to identify . . .
> Defendants' discrimination . . . .  Plaintiffs need not demonstrate
> that they were literally "forced" to spend time and resources. . . .

Opposition, p.24:16-17 and p. 25:1-5, emphasis added.

The allegations of the FAC confirm Plaintiffs' admissions that Plaintiffs voluntarily

"discovered the [alleged] inaccessible buildings" by voluntarily "spending time and resources

to identify . . . Defendants' [alleged] discrimination."  See, e.g., FAC, ¶¶ 3, 20 and 29.

As the FAC alleges, Plaintiffs voluntarily had their staff search the internet to identify

national builders of apartment complexes (who had not yet been sued for alleged FHAA

violations). See FAC, ¶¶ 3, 20 and 29.  Next, Plaintiffs' staff identified some properties the

1    identified national builder had built.  FAC, ¶¶ 3, 20 and 29.  Next, Plaintiffs sent staff - -

2    nondisabled testers - - to 34 of the identified complexes to find violations of the provisions

3    found in section 3604(f)(a)(3) as implemented by the applicable federal regulations.  FAC, ¶¶

4    3, 29 and 39.[6]  Using the "safe harbor" provisions of these regulations as a "sword" (and not

5    as the shield they are intended to be) (see fn. 1, ante) - - Plaintiffs filed their complaint alleging

6    one or more violations of the provisions contained in section 3604(f)(c)(3), as implemented by

7    various federal regulations.  FAC, ¶¶ 3 and 39.

8        Thus, the FAC confirms that Plaintiffs voluntarily manufactured this lawsuit and their

9    resulting injury.  *Smith* and *Marin Fair Housing* confirm that such manufactured injury cannot

10   support standing.  *Smith and Marin* both express doubt that such voluntarily incurred

11   "expenses of litigation" alone will support standing.  *Smith*, 358 F.3d at 1105; *Fair Housing of*

12   *Marin*, 285 F.3d at 905.  Rather, as *Fair Housing of Marin* explains, "Fair Housing of Marin

13   responded to citizen complaints against Combs, and alleged injury beyond litigation expenses."

14   *Id.*, 285 F.3d at 905.

---

16   ⁶ Section 3604(f)(3)(C) defines "discrimination" but not "a discriminatory housing
     practice" to include the "design and construct[ion]" of covered multifamily dwellings in a
17   manner that makes them inaccessible to persons with disabilities.  42 U.S.C. section
     3604(f)(3)(C).  Section (f)(3)(C) itself generally states what is required to make "covered
18   units" accessible, by requiring the following elements: "accessible and usable" public areas;
     sufficiently wide doors; and "features of adaptive design" such as an "accessible route into and
19   through the dwelling," placement of certain controls (e.g. light switches) "in accessible
     locations," reinforcements in walls for grab bars, and "usable kitchens and bathrooms such
20   that an individual in a wheelchair can maneuver about the space."  42 U.S.C. section
     3604(f)(3)(C)(i)-(iii).
21
     Thus, section 3604(f)(3)(C) sets out a general statement regarding access and
22   adaptability that is unlike, for example, a national building code.  In implementing regulations
     under section 3604(f)(3)(C), Congress did not direct or empower the Department of Housing
23   and Urban Development ("HUD") to promulgate binding regulations setting forth mandatory
     accessible features.  Rather, Congress empowered HUD only to issue reports and technical
24   guidance concerning accessibility.  42 U.S.C. section 3604(f)(5)(C).  Lacking authority to
     create mandatory design standards, HUD provided several examples of guidance documents
25   and "**safe harbors**" that could be utilized to ensure compliance.  These non-mandatory "**safe
     harbors**" generally exceed the minimum requirements of the FHAA and are at times
26   contradictory.  See e.g. *Equal Rights Center v. Post Properties, Inc.*, 522 F.Supp.2d 1, 9, fn.
     1 (D.D.C. 2007) ["[T]he guidelines explicitly state that they are not binding, but, rather, are
27   "safe harbors" or advisory guidelines.  56 Fed.Reg. at 9473-9478."]
28

1    The decisions of this court are in accord.  In *Project Sentinel v. Evergreen Ridge*

2    *Apartments*, 40 F.Supp.2d 1136 (N.D. Cal. 1999), the plaintiff non-profit corporation sued

3    defendant apartment complex owners for maintaining a discriminatory policy toward families

4    with children and failing to provide handicap access to rental offices.  The plaintiff alleged that

5    defendants' discriminatory treatment of families, *inter alia*, "frustrated [its] mission requiring

6    it to expend scarce resources to investigate and document said practices, and will require

