MAXWELL M. FREEMAN, #31278
LEE ROY PIERCE, JR., #119318
MICHAEL L. GUREV, #163268
THOMAS H. KEELING, #114979
FREEMAN, D'AIUTO, PIERCE,
  GUREV, KEELING & WOLF
A PROFESSIONAL LAW CORPORATION
1818 Grand Canal Boulevard, Suite 4
Stockton, California  95207
Telephone: (209) 474-1818
Facsimile:  (209) 474-1245
E-mail:        lrpierce@freemanfirm.com
                   mgurev@freemanfirm.com
                   tkeeling@freemanfirm.com

Attorneys for Defendants A.G. Spanos
Construction, Inc.; A.G. Spanos
Development, Inc.; A.G. Spanos
Land Company, Inc.; A.G. Spanos
Management, Inc., The Spanos Corporation

IN THE UNITED STATED DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Fair Housing Alliance, Inc., et al., | CASE NO.  C07-03255-SBA |
| Plaintiffs, | **AMENDED [PROPOSED] ORDER GRANTING A.G. SPANOS CONSTRUCTION, INC.; A.G. SPANOS  DEVELOPMENT, INC.; A.G. SPANOS  LAND COMPANY, INC.; A.G. SPANOS MANAGEMENT, INC., AND THE SPANOS CORPORATION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO JOIN NECESSARY AND INDISPENSABLE PARTIES** |
| vs. | |
| A.G. Spanos Construction, Inc., et al. | |
| Defendants. | |
| _____ | [Fed. R. Civ. P., Rules 12(b)(7) & 19]] |

Hearing Date: March 11, 2008
Time:            1:00 p.m.
Dept.:           Courtroom 3

Complaint Filed: June 20, 2007

The motion of Defendants A.G. Spanos Construction, Inc., A.G. Spanos

Development, Inc., A.G. Spanos Land Company, Inc., A.G. Spanos Management, Inc., and

The Spanos Corporation, appearing through counsel, for an order dismissing Plaintiffs' first

1   amended complaint for failure to join necessary and indispensable parties, came on regularly

2   for hearing on March 11, 2008, at 1:00 p.m., in Courtroom 3 of the above-entitled court,

3   located at 1301 Clay Street, 3rd Floor, Oakland, California, the Honorable Saundra Brown

4   Armstrong presiding.  Thomas H. Keeling and Lee Roy Pierce, Jr. appeared on behalf of the

5   Spanos Defendants, and Michael Allen appeared on behalf of Plaintiffs.

6                                                    **BACKGROUND**

7                                      **ALLEGATIONS OF THE COMPLAINT**

8                               **AND MATTERS SUBJECT TO JUDICIAL NOTICE**

9
        A.      **Parties**.
10

11      Plaintiffs are: (1) the National Fair Housing Alliance, a non-profit entity with its

12  principal place of business in Washington, D.C.; (2) Fair Housing of Marin, "a non-profit

13  community organization located in San Rafael, California;" (3) Fair Housing of Napa Valley,

14  "a non-profit community organization located in Napa, California;" (4) Metro Fair Housing

15  Services, "a non-profit community organization located in Atlanta, Georgia;" and (5) The Fair

16  Housing Continuum, a "non-profit organization committed to equal housing opportunity and

17  the elimination of discrimination in Florida."  First Amended Complaint ("FAC") ¶¶ 1, 15-19.

18      Plaintiffs' alleged "missions" include advocating for the rights of people with

19  disabilities to accessible housing, promoting equal housing opportunities, and eliminating

20  housing and lending inequities. FAC, ¶¶ 15-18.

21      Defendants A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G.

22  Spanos Land Company, Inc., A.G. Spanos Management, Inc., and The Spanos Corporation

23  are California corporations with principal offices in Stockton.  FAC, ¶¶ 20-25.

24      Plaintiffs allege that the Spanos Defendants "no longer own most of the "known" and

25  "unknown" apartment complexes for which relief is requested."  FAC ¶ 30.  They also allege

26  the existence of a <u>defendant class</u> consisting of "current owners of non-compliant [apartment]

27  units."  FAC, ¶ 30.  Plaintiffs allege that <u>all</u> current owners are "necessary parties in order to

28  effectuate any judgment or order for injunctive relief requested by Plaintiffs."  FAC, ¶ 30.

