UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, et al. | ) ) ) | 07-3255 SBA |
| Plaintiffs, | ) ) | **ORDER**<br>[Docket Nos. 48, 49, 50, 52, 57 and 60] |
| vs. | ) ) | |
| A.G. SPANOS CONSTRUCTION, INC., et al., | ) ) ) | |
| Defendants. | ) | |

Currently before the Court are:

1.  Defendant A.G. Spanos Construction Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 48];

2.  Defendant A.G. Spanos Construction Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to Join Necessary and Indispensable Parties [Docket No. 49];

3.  Defendant A.G. Spanos Construction Inc.'s Motion for More Definite Statement [Docket No. 50];

4.  Defendant A.G. Spanos Construction Inc.'s Motion to Strike Various Claims for Relief Sought in Plaintiffs' First Amended Complaint [Docket No. 52];

5.  Defendant Knickerbocker Properties, Inc. XXXVII's Motion to Dismiss [Docket No. 57]; and

6.  Defendant Highpointe Village, L.P.'s Motion to Dismiss [Docket No. 60].

Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. For the reasons articulated below, the Court hereby DENIES the motions.

## BACKGROUND

**A.  The Parties**

### 1.  The Plaintiffs

The Plaintiffs are five fair housing organizations: (1) the National Fair Housing Alliance, "a national non-profit entity" with its principle place of business in Washington, D.C.; (2) Fair Housing of Marin, "a private non-profit community organization" located in San Rafael, California; (3) Fair Housing Napa Valley, "a non-profit community organization" located in Napa, California; (4) Metro Fair Housing Services, "a nonprofit community organization" located in Atlanta, Georgia; and (5) The Fair Housing Continuum, Inc., "a private, non-profit organization committed to equal housing opportunity and the elimination of discrimination in Florida." *See* First Amended Complaint ("FAC") at ¶¶ 15-19. Plaintiffs' alleged missions include advocating for the rights of people with disabilities to accessible housing, promoting equal housing opportunities, and eliminating housing and lending inequities. *Id.* at ¶¶ 15-19.

### 2.  The A.G. Spanos Defendants

Defendants A. G. Spanos Construction, Inc., A. G. Spanos Development, Inc., A. G. Spanos Land Company, Inc., A.G. Spanos Management, Inc., and The Spanos Corporation (the "Spanos Defendants") are California corporations with principal offices in Stockton. *Id.* at ¶¶ 20-25. The Spanos Defendants allegedly "engaged in one or more activities related to land acquisition, development, construction, and management of multifamily apartment complexes throughout the United States." *Id.* at ¶ 20.

### 3.  Defendant Highpointe Village, L.P.

Defendant Highpointe Village, L.P. ("Highpointe") is alleged to be the owner of a single apartment complex consisting of approximately 300 units, known as Highpointe Village, in Overland Park, Kansas. *See id.* at ¶¶ 34, 62. This apartment complex was allegedly "designed and/or built" by the Spanos Defendants." *Id.* at ¶ 34. Construction of Highpointe Village is alleged to have been "completed in 2003." *Id.* at ¶ 62 (p. 27:2). Overland Park issued the last certificate of occupancy for Highpointe Village on December 8, 2003, *more than three years* before Plaintiffs filed this complaint. *See* Certificate of Occupancy (RJN, Exh. B). Highpointe is named both individually and as one of two

representatives of a defendant class comprised of both known and unknown "current owners of non-compliant units" (the "Owner Class Defendants"). *See, e.g.*, FAC at ¶¶ 1, 30.

### 4. Defendant Knickerbocker Properties, Inc. XXXVIII

The second named representative of the Owner Class Defendants is Knickerbocker Properties, Inc. XXXVIII ("Knickerbocker"), which is alleged to own two apartment complexes also alleged to have been "designed and/or constructed by the A.G. Spanos Defendants": (1) "Mountain Shadows" in Rohnert Park, California; and (2) "The Commons" in Vacaville, California. *Id.* at ¶¶ 32-33. Like Highpointe, Knickerbocker is also sued individually. *Id.* at ¶ 32.

