MAXWELL M. FREEMAN, #31278
LEE ROY PIERCE, JR., #119318
MICHAEL L. GUREV, #163268
THOMAS H. KEELING, #114979
FREEMAN, D'AIUTO, PIERCE,
  GUREV, KEELING & WOLF
A PROFESSIONAL LAW CORPORATION
1818 Grand Canal Boulevard, Suite 4
Stockton, California  95207
Telephone: (209) 474-1818
Facsimile:  (209) 474-1245
E-mail:        lrpierce@freemanfirm.com
               mgurev@freemanfirm.com
               tkeeling@freemanfirm.com

Attorneys for Defendants A.G. Spanos
Construction, Inc.; A.G. Spanos
Development, Inc.; A.G. Spanos
Land Company, Inc.; A.G. Spanos
Management, Inc., The Spanos Corporation

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Fair Housing Alliance, Inc., et al.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>A.G. Spanos Construction, Inc., et al.<br><br>                    Defendants.<br>_____ | CASE NO.  C07-03255-SBA<br><br>**PETITION OF DEFENDANTS A.G. SPANOS CONSTRUCTION, INC., A.G. SPANOS DEVELOPMENT, INC., A.G. SPANOS LAND COMPANY, INC., A.G. SPANOS MANAGEMENT, INC., AND THE SPANOS CORPORATION FOR CERTIFICATION PURSUANT TO 28 U.S.C. SEC. 1292(b)**<br><br>**Hearing date:  June 10, 2008**<br>**Time:              1:00 p.m.**<br>**Dept:              Courtroom 3**<br><br>**Complaint Filed: June 20, 2007** |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

        PLEASE TAKE NOTICE that petitioners/defendants, A.G. Spanos Construction, Inc.,

A.G. Spanos Development, Inc., A.G. Spanos Land Company, Inc., A.G. Spanos

Management, Inc., and The Spanos Corporation (collectively the "Spanos Defendants") will

move the court at the time and place specified above, for a certification that this court's order

1    of March 26, 2008, denying the Spanos Defendants' motion to dismiss plaintiffs' claims

2    pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), is appropriate for immediate

3    appeal pursuant to 28 U.S.C., section 1292(b).

4         The petition will be made based upon this notice, the attached motion, this Court's

5    March 26, 2008 order, the records contained in the Court's file in this matter, and such further

6    evidence, whether documentary or oral, as may be presented at the time of the noticed hearing.

7                             Respectfully submitted,

8    Dated: April 25, 2008                 FREEMAN, D'AIUTO, PIERCE, GUREV,
                             KEELING & WOLF

9

10                            By _____

11                               LEE ROY PIERCE, JR.
                         Attorneys for Petitioners/Defendants A.G. Spanos

12                            Construction, Inc.; A.G. Spanos Development,
                         Inc.; A.G. Spanos Land Company, Inc.; A.G.

13                            Spanos Management, Inc., The Spanos
                         Corporation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MOTION FOR CERTIFICATION OF ORDER FOR APPEAL
## PURSUANT TO 28 U.S.C., SECTION 1292(b)

## I.
## INTRODUCTION

Plaintiffs first amended complaint alleges that approximately 82 apartment complexes located in 10 states, allegedly designed and constructed by the Spanos Defendants between 1991 and 2007, do not comply with requirements of the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, et seq.  Plaintiffs make the same claim with respect to an unknown number of unidentified properties located, presumably, throughout the United States in unspecified locations.  The Subject Properties allegedly contain over 22,000 apartment units. Plaintiffs seek an injunction commanding defendants to rebuild or retrofit the Subject Properties to conform to the FHAA.

On or about February 19, 2008, the Spanos Defendants filed a motion to dismiss the action for failure to state a claim upon which relief could be granted, pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6). The motion to dismiss argued that the first amended complaint should be dismissed because:

(1)    plaintiffs lacked standing;

(2)    plaintiffs failed to allege a cause of action; and

(3)    plaintiffs' claims were barred under the FHAA's two-year statute of limitations.

On March 26, 2008 this Court issued is order denying the Spanos Defendants' motion to dismiss.  See Exhibit 1, attached.

## II.

## FACTS

The allegations of plaintiffs' first amended complaint are nicely stated at pp. 2-5 of this Court's March 26, 2008 order.  See Ex. 1, attached, at pp. 2-5.

## III.

## ISSUES TO BE ADDRESSED ON APPEAL

The Spanos Defendants seek immediate appeal of this Court's order denying the Spanos Defendants' motion to dismiss.  The appellate issues are:

(1)   Have plaintiffs sufficiently alleged standing?

(2)   Have plaintiffs sufficiently alleged a cause of action in themselves or anyone else?

(3)   Are plaintiffs' claims barred by the FHAA's two-year statute of limitations?

**IV.**

**THE 12(b)(6) ORDER IS APPROPRIATE FOR CERTIFICATION**

**UNDER SECTION 1292(b)**

An otherwise interlocutory order may be the subject of a petition to the appellate court for permission to appeal pursuant to 28 U.S.C. section 1292(b) and Federal Rules of Appellate Procedure, Rule 5, _if_ the District Court certifies the order for appeal.  Such an order must involve a controlling question of law as to which there is substantial ground for difference of opinion and where a resolution thereof will materially advance the termination of the litigation. The Spanos Defendants believe the order denying their motion to dismiss - - "the 12(b)(6) Order" - - satisfies all three prerequisites, and therefore request this Court issue a certification order.

Section 1292(b) authorizes a district court judge issuing an otherwise non-appealable order, who is of the opinion that the order is appropriate for immediate appeal, to state in that order the following:

(1) the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) that an immediate appeal may materially advance the termination of the litigation.

28 U.S.C. § 1292(b).  If the initial order does not contain such a statement, Federal Rule of Appellate Procedure Rule 5 permits the order to be amended at any time to include the Section 1292(b) statement.  Thus, it is appropriate for the Spanos Defendants to seek certification of the 12(b)(6) order at this time.

Certification of an order for interlocutory appeal is especially appropriate in "exceptional" cases - - large, protracted or potentially complex civil litigation.  In re Cement

1  Antitrust Litigation, (MDL No. 296) 673 F.2d 1020, 1026 (9th Cir. 1982) [Section 1292(b)

2  "was only to be used in exceptional situations in which allowing an interlocutory appeal would

3  avoid protracted and expensive litigation"], aff'd. for absence of quorum sub nom., Arizona v.

4  Ash Grove Cement Co., 459 U.S. 1190 (1983); United States Rubber Co. v. Wright, 359 F.2d

5  784, 785 (9th Cir. 1966) [interlocutory appeal appropriate in "extraordinary cases where

6  decision of an interlocutory appeal might avoid protracted and expensive litigation"]; Steering

7  Committee v. United States, 6 F.3d 572, 575 (9th Cir. 1993) [section 1292(a) certification is

8  appropriate where resolution of liability issues will eliminate need for trial].

