EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**THE EQUAL RIGHTS CENTER**
a not-for-profit organization,
11 Dupont Circle, NW, Suite 400
Washington, DC 20036

    Plaintiff,

  vs.

**LION GABLES RESIDENTIAL TRUST**
a Maryland investment trust
2859 Paces Ferry Road
Suite 1450
Atlanta, GA 30339

and

**LION GABLES REALTY LIMITED
PARTNERSHIP**
a Delaware limited partnership
2859 Paces Ferry Road
Suite 1450
Atlanta, GA 30339

    Defendants.

DKC 07 CV 2358

**JURY TRIAL DEMANDED**

2007 SEP -6 A 8: 59

## COMPLAINT FOR INJUNCTIVE AND
## DECLARATORY RELIEF, AND FOR DAMAGES

Plaintiff, the Equal Rights Center (the "ERC"), for its Complaint against Lion Gables

Residential Trust and Lion Gables Realty Limited Partnership (collectively referred to as

"GABLES"), alleges and states as follows:

1.  This action is brought by the ERC, by and through its counsel, under the Fair

Housing Act, Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing

Amendments Act of 1988,   42 U.S.C. §§ 3601-3619, and the Fair Housing Regulations, 24

C.F.R. Parts 100 to 125 (collectively the "Fair Housing Act" or the "FHA"), and the Americans

with Disabilities Act, 42 U.S.C. §§ 12181, and the regulations implementing Title III of the Americans with Disabilities Act found at 28 C.F.R. Part 26 (collectively the "ADA"), to enjoin and remedy ongoing and systematic violations of these civil rights laws by GABLES in the design, construction, control, management and/or ownership of covered multifamily dwellings, including residential complexes in the District of Columbia, Arizona, California, Florida, Georgia, Illinois, Maryland, Massachusetts, Tennessee, Texas, Virginia, and Washington. The ERC seeks to redress the civil rights violations at properties GABLES has designed, constructed, controlled, managed, and/or owned. GABLES' actions have excluded, and are continuing to exclude, persons with disabilities from access to GABLES properties.

2.     Pursuant to the FHA, every multifamily housing building containing four or more units, and built for first occupancy after March 13, 1991, is subject to the design and construction requirements of the FHA ("covered multifamily dwellings"). The FHA requires all ground floor units, and all units on any floor serviced by an elevator in a covered multifamily dwelling ("covered units"), as well as "public use and common use areas" associated with covered units, to contain certain features of minimum accessibility and "adaptable design," including:

      a.    public-use and common-use areas readily accessible to, and usable by, individuals with disabilities;

      b.    doors into and within covered units that are sufficiently wide to allow passage by persons with disabilities who use wheelchairs;

      c.    the following features of adaptable design:

          1)    an accessible route into and through the dwelling;

          2)    usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space;

          3)    light switches, electrical outlets, thermostats and other environmental controls in accessible locations; and

          4)    reinforcements in bathroom walls that allow for the installation of grab-bars.

2

3.      Pursuant to the ADA, public-use facilities, such as rental and leasing offices at apartment complexes, parking lots, sidewalks and restrooms, built for first use after January 26, 1993, are subject to design and construction requirements that enable the full and equal enjoyment of the services, facilities, privileges and accommodations of a place of public accommodation by persons with disabilities, including:

        a.     routes from public transportation stops, accessible parking, and public streets or sidewalks to buildings readily accessible to, and usable by, individuals with disabilities;

        b.     minimum number of accessible parking spaces located adjacent to an accessible entrance;

        c.     the following, non-exclusive, features of accessible design:

               1)     curb ramps accessible to persons in wheelchairs;

               2)     entrances to public-use facilities wide enough to allow passage of individuals with disabilities who use wheelchairs; and

               3)     usable bathrooms such that an individual in a wheelchair can maneuver about the space.

4.      The United States Congress has made clear that enforcement of these civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible and adaptable to people with disabilities. *See* U.S. House of Rep. Report on the FHAA, H.R. Rep. No. 100-711 (1988). Congress has declared that such barriers, even if not the product of invidious intent, "can be just as devastating as intentional discrimination." H.R. Rep. No. 100-711 at 25 (1988).

