EXHIBIT D

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

EQUAL RIGHTS CENTER,
a not-for-profit corporation,
11 Dupont Circle, N.W., 4th Floor
Washington, D.C., 20036

AMERICAN ASSOCIATION OF
PEOPLE WITH DISABILITIES,
a not-for-profit corporation
1629 K Street, N.W, Suite 503
Washington, D.C., 20006

AMD 04 CV 3975

UNITED SPINAL ASSOCIATION,
a not-for-profit corporation
75-20 Astoria Boulevard
Jackson Heights, New York 11370

      Plaintiffs,                    **JURY TRIAL DEMANDED**

vs.

ARCHSTONE SMITH TRUST,
a Maryland Trust and
ARCHSTONE
SMITH OPERATING TRUST, a
Maryland Trust
11 East Chase Street
Baltimore MD, 21202
County: Baltimore City

CLARK REALTY
BUILDERS, a Maryland Corporation,
2 Bethesda Metro
Bethesda, MD 20814
County: Montgomery

VIKA, INC., a Maryland Corporation,
7420 Westlake Terrace, Suite 508
Bethesda, MD 20034
County: Montgomery

NILES BOLTON ASSOCIATES, a
Georgia Corporation
3060 Peachtree Road, NW, Suite 600
Atlanta, GA 30305

MEEKS + PARTNERS, f/k/a
KAUFMAN MEEKS & PARTNERS,
a Texas partnership
Suite 100
16000 Memorial Drive
Houston, TX 77079

        Defendants

## COMPLAINT FOR INJUNCTIVE AND
## DECLARATORY RELIEF, AND FOR DAMAGES

1.      Plaintiffs, Equal Rights Center ("ERC"), American Association of People with

Disabilities ("AAPD"), and United Spinal Association, for their Complaint against Defendants

Archstone Smith Trust ("AST"), Archstone Smith Operating Trust ("ASOT") (collectively

"Archstone"), Clark Realty Builders, VIKA, Inc., Niles Bolton Associates, and Meeks +

Partners, f/k/a Kaufman Meeks & Partners (collectively, "Defendants"), allege and state as

follows:

2.      This action is brought by ERC, AAPD, and United Spinal Association, by and

through their counsel, to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968

("Fair Housing Act" or "FHA") as amended by the Fair Housing Amendments Act of 1988

("FHAA"), 42 U.S.C. §§ 3601-3619, and the Americans with Disabilities Act, 42 U.S.C. §§

203407-4                                                                                      2

12181, (the "ADA"), in order to remedy the continuous and systematic violations of these civil rights laws by the Defendants in the design and construction of apartment facilities across the fifty states.

3.    Defendants, through the actions referred to herein, have discriminated against persons with disabilities in violation of the FHA and the ADA by designing and/or constructing dwellings and places of public accommodation that deny persons with disabilities the access to, and use of, these facilities required under these federal civil rights laws.

4.    A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying 'No Handicapped People Allowed.'" In considering passage of the FHAA, the United States House of Representatives stated in its Committee Report that enforcement of these civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible and adaptable to people with disabilities. (U.S. House of Rep. Report on the FHAA, H.R. Rep. No. 100-711 (1988)). As the Committee noted, such barriers, even if not the product of invidious intent, "can be just as devastating as intentional discrimination." H.R. Rep. No. 100-711 at 25 (1988). Enforcement of the FHA and the ADA against Defendants is necessary because of the extensive and continuing nature of the civil rights violations at Defendants' network of numerous apartment properties located throughout the United States.

5.    Plaintiff ERC is a nonprofit civil rights organization that was established to pursue a mission of promoting fair housing and public accommodations throughout the United

States, and providing counseling and referral services to protected individuals seeking housing. As a result of Defendants' wrongful conduct complained of herein, ERC has been damaged by frustration of it mission, and by having to divert significant resources that could have been used to provide counseling, education, and referral services to instead identify and counteract Defendants' discriminatory policies and practices through extensive testing, investigation and litigation of these policies.

