MAXWELL M. FREEMAN, #31278
LEE ROY PIERCE, JR., #119318
MICHAEL L. GUREV, #163268
THOMAS H. KEELING, #114979
FREEMAN, D'AIUTO, PIERCE,
 GUREV, KEELING & WOLF
A PROFESSIONAL LAW CORPORATION
1818 Grand Canal Boulevard, Suite 4
Stockton, California 95207
Telephone: (209) 474-1818
Facsimile: (209) 474-1245
E-mail:       lrpierce@freemanfirm.com
              mgurev@freemanfirm.com
              tkeeling@freemanfirm.com

Attorneys for Defendants A.G. Spanos
Construction, Inc., A.G. Spanos
Development, Inc., A.G. Spanos
Land Company, Inc., A.G. Spanos
Management, Inc., The Spanos Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Fair Housing Alliance, Inc., et al., | CASE NO. C07-03255-SBA |
| Plaintiffs, | **REPLY TO OPPOSITIONS OF PLAINTIFFS AND AMICUS TO THE SPANOS DEFENDANTS' MOTION FOR RECONSIDERATION** |
| vs. | |
| A.G. Spanos Construction, Inc., et al. | [N.D. Cal. Local Rule 7-9] |
| Defendants. | Hearing Date: September 23, 2008<br>Time: 1:00 p.m.<br>Dept: Courtroom 3 |
| | Complaint Filed: June 20, 2007 |

## **TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**Federal Cases**

*Cherosky v. Henderson*
    330 F.3d 1243 (9th Cir 2003) .................................................... 2

*Dasgupta v. University of Wisconsin Board of Regents*
    121 F.3d 138 (7th Cir. 1997) .................................................... 8

*Flowers v. Carville, Clinton, Little Brown and Stephanopoulos*
    310 F.3d 1118 (9th Cir. 2002) .................................................. 2

*Foster v. Morris*
    208 Fed.Appx. 174 (3rd Cir. 2006) ........................................... 8

*Garcia v. Brockway*
    526 F.3d 456 (9th Cir. 2008) ........................................ 1-3, 6-9, 11

*Glass v. Petro-Tex Chem*
    757 F.2d 1554 (5th Cir. 1985) .................................................. 8

*Havens Realty v. Coleman*
    455 U.S. 363, 102 S.Ct. 1114 (1982) ............................... 1, 3-7, 10

*Krieman v. Chrystal Lake Apartments*
    2006 U.S. Dist. LEXIS 35379 (N.D. Ill. 2006) ..................... 5, 7, 10

*Ledbetter v. Goodyear*
    ___ U.S. ___, 127 S.Ct. 2162, 2007 U.S. LEXIS 6295 (2007) ........ 2, 3

*Lyons v. England*
    307 F.3d 1092 (9th Cir. 2002) .................................................. 2

*Moskowitz v. Trs. of Purdue Univ.*
    5 F.3d 279 (7th Cir. 1993) ........................................................ 4

*National Railroad Passenger Corp. v. Morgan*
    536 U.S. 101, 122 S.Ct. 2061 (2002) ................................. 1-4, 7, 10

*NFHA v. Spanos*
    542 F.Supp 1054 (N.D. Cal. 2008) ........................................... 10

*Price v. Jefferson County*
    470 F.Supp.2d 665 (E.D. Tex. 2006) ......................................... 8

*RK Ventures, Inc. v. City of Seattle*
    307 F.3d 1045 (9th Cir. 2002) .................................................. 2

*Silver State Fair Housing Council, Inc. v. ERGS*
    362 F.Supp.2d 1218 (N.D. Nev. 2005) .................................... 6, 7

*United States v. Kubrick*
    444 U.S. 111, 117, 100 S.Ct. 352 (1979) ................................... 9

*Wallace v. Chicago Housing Authority*
    321 F.Supp.2d 968 (N.D. Ill. 2006) .................... 3-5, 7, 8, 10

*Winans v. State Farm*
    968 F.2d 884 (9th Cir. 1992) .................... 7

**State Cases**

*Mills v. Forestex*
    108 Cal.App.4th 625 (2003) .................... 7

## INTRODUCTION

In light of the opposition briefs filed herein, it is essential to understand why the recent *en banc* Ninth Circuit decision in *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) - - and other recent Ninth Circuit law explaining the continuing violation doctrine - - are consistent with the Supreme Court decisions in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002) and *Havens Realty v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114 (1982).