7    further expenditures of staff time to monitor and perform compliance and investigations."  *Id.*

8    at 1138.  This court held that these allegations failed to establish an injury-in-fact required for

9    Article III standing.  *Id.*

10    This court explained that, "to establish standing to sue, a plaintiff must allege that he

11    has, as a result of defendants' actions, suffered a *distinct and palpable* injury."  *Id.* (citing

12    *Havens*, 455 U.S. at 379, emphasis added.)  "In other words, an organization establishes an

13    Article III injury if it alleges that <u>unlawful action has increased the resources the group must</u>

14    <u>devote to programs independent of its suit challenging the unlawful action</u>."  *Id.*, emphasis

15    added.

16    This court further explained that "*Havens* did not base its holding in favor of standing

17    merely on the diversion of resources to litigation, but rather on the <u>alleged injury that the</u>

18    <u>defendants' actions themselves inflicted upon the plaintiff's referral and counseling programs</u>."

19    *Id.* at 1140 (citing *Havens*, 455 U.S. at 379), emphasis added.  This court then held that the

20    plaintiff failed to establish organizational standing:

21                The plaintiff in the present case, by contrast, does not allege that
              defendants' conduct directly obstructed the educational,
22              counseling or mediation services; rather, the sole injuries alleged
              are to plaintiff's abstract goals and the cost of initiating this suit.
23              This suit is not alleged to have been made necessary by any
              detrimental impact of defendants' actions on plaintiff's
24              operations.  In other words, plaintiff does not allege injury to
              itself independent to its decision to divert resources away from
25              the pursuit of its abstract goals to support this suit.

26    *Id.,* at 1140-1141.

27    The FAC in the instant case suffers from the same defect as the complaint in *Project*

28    *Sentinel*.  Plaintiffs do not allege that defendants' conduct directly obstructed any of their

services; rather the sole injuries alleged are to Plaintiffs' abstract goals and the cost associated

with this lawsuit.

**C.**   **Plaintiffs Have No Standing Because They  Do Not Allege Redressability:**
         **They Fail to Allege Standing to Seek Injunctive Relief and They Fail to Sue**
         **Indispensable Parties.**

Plaintiffs allege that the existence of inaccessible housing anywhere in the United States

injures Plaintiffs by frustrating Plaintiffs' mission of providing accessible housing to all

disabled persons.  Opposition, p. 24:9-12, FAC, ¶ 72.  But this alleged injury may not be

redressed in this case, inter alia,  because Plaintiffs lack standing to seek injunctive relief.

Standing is not dispensed "in gross."  Rather, a plaintiff must demonstrate standing

separately for each form of relief sought (injunction, damages, civil penalties, etc.).  *Friends of*

*the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 184 (2000).  Before a

court will order a business to undergo the expense of altering its facilities to make them

accessible to a particular plaintiff, courts first require that plaintiff show that plaintiff has

standing to seek injunctive relief:

> In order to establish an injury in fact sufficient to confer standing
> to pursue injunctive relief, the Plaintiff must demonstrate a "real
> or immediate threat that the plaintiff will be wronged again - - a
> likelihood of substantial and immediate irreparable injury."
> [citation omitted] In evaluating whether an ADA plaintiff has
> established a likelihood of future injury, courts have looked to
> such factors as: (1) the proximity of the place of public
> accommodation to plaintiff's residence, (2) plaintiff's past
> patronage of defendant's business, (3) the definitiveness of
> plaintiff's plans to return, and (4) the plaintiff's frequency of
> travel near defendant.

*Molski v. Mandarin Touch Restaurant*, 385 F.Supp.2d 1042, 1045 (C.D. Cal. 2005).

Although *Molski's* claims were under the ADA, this same test applies under the FHAA.  To

have standing to seek injunctive or declaratory relief under the FHAA, plaintiff must actually

live at or intend to live at the apartment complex sued on.  See, e.g., *Harris v. Itzhak*, 183

F.3d 1043, 1050 (9th Cir. 1999) [Plaintiff's request for declaratory and injunctive relief

rendered moot by her departure from the complex].

The same is true for the public areas of the Subject Properties.  "Allegations that a

plaintiff has visited a public accommodation on a prior occasion and is currently deterred from

1  visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual

2  or imminent." *Doran v. 7-Eleven Inc.*, 506 F.3d 1191, 1197 (9th Cir. 2007) (decided under

3  the ADA).  But even then Plaintiffs have standing to seek injunctive relief <u>only for</u> those

4  violations related to Plaintiffs "specific disability." *Id.*, 506 F.3d at 1202.[7]

5       In the instant case, Plaintiffs do not allege that they ever intend to return to the subject

6  properties.  Plaintiffs do not allege that any disabled person has ever visited or intends to visit

7  any of the subject properties.