1   Plaintiffs sue Knickerbocker Properties, Inc. XXXVIII and Highpointe Village, L.P.

2   "individually and as representatives of [the putative "known" and "unknown" current owner]

3   class."  FAC, ¶ 32.  Knickerbocker Properties, Inc. XXXVIII is alleged to own two apartment

4   complexes:  "Mountain Shadows" and "The Commons."  FAC, ¶ 33.  Highpointe Village,

5   L.P. is alleged to be the owner of Highpointe Village, in Kansas.  FAC, ¶ 34.

6   ### B.    Allegations of Non-Compliance with the FHAA.

7        Plaintiffs are five organizations located in three states.  They allege that 82[1] apartment

8   complexes located in 10 states, allegedly designed and constructed by the Spanos Defendants

9   between 1991 and 2007, do not comply with requirements of the Fair Housing Amendments

10  Act ("FHAA"), 42 U.S.C. §§ 3601, et. seq.  They make the same claim with respect to an

11  unknown number of unidentified properties located, presumably, throughout the United States

12  in unspecified locations.  The Subject Properties allegedly contain over 22,000 apartment

13  units. Plaintiffs seek an injunction commanding defendants to rebuild the Subject Properties to

14  conform to the FHAA.

15       More specifically, Plaintiffs allege that the Spanos Defendants "have been involved in

16  the design and construction of approximately [82] multifamily complexes in California,

17  Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and

18  Florida."  FAC, ¶ 27.  Plaintiffs claim to have identified 34 apartment complexes in

19  California, Arizona, Nevada, Texas, Kansas, Georgia, and Florida (the "Tested Properties"),

20  totaling more than 10,000 individual apartment dwelling units, that do not meet the

21  accessibility requirements of the FHAA.  FAC, ¶¶ 3, 30.  No plaintiff alleges it is located in,

22  does business in, or counsels persons in Nevada, Arizona, Colorado, New Mexico, Texas,

23  Kansas, or North Carolina.

24       With respect to the Tested Properties, Plaintiffs allege that since 1991 the Spanos

25  Defendants have "engaged in a continuous pattern and practice of discrimination against people

26

27  _____

28       [1]  The FAC alleges there are 85 complexes sued on.  However, Plaintiffs' opposition restates the number of complexes sued on as 82.  Opposition, p. 1, n. 1.

1   with disabilities" by "designing and/or constructing" apartment complexes that deny full

2   access to and use of the facilities as required under the FHAA.  FAC, ¶ 4.

3            Plaintiffs also allege on information and belief that 49 additional apartment complexes

4   in 10 states which the Spanos Defendants designed or constructed (the "Untested Properties")

5   also violate FHAA accessibility requirements.  FAC, ¶ 6 and Appendix A to Complaint.  The

6   Spanos Defendants are also alleged to have designed or constructed an unspecified number of

7   additional <u>unidentified</u> apartment complexes located in states not yet known to Plaintiffs.

8   FAC, ¶ 28.  The Subject Properties allegedly include over 22,000 individual apartments.

9   FAC, ¶ 80.

10           Plaintiffs claim to have "identified at least one FHAA violation and, in most cases,

11  multiple violations, at each of the Tested Properties."  Based on the alleged frequency and

12  similarity of these violations, Plaintiffs allege "a pervasive pattern and practice of designing

13  and constructing apartment communities in violation of the FHAA accessibility design

14  requirements."  FAC, ¶ 45.  Alleged FHAA violations at the Tested Properties also include

15  failure to design and construct the public and common areas so that they are readily accessible

16  to and usable by people with disabilities. FAC, ¶¶ 45-47.  As for the Untested Properties,

17  Plaintiffs allege only that they were designed and/or constructed after March, 1991.  FAC, ¶

18  6.