### 5. The Owner Class Defendants

Plaintiffs intend to seek certification of a defendant class consisting of "the current owners of covered apartment complexes that were designed and/or built by the A.G. Spanos Defendants since the effective date of the FHA, but are no longer owned by the A.G. Spanos Defendants" (the "Owner Class Defendants"). *Id.* at ¶ 32. Such apartment complexes allegedly do "not fully comply with the accessibility and adaptability requirements of the FHA." *Id.* at ¶ 35. The properties are owned by the Owner Class Defendants and located in at least 9 different states.

## B. Allegations Of Non-Compliance With The FHA

### 1. Alleged violations of the FHA by the Spanos Defendants

Plaintiffs allege that 82 apartment complexes located in 10 states, allegedly designed and constructed by the Spanos Defendants between 1991 and 2007, do not comply with requirements of the Fair Housing Amendments Act ("FHA"), 42 U.S.C. §§ 3601, et. seq. They make the same claim with respect to an unknown number of unidentified properties located, presumably, throughout the United States in unspecified locations. The subject properties allegedly contain over 22,000 apartment units. Plaintiffs seek an injunction ordering defendants to retrofit the properties to conform to the FHA.

More specifically, Plaintiffs allege that the Spanos Defendants "have been involved in the design and construction of approximately [82] multifamily complexes in California, Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida." FAC, ¶ 27. Plaintiffs claim to have identified 34 apartment complexes in California, Arizona, Nevada, Texas, Kansas, Georgia, and Florida (the "Tested Properties"), totaling more than 10,000 individual apartment dwelling

3

units, that do not meet the accessibility requirements of the FHA. FAC, ¶¶ 3, 30. With respect to the Tested Properties, Plaintiffs allege that since 1991 the Spanos Defendants have "engaged in a continuous pattern and practice of discrimination against people with disabilities" by "designing and/or constructing" apartment complexes that deny full access to and use of the facilities as required under the FHA. FAC, ¶ 4.

Plaintiffs also allege that 49 additional apartment complexes in 10 states which the Spanos Defendants designed or constructed (the "Untested Properties") also violate FHA accessibility requirements. FAC, ¶ 6 and Appendix A to Complaint. The Spanos Defendants are also alleged to have designed or constructed an unspecified number of additional unidentified apartment complexes located in states not yet known to Plaintiffs. FAC, ¶ 28.

Plaintiffs claim to have "identified at least one FHA violation and, in most cases, multiple violations, at each of the Tested Properties." Based on the alleged frequency and similarity of these violations, Plaintiffs allege "a pervasive pattern and practice of designing and constructing apartment communities in violation of the FHA accessibility design requirements." FAC, ¶ 45. Alleged FHA violations at the Tested Properties also include failure to design and construct the public and common areas so that they are readily accessible to and usable by people with disabilities. FAC, ¶¶ 45-47. As for the Untested Properties, Plaintiffs allege only that they were designed and/or constructed after March, 1991. FAC, ¶ 6.

### 2. Allegations Related to the Owner Class Defendants

Plaintiffs do not allege that Highpointe, Knickerbocker or any other Owner Class Defendant has violated the FHA or any other law. However, Plaintiffs seek a court order against the Owner Class Defendants:

> Enjoining the Owner [Class] Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against A.G. Spanos Defendants.

*Id.* at p. 40:16-21.

4

**B.     Alleged Injuries to Plaintiffs and Relief Sought**

Plaintiffs allege injury as follows:

> 72.     As a result of the A.G. Spanos Defendants' actions described above, Plaintiffs have been directly and substantially injured in that they have been **frustrated in their missions to eradicate discrimination in housing**, and in carrying out the programs and services they provide, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to individuals and families looking for housing or affected by discriminatory housing practices and eliminating discriminatory housing practices.
>
> 73.     As outlined above, each Plaintiff has invested considerable time and effort in **educating its respective communities** about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and construction of covered multifamily dwellings. Each time the A.G. Spanos Defendants designed and constructed covered dwellings that did not comply with the FHA **in one of Plaintiffs' service areas, the A.G. Spanos Defendants frustrated the mission of that Plaintiff**, inasmuch as it served to discourage people with disabilities from living at that dwelling, **and encouraged other entities** involved in the design and construction of covered units to disregard their own responsibilities under the FHA.
>
> 74.     The A.G. Spanos Defendants' continuing discriminatory practices **have forced Plaintiffs to divert significant and scarce resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices**, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing each to suffer concrete and demonstrable injuries.
>
> 75.     Each Plaintiff conducted site visits, investigations, **surveys and/or tests at the Tested Properties, resulting in the diversion of its resources in terms of staff time and salaries and travel and incidental expenses that it would not have had to expend were it not for the A.G. Spanos Defendants' violations.** FHOM, FHNV, MFHS and FHC each diverted staff time and resources to meet with NFHA staff, receive detailed training concerning the accessibility requirements of the FHA and provide logistical support for NFHA staff. In addition to such support:
>
>         a. Plaintiff FHOM conducted **site visits and investigations** at Mountain Shadows and Windsor at Redwood Creek, two properties within its service area.
>         b. Plaintiff FHNV conducted **a site visit and investigation** at Hawthorn Village, **a property within its service area**.
>         c. Plaintiff MFHS conducted a site visit and investigation at Battery at Chamblee, a property within its service area.
>         d. Plaintiff FHC conducted tests at Delano and Arlington at Northwood, two properties **within its service area**.