9      As this Court is well aware, this is an extraordinary civil action.  If an interlocutory

10 appeal is permitted, this Court can implement any decision of the Ninth Circuit favorable to the

11 Spanos Defendants on remand.  Trial of this case will thereby be expedited or avoided

12 altogether, and will not be delayed.

13     **A.    THE 12(b)(6) ORDER INVOLVES CONTROLLING QUESTIONS OF
              LAW.**
14

15     The issues raised by the 12(b)(6) Order are controlling questions of law.  All three

16 issues raised are case dispositive.

17     If plaintiffs lack standing, this case must be dismissed.  The same is true if plaintiffs

18 lack a cause of action.  And, the Spanos defendants' statute of limitations defense is case

19 dispositive as to all apartment complexes built more than two years before suit was filed.[1]

20     **B.    THIS COURT SHOULD DECLARE THAT A SUBSTANTIAL GROUND
              FOR DIFFERENCES OF OPINION AS TO THE 12(b)(6) ORDER
21            EXISTS.**

22     A substantial ground for difference of opinion exists regarding all 3 issues sought to be

23

24
    _____

25     [1]  See United States v. Woodbury, 263 F.2d 784 (9th Cir. 1959) ["we do not hold that a
    question brought here on interlocutory appeal must be dispositive of the lawsuit in order to be
26 regarded as a controlling question"].  "Courts have refused to interpret the phrase so narrowly
    as to require that reversal of the district court's order terminate the litigation."  Cement
27 Antitrust Litig., 673 F.2d at 1026  ["[A]ll that must be shown in order for a question to be
    'controlling' is that resolution of the issue on appeal could materially affect the outcome of
28 litigation in the district court"].

1  certified.  See, e.g., R. Schwemm, "Barriers to Accessible Housing: Enforcement Issues in

2  Design and Construction Cases under the Fair Housing Act, 40 U. Richmond L.Rev. 753,

3  (2006), explaining that case law conflicts on the issues of (1) standing under the FHAA; (2)

4  who is liable under the FHAA; and (3) whether the continuing violations doctrine avoids the

5  FHAA's statute of limitations.

6          **1.**    **Issue 1 - Have Plaintiffs Alleged Standing?**

7        To show standing under Article III:  "[a] plaintiff must allege personal <u>injury</u> fairly

8  <u>traceable</u> to the defendant's <u>allegedly unlawful conduct</u> and <u>likely to be redressed</u> by the

9  requested relief."  <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984), emphasis added.

10                **a.**       **Case Law Conflicts Regarding Whether Plaintiffs' First**
11                        **Amended Complaint Alleges Unlawful Conduct.**

12        As this Court's order explains: "[p]laintiffs . . . do not allege that any disabled

13  individual has actually suffered any injury because of the [Spanos Defendants'] allegedly

14  discriminatory acts."  Ex. 1, 12(b)(6) Order, p. 12:10-13.

15        Courts differ regarding whether allegations of mere failure to "design and construct" - -

16  without the consequent denial of a rental or other injury - - alleges a violation of law, sufficient

17  to support standing.  See <u>Fair Housing Council v. Village of Olde St. Andrews, Inc.</u>, 210

18  F.App'x. 469, 480 (6th Cir. 2006) ["[F]rom a purely textual standpoint a violation of the

19  relevant Fair Housing Act provision here requires more than the mere design and construction

20  of a noncompliant housing unit.  Recall, the text of the Fair Housing Act itself focuses on

21  housing discrimination in the sale or rental of housing units"].  Emphasis in original,

22  unpublished disposition.  And see, <u>Independent Housing Services of San Francisco v. Fillmore</u>

23  <u>Center</u>, 840 F.Supp. 1328 at 1335 (N.D. Cal. 1993) [To plead an "unlawful act" [i]t is . . .

24  sufficient to allege that . . . but for the inaccessible features] the excluded person would

25  otherwise go into the building"]; see also, <u>Wilson v. Glenwood Intermountain Properties, Inc.</u>,

26  98 F.3d 590, 594 (10th Cir. 1996) [discrimination cannot be the cause of injury to a plaintiff

27  who would not have sought to obtain the benefit even in the absence of the discrimination];

28  <u>Allen v. Wright, supra</u>, 468 U.S. at 75 [Only those persons personally denied rights by the

1  challenged unlawful discrimination have standing to sue].

2        **b.  Case Law Conflicts Regarding Whether Plaintiffs' Voluntarily Incurred Injury Will Support Standing.**

3

4      This Court's 12(b)(6) order states:

5  > Plaintiffs do not allege that they have had to divert resources
   > because a disabled individual complained to them about the
6  > Spanos Defendants' discriminatory practices; indeed they do not
   > allege that any disabled individual has actually suffered any injury
7  > because of the allegedly discriminatory acts.  They instead allege
   > only that they "became aware" of the alleged practices, and that
8  > they have had to divert resources to "identify, investigate, and
   > counteract" such practices.  Therefore, defendants argue,
9  > plaintiffs' alleged injuries are "self-inflicted" "expenses of
   > litigation," which the Ninth Circuit suggested in <u>Pacific</u>
10 > <u>Properties</u> are, standing alone, insufficient to constitute a
   > "diversion of resources" under this test.  <u>Pacific Properties</u>, 358
11 > F.3d at 1101 ["<u>Fair Housing</u> avoided the question whether the
   > expense of litigation alone is enough to constitute a 'diversion of
12 > resources' under this test, but the court had previously indicated
   > that such an allegation is generally insufficient"] citing
13 > <u>Lakewood</u>, 272 F.3d at 1124, n. 3 (internal citations omitted).

14   Ex. 1, 12(b)(6) Order,  p. 12:10-21.

15     Courts differ regarding whether voluntarily incurred injury will support standing.  See

16 e.g., <u>Spann v. Colonial Village, Inc.</u>, 899 F.2d 24, 27-29 (D.C. Cir. 1990) ["[A]n

17 organization cannot, of course, manufacture the injury necessary to maintain a suit from its

18 expenditure of resources on that very suit"]; <u>Project Sentinel v. Evergreen Ridge Apartments</u>,

19 40 F.Supp.2d 1136, 1140-1141 (N.D. Cal. 1999) ["Plaintiff cannot manufacture standing by

20 asserting an abstract interest in 'monitoring and investigating housing providers and bringing

21 about compliance with state and federal housing laws' and then claiming the cost of litigation

22 as the *sole* underlying Article III injury.  Rather, plaintiff must demonstrate that the

23 defendants' allegedly unlawful conduct somehow affected plaintiff's ability to operate, thereby

24 giving rise to the need to divert funds to litigation.  In the present case, defendants' alleged

25 conduct did not obstruct plaintiff's mission, it created plaintiff's mission"].