5.      As described herein, GABLES has engaged in a continuous pattern and practice of discrimination against persons with disabilities in violation of both the FHA and the ADA by designing, constructing, controlling, managing, and/or owning covered multifamily dwellings,

and the common-use and public-use areas associated with those covered dwellings, in such a manner as to deny persons with disabilities access to, and the use of, these facilities as required under these federal civil rights laws.

## PARTIES

6.      Plaintiff ERC is a non-profit civil rights organization dedicated to identifying, challenging, and eliminating discrimination in housing, employment, public accommodations, and government services through education, research, testing, counseling, enforcement, and advocacy.  Moreover, the ERC represents the interests of its approximately 189 individual public members, most of whom are persons with disabilities who have a direct interest in protecting the rights of persons of disabilities.  Plaintiff ERC's principal place of business is at 11 Dupont Circle, NW, Suite 400, Washington, DC, 20036.

7.      LIONS GABLES RESIDENTIAL TRUST is a real estate investment trust organized under the laws of the State of Maryland, with its principle executive offices located at 2859 Paces Ferry Road, Suite 1450, Atlanta, GA  30339.  LION GABLES RESIDENTIAL TRUST is a real estate investment trust that develops, redevelops, acquires and manages covered multifamily housing dwellings located across the United States.   GABLES maintains a publicly accessible website available at http://www.gables.com on which it discloses to the public various information relating to GABLES' business operations.

8.      LION GABLES REALTY LIMITED PARTNERSHIP is a Delaware limited partnership owned and controlled by Lion Gables Residential Trust.  On information and belief, LION GABLES RESIDENTIAL TRUST's property ownership and business operations are conducted, directly or indirectly, through this limited partnership.

9.    As a result of a sequence of merger transactions in 2005, GABLES is the successor-in-interest to, and the continuing business enterprise of, entities involved in the design, construction, control, management and/or ownership, of at least 45 covered multifamily housing complexes in Maryland, the District of Columbia, California, Georgia, Florida, Tennessee and Texas. For purposes of this Complaint, all GABLES units and properties, currently know to the ERC or later discovered, and subject to the FHA and/or the ADA, are referred to as the "Subject Properties."

10.    The Subject Properties are comprised of at least 45 residential complexes that contain thousands of individual housing units. Attached as Addendum A to this Complaint is a list of Subject Properties identified by the ERC to date.

11.    On information and belief, GABLES, through certain entities owns, has developed, designed and constructed, and manages additional multifamily housing complexes, the identity and location of which are not yet known to the ERC.

12.    GABLES, and its predecessors-in-interest, have publicly represented, in filings with the United States Securities and Exchange Commission as well as on their websites and marketing materials, GABLES' association with each of these Subject Properties. The ERC has identified, through on-site inspection and public records, GABLES' units and complexes that are subject to the FHA and the ADA.

13.    As a result of GABLES' unlawful conduct complained of herein, the ERC has been damaged by the frustration of its overall mission, as described in paragraphs 42-45 and by having to divert its scarce resources away from its other activities, including outreach and education, to identifying, investigating and counteracting GABLES' discriminatory policies and practices. Moreover, as a result of GABLES' unlawful conduct, the ERC's public members, most of whom are persons with disabilities, have been injured.

## JURISDICTION AND VENUE

14.     This Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and 42 U.S.C. §§ 3613(a) and 12188.  Further, this Court may exercise personal jurisdiction over GABLES.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because GABLES may be found in this District.  Venue also is proper because some of the actions and omissions giving rise to the claims herein occurred in this District, and some of the Subject Properties that are the subject of this action are located in this District.

## BACKGROUND

16.     Through its regular activities, the ERC became aware that a large number of new multifamily housing complexes were being constructed in the greater Washington, D.C. area that did not include the required elements of accessible design.  Thereafter, the ERC visited a number of GABLES properties in the greater Washington, DC area and discovered FHA and ADA violations in the design and construction of those properties.