6.    Plaintiff AAPD is the largest national nonprofit cross-disability member organization in the United States, dedicated to ensuring economic self-sufficiency and political empowerment for the more than 56 million Americans with disabilities.  As a result of Defendants' wrongful conduct complained of herein, AAPD's members have been damaged by Defendants' denial of access to Defendants' dwelling units, common areas, and public areas, and AAPD has been harmed by diversion of its resources.

7.    Plaintiff United Spinal Association has the mission of advocacy for all individuals with a spinal cord injury or disease.  As a result of Defendants' wrongful conduct complained of herein, United Spinal Association's members have been damaged by Defendants' denial of access to Defendants' dwelling units, common areas, and public areas, and United Spinal Association has been harmed by diversion of its resources.

## PARTIES, JURISDICTION AND VENUE

8.    Plaintiff ERC is a nonprofit corporation organized under the laws of the District of Columbia with its principal place of business at 11 Dupont Circle, N.W., 4th Floor, Washington, D.C., 20036.  The ERC was founded in 1999 by a group of interdenominational clergy and community leaders to provide a multi-faceted approach to civil rights issues and to

create an open society where equal opportunity for all is assured.  The ERC provides a multi-

disciplinary program of moral persuasion, education and outreach, counseling and advocacy,

testing and compliance services, and research and planning dedicated to furthering the

advancement, inter alia, of fair housing and public accommodations throughout the United

States.  The ERC's various programs provide guidance, information, and assistance to protected

individuals who are seeking housing.  The ERC and its predecessor organizations have been

battling discriminatory housing practices since 1983.

9.     Plaintiff AAPD is a nonprofit corporation organized under the laws of the District

of Columbia with its principal place of business at 1629 K Street NW, Suite 503, Washington,

D.C., 20006.  AAPD was founded after five key leaders from the disability community met to

organize what they believed would be the next logical step for people with disabilities -- creation

of a national, non-partisan organization to represent the 56 million Americans with disabilities.

AAPD currently has more than 100,000 members, which include people with disabilities and

their families and friends.  AAPD members live across the United States, including those states

in which the Subject Properties (as defined below) are located.  Among AAPD's purposes are to

further the productivity, independence, full citizenship, and total integration of people with

disabilities into all aspects of society and the natural environment; and to support the full

implementation and enforcement of disability nondiscrimination laws.

10.    Plaintiff United Spinal Association is a membership organization of more than

4,000 individuals with spinal cord dysfunction, injury, or disease, such as multiple sclerosis,

poliomyelitis, or Lou Gehrig's disease, many of whom are persons with disabilities as defined by

the FHA and ADA.  The United Spinal Association furthers its members' interests by assuring

quality healthcare, promoting research, advocating for civil rights and independence, and educating the public about these issues and enlisting their help to achieve these fundamental goals. United Spinal Association and its predecessor organization have been advocates for people with spinal cord impairments since 1947. United Spinal Association's members live across the country, including in those states in which the Subject Properties (defined below) are located.

11.     Defendant AST is a Maryland real estate investment trust in the business of owning, designing, constructing, developing, operating and managing garden-style and high-rise apartment facilities in this District and at various locations throughout the United States. AST maintains offices, and conducts business in this District. AST conducts business operations through a variety of trade names, including, but not limited to, Archstone Communities, Charles E. Smith Residential, Smith Corporate Living, and Ameriton. Further, AST substantially owns, and controls Defendant ASOT, and, on information and belief, conducts substantial portions of its business activities through ASOT.

12.     Defendant ASOT is a Maryland trust owned in whole or in part, controlled and operated by AST. ASOT conducts business activities in this District. Through various business agreements, AST and ASOT act as a single enterprise in the ownership, design, construction, development, operation and management of garden-style and high-rise apartment facilities, some of which are in this District.

13.     Defendant Clark Realty Builders ("Clark") is a Maryland corporation having its principal place of business at 2 Bethesda Metro Center, Mezzanine Level, Suite 250, Bethesda, MD 20814. Clark is in the business of designing, building and constructing a variety of

commercial structures, including multifamily apartment buildings.  On information and belief,

Clark has been a direct participant in the design and construction process of a number of the

Subject Properties (defined below) in coordination with Archstone, including but not limited to

the Archstone Van Dorn, Archstone Woodland, Archstone Columbia Town Center, and

Archstone Rockville Town Center properties.