Taken together, these decisions explain that while the continuing violation doctrine <u>is applicable to</u> and will be invoked to save discrimination claims which only become apparent when viewed collectively - - the continuing violation doctrine <u>is inapplicable to</u> and will not save "discrete discriminatory acts" even if those discrete acts are related to acts alleged in timely filed charges. Because, as the Ninth Circuit observed in *Garcia*, a failure to "design and construct" is clearly a "discrete act of discrimination," and not "an indefinitely continuing practice," the continuing violation doctrine is inapplicable to, and will not save, untimely claims alleging "design and construct" violations of the FHA.

## ARGUMENT

In 2002, in *National Railroad Passenger Corporation v. Morgan, supra*, 536 U.S. 101, a unanimous Supreme Court held that the "continuing violation" doctrine <u>does not</u> apply to "discrete discriminatory acts." "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.*, 536 U.S. at 113. "Discrete acts . . . are easy to identify." *Id.*, 536 U.S. at 114. "A plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Id.*, 536 U.S. at 114. "All prior discrete discriminatory acts [that] are untimely filed [are] no longer actionable." *Id.*, 536 U.S. at 115.

The continuing violation doctrine <u>does</u> apply to violations that by "[t]heir very nature involv[e] repeated conduct," as these "are different in kind from discrete acts." *Id.*, 536 U.S. at 115. Claims "comprised of a series of separate **acts that collectively constitute one 'unlawful . . . practice'**" will not be time-barred "so long as all acts which constitute the

claim are part of the same unlawful . . . practice and at least one act falls within the [limitations] time period." *Id.*, 536 U.S. at 117 and 122, emphasis added. The *Morgan* court explained that a practice constituting a continuing violation "cannot be said to occur on any particular day." Rather, "[i]t occurs over a series of days or perhaps years and, **in direct contrast to discrete acts**, a single act . . . may not be actionable on its own." *Morgan, supra*, 536 U.S. at 115, emphasis added.

In accord with *Morgan*, the Ninth Circuit has repeatedly held that the continuing violation doctrine does not apply to "discrete acts of discrimination." "[A]ppellants' claims are based upon discrete acts, each of which is actionable on its own, rather than 'a series of separate acts that collectively constitute one 'unlawful . . . practice.'" *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061, n. 13 (9th Cir. 2002); *Lyons v. England*, 307 F.3d 1092, 1106 (9th Cir. 2002) ["The Supreme Court's decision in *Morgan* invalidated our previous application of the continuing violation doctrine to discrete acts of discrimination. . . ."] Again, in 2002, the Ninth Circuit held that "the continuing tort doctrine" does not apply to "discrete wrongful acts." *Flowers v. Carville, Clinton, Little Brown and Stephanopoulos,* 310 F.3d 1118, 1126 (9th Cir. 2002). In 2003, the Ninth Circuit explained that "'[where] [a] discriminatory practice, though it may extend over time and involve a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of each . . . must be brought within the statutory limitations period.'" *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir 2003), quoting *Lyons v. England, supra*, 307 F.3d at 1108.[1]

Finally, on May 15, 2008, the Ninth Circuit issued its *en banc* decision in *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008). In *Garcia*, the Ninth Circuit reiterated that the continuing violation doctrine is inapplicable to discrete acts of discrimination, and held that a failure to "design and construct" in violation of the FHA is a discrete act of discrimination that

---

[1] In *Ledbetter v. Goodyear*, ___ U.S. ___, 127 S.Ct. 2162, 2007 U.S. LEXIS 6295 (2007), the Supreme Court affirmed its decision in *Morgan* and again held that the continuing violation doctrine is inapplicable to "a discrete act . . . of discrimination . . . that occurs at a particular point in time. . . ." *Id.*, 127 S.Ct. at 2165.

is not subject to the continuing violation doctrine:

> "Termination" refers to "the termination of an alleged discriminatory housing practice." The Supreme Court has "stressed the need to identify with care the specific [discriminatory] practice that is at issue." *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162, 2167, 167 L.Ed. 2d 982 (2007). Here, the practice is "a failure to design and construct," which is not an indefinitely continuing practice, but a discrete instance of discrimination that terminates at the conclusion of the design-and-construction phase. This violation differs from the one Congress codified as "continuing" in light of *Havens*, where the claims were "based not solely on isolated incidents . . ., but a continuing violation manifested in a *number of incidents* -- including at least one . . . that [wa]s asserted to have occurred within the [limitations] period." 455 U.S. at 381.

*Id.*, 526 F.3d at 462, italics in original.