8       And, Plaintiffs in this case fail the proximity test.  Regarding "proximity," the district

9  court in *Molski v. Mandarin Touch* determined that the plaintiff's residence was over 100 miles

10 from the defendant Mandarin Touch Restaurant in Solvang, California, a fact which weighed

11 heavily against standing to sue for injunctive relief.  385 F.Supp. at p. 1045.  See also,

12 *Gladstone Realtors v. Bellwood*, *supra*, 441 U.S. 91, 112, n 25 [refusing to grant standing to

13 individual plaintiffs that did not live in the community in which the alleged discrimination

14 occurred]; *Conservation Law Found. of New England v. Reilly*, 950 F.2d 38, 43 (1st Cir. 1991)

15 [Denying standing to plaintiff entity seeking nationwide injunctive relief under CERCLA at

16 approximately 1200 facilities, the court stated: "The absence of plaintiffs from the majority of

17 regions of the country in this case demonstrates the lack of 'concrete factual context conducive

18 to a realistic appreciation of the consequences of judicial action"].  *Havens, supra,* 45 U.S. at

19 377 ["It is indeed implausible to argue that [defendants'] alleged acts of discrimination could

20 have palpable effects throughout [an] <u>entire</u> metropolitan area"].

21      The FAC does not allege facts to meet the plaintiffs' "proximity" test.  Rather,

22

23

24 ───────────────

     [7]  The scope of injunctive relief necessitated by the violation of someone's section 3604
25 rights cannot be determined without reference to a particular disabled person with a particular
   disability, who wishes to access a particular apartment. Section 3604(f)(3)(C) says it is
26 "discriminatory" - - but not a "discriminatory housing practice" - - to design and construct
   common areas that are inaccessible to disabled persons (3604(f)(3)(C)(i)); and to design and
27 construct apartments that are inaccessible to persons in wheelchairs (3604(f)(3)(C)(ii) and (iii)).
   But actual inaccessibility to a disabled person cannot be determined without reference to a
28 particular disabled plaintiff with a particular disability who needs a particular type of
   accessibility - - e.g.,  the blind have different accessibility needs than the deaf, etc.

1  plaintiffs' opposition states:  "The Proximity of Plaintiffs' Offices to Defendants' . . .

2  Buildings Is Not Relevant to Any Standing Inquiry."  Opposition, p. 25:19-20.

3       That Plaintiffs' alleged injuries are not redressable is also revealed by the fact that

4  Plaintiffs have not included in this suit parties who are indispensable to effectuate the

5  injunctive relief requested.  Although Plaintiffs' Opposition states they seek mere retrofits, the

6  FAC alleges that plaintiffs seek a <u>general nationwide injunction</u> requiring the Spanos

7  defendants to: "bring each and every . . .apartment community [sued on] into compliance with

8  the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations."  FAC,

9  p.40:11-13.  Thus, as pled, the FAC seeks a nationwide injunction requiring the Spanos

10 defendants to <u>redesign and reconstruct</u> all apartment complexes sued on - - tested, untested,

11 and unknown.

12      The redesign and reconstruction of apartments (as requested in the FAC) necessarily

13 affects the property interests of owners, renters and secured lenders and the privacy interests of

14 renters.  Plaintiffs allege, correctly, that <u>all</u> current owners are "necessary parties in order to

15 effectuate any judgment or order for injunctive relief requested by plaintiffs."  FAC, ¶ 30.

16 Rule 19(a)(2)(i), <u>fundamental due process</u>, and 42 U.S.C. section 3613(d) require that current

17 owners, renters, and secured lenders of the properties sued upon be given notice and an

18 opportunity to be heard.  The current owners are entitled to present evidence to this Court

19 showing that properties owned by them <u>actually</u> <u>comply</u> with the accessability requirements of

20 the FHAA and that no disabled person has ever been harmed by alleged inaccessibility of the

21 subject properties.  Yet, Plaintiffs' Opposition admits that this Court does not have personal

22 jurisdiction over these owners.[8]