19           As alleged in the Complaint, no plaintiff is located in the same city or county where the

20  tested apartments sued on are located.[2]

21       **C.    Alleged "Injury" to Plaintiffs.**

22       Plaintiffs allege injury as follows:

23                72.    As a result of the A.G. Spanos Defendants' actions
                 described above, Plaintiffs have been directly and substantially
24               injured in that they have been **frustrated in their missions to**

25  _____

26       [2]  Rohnert Park is in Sonoma County, but it is 35 miles from Napa, where Fair Housing
    of Napa Valley is located.  See RJN, Ex. 172.  Wesley Chapel in Pasco County, Florida, is
27  132 miles from Cocoa, Florida, in Brevard County.  RJN, Ex. 173. The Spanos defendants
    filed a lengthy Request For Judicial Notice in support of their Motion to Dismiss Plaintiffs'
28  First Amended Complaint and Accompanying Motions.  Plaintiffs do not oppose this request.

1    **eradicate discrimination in housing**, and in carrying out the
programs and services they provide, including encouraging
2    integrated living patterns, educating the public about fair housing
rights and requirements, educating and working with industry
3    groups on fair housing compliance, providing counseling services
to individuals and families looking for housing or affected by
4    discriminatory housing practices and eliminating discriminatory
housing practices.
5
73.    As outlined above, each Plaintiff has invested considerable
6    time and effort in **educating its respective communities**[3] about
the importance of accessible housing for people with disabilities,
7    in an attempt to secure compliance by entities involved in the
design and construction of covered multifamily dwellings.  Each
8    time the A.G. Spanos Defendants designed and constructed
covered dwellings that did not comply with the FHA **in one of
9    Plaintiffs' service areas, the A.G. Spanos Defendants
frustrated the mission of that Plaintiff**,[4] inasmuch as it served
10    to discourage people with disabilities from living at that
dwelling,[5] **and encouraged other entities** involved in the design
11    and construction of covered units to disregard their own
responsibilities under the FHA.
12
74.    The A.G. Spanos Defendants' continuing discriminatory
13    practices **have forced Plaintiffs to divert significant and scarce
resources to identify, investigate, and counteract the A.G.
14    Spanos Defendants' discriminatory practices**, and such
practices have frustrated Plaintiffs' other efforts against
15    discrimination, causing each to suffer concrete and demonstrable
injuries.
16
75.    Each Plaintiff conducted site visits, investigations,
17    **surveys and/or tests at the Tested Properties, resulting in the
diversion of its resources in terms of staff time and salaries
18    and travel and incidental expenses that it would not have had
to expend were it not for the A.G. Spanos Defendants'
19    violations.**  FHOM, FHNV, MFHS and FHC each diverted staff
time and resources to meet with NFHA staff, receive detailed
20    training concerning the accessibility requirements of the FHA and
provide logistical support for NFHA staff.  In addition to such
21    support:
22    a.  Plaintiff FHOM conducted **site visits and**
23
24    [3]  Plaintiffs allege that they are located in Washington, D.C., California,  Georgia and
Florida.  In referring to their "respective communities," plaintiffs cannot be referring to
25    citizens of Nevada, Arizona, Colorado, New Mexico, and Kansas, where many of the
apartments sued upon are located.
26
[4]  None of the apartments sued upon is located in any of plaintiffs' "respective
27    communities" or in any of Plaintiffs' "service areas."  RJN, Exs. 171, 172 and 173.
28    [5]  Plaintiffs' Complaint fails to identify any disabled person who was so discouraged.

AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT FOR FAILURE TO JOIN NECESSARY AND/OR INDISPENSABLE PARTIES
[CASE NO. C07-03255-SBA]

1    **investigations** at Mountain Shadows and Windsor at Redwood
     Creek, two properties within its service area.
2            b.  Plaintiff FHNV conducted **a site visit and
     investigation** at Hawthorn Village, **a property within its service
3    area**.
             c.  Plaintiff MFHS conducted a site visit and investigation
4    at Battery at Chamblee, a property within its service area.
             d.  Plaintiff FHC conducted tests at Delano and Arlington
5    at Northwood, two properties **within its service area**.