FAC, ¶¶ 72-75.

5

Plaintiffs request declaratory and injunctive relief. Among other things, the requested injunctive relief would require the Spanos Defendants to survey all the apartment complexes they constructed throughout the United States since March 13, 1991 and to bring each allegedly non-FHA compliant complex into compliance. FAC, ¶¶ 39-40. Plaintiffs request attorneys' fees and costs, compensatory damages, and punitive damages. FAC, ¶¶ 40-41.

As noted above, Plaintiffs also seek an order "[e]njoining the Owner Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the A.G. Spanos Defendants." FAC, ¶. 40.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,1960 (2007). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

The court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007) ("conclusory allegations of law and unwarranted inferences" will not defeat an otherwise proper motion to dismiss); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987, *as amended by* 275 F.3d 1187 (9th Cir. 2001)("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1264-65.

**ANALYSIS**

While there are six motions brought by three groups of defendants in this case, all of them[1] revolve around the same three dispositive issues: 1) whether the FHA's two year statute of limitations bar some or all of plaintiff's claims; 2) whether plaintiffs, as fair housing organizations that are not themselves disabled and have not themselves been denied access to any facility as a result of the defendants' alleged actions have standing to sue for violations of the FHA; and 3) whether and to what extent Defendants must join all current owners of the properties in order to effectuate the relief requested.

**I.   Statute of Limitations[2]**

**A.   Spanos Defendants**

The Spanos Defendants argue that only those apartment complexes for which a certificate of completion has been issued within the last two years survive the FHA's two year statute of limitations. The FHA provides that a plaintiff must file suit within two years after "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Statutes of limitation "are intended to keep stale claims out of the courts." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). However, in *Havens*, the Supreme Court found that an alleged "continuing violation" of the Fair

---

[1] The four motions brought by the Spanos Defendants actually all argue the same points and seek the same relief, and thus are pointlessly repetitive and ultimately duplicative; indeed, the motions actually all incorporate pages-long swaths of argument from each other verbatim. The duplicative nature of these motions is most clearly demonstrated by the motion to strike, which argues that the sole grounds for "striking" the plaintiffs' claims is that they fail to state a claim – which is, of course, the same argument made in the Spanos Defendants' two other (and also similarly duplicative) motions to dismiss. Knickerbocker and Highpointe's motions largely parrot the repetitive arguments in the Spanos Defendants' motions, with the exception of arguments related to injunctive relief, which are discussed below.

[2] The Ninth Circuit recently addressed the question of when the FHA's two-year statute of limitations begins to run in *Garcia v. Brockway*, 503 F.3d 1092, 1101 (9th Cir. 2007). However, the Ninth Circuit has agreed to rehear the case *en banc*, and therefore *Garcia* cannot provide any guidance to this Court. *See* 512 F.3d 1089 ("The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit ")

Housing Act should be treated differently from one discrete act of discrimination: "[w]here the challenged violation is a continuing one, the staleness concern disappears." *Id.* The Supreme Court found that Congress had "broad remedial intent" when it crafted the FHA and that where a plaintiff "challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitation period, the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice." *See Silver State Fair Housing Council, Inc. v. ERGS, Inc.*, 362 F.Supp.2d 1218, 1221 (D. Nev. 2005) (citing *Havens*, 455 U.S. at 380-381). "Under the continuing violation doctrine, a plaintiff's complaint will not be time-barred if the defendant's related wrongful acts continue into the statute of limitations time frame. As a consequence, the statute of limitations only begins to run ... upon the last act in a series of related wrongful acts." *Moseke v. Miller and Smith, Inc.*, 202 F.Supp.2d 492, 500 n. 10 (E.D. Va. 2002).