26       **c.  Case Law Conflicts Regarding Whether Plaintiffs Have Alleged Redressability.**

27

28     If plaintiffs lack standing to seek injunctive relief, their alleged injury - - frustration of

1  mission - - is not redressable. Plaintiffs seek nationwide injunctive relief, yet no plaintiff is

2  disabled, and "[p]laintiffs . . . do not allege that any disabled person has actually suffered an

3  injury because of the [Spanos Defendants'] allegedly discriminatory acts." Ex. 1, 12(b)(6)

4  Order, p. 12:10-13.

5         Courts differ regarding whether someone who is not disabled and has not been sought

6  to rent has standing to seek injunctive relief. See Molski v. Mandarin Touch Restaurant, 385

7  F.Supp.2d 1042 (C.D. Cal. 2005); and see, e.g., Harris v. Itzhaki, 183 F.3d 1043, 1050 (9th

8  Cir. 1999) [Plaintiff's request for declaratory and injunctive relief rendered moot by her

9  departure from the complex].

10        In addition, plaintiffs do not allege that this Court has personal jurisdiction over the

11  owner defendants.  Absent bringing the owner defendants into this case, injunctive relief is not

12  feasible.  And, substantial differences of opinion exists regarding whether due process requires

13  that a court have personal jurisdiction over the owner defendant class members.  See Whitson

14  v. Heilig-Meyers Furniture, Inc., 1995 U.S. Dist. LEXIS 4312, *49 (N.D. Ala. 1995); see,

15  also, National Assn. for Mental Health, Inc. v. Califano, 717 F.2d 1451, 1455 (D.C. Cir.

16  1983) [affirming district court's order refusing to certify a defendant class where the named

17  representatives would not "fairly and adequately protect the interests of the class" and where

18  the district court did "not have in personam jurisdiction over the class members"].

19           **2.     Issue 2 - Have Plaintiffs Alleged A Cause Of Action?**

20        The Spanos Defendants are not alleged to be the owners of the complexes sued on.

21  Opinions differ regarding whether only owners, and not developers, may be held liable for

22  denial of a rental in an FHAA design and construction case.  See, e.g., Growth Horizons, Inc.

23  v. Delaware County, 983 F.2d 1277, 1283 (3d Cir. 1993).  Lonberg v. Sanborn Theatres, 259

24  F.3d 1029, 2001 U.S.App.LEXIS 17418, at *18 (9th Cir. 2001) ["[A]fter [a] noncompliant

25  building has already been built, injunctive relief is only meaningful against the person

26  currently in control of the building.  That is, the architect who built the building is by the time

27  of suit by an eligible plaintiff out of the picture.  This limitation on relief suggests that reading

28  Title III to make architects, and others who do not own, lease, or operate buildings, such as

1   builders and construction subcontractors, liable for "design and construct" discrimination

2   would create liability in persons against whom there is no meaningful remedy provided by the

3   statute].

4         **3.**    **Issue 3 - Are Plaintiffs' Claims Barred By The FHAA's Statute of Limitations?**

5

6        Courts differ regarding whether the continuing violations doctrine is applicable to an

7   FHAA design and construct case.   See e.g., <u>Hargraves v. Capital City Mortgage Corp.</u>, 140

8   F.Supp.2d 7, 18 (D.D.C. 2000) citing <u>Taylor v. FDIC</u>, 132 F.3d 753, 764-765 (D.D.C.

9   1997).  See also, <u>United States v. Pac. Northwest Electric</u>, 2003 U.S. Dist. LEXIS 7990, *15

10  (D. Idaho Nov. 20, 2003) ["This 'failure' [to design and construct] occurs and is complete at

11  the time the particular dwellings are designed and/or constructed.  There is no basis, under the

12  plain language of § 3604(f)(3) of the FHA for applying the continuing violation doctrine"].

13  **C.**    **AN IMMEDIATE APPEAL FROM THE 12(b)(6) ORDER WILL MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS**

14      **LITIGATION.**

15       Because all three issues sought to be certified for appeal are case dispositive, immediate

16  appeal will accelerate and not delay this litigation

17                       **V.**

18               **CONCLUSION**

19       For the foregoing reasons, the Spanos Defendants respectfully requests that this Court

20  issue an order certifying the order of April 4, 2008, for immediate appeal pursuant to 28

21  U.S.C. section 1292(b).

22                          Respectfully submitted,

23  Dated: April 25, 2008          FREEMAN, D'AIUTO, PIERCE, GUREV, KEELING & WOLF

24

25                      By _____

26                         LEE ROY PIERCE, JR.
                           Attorneys for Defendants A.G. Spanos

27                         Construction, Inc.; A.G. Spanos Development, Inc.; A.G. Spanos Land Company, Inc.; A.G.

28                         Spanos Management, Inc., The Spanos Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATIONAL FAIR HOUSING
ALLIANCE, et al.

        Plaintiffs,

  vs.

A.G. SPANOS CONSTRUCTION,
INC., et al.,

        Defendants.

07-3255 SBA

**ORDER**
[Docket Nos. 48, 49, 50, 52, 57 and 60]

Currently before the Court are:

1.     Defendant A.G. Spanos Construction Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 48];

2.     Defendant A.G. Spanos Construction Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to Join Necessary and Indispensable Parties [Docket No. 49];

3.     Defendant A.G. Spanos Construction Inc.'s Motion for More Definite Statement [Docket No. 50];

4.     Defendant A.G. Spanos Construction Inc.'s Motion to Strike Various Claims for Relief Sought in Plaintiffs' First Amended Complaint [Docket No. 52];

5.     Defendant Knickerbocker Properties, Inc. XXXVII's Motion to Dismiss [Docket No. 57]; and

6.     Defendant Highpointe Village, L.P.'s Motion to Dismiss [Docket No. 60].

Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. For the reasons articulated below, the Court hereby DENIES the motions.

EXHIBIT 1

United States District Court
For the Northern District of California

# BACKGROUND

## A.    The Parties

### 1.    The Plaintiffs

The Plaintiffs are five fair housing organizations: (1) the National Fair Housing Alliance, "a national non-profit entity" with its principle place of business in Washington, D.C.; (2) Fair Housing of Marin, "a private non-profit community organization" located in San Rafael, California; (3) Fair Housing Napa Valley, "a non-profit community organization" located in Napa, California; (4) Metro Fair Housing Services, "a nonprofit community organization" located in Atlanta, Georgia; and (5) The Fair Housing Continuum, Inc., "a private, non-profit organization committed to equal housing opportunity and the elimination of discrimination in Florida." *See* First Amended Complaint ("FAC") at ¶¶ 15-19. Plaintiffs' alleged missions include advocating for the rights of people with disabilities to accessible housing, promoting equal housing opportunities, and eliminating housing and lending inequities. *Id.* at ¶¶ 15-19.

### 2.    The A.G. Spanos Defendants

Defendants A. G. Spanos Construction, Inc., A. G. Spanos Development, Inc., A. G. Spanos Land Company, Inc., A.G. Spanos Management, Inc., and The Spanos Corporation (the "Spanos Defendants") are California corporations with principal offices in Stockton. *Id.* at ¶¶ 20-25. The Spanos Defendants allegedly "engaged in one or more activities related to land acquisition, development, construction, and management of multifamily apartment complexes throughout the United States." *Id.* at ¶ 20.