17.     As a result of the discovery of these violations by GABLES in the greater Washington, D.C. area, the ERC diverted resources, including funding and staff members' time, from the pursuit of its overall mission, including outreach, education, intake, and counseling, in order to conduct nationwide testing and investigation of GABLES properties.  The ERC tested eighteen of the Subject Properties in the States of Maryland, California, Georgia, Florida, Tennessee, and Texas and also in the District of Columbia (the "Tested Properties).  The Tested Properties are indicated on Addendum A with an asterisk.

18.     The Tested Properties are subject to the prohibitions on discrimination set forth in 42 U.S.C. § 3604(f)(1)-(2), and the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHA because the properties include "covered multifamily dwellings" within

the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A), and were built for first occupancy after March 13, 1991.

19.    All of the eighteen Tested Properties were constructed for first occupancy or remodeled after January 26, 1993, and are subject to the prohibition on discrimination in 42 U.S.C. §12182(a) of the ADA, and to the design and construction requirements of 42 U.S.C. § 12183(a)(1) of the ADA and the applicable regulations at 28 C.F.R. Part 26.  Each of the Tested Properties have rental and leasing offices, and facilities and accommodations appurtenant to the offices, including parking, sidewalks and restrooms, which constitute "public accommodations" within the meaning of the ADA, 42 U.S.C. § 12181(7).

20.    The ERC identified at least one FHA or ADA violation, and in most cases multiple violations, at each of the Tested Properties.  The frequency and similarity of these violations demonstrate that GABLES has engaged in a pervasive pattern and practice of designing, constructing, controlling, managing, and/or owning apartment properties in violation of FHA and ADA accessibility design requirements.  The ERC anticipates that further investigation and discovery will identify additional FHA and ADA violations at the Tested Properties.

21.    By way of example, covered dwelling units in the Tested Properties subject to FHA design and construction requirements exhibited, with varying frequency by complex, the following violations:

> a.    doors in units that are not sufficiently wide so as to allow passage into kitchens, bathrooms, bedrooms and other areas in the units by persons in wheelchairs;
>
> b.    units that do not provide an accessible route into and through the unit, including access to patios, balconies and other outside areas;
>
> c.    bathrooms that do not have sufficient clear floor space so as to allow a person in a wheelchair to maneuver about the space;

     d.     kitchens that do not have sufficient clear floor space so as to allow a person in a wheelchair to maneuver about the space;

     e.     light switches, electrical outlets, thermostats and other environmental controls that are not located in accessible locations; and

     f.     pipes in units uncovered (in whole or in part) and/or unprotected.

22.     Many of the Tested Properties also violate FHA accessibility requirements because the common areas used by residents were not designed and constructed in such manner that they are readily accessible to, and usable by, persons with disabilities. By way of example, some of the violations in the common areas of the Tested Properties include the following:

     a.     lack of accessible routes into and through common use and public use areas, including a lack of accessible routes to patios, balconies, ground floor apartments, common restrooms and other outside facilities;

     b.     environmental controls, electrical switches, and alarms placed at` heights that make them inaccessible to persons in wheelchairs;

     c.     obstructed curb cuts and parking;

     d.     inaccessible ramp routes;

     e.     a lack of designated accessible parking spaces; and

     f.     a lack of obstruction under stairwells.

23.     Many of the Tested Properties also violate the accessibility requirements of the ADA, as well as the FHA, because the rental and leasing offices, including facilities and accommodations appurtenant to the offices that are areas of public use, are not readily accessible to, and usable by, persons with disabilities. By way of example, public use area violations include the following:

     a.     lack of accessible routes into and through leasing offices;

     b.     a lack of reserved and accessible parking; and

        c.       a lack of an accessible route from the parking area to the rental and leasing office, and/or an accessible entrance to the office.

24.     The following specific examples are illustrative of GABLES' pattern and practice of FHA and ADA violations:

### GABLES Rothbury

25.     GABLES Rothbury in Montgomery Village, Maryland is a covered multifamily housing complex that consists of 204 units in garden-style buildings that were completed in 2005. The ERC observed or discovered the following violations, without limitation, at GABLES Rothbury:

        a.       electrical outlets too low to be accessible to persons in wheelchairs;

        b.       door thresholds so high as to act as a barrier to a person in a wheelchair; and

        c.       insufficient clear floor space in U-shaped kitchen.