14.    Defendant VIKA, Inc. ("VIKA"), is a Maryland corporation having its principal

place of business at 8180 Greensboro Drive, Suite 200 McLean, VA  22102.  VIKA is in the

business of providing civil engineering, planning and surveying services to commercial land

developers, including Archstone.  On information and belief, VIKA has been a direct participant

in the design and construction process of a number of the Subject Properties (defined below) in

coordination with Archstone, including but not limited to the Archstone Milestone and

Archstone Esplanade properties.

15.    Defendant Niles Bolton Associates ("Niles Bolton") is a Georgia corporation

having offices located at 300 North Lee Street, Suite 502, Alexandria, VA  22314.  Niles Bolton

is in the business of providing architectural design services to commercial land developers,

including Archstone.  On information and belief, Niles Bolton has been a direct participant in the

design and construction process of a number of the Subject Properties (defined below) in

coordination with Archstone, including but not limited to the Archstone Milestone, Archstone

Woodland Park and Archstone Van Dorn properties.

16.    Defendant Meeks + Partners, f/k/a Kaufman Meeks & Partners ("Meeks") is a

Texas partnership having its principal place of business at 16000 Memorial Drive, Suite 100,

Houston, Texas 77079.  Meeks is in the business of providing architectural design services to

commercial land developers, including Archstone.  On information and belief, Meeks has been a direct participant in the design and construction process of a number of the Subject Properties (defined below) in coordination with Archstone, including but not limited to the Archstone Columbia Town Center and the Archstone Rockville Town Center properties.

17.     Through ownership, building, development, operation or management, Archstone has been involved in the process of the design and construction of more than one hundred apartment facilities ("Subject Properties") located across the United States, in Maryland, Arizona, California, Colorado, Florida, Georgia, Illinois, Massachussetts, New Mexico, North Carolina, New Jersey, New York, Oregon, Tennessee, Texas, Virginia, Washington, and the District of Columbia.  A list of these Subject Properties is contained in Addendum A to the Complaint.

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1391 and 42 U.S.C. §§ 3613(a) and 12188.  Further, this Court may exercise personal jurisdiction over each of the Defendants.

19.     Venue is proper in the District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events and omissions giving rise to the claims herein occurred in this District, and a substantial part of the property that is the subject of this action is located in this District.  Venue is also proper under 28 U.S.C. § 1391(b)(3), because the Defendants may be found in this District.  Defendant Clark is resident in Montgomery County and several relevant Archstone properties  are located in Montgomery and Prince George's Counties, both of which are located in the Southern Division of this District.

## FACTUAL AND LEGAL BACKGROUND

20.     In 2000, Plaintiff ERC learned that a large number of new residential buildings were being constructed in the area around the District of Columbia, including in Maryland and Virginia. In order to determine compliance with civil rights laws, ERC tested properties being constructed by various developers.

21.     ERC discovered a pattern at the Archstone properties: not only were there pervasive violations of the FHA in their design and construction, but the violations – and the design of the properties themselves - were notably consistent among the Archstone properties. ERC determined it would conduct additional, unplanned testing of Archstone properties to determine the extent of FHA and ADA violations at these properties.  ERC then diverted one of its staff people full-time to test Archstone facilities.

22.     In March 2002, ERC held an educational workshop in Washington, D.C., at which the results of testing of some of the Archstone Properties in Maryland, the District of Columbia and Virginia were discussed.  Among the attendees were people with disabilities who had traveled to various Archstone properties to determine whether those properties had accessible residential apartments and had determined the apartments did not.

23.     ERC also learned from the attendees of the workshop and from other sources among the community of persons with disabilities that it was known that Archstone apartment properties are not generally accessible to persons with disabilities.  Two of the individuals who conducted tests at Archstone properties are individuals who use wheelchairs, and are members of disability rights' organizations.

24.    Because of the information ERC possessed as a result of its initial routine testing of just a few Archstone properties, and as a result of information from members of the community of persons with disabilities, ERC undertook the investigation and testing of a large number of Archstone apartment properties.  Altogether, it tested 30 properties in Maryland, Virginia, Florida, Texas, California, and the District of Columbia.