Notwithstanding the above case law, in their oppositions, plaintiffs and Amicus argue that *Havens* should be read such that claims based on the "discrete instances of discrimination" alleged in plaintiffs' First Amended Complaint are saved by the "continuing violation" doctrine. Amicus argues that alleging a pattern and practice make "staleness" concerns disappear. Thus, concludes Amicus, plaintiffs' suit, brought on over a hundred discretely designed and constructed apartment complexes built throughout the United States since 1991, remains timely as to all complexes sued on. See, Opposition of Amicus, pp. 5-6. In support of this argument, Amicus cites *Wallace v. Chicago Housing Authority*, 321 F.Supp.2d 968, 972-73 (N.D. Ill. 2006). Argues Amicus: *Havens*, *Morgan* (and presumably *Garcia*) are all reconciled in *Wallace*. Opposition of Amicus, p. 5, fn 5. Amicus is correct that *Havens*, *Morgan* (and *Garcia*) are reconciled in *Wallace*, but *Wallace* supports defendants' position, and not that of Amicus or plaintiffs:

> [W]e find that both *Havens* and *Morgan* inform our analysis of whether acts that occurred prior to the two-year limitations period are actionable as part of an alleged pattern or practice of conduct in violation of the FHA. In *Morgan*, the Supreme Court . . . held that . . . **discrete acts of discrimination that occur outside of the limitations period [are precluded]** [but] that, for purposes of a hostile work environment claim, acts that occur prior to the limitations period are actionable. . . . *Id.* at 13-14, 16-18. The Court made this distinction between hostile work environment claims and discrete discriminatory acts because it found that the **"very nature [of hostile work environment claims] involves**

> repeated conduct." *Id.* at 15. In other words, because a hostile work environment claim necessarily involves "**a series of separate acts that collectively constitute one**" **unlawful practice**, the court may consider the entire time period of that practice as long as an act **contributing to the claim** occurred within the limitations period. *Id.* at 117.

*Wallace, supra,* 371 F.Supp.2d at 972, emphasis added.

Next, the *Wallace* court explained:

> In *Havens*, the Supreme Court specifically addressed the FHA's statute of limitations. There, the Supreme Court held that a pattern-or-practice theory may revive **otherwise stale acts** if these acts are part of a "continuing violation" of the FHA. 45 U.S. at 380-81. . . .
>
> ¶ . . . ¶
>
> The amended text of the FHA coupled with the Supreme Court's holding in *Havens* demonstrates that where a plaintiff **properly alleges** a pattern of conduct that violates the FHA, acts that occur prior to the limitations period are actionable as long as they are part of the alleged pattern. The *Morgan* decision does not contradict this finding; rather, it recognizes that prior acts may be timely under the continuing-violations theory where the asserted claim **necessarily arises from a pattern of unlawful conduct**. 536 U.S. at 117.

*Wallace, supra,* 327 F.Supp at 972-973, emphasis added.

Applying these principles, the *Wallace* court explained:

> To establish a continuing course of conduct under a pattern-or-practice theory, Plaintiffs must show that the character of [defendants'] actions "**was not apparent when they were committed but became so when viewed in light of the later acts.**" *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993).

*Wallace, supra,* 321 F.Supp.2d at 973, emphasis added.[2]

---

[2] Although the *Wallace* court allowed plaintiffs' disparate impact claim to proceed under the particular facts of that case, the court nonetheless expressed concern that the continuing violation doctrine was inapplicable because, in that case, the "alleged pattern or practice of misconduct may be characterized more accurately as a series of discrete happenings." *Wallace, supra,* 321 F.Supp.2d at 974, n. 3. In the instant case, however, there can be no dispute that the design and construction of an apartment complex is a "discrete" act. *Garcia, supra,* 526 F.3d at 462.

On the other hand, the *Wallace* court explained that the continuing violation doctrine could apply to racial steering claims because: "racial steering often is discerned only after the defendants have engaged in a pattern of conduct. [¶] As the Supreme Court held in *Havens*, a racial steering claim is timely where an alleged continuing policy and practice of unlawful racial steering extends into the limitations period. *Havens*, 455 U.S. at 381." *Wallace*, 321 F.Supp.2d at 974-975.