23

24      [8] In an attempt to circumvent this problem, plaintiffs have alleged the existence of a defendant
   "owner" class and have named Knickerbocker and Highpointe as class representatives.  FAC, ¶¶ 32-
25 37.  However, this attempt fails.  First, the fact that the claims against both class representatives are
   time-barred renders them "inadequate" under Rule 23.  See discussion, below. It also fails to solve the
26 jurisdictional problem: in the absence of an opt-out mechanism, plaintiffs will have to establish
   personal jurisdiction as to each current owner.  Still, plaintiffs' Opposition argues that there is no need
27 to afford due process to these known and unknown owners. Lack of personal jurisdiction over absent
   class members triggers due process concerns even in plaintiff class actions, in which, typically, no
28 relief is sought against the absent class members and – in any event – the absent class members can

1    In addition, the tenants who hold leaseholds in the known 22,000 apartments sued on

2  are also entitled to notice and an opportunity to be heard, as are the tenants of the unknown

3  apartments sued on.  Plaintiffs say this is not so because these tenants can have their doors,

4  bathrooms, and kitchens reconstructed while the tenants are at work or on vacation.  However,

5  many of the 22,000 tenants of these known apartments may be happy with their apartments the

6  way they are.  And, many of these 22,000 tenants may not welcome construction workers into

7  their homes - - while they [the tenants] are away at work or on vacation.[9]  In any event, these

8  22,000 tenants own leaseholds - - granting them property and privacy rights to their apartments

9

10  "opt out" if they chose not to participate in the lawsuit.  See, *Phillips Petroleum Co. v. Shutts,* 472

11  U.S. 797, 811-12 (1985).  "Presumably, a defendant class would not present the same problems [as
   posed in *Shutts*] because, unlike the situation with a plaintiff class, the forum court must have personal

12  jurisdiction over each member of a defendant class."  *Whitson v. Heilig-Meyers Furniture, Inc.*, 1995
   U.S. Dist. LEXIS 4312, *49 (N.D. Ala. 1995), emphasis added; see, also, *National Assn. for Mental*

13  *Health, Inc. v. Califano*, 717 F.2d 1451, 1455 (D.C. Cir. 1983) [affirming district court's order
   refusing to certify a defendant class where the named representatives would not "fairly and adequately

14  protect the interests of the class" and where the district court did "not have in personam jurisdiction
   over the class members"].

15      In response to this case law, plaintiffs argue that Rule 23, and two cases interpreting Rule 23,
   have abrogated the need to afford "due process" to defendant class members.  In reality, neither Rule

16  23 nor any case so holds. In fact, the main case relied on by Plaintiffs, *Califano v. Yamasaki*, 442 U.S.

17  682 (1979), explains that class relief is not available where Congress by statute has expressly limited
   such relief.  442 U.S. at 700. 42 U.S.C. section 3613(d) is such a limiting statute. Section 3613(d)

18  mandates that an injunction which "affects" property rights of owners, tenants, or secured lenders
   "shall not" issue without first affording notice and an opportunity to be heard to these parties. *Ibid*.

19  Similarly, in *Hansberry v. Lee*, 311 U.S. 32 (1940) (the other case relied on by plaintiffs) the Supreme
   Court found that due process was not afforded where the putative class representative lacked the

20  motivation to vigorously assert the claims and defenses of the subject class members. 311 U.S. at 27-
   29.  Further, any injunction issued by this court which purports to bind persons or entities over which

21  this court lacks personal jurisdiction would be unenforceable. An injunction against a defendant class is
   not enforceable by the issuing court against nonresident defendant class members outside the court's

22  jurisdiction. And, in a local enforcement proceeding, due process would dictate that the absent member
   be able to raise collaterally unique defenses: e.g., that he did not engage in the unlawful practice; that

23  the plaintiff is guilty of laches or unclean hands or is estopped to assert a claim against the defendant;
   that he has obtained a release of claims from the plaintiff; that he is not a member of the class; or that

24  the class representation was inadequate. See 2 Newberg on Class Actions § 4:49 at pp. 347-348

25  (2002). And in a local enforcement proceeding, such a defendant could assert the defense that 42
   U.S.C. § 3613(d) mandates that no injunction issue which affects his or her rights absent notice and an

26  opportunity to be heard, and that therefore this court's injunction lacked validity.

27      [9] Alternatively, plaintiffs suggest that this court could wait until all 22,000 known
   apartments are vacated.  However, since some tenants live in the same apartments all of their

28  adult lives, this Court would be supervising such an injunction for 30 or more years.

1    - - and due process and 42 U.S.C. section 3613(d)  require they be given notice and an

2    opportunity to be heard before issuance of an injunction which affects those rights.[10]

3          And an injunction requiring the redesign and reconstruction of individual units leased

4    by renters also adversely affects the property rights of secured lenders. Plaintiffs' Opposition

5    argues that the "cash flow" of the affected rentals may not be significantly impaired. But the

6    FAC does not so allege, and the injunction sought in the FAC seeks the redesign and

7    reconstruction of each known and unknown complex.  As alleged by the FAC, then, the

8    property rights of secured lenders will be affected.