6    FAC, ¶¶ 72-75.

7            D.      <u>Relief Sought by Plaintiffs.</u>

8            Plaintiffs request declaratory and injunctive relief.  Among other things, the requested

9    injunctive relief would require the Spanos Defendants to survey all the apartment complexes

10   they constructed throughout the United States since March 13, 1991 and to bring each and

11   every allegedly non-FHAA compliant complex into compliance.  FAC, pp. 39-40.  Plaintiffs

12   request attorneys' fees and costs, compensatory damages, and punitive damages.  FAC, pp.

13   40-41.

14           Plaintiffs also seek an order "[e]njoining the Owner Defendants from failing or refusing

15   to permit the retrofits ordered by the Court to be made in their respective properties, to comply

16   with such procedures for inspection and certification of the retrofits performed as may be

17   ordered by this Court, and to perform or allow such other acts as may be necessary to

18   effectuate any judgment against the A.G. Spanos Defendants."  FAC, p. 40.

19           E.      <u>Further Description of the Complaint.</u>

20           The Complaint does not allege that any of the Plaintiffs, any of their members, or any

21   disabled persons ever attempted to rent an apartment at any of the Subject Properties or that

22   any of the Plaintiffs or their members or any disabled person ever intends to do so.

23           Plaintiffs do not allege that any member of a protected class under the FHAA has

24   encountered discriminatory conduct at any of the Subject Properties.  Nor do Plaintiffs claim

25   they are suing on behalf of any member of a protected class.

26           Plaintiffs do not allege that they have counseled, spoken to, or otherwise expended any

27   resources in communicating with any member of a protected class who claims to have

28   encountered non-FHAA compliant features in any of the Subject Properties.

<u>AMENDED</u> [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT FOR FAILURE TO JOIN NECESSARY AND/OR INDISPENSABLE PARTIES
[CASE NO. C07-03255-SBA]

1    Plaintiffs do not allege that any of their "testers" was handicapped.  None of the alleged

2    "testers" is named as a plaintiff or identified in the Complaint.

3    Plaintiffs do not allege facts purporting to show how community organizations with

4    local "service areas" in California, Florida, Georgia, or Washington D.C. were injured by

5    allegedly non-compliant apartment complexes located in New Mexico, Nevada, Arizona,

6    Colorado, Texas, Kansas, and North Carolina.

7    Plaintiffs do not allege that the putative class defendants have violated the FHAA.

8    Plaintiffs do not allege that the putative class defendants caused any injury to Plaintiffs.

9    Plaintiffs do not join as parties any of the tenants who hold leases on the alleged 22,000 units

10   Plaintiffs seek to have rebuilt. Plaintiffs do not join as parties any of the lenders who hold

11   security interests in any of the apartment complexes sued on.

12   ### F.    Matter Subject to Judicial Notice.

13   As a matter of public record subject to judicial notice, not one of the 82 Subject

14   Properties is owned by defendants A.G. Spanos Development, Inc., A.G. Land Company, Inc.

15   or A.G. Spanos Management, Inc.  RJN, Exs. 1-85.  Only one of the Untested

16   Properties—located in Kansas—is owned by defendant A.G. Spanos Construction, Inc. RJN,

17   Ex. 48.  Only one of the Untested Properties and two of the Tested Properties are owned by

18   defendant The Spanos Corporation.  RJN Exs. 14, 20 and 44.  The remaining 51 Untested

19   Properties, and 30 of the Tested Properties, are owned by entities other than the Spanos

20   Defendants.  RJN, Exs. 1-85.

21   All but seventeen of the 82 identified properties sued on were built (and certificates of

22   occupancy issued) more than two years before the Complaint was filed.  See RJN, Exs. 127,

23   128, 166, 133, 91, 94, 100, 103, 99, 105, 125, 126, 129, 134a, 161, 166 and 153.  The

24   seventeen exceptions are:  (1) The Alexander at the Perimeter, located in Atlanta, Georgia; (2)

25   The Alexander at the District, located in Atlanta, Georgia; (3) Monterra, located in Las

26   Colinas, Texas; (4) Corbin Crossing, located in Overland, Kansas; (5) Tamarron, located in

27   Phoenix, Arizona; (6) Park Crossing, located in Fairfield, California; (7) Stone Canyon,

28   located in Riverside, California; (8) Windsor at Redwood Creek, located in Rohnert Park,