Plaintiffs plead that the Spanos Defendants have engaged in a "continuing violation" of the FHA by designing and building FHA-noncompliant apartment complexes over a period of many years. Plaintiffs argue that under *Havens*, because the construction of the 82 complexes has been continuous in time since 1991, and since some of the allegedly noncompliant complexes are still being built, the statue of limitations has not begun to run on plaintiffs' claims. Defendants respond that *Havens* is inapplicable here. *See* Consolidated Opp'n at 11-15. In *Havens*, the Supreme Court was concerned with allegations of racial steering at an apartment complex: minorities were given false information about one apartment complexes in order to "steer" them away from renting apartments there. *Havens*, 455 U.S. at 380. However, four of the five alleged incidents had taken place outside of the limitations period, and therefore, the defendants argued, the plaintiffs could not prove a "pattern or practice" of racial steering that had occurred within the limitations period. *Id.* The Court was unpersuaded; it held that a continuing violation of the Fair Housing Act "should be treated differently from one discrete act of discrimination . . .Where the challenged violation is a continuing one, the staleness concern disappears" *Id.* The Court held that the defendants' "wooden" application of the statute of limitations, "which ignores the continuing nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the Act." *Id.*

Defendants argue that *Havens* can be distinguished because the "practice" of racial steering "by

definition continues over time," whereas the alleged "practice" here -- the construction of each of the allegedly noncompliant 82 complexes -- is really just a series of discrete, individual FHA violations, and therefore the statute of limitations begins to run at the completion of the construction of each complex. *See* Consolidated Reply at 19-22. This argument is unpersuasive: a single incident of "steering" constitutes an actionable violation of the FHA, just as the construction of each complex constitutes an actionable violation of the FHA. That more than one incident of steering occurred only demonstrates *a pattern* of such violations, not that each incident, standing on its own, is not a violation of the FHA. Defendants have offered no intelligible argument as to why the reasoning of *Havens* is not applicable to an alleged pattern or practice of construction-based violations of the FHA.

Indeed, the word "termination" in section 3613(a)(1)(A) was intended by Congress to "reaffirm the concept of continuing violations, under which the statute of limitations is measured from the last occurrence of the unlawful practice." H.R.Rep. No. 711, 100th Cong., 2d Sess. 22 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2194. As in *Havens*, the defendants advocate a "wooden"application of the statute of limitations, intended to "undermin[e] the broad remedial intent of Congress embodied in the Act," and this argument is similarly unpersuasive here. *Havens*, 455 U.S. at 380.  Plaintiffs have clearly alleged a "continuing violation" of the FHA by the Spanos Defendants, alleging that they "engaged in a continuous pattern and practice of discrimination against people with disabilities" since 1991 by "designing and/or constructing" apartment complexes that deny full access to and use of the facilities as required under the FHA, FAC, ¶ 4, and therefore none of the claims of the FAC against the Spanos Defendants are barred by the statute of limitations.

### B.   Class Defendants

The converse of the continuing violation doctrine, of course, is that a defendant that is *not* engaged in a continuing violation cannot be held liable for discriminatory acts outside of the limitations period. The apartment complexes owned by alleged defendant class representatives Knickerbocker and Highpointe were built outside of the limitations period. The First Amended Complaint alleges that construction of Knickerbocker and Highpointe's apartment complexes were completed in 2003, more than two years before this action was filed.  FAC ¶¶ 55, 62.

In very similar factual circumstances, the district court in *Silver State Fair Housing Council, Inc.*

9

*v. ERGS, Inc.*, 362 F. Supp. 2d 1218 (Dist. Nev. 2005), held that, while the builder of two allegedly noncompliant apartment complexes could be held liable under a "continuing violation" theory for both complexes since one of them was built within the limitations period, the *owner* of the complex built outside of the limitations could not similarly be held liable. As the *Silver State* court stated:

> Because Sierra Sage Apartments L.L.C. [the owner of the offending apartments built outside the limitations period] was an independent entity which took no part in the Silver Lake development [built within the limitations period], the alleged discriminatory acts at the Silver Lake development could not be linked to those at the Sierra Sage apartments to demonstrate a 'practice' that could bootstrap Sierra Sage Apartments L.L.C. past the two-year statute of limitations and into the present litigation.