### 3.    Defendant Highpointe Village, L.P.

Defendant Highpointe Village, L.P. ("Highpointe") is alleged to be the owner of a single apartment complex consisting of approximately 300 units, known as Highpointe Village, in Overland Park, Kansas. *See id.* at ¶¶ 34, 62. This apartment complex was allegedly "designed and/or built" by the Spanos Defendants." *Id.* at ¶ 34. Construction of Highpointe Village is alleged to have been "completed in 2003." *Id.* at ¶ 62 (p. 27:2). Overland Park issued the last certificate of occupancy for Highpointe Village on December 8, 2003, *more than three years* before Plaintiffs filed this complaint. *See* Certificate of Occupancy (RJN, Exh. B). Highpointe is named both individually and as one of two

2

United States District Court
For the Northern District of California

representatives of a defendant class comprised of both known and unknown "current owners of non-compliant units" (the "Owner Class Defendants"). *See, e.g.*, FAC at ¶¶ 1, 30.

### 4.    Defendant Knickerbocker Properties, Inc. XXXVIII

The second named representative of the Owner Class Defendants is Knickerbocker Properties, Inc. XXXVIII ("Knickerbocker"), which is alleged to own two apartment complexes also alleged to have been "designed and/or constructed by the A.G. Spanos Defendants": (1) "Mountain Shadows" in Rohnert Park, California; and (2) "The Commons" in Vacaville, California. *Id.* at ¶¶ 32-33. Like Highpointe, Knickerbocker is also sued individually. *Id.* at ¶ 32.

### 5.    The Owner Class Defendants

Plaintiffs intend to seek certification of a defendant class consisting of "the current owners of covered apartment complexes that were designed and/or built by the A.G. Spanos Defendants since the effective date of the FHA, but are no longer owned by the A.G. Spanos Defendants" (the "Owner Class Defendants"). *Id.* at ¶ 32. Such apartment complexes allegedly do "not fully comply with the accessibility and adaptability requirements of the FHA." *Id.* at ¶ 35. The properties are owned by the Owner Class Defendants and located in at least 9 different states.

### B.    Allegations Of Non-Compliance With The FHA

### 1.    Alleged violations of the FHA by the Spanos Defendants

Plaintiffs allege that 82 apartment complexes located in 10 states, allegedly designed and constructed by the Spanos Defendants between 1991 and 2007, do not comply with requirements of the Fair Housing Amendments Act ("FHA"), 42 U.S.C. §§ 3601, et. seq. They make the same claim with respect to an unknown number of unidentified properties located, presumably, throughout the United States in unspecified locations. The subject properties allegedly contain over 22,000 apartment units. Plaintiffs seek an injunction ordering defendants to retrofit the properties to conform to the FHA.

More specifically, Plaintiffs allege that the Spanos Defendants "have been involved in the design and construction of approximately [82] multifamily complexes in California, Nevada, Arizona, Colorado, New Mexico, Texas, Kansas, North Carolina, Georgia and Florida." FAC, ¶ 27. Plaintiffs claim to have identified 34 apartment complexes in California, Arizona, Nevada, Texas, Kansas, Georgia, and Florida (the "Tested Properties"), totaling more than 10,000 individual apartment dwelling

units, that do not meet the accessibility requirements of the FHA. FAC, ¶¶ 3, 30. With respect to the Tested Properties, Plaintiffs allege that since 1991 the Spanos Defendants have "engaged in a continuous pattern and practice of discrimination against people with disabilities" by "designing and/or constructing" apartment complexes that deny full access to and use of the facilities as required under the FHA. FAC, ¶ 4.

Plaintiffs also allege that 49 additional apartment complexes in 10 states which the Spanos Defendants designed or constructed (the "Untested Properties") also violate FHA accessibility requirements. FAC, ¶ 6 and Appendix A to Complaint. The Spanos Defendants are also alleged to have designed or constructed an unspecified number of additional unidentified apartment complexes located in states not yet known to Plaintiffs. FAC, ¶ 28.

Plaintiffs claim to have "identified at least one FHA violation and, in most cases, multiple violations, at each of the Tested Properties." Based on the alleged frequency and similarity of these violations, Plaintiffs allege "a pervasive pattern and practice of designing and constructing apartment communities in violation of the FHA accessibility design requirements." FAC, ¶ 45. Alleged FHA violations at the Tested Properties also include failure to design and construct the public and common areas so that they are readily accessible to and usable by people with disabilities. FAC, ¶¶ 45-47. As for the Untested Properties, Plaintiffs allege only that they were designed and/or constructed after March, 1991. FAC, ¶ 6.

### 2.     Allegations Related to the Owner Class Defendants

Plaintiffs do not allege that Highpointe, Knickerbocker or any other Owner Class Defendant has violated the FHA or any other law. However, Plaintiffs seek a court order against the Owner Class Defendants:

> Enjoining the Owner [Class] Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against A.G. Spanos Defendants.

*Id.* at p. 40:16-21.

United States District Court
For the Northern District of California

**B.      Alleged Injuries to Plaintiffs and Relief Sought**

Plaintiffs allege injury as follows:

72.      As a result of the A.G. Spanos Defendants' actions described above, Plaintiffs have been directly and substantially injured in that they have been **frustrated in their missions to eradicate discrimination in housing,** and in carrying out the programs and services they provide, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to individuals and families looking for housing or affected by discriminatory housing practices and eliminating discriminatory housing practices.

73.      As outlined above, each Plaintiff has invested considerable time and effort in **educating its respective communities** about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and construction of covered multifamily dwellings. Each time the A.G. Spanos Defendants designed and constructed covered dwellings that did not comply with the FHA **in one of Plaintiffs' service areas, the A.G. Spanos Defendants frustrated the mission of that Plaintiff,** inasmuch as it served to discourage people with disabilities from living at that dwelling, **and encouraged other entities** involved in the design and construction of covered units to disregard their own responsibilities under the FHA.

74.      The A.G. Spanos Defendants' continuing discriminatory practices **have forced Plaintiffs to divert significant and scarce resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices,** and such practices have frustrated Plaintiffs' other efforts against discrimination, causing each to suffer concrete and demonstrable injuries.

75.      Each Plaintiff conducted site visits, investigations, **surveys and/or tests at the Tested Properties, resulting in the diversion of its resources in terms of staff time and salaries and travel and incidental expenses that it would not have had to expend were it not for the A.G. Spanos Defendants' violations.** FHOM, FHNV, MFHS and FHC each diverted staff time and resources to meet with NFHA staff, receive detailed training concerning the accessibility requirements of the FHA and provide logistical support for NFHA staff.  In addition to such support:

a. Plaintiff FHOM conducted **site visits and investigations** at Mountain Shadows and Windsor at Redwood Creek, two properties within its service area.
b. Plaintiff FHNV conducted **a site visit and investigation** at Hawthorn Village, **a property within its service area.**
c. Plaintiff MFHS conducted a site visit and investigation at Battery at Chamblee, a property within its service area.
d. Plaintiff FHC conducted tests at Delano and Arlington at Northwood, two properties **within its service area.**

FAC, ¶¶ 72-75.