### GABLES Dupont Circle

26.     GABLES Dupont Circle in Washington, D.C. is a covered multifamily housing complex that consists of 82 units in a high rise elevator building that was completed in 1997. The ERC observed or discovered the following violations, without limitation, at GABLES Dupont Circle:

        a.       insufficient clear space between obstructions in common area and unit bathrooms;

        b.       electrical outlets too high to be accessible to persons in wheelchairs;

        c.       door thresholds so high as to act as a barrier to a person in a wheelchair; and

        d.       insufficient clear floor space in U-shaped kitchens; and

     e.     environmental controls too high to be accessible to persons in wheelchairs.

## GABLES Woodley Park

27.    GABLES Woodley Park in Washington, D.C. is a covered multifamily housing complex that consists of 211 units in a high-rise elevator building that was completed in 2001. The ERC observed or discovered the following violations, without limitation, at GABLES Woodley Park:

     a.     insufficient clear space between obstructions in bathrooms;

     b.     interior doors too narrow to allow passage of persons in wheelchairs;

     c.     insufficient clear floor space in U-shaped kitchens;

     d.     environmental controls too high to be accessible to persons in wheelchairs;

     e.     electrical outlets too high to be accessible to persons in wheelchairs; and

     f.     insufficient clear space between obstructions in kitchen.

## GABLES Oak Creek

28.    GABLES Oak Creek in Wildomar, California is a covered multifamily housing complex that consists of 148 units in garden-style buildings that were completed in 2005. The ERC observed or discovered the following violations, without limitation, at GABLES Oak Creek:

     a.     insufficient clear space between obstructions in bathrooms;

     b.     insufficient clear space between obstructions in kitchens; and

     c.     uncovered pipes under common area sinks.

### GABLES Solana Ridge

29.    GABLES Solana Ridge in Temecula, California is a covered multifamily housing complex that consists of 312 units in garden-style buildings that were completed in 2000. The ERC observed or discovered the following violations, without limitation, at GABLES Solana Ridge:

        a.    insufficient clear space between obstructions in bathroom;

        b.    environmental controls too high or low to be accessible to persons in wheelchairs;

        c.    door thresholds so high as to act as a barrier to a person in a wheelchair; and

        d.    exposed pipes under bathroom sinks.

### GABLES Rock Springs

30.    GABLES Rock Springs in Atlanta, Georgia is a covered multifamily housing complex that consists of 558 units in garden-style buildings that were completed in 2005. The ERC observed or discovered the following violations, without limitation, at GABLES Rock Springs:

        a.    insufficient clear space between obstructions in common area and unit bathrooms; and

        b.    environmental controls too high to be accessible to persons in wheelchairs.

### GABLES Druid Hills

31.    GABLES Druid Hills in Atlanta, Georgia is a covered multifamily housing complex that consists of 272 units in garden-style buildings that were completed in 2005. The ERC observed or discovered the following violations, without limitation, at GABLES Druid Hills:

        a.    absence of protective barriers on exposed stairways;

b.    door thresholds so high as to act as a barrier to a person in a wheelchair;

c.    insufficient clear space between obstructions in kitchens;

d.    insufficient clear floor space in kitchen; and

e.    environmental controls too high to be accessible to persons in wheelchairs.

### GABLES Lenox Hills

32.    GABLES Lenox Hills in Atlanta, Georgia is a covered multifamily housing complex that consists of 480 units in garden-style buildings that were completed in 1999. The ERC observed or discovered the following violations, without limitation, at GABLES Lenox Hills:

a.    absence of protective barriers on exposed stairways;

b.    no accessible route to some ground floor apartment

c.    interior doors too narrow to allow passage of persons in wheelchairs;

d.    door thresholds so high as to act as a barrier to a person in a wheelchair;

e.    insufficient clear floor space to allow persons in wheelchairs to use bathrooms;

f.    insufficient clear floor space to allow persons in wheelchairs to use kitchens; and

g.    environmental controls too high to be accessible to persons in wheelchairs.