25.    The ERC conducted testing of approximately 30% of the Archstone properties built for first occupancy after March 13, 1991 (the "Tested Properties").  All but one of these Tested Properties, identified in Addendum A, exhibited violations of the FHA and ADA.  Based on the widespread and consistent violations at the Tested Properties, and on information and belief, Defendants engaged in a pervasive practice of designing and construction apartment properties in violation of FHA and ADA accessibility design requirements.

26.    Each of the Tested Properties includes multiple units that are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A), were built for first occupancy after March 13, 1991, and are subject to the design and construction requirements set forth in 42 U.S.C. § 3604 (f)(3)(C) of the FHA.

27.    Each of the Tested Properties includes a rental office and the facilities and accommodations appurtenant to the public use of the rental offices, including the parking, sidewalks, and restrooms which constitute "public accommodations" within the meaning of the ADA, 42 U.S.C. § 12181(7), were constructed for first occupancy after January 26, 1993, and are subject to the prohibition on discrimination contained in 42 U.S.C. §12182(a) of the ADA, and to the design and construction requirements of 42 U.S.C. § 12183(a)(1) of the ADA and the applicable regulations.

28.     The tests of these twenty-nine Archstone properties revealed multiple violations in the design and construction requirements of the FHA and the ADA at twenty-eight of the Tested Properties.

29.     **Dwelling Units:**  Twenty-eight of the twenty-nine Tested Properties are "covered dwelling units" that violate the antidiscrimination and the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, by failing to be designed and constructed in such manner that:

a.     all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

b.     all premises within such dwellings contain the following features of adaptive design:

i.     an accessible route into and through the dwelling;

ii.     light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; and

iii.     usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

30.     With respect to the dwelling units, such violations at the Tested Properties include:

a.     units to which there is no accessible route, including steps or other barriers that inhibit access to the unit;

    b.     doorways (often multiple doorways) within the unit that are not wide

enough to permit passage by persons who use wheelchairs;

    c.     inaccessible patios or balconies;

    d.     kitchens and bathrooms that provide insufficient floor space for use by

persons who use wheelchairs; and

    e.     environmental controls, electrical outlets, and fire alarms that are placed at

heights that make them inaccessible to persons who use wheelchairs.

31.    **Common Areas:**  At fourteen of the twenty-nine Tested Properties, ERC testers determined that common areas for use by residents of the units violate the antidiscrimination provision and the design and construction requirements of the FHA, 42 U.S.C. §§ 3604 (f)(3)(C) by failing to be designed and constructed in such manner that they are readily accessible to, and usable by, persons with disabilities.

32.    With respect to the common areas, such violations at the Tested Properties include:

    a.     mailboxes inaccessible to persons who use wheelchairs or with other

mobility impairments because the common areas lack curb cuts or are

otherwise inaccessible; and

    b.     recreational facilities including pools, barbeque areas, and children's play

areas to which no accessible route has been provided.

33.    **Public areas:**  In addition, at seventeen of the twenty-nine Tested Properties, the rental offices, including facilities and accommodations appurtenant to the rental offices that are also areas of public use, violate the antidiscrimination provisions and the design and construction

requirements of the FHA, 42 U.S.C. §§ 3604 (f)(3)(C), the ADA, 42 U.S.C. §§ 12182(a)-12183(a)(1), and the applicable regulations, by failing to be designed and constructed in such manner that they are readily accessible to, and usable by, persons with disabilities. Specifically, some of the Tested Properties' rental offices are located up stairs or have other barriers that restrict access, lack reserved and accessible parking, an accessible route from the parking area to the rental office, and/or an accessible entrance. Further many rental offices have facilities, such as restrooms and other fixtures, that are inaccessible.

34.     The following are illustrative, non-exhaustive examples of Defendants' continuing violations, which occurred in all geographic areas in which properties were tested:

### a. Archstone Governor's Green Apartments

35.     An ERC tester tested the Archstone Governor's Green Apartments in Bowie, Maryland. Archstone Governor's Green Apartments are a multifamily apartment property that consists of multi-story, multi-unit buildings and consist of 478 units.