*Wallace* and *Havens* were applied in another FHA case in *Krieman v. Chrystal Lake Apartments*, 2006 U.S. Dist. LEXIS 35379 (N.D. Ill. 2006). In holding that plaintiffs' FHA claims were time-barred, the *Krieman* court explained:

> To establish a continuing course of conduct under any tort claim, **including housing discrimination**, the plaintiff must show that the character of the earlier actions "**was not apparent when they were committed but became so when viewed in light of the later acts.**" . . . Therefore, to establish a "continuing violation" theory . . . plaintiffs must establish that plaintiffs did not realize that the 1995-96 actions were acts of discrimination until the events of 2000-2002 made that discrimination evident. . . . For example, the *Wallace* plaintiffs alleged a pattern of segregation in public housing, by alleging a collection of incidents over a 10-year period that **when viewed collectively** indicated **a pattern of racial steering** that affected a class of residents. *Id.* In the case before the Court, by contrast, the record submitted by Plaintiffs shows that Plaintiffs knew they had a potential discrimination in 1996, . . . . Therefore, no reasonable jury could find that the character of Defendants' 1996 actions was not apparent to Plaintiffs until the later actions in 2000-2002.
>
> [T]he 1996 action falls outside the 2 year statute of limitations of the FHA and will not be considered as part of this case.

*Krieman, supra,* 2006 U.S. Dist. LEXIS 35379, *13-*14, emphasis added.

Plaintiffs' reliance on *Havens* to apply the continuing violation doctrine to design and construction claims is thus misplaced in the context of section 3604(f)(3)(C). The alleged FHA violation in *Havens* was racial steering, a discriminatory act or practice that by definition continues over time. *Havens*, 466 U.S. at 380. Racial steering as a pattern or practice cannot be determined based on one event; rather, racial steering is based on several events over time. *Id.*, at 381. The Court found that the alleged racial steering constituted a continuing violation because (1) it continued to occur within the limitations period, and (2) the nature of racial

steering is such that it is "manifested in a number of incidents." *Id.* In other words, the pattern or practice of racial steering can only be fully determined after looking at a sequence of alleged discriminatory acts.

Unlike racial steering, "[h]ere [the alleged discriminatory] practice is the 'failure to design and construct' . . . multifamily dwelling[s] according to FHA standards." *Garcia, supra*, 526 F.3d at 461. "[A] failure to design and construct . . . according to FHA standards is . . . [a] discrete act of discrimination [citation]." *Garcia, supra*, 526 F.3d at 463, n. 4.

As *Havens* also held, the continuing violation doctrine did not apply to the plaintiff tester's claims, which were discrete discriminatory acts based on "four isolated occasions" in which she received false information as to housing availability. *Havens*, 455 U.S. at 381. Accordingly, under *Havens*, the continuing violation doctrine has no applicability to design and construction cases, as the Ninth Circuit recognized in *Garcia*:

> Here, the practice is "a failure to design and construct," which **is not an indefinitely continuing practice, but a discrete instance of discrimination that terminates at the conclusion of the design-and-construction phase**. This violation differs from the one Congress codified as "continuing" in light of *Havens*, where the claims were "based not solely on isolated incidents . . ., **but a continuing violation manifested in a *number of incidents* - -** including at least one . . . that [wa]s asserted to have occurred within the [limitations] period.

*Garcia v. Brockway, supra*, 526 F.3d 456 at 462, emphasis added.[3]

---

[3] The other four cases cited by Amicus (see Opposition of Amicus, pp. 7-9) all are unpersuasive. Three of the cases are unpublished, and none cites *Garcia* or any other Ninth Circuit case law construing the contours of the "continuing violation" doctrine. The sole published decision cited by Amicus is *Silver State Fair Housing Council, Inc. v. ERGS*, 362 F.Supp.2d 1218 (N.D. Nev. 2005). However, the reasoning employed by the District Court in *Silver State* was expressly rejected by the *en banc* Ninth Circuit in *Garcia*. The *Silver State* court reasoned:

> No cases directly address the issue present here, that is, whether the development of multiple FHA-violating apartment complexes constitutes a "practice" that can ensnare discriminatory occurrences that took place outside of the two-year statute of limitations. However, given the plain language of 3613(a)(1)(A), the Supreme Court's embracement in *Havens* of applying the continuing violation doctrine to FHA claims, and the "broad remedial intent of Congress embodied in the Act," *Havens*, 455 U.S. at 380, the court finds that

Notwithstanding the holdings of *Garcia* and its Ninth Circuit predecessors, and *Morgan*, *Wallace* and *Krieman*, Amicus argues "staleness ceases to be a concern . . . for . . . 3604(f)(3)(c) . . . violations . . . [because] features of an inaccessible building do not fade with time . . . [and] [because] [i]naccessible features can be observed and measured and proof of liability does not rely on the memory of witnesses or the availability of documents." Opposition of Amicus, p. 4, fn 4. Incredibly, Amicus argue that because design and construct violations are discrete, open, obvious, and permanent, staleness concerns disappear and the continuing violation doctrine should save these claims. This argument turns the continuing violation doctrine on its head.