9          Finally, in equity and "good conscience" this action should not proceed without the

10   owners, renters and secured lenders.  Fed.R.Civ.P., rule 19.  These parties have property

11   and/or privacy rights which may not be impaired without due process of law - - which, at a

12   minimum - - requires notice and an opportunity to be heard.  These due process rights clearly

13   outweigh any concern regarding potential harm to plaintiffs which may result from dismissal of

14   this lawsuit.  Plaintiffs' only alleged harm consists of litigation costs voluntarily incurred by

15   Plaintiffs to identify and test the subject properties and thereafter to bring this lawsuit.  This

16   monetary harm was voluntarily incurred to manufacture a nationwide lawsuit purportedly

17   brought to benefit the disabled.  In reality, dismissal of this lawsuit will not harm disabled

18   persons at all.  If any disabled person ever actually visits any of the properties sued on and

19   finds that a failure in design or construction actually impairs his or her access, then a suit

20   under 3604(f)(1) or (f)(2) can be filed.  The FHAA allows the appropriate federal district court

21   to "appoint an attorney to represent such person" and waive all "fees, costs, [and] security."

22   42 U.S.C. § 3613(b)(1) and (2).  And, such a disabled person could approach one of the

23   plaintiff  fair housing organizations  herein and request assistance with his or her suit.

24         However, such a future suit is not likely because an actual future denial of access is not

25

26         [10] See, *H.J.M. v. K. Hovnanian at Mahwah VI, Inc.*, 672 A.2d 1166, 1172 (N.J. Sup.
     Ct. 1996); *Equal Rights Center v. Post Properties, Inc.*,  522 F.Supp.2d 1, 5 (D.D.C. 2007);
27   see, also, Fed.R.Civ.P. 19(a)(2)(i); *Schneider v. Whaley*, 417 F.Supp. 750, 757 (S.D. NY
     1976) (tenants had a "protected interest at stake" in the housing authority's policy-making and
28   were thus entitled to notice and an opportunity to submit evidence and argument).

1    likely.  Plaintiffs sue nationwide on 82 apartment complexes containing 22,000 units - - and on

2    an unknown number of unknown complexes containing an unknown number of units- - many

3    built more than 15 years ago.  Yet, plaintiffs fail to allege that any disabled person has ever in

4    any way actually had his or her access impaired at any of the known or unknown complexes

5    sued on.

6        The FAC in fact fails to allege that most types of disabled persons <u>could have</u> their

7    access impaired.  The design and construction defects alleged in the FAC are irrelevant to the

8    blind, the deaf, the mentally infirm, etc.  The alleged defects <u>could possibly</u> affect a mobility-

9    impaired person, depending upon the height, size and weight of that particular person and

10   depending upon the degree of that person's impairment.  But, even if such a mobility impaired

11   person's access is denied or impaired in the future, he could file suit in the <u>local</u> district court -

12   - and the owner, tenants, and secured lenders would have minimum contacts with the <u>local</u>

13   district court overseeing the suit, as would the Spanos defendants.

14       In contrast - - although no disabled person has ever been harmed - - Plaintiffs ask this

15   Court to issue and supervise a nationwide injunction requiring the redesign and reconstruction

16   of 22,000 known apartments (and an unknown number of unknown apartments) without notice

17   to the owners, renters and secured lenders.

18       In light of all of the above, plaintiffs fail to adequately allege their standing to bring this

19   suit.

20   **CONCLUSION**

21       Having read and considered the documents submitted in support of and in opposition to

22   the motion and the arguments of counsel, and good cause appearing therefor, the Court rules as

23   follows: (1) the complaint is uncertain with respect to the number of apartment complexes sued

24   on; (2)  the allegations of plaintiffs' First Amended Complaint are vague and ambiguous with

25   respect to plaintiffs' standing to sue for damages or injunctive relief under the Fair Housing

26   Amendments Act because plaintiffs do not allege facts sufficient to establish the irreducible

27   constitutional minimum for standing under Article III of the U.S. Constitution.  For these

28   reasons,

1    IT IS HEREBY ORDERED that the Spanos defendants' motion for more definite

2  statement is granted.

3

4  Dated: _____, 2008

5                                                    _____
                                                     Honorable Saundra Brown Armstrong
                                                     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION
FOR MORE DEFINITE STATEMENT RE FIRST AMENDED COMPLAINT [CASE NO. C07-03255-SBA]