1   California; (9) Ashgrove Place, located in Rancho Cordova, California; (10) Sycamore

2   Terrace, located in Sacramento, California; (11) Arlington at Northwood, located in Wesley

3   Chapel, Florida; (12) Delano at Cypress Creek, located in Wesley Chapel, Florida; (13) The

4   Battery at Chamblee, located in Chamblee, Georgia; (14) The Highlands, located in Chamblee,

5   Georgia; (15) Belterra, located in Fort Worth, Texas; (16) Cheval, located in Houston, Texas;

6   and (17) Auberry at Twin Creeks, located in Allen Texas.  See RJN, Exs. 127, 128, 166, 133,

7   91, 94, 100, 103, 99, 105, 125, 126, 129, 134a, 161, 166 and 153.

8          The last certificate of occupancy for Mountain Shadows was issued on September 5,

9   2002, and for "The Commons" on July 18, 2002, more than two years before Plaintiffs filed

10  this complaint.  See RJN, ¶¶ 102, 110.  The last certificate of occupancy was issued on

11  Highpointe Village on December 8, 2003, more than two years before Plaintiffs filed this

12  complaint.  See RJN, ¶ 134.

13              **STANDARDS GOVERNING MOTIONS UNDER RULE 12(b)(7)**

14         Rule 12(b)(7) permits defendant to challenge a complaint's failure to join "persons

15  whose presence is needed for a just adjudication" under the Federal Rules of Civil Procedure,

16  rule 19.

17         Rule 19(a) of the Federal Rules of Civil Procedure states, in pertinent part:

18         (1)  Required Party.  A person who is subject to service of
           process and whose joinder will not deprive the court of subject-
19         matter jurisdiction must be joined as a party if:
               (A)  in that person's absence, the court cannot accord
20             complete relief among existing parties; or
               (B)  that person claims an interest relating to the subject of
21             the action and is so situated that disposing of the action in
               the person's absence may:
22                 (i)  as a practical matter impair or impede the
                   person's ability to protect the interest; or
23                 (ii)  leave an existing party subject to a substantial
                   risk of incurring double, multiple, or otherwise
24                 inconsistent obligations because of the interest.

25         A party is considered necessary to an action if "complete relief cannot be granted with

26  the present parties or the absent party has an interest in the disposition of the current

27  proceedings." *Laker Airways, Inc. v. British Airways, PLC,* 182 F.3d 843, 847 (11th Cir.

28  1999).

1    Rule 19(b) provides, in pertinent part:

2          If a person who is required to be joined if feasible cannot be
           joined, the court must determine whether, in equity and good
3          conscience, the action should proceed among the existing parties
           or should be dismissed. . . . .
4
Rule 19(b) is the "indispensable" party rule.[6]
5

6                              **ANALYSIS**

7    **I.    PLAINTIFFS STATE NO CAUSE OF ACTION BECAUSE THEY HAVE SUED
            THE WRONG DEFENDANTS.**
8

9         42 U.S.C. sections 3604(f)(1) and (f)(2) make it "unlawful" to deny a rental to disabled

10   persons, or to deny a rental to those associated with disabled persons.  It is landlords - not

11   builders - who are in a position to deny rentals:

12         The "failure to design and construct" language of 3604(f)(3)(C) might be
           thought to limit the targets of this provision to those who 'design' or 'construct'
13         covered multi-family dwellings, but this interpretation seems wrong.  As one
           court has observed, 3604(f)(3)(C) "is not a description of who is liable.  Rather,
14         it is a description of what actions constitute discrimination."

15   R. Schwemm, "Barriers to Accessible Housing: Enforcement Issues in Design and
     Construction Cases under the Fair Housing Act, 40 U. Richmond L.Rev. 753, 776 (2006).
16
          "The conduct and decision-making that Congress sought to affect [by passage of the
17
     FHAA] was that of persons in a position to frustrate . . . the housing choices of handicapped
18
     individuals who seek to buy or lease housing . . . [P]rimarily . . . those who own the property
19
     of choice and their representatives."  *Growth Horizons, Inc. v. Delaware County*, 983 F.2d
20
     1277, 1283 (3d Cir. 1993).   The Ninth Circuit explained this limitation on potentially liable
21
     parties in an ADA case as follows:
22
           [A]fter the noncompliant building has already been built, injunctive relief is only
23         meaningful against the person currently in control of the building.  That is, the
           architect who built the building is by the time of suit by an eligible plaintiff out
24         of the picture.  This limitation on relief suggests that reading Title III to make
           architects, and others who do not own, lease, or operate buildings, such as
25         builders and construction subcontractors, liable for "design and construct"
           discrimination would create liability in persons against whom there is no
26