*Id* at 1220. This Court agrees with the *Silver State* Court's reasoning: just as the Spanos Defendants cannot avoid liability for complexes built more than two years ago as they have allegedly engaged in a continuing violation of the FHA, Knickerbocker and Highpointe cannot be held liable for ownership of complexes built outside the limitations period where there is no allegation that have engaged in any violation within the limitations period.

Plaintiffs offer no intelligible principle by which this Court can impute the liability associated with the Spanos Defendants' continuing violations to Knickerbocker and Highpointe, and instead simply rest their laurels on the argument that the Spanos Defendants' conduct is not outside the limitations period. *See, e.g,* Highpointe Opp'n at 7-10. Therefore, the Court holds that the statute of limitations bars any liability as to Knickerbocker and Highpointe to the extent they are being sued for violations of the FHA.

Nevertheless, in response to their respective motions to dismiss, plaintiffs primarily argue that, even if they are not technically liable under the FHA, Knickerbocker and Highpointe should be included in this action because they are necessary parties for this Court to effectuate the injunctive relief sought. This argument is analyzed in section III below.

**II.  Standing**

Defendants argue that plaintiffs do not have standing to bring the instant claims because, to the extent they have suffered any injury, the injury was not independently caused by the defendants' act, but was instead the result of plaintiffs proactively seeking out violations of the FHA and attempting to remedy them through the instant litigation. Therefore, defendants argue, plaintiffs' "self-inflicted"

injuries do not bear a sufficient causal nexus with defendants' alleged actions to confer Article III standing.

Organizational standing is separate from the standing of the organization's members, turning instead on "whether the organization itself has suffered an injury in fact." *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). Section 3602(d) of the FHA defines a "person" who may sue under the Act to include "corporations" and "associations." 42 U.S.C. § 3602(d) (1988). As non-profit corporations, plaintiffs are "persons" protected by the statute. *See Havens*, 455 U.S. at 378-79 & n. 19; *Walker v. City of Lakewood*, 272 F.3d 1114, 1123, n. 1 (9th Cir.2001). Plaintiffs must therefore satisfy the requirement for individual standing: "a demonstration of concrete and particularized injury giving." *Baker v. Carr*, 369 U.S. 186, 204 (1962); *see also Havens*, 455 U.S. at 378-79.

In *Pacific Properties*, the Ninth Circuit reaffirmed its holding in *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) that an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question. *Pacific Properties*, 358 F.3d at 1101 (citing *Fair Housing*, 285 F.3d at 905).

Plaintiffs' allegations in the FAC closely track the requirements articulated in *Pacific Properties*. As to the frustration of mission element, plaintiffs allege:

> **[T]he A.G. Spanos Defendants frustrated the mission[3] of [each] Plaintiff**, inasmuch as it served to discourage people with disabilities from living at that dwelling, and encouraged other entities involved in the design and construction of covered units to disregard their own responsibilities under the FHA**.**

FAC, ¶ 73 (emphasis added). The Ninth Circuit held an even less specific statement of frustration of mission to be sufficient to satisfy this element in *Pacific Properties. Pacific Properties*, 358 F.3d at 1101 (finding allegation that plaintiff was "organized with the principal purpose of helping to eliminate discrimination against individuals with disabilities by ensuring compliance with laws intended to provide access to housing, public buildings, transportation, goods and services" was sufficient to satisfy

---

[3] Plaintiffs' alleged missions include advocating for the rights of people with disabilities to accessible housing, promoting equal housing opportunities, and eliminating housing and lending inequities. *See* FAC at ¶¶ 15-19.

11

this element because "[a]ny violation of the FHA would therefore constitute a 'frustration of [the plaintiff's] mission.'"). As to the diversion of resources, plaintiffs allege:

> The A.G. Spanos Defendants' continuing discriminatory practices **have forced Plaintiffs to divert significant and scarce resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices**, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing each to suffer concrete and demonstrable injuries

FAC, ¶ 74 (emphasis added).