1    Plaintiffs request declaratory and injunctive relief. Among other things, the requested injunctive

2    relief would require the Spanos Defendants to survey all the apartment complexes they constructed

3    throughout the United States since March 13, 1991 and to bring each allegedly non-FHA compliant

4    complex into compliance. FAC, ¶¶ 39-40. Plaintiffs request attorneys' fees and costs, compensatory

5    damages, and punitive damages. FAC, ¶¶ 40-41.

6    As noted above, Plaintiffs also seek an order "[e]njoining the Owner Defendants from failing

7    or refusing to permit the retrofits ordered by the Court to be made in their respective properties, to

8    comply with such procedures for inspection and certification of the retrofits performed as may be

9    ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any

10   judgment against the A.G. Spanos Defendants." FAC, ¶. 40.

11                                  LEGAL STANDARDS

12   Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the

13   plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell*

14   *Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,1960 (2007). For purposes of such a motion, the complaint

15   is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are

16   taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American*

17   *Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor

18   of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

19   The court does not accept as true unreasonable inferences or conclusory legal allegations cast

20   in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981);

21   *see*

22   *also Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007) ("conclusory allegations of

23   law and unwarranted inferences" will not defeat an otherwise proper motion to dismiss); *Sprewell v.*

24   *Golden State Warriors*, 266 F.3d 979, 987, *as amended by* 275 F.3d 1187 (9th Cir. 2001)("Nor is the

25   court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact,

26   or unreasonable inferences."). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

27   not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle

28   [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1264-65.

<center>ANALYSIS</center>

While there are six motions brought by three groups of defendants in this case, all of them[1] revolve around the same three dispositive issues: 1) whether the FHA's two year statute of limitations bar some or all of plaintiff's claims; 2) whether plaintiffs, as fair housing organizations that are not themselves disabled and have not themselves been denied access to any facility as a result of the defendants' alleged actions have standing to sue for violations of the FHA; and 3) whether and to what extent Defendants must join all current owners of the properties in order to effectuate the relief requested.

**I.      Statute of Limitations[2]**

**A.      Spanos Defendants**

The Spanos Defendants argue that only those apartment complexes for which a certificate of completion has been issued within the last two years survive the FHA's two year statute of limitations. The FHA provides that a plaintiff must file suit within two years after "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Statutes of limitation "are intended to keep stale claims out of the courts." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). However, in *Havens*, the Supreme Court found that an alleged "continuing violation" of the Fair

---

[1] The four motions brought by the Spanos Defendants actually all argue the same points and seek the same relief, and thus are pointlessly repetitive and ultimately duplicative; indeed, the motions actually all incorporate pages-long swaths of argument from each other verbatim. The duplicative nature of these motions is most clearly demonstrated by the motion to strike, which argues that the sole grounds for "striking" the plaintiffs' claims is that they fail to state a claim – which is, of course, the same argument made in the Spanos Defendants' two other (and also similarly duplicative) motions to dismiss. Knickerbocker and Highpointe's motions largely parrot the repetitive arguments in the Spanos Defendants' motions, with the exception of arguments related to injunctive relief, which are discussed below.

[2] The Ninth Circuit recently addressed the question of when the FHA's two-year statute of limitations begins to run in *Garcia v. Brockway*, 503 F.3d 1092, 1101 (9th Cir. 2007). However, the Ninth Circuit has agreed to rehear the case *en banc*, and therefore *Garcia* cannot provide any guidance to this Court. *See* 512 F.3d 1089 ("The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit")

United States District Court
For the Northern District of California

Housing Act should be treated differently from one discrete act of discrimination: "[w]here the challenged violation is a continuing one, the staleness concern disappears." *Id.* The Supreme Court found that Congress had "broad remedial intent" when it crafted the FHA and that where a plaintiff "challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitation period, the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice." *See Silver State Fair Housing Council, Inc. v. ERGS, Inc.*, 362 F.Supp.2d 1218, 1221 (D. Nev. 2005) (citing *Havens*, 455 U.S. at 380-381). "Under the continuing violation doctrine, a plaintiff's complaint will not be time-barred if the defendant's related wrongful acts continue into the statute of limitations time frame. As a consequence, the statute of limitations only begins to run ... upon the last act in a series of related wrongful acts." *Moseke v. Miller and Smith, Inc.*, 202 F.Supp.2d 492, 500 n. 10 (E.D. Va. 2002).

Plaintiffs plead that the Spanos Defendants have engaged in a "continuing violation" of the FHA by designing and building FHA-noncompliant apartment complexes over a period of many years. Plaintiffs argue that under *Havens*, because the construction of the 82 complexes has been continuous in time since 1991, and since some of the allegedly noncompliant complexes are still being built, the statue of limitations has not begun to run on plaintiffs' claims. Defendants respond that *Havens* is inapplicable here. *See* Consolidated Opp'n at 11-15. In *Havens*, the Supreme Court was concerned with allegations of racial steering at an apartment complex: minorities were given false information about one apartment complexes in order to "steer" them away from renting apartments there. *Havens*, 455 U.S. at 380. However, four of the five alleged incidents had taken place outside of the limitations period, and therefore, the defendants argued, the plaintiffs could not prove a "pattern or practice" of racial steering that had occurred within the limitations period. *Id.* The Court was unpersuaded; it held that a continuing violation of the Fair Housing Act "should be treated differently from one discrete act of discrimination . . . Where the challenged violation is a continuing one, the staleness concern disappears" *Id.* The Court held that the defendants' "wooden" application of the statute of limitations, "which ignores the continuing nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the Act." *Id.*

Defendants argue that *Havens* can be distinguished because the "practice" of racial steering "by

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   definition continues over time," whereas the alleged "practice" here -- the construction of each of the

2   allegedly noncompliant 82 complexes -- is really just a series of discrete, individual FHA violations, and

3   therefore the statute of limitations begins to run at the completion of the construction of each complex.

4   *See* Consolidated Reply at 19-22. This argument is unpersuasive: a single incident of "steering"

5   constitutes an actionable violation of the FHA, just as the construction of each complex constitutes an

6   actionable violation of the FHA. That more than one incident of steering occurred only demonstrates

7   *a pattern* of such violations, not that each incident, standing on its own, is not a violation of the FHA.

8   Defendants have offered no intelligible argument as to why the reasoning of *Havens* is not applicable

9   to an alleged pattern or practice of construction-based violations of the FHA.