## GABLES Great Hills

33.    GABLES Great Hills in Austin, Texas is a covered multifamily housing complex that consists of 276 units in garden-style buildings that were completed in 1993.  The ERC observed or discovered the following violations, without limitation, at GABLES Great Hills:

    a.    insufficient clear space between obstructions in common area and unit bathrooms;

    b.    no accessible route to ground floor apartments;

    c.    no accessible route to leasing center;

    d.    interior doors too narrow to allow passage of persons in wheelchairs;

    e.    environmental controls too high to be accessible to persons in wheelchairs;

    f.    electrical switches too high to be accessible to persons in wheelchairs; and

    g.    door thresholds so high as to act as a barrier to a person in a wheelchair.

## GABLES Town Lake

34.    GABLES Town Lake in Austin, Texas is a covered multifamily housing complex that consists of 256 units in garden-style buildings that were completed in 1996.  The ERC observed or discovered the following violations, without limitation, at GABLES Town Lake:

    a.    interior doors too narrow to allow passage of persons in wheelchairs;

    b.    insufficient clear floor space in bathrooms;

    c.    insufficient clear space between obstructions in common area and unit bathrooms;

    d.    environmental controls too high to be accessible to persons in wheelchairs;

    e.    electrical outlets too low to be accessible to persons in wheelchairs;

13

       f.     electrical switches too high to be accessible to persons in wheelchairs; and

       g.    absence of protective barriers on exposed stairways.

## PATTERN AND PRACTICE AMONG SUBJECT PROPERTIES

35.     On information and belief, GABLES participated in the design, construction, control, management, and/or ownership of each of the Subject Properties. Moreover, many of these properties were designed and constructed either simultaneously or seriatim by GABLES. By way of example, four of the Tested Properties were completed in 2006, three in 2005, two in 2004, three in 2002, one in 2001, and one in 2000.

36.     In addition to the testing of the eighteen Tested Properties, the ERC has obtained and examined floor plans published by GABLES for each unit type in the Subject Properties. On information and belief, the Subject Properties share relevant common elements of design, demonstrating a pattern and practice of common design and construction. Moreover, while not reflecting each detailed element of design, these published floor plans demonstrate commonality at least among bathrooms and kitchen designs, and possibly among other design elements among the Subject Properties.

37.     The floor plans also demonstrate common design elements between Tested Properties and the remaining untested Subject Properties. Common design elements among the Tested Properties and untested Subject Properties range from the use of common bathroom and kitchen designs, to virtually identical floor plans in numerous complexes. By way of example and without limitation:

       a.    Two Tested Properties -- Dupont Circle and Gables Tuscany -- share common design elements in some of the bathrooms of their units with the bathroom units of no less than eight of the untested Subject Properties. Each of these properties utilizes a common bathroom design that makes the width of the room equal to the length of the bathtub and arranges the bathtub, toilet and the

14

lavatory in a sequence along a single wall. In each of the tested properties, this common design results in inadequate distances between facilities in these bathrooms making them inaccessible to persons in wheelchairs.

b.    Two Tested Properties -- Dupont Circle and Gables Oak Creek -- share common design elements in some of the bathrooms of their units with the bathroom units of no less than three of the untested Subject Properties. Each of these properties utilizes a common bathroom design that places the toilet in a small alcove adjacent to the sink. In each of the tested properties, this common design results in inadequate distance between facilities in these bathrooms making them inaccessible to persons in wheelchairs.

c.    Three Tested Properties -- Rothbury, Mirabella and Dupont Circle -- share common design elements in the kitchens of their some units with the kitchens of no less than four of the untested Subject Properties. In every tested property, "U-shaped" kitchens with this design do not allow sufficient clearances so as to allow a person in a wheelchair to maneuver about and use the facilities.

38.    As demonstrated by the existence of violations at each of the Tested Properties and the common design elements at the Tested Properties and the untested Properties, on information and belief, GABLES' continuing pattern and practice of design and construction have resulted in violations at each of the Subject Properties.