36.     The tester inspected the interior of two units at Archstone Governor's Green Apartments, and observed the following violations:

    a.    doorways in the units are too narrow to provide access to persons in wheelchairs;

    b.    entry doorways have thresholds that are too high to be accessible to persons who use a wheelchair;

    c.    the environmental controls are placed too high on the wall to be accessible to persons who use a wheelchair;

    d.    bathroom floor space is inadequate to provide access; and

e.      kitchen floor space is inadequate so that a person using a wheelchair

cannot access the appliances.

37.     The complex has a leasing office as well as external parking and sidewalks appurtenant to the rental office.  The tester found at Archstone Governor's Green Apartments that the accessible space appurtenant to the leasing office is poorly marked with paint on the pavement that had almost completely faded.

### b.  Archstone Sussex Apartments

38.     Another of the Archstone properties tested, the Archstone Sussex Apartments, is located in Alexandria,Virginia.  It is a multifamily apartment property that consists of several multi-story, multi-unit buildings consisting of 556 units.  The apartment complex has a leasing office as well as external parking spaces and sidewalks appurtenant to the rental office.  The complex also includes areas containing resident mailboxes, recreational facilities, and other common areas.

39.     During the visit, the ERC tester found:

a.       that the parking lot to the complex's rental office lacks reserved and accessible parking spaces;

b.      no accessible routes to several of the complex's recreational and fitness facilities;

c.      its resident mailboxes are located on concrete islands with no curb cuts, and are therefore inaccessible;

d.   that several ground floor units in the complex are inaccessible because steps provide the only access to the unit (the leasing agent who accompanied the tester conceded that only seven (7) ground floor units in the complex have an accessible means of entrance);

e.   some buildings lack curbcuts to provide access from the parking spaces nearest the those buildings;

f.   in the interior of a unit at Archstone Sussex Apartments, that:  (1) multiple door ways are too narrow to permit passage by persons who use wheelchairs, (2)  thresholds are too high to be accessible, and (3) environmental controls that are inaccessible because they are placed too high on the wall.

### c.  Archstone Commons at Kingstowne

40.    An ERC investigative tester tested the Commons at Kingstowne, located in Alexandria, Virginia.  The Archstone Kingstowne is a multi-family apartment property that consists of several multi-level, multi-unit buildings consisting of 358 units.  The complex has a leasing office as well as external parking and sidewalks appurtenant to the rental office.  The complex also has common recreational and other facilities, and common areas housing resident mailboxes.

41.    The tester found:

a.   that for ten (10) or more of the buildings in the  Kingstowne, the ground floor units can be accessed only by steps, so there are no accessible ground floor units in these buildings;

203407-4                                                                                          15

b.      that with respect to the rental office and areas and facilities appurtenant to the rental office at the Kingstowne, the parking lot has no reserved and accessible parking spaces;

c.      the sidewalks leading from the parking lot to the rental office are too steep and uneven to permit navigation by a wheelchair, and the entrance to the leasing office are not accessible; and

d.      that the common recreation areas, including a children's playground, tennis courts, and a volleyball court, are not accessible.

42.     The ERC tester, who was in a wheelchair, asked the agent in the leasing office of the Kingstowne to show her a vacant, accessible ground floor unit in the complex. The agent stated that the complex had a policy of showing only "model" units, which were located on the third floor and accessible only by steps. Further demonstrating Archstone's disregard for the rights of the disabled, the agent refused a request to make an exception and show the tester a ground floor unit.

### d. The Lansburgh

43.     An ERC tester visited The Lansburgh in Washington, D.C. to test its accessibility for people with disabilities. The Lansburgh is a multi-family, multi-unit high rise apartment property.

44.     The tester observed that:

a.      the leasing office at the Lansburgh is inaccessible because stairs provide the only access to the office;

     b.     that the environmental controls in the unit or units are also placed too high to be accessible; and

     c.     several of the doorways are too narrow to permit passage by persons who use wheelchairs.

### e.  Residences at Miramar Lakes

45.    An ERC tester tested the Residences at Miramar Lakes in Miramar, Florida.  The Residences at Miramar Lakes is a multifamily apartment property consisting of 344 units.