Discrete, open, obvious and permanent deficiencies in a building are "patent" deficiencies. Conversely, "latent" deficiencies are hidden, and may manifest only over a long period of time. *Winans v. State Farm*, 968 F.2d 884, 886 (9th Cir. 1992). But statutes of limitations for "patent" deficiencies in construction cases are universally shorter than statute of limitations for "latent" deficiencies. See, e.g., *Mills v. Forestex* 108 Cal.App.4th 625, 643 (2003). Because patent defects are open, obvious, and discrete, claims alleging "patent" defects become <u>stale</u> sooner than claims alleging "latent" defects, which are hidden and manifest over time.

---

> the design and construction of multiple FHA-violating housing developments continuing into the limitations period can indeed constitute such a "practice."

*Silver State*, *supra*, 362 F.Supp.2d at 1221-1222. In direct contradiction, *Garcia* states:

> Here, the practice is "a failure to design and construct," which **is not an indefinitely continuing practice, but a discrete instance of discrimination that terminates at the conclusion of the design-and-construction phase.** This violation differs from the one Congress codified as 'continuing' in light of *Havens*, where the claims were "based not solely on isolated incidents . . ., **but a continuing violation manifested in a *number of incidents* - - including at least one . . . that [wa]s asserted to have occurred within the [limitations] period."

*Garcia v. Brockway*, *supra*, 526 F.3d at 462, emphasis added.

Similarly, the continuing violation doctrine is <u>inapplicable</u> to, and will not extend the statute of limitations on open, obvious, permanent, and "discrete acts of discrimination." *Garcia, supra*, 526 F.3d at 462 and 463, n 4. Such discrimination claims become <u>stale</u> two years after the completion of construction. *Garcia, supra,* 526 F.3d at 463-464. Conversely, a violation of the FHA that "is discerned only after the defendants have engaged in a pattern of conduct", *Wallace, supra,* 321 F.Supp.2d at 974, is not stale precisely because it is made cognizable only by a pattern of conduct taking place over time and not made apparent until viewed collectively. *Wallace, supra*, 321 F.Supp.2d at 974.

This is precisely the holding of *Garcia*:

> Here, the practice is "a failure to design and construct," which **is not an indefinitely continuing practice, but a discrete instance of discrimination** that terminates at the conclusion of the design- and-construction phase. . . .

*Garcia, supra*, 526 F.3d at 462, emphasis added; *see, Price v. Jefferson County*, 470 F.Supp.2d 665 (E.D. Tex. 2006) ["the purpose behind allowing a plaintiff to maintain a cause of action under the continuing violation theory is to permit redress for acts the discriminatory character of which was not apparent at the time they occurred"]; *Glass v. Petro-Tex Chem*, 757 F.2d 1554, 1560-1561 (5th Cir. 1985) ["The core idea [of the continuing violation theory,] . . . is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a . . . charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights"]; *Dasgupta v. University of Wisconsin Board of Regents*, 121 F.3d 138, 139 (7th Cir. 1997) ["The continuing violation doctrine is an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time"]; *Foster v. Morris*, 208 Fed.Appx. 174, 177-178 (3rd Cir. 2006) [lack of grab bars and wheelchair accessible showers had a degree of permanence and obviousness such that the continuing violation doctrine was rendered inapplicable].

Moreover, although staleness may not hamper <u>plaintiffs</u>' case, the staleness doctrine is

not intended to protect plaintiffs; rather, the staleness doctrine protects <u>defendants</u> against the prejudice inherent in defending against stale claims:

> Although the ill effects of a failure to properly design and construct may continue to be felt decades after construction is complete, **failing to design and construct is a single instance of unlawful conduct**. Here, this occurred long before plaintiffs brought suit. Were we to now hold the contrary, the FHA's statute of limitations **would provide little finality for developers**, who would be required to repurchase and modify (or destroy) buildings containing inaccessible features in order to avoid design-and-construction liability for every aggrieved person who solicits tenancy from subsequent owners and managers. . . . This is not what Congress provided in erecting a two-year statute of limitations for FHA design-and-construction claims. If Congress wanted to leave developers on the hook years after they cease having any association with a building, it could have phrased the statute to say so explicitly.
>
> ¶ . . . ¶
>
> . . . **[A]n aggrieved person must bring a private civil action under the FHA for a failure to properly design and construct within two years of the completion of the construction phase**, which concludes on the date that the last certificate of occupancy is issued. . . .