27   ──────────────
          [6] The amendments effective December 1, 2007, deleted the "traditional terminology" as
28   being "redundant."  Advisory Committee Notes to the 2007 Amendment.

─────────────────────────────────────────
                                    9

meaningful remedy provided by the statute.

*Lonberg v. Sanborn Theatres,* 259 F.3d 1029, 2001 U.S.App.LEXIS 17418, at *18 (9th Cir. 2001).

The FAC states no cause of action against the owners of the complexes sued on, yet those owners are indispensable to plaintiffs' claims.

## II.    THE OWNERS, RENTERS, AND SECURED LENDERS ARE INDISPENSABLE PARTIES REGARDING THE INJUNCTIVE RELIEF SOUGHT IN THE FAC.

Although Plaintiffs' Opposition states they seek mere retrofits, the FAC alleges that plaintiffs seek a <u>general nationwide injunction</u> requiring the Spanos defendants to: "bring each and every . . .apartment community [sued on] into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations." FAC, p.40:11-13. Thus, as pled, the FAC seeks a nationwide injunction requiring the Spanos defendants to <u>redesign and reconstruct</u> all apartment complexes sued on - - tested, untested, and unknown.

The redesign and reconstruction of apartments (as requested in the FAC) necessarily affects the property interests of owners, renters and secured lenders and the privacy interests of renters. Plaintiffs allege, correctly, that <u>all</u> current owners are "necessary parties in order to effectuate any judgment or order for injunctive relief requested by plaintiffs." FAC, ¶ 30. Rule 19(a)(2)(i), <u>fundamental due process</u>, and 42 U.S.C. section 3613(d) require that current owners, renters, and secured lenders of the properties sued upon be given notice and an opportunity to be heard. The current owners are entitled to present evidence to this Court showing that properties owned by them <u>actually</u> <u>comply</u> with the accessability requirements of the FHAA and that no disabled person has ever been harmed by alleged inaccessibility of the subject properties. Yet, Plaintiffs' Opposition admits that this Court does not have personal jurisdiction over these owners.[7]

_____

[7] In an attempt to circumvent this problem, plaintiffs have alleged the existence of a defendant "owner" class and have named Knickerbocker and Highpointe as class representatives. FAC, ¶¶ 32-37. However, this attempt fails. First, the fact that the claims against both class representatives are time-barred renders them "inadequate" under Rule 23. See discussion, below. It also fails to solve the jurisdictional problem: in the absence of an opt-out mechanism, plaintiffs will have to establish personal jurisdiction as to each current owner. Still, plaintiffs' Opposition argues that there is no need

<u>AMENDED</u> [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO JOIN NECESSARY AND/OR INDISPENSABLE PARTIES [CASE NO. C07-03255-SBA]

1      In addition, the tenants who hold leaseholds in the known 22,000 apartments sued on

2  are also entitled to notice and an opportunity to be heard, as are the tenants of the unknown

3  apartments sued on.  Plaintiffs say this is not so because these tenants can have their doors,

4  bathrooms, and kitchens reconstructed while the tenants are at work or on vacation. However,

5  many of the 22,000 tenants of these known apartments may be happy with their apartments the

6  way they are.  And, many of these 22,000 tenants may not welcome construction workers into

7  their homes - - while they [the tenants] are away at work or on vacation.[8]  In any event, these