Defendants contend that plaintiffs' allegation that they have had to "divert significant and scarce resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices" is insufficient to confer standing because they do not allege any diversion of resources other than that associated with actively seeking out and attempting to remedy the harms at issue in this case. Plaintiffs do not allege that they have had to divert resources because a disabled individual complained to them about the Spanos Defendants' discriminatory practices; indeed they do not allege that any disabled individual has actually suffered any injury because of the allegedly discriminatory acts. They instead allege only that they "became aware" of the alleged practices, and that they have had to divert resources to "identify, investigate, and counteract" such practices. Therefore, defendants argue, plaintiffs' alleged injuries are "self-inflicted" "expenses of litigation," which the Ninth Circuit suggested in *Pacific Properties* are, standing alone, insufficient to constitute a "diversion of resources" under this test. *Pacific Properties*, 358 F.3d at 1101 ("*Fair Housing* avoided the question whether the expense of litigation alone is enough to constitute a 'diversion of resources' under this test, but the court had previously indicated that such an allegation is generally insufficient."(citing *Lakewood*, 272 F.3d at 1124, n. 3) (internal citations omitted)).

However, the court in *Pacific Properties* held nearly identical allegations of diversion of resources to be sufficient to withstand a 12(b)(6) motion. The plaintiff in *Pacific Properties* alleged in its complaint that:

> [I]n order to monitor the violations and educate the public regarding the discrimination at issue, [the plaintiff] has had (and, until the discrimination is corrected, will continue) to divert its scarce resources from other efforts to promote awareness of-and compliance with-federal and state accessibility laws and to benefit the disabled community in other ways (for example, [the plaintiff's] efforts to free disabled persons from nursing homes.)[.]

12

1 *Id.* at 1105. The Court held that this was sufficient to confer standing: "we believe these allegations are
2 enough to constitute a showing of a 'diversion of resources' and to survive a 12(b)(6) motion." *Id.* These
3 allegations are nearly identical to the plaintiffs' allegations in the FAC; even parsing the *Pacific*
4 *Properties* plaintiff's allegations along the lines suggested by defendants, it is clear that in that case the
5 alleged diversion of resources was a result of the plaintiff's choice "to monitor the violations and
6 educate the public regarding the discrimination at issue," and was therefore "self-inflicted" within the
7 meaning suggested by defendants. Moreover, in that case, as in this case, the plaintiffs became aware
8 of the alleged violations through a proactive testing program, and not in response to any complaints by
9 members of the disabled community. *Id.* at 1097.

10 Despite the fact that *Pacific Properties* appears to be on point and dispositive, defendants
11 attempt to distance the holding of *Pacific Properties* from this case by arguing that the Ninth Circuit
12 only determined that the plaintiffs' allegations were sufficient to defeat a dismissal *with prejudice*, as
13 the lower court had dismissed the claims in that case without leave to amend. *Id.* at 1106. However, an
14 even cursory reading of the decision demonstrates that this is just not true: the Ninth Circuit held *de*
15 *novo* that the allegations "*are* enough to constitute a showing of a 'diversion of resources' and to survive
16 a 12(b)(6) motion**.**" *Id.* (emphasis added). In addition to so holding, the court *also* chastised the lower
17 court for dismissing the case with prejudice. *Id.* at 1106 ("[W]e accordingly reverse with regard to this
18 finding on a *de novo* review of this court's own law. We *also* believe that the district court abused its
19 discretion in denying [the plaintiff] leave to amend its complaint with regard to organizational standing
20 prior to dismissal." (emphasis added)).

21 Accordingly, given that the Ninth Circuit's guidance in *Pacific Properties* is on point, and given
22 that the language in FAC so closely tracks the language at issue there, this Court holds that plaintiffs
23 have properly alleged organizational standing.

24 **III.    Joinder of Indispensable Parties**

25     **A.    The Spanos Defendants' Motion**

26 The Spanos Defendants argue that plaintiffs' claims must be dismissed because of complications
27 presented by the potential joinder of the Owner Class Defendants. Plaintiffs seek to eventually certify
28 an "owner class" of defendants, consisting of "the current owners of covered apartment complexes that

13

were designed and/or built by the A.G. Spanos Defendants since the effective date of the FHA, but are no longer owned by the A.G. Spanos Defendants." FAC, ¶ 32. With respect to these defendants, plaintiffs seek an order:

> [e]njoining the Owner Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the A.G. Spanos Defendants.FAC, ¶. 40.