10      Indeed, the word "termination" in section 3613(a)(1)(A) was intended by Congress to "reaffirm

11  the concept of continuing violations, under which the statute of limitations is measured from the last

12  occurrence of the unlawful practice." H.R.Rep. No. 711, 100th Cong., 2d Sess. 22 (1988), reprinted in

13  1988 U.S.C.C.A.N. 2173, 2194. As in *Havens*, the defendants advocate a "wooden"application of the

14  statute of limitations, intended to "undermin[e] the broad remedial intent of Congress embodied in the

15  Act," and this argument is similarly unpersuasive here. *Havens*, 455 U.S. at 380. Plaintiffs have clearly

16  alleged a "continuing violation" of the FHA by the Spanos Defendants, alleging that they "engaged in

17  a continuous pattern and practice of discrimination against people with disabilities" since 1991 by

18  "designing and/or constructing" apartment complexes that deny full access to and use of the facilities

19  as required under the FHA, FAC, ¶ 4, and therefore none of the claims of the FAC against the Spanos

20  Defendants are barred by the statute of limitations.

21      **B.    Class Defendants**

22      The converse of the continuing violation doctrine, of course, is that a defendant that is *not*

23  engaged in a continuing violation cannot be held liable for discriminatory acts outside of the limitations

24  period. The apartment complexes owned by alleged defendant class representatives Knickerbocker and

25  Highpointe were built outside of the limitations period. The First Amended Complaint alleges that

26  construction of Knickerbocker and Highpointe's apartment complexes were completed in 2003, more

27  than two years before this action was filed. FAC ¶¶ 55, 62.

28      In very similar factual circumstances, the district court in *Silver State Fair Housing Council, Inc.*

*v. ERGS, Inc.*, 362 F. Supp. 2d 1218 (Dist. Nev. 2005), held that, while the builder of two allegedly noncompliant apartment complexes could be held liable under a "continuing violation" theory for both complexes since one of them was built within the limitations period, the *owner* of the complex built outside of the limitations could not similarly be held liable. As the *Silver State* court stated:

> Because Sierra Sage Apartments L.L.C. [the owner of the offending apartments built outside the limitations period] was an independent entity which took no part in the Silver Lake development [built within the limitations period], the alleged discriminatory acts at the Silver Lake development could not be linked to those at the Sierra Sage apartments to demonstrate a 'practice' that could bootstrap Sierra Sage Apartments L.L.C. past the two-year statute of limitations and into the present litigation.

*Id* at 1220. This Court agrees with the *Silver State* Court's reasoning: just as the Spanos Defendants cannot avoid liability for complexes built more than two years ago as they have allegedly engaged in a continuing violation of the FHA, Knickerbocker and Highpointe cannot be held liable for ownership of complexes built outside the limitations period where there is no allegation that have engaged in any violation within the limitations period.

Plaintiffs offer no intelligible principle by which this Court can impute the liability associated with the Spanos Defendants' continuing violations to Knickerbocker and Highpointe, and instead simply rest their laurels on the argument that the Spanos Defendants' conduct is not outside the limitations period. *See, e.g,* Highpointe Opp'n at 7-10. Therefore, the Court holds that the statute of limitations bars any liability as to Knickerbocker and Highpointe to the extent they are being sued for violations of the FHA.

Nevertheless, in response to their respective motions to dismiss, plaintiffs primarily argue that, even if they are not technically liable under the FHA, Knickerbocker and Highpointe should be included in this action because they are necessary parties for this Court to effectuate the injunctive relief sought. This argument is analyzed in section III below.

## II.    Standing

Defendants argue that plaintiffs do not have standing to bring the instant claims because, to the extent they have suffered any injury, the injury was not independently caused by the defendants' act, but was instead the result of plaintiffs proactively seeking out violations of the FHA and attempting to remedy them through the instant litigation. Therefore, defendants argue, plaintiffs' "self-inflicted"

United States District Court
For the Northern District of California

1  injuries do not bear a sufficient causal nexus with defendants' alleged actions to confer Article III

2  standing.

3      Organizational standing is separate from the standing of the organization's members, turning

4  instead on "whether the organization itself has suffered an injury in fact." *Smith v. Pacific Properties*

5  *and Development Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (citing *Havens Realty Corp. v. Coleman*,

6  455 U.S. 363, 378-79 (1982)). Section 3602(d) of the FHA defines a "person" who may sue under the

7  Act to include "corporations" and "associations." 42 U.S.C. § 3602(d) (1988). As non-profit

8  corporations, plaintiffs are "persons" protected by the statute. *See Havens*, 455 U.S. at 378-79 & n. 19;

9  *Walker v. City of Lakewood*, 272 F.3d 1114, 1123, n. 1 (9th Cir.2001). Plaintiffs must therefore satisfy

10  the requirement for individual standing: "a demonstration of concrete and particularized injury giving."

11  *Baker v. Carr*, 369 U.S. 186, 204 (1962); *see also Havens*, 455 U.S. at 378-79.

12      In *Pacific Properties*, the Ninth Circuit reaffirmed its holding in *Fair Housing of Marin v.*

13  *Combs*, 285 F.3d 899, 905 (9th Cir. 2002) that an organization may satisfy the Article III requirement

14  of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of

15  its resources to combat the particular housing discrimination in question. *Pacific Properties*, 358 F.3d

16  at 1101 (citing *Fair Housing*, 285 F.3d at 905).

17      Plaintiffs' allegations in the FAC closely track the requirements articulated in *Pacific Properties*.

18  As to the frustration of mission element, plaintiffs allege:

19      **[T]he A.G. Spanos Defendants frustrated the mission[3] of [each] Plaintiff,** inasmuch
20      as it served to discourage people with disabilities from living at that dwelling, and
       encouraged other entities involved in the design and construction of covered units to
21      disregard their own responsibilities under the FHA.

22  FAC, ¶ 73 (emphasis added). The Ninth Circuit held an even less specific statement of frustration of

23  mission to be sufficient to satisfy this element in *Pacific Properties*. *Pacific Properties*, 358 F.3d at

24  1101 (finding allegation that plaintiff was "organized with the principal purpose of helping to eliminate

25  discrimination against individuals with disabilities by ensuring compliance with laws intended to

26  provide access to housing, public buildings, transportation, goods and services" was sufficient to satisfy

27      [3]Plaintiffs' alleged missions include advocating for the rights of people with disabilities to
28  accessible housing, promoting equal housing opportunities, and eliminating housing and lending
    inequities. *See* FAC at ¶¶ 15-19.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  this element because "[a]ny violation of the FHA would therefore constitute a 'frustration of [the

2  plaintiff's] mission.'"). As to the diversion of resources, plaintiffs allege:

3          The A.G. Spanos Defendants' continuing discriminatory practices **have forced
           Plaintiffs to divert significant and scarce resources to identify, investigate, and
4          counteract the A.G. Spanos Defendants' discriminatory practices**, and such practices
           have frustrated Plaintiffs' other efforts against discrimination, causing each to suffer
5          concrete and demonstrable injuries

6  FAC, ¶ 74 (emphasis added).

7          Defendants contend that plaintiffs' allegation that they have had to "divert significant and scarce

8  resources to identify, investigate, and counteract the A.G. Spanos Defendants' discriminatory practices"

9  is insufficient to confer standing because they do not allege any diversion of resources other than that

10 associated with actively seeking out and attempting to remedy the harms at issue in this case. Plaintiffs

11 do not allege that they have had to divert resources because a disabled individual complained to them

12 about the Spanos Defendants' discriminatory practices; indeed they do not allege that any disabled

13 individual has actually suffered any injury because of the allegedly discriminatory acts. They instead

14 allege only that they "became aware" of the alleged practices, and that they have had to divert resources

15 to "identify, investigate, and counteract" such practices. Therefore, defendants argue, plaintiffs' alleged

16 injuries are "self-inflicted" "expenses of litigation," which the Ninth Circuit suggested in *Pacific*

17 *Properties* are, standing alone, insufficient to constitute a "diversion of resources" under this test. *Pacific*

18 *Properties*, 358 F.3d at 1101 ("*Fair Housing* avoided the question whether the expense of litigation

19 alone is enough to constitute a 'diversion of resources' under this test, but the court had previously

20 indicated that such an allegation is generally insufficient." (citing *Lakewood*, 272 F.3d at 1124, n. 3)

21 (internal citations omitted)) .

22         However, the court in *Pacific Properties* held nearly identical allegations of diversion of

23 resources to be sufficient to withstand a 12(b)(6) motion. The plaintiff in *Pacific Properties* alleged in

24 its complaint that:

25         [I]n order to monitor the violations and educate the public regarding the
           discrimination at issue, [the plaintiff] has had (and, until the
26         discrimination is corrected, will continue) to divert its scarce resources
           from other efforts to promote awareness of-and compliance with-federal
27         and state accessibility laws and to benefit the disabled community in
           other ways (for example, [the plaintiff's] efforts to free disabled persons
28         from nursing homes.)[.]

                                                    12

1   *Id.* at 1105. The Court held that this was sufficient to confer standing: "we believe these allegations are

2   enough to constitute a showing of a 'diversion of resources' and to survive a 12(b)(6) motion." *Id.* These

3   allegations are nearly identical to the plaintiffs' allegations in the FAC; even parsing the *Pacific*

4   *Properties* plaintiff's allegations along the lines suggested by defendants, it is clear that in that case the

5   alleged diversion of resources was a result of the plaintiff's choice "to monitor the violations and

6   educate the public regarding the discrimination at issue," and was therefore "self-inflicted" within the

7   meaning suggested by defendants. Moreover, in that case, as in this case, the plaintiffs became aware

8   of the alleged violations through a proactive testing program, and not in response to any complaints by

9   members of the disabled community. *Id.* at 1097.

10      Despite the fact that *Pacific Properties* appears to be on point and dispositive, defendants

11  attempt to distance the holding of *Pacific Properties* from this case by arguing that the Ninth Circuit

12  only determined that the plaintiffs' allegations were sufficient to defeat a dismissal *with prejudice*, as

13  the lower court had dismissed the claims in that case without leave to amend. *Id.* at 1106. However, an

14  even cursory reading of the decision demonstrates that this is just not true: the Ninth Circuit held *de*

15  *novo* that the allegations "*are* enough to constitute a showing of a 'diversion of resources' and to survive

16  a 12(b)(6) motion." *Id.* (emphasis added). In addition to so holding, the court *also* chastised the lower

17  court for dismissing the case with prejudice. *Id.* at 1106 ("[W]e accordingly reverse with regard to this

18  finding on a *de novo* review of this court's own law. We *also* believe that the district court abused its

19  discretion in denying [the plaintiff] leave to amend its complaint with regard to organizational standing

20  prior to dismissal." (emphasis added)).

21      Accordingly, given that the Ninth Circuit's guidance in *Pacific Properties* is on point, and given

22  that the language in FAC so closely tracks the language at issue there, this Court holds that plaintiffs

23  have properly alleged organizational standing.

24  **III.    Joinder of Indispensable Parties**

25      **A.    The Spanos Defendants' Motion**

26      The Spanos Defendants argue that plaintiffs' claims must be dismissed because of complications

27  presented by the potential joinder of the Owner Class Defendants. Plaintiffs seek to eventually certify

28  an "owner class" of defendants, consisting of "the current owners of covered apartment complexes that

13

1  were designed and/or built by the A.G. Spanos Defendants since the effective date of the FHA, but are

2  no longer owned by the A.G. Spanos Defendants." FAC, ¶ 32. With respect to these defendants,

3  plaintiffs seek an order:

> [e]njoining the Owner Defendants from failing or refusing to permit the retrofits ordered
> by the Court to be made in their respective properties, to comply with such procedures
> for inspection and certification of the retrofits performed as may be ordered by this
> Court, and to perform or allow such other acts as may be necessary to effectuate any
> judgment against the A.G. Spanos Defendants. FAC, ¶ 40.

7  The Spanos Defendants argue that plaintiffs must join the current owners of all 82 properties that

8  are the subject of this litigation, as well as all current tenants and the secured lenders of the properties,

9  and that the failure to do so constitutes grounds for dismissal pursuant to Rule 12(b)(7) for failure to join

10  indispensable parties. However, Defendants argue, this argument places plaintiffs in a catch-22, because

11  this Court likely lacks personal jurisdiction over most, if not all of the defendant class members. *See*

12  Spanos Mot. to Dismiss at 1-2.

13  Plaintiffs argue that the mechanism of certification of a class of defendant owners overcomes

14  this problem. *See* Consolidated Opp'n at 31-34. The Spanos Defendants respond that even if a defendant

15  class is certified, the Court must have personal jurisdiction over all of the defendant class members in

16  order to satisfy due process concerns, and therefore there is simply no way for these concededly

17  indispensable parties to be brought into this action. *See* Spanos Mot. to Dismiss at 1-2.

18  However, it is well settled that jurisdiction is not needed over absent members of a defendant

19  class. *See* 2 Newberg on Class Actions § 4:34 (4th ed.). Personal jurisdiction need not be proper as to

20  the unnamed members of a defendant class, so long as it is proper as to all named defendant members.

21  *See Abrams Shell v. Shell Oil Co.*, 165 F.Supp.2d 1096, 1107 (C.D.Cal. 2001) (citing *In re Gap Stores*

22  *Securities Litigation*, 79 F.R.D. 283, 292 n .6 (N.D.Cal.1978)). The Spanos Defendants are simply

23  wrong to suggest that, were this court to certify a defendant class it would still need personal jurisdiction

24  over all the defendant members. *See Abrams*, 165 F.Supp.2d 1096

25  Thus, while the Court makes no determination at this stage as to the propriety of the certification

26  of a defendant class, the Spanos Defendants' arguments that class certification cannot be used to join

27  absent defendants in order to effectuate injunctive relief fails.

28

United States District Court
For the Northern District of California

14

Dbt f !5;18.dw.14366. ⸱ CB!!!!!Epdvn f ou: 9!!!!!!Gjrhe!150150B1 ⸱9!!!!!Qbhf !26!pg29

<div style="float:left; writing-mode:vertical"><strong>United States District Court</strong><br>For the Northern District of California</div>

**B.    Knickerbocker's Motion**

Proposed defendant class representative Knickerbocker argues that plaintiffs have not alleged a proper basis for injunctive relief against the Owner Class Defendants because plaintiffs have failed to allege the requirements of "irreparable injury" and "inadequacy of legal remedies." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (plaintiff must demonstrate irreparable injury in order to obtain injunctive relief); *Morales v. Trans World Airlines*, 504 U.S. 374, 381 (1992) (court will ordinarily grant injunctive relief only where legal remedy is inadequate). Specifically, Knickerbocker argues that damages against the Spanos Defendants should be sufficient to redress any harm allegedly suffered by plaintiffs, and therefore an injunction (and consequently the Owner Class Defendants' presence in this action) is not necessary, and in any case would be so intrusive as to constitute a violation of the class defendants' due process rights. *See* Knickerbocker Mot. at 9.

However, other courts considering injunctions in civil rights cases involving the FHA have determined that an injunction of the sort requested here is necessary to afford full relief, and that the propriety of granting such an injunction is to be guided by general principles of equity and a balancing of interests. *See Baltimore Neighborhoods, Inc. v. Rommell Builders, Inc.*, 40 F. Supp. 2d 700, 711-12 (D.Md.1999); *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F.Supp.2d. 456 (D. Md. 2000). In *Rommel*, the plaintiffs alleged, as do the plaintiffs here, that "the violations [of the FHA would] continue to exist in perpetuity unless the Court exercises its equitable remedies to fashion a reasonable remedy." *Rommell*, 40 F. Supp. 2d at 712. The court found this sufficient to plead grounds for injunctive relief, stating: "[t]he Court is persuaded that [the defendants'] presence as a party in the suit appears imperative in order to afford full relief, if necessary . . ." *Id.*

This Court is similarly persuaded that the Owner Class Defendants' presence in this case is necessary to effectuate the remedial relief plaintiffs seek, *viz.*, the retrofitting of the noncompliant properties. *See* FAC ¶ 40 (seeking an order "[e]njoining the Owner Defendants from failing or refusing to permit the retrofits ordered by the Court to be made in their respective properties."). As in *Rommell*, the alleged violations of the FHA will "continue to exist in perpetuity," and therefore full relief will not be afforded, if an injunction cannot be issued. Under Rule 19(a)(1), a party is deemed "necessary" if complete relief cannot be granted in its absence. *Disabled Rights Action Committee v. Las Vegas Events,*

15

*Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). "This factor is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.1983). In conducting a Rule 19(a)(1) analysis, courts ask whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties. *See id.* Here, unless the owner defendants are included in this action, the FHA violations at existing facilities will continue to frustrate plaintiffs' missions and necessitate the diversion of plaintiffs' resources. While damages and a prospective injunction against the Spanos Defendants may be partial relief for plaintiffs, a injunction may be necessary to fashion truly "meaningful relief." *See id.*

Defendants do not dispute that if their presence is necessary to afford full relief they may brought into this action as defendants, notwithstanding their lack of liability under FHA. *See* Spanos Mot. to Dismiss (conceding that owner defendants are a necessary to effectuate relief sought by plaintiffs); *see also* Adv. Comm. Notes to 1966 Amendment to FRCP 19 (a)(plaintiff is required to join "all persons who are materially interested in the subject matter of the case and who are needed for just adjudication."). Moreover, the fact that plaintiffs do not allege that the owner class defendants have themselves violated the FHA has no bearing on the propriety of the owners being joined under Rule 19. Under Rule 19, no direct claim is required against a party sought to be joined. *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005) ("[A] plaintiff's inability to state a direct cause of action against an absentee party does not prevent the absentee's joinder under Rule 19."). Indeed, by definition, the parties to be joined under Rule 19 are those against whom no relief has formally been sought but who are "so situated as a practical matter as to impair the effectiveness of relief" that may be granted to the parties who are present.[4] *Id.* (internal quotes omitted); *Sierra Club v. Hodel*, 848 F.2d 1068, 1077 (10th Cir. 1988), *overruled on other grounds by Village of Los Ranchos De Albuquerque*

---

[4]For example, in *Peabody* the EEOC sued Peabody Western Coal Co. for employment discrimination in violation of Title VII, claiming Peabody maintained a hiring preference favoring Navajo Tribe members. *Peabody Western Coal Co.*, 400 F3d at 781. Peabody claimed this preference was required under the terms of its mining lease with the Tribe, and moved to dismiss because the Tribe had not been joined. *Id.* The court held that, though the Tribe was exempt under Title VII and therefore a direct cause of action could not be stated against it, its joinder was "necessary to effect complete relief among the parties."*Id.*

1   *v. Marsh*, 956 F.2d 970, 973 (10th Cir.1992) (joinder of county proper in action against federal agency

2   even though plaintiff could not sue county directly).

3   However, defendants argue that the injunctive relief requested by the plaintiffs, namely, the

4   retrofitting of all noncompliant features is intrusive and unduly burdensome. The Court is mindful of

5   the concerns related to inconveniencing owner defendants who, though they have themselves done no

6   more than purchase a non-compliant property from Spanos Defendants, may nevertheless be required

7   to accede to an injunction. However, the Court has the discretion to fashion an injunction that is

8   minimally disruptive to current owners or occupants. *See, e .g., United States v. ERGS Inc.*, et al.

9   CV-N-02-0615D WH (VPC) (D. Nev.), consent order entered July 13, 2005 (requiring accessability

10  improvement work to be done in between tenancies while apartments are vacant, and including detailed

11  provisions to minimize the inconvenience to tenants). Second, insofar as the owner defendants may

12  eventually be brought into this action through the mechanism of a class action, the Court may require

13  notice and an opportunity to be heard, and the interests of the owners may be advocated for by the

14  named defendants. *See Jeffries v. Georgia Residential Finance Authority*, 678 F.2d 919, 929 (11th Cir.

15  1982) (discussing joinder of a defendant class of owners).

16  Finally, the question of whether and to what extent such an injunction is among "the least

17  intrusive remedies" to effectuate this relief is more appropriately reached at the class certification or

18  damages stage of this litigation, assuming these stages are eventually reached.

19  ### CONCLUSION

20  Defendants have failed to demonstrate: 1) that the FHA's two year statute of limitations bars

21  some or all of plaintiff's claims; 2) that plaintiffs do not have standing to sue for violations of the FHA;

22  or 3) that concerns related to the defendant owner class preclude the injunctive relief requested by

23  plaintiffs. Additionally, while the two-year statute of limitations bars any liability under the FHA as to

24  proposed class representatives Knickerbocker and Highpointe, the presence of the Owner Class

25  Defendants is necessary to afford injunctive relief and therefore the claim for injunctive relief may not

26  be dismissed as to them insofar as they are potential class representatives.

27

28

United States District Court
For the Northern District of California

17

Dbt f !5;18.dw.14366. ̣CB!!!!!Epdvn f ou: 9!!!!!!Girhe!150!50̣31 ̣9!!!!!Qbhf !29!pg29

1     Accordingly, the motions to dismiss (including the Spanos Defendants' misnamed motions "for

2  a more definite statement" and "to strike") [Docket Nos. 48, 49, 50, 52, 57 and 60] are DENIED.

3     IT IS SO ORDERED.

4  Dated: 3/26/08                         *Saundra B Armstrong*
                                          SAUNDRA BROWN ARMSTRONG
5                                         United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

18