39.    GABLES' violations are continuing, ongoing and demonstrate a pervasive pattern and practice of systematic and continuous FHA and ADA violations over many years. GABLES has repeatedly and continually failed to design and construct covered multifamily dwellings, including their public and common use areas, in accordance with the requirements of

15

42 U.S.C. § 3604(f)(3)(C), 42 U.S.C. § 12183(a)(1), and the applicable regulations.  By way of example:

    a.    GABLES was involved in the design, construction, control management, and/or ownership of the following three Tested Properties from 1993 through 2005:

| Property Name | Date(s) Built |
| --- | --- |
| Rothbury | 2005 |
| Dupont Circle | 1997 |
| Mirabella | 1994 |

Each of these Tested Properties utilizes a common kitchen design as described in paragraph 37 that makes the kitchen into a "U-shaped" design with the stove at the base of the "U".  In each instance at these Tested Properties, this common design results in insufficient clearances so as to allow a person in a wheelchair to maneuver about and use the facilities.  An additional four of Subject Properties built at various times utilize this same design in their units' kitchens.

    b.    Similarly, GABLES was involved in the design, construction, control management, and/or ownership of two of the Tested Properties from 1997 through 2002 as follows:

| Property Name | Date(s) Built |
| --- | --- |
| Tuscany Ridge | 2002 |
| Dupont Circle | 1997 |

Each of these Tested Properties utilizes a common bathroom design as described in paragraph 37 that makes the width of the room equal to the length of the bathtub and arranges the bathtub, toilet and the lavatory in sequence along a single wall.  This common design results in inadequate distances between facilities in these bathrooms making them inaccessible to persons

in wheelchairs. An additional eight of the Subject Properties built at various times utilize this same design in bathrooms of their units.

40.    Some of the Subject Properties that constitute part of GABLES' pattern and practice of designing and constructing inaccessible multifamily dwellings have been completed within two years of the filing of this Complaint.

41.    In carrying out the aforementioned actions, GABLES acted intentionally and willfully, and with callous and reckless disregard of the FHA and ADA, as well as the rights of persons with disabilities to accessible housing.

## INJURY TO PLAINTIFF

42.    As a result of GABLES' actions described above, the ERC has been directly and substantially injured in that it has been frustrated in the pursuit of its overall mission of identifying, challenging, and eliminating discrimination in housing, employment, public accommodations, and government services through education, research, testing, counseling, enforcement, and advocacy.

43.    GABLES' continuing discriminatory practices also have forced the ERC to divert scarce resources to a lengthy investigation aimed at identifying and counteracting GABLES' discriminatory practices, and such practices have frustrated the ERC's other efforts against discrimination, causing the ERC to suffer a concrete and demonstrable injury.

44.    In addition to and independent of the injuries stated above in paragraphs 42-45, as a result of GABLES' wrongful conduct complained of herein, the ERC's individual public members, most of whom are disabled persons living proximate to one or more Subject Properties, have been damaged by GABLES' denial of access to its dwelling units, common-use areas, and public-use areas.

45.    Until remedied, GABLES' unlawful, discriminatory actions will continue to injure the ERC by, *inter alia*:

      a.    frustrating the ERC's mission and purpose of promoting the equal availability of housing to all persons without regard to any protected category, including disability;

      b.    requiring the commitment of scarce ERC resources, including substantial staff time and funding, to investigate and counteract GABLES' discriminatory conduct, thus diverting those resources from the ERC's other activities and services, such as education, outreach, and counseling; and

      c.    injuring the rights and interests of the ERC's individual public members who have disabilities.

## FIRST CLAIM FOR RELIEF
### (FHA Violations)

46.    Plaintiff adopts and realleges the allegations in paragraphs 1-45.

47.    Each of the Subject Properties is a covered multifamily dwelling subject to the FHA. At the Subject Properties, each of the ground-floor units in all buildings, and all units in buildings on floors serviced by an elevator, is a "covered unit" within the meaning of the FHA. Each "covered unit" at the Subject Properties, and the public and common use areas at the Subject Properties, is subject to the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

48.    On information and belief, each of the Subject Properties violates the FHA, by incorporating some or all of the following features, among other things:

      a.    public-use and common-use areas are not readily accessible to, and usable by, individuals with disabilities;

18

b.  doors into and within covered units are insufficiently wide to allow passage by persons with disabilities who use wheelchairs;

c.  covered units do not contain some or all of the following features of adaptable design:

1)  an accessible route into and through the dwelling;

2)  usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space;

3)  light switches, electrical outlets, thermostats and other environmental controls in accessible locations; and

4)  reinforcements in bathroom walls that allow for the installation of grab-bars.

49.  Through its design, construction, control, management, and/or ownership of the Subject Properties, GABLES has:

a.  discriminated in the sale or rental of, otherwise made unavailable, or denied dwellings to persons because of their disabilities in violation of the FHA, 42 U.S.C. § 3604(f)(1);

b.  discriminated against persons because of their disabilities in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(2); and

c.  failed to design and construct dwellings in compliance with the requirements mandated by the FHA, 42 U.S.C. § 3604(f)(3), and the applicable regulations.

50.  The actions complained of constitute a continuing pattern and practice of repeated and continuing FHA violations in that GABLES has engaged in a systematic and consistent discriminatory pattern and practice of designing and constructing covered multifamily dwellings in violation of FHA requirements.

51.    GABLES' conduct has been intentional, willful and taken in disregard for the rights of others.

52.    As a result of GABLES' unlawful conduct, the ERC, both in its own right, and as a representative of its individual members with disabilities, has been injured by a discriminatory housing practice and is, therefore, an "aggrieved person," as defined by the FHA, 42 U.S.C. § 3602(i)(1).

53.    Because GABLES' described unlawful activities are continuing, the ERC is entitled under Section 3613(a)(1) of the FHA to temporary and permanent injunctive relief, enjoining GABLES, from participating in designing and/or constructing -- including the acquisition of any building or construction permits, or certificates of occupancy -- any covered multifamily housing and common areas that fail to fully comply with the FHA and the applicable regulations.

54.    On information and belief, as part of its on-going business plans, GABLES anticipates, or is in the process of, selling certain of its residential facilities, including covered units.  By way of example, in 2006, GABLES, subsequent to its 2005 merger, sold two garden-style communities, Gables Baron Creek and Gables Park Mesa, to Post Properties, Inc.

55.    To the extent that such sales continue, the ERC is irreparable harmed, and this Court's ability to render a meaningful judgment after a trial of this matter is frustrated.  As a result, this Court may, and should, order temporary injunctive relief prohibiting the sale by GABLES of any apartment or condominium complex containing a covered unit, or any individual covered unit, until the entry of final relief herein, including such retrofit alteration to covered units as may be ordered by the Court.

## SECOND CLAIM FOR RELIEF
### (ADA Violations)

56.    Plaintiff adopts and realleges the allegations in paragraphs 1-55.

57.     The rental and leasing offices at the Subject Properties, and the features and accommodations appurtenant to these offices, are sales or rental establishments, the operations of which affect commerce, and are "public accommodations" as defined by the ADA, 42 U.S.C. § 12181(7).

58.     On information and belief, each of the Subject Properties violate the ADA because their rental and leasing offices, and the appurtenant parking, sidewalks and restrooms at those offices, are designed and constructed in such a manner that the facilities are not readily accessible to, and usable by, individual with disabilities.

59.     Through its design, construction, control, management, and/or ownership of the Subject Properties, GABLES has:

       a.     discriminated against individuals with disabilities in the full and equal enjoyment of the services, facilities, privileges and accommodations of a place of public accommodation, in violation of the ADA, 42 U.S.C. § 12182(a); and

       b.     failed to design and construct or remodel public accommodations in compliance with the requirements of the ADA, 42 U.S.C. § 12183(a)(1) and (2), and the applicable regulations.

60.     The actions complained of constitute a pattern and practice of repeated and continuing violations of the ADA in that GABLES has engaged in a systematic and consistent discriminatory practice of designing and constructing the rental offices and the appurtenant parking, sidewalks and restrooms at those rental offices in violation of the requirements of the ADA, and the applicable regulations.

21

61.     The actions of GABLES complained of here have the effect of denying the ERC's disabled individual public members, as well as that segment of the general public with disabilities, access to the rental offices and the appurtenant parking, sidewalks and restrooms at those rental offices at the Subject Properties.

62.     The ERC is an "aggrieved person" and this Court is entitled to grant such relief it considers appropriate pursuant to 42 U.S.C. § 12188(b)(2)(B), including temporary and permanent injunctive relief and damages, as a result of GABLES' wrongful conduct.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Equal Rights Center, respectively prays that this Court grant it judgment in its favor, and against GABLES as follows:

A.      Declaring, pursuant to 28 U.S.C. §§ 2201, that GABLES' practices and actions, as alleged herein, violate the FHA, the ADA, and the applicable regulations;

B.      Enjoining GABLES, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently from:

1.      designing and constructing, including the acquisition of any building or construction permits, or certificates of occupancy, any covered multifamily housing and/or common areas that, in any way, fail to comply with the FHA and the applicable regulations;

2.      selling any apartment or condominium complex containing a covered unit, or any individual covered dwelling unit, until the

22

entry of final relief herein, or until the completion of such retro-fit alteration to covered units as may be ordered by the Court;

3. failing or refusing to bring the covered dwelling units and the public use and common use areas at the Subject Properties into immediate compliance with the requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C);

4. failing or refusing to bring the public use and common use areas at the Subject Properties into immediate compliance with the requirements of the ADA, 42 U.S.C. §§ 12182-83; and

5. failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with the FHA, the ADA, and the applicable regulations.

C. Awarding such damages as would fully compensate the ERC for the injuries incurred as a result of GABLES' discriminatory housing practices and conduct;

D. Awarding such punitive damages as against GABLES as are proper under the law;

E. Awarding the ERC its costs and attorneys' fees incurred herein; and

F. Awarding the ERC such other relief as this Court deems just and proper.

Respectfully Submitted,

**Washington Lawyers' Committee**
**For Civil Rights and Urban Affairs**
Isabelle Thabault
Donald L. Kahl
Candice D. Jones

By: _____
Donald L. Kahl
(MD Bar #16593)
Don_Kahl@washlaw.org


11 Dupont Circle, NW, Suite 400
Washington, DC 20036
Tel: (202) 319-1000
Fax: (202) 319-1010

**Gilbert Randolph LLP**
Jerome C. Randolph


By: _____
Jerome C. Randolph
(Application for Admission To
Be Filed)
randolphj@gilbertrandolph.com


1100 New York Avenue NW,
Suite 700
Washington, DC 20005
Tel: (202) 772-2200
Fax: (202) 772-3333

*Attorneys for Plaintiff*
*The Equal Rights Center*

Dated: September 6, 2007

24

**Subject Properties**

California

Gables at Oak Creek*
Solana Ridge*
Tuscany Ridge*

Georgia

Gables Druid Hills*
Gables Lenox Hills*
Gables Metropolitan I, II & III*
Gables Montclair
Gables Rock Springs*
Gables Sugarloaf
Gables Vinings

Florida

Gables Marbella
Gables Montecito*
Gables San Remo
Gables Wellington
Huntington at Sundance

Maryland

Gables Rothbury*

Tennessee

Arbors of Harbortown

Texas

2120 Kipling*
Gables 3636 McKinney
Gables Augusta
Gables Central Park
Gables Cityscape
Gables Citywalk/Waterford
Gables First Colony
Gables Grandview*
Gables Great Hills*
Gables Highland Park Brownstones

25

Gables Knoxbridge
Gables Metropolitan
Gables Mirabella*
Gables Pin Oak Park
Gables Rivercrest
Gables San Raphael
Gables at the Terrace
Gables Town Lake*
Gables Turtle Creek
Gables Upper Kirby*
Gables Villa Rosa*
Gables West Avenue*
Gables West Village
Gables White Oak
Saltillo Apartments
The Essex House

Washington, DC

Gables Dupont Circle*
Gables Woodley Park*

\* -- Tested Properties