46.    The tester inspected the interior of two units at the Residences at Miramar Lakes, and observed the following violations:

     a.     the environmental controls are placed too high on the wall to be accessible to persons who use a wheelchair;

     b.     doorways in the units are too narrow to provide access to persons in wheelchairs;

     c.     entry doorways have thresholds that are too high to be accessible to persons who use a wheelchair;

     d.     bathroom floor space is inadequate to provide access; and

     e.     kitchen floor space is  inadequate so that a person using a wheelchair cannot access the appliances.

47.    During the visit, the ERC tester also found that the environmental controls and access pad in the complex's recreational and fitness facilities are placed too high on the wall to be accessible to persons who use a wheelchair.

### f.  Archstone Westchase

48.     An ERC tester tested the Archstone Westchase Apartments in Houston, Texas. The Archstone Westchase is a multifamily apartment property.

49.     The tester inspected the interior of two units at the Residences at Miramar Lakes, and observed the following violations:

      a.    the environmental controls are placed too high on the wall to be accessible to persons who use a wheelchair;

      b.    doorways in the units are too narrow to provide access to persons in wheelchairs;

      c.    entry doorways have thresholds that are too high to be accessible to persons who use a wheelchair;

      d.    bathroom floor space is inadequate to provide access for a person using a wheelchair;

      e.    that the environmental controls and access pad in the complex's club house are placed too high on the wall to be accessible to persons who use a wheelchair; and

      f.    that the clubhouse entry doorways have thresholds that are too high to be accessible to persons who use a wheelchair.

### g.  Archstone Pasadena

50.     An ERC tester tested the Archstone Pasadena Apartments in Pasadena, California. The Archstone Pasadena is a multifamily, multi-story apartment property consisting of 120 units.

51.    The tester inspected the interior of two units at the Residences at Miramar Lakes, and observed the following violations:

    a.    the environmental controls are placed too high on the wall to be accessible to persons who use a wheelchair;

    b.    doorways in the units are too narrow to provide access to persons in wheelchairs;

    c.    entry doorways have thresholds that are too high to be accessible to persons who use a wheelchair;

    d.    bathroom is inadequate to provide access;

    e.    kitchen clearance between countertops is inadequate so that a person using a wheelchair cannot access the countertops; and

    f.    the environmental controls and light switches in the complex's leasing office, business center, and common bathroom are placed too high on the wall to be accessible to persons who use a wheelchair.

52.    The Subject Properties were all designed and constructed under the ultimate supervision and with the approval of Archstone after March 13, 1991 and using a limited number of architects and designers.  The result is that, irrespective of location, many of the apartment units in the Tested Properties (indicated in bold font below) and the remaining Subject Properties share common design elements.  The existence of these common design elements is demonstrable based on a comparison of apartment unit floor plans published by Archstone. These common design elements range from the use of common bathroom or kitchen designs, to virtually identical floor plans in numerous complexes.  By way of example:

a.    Archstone Hickory Hollow in Tennessee uses the same 1, 2 and 3 bedroom floor plans as Archstone Rocky Creek in Florida, Cameron at Barrett Creek in Georgia, and Archstone Olde Apex in North Carolina;

b.    Archstone Aliso Viejo in Florida uses some of the same floor plans as Archstone Riverfront Park in Colorado;

c.    Archstone Dakota Ridge in Colorado uses some of the same floor plans as Archstone Canyon Creek in Texas;

d.    **Archstone Medical Center** in Texas uses some of the same floor plans as **Archstone Miramar Lakes** in Florida as well as **Archstone Memorial Heights**, Archstone Hunters Run, Archstone Vistas at Canyon Creek, and Archstone Monterey Ranch, also in Texas;

e.    **Archstone Playa Del Ray** in California uses many of the same floor plans as **Archstone Pasedena**, and **Archstone Westside**, also in California; and

f.    Archstone Waterways in Florida uses some of the same floor plans as Archstone Northcross in North Carolina and **Archstone Stoneridge** in Virginia.

53.    On information and belief, as a result of Archstone's design and construction practices, and as demonstrated by the pervasiveness of the violations of the FHA and ADA at the Tested Properties, violations of the FHA and ADA that discriminate against persons with disabilities, and particularly those persons who use wheel chairs, exist at each of the Subject Properties.  Based upon the practices discovered at the Tested Properties, and based upon common design and construction features at other Subject Properties, Defendants' violations of

203407-4

the FHA and ADA at the specific Subject Properties, which continue to the present, demonstrate a pervasive practice of systematic and continuous violation of the FHA and ADA by failing to design and construct the Subject Properties, including their public and common use areas, in accordance with the requirements of the FHA, 42 U.S.C. § 3604 (f)(3)(C), the ADA, 42 U.S.C. § 12183(a)(1), and applicable regulations.

54.     In carrying out the aforementioned actions, Defendants acted intentionally and willfully, and with callous and reckless disregard for the Plaintiffs' and their members' rights.

## **INJURY TO PLAINTIFFS**

55.     As a result of Defendants' actions described above, Plaintiffs ERC, AAPD, and United Spinal Association have been directly and substantially injured and frustrated in their mission to eradicate discrimination in housing, and in their efforts to carry out the programs and services that they provide, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to persons either looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices. Plaintiffs ERC, AAPD, and United Spinal Association has also been damaged by having to divert scarce resources that could have been used to provide these services to instead identify and counteract Defendants' discriminatory practices.

56.     The unlawful discriminatory actions of the Defendants will continue to injure the ERC, AAPD, and United Spinal Association by inter alia:

        a.     Interfering with efforts and programs intended to bring about equality of
               opportunity in housing;

203407-4                                                                                    21

b.   Requiring the commitment of scarce resources, including substantial staff

time, to investigate the discriminatory conduct of Defendants, and

counteract the Defendants' discriminatory conduct, thus diverting those

resources from other services; and

c.   Frustrating their mission and purpose of promoting the equal availability

of housing to all persons without regard to any protected category,

including disability.

57.     The members of Plaintiffs AAPD and United Spinal Association have been

injured by Defendants' discriminatory denial of equal housing opportunities for their members

with disabilities, and access to Defendants' dwelling units, common areas, and public areas.

## FIRST CLAIM FOR RELIEF
### (Violations of the FHA)

58.     Plaintiffs adopt and reallege the allegations of Paragraphs 1 - 57 of this

Complaint.

59.     Each of the Subject Properties were designed and constructed for first occupancy

after March 13, 1991.  Each building located on the Subject Properties is a "dwelling" within the

meaning of the FHA, 42 U.S.C. § 3602(b).

60.     The Subject Properties are comprised of hundreds of buildings, and contain more

than 32,000 units.

61.     Each of the ground-floor units at the Subject Properties, and in addition, all units

in any building at the Subject Properties having an elevator, is a "covered multifamily dwelling"

203407-4

22

within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A). Each "covered unit" at the Subject

Properties, and the public and common use areas at the Subject Properties are subject to the

design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

62.    On information and belief, the Defendants have incorporated common design

factors and criteria in the design and construction of the "covered units" at the Subject

Properties. In some instances, the same (or virtually the same) floor plans or "foot prints" have

been utilized in the design and construction of hundreds, if not thousands of the "covered units"

at the Subject Properties.

63.    On information and belief, the Defendants, and each of them, have repeatedly,

and continually, failed to design and construct the Subject Properties so that:

    a.    the public-use and common-use portions are readily accessible to, and

        usable by, individuals with disabilities:

    b.    all doors within the ground-floor units are sufficiently wide to allow

        passage by persons with disabilities who use wheelchairs;

    c.    all the ground-floor units contain the following features of adaptive

        design:

        i.    an accessible route into and through the dwelling,

        ii.    light switches, electrical outlets, thermostats, and other

            environmental controls in accessible locations,

        iii.    reinforcements in bathroom walls to allow later installation of

            grab-bars, and

        iv.      useable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

64.    Through the actions and inactions describe above, Defendants, and each of them, have:

    a.    Discriminated in the rental of, or otherwise made unavailable, or denied dwellings to persons because of their handicaps in violation of the FHA, 42 U.S.C. § 3604(f)(1);

    b.    Discriminated against persons because of their handicaps in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(2); and

    c.    Failed to design and construct dwellings in compliance with the requirements mandated by the FHA, 42 U.S.C. § 3604(f)(3) , and the applicable regulations.

65.    The actions complained of constitute repeated and continuing violations of the FHA, in that Defendants are engaged in a systematic and consistent discriminatory practice of designing and constructing covered multi-family dwellings in violation of the requirements of the FHA, and the applicable regulations.

66.    Defendants' conduct described herein has been intentional, willful, and taken in disregard for the rights of others.

203407-4

24

67.    As a result of Defendants' wrongful conduct, Plaintiffs and their members have been injured by a discriminatory housing practice and are, therefore, "aggrieved person[s]," as defined by the FHA.

**SECOND CLAIM FOR RELIEF**
**(Violations of the ADA)**

68.    Plaintiffs adopt and reallege the allegations of Paragraphs 1 - 67 of this Complaint.

69.    The rental offices at the Subject Properties, and features and accommodations appurtenant to the rental offices, are sales or rental establishments, the operations of which affect commerce, and are thus, "public accommodations" as defined by 42 U.S.C. § 12181 (7).

70.    Over 90% of the rental offices at the Subject Properties were designed and constructed for first use after January 26, 1993.  The rental offices and the facilities and accommodations appurtenant to the public use of the rental offices, including the parking, sidewalks and restrooms at the rental offices of the Subject Properties, are subject to the prohibition on discrimination contained in 42 U.S.C. § 12182(a), and are subject to the design and construction requirements of 42 U.S.C. § 12183(a)(1), and the applicable regulations.

71.    On information and belief, Archstone has failed to design and construct the rental offices at the Subject Properties, and the appurtenant parking, sidewalks, and restrooms at those rental offices, in such a manner that the facilities are readily accessible to and useable by individual with disabilities.

72.    The actions of Defendants, as described herein, constitute:

a.    Discrimination against individuals with disabilities in the full and equal enjoyment of the services, facilities, privileges and accommodations of a place of public accommodation, in violation of the ADA, 42 U.S.C. § 12182(a), and

b.    A failure to design and construct public accommodation in compliance with the requirements of the ADA, 42 U.S.C. § 12183(a)(1), and the applicable regulations.

73.    The actions complained of constitute repeated and continuing violations of the ADA in that Defendants are engaged in a systematic and consistent discriminatory practice of designing and constructing the rental offices and the appurtenant parking, sidewalks, and restrooms at those rental offices in violation of the requirements of the ADA, and the applicable regulations.

74.    Plaintiffs are each an "aggrieved person," as defined by 42 U.S.C. § 12188(b)(2)(B), as a result of Defendants' wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectively pray that this Court enter an order against Defendants, and each of them, as follows:

A.    Declaring, pursuant to 28 U.S.C. §§ 2201, that Defendants' practices and actions, as alleged herein, violate the FHA and the ADA and the applicable regulations;

B.    Enjoining Defendants, their officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, permanently from:

    1)    Failing or refusing to bring the covered dwelling units, and the public use and common use areas, at the Subject Properties into immediate compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C) , and the applicable regulations,

    2)    Failing or refusing to bring the public use and common use areas at the Subject Properties into immediate compliance with the requirements of 42 U.S.C. §§ 12182-83, and the applicable regulations, and

    3)    Failing or refusing to design and construct any covered multi-family dwellings in the future in compliance with the FHA, the ADA, and the applicable regulations.

C.    Award such damages as would fully compensate each of the Plaintiffs for the injuries incurred as a result of the discriminatory housing practices and conduct of Defendants;

D.    Award such punitive damages as against Defendants as are proper under the law;

E.    Award plaintiffs their costs and attorneys' fees incurred herein; and

F.    Award plaintiffs such other relief as this Court deems just and proper.

Dated this 20th day of December, 2004

Respectfully Submitted,

Joseph M. Sellers, Esq.(06284)
jsellers@cmht.com
Stephen H. Schulman
Megan E. Jones
Matthew K. Handley
**Cohen, Milstein, Hausfeld**
**& Toll, P.L.L.C**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Isabelle M. Thaubault
Donald L. Kahl
don_kahl@washlaw.org
**Washington Lawyer's Committee for**
**Civil Rights and Urban Affairs**
11 Dupont Circle
Suite 200
Washington D.C. 20036
Tel: (202) 319-1000
Fax:(202) 319-1010

Attorneys for Plaintiffs