*Garcia*, 526 F.3d at 463-466; *see, United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352 (1979) [Statutes of limitations are "statutes of repose" that balance plaintiffs' needs for sufficient time to pursue claims with defendants' and courts' rights to be free of stale claims].[4]

As applied to this case, plaintiffs' First Amended Complaint fails to allege a pattern of discrimination that is cognizable under *Garcia* (and other Ninth Circuit continuing violation

---

[4] As applied to design and construct cases, staleness seriously prejudices a defendant, *Garcia, supra*, 526 F.3d at pp. 463, 466 [". . . *Garcia* fails to mention the extreme prejudice defendants would suffer if plaintiffs could indefinitely bring civil damages actions for buildings defendants no longer own and cannot fix without the cooperation of the current owners."]. This prejudice increases as time passes because a defendant's ability to bring third party complaints for indemnity becomes virtually impossible. Regarding an apartment complex built and sold up to 15 years ago, architects and subcontractors typically have disappeared or gone bankrupt, and a defendant's ability to directly defend is also compromised. Building and grading plans typically are lost; employees who supervised construction often have left or retired; memories regarding actions taken to comply with FHA requirements have faded; buildings have been altered by redesign, reconstruction, theft, fire, and failure to maintain; and parking lots, walkways, and landscape grading have been altered by subsidence, seismic or tree-caused uplift, flooding, redesign and reconstruction, and by simple neglect.

cases), *Morgan*, *Wallace* or *Krieman*. Plaintiffs' First Amended Complaint alleges <u>only</u> "discrete [discriminatory] acts" each of which is actionable on its own, rather than "a series of separate acts that collectively constitute one 'unlawful . . . practice'", *Morgan, supra,* 536 U.S. at 117. The First Amended Complaint alleges only "discrete acts of discrimination" that allegedly harmed plaintiffs <u>each</u> time a complex was built:

> 73. **[E]ach time** the A.G. Spanos Defendants designed and constructed covered dwellings that did not comply with the FHA in one of Plaintiffs' service areas, **the A.G. Spanos Defendants frustrated the mission of that Plaintiff** . . . .

First Amended Complaint, ¶ 73, emphasis added.

Highlighting the fact that construction of each complex was a "discrete" act, plaintiffs allege that the discrete acts of discrimination alleged were, in the words of *Morgan, supra,* 536 U.S. at 114, "easy to identify":

> 10. A person using a wheelchair or other mobility aid **is** just as **effectively excluded** from the opportunity to live **in a particular dwelling** by [improper design and construction] **as by a posting sign saying "No Handicapped People Allowed."** . . . .

First Amended Complaint, ¶ 10, emphasis added.[5]

## CONCLUSION

Plaintiffs' First Amended Complaint alleges only "discrete acts of discrimination." "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National Railroad Passenger Corp. v. Morgan, supra,* 536 U.S. at 113. "Here, the practice is 'a failure to design and construct,' which **is not an indefinitely continuing practice, but a discrete instance of discrimination that terminates at the conclusion of the design-and-construction phase**. This violation differs from the one Congress codified as 'continuing' in light of *Havens*, where the claims were 'based not solely on isolated incidents . . ., **but a continuing violation manifested in a *number of incidents* - -**

---

[5] Plaintiffs "do not allege that any disabled individual has actually suffered any injury because of the allegedly discriminatory acts." *NFHA v. Spanos*, 542 F.Supp 1054, 1064 (N.D. Cal. 2008).

10
REPLY TO OPPOSITIONS OF PLAINTIFFS AND AMICUS TO THE SPANOS
DEFENDANTS' MOTION FOR RECONSIDERATION [Case No. C07-03255-SBA]

including at least one . . . that [wa]s asserted to have occurred within the [limitations] period.'" *Garcia v. Brockway supra*, 526 F.3d at 462, emphasis added.

Dated: September 9, 2008

FREEMAN, D'AIUTO, PIERCE, GUREV, KEELING & WOLF

By _____
LEE ROY PIERCE, JR.
Attorneys for Defendants A.G. Spanos Construction, Inc., A.G. Spanos Development, Inc., A.G. Spanos Land Company, Inc., A.G. Spanos Management, Inc., The Spanos Corporation