8  _____

9  to afford due process to these known and unknown owners. Lack of personal jurisdiction over absent
   class members triggers due process concerns even in plaintiff class actions, in which, typically, no
10 relief is sought against the absent class members and – in any event – the absent class members can
   "opt out" if they chose not to participate in the lawsuit. See, *Phillips Petroleum Co. v. Shutts,* 472
11 U.S. 797, 811-12 (1985).  "Presumably, a defendant class would not present the same problems [as
   posed in *Shutts*] because, unlike the situation with a plaintiff class, <u>the forum court must have personal</u>
12 <u>jurisdiction over each member of a defendant class.</u>"  *Whitson v. Heilig-Meyers Furniture, Inc.*, 1995
   U.S. Dist. LEXIS 4312, *49 (N.D. Ala. 1995), emphasis added; see, also, *National Assn. for Mental*
13 *Health, Inc. v. Califano*, 717 F.2d 1451, 1455 (D.C. Cir. 1983) [affirming district court's order
   refusing to certify a defendant class where the named representatives would not "fairly and adequately
14 protect the interests of the class" and where the district court did "not have in personam jurisdiction
   over the class members"].
15
        In response to this case law, plaintiffs argue that Rule 23, and two cases interpreting Rule 23,
16 have abrogated the need to afford "due process" to defendant class members.  In reality, neither Rule
   23 nor any case so holds. In fact, the main case relied on by Plaintiffs, *Califano v. Yamasaki*, 442 U.S.
17 682 (1979), explains that class relief is not available where Congress by statute has expressly limited
   such relief.  442 U.S. at 700. 42 U.S.C. section 3613(d) is such a limiting statute.  Section 3613(d)
18 mandates that an injunction which "affects" property rights of owners, tenants, or secured lenders
   "shall not" issue without first affording notice and an opportunity to be heard to these parties. *Ibid*.
19 Similarly, in *Hansberry v. Lee*, 311 U.S. 32 (1940) (the other case relied on by plaintiffs) the Supreme
   Court found that due process was not afforded where the putative class representative lacked the
20 motivation to vigorously assert the claims and defenses of the subject class members. 311 U.S. at 27-
   29.  Further, any injunction issued by this court which purports to bind persons or entities over which
21 this court lacks personal jurisdiction would be unenforceable. An injunction against a defendant class is
   not enforceable by the issuing court against nonresident defendant class members outside the court's
22 jurisdiction. And, in a local enforcement proceeding, due process would dictate that the absent member
   be able to raise collaterally unique defenses: e.g., that he did not engage in the unlawful practice; that
23 the plaintiff is guilty of laches or unclean hands or is estopped to assert a claim against the defendant;
   that he has obtained a release of claims from the plaintiff; that he is not a member of the class; or that
24 the class representation was inadequate. See 2 Newberg on Class Actions § 4:49 at pp. 347-348
   (2002). And in a local enforcement proceeding, such a defendant could assert the defense that 42
25 U.S.C. § 3613(d) mandates that no injunction issue which affects his or her rights absent notice and an
   opportunity to be heard, and that therefore this court's injunction lacked validity.
26
27      [8] Alternatively, plaintiffs suggest that this court could wait until all 22,000 known
28 apartments are vacated.  However, since some tenants live in the same apartments all of their

---

11

1    22,000 tenants own leaseholds - - granting them property and privacy rights to their apartments

2    - - and due process and 42 U.S.C. section 3613(d)  require they be given notice and an

3    opportunity to be heard before issuance of an injunction which affects those rights.[9]

4         And an injunction requiring the redesign and reconstruction of individual units leased

5    by renters also adversely affects the property rights of secured lenders. Plaintiffs' Opposition

6    argues that the "cash flow" of the affected rentals may not be significantly impaired. But the

7    FAC does not so allege, and the injunction sought in the FAC seeks the redesign and

8    reconstruction of each known and unknown complex.  As alleged by the FAC, then, the

9    property rights of secured lenders will be affected.

10        Finally, in equity and "good conscience" this action should not proceed without the

11   owners, renters and secured lenders. Fed.R.Civ.P., rule 19.  These parties have property

12   and/or privacy rights which may not be impaired without due process of law - - which, at a

13   minimum - - requires notice and an opportunity to be heard.  These due process rights clearly

14   outweigh any concern regarding potential harm to plaintiffs which may result from dismissal of

15   this lawsuit.  Plaintiffs' only alleged harm consists of litigation costs voluntarily incurred by

16   Plaintiffs to identify and test the subject properties and thereafter to bring this lawsuit.  This

17   monetary harm was voluntarily incurred to manufacture a nationwide lawsuit purportedly

18   brought to benefit the disabled.  In reality, dismissal of this lawsuit will not harm disabled

19   persons at all.  If any disabled person ever actually visits any of the properties sued on and

20   finds that a failure in design or construction actually impairs his or her access, then a suit

21   under 3604(f)(1) or (f)(2) can be filed.  The FHAA allows the appropriate federal district court

22   to "appoint an attorney to represent such person" and waive all "fees, costs, [and] security."

23   42 U.S.C. § 3613(b)(1) and (2).  And, such a disabled person could approach one of the

24   _____

25   adult lives, this Court would be supervising such an injunction for 30 or more years.

26        [9] See, *H.J.M. v. K. Hovnanian at Mahwah VI, Inc.*, 672 A.2d 1166, 1172 (N.J. Sup.
     Ct. 1996); *Equal Rights Center v. Post Properties, Inc.*,  522 F.Supp.2d 1, 5 (D.D.C. 2007);
27   see, also, Fed.R.Civ.P. 19(a)(2)(i); *Schneider v. Whaley*, 417 F.Supp. 750, 757 (S.D. NY
     1976) (tenants had a "protected interest at stake" in the housing authority's policy-making and
28   were thus entitled to notice and an opportunity to submit evidence and argument).

1  plaintiff  fair housing organizations  herein and request assistance with his or her suit.

2        However, such a future suit is not likely because an actual future denial of access is not

3  likely.  Plaintiffs sue nationwide on 82 apartment complexes containing 22,000 units - - and on

4  an unknown number of unknown complexes containing an unknown number of units- - many

5  built more than 15 years ago.  Yet, plaintiffs fail to allege that any disabled person has ever in

6  any way actually had his or her access impaired at any of the known or unknown complexes

7  sued on.

8        The FAC in fact fails to allege that most types of disabled persons <u>could have</u> their

9  access impaired.  The design and construction defects alleged in the FAC are irrelevant to the

10  blind, the deaf, the mentally infirm, etc.  The alleged defects <u>could possibly</u> affect a mobility-

11  impaired person, depending upon the height, size and weight of that particular person and

12  depending upon the degree of that person's impairment.  But, even if such a mobility impaired

13  person's access is denied or impaired in the future, he could file suit in the <u>local</u> district court -

14  - and the owner, tenants, and secured lenders would have minimum contacts with the <u>local</u>

15  district court overseeing the suit, as would the Spanos defendants.

16        In contrast - - although no disabled person has ever been harmed - - Plaintiffs ask this

17  Court to issue and supervise a nationwide injunction requiring the redesign and reconstruction

18  of 22,000 known apartments (and an unknown number of unknown apartments) without notice

19  to the owners, renters and secured lenders.  "Equity and good conscience" require that since

20  these parties cannot be joined, this case should be dismissed.

21                              <u>**CONCLUSION**</u>

22        Having read and considered the documents submitted in support of and in opposition to

23  the motion and the arguments of counsel, and good cause appearing therefor, the Court rules as

24  follows:  Current owners are the principal parties who may be liable regarding the causes of

25  action alleged in the FAC.  Moreover, (1) the current owners of the affected properties, as

26  well as the tenants living in the affected properties and the lenders whose loans are secured by

27  the affected properties, are necessary and/or indispensable parties to this action, in which

28  plaintiffs seek, among other things, an injunction requiring the rebuilding of the affected

<u>AMENDED</u> [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT FOR FAILURE TO JOIN NECESSARY AND/OR INDISPENSABLE PARTIES
[CASE NO. C07-03255-SBA]

1   properties, and (2) plaintiffs have failed to join the current owners, tenants and secured

2   lenders.  For these reasons,

3        IT IS HEREBY ORDERED that the motion to dismiss the Complaint for failure to join

4   necessary and indispensable parties is granted.

5

6   Dated: _____, 2008

7                                                    Honorable Saundra Brown Armstrong
                                                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT FOR FAILURE TO JOIN NECESSARY AND/OR INDISPENSABLE PARTIES
[CASE NO. C07-03255-SBA]