The Spanos Defendants argue that plaintiffs must join the current owners of all 82 properties that are the subject of this litigation, as well as all current tenants and the secured lenders of the properties, and that the failure to do so constitutes grounds for dismissal pursuant to Rule 12(b)(7) for failure to join indispensable parties. However, Defendants argue, this argument places plaintiffs in a catch-22, because this Court likely lacks personal jurisdiction over most, if not all of the defendant class members. *See* Spanos Mot. to Dismiss at 1-2.

Plaintiffs argue that the mechanism of certification of a class of defendant owners overcomes this problem. *See* Consolidated Opp'n at 31-34. The Spanos Defendants respond that even if a defendant class is certified, the Court must have personal jurisdiction over all of the defendant class members in order to satisfy due process concerns, and therefore there is simply no way for these concededly indispensable parties to be brought into this action. *See* Spanos Mot. to Dismiss at 1-2.

However, it is well settled that jurisdiction is not needed over absent members of a defendant class. *See* 2 Newberg on Class Actions § 4:34 (4th ed.). Personal jurisdiction need not be proper as to the unnamed members of a defendant class, so long as it is proper as to all named defendant members. *See Abrams Shell v. Shell Oil Co.*, 165 F.Supp.2d 1096, 1107 (C.D.Cal. 2001) (citing *In re Gap Stores Securities Litigation*, 79 F.R.D. 283, 292 n .6 (N.D.Cal.1978)). The Spanos Defendants are simply wrong to suggest that, were this court to certify a defendant class it would still need personal jurisdiction over all the defendant members. *See Abrams*, 165 F.Supp.2d 1096

Thus, while the Court makes no determination at this stage as to the propriety of the certification of a defendant class, the Spanos Defendants' arguments that class certification cannot be used to join absent defendants in order to effectuate injunctive relief fails.

14

### B.      Knickerbocker's Motion

Proposed defendant class representative Knickerbocker argues that plaintiffs have not alleged a proper basis for injunctive relief against the Owner Class Defendants because plaintiffs have failed to allege the requirements of "irreparable injury" and "inadequacy of legal remedies." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (plaintiff must demonstrate irreparable injury in order to obtain injunctive relief); *Morales v. Trans World Airlines*, 504 U.S. 374, 381 (1992) (court will ordinarily grant injunctive relief only where legal remedy is inadequate). Specifically, Knickerbocker argues that damages against the Spanos Defendants should be sufficient to redress any harm allegedly suffered by plaintiffs, and therefore an injunction (and consequently the Owner Class Defendants' presence in this action) is not necessary, and in any case would be so intrusive as to constitute a violation of the class defendants' due process rights. *See* Knickerbocker Mot. at 9.

However, other courts considering injunctions in civil rights cases involving the FHA have determined that an injunction of the sort requested here is necessary to afford full relief, and that the propriety of granting such an injunction is to be guided by general principles of equity and a balancing of interests. *See Baltimore Neighborhoods, Inc. v. Rommell Builders, Inc.*, 40 F. Supp. 2d 700, 711-12 (D.Md.1999); *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F.Supp.2d. 456 (D. Md. 2000). In *Rommel*, the plaintiffs alleged, as do the plaintiffs here, that "the violations [of the FHA would] continue to exist in perpetuity unless the Court exercises its equitable remedies to fashion a reasonable remedy." *Rommell*, 40 F. Supp. 2d at 712. The court found this sufficient to plead grounds for injunctive relief, stating: "[t]he Court is persuaded that [the defendants'] presence as a party in the suit appears imperative in order to afford full relief, if necessary . . ." *Id.*

This Court is similarly persuaded that the Owner Class Defendants' presence in this case is necessary to effectuate the remedial relief plaintiffs seek, *viz.*, the retrofitting of the noncompliant properties. *See* FAC ¶ 40 (seeking an order "[e]njoining the Owner Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties."). As in *Rommell*, the alleged violations of the FHA will "continue to exist in perpetuity," and therefore full relief will not be afforded, if an injunction cannot be issued. Under Rule 19(a)(1), a party is deemed "necessary" if complete relief cannot be granted in its absence. *Disabled Rights Action Committee v. Las Vegas Events,*

*Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). "This factor is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.1983). In conducting a Rule 19(a)(1) analysis, courts ask whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties. *See id.* Here, unless the owner defendants are included in this action, the FHA violations at existing facilities will continue to frustrate plaintiffs' missions and necessitate the diversion of plaintiffs' resources. While damages and a prospective injunction against the Spanos Defendants may be partial relief for plaintiffs, a injunction may be necessary to fashion truly "meaningful relief." *See id.*

Defendants do not dispute that if their presence is necessary to afford full relief they may brought into this action as defendants, notwithstanding their lack of liability under FHA. *See* Spanos Mot. to Dismiss (conceding that owner defendants are a necessary to effectuate relief sought by plaintiffs); *see also* Adv. Comm. Notes to 1966 Amendment to FRCP 19 (a)(plaintiff is required to join "all persons who are materially interested in the subject matter of the case and who are needed for just adjudication."). Moreover, the fact that plaintiffs do not allege that the owner class defendants have themselves violated the FHA has no bearing on the propriety of the owners being joined under Rule 19. Under Rule 19, no direct claim is required against a party sought to be joined. *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005) ("[A] plaintiff's inability to state a direct cause of action against an absentee party does not prevent the absentee's joinder under Rule 19."). Indeed, by definition, the parties to be joined under Rule 19 are those against whom no relief has formally been sought but who are "so situated as a practical matter as to impair the effectiveness of relief" that may be granted to the parties who are present.[4] *Id.* (internal quotes omitted); *Sierra Club v. Hodel*, 848 F.2d 1068, 1077 (10th Cir. 1988), *overruled on other grounds by Village of Los Ranchos De Albuquerque*

---

[4] For example, in *Peabody* the EEOC sued Peabody Western Coal Co. for employment discrimination in violation of Title VII, claiming Peabody maintained a hiring preference favoring Navajo Tribe members. *Peabody Western Coal Co.*, 400 F3d at 781. Peabody claimed this preference was required under the terms of its mining lease with the Tribe, and moved to dismiss because the Tribe had not been joined. *Id.* The court held that, though the Tribe was exempt under Title VII and therefore a direct cause of action could not be stated against it, its joinder was "necessary to effect complete relief among the parties."*Id.*

16

*v. Marsh*, 956 F.2d 970, 973 (10th Cir.1992) (joinder of county proper in action against federal agency even though plaintiff could not sue county directly).

However, defendants argue that the injunctive relief requested by the plaintiffs, namely, the retrofitting of all noncompliant features is intrusive and unduly burdensome. The Court is mindful of the concerns related to inconveniencing owner defendants who, though they have themselves done no more than purchase a non-compliant property from Spanos Defendants, may nevertheless be required to accede to an injunction. However, the Court has the discretion to fashion an injunction that is minimally disruptive to current owners or occupants. *See, e.g., United States v. ERGS Inc.*, et al. CV-N-02-0615D WH (VPC) (D. Nev.), consent order entered July 13, 2005 (requiring accessability improvement work to be done in between tenancies while apartments are vacant, and including detailed provisions to minimize the inconvenience to tenants). Second, insofar as the owner defendants may eventually be brought into this action through the mechanism of a class action, the Court may require notice and an opportunity to be heard, and the interests of the owners may be advocated for by the named defendants. *See Jeffries v. Georgia Residential Finance Authority*, 678 F.2d 919, 929 (11th Cir. 1982) (discussing joinder of a defendant class of owners).

Finally, the question of whether and to what extent such an injunction is among "the least intrusive remedies" to effectuate this relief is more appropriately reached at the class certification or damages stage of this litigation, assuming these stages are eventually reached.

## CONCLUSION

Defendants have failed to demonstrate: 1) that the FHA's two year statute of limitations bars some or all of plaintiff's claims; 2) that plaintiffs do not have standing to sue for violations of the FHA; or 3) that concerns related to the defendant owner class preclude the injunctive relief requested by plaintiffs. Additionally, while the two-year statute of limitations bars any liability under the FHA as to proposed class representatives Knickerbocker and Highpointe, the presence of the Owner Class Defendants is necessary to afford injunctive relief and therefore the claim for injunctive relief may not be dismissed as to them insofar as they are potential class representatives.

Accordingly, the motions to dismiss (including the Spanos Defendants' misnamed motions "for a more definite statement" and "to strike") [Docket Nos. 48, 49, 50, 52, 57 and 60] are DENIED.

IT IS SO ORDERED.

Dated: 3/26/08

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge